Page 1 of 3

**Billing Date:** August 12, 2006
**Account Number:** 834010 110 0088309

8949 WARE COURT SAN DIEGO CA
92121-2275          8340 1000 NX 7 12          0004598

**How to reach us ....**

☎  CUSTOMER SERVICE (858) 695-3220
TECHNICAL SUPPORT OPEN 24 HOURS
BILLING OR SALES 8–8 M–F & 8–5 SAT

#BWNKTKR
#1659898899911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

||.|....|.|||.....||.|.|.||.|..|.|.|.|....|.|.|..|.|.|

## *Account Snapshot*

| | |
|---|---:|
| Previous Balance | $ 170.73 |
| Payments | – 170.73 |
| Monthly Charges | 156.70 |
| Pay–Per–View Charges | 3.95 |
| Adjustments | 11.59 |
| Taxes & Fees | 8.42 |
| **Amount Due** | **$ 180.66** |
| **Payment Due Date** | **09/01/06** |

*(See additional page(s) for account details.)*

## *Important Viewer News*



Tune to Answers On Demand channel 100 for information on how your equipment works. Topics include Getting Started, Using Parental Controls, Changing Pin Numbers, and more. Visit twcsd.com for details.



Don't miss Barrera vs. Juarez live on Pay–Per–View Saturday, Sept. 16, on ch 801 on Time Warner Digital Cable. Easy ordering using your remote control! Also avaialble on HD ch 726. An HD TV and HD converter are required. Restrictions apply. Details at twcsd.com.

The method for determining contributions to the Federal Universal Service Fund has recently changed and has resulted in an increase in the amount you will be billed for those contributions. Please visit www.timewarnercable.com/FUSF for more information about this change.

## Payment Coupon

LEON ALPERT
**Billing Date:** August 12, 2006
**Account Number:** 834010 110 0088309

Please detach and enclose this coupon with your payment.
*Do not send cash. Make checks payable to*
*TIME WARNER CABLE.*
Allow 4–5 days for your mailed payment to be credited.

**CUSTOMER SERVICE (858) 695-3220**

| | |
|---|---:|
| **Amount Due** | **$ 180.66** |
| **Payment Due Date** | **09/01/06** |
| **Amount Enclosed** | $ |

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

||.|.|.|.||.....||.|.|.|.|...||.|.|.||...|.|.||....||.|

834010110008830900180661

LEON ALPERT
Billing Date:                          Page 2 of 3
Account Number:                   August 12, 2006
834010 110 0088309

8340 1000 NX 7 12      0004598

## Account Details

This statement is for service from 8/12/06 to 9/11/06
Payments received after August 12, 2006 will be reflected on your next bill.

| Previous Balance | | | $ 170.73 |
|---|---|---|---|

| Payments | | | Amount |
|---|---|---|---|
| 08/01 | Payment – Thank You | | – 170.73 |

| Monthly Charges | | | Amount |
|---|---|---|---|
| 08/12 – 09/11 | Digital Phone Package — Includes Unlimited Local And | | 39.95 |
| | Long Distance Calling Within The United States, | | |
| | Us Territories And Canada | | |
| 08/12 – 09/11 | iCONTROL Premium Service | | 6.95 |
| | Your Pay Service(s) On Demand | | |
| 08/12 – 09/11 | HDTV Converter        (Includes Digital Remote) | | 8.00 |
| 08/12 – 09/11 | HDTV Converter        (Includes Digital Remote) | | 8.00 |
| 08/12 – 09/11 | Service Protection Plan | | 2.95 |
| 08/12 – 09/11 | Premier Digital | | 11.00 |
| | Digital Movie Pack | $4.00 | |
| | Digital Variety Pack | $4.00 | |
| | Navigator Screen Guide | $3.00 | |
| 08/12 – 09/11 | Any 4 Premium Channels | | 24.95 |
| | Cinemax | $6.24 | |
| | HBO | $6.24 | |
| | Showtime | $6.24 | |
| | STARZ | $6.23 | |
| 08/12 – 09/11 | Wireless Road Runner | | 54.90 |
| 08/12 – 09/11 | Navigator Screen Guide | | .00 |

| Pay–Per–View Charges | | | Amount |
|---|---|---|---|
| 07/15 | Aeon Flux | Start 07:13 P.M. | 3.95 |

| Adjustments | | | Amount |
|---|---|---|---|
| 07/13 | Oper/Dir Assistance | | 2.97 |

### ADDITIONAL DETAILS CONTINUED ON NEXT PAGE

ABOUT YOUR TIME WARNER CABLE AGREEMENT

OFFICE LOCATION and WRITTEN INQUIRIES:
San Diego: 8949 Ware Ct., San Diego, CA. 92121. Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118. Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the
discrepancy the statement will be considered correct. Our billing number is (858) 695-3220, or (619) 435-0157.
Payments: Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill. If we do not receive your payment by this date,
your service may be interrupted. If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for
each outlet. Advance payment of a deposit and your next month's service fee may also be required. You may request your deposit returned after one year of a good payment
record by calling (858) 695-3220, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent
statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically.
Equipment: Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property
of Time Warner Cable. Additional cable connections and alterations to your equipment are not authorized unless performed by company personnel on behalf of the company.
Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable
wear and tear excepted. If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the
amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment. If your credit is less than
$3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund. However, if you have an outstanding balance at the time service is terminated, we will apply any
deposits to the payment of such charges and issue a refund, if applicable, of the difference.
Franchising Authority Information:

City of San Diego:
City of San Diego
1200 3rd Ave., Suite 250
San Diego, CA 92101
(619) 236-6010
Comm ID# CA0428

County of San Diego
(outside city limits):
County of San Diego
1600 Pacific Hwy., Room 208
San Diego, CA 92101
(619) 595-4650
Comm ID# CA0568

City of Poway:
City of Poway
13325 Civic Center Drive
Poway, CA 92064
(858) 668-4590
Comm ID# CA0572

City of Coronado:
1825 Strand Way
Coronado, CA 92118
(619) 522-7335
Comm ID# CA0431

Navy Housing:
NAVCOMTELSTA
San Diego, Code N52
Box 357056
San Diego, CA 92135-7056
(619) 532-1364
Comm ID# CA0428

Digital Phone Consumer Information: Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of
your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave.,
San Francisco, CA 94102, or at www.cpuc.ca.gov, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at
Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: the CPUC handles complaints
of both interstate and intrastate unauthorized carrier changes ("slamming"). The California consumer protection rules are available online at www.cpuc.ca.gov.

**LEON ALPERT**
Billing Date:
Account Number:

8340 1000 NX 7 12    0004598

Page 3 of 3
August 12, 2006
834010 110 0088309

## *Account Details*

**This statement is for service from 8\12\06 to 9\11\06**
Payments received after August 12, 2006 will be reflected on your next bill.

| | | |
|---|---|---|
| 08/11 | Oper/Dir Assistance | 3.97 |
| 08/12 | International L.D. Calls | 4.65 |

| **Taxes & Fees** | | *Amount* |
|---|---|---|
| 08/12 | Cable Franchise Fee | 3.46 |
| 08/12 | CA Relay Service & Comm. Device Fund | .11 |
| 08/12 | CA Universal Lifeline Tel Serv Surcharge | .36 |
| 08/12 | CA High Cost Fund A | .05 |
| 08/12 | CA High Cost Fund B | .74 |
| 08/12 | Emergency Telephone Users Surcharge Tax | .22 |
| 08/12 | Federal Universal Service Fund | 3.48 |

| **Amount Due** | **$ 180.66** |
|---|---|

**TW0111**

EXHIBIT E

Page 1 of 3

8949 WARE COURT SAN DIEGO CA
92121-2275        8340 1000 NX 7 12        0004721

#BWNKTKR
#1659898899911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

Billing Date:                    September 12, 2006
Account Number:        834010 110 0088309

**How to reach us ....**
☎        CUSTOMER SERVICE (858) 695-3220
        TECHNICAL SUPPORT OPEN 24 HOURS
        BILLING OR SALES 8-8 M-F & 8-5 SAT

## Account Snapshot

| | |
|---|---:|
| Previous Balance | $ 180.66 |
| Payments | - 180.66 |
| Monthly Charges | 156.70 |
| Pay-Per-View Charges | 7.94 |
| Taxes & Fees | 7.66 |
| Amount Due | $ 172.30 |
| Payment Due Date | 10/02/06 |

*(See additional page(s) for account details.)*

## Important Viewer News



Showtime will offer a Free Preview Oct. 6-9 to Time Warner Cable digital customers on channels 640,642-650, 661 and 662. An HD converter and an HD TV are required to receive Showtime HD. Some programs may contain PG, PG-13, TV14, TVMA and R rated programs.

The Showtime Free preview can be blocked by using your Parental Control features. Tune to channel 100 and follow the tutorial instructions. You may also visit our website at www.twcsd.com or call us at 858-695-3220.



To view the call detail for all of your Digital Phone calls, go to http://www.twcdigitalphone.com and select the "My Account" link.

## Payment Coupon

LEON ALPERT
Billing Date:                    September 12, 2006
Account Number:        834010 110 0088309

Please detach and enclose this coupon with your payment.
*Do not send cash. Make checks payable to*
*TIME WARNER CABLE .*
Allow 4-5 days for your mailed payment to be credited.

**CUSTOMER SERVICE (858) 695-3220**

| | |
|---|---:|
| Amount Due | $ 172.30 |
| Payment Due Date | 10/02/06 |

**Amount Enclosed** [ $          ]

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

834010110008830900172304

**TW0112**

LEON ALPERT
Billing Date:
Account Number:

Page 2 of 3
September 12, 2006
834010 110 0088309

8340 1000 NX 7 12     0004721

## Account Details

This statement is for service from 9\12\06 to 10\11\06
Payments received after September 12, 2006 will be reflected on your next bill.

| Previous Balance | | | $ 180.66 |
|---|---|---|---|

| Payments | | | Amount |
|---|---|---|---|
| 09/01 | Payment - Thank You | | - 180.66 |

| Monthly Charges | | | Amount |
|---|---|---|---|
| 09/12 - 10/11 | Digital Phone Package -- Includes Unlimited Local And | | 39.95 |
| | Long Distance Calling Within The United States, | | |
| | Us Territories And Canada | | |
| 09/12 - 10/11 | iCONTROL Premium Service | | 6.95 |
| | Your Pay Service(s) On Demand | | |
| 09/12 - 10/11 | HDTV Converter         (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | HDTV Converter         (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | Service Protection Plan | | 2.95 |
| 09/12 - 10/11 | Premier Digital | | 11.00 |
| | Digital Movie Pack | $4.00 | |
| | Digital Variety Pack | $4.00 | |
| | Navigator Screen Guide | $3.00 | |
| 09/12 - 10/11 | Any 4 Premium Channels | | 24.95 |
| | Cinemax | $6.24 | |
| | HBO | $6.24 | |
| | Showtime | $6.24 | |
| | STARZ | $6.23 | |
| 09/12 - 10/11 | Wireless Road Runner | | 54.90 |
| 09/12 - 10/11 | Navigator Screen Guide | | .00 |

| Pay-Per-View Charges | | | Amount |
|---|---|---|---|
| 08/26 | The Matador | Start 09:01 P.M. | 3.95 |
| 09/02 | Angels With Dirty Fa | Start 08:41 P.M. | 0.00 |
| 09/02 | 16 Blocks Widescreen | Start 09:09 P.M. | 3.99 |

### ADDITIONAL DETAILS CONTINUED ON NEXT PAGE

#### ABOUT YOUR TIME WARNER CABLE AGREEMENT

**OFFICE LOCATION and WRITTEN INQUIRIES:**
San Diego: 8949 Ware Ct., San Diego, CA. 92121. Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118. Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct. Our billing number is (858) 695-3220, or (619) 435-0157.
Payments: Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill. If we do not receive your payment by this date, your service may be interrupted. If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for each outlet. Advance payment of a deposit and your next month's service fee may also be required. You may request your deposit returned after one year of a good payment record by calling (858) 695-3220, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically. Equipment: Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property of Time Warner Cable. Additional cable connections and alterations to our equipment are not authorized unless performed by company personnel on behalf of the company. Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable wear and tear excepted. If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment. If your credit is less than $3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund. However, if you have not returned your equipment, or you have an outstanding balance at the time service is terminated, we will apply any deposits to the payment of such charges and issue a refund, if applicable, of the difference.
**Franchising Authority Information:**

| City of San Diego | County of San Diego | City of Poway | City of Coronado: | Navy Housing: |
|---|---|---|---|---|
| City of San Diego | (outside city limits): | City of Poway | 1825 Strand Way | NAVCOMTELSTA |
| 1200 3rd Ave., Suite 250 | County of San Diego | 13325 Civic Center Drive | Coronado, CA 92118 | San Diego, Code N52 |
| San Diego, CA 92101 | 1600 Pacific Hwy., Room 208 | Poway, CA 92064 | (619) 522-7335 | Box 357056 |
| (619) 236-6010 | San Diego, CA 92101 | (858) 668-4590 | Comm ID# CA0431 | San Diego, CA 92135-7056 |
| Comm ID# CA0428 | (619) 595-4650 | Comm ID# CA0572 | | (619) 532-1364 |
| | Comm ID# CA0568 | | | Comm ID# CA0428 |

**Digital Phone Consumer Information:** Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: The CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ("slamming"). The California consumer protection rules are available online at www.cpuc.ca.gov.

TW0113

LEON ALPERT
Billing Date:
Account Number:

8340 1000 NX 7 12    0004721

Page 3 of 3
September 12, 2006
834010 110 0088309

## Account Details

This statement is for service from 9\12\06 to 10\11\06
Payments received after September 12, 2006 will be reflected on your next bill.

**Taxes & Fees**

| | | Amount |
|---|---|---|
| 09/12 | Cable Franchise Fee | 3.67 |
| 09/12 | CA Relay Service & Comm. Device Fund | .09 |
| 09/12 | CA Universal Lifeline Tel Serv Surcharge | .31 |
| 09/12 | CA High Cost Fund A | .05 |
| 09/12 | CA High Cost Fund B | .63 |
| 09/12 | Emergency Telephone Users Surcharge Tax | .19 |
| 09/12 | Federal Universal Service Fund | 2.72 |

**Amount Due**         **$ 172.30**

**EXHIBIT F**



Slip Copy                                                                                          Page 1

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

**H**
Riensche v. Cingular Wireless LLC
W.D.Wash.,2007.
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.
Nathan RIENSCHE, individually and on behalf of
all the members of the class of persons similarly
situated, Plaintiffs,
v.
CINGULAR WIRELESS LLC, a Delaware limited
liability company, d/b/a Cingular Wireless, New
Cingular Wireless Services, Inc., a Delaware
corporation, d/b/a AT & T Wireless, New Cingular
Wireless Services Purchasing Company, L.P., a
Delaware limited partnership, d/b/a Cingular
Wireless, and New Cingular Wireless PCS, LLC, a
Delaware limited liability company, d/b/a Cingular
Wireless, Defendants.
**No. C06-1325Z.**

Nov. 9, 2007.

David Elliot Breskin, Daniel Foster Johnson, Roger
M. Townsend, Breskin Johnson & Townsend
PLLC, Seattle, WA, for Plaintiffs.
Scott A.W. Johnson, Shelley Hall, Bradford J. Axel,
Stokes Lawrence, Seattle, WA, for Defendants.

**ORDER**
THOMAS S. ZILLY, District Judge.
**\*1** THIS MATTER comes before the Court on
cross-motions for summary judgment and a motion
for class certification. Having reviewed all papers
filed in support of and in opposition to each motion
and having heard the arguments of counsel, the
Court does hereby ORDER:
(1) Defendants' motion for summary judgment,
docket no. 43, is GRANTED. Plaintiff's claims for
breach of contract and unjust enrichment, Counts I
and IV of the Complaint, are DISMISSED with
prejudice based on the voluntary payment doctrine.
Plaintiff's claim for violation of Washington's

Consumer Protection Act, Count II of the
Complaint, is DISMISSED with prejudice based on
the merits.
(2) Plaintiff's cross-motion for partial summary
judgment, docket no. 57, is DENIED.
(3) Plaintiff's motion for class certification, docket
no. 45, is STRICKEN as moot.
(4) The trial and related dates are hereby
STRICKEN. The Clerk is directed to enter
JUDGMENT consistent with this Order.
(5) The Clerk is further directed to send a copy of
this Order to all counsel of record.

*Background*

This putative class action, alleging breach of
contract, violation of Washington's Consumer
Protection Act, and unjust enrichment, was brought
by Nathan Riensche against defendants Cingular
Wireless LLC, New Cingular Wireless Services,
Inc., New Cingular Wireless Services Purchasing
Company, L.P., and New Cingular Wireless PCS,
LLC ("Cingular Wireless"). The target of
Riensche's various claims is Cingular Wireless's
practice over a four-year period of passing along to
its customers, as a "surcharge," the business and
occupation ("B & O") tax assessed against the
company by the State of Washington.[FN1]

> FN1. In a previous Order, docket no. 31,
> the Court dismissed Count III of the
> Complaint, which sought a judgment
> declaring that the B & O surcharge violates
> RCW 82.04.500, because the state statute
> is, in this context, preempted by federal
> law.

Nathan Riensche is a certified public accountant,
who has previously worked for Deloitte & Touche,
as a corporate tax consultant, and for The Seattle
Times, as a tax compliance employee. Riensche

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                      Page 2

**Slip Copy, 2007 WL 3407137 (W.D.Wash.)**
**(Cite as: Slip Copy)**

Dep. at 7-9, Exh. A to Hall Decl. (docket no. 44) [hereinafter "Riensche Dep."]. Riensche currently works for Partners in Care as the finance director, which for that company is the equivalent of a chief financial officer. Riensche Dep. at 10-11. While working for The Seattle Times from 2002 through 2006, Riensche was the person responsible for preparing B & O tax returns and for ensuring that the tax was paid to the State of Washington. Riensche Dep. at 8-9, 12-13.

On April 2, 2004, while still working for The Seattle Times, Riensche activated cellular telephone service with Cingular Wireless via its "e-store" on the Internet. Bennett Decl. at ¶ 3, Exh. 7 to Breskin Decl. (docket no. 59) [hereinafter "Bennett Decl."]. Riensche had grown dissatisfied with his previous service provider, AT & T Wireless,[FN2] and took advantage of the ability to "port" his existing number to a new carrier. Riensche Dep. at 24-25; Bennett Decl. at ¶ 3. During the online activation process, Riensche was required to make service selections and input billing information. Bennett Decl. at ¶ 3. Before "checkout," Riensche was provided an opportunity to review the Wireless Service Agreement Rate Plan Terms & Conditions (the "Service Agreement"). Bennett Decl. at ¶ 3; *see also* Exh. A to Bennett Decl. To complete the transaction, Riensche was required to click a dialogue box stating "I have read and agree to the service agreement." Bennett Decl. at ¶ 3.

> FN2. At the time Riensche made the decision to switch service providers, he was a named plaintiff in a putative class action filed in King County Superior Court against AT & T Wireless Services, Inc. (" AWS"). Riensche Dep. at 24. In that case, the trial court denied class certification, but the Washington Court of Appeals recently reversed and remanded for further proceedings. *Schnall v. AT & T Wireless Serv., Inc.,* 139 Wn.App. 280, 161 P.3d 395 (2007). AWS was recently acquired by Cingular Wireless; both companies are now together known as AT & T Mobility. Hall Decl. at ¶¶ 4-5 (docket no. 44).

*2 The Service Agreement contains the following relevant provisions.[FN3] First, it requires the customer to notify Cingular Wireless in writing " WITHIN 100 DAYS OF THE DATE OF THE BILL" of any dispute "WITH RESPECT TO THE BILL, INCLUDING ANY CHARGES ON THE BILL." Exh. A to Bennett Decl. (emphasis in original). Second, the Service Agreement indicates that the customer is "responsible for paying all charges *for or resulting from* services provided" and that charges "include, without limitation, airtime, roamer, recurring monthly service, activation, administrative, and late payment charges; *network and other surcharges;* optional feature charges; toll, collect call and directory assistance charges; any other charges or calls billed to your phone number; *and applicable taxes and governmental fees, whether assessed directly upon you or upon Cingular.*" Exh. A to Bennett Decl. .(emphasis added). Finally, the Service Agreement reserves to Cingular Wireless the right to "change any terms, conditions, rates, fees, expenses, or charges ... at any time." Exh. A to Bennett Decl.

> FN3. The Service Agreement appears to be expressly governed by Washington law. *See* Exh. A to Bennett Decl. ("The law of the state of your billing address shall govern this Agreement except to the extent that such law is preempted by or inconsistent with applicable federal law.").

At his deposition, Riensche did not recall whether, at the time of purchase, he reviewed the terms of the Service Agreement. Riensche Dep. at 34-35. He acknowledged that he was given an opportunity to print the Service Agreement, but he chose not to do so, explaining that "I sort of assumed that it's all just standard language that's going to be the same from one cell phone company to the next, and my desire to have a cell phone was greater than my desire to wade through all the terms and conditions, so I just clicked 'Accept.' " Riensche Dep. at 35-36.

After a customer activates service via the e-store, Cingular Wireless generally sends the customer a " Welcome Kit," which contains *inter alia* another copy of the Service Agreement. Bennett Decl. at ¶

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

5. During his deposition, Riensche acknowledged receiving the cellular telephone from Cingular Wireless in the mail, along with other materials, but he did not specifically recall whether he received the Welcome Kit, and he did not retain any of the items accompanying the phone. Riensche Dep. at 37-39.

The first bill Riensche received from Cingular Wireless, for the period from April 2, 2004, through May 1, 2004, reflected a "State B and O Surcharge" of $0.51. Exh. B to Hall Decl. (docket no. 44) [hereinafter "Hall Decl."]. Cingular Wireless had been including the itemized B & O surcharge on customer bills since sometime in 2002. Lindsey Dep. at 24 (*Peck v. Cingular Wireless, LLC,* Case No. C06-343Z), Exh. 1 to Breskin Decl. (docket no. 59). Cingular Wireless continued to assess the B & O surcharge until January 2006, when it voluntarily suspended the practice. Hall Decl. at ¶ 6. Apparently during this same period (2002-2006), four other cellular service providers did not include an itemized B & O surcharge on their bills; however, two of the companies (T-Mobile and Verizon Wireless) listed surcharges described more generically as "regulatory" or "administrative." Breskin Decl. at ¶ 6 (docket no. 59);*see also* Exh. 5 to Breskin Decl. (containing billing statements from: (i) Verizon Wireless, dated Jan. 19, 2006; (ii) VoiceStream Wireless, dated Feb. 10, 2002; (iii) T-Mobile, dated Mar. 19, 2007; and (iv) AT & T Wireless, dated July 9, 2002).

**\*3** At his initial deposition, Riensche could not recall when he first noticed the B & O surcharge on his bill. Riensche Dep. at 22. Riensche indicated that, early in his relationship with Cingular Wireless, he arranged for his cellular telephone bills to be automatically charged to his credit card. Riensche Dep. at 42-43. As a result, Riensche often did not review his itemized cell phone statements, instead relying on his credit card statement to gauge whether the total amount of the Cingular Wireless bill seemed accurate. Riensche Dep. at 42-44. During his subsequent court-ordered deposition, *see* Minute Order (docket no. 105), Riensche admitted that he reviewed his bills to see whether the B & O surcharge appeared therein only after suggestion by counsel so that the two men could later talk about

how Riensche "might get involved." Riensche Supp. Dep. at 5:18-22, 6:10-18, Exh. A to Johnson Decl. (docket no. 112). With the exception of this lawsuit, since becoming a Cingular Wireless customer, Riensche has never found a discrepancy on a bill, called customer service to dispute a bill, or directly contacted Cingular Wireless to inquire, complain, withhold payment, seek a credit or refund, or otherwise "do anything about" the B & O surcharge. Riensche Dep. at 39-40, 44-45.

In July 2006, Riensche filed the current putative class action in King County Superior Court, alleging that Cingular Wireless breached its various service contracts and was unjustly enriched by collecting the B & O surcharge from customers. Counts I & IV of Complaint, Exh. A to Notice of Removal (docket no. 1). Riensche also alleged that Cingular Wireless violated Washington's Consumer Protection Act by failing to disclose and then collecting the B & O surcharge from customers. Count II of Complaint, Exh. A to Notice of Removal (docket no. 1). The case was removed to federal court on preemption and diversity grounds. Notice of Removal (docket no. 1). The Court has previously denied Cingular Wireless's motion to compel arbitration, and granted in part Cingular Wireless's motion to dismiss for failure to state a claim (as to Count III, seeking declaratory judgment). Order dated Dec. 27, 2005 (docket no. 22); Order dated Mar. 22, 2007 (docket no. 31). Both sides now move for summary judgment as to the substance of Riensche's claims, and Riensche moves for class certification.

### Discussion

### A. *Summary Judgment Standard*

The Court must grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A fact is material if it might affect the outcome of the suit

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In support of its motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex,* 477 U.S. at 323; rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson,* 477 U.S. at 249.

**\*4** When a properly supported motion for summary judgment has been presented, the adverse party " may not rest upon the mere allegations or denials" of its pleadings. Fed.R.Civ.P. 56(e). The non-moving party must set forth "specific facts" demonstrating the existence of a genuine issue for trial. *Id.; Anderson,* 477 U.S. at 256. A party cannot create a genuine issue of fact by simply asserting " some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, to survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn. *Id.* at 255, 257.When the record, however, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Miller v. Glenn Miller Prod., Inc.,* 454 F.3d 975, 932 (9th Cir.2006); *see also Beard v. Banks,* 126 S.Ct. 2572, 2578 (2006) (quoting *Celotex,* 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")).

**B. *Riensche's Claims***

Riensche asserts different theories (breach of contract, unjust enrichment, and unfair or deceptive trade practices), but all of his claims are based on the same factual premise, namely that Cingular Wireless was not entitled to collect a B & O surcharge from its customers during the years 2002 through 2006. Riensche contends that the surcharge breached the contract between the parties because it

was not "for or resulting from" services provided by Cingular Wireless and was not an "applicable tax." Rather, the surcharge was in the nature of overhead and was assessed regardless of whether the customer made any calls. Riensche argues that, because the surcharge was extra-contractual, Cingular Wireless was unjustly enriched through its collection. Finally, Riensche claims that the surcharge constitutes an unfair or deceptive trade practice because Cingular Wireless failed to specifically disclose it during the activation (pre-sale) process and did not adequately describe it in the monthly billing statements.

On the other hand, Cingular Wireless takes the position that the contractual language authorizes it to impose "network and other surcharges" and " applicable taxes and government fees," even if assessed against the company rather than its customers. Cingular Wireless further asserts that Riensche's breach of contract claim is barred by the voluntary payment doctrine. With regard to Riensche's restitution claim, Cingular Wireless argues that recovery on an unjust enrichment theory is precluded when the parties have a valid contract governing the dispute. Finally, Cingular Wireless denies engaging in unfair or deceptive trade practices, indicating an absence of evidence to suggest that the company made any inaccurate or improper disclosures or that Riensche relied on any statements or representations made by Cingular Wireless. Because Cingular Wireless contends that the voluntary payment doctrine defeats most of Riensche's claims, the Court first addresses the viability and applicability of that defense.

**C. *Voluntary Payment Doctrine***

**\*5** Although class actions challenging a small surcharge in a larger bill have been brought with surprising frequency nationwide, they have enjoyed minimal success due primarily to the voluntary payment doctrine.[FN4]The doctrine bars recovery for money "voluntarily paid with a full knowledge of all the facts," absent fraud, duress, or extortion, even when no obligation to make the payment existed. 70 C.J.S. Payment § 104 (2007). Washington follows the voluntary payment

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

doctrine, calling it a "well-settled general rule." [FN5] *Maxwell v. Provident Mut. Life Ins. Co.,* 180 Wn. 560, 567, 41 P.2d 147, 150 (1935); *see also Hawkinson v. Conniff,* 53 Wn.2d 454, 334 P.2d 540 (1959); *Speckert v. Bunker Hill Ariz. Mining Co.,* 6 Wn.2d 39, 106 P.2d 602 (1940); *Maziarski v. Bair,* 83 Wn.App. 835, 844 n. 14, 924 P.2d 409, 414 n. 14 (1996) (citing *Rainier Nat'l Bank v. Wells,* 65 Wn.App. 893, 829 P.2d 1168 (1992)).

> FN4. Indiana stands alone in completely refusing to apply the voluntary payment doctrine to these types of consumer complaints. *Time Warner Entm't Co. v. Whiteman,* 802 N.E.2d 886 (Ind.2004); *see BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 771 (Tex.2005) ("With one exception, courts in every other jurisdiction have applied the voluntary-payment rule to claims that a late fee like the one here is an illegal penalty."). In *Whiteman,* the Indiana Supreme Court denounced the voluntary payment doctrine, indicating that, "as a matter of policy," favoring "a private enterprise over private individuals" was not appropriate, and that the preferable result is for the enterprise rather than the individual to "suffer the consequences" of erroneous billing. 802 N.E.2d at 892-93. The *Whiteman* Court cited with approval commentary by the American Law Institute:
> When properly employed, a reference to " voluntary payment" is judicial shorthand for a truth of common experience: that a person must often choose to act on the basis of imperfect knowledge.... A more appropriate statement of the voluntary-payment rule, therefore, is that money voluntarily paid *in the face of a recognized uncertainty as to the existence or extent of the payor's obligation to the recipient* may not be recovered, on the ground of "mistake," merely because the payment is subsequently revealed to have exceeded the true amount of the underlying obligation.

> *Id.* at 892 (quoting Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. e (Tentative Draft No. 1, 2001) (emphasis in original)). Based on the preceding language, the Indiana Supreme Court opined that whether the plaintiffs voluntarily paid the late fees at issue in the face of a "recognized uncertainty" constituted, at a minimum, a genuine issue of material fact precluding summary judgment. *Id.* Because the majority of state courts to consider the issue have employed the voluntary payment doctrine in contexts similar to the one here, the Court declines to follow the Indiana Supreme Court's lead.

> FN5. Moreover, Washington does not appear to have abrogated the voluntary payment rule via statute, unlike Florida, which explicitly renders the doctrine inapplicable to breach of contract claims. Fla. Stat. § 725.04; *see also BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763 (Tex.2005) (taking note of the statutory remedies that have supplanted the voluntary payment doctrine in a number of contexts, but finding that the rule continues to have limited application in Texas).

The voluntary payment doctrine imposes upon a person who disputes the appropriateness of a bill the obligation to assert the challenge either before or contemporaneously with making payment.[FN6] *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship,* 255 Wis.2d 447, 457, 649 N.W.2d 626, 631 (2002). The doctrine serves two purposes. First, it permits entities receiving payment for services to rely upon the funds and "use them unfettered in future activities."*Id.* at 460, 649 N.W.2d at 633;*see Dallas County Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 876-77 (Tex.2005) (recognizing the government's strong interest in financial stability in the context of taxation, to which the voluntary payment doctrine likewise applies); *see also Spagnola v. The Chubb Corp.,* 2007 WL 927198 at *3 (S.D.N.Y.) (the doctrine "exists to protect persons who have had unsolicited 'benefits' thrust upon them"). Second, the doctrine discourages litigation because, after being notified of a dispute

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 6

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

by the payor, the payee presumably will take steps to rectify the situation and avoid suit. *Putnam,* 255 Wis.2d at 460, 467, 649 N.W.2d at 633, 636 ("All that a payor has to do to sidestep the voluntary payment doctrine is to make some form of protest.... When a payee has been given that notice, the funds received can be secured ... until the dispute is settled."); *see Bolton,* 185 S.W.3d at 877;*see also Hawkinson,* 53 Wn.2d at 459, 334 P.2d at 544 ("To allow a person who has made payment of a disputed debt later to seek restitution from the creditor, would be to permit him, by postponing suit, to choose his own time and place for litigation and to change his position from that of a defendant to that of a plaintiff, which would be unfair to the other party."(quoting RESTATEMENT OF RESTITUTION § 71 cmt. b (1937))).

> FN6. The Washington Supreme Court recently held that RCW 82.04.500 bars a business from tacking a B & O surcharge onto the purchase price.*Nelson v. Appleway Chevrolet, Inc.,* 160 Wn.2d 173, 185, 157 P.3d 847, 853 (2007) (" Appleway can disclose or itemize costs associated with the purchased item, but unlike a sales tax, it cannot add a B & O tax to the purchase price."). The *Nelson* case, however, is factually distinguishable. In *Nelson,* the plaintiff purchased a used car from the Appleway dealership. *Id.* at 178,147 P.3d at 849. After negotiating the final price, Appleway added a B & O tax of $79.23. *Id.* The plaintiff paid the B & O tax under protest, and filed a putative class action soon thereafter. *Id.* at 178 & n. 3, 147 P.3d at 849 & n. 3. Because the plaintiff in *Nelson* contemporaneously disputed the dealership's collection of the B & O surcharge, the voluntary payment doctrine was not addressed.

### 1. *Merits of the Voluntary Payment Doctrine*

In the various cases in which claims were dismissed pursuant to the voluntary payment doctrine, the putative class action plaintiffs unsuccessfully asserted two types of argument: (i) mistake of fact,

and (ii) duress or business compulsion. Riensche makes these same contentions, and the Court concludes that they likewise lack merit.

#### a. *No Mistake of Fact*

*6 Riensche asserts that Cingular Wireless bears the burden of proving he had "full knowledge" of all facts relevant to payment of the B & O surcharge, citing *Loconti v. City of Utica,* 61 Misc.2d 855 (N.Y.Sup.Ct.1969). Riensche's argument runs counter to the weight of authority, which places on the payor an obligation to investigate and to dispute the charge. For example, courts in Georgia, New York, and Wisconsin, in addressing claims by cable television customers that the late fees assessed by the respective companies constituted unlawful liquidated damages, rejected the contention that payments were made due to mistake of fact. *Telescripps Cable Co. v. Welsh,* 247 Ga.App. 282, 542 S.E.2d 640 (2000); *Dillon v. U-A Columbia Cablevision of Westchester, Inc d/b/a TCI Cable,* 100 N.Y.2d 525, 790 N.E.2d 1155, 760 N.Y.S.2d 726 (2003); *Putnam v. Time Warner Cable of Se. Wis, Ltd. P'ship,* 255 Wis.2d 447, 649 N.W.2d 626 (2002); *see also McWethy v. Telecommunications, Inc.,* 988 P.2d 356 (Okla.Civ.App.1999). In *Welsh, Dillon,* and *Putnam,* the plaintiffs alleged they paid the late fees at issue without knowing that the fees did not accurately reflect the actual costs associated with late payments. 247 Ga.App. at 284, 542 S.E.2d at 642;100 N.Y.2d at 526;255 Wis.2d at 461, 649 N.W.2d at 633. In essence, the plaintiffs were arguing that they did not realize the late fees were unenforceable. *See*247 Ga.App. at 285, 542 S.E.2d at 642. The courts uniformly held that the plaintiffs had made a mistake of law, not a mistake of fact, and were therefore precluded from recovery by the voluntary payment doctrine. 247 Ga.App. at 285, 542 S.E.2d at 642 ("when payment is made through mere ignorance of the law, it is not recoverable"); 100 N.Y.2d at 526 (finding no mistake because " plaintiff knew she would be charged a $5 late fee if she did not make timely payment"); 255 Wis.2d at 461-62, 649 N.W.2d at 633-34 ("the customers' failure to know the precise factors underlying Time Warner's decision to charge a $5.00 late fee cannot be held to be a mistake of fact as to the basis for the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 7

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

payment made").

A similar result was reached in a case contesting the collection of certain sales taxes by the provider of land-line telephone services. *Butcher v. Ameritech Corp.,* 298 Wis.2d 468, 727 N.W.2d 546 (2006). In *Butcher,* the putative class action plaintiffs alleged that Ameritech was illegally collecting from customers state sales taxes on services not falling within the definition of "telecommunications services." *Id.* at 475, 727 N.W.2d at 550. They argued that the voluntary payment doctrine did not apply due to mistake of fact resulting from Ameritech's failure to indicate on the billing statements which services were being taxed. *Id.* at 483-84, 727 N.W.2d at 554. The plaintiffs posited that, without such information, they were not on notice that Ameritech was charging for non-taxable items, and they should not be penalized for paying the amounts as billed. *Id.* The Wisconsin Court of Appeals was unpersuaded, observing that "it is not a mistake of fact when a customer pays the amount charged without having factual information from the company that would show the customer that the amount charged is unlawful, at least where the customer has made no inquiry to obtain the additional information."*Id.* at 485, 727 N.W.2d at 555. The *Butcher* Court applied the general presumption that consumers know the law, and it imposed on consumers a responsibility for "making additional inquiries if they want more information on which of the itemized services have been subject to the state five percent tax."*Id.* at 486, 727 N .W.2d at 556. Absent such investigation and having made payments without prior or contemporaneous objection, the plaintiffs could not assert mistake of fact to circumvent the voluntary payment doctrine. *See id.*

*7 Here, the parties agree that Riensche paid the B & O surcharge, without protest, each time it appeared on his bill. Moreover, Riensche admits that he did not routinely or carefully review his monthly statements and did not timely investigate the basis for the B & O surcharge. Finally, during the same time frame, Washington's Department of Revenue issued a notice indicating that businesses should not separately itemize and pass along the B & O tax to customers,[FN7] and at least four other

cellular service providers did not collect B & O surcharges from consumers. In light of the undisputed facts, the Court concludes, as a matter of law, that Riensche's payment of the B & O surcharge was voluntary and with full knowledge. He never contemporaneously protested the surcharge, never took steps to investigate whether it was properly assessed, and apparently never even tried to make himself aware it was being included in his bills. If he had made inquiry, he could have discovered the interpretation disseminated by the relevant state agency, and if he had actually been disgruntled about the B & O surcharge, he could have sought cellular services from a company that did not pass along the tax to its customers. *See Spagnola v. The Chubb Corp.,* 2007 WL 927198 at *3 (S.D.N.Y.) (observing that the plaintiff, rather than voluntarily paying the increasing insurance premiums, could have terminated the policy and " searched for a new provider within a well-developed insurance market").

> FN7.*See Nelson v. Appleway Chevrolet, Inc.,* 160 Wn.2d 173, 183-84, 157 P.3d 847, 852 (2007) (indicating that, in April 2002, Washington's Department of Revenue ("DOR") advised that "[t]he statute intends the B & O tax to be a part of the seller's overhead .... [but] does not prevent a seller from itemizing and showing the effect of the tax," and, in contrast, in September 2004, DOR opined that "[t]he B & O tax is a cost of doing business and should not be billed to your customer as a separately stated item (as is the sales tax)").

Moreover, the *Loconti* case, which Riensche cites, is not on point because it addressed a pure mistake of fact concerning whether the plaintiffs still owned the real property for which they had paid taxes. 61 Misc.2d at 855-57. The New York motions judge explicitly noted the distinction between tax payments made under mistake of law, for which no refund would be permitted, and those made under a mistake of fact. *Id.* at 857.In *Loconti,* the plaintiffs were not aware that the State had appropriated their land by condemnation prior to the date property

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 8

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

taxes were due. *Id.* at 855.Based on this "palpable mistake," the plaintiffs were entitled to a refund of the taxes paid. *Id.* at 857-58.Unlike *Loconti,* here, the mistake at issue is not one of fact (Riensche is not asserting that he erroneously believed he had a cellular telephone); rather Riensche's mistake is one of law, namely whether Cingular Wireless acted contrary to statute or its contract in assessing the B & O surcharge.

#### b. *No Duress or Business Compulsion*

Riensche asserts that, by the time he knew (or could have learned) about the B & O surcharge, the 15-day grace period for terminating the Service Agreement without a $150 penalty had expired, and thus, he was forced to continue paying the B & O surcharge. Riensche operates under too broad an understanding of duress. Although courts have recognized a range of situations, termed "business compulsion" or "economic duress," that will counteract the voluntary payment doctrine, the fees challenged in prior consumer class actions invariably did not rise to the requisite level. For example, in *Bolton,* a class of community college students challenged a technology fee set at a minimum of $10, with an increase of $2 per credit hour, up to a maximum of $40, for each student per semester. 185 S.W.3d at 870. The students asserted economic duress as a counter to the voluntary payment doctrine, but the Supreme Court of Texas rejected the argument, distinguishing the technology fee from the type of taxes or fees the nonpayment of which might forfeit one's livelihood or result in substantial damage to a business.[FN8]*Id.* at 878.The *Bolton* Court emphasized that the students could have minimized the fee by taking fewer credit hours and that, although up to ten percent of the student body could have applied for a waiver of the technology fee, not one student had done so.*Id.* at 880-81.Thus, contrary to the students' claims, their payment of the technology fee was not made under duress, but rather was voluntary, and the community colleges were entitled "to rely on a predictable income stream."*Id.* at 882.

FN8. Examples discussed in the opinion

included persons forced to choose between paying an illegal license fee to operate a cab or cab company or forfeiting their livelihood or right to do business, and persons forced to choose between paying an unconstitutional franchise fee and paying a substantial penalty plus forfeiting the right to do business in Texas. 185 S.W.3d at 878 (citing *Crow v. City of Corpus Christi,* 146 Tex. 558, 209 S.W.2d 922 (1948), and *Nat'l Biscuit Co. (Nabisco) v. State,* 134 Tex. 293, 135 S.W.2d 687 (1940)).

**\*8** Likewise, in a putative class action against a cellular service provider, the plaintiffs' assertion of duress was discounted. *Dreyfus v. Ameritech Mobile Communications, Inc.,* 298 Ill.App.3d 933, 700 N.E.2d 162 (1998). In *Dreyfus,* the plaintiffs, Larry Dreyfus and Rita Pun, alleged that, during the course of their respective service agreements with Ameritech Mobile, the company breached the contracts and engaged in both statutory and common law consumer fraud by imposing a new $0.02 per minute "interconnect" charge. *Id.* at 934-36, 700 N.E.2d at 163-64. Dreyfus's breach of contract claim was dismissed on the ground that his service agreement did not guarantee against a rate increase. *Id.* at 936-37, 700 N.E.2d at 164-65. Pun's agreement with Ameritech Mobile, however, did warrant that service rates would not change during the two-year contract term. *Id.* Nevertheless, Pun's breach of contract claim was dismissed because it was barred by the voluntary payment doctrine. *Id.* at 937-38, 700 N.E.2d at 165. On review, the Appellate Court of Illinois affirmed the trial court's conclusion that Pun's payments were not made under compulsion or duress, rejecting Pun's contention that cellular telephone service is an economic necessity. *Id.* at 940, 700 N.E.2d at 167. The Court reasoned:
[P]laintiff Pun has not alleged a lack of access to land-line phones at her work or anywhere else. Indeed, that would be a difficult argument to formulate as reasonable alternatives to cellular phone service unquestionably exist, whether at plaintiff Pun's place of business, her home, or a payphone. Thus, we find that cellular phone service is not a necessity and, therefore, plaintiff Pun

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 9

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

cannot establish that payments were made under compulsion or duress.

*Id.* (citing *Geary v. Dominick's Finer Foods, Inc.,* 129 Ill.2d 389, 398, 544 N.E.2d 344 (1989) and summarizing the case as "recognizing that if the service is not a necessity there can be no duress"; *see also Butcher v. Ameritech Corp.,* 298 Wis.2d 468, 727 N.W.2d 546 (2006) (declining to hold that basic, land-line, telephone service constitutes a necessity).

As indicated in *Dreyfus* and *Butcher,* telephone service, particularly cellular service, is not a necessity, and therefore termination of such service (with or without penalty) cannot form the basis of a duress claim. Moreover, contrary to Riensche's contention, payment of a penalty, albeit a substantial one in comparison to the challenged B & O surcharge, does not rise to the requisite level of compulsion; a $150 penalty for early termination is not analogous to forfeiting one's livelihood or substantially damaging a business. Finally, Riensche's duress argument assumes that Cingular Wireless would have terminated his cellular service agreement if he had protested and refused to pay the B & O surcharge. The contract between the parties, however, does not support such presumption; rather, it envisions and provides procedures for such disputes, stating in capital letters the time limit (100 days) and method (in writing, directed to the address listed) for identifying discrepancies. *See Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 853, 658 N.E.2d 1325, 1333 (1995) (describing as "wholly speculative" the plaintiffs' claim of compulsion based on the anticipated disruption of cable service due to non-payment). Thus, the Court concludes that Riensche has not established sufficient duress to excuse him from the requirements of the voluntary payment doctrine.

**2. *Applicability of the Voluntary Payment Doctrine***

**\*9** In their initial briefing, the parties disagreed concerning whether the voluntary payment doctrine applies to breach of contract and statutory fraud or consumer protection claims. Riensche, however, conceded that the defense can defeat a claim of

unjust enrichment. In light of a recent decision of the Washington Supreme Court, Cingular Wireless now agrees that the voluntary payment doctrine cannot be used as a defense to Riensche's statutory consumer protection claim. *See Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 2007 WL 3025836 (Wash. Oct. 18, 2007). Thus, the only possibly remaining dispute as to the applicability of the doctrine concerns the breach of contract claim. Texas appears to stand alone in holding, on a non-statutory basis, that the voluntary payment doctrine does not apply in such circumstances. *BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 775 (Tex.2005) ("It is true that, to the extent the subject matter of Peake's claims is covered by the parties' contract, the rule would not apply. But insofar as Peake alleges an illegal penalty has been assessed, which would operate to void the contractual late-fee payment obligation, his refund suit sounds in restitution for unjust enrichment."). In all other states in which the voluntary payment doctrine has been held to constitute a viable defense, the underlying theory of recovery has not affected the applicability of the doctrine. *See, e.g., Stone v. Mellon Mortgage Co.,* 771 So.2d 451, 456 (Ala.2000) ("Claims based on theories of breach of contract, unjust enrichment, and money had and received are precluded by proof that the plaintiff voluntarily paid what he or she is seeking to recover."); *Smith v. Prime Cable of Chicago,* 276 Ill.App.3d 843, 855 & n. 8, 658 N.E.2d 1325, 1334 & n. 8 (1995) (affirming the dismissal of claims for breach of contract, fraud, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, and violation of the Illinois Uniform Deceptive Trade Practices Act based on the voluntary payment doctrine); *Putnam v. Time Warner Cable of Se. Wis., Ltd. P'ship,* 255 Wis.2d 447, 453 n. 2, 470 n. 12, 649 N.W.2d 626, 630 n. 2, 637 n. 12 (2002) (concluding that the voluntary payment doctrine barred all claims for monetary damages, including violation of the Wisconsin Trade Practices Act, but the defense did not preclude prospective declaratory relief). Moreover, the Washington Supreme Court has recently verified the doctrine's relevance in the contract context. *Indoor Billboard,* 2007 WL 3025836 at \*14. The Court therefore holds that the voluntary payment doctrine applies to Riensche's

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

breach of contract and unjust enrichment claims, and the Court dismisses both causes of action based on that complete defense.[FN9]

> FN9. Cingular Wireless has raised the question whether Riensche's claim is properly brought as one for breach of contract or one for unjust enrichment; Riensche cannot under Washington law maintain both actions. *See MacDonald v. Hayner,* 43 Wn.App. 81, 86, 715 P.2d 519, 523 (1986) ("a claim for unjust enrichment in contravention of a provision in a valid express contract" will not be allowed). Because the Court concludes that, under either theory, Riensche would be precluded from recovery by the voluntary payment doctrine, the Court need not decide which cause of action is more appropriate. Moreover, even if the Court were to rule that the B & O surcharge falls outside the Service Agreement, the conclusion would follow that Riensche's claim is simply one for unjust enrichment, not breach of contract, and would be, as Riensche acknowledges, barred by the voluntary payment doctrine. *See Peake,* 178 S.W.3d at 775 (a consumer action seeking a refund is not a "run-of-the-mill" breach of contract case, but rather "sounds in restitution for unjust enrichment").

### D. *Washington Consumer Protection Act*

Riensche alleges that Cingular Wireless violated Washington's Consumer Protection Act ("CPA") by "failing to disclose, billing, and collecting" the B & O surcharge. Complaint at ¶ 5.2, Exh. A to Notice of Removal (docket no. 1). To establish a violation of the CPA, a private plaintiff must prove: (i) the defendant engaged in an unfair or deceptive act or practice; (ii) such act or practice occurred within a trade or business; (iii) such act or practice affected the public interest; (iv) the plaintiff suffered an injury to his or her business or property; and (v) a causal relationship exists between the defendant's act or practice and the plaintiff's injury. *Robinson v.*

*Avis Rent A Car Sys., Inc.,* 106 Wn.App. 104, 113, 22 P.3d 818, 823 (2001). Cingular Wireless argues that Riensche's CPA claim lacks merit because he cannot identify an unfair or deceptive act or practice and he cannot demonstrate causation. The Court concludes, as a matter of law, that Riensche cannot prove Cingular Wireless engaged in an unfair or deceptive act or practice, and therefore dismisses Riensche's CPA claim. *Id.* at 114, 22 P.3d at 823 (" If any element is not satisfied, there can be no successful CPA claim.").

### 1. *Unfair or Deceptive Trade Practice*

**\*10** If no dispute exists concerning what the parties did, whether the conduct at issue constitutes an unfair or deceptive trade practice within the meaning of the CPA constitutes a question of law. *See id.; see also Indoor Billboard,* 2007 WL 3025836 at \*7. To qualify, the alleged act must have had the "capacity to deceive a substantial portion of the public."*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 785, 719 P.2d 531, 535 (1986). Riensche asserts that Cingular Wireless (i) did not disclose, in the Service Agreement, its intention to assess the B & O surcharge, (ii) did not explain the B & O surcharge, and (iii) did not provide information from which a customer could derive how the surcharge was calculated and whether it was " reasonable." Cingular Wireless responds that (i) the Service Agreement indicates it may assess surcharges, (ii) the web site via which Riensche initiated his cellular service contained an explanation of "gross receipts" surcharges, and (iii) the B & O surcharge appeared as a line item in an appropriate section of the billing statement. The dispute between the parties boils down to one question: whether the amount of information disclosed by Cingular Wireless was so insufficient that it had the capacity to deceive a substantial portion of the public.

Although Riensche states his assertions in the absolute, his contention that Cingular Wireless provided no disclosure, no explanation, and no information is not supported by the materials he presented to the Court. Although the Court agrees

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 11

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

with Riensche that the B & O surcharge is not within the express contemplation of the Service Agreement, the Rate Plan Brochures for 2003, 2004, and 2005 all contain language indicating that Cingular Wireless imposes a "gross receipts surcharge," and the Rate Plan Brochure for 2006 describes an additional surcharge for " revenue-based state and local assessments on Cingular."Exh. 13 to Breskin Decl. (docket no. 59). This verbiage appears directly under a chart setting forth the number of minutes included with each of Cingular Wireless's differently priced packages. *Id.* Moreover, Riensche's first billing statement from Cingular Wireless, for the period from April 2 to May 1, 2004, recites, on a separate line, a "State B and O Surcharge" of $0.51. Exh. 3 to Breskin Decl. (docket no. 59). The total monthly service charges for the same period were $66.65, and the total usage charges were $0.02. *Id.* Based on this information, Riensche could easily have calculated the percentage or rate being used to compute the B & O surcharge.

When the documents Riensche has proffered are combined with the materials Cingular Wireless has provided in response to Riensche's motion for class certification, the Court can reach only one conclusion, namely that Cingular Wireless did not withhold information in a manner that was likely to deceive a substantial portion of the public. During the period when Riensche first activated service with Cingular Wireless, the company's web site, which was accessible via the Internet without any password, provided the following explanation for state gross receipts surcharge: "A fee that Cingular Wireless assesses on the customer that allows it to recover its costs with regard to specific government taxes imposed on the Company's gross receipts. The Gross Receipts Surcharge is not a mandated charge to the customer."Bennett Decl. at ¶¶ 3-5 & Exh. A (docket no. 87). In addition, during the relevant time frame, Cingular Wireless received customer complaints about the B & O surcharge, with some customers receiving credits as a result, evidencing that members of the public had sufficient information to formulate and favorably resolve disputes. Bethel Decl. at ¶¶ 6-7 (docket no. 95). The Court therefore concludes, as a matter of law, that Cingular Wireless did not hide from customers

its intent to assess or its actual levying of the B & O surcharge,[FN10] and that Riensche has failed to identify an unfair or deceptive trade practice.

> FN10. The Court finds unpersuasive Riensche's argument that Cingular Wireless violated the CPA by failing to explain exactly how the B & O surcharge was calculated. Riensche provides no authority for imposing such requirement. Moreover, Riensche's contention proves too much; the same could be said for the federal and state taxes Cingular Wireless adds to each customer's bill. If the Court were to adopt Riensche's view, Cingular Wireless would be required to include in its contract forms and promotional materials the rates associated with each tax imposed by federal or state law. The Court is well aware that tax rates, including the B & O rate, change from time to time, and the Court will not impose upon Cingular Wireless the unnecessary burden and expense of including, and continually updating, such rates in its advertising or its already lengthy standard service agreement. Such rates, again including the B & O rate, are readily ascertainable. *See, e.g.,* Washington Department of Revenue web site (http://dor.wa.gov/Cont ent/FindTaxesAndRates/).

### 2. *Causation*

*11 Although the Washington Supreme Court's decision in *Indoor Billboard* provides some guidance concerning the standard for causation, the parties continue to disagree concerning whether Riensche must prove reliance on the allegedly unfair or deceptive trade practice. The *Indoor Billboard* Court held that a private CPA plaintiff must show proximate cause, meaning a causal link between the misrepresentation and the plaintiff's injury. 2007 WL 3025836 at * 12. As both Riensche and Cingular Wireless recognize, however, *Indoor Billboard* is distinguishable because it dealt with affirmative misrepresentations

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 3407137 (W.D.Wash.)
**(Cite as: Slip Copy)**

rather than a failure to disclose, which is what Riensche alleges in this case. In light of the foregoing ruling regarding Riensche's inability to prove the first element of his CPA claim, the Court need not resolve this dispute. Moreover, given the remaining lack of clarity in Washington law on the subject, the Court declines to unnecessarily address the issue. *Compare id.* at *11 (with respect to affirmative misrepresentations, rejecting the standard applied by the Court of Appeals in *Pickett v. Holland Am. Line-Westours, Inc.,* 101 Wn.App. 901, 6 P.3d 63 (2000), *rev'd,*145 Wn.2d 178, 35 P.3d 351 (2001)) *with Schnall v. AT & T Wireless Serv., Inc.,* 139 Wn.App. 280, 161 P.3d 395 (2007) (applying the *Pickett* standard in a non-disclosure case).

### Conclusion

For the reasons articulated, the Court GRANTS summary judgment in favor of Cingular Wireless and DISMISSES plaintiff's remaining claims with prejudice. Accordingly, plaintiff's motion for summary judgment is DENIED and plaintiff's motion for class certification is STRICKEN as moot. Judgment in favor of Cingular Wireless shall be entered forthwith.

IT IS SO ORDERED.

W.D.Wash.,2007.
Riensche v. Cingular Wireless LLC
Slip Copy, 2007 WL 3407137 (W.D.Wash.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9
                SUPERIOR COURT OF CALIFORNIA
10
                    COUNTY OF SAN DIEGO
11

12
   LEON ALPERT, an individual, on behalf       CASE NO.  GIC881621
13 of himself, on behalf of all those similarly
   situated, and on behalf of the general      **PROOF OF SERVICE**
14 public,

15            Plaintiffs,                        Dept:      63
                                                Judge:     Luis R. Vargas
16        v.
                                                Complaint: March 13, 2007
17 TIME WARNER CABLE, INC., a                   FAC:       May 16, 2007
   Delaware corporation, and DOES 1 TO
18 100,

19            Defendants.

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1735197.1
325566-11

1　　　　I am a resident of the State of California, over the age of eighteen years, and not a party to
2　the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700,
　　San Diego, California 92101. On January 15, 2008, I served the within document(s):

3　　**1.　NOTICE OF MOTION AND MOTION OF DEFENDANT TIME WARNER
　　　　CABLE FOR SUMMARY JUDGMENT;**
4

5　　**2.　SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
　　　　DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT;**

6　　**3.　MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
　　　　DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT;**
7

8　　**4.　DECLARATION OF TERRI RHODES IN SUPPORT OF DEFENDANT TIME
　　　　WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT;**

9　　**5.　NOTICE OF LODGMENT OF EXHIBITS AND NON-CALIFORNIA
　　　　AUTHORITIES IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S
10　　　MOTION FOR SUMMARY JUDGMENT; and**

11　　**6.　REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT TIME
　　　　WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

12
13　☐　　by transmitting via facsimile the document(s) listed above to the fax number(s) set
　　　　　forth below on this date before 5:00 p.m.

14　☒ ·　by overnight mail by placing a sealed envelope or package designated by UPS,
15　　　　with delivery fees paid or provided for, a true copy of each documents(s) above, in
　　　　　DLA Piper US LLP's mail room for collection, processing and delivery this same
16　　　　day to a deposit box or other facility regularly maintained by the express service
　　　　　carrier, or delivered to an authorized courier or driver authorized by the express
17　　　　service carrier to receive documents. I further declare that I am readily familiar
18　　　　with the business' practice for collection and processing of correspondence for
　　　　　delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the
19　　　　correspondence shall be deposited with an express service carrier this same day in
　　　　　the ordinary course of business, to each addressee as set forth below.
20

21　☐　　by placing the document(s) listed above in a sealed envelope with postage thereon
　　　　　fully prepaid, in the United States mail at San Diego, California addressed as set
22　　　　forth below.

23　☐　　by personally delivering the document(s) listed above to the person(s) at the
　　　　　address(es) set forth below.
24

25　　**Attorneys for Plaintiff**

26　　Barron E. Ramos, Esq.　　　　　　　David R. Markham, Esq.
　　　Attorney at Law　　　　　　　　　　Clark & Markham
27　　132 N. El Camino Real, Suite 303　　　401 West A Street, Suite 2200
　　　Encinitas, CA 92024　　　　　　　　San Diego, CA 92101
28　　(858) 349-6019　　　　　　　　　　(619) 239-1321
　　　(760) 994-1354 (fax)　　　　　　　　(619) 239-5888 (fax)

DLA PIPER US LLP　SD\1735197.1　　　　　　　　　　　-1-
SAN DIEGO　　　325566-11

PROOF OF SERVICE

1

2        I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

3

4

5        I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

6        Executed on January 15, 2008, at San Diego, California.

7

8    _____
        Eloy Rodriguez

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1735197.1
325566-11

-2-

PROOF OF SERVICE

JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
CARRIE S. DOLTON (Bar No. 234298)
RYAN T. HANSEN (Bar No. 234329)
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK
GENERAL PARTNERSHIP, THROUGH ITS SAN
DIEGO DIVISION, DBA TIME WARNER CABLE

COPY FILED
SAN DIEGO SUPERIOR COURT

FEB **0 7** 2008

CLERK OF THE SUPERIOR COURT
BY _____ C. CHEELY _____

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

LEON ALPERT, an individual, on behalf
of himself, on behalf of all those similarly
situated, and on behalf of the general
public,

         Plaintiffs,

    v.

TIME WARNER CABLE, INC., a
Delaware corporation, and DOES 1 TO
100,

         Defendants.

CASE NO.  GIC881621

**DEFENDANT TIME WARNER CABLE'S
MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE [RE: TIME WARNER
CABLE'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS]**

Date        February 22, 2008
Dept:      63
Judge:    Luis R. Vargas

Complaint:  March 13, 2007
FAC:     May 16, 2007

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND.................................................................................2

      A.    TWC's Bulk and Residential Customers....................................................2

      B.    Plaintiff is a Resident of a Bulk-Customer HOA and Orders Additional
            Services............................................................................................................3

      C.    Plaintiff's Files this Lawsuit Against TWC Based on Purported
            Overcharging for Additional Services. ...................................................4

      D.    Discovery Request and Response at Issue.................................................4

      E.    Discovery Dispute and Summary of Meet and Confer Efforts.................5

III.  PLAINTIFF'S MOTION TO COMPEL LACKS MERIT......................................7

      A.    TWC Has Produced the Documents It Agreed to Produce in its Discovery
            Response. .........................................................................................................7

      B.    If Plaintiff's Motion can be Interpreted to Seek Additional "HOA Pricing,"
            it Seeks Information Plaintiff Knows Does Not Exist...............................8

      C.    If Plaintiff's Motion can be Interpreted to Seek Contracts and Documents
            Between Time Warner Entities and Homeowners' Associations, Such a
            Request is Improper......................................................................................11

            1.    Contracts and Documents Between Time Warner Entities and
                  Homeowners' Associations are Non-responsive to Plaintiff's
                  Discovery Request ............................................................................11

            2.    TWC Has Raised Valid Objections Against the Production of
                  Private Contracts and Documents between Time Warner Entities
                  and Homeowners' Associations.......................................................13

IV.   PLAINTIFF'S REQUEST FOR SANCTIONS IS ENTIRELY UNWARRANTED.......14

V.    SANCTIONS SHOULD BE AWARDED AGAINST PLAINTIFF AND HIS
      COUNSEL FOR BRINGING THIS FRIVOLOUS MOTION. .........................14

VI.   CONCLUSION...................................................................................................15

DLA PIPER US LLP
SAN DIEGO

# **TABLE OF AUTHORITIES**

**Page**

## **STATUTES**

Cal. Civ. Proc. Code § 2023.030(a)...........................................................................................14

Cal. Civ. Proc. Code § 2031.310(d)..........................................................................................14

Cal. Civ. Proc. Code §2031.320(b)...........................................................................................14

DLA PIPER US LLP
SAN DIEGO

1      Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2    general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3    erroneously as Time Warner Cable, Inc., respectfully submits the following Memorandum of

4    Points and Authorities in Opposition to Plaintiff's Motion to Compel Compliance [Re: TWC's

5    Responses to Plaintiff's Requests for Production of Documents].

## I.    INTRODUCTION.

7      Plaintiff's succinct motion to compel, and separate statement in support thereof, are based

8    entirely on the simple premise that TWC agreed to produce documents in response to the one

9    discovery request at issue, failed to produce the documents, and should be compelled to make the

10    previously agreed-to production.  The problem with Plaintiff's reasoning lies in the fact that TWC

11    specifically and unmistakably identified the documents it would produce in response to the

12    discovery request at issue (retail rate cards and rate change letters), and TWC timely produced the

13    documents.

14      Meet and confer correspondence, many of which were curiously omitted from Plaintiff's

15    motion, show that there is no dispute that TWC produced the retail rate cards and rate change

16    letters that it agreed to produce.  In fact, Plaintiff's counsel even admits in meet and confer

17    correspondence that he has the retail pricing produced by TWC, but is confused as to why no rate

18    cards were produced regarding  "HOA pricing" or "HOA bundles" for residents of homeowners'

19    associations outside the area covered by the San Diego Division (which includes its territory in

20    San Diego County and the Palm Springs area referred to as "Desert Cities").  That issue was

21    subsequently resolved after TWC's counsel repeatedly informed counsel for Plaintiff that no such

22    special "HOA pricing" or "HOA bundles" existed outside of the San Diego Division territory.

23      Notably, after the "HOA pricing" issue was resolved, Plaintiff's counsel then threatened

24    this motion to compel if TWC did not produce hundreds of private, individually negotiated

25    contracts between TWC and its bulk customers (such as the HOAs and apartment complex

26    owners—not the HOA residents and apartment tenants).  Such an attempt to dramatically

27    broaden, and essentially re-write, the discovery request at issue to extend to the confidential terms

28    and pricing in contracts between TWC and bulk customers—is entirely improper.

1     Even if Plaintiff's motion can be interpreted to seek the production of the "HOA pricing"

2    or bulk contracts discussed in meet and confer correspondence, the motion would still be entirely

3    frivolous. If generally available "HOA pricing" is somehow at issue, Plaintiff is seeking to

4    compel the production of documents that he knows, from meet and confer discussions, do not

5    exist. If the motion can be construed to seek private third-party contracts for services that are not

6    even at issue, Plaintiff is seeking to compel the production of highly confidential documents that

7    are non-responsive to the discovery request that is the subject of this motion. Furthermore,

8    Plaintiff has made no attempt to refute TWC's valid objections against the production of

9    documents other than those identified in its response.

10    Plaintiff's request for sanctions against TWC, based on an incomplete and inaccurate

11    description of the discovery dispute and meet and confer process, is even more frivolous than the

12    motion itself. Regardless of how Plaintiff's motion is interpreted, it is entirely without merit and

13    justifies sanctions against Plaintiff and his counsel in an amount sufficient to reimburse TWC for

14    the costs of having to oppose it.

15    **II.    FACTUAL BACKGROUND.**

16        **A.    TWC's Bulk and Residential Customers.**

17    TWC is a provider of cable services and sells its cable services generally to members of

18    the public. Pricing information is communicated to the public through "rate card" rates published

19    or distributed in various ways. In addition to establishing and communicating pricing on cable

20    services generally available to the public, TWC enters into bulk contracts with entities, such as

21    apartments and homeowners' associations ("HOA"), to provide cable services to all of the homes

22    within the complex at negotiated "bulk" rates. In instances where TWC negotiates a bulk

23    contract with a homeowners' association ("Bulk-customer HOA"), the Bulk-customer HOA is

24    TWC's client for the services, is billed for the services provided, and pays TWC for such

25    services. (Declaration of Terri Rhodes[1] ("Rhodes Decl.") ¶ 2.) Residents within Bulk-customer

26    HOAs are able to separately contract for additional cable services directly from TWC that are not

27

28

---

[1] "Declaration of Terri Rhodes" and "Rhodes Decl." refer to the Declaration of Terri Rhodes in Opposition to Plaintiff's Motion to Compel Compliance [Re: TWC's Responses to Plaintiff's Requests for Production of Documents].

1    provided for in the contract between TWC and the Bulk-customer HOA ("Additional Services").

2    (Rhodes Decl. ¶ 3.).

3         Residents of Bulk-customer HOAs who purchase Additional Services do so under a

4    separate agreement with TWC. Generally, such customers purchase each Additional Service at

5    the individually priced ("a la carte") retail rate. Retail rates are the same rates available to all

6    customers whether or not they receive some of their services through a bulk contract with their

7    HOA or landlord. For a limited period of time, from 2005 to October 15, 2007, residents of Bulk-

8    customer HOAs in the San Diego and Desert Cities areas could also order bundles of Additional

9    Services that were offered only to individuals who received some cable services, such as basic

10   cable, though a bulk customer. Plaintiff's counsel has referred to such bundled packages as

11   "HOA bundles" and/or "HOA pricing."

12       **B.    Plaintiff is a Resident of a Bulk-Customer HOA and Orders Additional**
           **Services.**
13

14        Plaintiff is a resident of a Bulk-customer HOA in the San Diego area. Under the bulk

15   contract between TWC and Plaintiff's HOA, TWC provides basic cable services to all residences

16   in the HOA, including Plaintiff's residence, and the HOA pays TWC for such services. In

17   addition, Plaintiff entered into an agreement with TWC to order Additional Services in or about

18   2003. TWC bills Plaintiff directly for the Additional Services that he ordered, and Plaintiff pays

19   TWC for such services.

20        Prior to September 2006, Plaintiff ordered Additional Services from TWC primarily on an

21   "a la carte" basis, with a few small bundled packages for services such as movies. In or about

22   September 2006, Plaintiff changed his Additional Services to order a single "HOA bundle" of

23   Additional Services that was generally available to all residents of bulk customers such as HOAs

24   and covered virtually all of the services Plaintiff had previously purchased on an a la carte basis.

25   The effect of this change from individually priced Additional Services to a single bundle of such

26   services was a price reduction in Plaintiff's monthly charges for Additional Services.

27   /////

28   /////

1  **C.    Plaintiff's Files this Lawsuit Against TWC Based on Purported Overcharging for Additional Services.**

2

3    On or about May 16, 2007, Plaintiff, on behalf of himself and other residents of Bulk-

4  customer HOAs in California, filed the operative amended Complaint against TWC in this case,

5  alleging a single cause of action under California's Unfair Competition Law.  Plaintiff's claim

6  against TWC is based on a theory (or more precisely an unfounded suspicion) that TWC

7  overcharged him by charging him for basic cable services provided for under the bulk contract

8  with his HOA.  Plaintiff appears to base this theory on the difference in his "a la carte" pricing for

9  Additional Services and the discounted pricing he later received when he purchased a

10  promotional "HOA bundle" of Additional Services.

11  **D.    Discovery Request and Response at Issue.**

12    On or about September 17, 2007, Plaintiff served TWC with his first set of Requests for

13  Production of Documents.  Plaintiff's first production request, the only request at issue here, asks

14  TWC to "produce all DOCUMENTS which depict pricing for all YOUR products and services,

15  including any bundled service packages, to RESIDENTS."  (TWC Separate Statement[2], p. 1.)

16  Plaintiff defined the term "RESIDENTS" to mean "occupants of properties during the time period

17  from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in

18  California with whom YOU had entered into a [bulk contract] to provide basic cable services to

19  the HOA members."  (*Id.*)

20    TWC responded to the production request by raising objections and stating:

21      "Subject to, and without waiving the General and Specific objections herein, and based on discovery and TWC's investigation

22      to date, TWC further responds as follows:  TWC has performed a good faith effort to supply documents that identify a price for TWC

23      products and services, and TWC will produce rate cards and rate change letters."

24

25  (TWC's Separate Statement, p. 1.)  TWC subsequently made a timely production of the above

26  mentioned rate cards and rate change letters.  (Declaration of Julie L. Hussey[3] ("Hussey Decl."), ¶

27  ───────────────
   [2] "TWC Separate Statement" refers to TWC's Separate Statement in Opposition to Plaintiff's Motion to Compel

28  Compliance [Re: TWC's Responses to Plaintiff's Requests for Production of Documents].
   [3] "Declaration of Julie L. Hussey" and "Hussey Decl." refers to the Declaration of Julie L. Hussey in Opposition to

1   2.) TWC had also produced the only other potentially responsive and relevant documents,

2   documents showing the rates for the "HOA bundles" that were available in the San Diego and

3   Desert Cities areas from 2005 to 2007. (Hussey Decl. ¶ 3.)

4        **E.**    **Discovery Dispute and Summary of Meet and Confer Efforts.**

5       After receiving TWC's response and documents to the production request at issue, counsel

6   for Plaintiff raised concerns that he had not received documents showing rates for "HOA

7   bundles" for Additional Services that were offered to residents of Bulk-customer HOAs outside

8   the San Diego and Desert Cities areas. Plaintiff's counsel was repeatedly informed, and

9   eventually understood, that no such pricing existed:

> **Plaintiff's counsel (11/26/07):** "I was reviewing the new docs you produced and did not find any 'rate cards' or other pricing for HOAs, except for in San Diego and Desert Cities. All I see is what appears to be the 'retail pricing' for the other (non-San Diego) communities. Am I missing something? It appears the HOA pricing as not produced"[4]

> **TWC's counsel (11/28/07):** "There are no HOA pricing rates outside the San Diego division. The only HOA specific pricing outside the San Diego division is the result of individually negotiated prices between a particular HOA and Time Warner."[5]

> **Plaintiff's counsel (11/29/07):** "I still don't have the HOA pricing for the rest of California . . ."[6]

> **TWC's counsel (12/3/07):** "Time Warner has produced a voluminous set of rate cards for the state of California (outside San Diego and Desert Cities) for 2007. We understand these to reflect all the current retail rates in effect throughout the other Divisions of Time Warner. We are not aware of the existence of any HOA rate cards for California outside San Diego and Desert Cities."[7]

> **Plaintiff's counsel (12/4/07):** "I was wondering if you are telling me that Time Warner's pricing for HOAs outside of San Diego/Desert Cities was on an HOA-by-HOA basis, rather than it is in San Diego where [TWC] uses one set of HOA pricing for San Diego and the Desert Cities in general, regardless of the individually negotiated rates for each HOA?"[8]

---

Plaintiff's Motion to Compel Compliance [Re: TWC's Responses to Plaintiff's Requests for Production of Documents].

[4] November 26, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 4, ¶ 1.
[5] November 28, 2007 letter from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 5, ¶ 2.
[6] November 29, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 6, ¶ 1.
[7] December 3, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 8, ¶ 2.
[8] December 4, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Hussey Declaration.

1

2

3

> **TWC's counsel (12/4/07):** "You are essentially correct. There is no HOA rate card pricing outside of San Diego and Desert Cities in California for HOA accounts. The only HOA pricing in California outside of San Diego and Desert Cities is the result of individually negotiated HOA specific contracts."[9]

4

5

6

7

> **Plaintiff's counsel (12/4/07):** "Thanks for the clarification. Then I take it there are no bundles, other than retail bundles, offered to those HOA customers outside San Diego/Desert Cities. Please advise. On the other hand, if I misunderstood you and there are bundles offered to HOA customers outside of San Diego/Desert Cities, can you produce documents that reflect those rates?"[10]

8

9

> **TWC's counsel (12/5/07):** "You are correct. Outside San Diego and Desert Cities there are no bundles for HOA customers other than retail bundles or individually negotiated bundles."[11]

10    Plaintiff's counsel then sought to expand the discovery request to ask not for pricing

11  provided to "RESIDENTS," but for each of the hundreds of individually negotiated bulk

12  contracts between TWC and its bulk customers for basic cable and other such services:

13

14

> **Plaintiff's counsel (12/5/07):** "OK, that helps a bit. Can I at least get the "individually negotiated bundles?"[12]

15  When questioned as to the relevance of seeking the individual bulk contracts, as opposed to the

16  "HOA pricing" or other pricing of Additional Services to "RESIDENTS," Plaintiff's counsel

17  responded by recognizing that only "HOA pricing" and retail pricing is relevant:

18

19

20

> **TWC's counsel (12/6/07):** "How are the rates that are negotiated between particular HOA[s] and [TWC] and reduced to private contracts relevant to your claim which, based on the pleadings, claims that your client was overcharged because his earlier bills were not priced to reflect his HOA's agreement[?]"[13]

21

22

> **Plaintiff's counsel (12/6/07):** "What is relevant is HOA pricing and retail pricing throughout California."[14]

23  /////

24  /////

25

26

27

28

---

[9] December 4, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.
[10] December 4, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.
[11] December 5, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.
[12] December 5, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.
[13] December 6, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.
[14] December 6, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.

DLA PIPER US LLP
SAN DIEGO

SD\1781107.5

-6-

1    Despite TWC's meet and confer efforts, Plaintiff filed this motion seeking the production

2    of "HOA rates other than the HOA rates applicable to the Desert Cities and San Diego [areas]."

3    (Plaintiff's Points and Authorities in Support of Motion ("Motion"), p. 3, lines 10-11.)

## III.    PLAINTIFF'S MOTION TO COMPEL LACKS MERIT.

5    Any possible interpretation of Plaintiff's vague motion to compel leads to the same

6    result—the motion is improper and without merit. Notably, the motion seeks to compel the

7    production of documents that TWC has already produced. Even if the motion, and discovery

8    request, can be interpreted to seek other documents, such documents are either non-existent, non-

9    responsive, irrelevant or all of the above.

### A.    TWC Has Produced the Documents It Agreed to Produce in its Discovery Response.

12    Plaintiff's entire motion to compel is premised on the theory that TWC agreed to produce

13    certain documents in response to the one discovery request at issue, but has since failed to make

14    the promised production. (Plaintiff's Points and Authorities in Support of Motion ("Motion"), p.

15    2, lines 9-11 ("Time Warner had previously agreed to produce the documents in its Response to

16    plaintiff's Request for Production . . ."); p. 3, lines 5-9 ("The documents at issue in this Motion,

17    which Time Warner agreed to produce in its Response to plaintiff's Request for Production . . .");

18    p. 4, lines 5-7 ("As part of its Response agreeing to product the documents requested, Time

19    Warner asserted various (mostly nuisance) objections, but did not refuse to produce the

20    documents notwithstanding those objections."); p. 4, lines 19-20 ("In sum, Time Warner has

21    already agreed to produce the documents at issue in this Motion, but has since refused to do so.");

22    Plaintiff's Separate Statement, p. 7, line 23 ("Time Warner has agree to produce all responsive

23    documents.").)

24    This theory, and thus Plaintiff's motion, lacks merit because TWC has unmistakably

25    produced all the documents it agreed to produce in its discovery response. After raising

26    appropriate objections, TWC responded to Plaintiff's document request by stating that it would

27    "produce rate cards and rate change letters." (TWC's Separate Statement, p. 1.) TWC

28    /////

1   subsequently produced the rate cards and rate change letters that it agreed to produce in its

2   response—as evidenced by the statement from Plaintiff's counsel that:

> "*I was reviewing the new docs you produced and* did not find any
> 'rate cards' or other pricing for HOAs, except for in San Diego and
> Desert Cities. *All I see is what appears to be the 'retail pricing'*
> *for the other (non-San Diego) communities.* Am I missing
> something? It appears the HOA pricing as not produced"

6   (November 26, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's

7   Motion, page 4, ¶ 1; Hussey Decl. ¶ 2.) The only other potentially responsive and relevant

8   documents, documents showing the rates for "HOA bundles" in San Diego and Desert Cities had

9   also been produced. (Hussey Decl. ¶ 3.) TWC made no agreement to produce other information

10  in response to Plaintiff's vague discovery request.

11         Accordingly, Plaintiff's motion to compel the production of the documents TWC agreed

12  to produce is entirely without merit, and moot, because those documents have already been

13  produced. Furthermore, as addressed in detail below, the documents produced by TWC are the

14  only relevant documents that could be responsive to Plaintiff's demand, other than individual

15  consumers' bills and other such documents that are inappropriate for discovery, because they

16  contain the pricing for Additional Services that Time Warner entities made generally available to

17  bulk HOA residents outside the San Diego and Desert Cities areas under separate bulk contracts.

18  (*See infra*, Part C.1, p. 12, lines 7-18.)

19         **B.    If Plaintiff's Motion can be Interpreted to Seek Additional "HOA Pricing," it**
           **Seeks Information Plaintiff Knows Does Not Exist.**
20

21         As noted above, Plaintiff's motion is based on an alleged failure by TWC to produce the

22  rate cards and rate change letters that it agreed to produce in its discovery response. However, to

23  the extent Plaintiff's motion is interpreted to seek documents regarding special "HOA rates" for

24  Additional Services offered to residents of Bulk-customer HOAs, Plaintiff seeks documents that

25  he knows are non-existent. (Motion p. 3, lines 10-11 ("To date, Time Warner has refused to

26  produce any HOA rates other than the HOA rates applicable to the Desert Cities and San Diego

27  [areas].").)

28  /////

1    In the meet and confer process, Plaintiff's counsel asked TWC to produce "HOA pricing"

2  (or special pricing of Additional Services available to residents of Bulk-customer HOAs, similar

3  to the package purchased by Plaintiff) outside the San Diego and Desert Cities areas in response

4  to the discovery request at issue in this motion. Through numerous meet and confer efforts,

5  Plaintiff's counsel was repeatedly informed, and eventually understood, that no such pricing

6  existed, including the following exchanges:

> **Plaintiff's counsel (11/26/07):** "I was reviewing the new docs you produced and did not find any 'rate cards' or other pricing for HOAs, except for in San Diego and Desert Cities. All I see is what appears to be the 'retail pricing' for the other (non-San Diego) communities. Am I missing something? It appears the HOA pricing as not produced"[15]

> **TWC's counsel (11/28/07):** "There are no HOA pricing rates outside the San Diego division. The only HOA specific pricing outside the San Diego division is the result of individually negotiated prices between a particular HOA and Time Warner."[16]

> **Plaintiff's counsel (11/29/07):** "I still don't have the HOA pricing for the rest of California . . ."[17]

> **TWC's counsel (12/3/07):** "Time Warner has produced a voluminous set of rate cards for the state of California (outside San Diego and Desert Cities) for 2007. We understand these to reflect all the current retail rates in effect throughout the other Divisions of Time Warner. We are not aware of the existence of any HOA rate cards for California outside San Diego and Desert Cities."[18]

> **Plaintiff's counsel (12/4/07):** "I was wondering if you are telling me that Time Warner's pricing for HOAs outside of San Diego/Desert Cities was on an HOA-by-HOA basis, rather than it is in San Diego where [TWC] uses one set of HOA pricing for San Diego and the Desert Cities in general, regardless of the individually negotiated rates for each HOA?"[19]

> **TWC's counsel (12/4/07):** "You are essentially correct. There is no HOA rate card pricing outside of San Diego and Desert Cities in California for HOA accounts. The only HOA pricing in California outside of San Diego and Desert Cities is the result of individually negotiated HOA specific contracts."[20]

---

[15] November 26, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 4, ¶ 1.
[16] November 28, 2007 letter from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 5, ¶ 2.
[17] November 29, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 6, ¶ 1.
[18] December 3, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 8, ¶ 2.
[19] December 4, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit A to Hussey Declaration.
[20] December 4, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.

-9-

1

> **Plaintiff's counsel (12/4/07):** "Thanks for the clarification. Then I take it there are no bundles, other than retail bundles, offered to those HOA customers outside San Diego/Desert Cities. Please advise. On the other hand, if I misunderstood you and there are bundles offered to HOA customers outside of San Diego/Desert Cities, can you produce documents that reflect those rates?"[21]

2

3

4

> **TWC's counsel (12/5/07):** "You are correct. Outside San Diego and Desert Cities there are no bundles for HOA customers other than retail bundles or individually negotiated bundles."[22]

5

6

7        As demonstrated above, Plaintiff is, or at least should be, aware that Time Warner entities

8    offer no special "HOA pricing" or "HOA bundles" to residents of Bulk-customer HOAs outside

9    of the San Diego and Desert Cities areas. The pricing for Additional Services offered to residents

10   of Bulk-customer HOAs outside of San Diego and Desert Cities consists of the regular retail "a la

11   carte" pricing and retail bundles, as reflected in the rate cards produced to Plaintiff. The

12   "individually negotiated bundles" referenced above refers merely to the basic cable services, and

13   in some cases other expanded services, included in the individually negotiated and priced

14   contracts between Time Warner entities and the various Bulk-customer HOAs; it does not refer to

15   any bundled packages of Additional Services TWC or Time Warner entities offer to HOA

16   residents generally.

17       As evinced by Plaintiff's counsel's last December 4, 2007 communication to counsel for

18   TWC, Plaintiff's counsel recognized that if there are no bundles for HOA customers outside of

19   San Diego and Desert Cities other than retail bundles, then there is nothing left for TWC to

20   produce in response to the discovery request at issue. (Hussey Decl. ¶5, Ex. B.) As reiterated by

21   counsel for TWC, "Outside San Diego and Desert Cities there are no bundles for HOA customers

22   other than retail bundles . . ." (*Id.*) Accordingly, to the extent Plaintiff's motion can be

23   interpreted to request compelling the production of such "HOA pricing," the Court should deny

24   the motion for all the reasons stated above.

25   /////

26   /////

27

28

---

[21] December 4, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.
[22] December 5, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.

DLA PIPER US LLP
SAN DIEGO

SD\1781107.5                                    -10-

TIME WARNER CABLE'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1

**Plaintiff's counsel (12/4/07):** "Thanks for the clarification. Then I take it there are no bundles, other than retail bundles, offered to those HOA customers outside San Diego/Desert Cities. Please advise. On the other hand, if I misunderstood you and there are bundles offered to HOA customers outside of San Diego/Desert Cities, can you produce documents that reflect those rates?"[21]

2

3

4

**TWC's counsel (12/5/07):** "You are correct. Outside San Diego and Desert Cities there are no bundles for HOA customers other than retail bundles or individually negotiated bundles."[22]

5

6

7    As demonstrated above, Plaintiff is, or at least should be, aware that Time Warner entities

8    offer no special "HOA pricing" or "HOA bundles" to residents of Bulk-customer HOAs outside

9    of the San Diego and Desert Cities areas. The pricing for Additional Services offered to residents

10   of Bulk-customer HOAs outside of San Diego and Desert Cities consists of the regular retail "a la

11   carte" pricing and retail bundles, as reflected in the rate cards produced to Plaintiff. The

12   "individually negotiated bundles" referenced above refers merely to the basic cable services, and

13   in some cases other expanded services, included in the individually negotiated and priced

14   contracts between Time Warner entities and the various Bulk-customer HOAs; it does not refer to

15   any bundled packages of Additional Services TWC or Time Warner entities offer to HOA

16   residents generally.

17   As evinced by Plaintiff's counsel's last December 4, 2007 communication to counsel for

18   TWC, Plaintiff's counsel recognized that if there are no bundles for HOA customers outside of

19   San Diego and Desert Cities other than retail bundles, then there is nothing left for TWC to

20   produce in response to the discovery request at issue. (Hussey Decl. ¶ 5, Ex. B.) As reiterated by

21   counsel for TWC, "Outside San Diego and Desert Cities there are no bundles for HOA customers

22   other than retail bundles . . ." (*Id.*) Accordingly, to the extent Plaintiff's motion can be

23   interpreted to request compelling the production of such "HOA pricing," the Court should deny

24   the motion for all the reasons stated above.

25   /////

26   /////

27

28

[21] December 4, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.
[22] December 5, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.

DLA PIPER US LLP
SAN DIEGO

SD\1781107.5

-10-

**C.     If Plaintiff's Motion can be Interpreted to Seek Contracts and Documents Between Time Warner Entities and Homeowners' Associations, Such a Request is Improper.**

Although not within the scope of Plaintiff's motion, or the discovery request at issue, meet and confer correspondence omitted from Plaintiff's motion show that Plaintiff seeks to require TWC and/or Time Warner entities to produce each of the hundreds of individually negotiated bulk contracts between Time Warner entities and Bulk-customer HOAs in California. If Plaintiff's motion can be interpreted to make such a request, the request is improper and without merit on multiple grounds, discussed in detail below.

    **1.     Contracts and Documents Between Time Warner Entities and Homeowners' Associations are Non-responsive to Plaintiff's Discovery Request.**

TWC cannot be compelled to produce confidential bulk contracts between TWC and/or Time Warner entities and their bulk customers, including Bulk-customer HOAs, because such documents are largely non-responsive to the discovery request at issue. Plaintiff's discovery request asks for documents regarding the pricing of TWC services to residents of HOAs in California:

> "Please produce ***all DOCUMENTS which depict pricing for all of YOUR products and services***, including any bundled packages, ***to RESIDENTS***. (RESIDENTS is defined as 'occupants of properties during the time period from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in California with whom YOU had entered into a [bulk contract] to provide basic cable services to the HOA members."

(TWC's Separate Statement, p. 1 (emphasis added).) This request is specifically limited to pricing between TWC and/or Time Warner entities and <u>residents</u> of Bulk-customer HOAs. This does not include pricing, contracts, or other documents between TWC and/or Time Warner entities and Bulk-customer HOAs, in which the HOA, and not its residents, are the customer.

As expected, when TWC enters into a bulk contract with a HOA, the contract is an individually negotiated agreement between TWC and the HOA—not the HOA residents. For example, TWC entered into a bulk agreement with Plaintiff's HOA whereby TWC provides basic cable services to the homes in the HOA, and the HOA pays TWC for such services. (Rhodes Decl. ¶ 4; Hussey Decl. Ex. E (Excerpts of Deposition of Plaintiff Leon Alpert).) TWC does not

1   charge HOA residents for the services it provides to the HOA, nor do HOA residents pay TWC

2   for the basic cable services they receive through the HOA. (Rhodes Decl. ¶ 2; Hussey Decl. Ex.

3   E.) If residents wish to order Additional Services, then TWC offers retail pricing that includes "a

4   la carte" pricing for services, as well as retail bundles.[23] At times, TWC has also offered special

5   bundled rates for bundles of Additional Services to residents of bulk customers, including

6   residents of Bulk-customer HOAs, in the San Diego and Desert Cities areas.

7        Accordingly, there are only three potential categories of relevant documents that depict

8   TWC's pricing to <u>residents</u> of Bulk-customer HOAs, and would thus be responsive to Plaintiff's

9   discovery request: (1) "a la carte" retail rates for Additional Services (available to all customers),

10   (2) bundled retail rates for Additional Services (available to all customers), and (3) special

11   pricing, such as bundled rates, for Additional Services that are available only to residents of Bulk-

12   customer HOAs and/or other bulk customers.[24] TWC has already produced all of these

13   documents to Plaintiff in response to the discovery request at issue. (Hussey Decl. ¶¶ 2-3.) TWC

14   produced the rate cards and rate change letters that show "a la carte" and bundled retail rates for

15   Additional Services throughout California. (Hussey Decl. ¶ 2.) TWC also produced rate cards

16   for special bundled rates for Additional Services that were available only to residents of bulk

17   customers in the San Diego and Desert Cities areas—the only areas in which such special bundles

18   were offered. (Hussey Decl. ¶ 3.)

19        As noted above, Plaintiff's counsel's last December 4, 2007 communication to counsel for

20   TWC recognized that if there are no bundles for HOA customers outside of San Diego and Desert

21   Cities other than retail bundles, then there are no additional documents for TWC to produce in

22   response to the discovery request at issue. (Hussey Decl. ¶ 5, Ex. B.) Despite the resolution of

23   that issue, the next day Plaintiff's counsel then attempted to seek the production, pursuant to this

24   same discovery request, of each of the hundreds of individually negotiated bulk contracts between

---

25   [23] We understand that in certain situations, a bulk contract may include some individually negotiated prices for
certain Additional Services. In these limited circumstances, such terms relate only to residents of the contracting
26   bulk customer and are not generally offered to HOA residents.

27   [24] As noted in the preceding footnote, a limited number of bulk contracts may include individually negotiated prices
for certain Additional Services. However, to the extent those particular contracts may be considered technically
responsive to Plaintiff's discovery request, TWC refers to its objections, particularly as to relevancy, that were raised
28   by TWC and not refuted by Plaintiff (*See infra*, Part C.2).

1    TWC and/or Time Warner entities and Bulk-customer HOAs in California. (Hussey Decl. ¶ 5,

2    Ex. B.) At no time has Plaintiff attempted to explain how such contracts (between TWC and the

3    HOAs for basic cable) would be responsive to a discovery request that asks for pricing (of

4    Additional Services—the only cable services residents of Bulk-customer HOAs purchase from

5    TWC) to residents.

6         Having received all the responsive documents to the discovery request at issue, Plaintiff

7    cannot re-write the discovery request after the meet and confer process and/or in law and motion

8    practice to request new information not included in the request. To the extent Plaintiff's motion

9    can be interpreted to seek documents between TWC and/or Time Warner entities and Bulk-

10   customer HOAs, including the individually negotiated bulk contracts, the motion seeks to compel

11   the production of non-responsive documents and should be denied.

12              **2.    TWC Has Raised Valid Objections Against the Production of Private
                       Contracts and Documents between Time Warner Entities and**
13                     **Homeowners' Associations.**

14        To the extent Plaintiff's motion to compel seeks to compel the production of documents

15   between TWC and/or Time Warner entities and their Bulk-customer HOAs, the motion also lacks

16   merit because Plaintiff failed to address TWC's objections to the production request. In response

17   to the request, TWC raised specific objections on the grounds that the request was vague,

18   ambiguous, unduly burdensome and oppressive, not calculated to lead to the discovery of

19   admissible information, and improperly requests confidential trade secret information regarding

20   negotiated prices for bulk rate customers. (TWC's Separate Statement, p. 1.)

21        Plaintiff has entirely failed, in meet and confer and his moving papers, to rebut these

22   objections or cure his defective request. Plaintiff's only response to the objections is the

23   conclusory remark that "[w]hen a Request is as clear as this, objections based upon purported

24   'vagueness' are nothing more than 'nuisance objections.'" (TWC's Separate Statement, pp. 1-2.)

25   Plaintiff apparently seeks to bypass the objections by summarily claiming that TWC agreed to

26   produce all responsive documents and is not withholding any documents due to the necessity of a

27   protective order. (*Id.*) However, as fully explained in TWC's Separate Statement, such

28   /////

1  arguments miss the mark entirely and do not refute TWC's valid objections, particularly as to

2  relevancy. (TWC's Separate Statement, p. 7, line 9—p. 10, line 6.)

3      Additionally, TWC suggests that the pendency of TWC's motion for summary judgment

4  (scheduled for hearing on April 4) renders any request by Plaintiff for private contracts between

5  TWC and its Bulk-customer HOAs even more improper. Such agreements have absolutely no

6  relevance to the issues before the Court in TWC's motion. In the meet and confer process,

7  counsel was unable to articulate any relevance to these agreements to the liability issues on which

8  the motion is based. Plaintiff presumably seeks such documents to help him support the class

9  allegations in the complaint. Any potential relevance to these documents for class certification

10  purposes can be resolved after decision on the pending dispositive motion.

11  **IV.    PLAINTIFF'S REQUEST FOR SANCTIONS IS ENTIRELY UNWARRANTED.**

12      The Discovery Act provides that monetary sanctions shall be imposed against the losing

13  party and/or attorney on a motion to compel, except where the Court finds the losing party acted

14  with substantial justification. Cal. Civ. Proc. Code §§ 2031.310(d), 2031.320(b). Sanctions

15  against TWC are not proper here because, as explained above and in TWC's Separate Statement,

16  TWC produced all documents that were responsive to the discovery request at issue.

17  Furthermore, TWC engaged in extensive meet and confer efforts with Plaintiff, many of which

18  were omitted from Plaintiff's motion, regarding the discovery request, which ultimately led to the

19  December 4, 2007 realization by Plaintiff's counsel that there was nothing left to produce.

20  By this motion, Plaintiff is either seeking documents that have already been produced, seeking

21  documents that he knows do not exist, or seeking documents that are entirely non-responsive to

22  the discovery request at issue. In any case, TWC has not acted without substantial justification in

23  meeting and conferring with Plaintiff's counsel and attempting to resolve this discovery dispute.

24  Accordingly, sanctions are not warranted against TWC. Cal. Civ. Proc. Code § 2023.030(a).

25  **V.    SANCTIONS SHOULD BE AWARDED AGAINST PLAINTIFF AND HIS**
26  **·COUNSEL FOR BRINGING THIS FRIVOLOUS MOTION.**

27      To the contrary, sanctions should be awarded against Plaintiff and his counsel for the costs

28  and fees incurred by TWC in opposing this motion. As discussed above, Plaintiff's motion seeks

DLA PIPER US LLP
SAN DIEGO

SD\1781107.5

1    to compel the production of documents that have already been produced, or possibly compel the

2    production of documents Plaintiff knows do not exist and/or are non-responsive.  TWC made

3    every reasonable attempt to resolve this discovery dispute in meet and confer efforts.  (Hussey

4    Decl. ¶¶ 4-5, Exs. B-C.)  Nonetheless, Plaintiff filed and refused to withdraw this frivolous

5    motion.

6         Plaintiff's tactics in bringing this motion are a misuse of the discovery process and justify

7    sanctions to compensate TWC for its costs and fees in defending this motion.  Accordingly, TWC

8    requests the Court award sanctions in favor of TWC and against Plaintiff and his counsel, jointly

9    and severally, in the amount of $3,913.  (Hansen Decl. ¶ 2-3.)

10   **VI.    CONCLUSION.**

11        For all the foregoing reasons, TWC respectfully requests that the Court deny Plaintiff's

12   motion to compel and request for sanctions.  TWC further requests that the Court award sanctions

13   against Plaintiff and his counsel, jointly and severally, in the amount of $ 3,913 to be paid to

14   TWC within fifteen days.

15   Dated: February  7 , 2008

                                   DLA PIPER US LLP
16

17

18   By _____
                                   JEFFREY M. SHOHET
19                                 JULIE L. HUSSEY
                                   CARRIE S. DOLTON
20                                 RYAN T. HANSEN
                                   Attorneys for Time Warner Cable
21

22

23

24

25

26

27

28

COPY

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    RYAN T. HANSEN (Bar No. 234329)
3   **DLA PIPER US LLP**
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6

7   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
    NEWHOUSE PARTNERSHIP, A NEW YORK
8   GENERAL PARTNERSHIP, THROUGH ITS SAN
    DIEGO DIVISION, DBA TIME WARNER CABLE

9

**FILED**

SAN DIEGO SUPERIOR COURT

FEB 0 7 2008

CLERK OF THE SUPERIOR COURT

BY _____ C. CHEELY

10                  SUPERIOR COURT OF CALIFORNIA

11                     COUNTY OF SAN DIEGO

12

13   LEON ALPERT, an individual, on behalf
     of himself, on behalf of all those similarly
14   situated, and on behalf of the general
     public,
15
              Plaintiffs,
16
         v.
17
     TIME WARNER CABLE, INC., a
18   Delaware corporation, and DOES 1 TO
     100,
19
              Defendants.
20

21

22

23

24

25

26

27

28

CASE NO. GIC881621

**DEFENDANT TIME WARNER CABLE'S
SEPARATE STATEMENT OF ITEMS IN
DISPUTE IN OPPOSITION TO
PLAINTIFF'S MOTION TO COMPEL
COMPLIANCE [RE: TIME WARNER
CABLE'S RESPONSES TO PLAINTIFF'S
REQUESTS FOR PRODUCTION OF
DOCUMENTS]**

Date       February 22, 2008
Dept:      63
Judge:     Luis R. Vargas

Complaint:  March 13, 2007
FAC:        May 16, 2007

DLA PIPER US LLP
SAN DIEGO

SD\1781373.3

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1        Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2  general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3  erroneously as Time Warner Cable, Inc., respectfully submits the following Separate Statement of

4  Items in Dispute in Opposition to Plaintiff's Motion to Compel Compliance [Re: TWC's

5  Responses to Plaintiff's Requests for Production of Documents].

6  **REQUEST FOR PRODUCTION NO. 1:**

7        Please produce all DOCUMENTS which depict pricing for all of YOUR products and

8  services, including any bundled packages, to RESIDENTS. (RESIDENTS is defined as

9  "occupants of properties during the time period from March 13, 2003 to March 13, 2007 that

10  were part of a homeowners' association (HOA) in California with whom YOU had entered into a

11  [bulk contract] to provide basic cable services to the HOA members.")

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

13        TWC objects to Request as vague, ambiguous, overbroad, unduly burdensome and

14  oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

15  The phrase "depict pricing" vaguely requests *every* document that refers to pricing. TWC objects

16  to the extent that this request seeks confidential trade secret information regarding negotiated

17  prices for bulk rate customers. Subject to, and without waiving the General and Specific

18  objections herein, and based on discovery and TWC's investigation to date, TWC further

19  responds as follows: TWC has performed a good faith effort to supply documents that identify a

20  price for TWC products and services, and TWC will produce rate cards and rate change letters.

21  **REASON WHY DOCUMENTS SHOULD BE PRODUCED:**

22        Time Warner has agreed to produce all responsive documents. When a Request is as clear

23  as this, objections based upon purported "vagueness" are nothing more than "nuisance

24  objections." *Standon Co. Inc. v. Superior Court* (Kim) (1990) 225 Cal.App.3d 898; 903. Indeed

25  such boilerplate objections are typically sanctionable. *Korea Data Systems Co., Ltd., v. Superior*

26  *Court* (Amazing Tech Corp.) (1997) 51 Cal.App.4th 1513, 1516.

27        Moreover, Time Warner has not refused to produce the documents because of the

28  necessity of the protective order. Rather, Time Warner has just refused to produce them, period.

DLA PIPER US LLP
SAN DIEGO

SD\1781373.3

-1-

1    **REASON WHY NO FURTHER RESPONSE IS REQUIRED:**

2         Plaintiff's entire motion to compel, and supporting separate statement, is premised on the

3    theory that TWC agreed to produce certain documents in response to the one discovery request at

4    issue, but has since failed to make the promised production.[1]  This theory, and thus Plaintiff's

5    motion, lacks merit because TWC has unmistakably produced all the documents it agreed to

6    produce in its discovery response.  After raising appropriate objections, TWC responded to

7    Plaintiff's document request by stating that it would "produce rate cards and rate change letters."

8    TWC subsequently produced the rate cards and rate change letters that it agreed to produce in its

9    response—as evidenced by the statement from Plaintiff's counsel that:

10        > "*I was reviewing the new docs you produced and* did not find any
         > 'rate cards' or other pricing for HOAs, except for in San Diego and
11       > Desert Cities. *All I see is what appears to be the 'retail pricing'*
         > *for the other (non-San Diego) communities.* Am I missing
12       > something?  It appears the HOA pricing as not produced"

13   (November 26, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's

14   Motion, page 4, ¶ 1; Hussey Decl.[2] ¶ 2.)  The only other potentially responsive and relevant

15   documents, documents showing the rates for "HOA bundles" in San Diego and Desert Cities had

16   also been produced.  (Hussey Decl. ¶ 3.)  TWC made no agreement to produce other information

17   in response to Plaintiff's vague discovery request.

18        Accordingly, Plaintiff's motion to compel the production of the documents TWC agreed

19   to produce is entirely without merit, and moot, because those documents have already been

20   produced.  Furthermore, as addressed in detail below, the documents produced by TWC are the

21   only relevant documents that could be responsive to Plaintiff's demand, other than individual

22   consumers' bills and other such documents that are inappropriate for discovery, because they

---

[1] *See* Plaintiff's Points and Authorities in Support of Motion ("Motion"), p. 2, lines 9-11 ("Time Warner had
previously agreed to produce the documents in its Response to plaintiff's Request for Production . . ."); p. 3, lines 5-9
("The documents at issue in this Motion, which Time Warner agreed to produce in its Response to plaintiff's Request
for Production . . ."); p. 4, lines 5-7 ("As part of its Response agreeing to product the documents requested, Time
Warner asserted various (mostly nuisance) objections, but did not refuse to produce the documents notwithstanding
those objections."); p. 4, lines 19-20 ("In sum, Time Warner has already agreed to produce the documents at issue in
this Motion, but has since refused to do so."); Plaintiff's Separate Statement, p. 7, line 23 ("Time Warner has agree to
produce all responsive documents.").
[2] "Declaration of Julie L. Hussey" and "Hussey Decl." refers to the Declaration of Julie L. Hussey in Opposition to
Plaintiff's Motion to Compel Compliance [Re: TWC's Responses to Plaintiff's Requests for Production of
Documents].

1   contain the only pricing for Additional Services that Time Warner entities made generally

2   available to bulk HOA residents outside the San Diego and Desert Cities areas under separate

3   bulk contracts.

4          To the extent Plaintiff's motion can be interpreted to seek documents regarding special

5   "HOA rates" for Additional Services offered to residents of Bulk-customer HOAs, Plaintiff seeks

6   documents that he knows are non-existent.  In the meet and confer process, Plaintiff's counsel

7   asked TWC to produce "HOA pricing" (or special pricing of Additional Services available to

8   residents of Bulk-customer HOAs, similar to the package purchased by Plaintiff) outside the San

9   Diego and Desert Cities areas in response to the discovery request at issue in this motion.

10  Through numerous meet and confer efforts, Plaintiff's counsel was repeatedly informed, and

11  eventually understood, that no such pricing existed, including the following exchanges:

> **Plaintiff's counsel (11/26/07):** "I was reviewing the new docs you
> produced and did not find any 'rate cards' or other pricing for
> HOAs, except for in San Diego and Desert Cities.  All I see is what
> appears to be the 'retail pricing' for the other (non-San Diego)
> communities.  Am I missing something?  It appears the HOA
> pricing as not produced"[3]

> **TWC's counsel (11/28/07):** "There are no HOA pricing rates
> outside the San Diego division.  The only HOA specific pricing
> outside the San Diego division is the result of individually
> negotiated prices between a particular HOA and Time Warner."[4]

> **Plaintiff's counsel (11/29/07):** "I still don't have the HOA pricing
> for the rest of California . . ."[5]

> **TWC's counsel (12/3/07):** "Time Warner has produced a
> voluminous set of rate cards for the state of California (outside San
> Diego and Desert Cities) for 2007.  We understand these to reflect
> all the current retail rates in effect throughout the other Divisions of
> Time Warner.  We are not aware of the existence of any HOA rate
> cards for California outside San Diego and Desert Cities."[6]

*/////*

*/////*

---

[3] November 26, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 4, ¶ 1.
[4] November 28, 2007 letter from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 5, ¶ 2.
[5] November 29, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit C to Plaintiff's Motion, page 6, ¶ 1.
[6] December 3, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit C to Plaintiff's Motion, page 8, ¶ 2.

1  **Plaintiff's counsel (12/4/07):** "I was wondering if you are telling me that Time Warner's pricing for HOAs outside of San

2  Diego/Desert Cities was on an HOA-by-HOA basis, rather than it is in San Diego where [TWC] uses one set of HOA pricing for San

3  Diego and the Desert Cities in general, regardless of the individually negotiated rates for each HOA?"[7]

4

5  **TWC's counsel (12/4/07):** "You are essentially correct. There is no HOA rate card pricing outside of San Diego and Desert Cities in California for HOA accounts. The only HOA pricing in California

6  outside of San Diego and Desert Cities is the result of individually negotiated HOA specific contracts."[8]

7

8  **Plaintiff's counsel (12/4/07):** "Thanks for the clarification. Then I take it there are no bundles, other than retail bundles, offered to those HOA customers outside San Diego/Desert Cities. Please

9  advise. On the other hand, if I misunderstood you and there are bundles offered to HOA customers outside of San Diego/Desert

10  Cities, can you produce documents that reflect those rates?"[9]

11  **TWC's counsel (12/5/07):** "You are correct. Outside San Diego and Desert Cities there are no bundles for HOA customers other

12  than retail bundles or individually negotiated bundles."[10]

13  As demonstrated above, Plaintiff is, or at least should be, aware that Time Warner entities

14  offer no special "HOA pricing" or "HOA bundles" to residents of Bulk-customer HOAs outside

15  of the San Diego and Desert Cities areas. The only pricing for Additional Services offered to

16  residents of Bulk-customer HOAs outside of San Diego and Desert Cities consists of the regular

17  retail "a la carte" pricing and retail bundles, as reflected in the rate cards produced to Plaintiff.

18  The "individually negotiated bundles" referenced above refers merely to the basic cable services,

19  and in some cases other expanded services, included in the individually negotiated and priced

20  contracts between Time Warner entities and the various Bulk-customer HOAs; it does not refer to

21  any bundled packages of Additional Services TWC or Time Warner entities offer to HOA

22  residents generally.

23  As evinced by Plaintiff's counsel's last December 4, 2007 communication to counsel for

24  TWC, Plaintiff's counsel recognized that if there are no bundles for HOA customers outside of

25  San Diego and Desert Cities other than retail bundles, then there is nothing left for TWC to

26

27  [7] December 4, 2007 letter from Barron E. Ramos to Julie L. Hussey, Exhibit A to Hussey Declaration.
   [8] December 4, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.

28  [9] December 4, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.
   [10] December 5, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.

1    produce in response to the discovery request at issue. (Hussey Decl. ¶ 5, Ex. B.) As reiterated by

2    counsel for TWC, "Outside San Diego and Desert Cities there are no bundles for HOA customers

3    other than retail bundles . . ." (*Id.*) Accordingly, to the extent Plaintiff's motion can be

4    interpreted to request compelling the production of such "HOA pricing," the Court should deny

5    the motion.

6        If Plaintiff's motion can be interpreted to seek each of the hundreds of individually

7    negotiated bulk contracts between Time Warner entities and Bulk-customer HOAs in California,

8    the request is improper and without merit on multiple grounds. TWC cannot be compelled to

9    produce confidential bulk contracts between TWC and/or Time Warner entities and their bulk

10   customers, including Bulk-customer HOAs, because such documents are largely non-responsive

11   to the discovery request at issue. Plaintiff's discovery request asks for documents regarding the

12   pricing of TWC services to residents of HOAs in California:

13       "Please produce **all DOCUMENTS which depict pricing for all of
         YOUR products and services**, including any bundled packages, **to
14       RESIDENTS**. (RESIDENTS is defined as 'occupants of properties
         during the time period from March 13, 2003 to March 13, 2007 that
15       were part of a homeowners' association (HOA) in California with
         whom YOU had entered into a [bulk contract] to provide basic
16       cable services to the HOA members."

17   This request is specifically limited to pricing between TWC and/or Time Warner entities and

18   <u>residents</u> of Bulk-customer HOAs. This does not include pricing, contracts, or other documents

19   between TWC and/or Time Warner entities and Bulk-customer HOAs, in which the HOA, and

20   not its residents, are the customer.

21       As expected, when TWC enters into a bulk contract with a HOA, the contract is an

22   individually negotiated agreement between TWC and the HOA—not the HOA residents. For

23   example, TWC entered into a bulk agreement with Plaintiff's HOA whereby TWC provides basic

24   cable services to the homes in the HOA, and the HOA pays TWC for such services. (Rhodes

25   Decl. ¶¶ 2-4[11]; Hussey Decl. ¶ 6, Ex. C (Excerpts of Deposition of Plaintiff Leon Alpert).) TWC

26   does not charge HOA residents for the services it provides to the HOA, nor do HOA residents pay

27

28

---

[11] "Declaration of Terri Rhodes" and "Rhodes Decl." refer to the Declaration of Terri Rhodes in Opposition to
Plaintiff's Motion to Compel Compliance [Re: TWC's Responses to Plaintiff's Requests for Production of
Documents].

DLA PIPER US LLP
SAN DIEGO

SD\1781373.3

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1    TWC for the basic cable services they receive through the HOA. (Rhodes Decl. ¶¶ 2-4; Hussey

2    Decl. ¶ 6, Ex. C.) If residents wish to order Additional Services, then TWC offers retail pricing

3    that includes "a la carte" pricing for services, as well as retail bundles.[12] At times, TWC has also

4    offered special bundled rates for bundles of Additional Services to residents of bulk customers,

5    including residents of Bulk-customer HOAs, in the San Diego and Desert Cities areas.

6         Accordingly, there are only three potential categories of relevant documents that depict

7    TWC's pricing to residents of Bulk-customer HOAs, and thus would be responsive to Plaintiff's

8    discovery request: (1) "a la carte" retail rates for Additional Services (available to all customers),

9    (2) bundled retail rates for Additional Services (available to all customers), and (3) special

10   pricing, such as bundled rates, for Additional Services that are available only to residents of Bulk-

11   customer HOAs and/or other bulk customers.[13] TWC has already produced all of these

12   documents to Plaintiff in response to the discovery request at issue. (Hussey Decl. ¶¶ 2-3.) TWC

13   produced the rate cards and rate change letters that show "a la carte" and bundled retail rates for

14   Additional Services throughout California. (Hussey Decl. ¶ 2.) TWC also produced rate cards

15   for special bundled rates for Additional Services that were available only to residents of bulk

16   customers in the San Diego and Desert Cities areas—the only areas in which such special bundles

17   were offered. (Hussey Decl. ¶ 3.)

18        As noted above, Plaintiff's counsel's last December 4, 2007 communication to counsel for

19   TWC recognized that if there are no bundles for HOA customers outside of San Diego and Desert

20   Cities other than retail bundles, then there are no additional documents for TWC to produce in

21   response to the discovery request at issue. (Hussey Decl. ¶ 5, Ex. B.) Despite the resolution of

22   that issue, the next day Plaintiff's counsel then attempted to seek the production, pursuant to this

23   same discovery request, of each of the hundreds of individually negotiated bulk contracts between

24   TWC and/or Time Warner entities and Bulk-customer HOAs in California. (Id.) At no time has

---

25   [12] We understand that in certain situations, a bulk contract may include some individually negotiated prices for
     certain Additional Services. In these limited circumstances, such terms relate only to residents of the contracting
26   bulk customer and are not generally offered to HOA residents.

     [13] As noted in the preceding footnote, a limited number of bulk contracts may include individually negotiated prices
27   for certain Additional Services. However, to the extent those particular contracts may be considered technically
     responsive to Plaintiff's discovery request, TWC refers to its objections, particularly as to relevancy, that were raised
28   by TWC and not refuted by Plaintiff (See infra, Part C.2).

1    Plaintiff attempted to explain how these private contracts between TWC and the Bulk-customer

2    HOAs would be responsive to his discovery request asking for pricing between TWC and

3    residents. When questioned on this point in meet and confer efforts, Plaintiff's counsel

4    acknowledged that only "HOA pricing," or special pricing from TWC to HOA residents, and

5    retail pricing to residents are relevant:

> **TWC's counsel (12/6/07):** "How are the rates that are negotiated
> between particular HOA[s] and [TWC] and reduced to private
> contracts relevant to your claim which, based on the pleadings,
> claims that your client was overcharged because his earlier bills
> were not priced to reflect his HOA's agreement[?]"[14]
>
> **Plaintiff's counsel (12/6/07):** "What is relevant is HOA pricing
> and retail pricing throughout California."[15]

11    Having received all the responsive documents to the discovery request at issue, Plaintiff

12    cannot re-write the discovery request after the meet and confer process and/or in law and motion

13    practice to request new information not included in the request. To the extent Plaintiff's motion

14    can be interpreted to seek documents between TWC and/or Time Warner entities and Bulk-

15    customer HOAs, including the individually negotiated bulk contracts, the motion seeks to compel

16    the production of non-responsive documents and should be denied.

17    Furthermore, the motion also fails because Plaintiff has been unable to rebut TWC's

18    objections to the production request. In response to the request, TWC raised specific objections

19    on the grounds that the request was vague, ambiguous, unduly burdensome and oppressive, not

20    calculated to lead to the discovery of admissible information, and improperly requests

21    confidential trade secret information regarding negotiated prices for bulk rate customers.

22    Plaintiff has entirely failed, in meet and confer and his moving papers, to rebut these

23    objections or cure his defective request. Plaintiff's only response to the objections is the

24    conclusory remark that "[w]hen a Request is as clear as this, objections based upon purported

25    'vagueness' are nothing more than 'nuisance objections.'" Plaintiff apparently seeks to bypass

26    the objections by summarily claiming that TWC agreed to produce all responsive documents and

27

28

---

[14] December 6, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.
[15] December 6, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.

DLA PIPER US LLP
SAN DIEGO

SD\1781373.3

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

1    is not withholding any documents due to the necessity of a protective order. As explained below,

2    such claims do not refute TWC's valid objections.

3         Plaintiff's counsel effectively conceded TWC's objection based on relevancy grounds in

4    meet and confer correspondence, and at no time, including Plaintiff's moving papers, has Plaintiff

5    offered any explanation as to how TWC's bulk contracts could possibly be relevant to his claims.

6    Plaintiff's claims are based on TWC purportedly charging Plaintiff for the basic cable services

7    being paid by Plaintiff's HOA, or perhaps on a theory that Plaintiff should have retroactively

8    received the discounted price for an HOA bundle (that was generally available to residents of

9    Bulk-customer HOAs in the San Diego and Desert Cities areas) to cover the time period before he

10   ordered the bundle. The terms of confidential, individually negotiated bulk contracts between

11   TWC and Bulk-customer HOAs have no relevancy to Plaintiff's claims, nor is there any

12   likelihood that such information would lead to the discovery of admissible evidence. These bulk

13   contracts contain no terms or pricing that apply to Plaintiff, general HOA residents, or the

14   consuming public.

15        When questioned on this point in meet and confer efforts, Plaintiff's counsel's succinct

16   reply acknowledged that only "HOA pricing," or special pricing and retail pricing TWC has made

17   generally available to HOA residents are relevant:

18        **TWC's counsel (12/6/07):** "How are the rates that are negotiated
          between particular HOA[s] and [TWC] and reduced to private
19        contracts relevant to your claim which, based on the pleadings,
          claims that your client was overcharged because his earlier bills
20        were not priced to reflect his HOA's agreement[?]"[16]

21        **Plaintiff's counsel (12/6/07):** "What is relevant is HOA pricing
          and retail pricing throughout California."[17]
22

23   Nor is there any attempt to address TWC's relevancy objection in the "Reasons Why Documents

24   Should Be Produced" portion of Plaintiff's separate statement. Clearly, such documents are not

25   relevant or likely to lead to the discovery of admissible information and should not be produced.

26   /////

27

28   [16] December 6, 2007 email from Julie L. Hussey to Barron E. Ramos, Exhibit B to Hussey Declaration.
     [17] December 6, 2007 email from Barron E. Ramos to Julie L. Hussey, Exhibit B to Hussey Declaration.

1    TWC's objections based on the discovery request being vague, ambiguous, and overbroad

2  are also amply supported here where the discovery request refers to each document that "depicts"

3  pricing of cable services to residents of Bulk-customer HOAs. For example, this vague request

4  could include each bill, invoice, or other document related to pricing that was sent to each and

5  every resident. Such a request would be overbroad, unduly burdensome, and oppressive because

6  it would require TWC to locate and produce thousands of documents that contain the same

7  information found in the rate cards and rate change letters already produced—since the rates on

8  the rate cards and letters were the only rates available. Moreover, such documents are protected

9  from disclosure by third-party privacy rights.

10    TWC also objected to the discovery request at issue "to the extent this request seeks

11  confidential trade secret information regarding negotiated prices for bulk rate customers." Each

12  private contract between TWC and its hundreds of bulk customers are individually negotiated

13  agreements that are considered, and contain, highly confidential and/or proprietary information.

14  (Rhodes Decl. ¶ 5.) Plaintiff has made no attempt to rebut this objection other than making the

15  claim that TWC has not refused to produce the documents identified in its discovery response

16  because of the necessity of a protective order. While true, such an argument entirely misses the

17  point. TWC did not withhold the documents identified in its discovery response, rather TWC

18  made a timely production of the documents. Unlike the private, confidential bulk contracts and

19  other such documents between TWC and its bulk customers, the retail rate cards and retail rate

20  letters TWC produced contain no confidential and/or proprietary information.

21    The fact that TWC did not withhold the public documents it produced in response to

22  Plaintiff's discovery response pending execution of a protective order does not act as a waiver

23  and/or admission by TWC that other unrelated documents in this case, such as the sensitive bulk

24  contracts between TWC and its bulk customers, are not confidential and cannot be withheld

25  pending the execution of a protective order if it was determined that the production of such

26  documents was warranted.

27    Additionally, TWC suggests that the pendancy of TWC's motion for summary judgment

28  (scheduled for hearing on April 4) renders any request by Plaintiff for private contracts between

1    TWC and its Bulk-customer HOAs even more improper.  Such agreements have absolutely no

2    relevance to the issues before the court in TWC's motion.  In the meet and confer process, counsel

3    was unable to articulate any relevance to these agreements to the liability issues on which the

4    motion is based.  Plaintiff presumably seeks such documents to help him support the class

5    allegations in the complaint.  Any potential relevance to these documents for class certification

6    purposes can be resolved after decision on the pending dispositive motion.

7    Dated:  February ___7___, 2008

                                DLA PIPER US LLP

8

9

                                By _____
10                                  JEFFREY M. SHOHET
                                    JULIE L. HUSSEY
11                                  CARRIE S. DOLTON
                                    RYAN T. HANSEN
12                                  Attorneys for Time Warner Cable

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SD\1781373.3                              -10-

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
CARRIE S. DOLTON (Bar No. 234298)
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK
GENERAL PARTNERSHIP, THROUGH ITS SAN
DIEGO DIVISION, DBA TIME WARNER CABLE

COPY
FILED
SAN DIEGO SUPERIOR COURT

FEB 0 7 2008

CLERK OF THE SUPERIOR COURT
BY _____ C. CHEELY _____

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN DIEGO

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>　　　　Defendants. | CASE NO. GIC881621<br><br>**DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**<br><br>Date　　　February 22, 2008<br>Dept:　　　63<br>Judge:　　Luis R. Vargas<br><br>Complaint: March 13, 2007<br>FAC:　　　May 16, 2007 |

SD\1781979.2

DLA PIPER US LLP
SAN DIEGO

DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO MOTION TO COMPEL

1    I, Julie L. Hussey, declare and state as follows:

2    1.    I am an attorney duly admitted to practice law in the State of California, and

3    admitted to appear before this Court. I am a partner with the law firm of DLA Piper US LLP,

4    attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

5    New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC")

6    in the above-captioned action. I have personal knowledge of the facts set forth herein and, if

7    called to testify, I could and would testify competently thereto.

8    2.    On or about October 25, 2007 and November 21, 2007, TWC produced to Plaintiff

9    Leon Alpert's ("Plaintiff"), through his counsel, the rate cards and rate change letters identified in

10    TWC's response to Plaintiff's Request for Production of Documents, Set One, Request No. One.

11    3.    On or about October 25, 2007 and November 21, 2007, TWC produced to

12    Plaintiff, through his counsel, documents showing the rates for the "HOA bundles" that were

13    available in the San Diego and Desert Cities areas from 2005 to 2007.

14    4.    Attached hereto as Exhibit A is a true and correct copy of a letter to me from

15    Barron Ramos, counsel for Plaintiff, dated December 4, 2007.

16    5.    Attached hereto as Exhibit B is a true and correct copy of an email exchange

17    between Barron Ramos, counsel for Plaintiff, and me that took place between December 4, 2007

18    and December 6, 2007.

19    6.    Attached hereto as Exhibit C are true and correct excerpts from the deposition of

20    Leon Alpert take on November 6, 2007.

21    I declare under penalty of perjury under the laws of the State of California and the United

22    States of America that the foregoing is true and correct and that this declaration was executed on

23    February 7, 2008, in San Diego, California.

24

25    _____
Julie L. Hussey

26

27

28

**EXHIBIT A**

**BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354

_VIA FAX (619) 764-6644_

December 4, 2007

Julie L. Hussey
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

     Re:   _Alpert v. Time Warner_

Dear Julie:

     Having reread your letters and recent e-mail, and still wanting to avoid a motion to compel if at possible, I was wondering whether you are telling me that Time Warner's pricing for HOAs outside of San Diego/Desert Cities was on an HOA-by-HOA basis, rather than it is in San Diego where TW uses one set of HOA pricing for San Diego and the Desert Cities in general, regardless of the individually negotiated rates for each HOA? Put another way, if it's like San Diego/Desert Cities for the rest of California, then it would not seem too burdensome to produce the relevant HOA pricing since each area/region has HOA pricing as it does in San Diego/Desert Cities. For example, Orange County might have one or two sets of HOA pricing, LA County the same and so on. Please advise.

                                  Very truly yours,

                                  Barron E. Ramos

cc    David R. Markham
       CLARK & MARKHAM _via fax_ 619-239-5888
BER:sq

**Hussey, Julie**

| | |
|---|---|
| **From:** | barron@yourclasscounsel.com |
| **Sent:** | Thursday, December 06, 2007 12:10 PM |
| **To:** | Hussey, Julie |
| **Subject:** | RE: Response to December 4, 2007 letter -Alpert v. Time Warner |

Julie,

What is relevant is HOA pricing and retail pricing throughout California
since the case is premised, in part, on whether TW overcharged HOA
customers.  Does that help?

Barron

>
> Barron,
>
> How are the rates that are negotiated between particular HOA's and TW
> and reduced to private contracts relevant to your claim which, based on
> the pleadings, claims that your client was overcharged because his
> earlier bills were not priced to reflect his HOA's agreement:
>
>     "Thus, despite being an HOA subscriber and therefore entitled to
> HOA pricing, ALPERT had been unknowingly paying TIME        WARNER the full
> cost of cable and cable related services as if he had no existing
> service with TIME WARNER and as if      he was not already an existing
> basic cable subscriber.
>
>     ...Once TIME WARNER priced ALPERT correctly to reflect his HOA's
> existing agreement with TIME WARNER for basic cable        service (i.e.,
> the "HOA Standard Service"), his bill for the exact same services (so
> called "Monthly
>     Charges") dropped to approximately $ 133. See Exhibits "C" and
> "D."
>
> Julie
>
> -----Original Message-----
> From: barron@yourclasscounsel.com [mailto:barron@yourclasscounsel.com]
> Sent: Wednesday, December 05, 2007 5:03 PM
> To: Hussey, Julie
> Subject: RE: Response to December 4, 2007 letter -Alpert v. Time Warner
>
> Julie,
>
> HOA pricing for TW's services is obviously relevant to the case.  As you
> indicated, TW had such pricing for HOAs and we need it to move to
> certify
> the class.
>
> Barron
>
>>
>>
>> Barron -
>>
>> To close out the meet and confer process, could you please explain how
>> these individually negotiated, confidential, contracts between Time
>> Warner and various HOAs will support Plaintiff's claims in this
> matter?
>> If it is Plaintiff's position that these separate contracts are
>> necessary for Plaintiff's claim then we want to fully understand your
>> position.

1

```
>>
>> Julie
>>
>> -----Original Message-----
>> From: barron@yourclasscounsel.com [mailto:barron@yourclasscounsel.com]
>> Sent: Wednesday, December 05, 2007 12:09 PM
>> To: Hussey, Julie
>> Subject: RE: Response to December 4, 2007 letter -Alpert v. Time
> Warner
>>
>> OK, that helps a bit.  Can I at least get the "individually negotiated
>> bundles?"  Let me know asap if you can since I'm finishing up the
> motion
>> and hope to avoid it if possible.  I'll be getting a hearing date when
> I
>> call the clerk after lunch, so please let me know.
>>
>> Thanks again,
>>
>> Barron
>>
>>>
>>>
>>> Barron -
>>>
>>> You are correct.  Outside San Diego and Desert Cities there are no
>>> bundles for HOA customers other than retail bundles or individually
>>> negotiated bundles.
>>>
>>> Julie
>>>
>>> -----Original Message-----
>>> From: barron@yourclasscounsel.com
> [mailto:barron@yourclasscounsel.com]
>>> Sent: Tuesday, December 04, 2007 4:47 PM
>>> To: Hussey, Julie
>>> Subject: Re: Response to December 4, 2007 letter -Alpert v. Time
>> Warner
>>>
>>> Julie,
>>>
>>> Thanks for the clarification.  Then I take it that there are no
>> bundles,
>>> other than retail bundles, offered to those HOA customers outside San
>>> Diego/Desert Cities.  Please advise.
>>>
>>> On the other hand, if I misunderstood you and there are bundles
>> offered
>>> to
>>> HOA customers outside of San Diego/Desert Cities, can you produce
>>> documents that reflect those rates?
>>>
>>> Barron
>>>
>>>>
>>>> Barron:
>>>>
>>>> We received your fax from this morning.
>>>>
>>>> You are essentially correct.  There is no HOA rate card pricing
>>> outside
>>>> of San Diego and Desert Cities in California for HOA accounts.  The
>>> only
>>>> HOA pricing in California outside of San Diego and Desert Cities is
>>> the
>>>> result of individually negotiated HOA specific contracts.
>>>>
```

2

```
>>>>
>>>>
>>>> Both San Diego and Desert Cities have individually negotiated HOA by
>>> HOA
>>>> contractual rates for some HOA's and other bulk customers (such as
>>>> apartment buildings).  In addition, as you now know, there are HOA
>>> Rate
>>>> Card rates that make certain bundles of services available to HOA
>>>> residents (like the residents of Sea Point) that do not have
>>>> individually negotiated rates.
>>>>
>>>>
>>>>
>>>> Regards,
>>>>
>>>>
>>>>
>>>> Julie
>>>>
>>>>
>>>>
>>>>
>>>
>>
> _____
>>> _____
>>>>
>>>> The information contained in this email may be confidential and/or
>>> legally
>>>> privileged. It has been sent for the sole use of the intended
>>>> recipient(s). If the reader of this message is not an intended
>>> recipient,
>>>> you are hereby notified that any unauthorized review, use,
>> disclosure,
>>>> dissemination, distribution, or copying of this communication, or
> any
>>> of
>>>> its contents, is strictly prohibited. If you have received this
>>>> communication in error, please contact the sender by reply email and
>>>> destroy all copies of the original message. To contact our email
>>>> administrator directly, send to postmaster@dlapiper.com
>>>>
>>>> Thank you.
>>>>
>>>
>>
> _____
>>> _____
>>>
>>>
>>> --
>>> BARRON E. RAMOS
>>> Attorney at Law, A Professional Corporation
>>> 132 N. El Camino Real, # 303
>>> Encinitas, California 92024
>>> Phone (760) 274-6438
>>> Mobile (858) 349-6019
>>> Fax (760) 994-1354
>>>
>>>
>>>
>>> <font face="Arial" size="2" color="#008000">
>>> Please consider the environment before printing this email.</font>
>>>
>>>
>>
> _____
```

```
>> _____
>>>
>>> The information contained in this email may be confidential and/or
>> legally
>>> privileged. It has been sent for the sole use of the intended
>>> recipient(s). If the reader of this message is not an intended
>> recipient,
>>> you are hereby notified that any unauthorized review, use,
> disclosure,
>>> dissemination, distribution, or copying of this communication, or any
>> of
>>> its contents, is strictly prohibited. If you have received this
>>> communication in error, please contact the sender by reply email and
>>> destroy all copies of the original message. To contact our email
>>> administrator directly, send to postmaster@dlapiper.com
>>>
>>> Thank you.
>>>
>>
> _____
>> _____
>>>
>>
>>
>> --
>> BARRON E. RAMOS
>> Attorney at Law, A Professional Corporation
>> 132 N. El Camino Real, # 303
>> Encinitas, California 92024
>> Phone (760) 274-6438
>> Mobile (858) 349-6019
>> Fax (760) 994-1354
>>
>>
>>
>> <font face="Arial" size="2" color="#008000">
>> Please consider the environment before printing this email.</font>
>>
>>
> _____
> _____
>>
>> The information contained in this email may be confidential and/or
> legally
>> privileged. It has been sent for the sole use of the intended
>> recipient(s). If the reader of this message is not an intended
> recipient,
>> you are hereby notified that any unauthorized review, use, disclosure,
>> dissemination, distribution, or copying of this communication, or any
> of
>> its contents, is strictly prohibited. If you have received this
>> communication in error, please contact the sender by reply email and
>> destroy all copies of the original message. To contact our email
>> administrator directly, send to postmaster@dlapiper.com
>>
>> Thank you.
>>
> _____
> _____
>>
>
>
> --
> BARRON E. RAMOS
> Attorney at Law, A Professional Corporation
> 132 N. El Camino Real, # 303
> Encinitas, California 92024
```

4

> Phone (760) 274-6438
> Mobile (858) 349-6019
> Fax (760) 994-1354
>
>
>
> _____
>
> The information contained in this email may be confidential and/or legally
> privileged. It has been sent for the sole use of the intended
> recipient(s). If the reader of this message is not an intended recipient,
> you are hereby notified that any unauthorized review, use, disclosure,
> dissemination, distribution, or copying of this communication, or any of
> its contents, is strictly prohibited. If you have received this
> communication in error, please contact the sender by reply email and
> destroy all copies of the original message. To contact our email
> administrator directly, send to postmaster@dlapiper.com
>
> Thank you.
>
> _____
>

--
BARRON E. RAMOS
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354

**EXHIBIT C**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CENTRAL DIVISION

LEON ALPERT, an individual, on
behalf of himself, on behalf of
all those similarly situated,
and on behalf of the general
public,

            Plaintiff,

   vs.

TIME WARNER CABLE, INC., a
Deleware corporation, and DOES
1 TO 100,

            Defendants.

Case No. GIC881621

**CERTIFIED
COPY**

---

VIDEOTAPED DEPOSITION OF LEON SETH ALPERT

VOLUME 1

SAN DIEGO, CALIFORNIA

TUESDAY, NOVEMBER 6, 2007

Reported by:
R. Denise Marlow
CSR No. 11631

Job No. 75324

| | | |
|---|---|---|
| 10:08:15 | 1 | A     As far as I recall, yes. |
| 10:08:17 | 2 | Q     How much after that? |
| 10:08:18 | 3 | A     I don't recall. |
| 10:08:18 | 4 | Q     Was it within days? |
| 10:08:20 | 5 | A     I -- I have no recollection -- |
| 10:08:22 | 6 | Q     All right. |
| 10:08:23 | 7 | A     -- of when.  I'm sorry. |
| 10:08:24 | 8 | Q     That's all right. |
| 10:08:25 | 9 |        Before that date, that is, before the date you |
| 10:08:27 | 10 | received the HOA agreement sometime after your |
| 10:08:31 | 11 | conversation with Time Warner, had you ever seen it |
| 10:08:34 | 12 | before? |
| 10:08:34 | 13 | A     No. |
| 10:08:34 | 14 | Q     Had you ever discussed its terms before that |
| 10:08:38 | 15 | date? |
| 10:08:38 | 16 | A     No. |
| 10:08:39 | 17 | Q     Were -- you were aware, though, before that |
| 10:08:42 | 18 | date that your HOA was paying Time Warner for basic |
| 10:08:47 | 19 | cable service for your service.  Correct? |
| 10:08:49 | 20 | A     Yes. |
| 10:08:49 | 21 | Q     And you were aware of that for some period of |
| 10:08:54 | 22 | time.  Were you aware of that for as -- withdraw that |
| 10:08:58 | 23 | question. |
| 10:08:58 | 24 |        When do you recall being first aware of the |
| 10:09:01 | 25 | fact that the HOA had an agreement with Time Warner, the |

32

10:09:05  1  result of which is basic cable was provided by Time

10:09:08  2  Warner -- by the HOA?

10:09:10  3       A    I believe it was around the time we moved in.

10:09:13  4  It was probably just represented to me by the seller or

10:09:17  5  someone else.  I don't recall.  Someone -- someone told

10:09:20  6  me or I read it.  I don't remember.

10:09:22  7       Q    Okay.  And other than the fact that the HOA

10:09:32  8  paid Time Warner for the service, the basic service,

10:09:36  9  before you received a copy of the agreement, were you

10:09:39 10  aware of any of the other terms or provisions of the

10:09:43 11  agreement between your HOA and Time Warner?

10:09:45 12       A    No.

10:09:46 13       Q    And just to close this line of questioning out,

10:09:51 14  other than the newsletter that you got sometime shortly

10:09:55 15  before you had the conversation with Time Warner Cable,

10:09:59 16  did you ever receive any information in the form of a

10:10:01 17  newsletter, bulletin, conversations with members of the

10:10:06 18  HOA, or otherwise regarding or relating to the terms of

10:10:09 19  the agreement between the HOA and Time Warner Cable?

10:10:12 20       A    Not that I recall.

10:10:14 21       Q    Did you ever serve -- serve on the board of the

10:10:17 22  HOA?

10:10:18 23       A    I think I went to a meeting.  I think they --

10:10:30 24  they wanted me to serve or perhaps I attended one

10:10:33 25  meeting of one committee, and I don't remember which

33

**LEON SETH ALPERT**                                    11/06/07

11:26:16    1          So after some conversation and whatever she

11:26:19    2    reviewed, she says, "Okay."  So they gave me -- she

11:26:25    3    agreed she's going to give me one free month of

11:26:29    4    telephone and lower the price that -- starting that

11:26:33    5    minute.  And that was basically the conversation.

11:26:39    6          MR. SHOHET:  Would you mind reading that back

11:26:41    7    for me.

11:28:02    8          (Record read)

11:28:03    9          THE WITNESS:  May I add something?

11:28:04   10    BY MR. SHOHET:

11:28:04   11     Q    Sure.

11:28:04   12     A    I was also paying my basic cable through the

11:28:07   13    association, which was another indicator in my mind that

11:28:10   14    I had to go through the association to get Time Warner

11:28:12   15    services.  And the customer service rep didn't argue

11:28:14   16    with me, didn't argue that point at all with me, so I

11:28:19   17    just assumed I was correct.

11:28:22   18     Q    You were aware at that time that the basic

11:28:26   19    cable service that you were receiving, which was the

11:28:28   20    basic and the expanded tier channels, were being paid

11:28:31   21    for by your HOA?

11:28:33   22     A    I don't know what the expanded tier is, but I

11:28:36   23    just know that the HOA paid the -- I mean my -- part of

11:28:38   24    my HOA fees went to pay for the basic cable.

11:28:41   25     Q    Okay.  I have a couple questions about some of

86

LEON SETH ALBERT                                          11/06/07

| | |
|---|---|
| 11:30:01 | 1 |
| 11:30:04 | 2 |
| 11:30:09 | 3 |
| 11:30:12 | 4 |
| 11:30:15 | 5 |
| 11:30:17 | 6 |
| 11:30:19 | 7 |
| 11:30:19 | 8 |
| 11:30:22 | 9 |
| 11:30:25 | 10 |
| 11:30:28 | 11 |
| 11:30:34 | 12 |
| 11:30:35 | 13 |
| 11:30:37 | 14 |
| 11:30:44 | 15 |
| 11:30:47 | 16 |
| 11:30:50 | 17 |
| 11:30:53 | 18 |
| 11:30:54 | 19 |
| 11:30:59 | 20 |
| 11:30:59 | 21 |
| 11:31:04 | 22 |
| 11:31:08 | 23 |
| 11:31:14 | 24 |
| 11:31:17 | 25 |

not discontinue my basic cable through the association

and contract separately with Time Warner for service,

but as far as which individual services I did get from

Time Warner, that's just between me and them.

Q    That's what confused me.

A    The wiring and, you know, the basic cable and

whatever.

Q    Right.  You understood at that point that the

basic cable was provided by your HOA under an agreement

with Time Warner and your HOA and that you were then

negotiating or dealing directly with Time Warner Cable

for your additional services.

A    I ordered the services, yeah.

Q    All right.  And you believed -- well, did you

think about whether you had the right to just simply

contract independently for the basic service if you

wanted to and just forget about your deal with the HOA,

or did you not think about that?

A    Please rephrase that, or just ask me that one

more time.

Q    Did you consider whether you would be able to

purchase, if you chose to, the basic package plus any

additional services you wanted as a -- as a non-HOA

resident in the same way that I or anybody else could

purchase that package from Time Warner?

88

1                          PENALTY OF PERJURY

2

3

4

5

6

7

8

9

10            I, LEON SETH ALPERT, do hereby declare under

11    penalty of perjury that I have read the foregoing

12    transcript; that I have made any corrections as appear

13    noted, in ink, initialed by me, or attached hereto; that

14    my testimony as contained herein, as corrected,

15    is true and correct.

16

17            EXECUTED this _____ day of _____,

18    2007, at _____, _____.
                        (City)                (State)

19

20

21                        _____

                          LEON SETH ALPERT
22                        Volume 1

23

24

25

                                                              172

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10    testimony given.

11          Further, that if the foregoing pertains to

12    the original transcript of a deposition in a Federal

13    Case, before completion of the proceedings, review of

14    the transcript [   ] was [   ] was not requested.

15          I further certify I am neither financially

16    interested in the action nor a relative or employee

17    of any attorney or party to this action.

18          IN WITNESS WHEREOF, I have this date

19    subscribed my name.

20

21    Dated: _____ NOV 1 2 2007 _____

22

23                             _R. Denise Marlow_

                                R. DENISE MARLOW

24                                CSR No. 11631

25

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   RYAN T. HANSEN (Bar No. 234329)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA 92101-4297
   Tel: 619.699.2700
5  Fax: 619.699.2701

COPY

FILED
SAN DIEGO SUPERIOR COURT

FEB 7 2008

.CLERK OF THE SUPERIOR COURT
BY ————————————
C. CHEELY

6

7  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
8  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE

9

10                 SUPERIOR COURT OF CALIFORNIA

11                    COUNTY OF SAN DIEGO

12

13  LEON ALPERT, an individual, on behalf         CASE NO. GIC881621
    of himself, on behalf of all those similarly
14  situated, and on behalf of the general        **DECLARATION OF RYAN T. HANSEN IN
    public,                                        OPPOSITION TO PLAINTIFF'S MOTION
15                                                 TO COMPEL COMPLIANCE [RE: TIME
                 Plaintiffs,                       WARNER CABLE'S RESPONSES TO
16                                                 PLAINTIFF'S REQUESTS FOR
         v.                                        PRODUCTION OF DOCUMENTS]**
17
    TIME WARNER CABLE, INC., a               Date        February 22, 2008
18  Delaware corporation, and DOES 1 TO      Dept:       63
    100,                                      Judge:      Luis R. Vargas
19
                 Defendants.                 Complaint:  March 13, 2007
20                                           FAC:        May 16, 2007

21

22

23

24

25

26

27

28

DLA PIPER US LLP   SD\1781980.1
   SAN DIEGO

1    I, Ryan T. Hansen, declare and state as follows:

2    1.    I am an attorney duly admitted to practice law in the State of California, and

3    admitted to appear before this Court. I am an associate with the law firm of DLA Piper US LLP,

4    attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

5    New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC")

6    in the above-captioned action. I have personal knowledge of the facts set forth herein and, if

7    called to testify, I could and would testify competently thereto.

8    1.    I spent 9.1 hours researching and preparing TWC's opposition brief and

9    supporting documents in response to Plaintiff Leon Alpert's Motion to Compel Compliance [Re:

10   Time Warner Cable's Responses to Plaintiff's Requests for Production of Documents].

11   2.    My standard hourly rate is $430 per hour. The total amount of my time in bringing

12   these motions to compel cost $3,913.

13   I declare under penalty of perjury under the laws of the state of California that the

14   foregoing is true and correct. Executed this ___7___ day of February 2008 at San Diego,

15   California.

16

17                                    RYAN T. HANSEN

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1781980.1                         - 1 -

DECLARATION OF RYAN T. HANSEN IN OPPOSITION TO MOTION TO COMPEL

1    JEFFREY M. SHOHET (Bar No. 067529)
     JULIE L. HUSSEY (Bar No. 237711)
2    CARRIE S. DOLTON (Bar No. 234298)
     **DLA PIPER US LLP**
3    401 B Street, Suite 1700
     San Diego, CA 92101-4297
4    Tel: 619.699.2700
     Fax: 619.699.2701

5

6    Attorneys for Defendant
     TIME WARNER ENTERTAINMENT-ADVANCE/
7    NEWHOUSE PARTNERSHIP, A NEW YORK
     GENERAL PARTNERSHIP, THROUGH ITS SAN
8    DIEGO DIVISION, DBA TIME WARNER CABLE

COPY

**FILED**
SAN DIEGO SUPERIOR COURT

FEB   **7** 2008

CLERK OF THE SUPERIOR COURT
BY _____ C. CHEELY

9

10            SUPERIOR COURT OF CALIFORNIA

11              COUNTY OF SAN DIEGO

12

13    LEON ALPERT, an individual, on behalf
     of himself, on behalf of all those similarly
     situated, and on behalf of the general
14    public,

15            Plaintiffs,

16        v.

17    TIME WARNER CABLE, INC., a
     Delaware corporation, and DOES 1 TO
18    100,

19            Defendants.

CASE NO. GIC881621

**DECLARATION OF TERRI RHODES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**

Date       February 22, 2008
Dept:       63
Judge:      Luis R. Vargas

Complaint:   March 13, 2007
FAC:        May 16, 2007

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1781706.1

DECLARATION OF TERRI RHODES IN OPPOSITION TO MOTION TO COMPEL

1    I, Terri Rhodes, declare:

2    1.    I am Director of Marketing at Time Warner Entertainment-Advance/Newhouse

3    Partnership, a New York general partnership, through its San Diego Division, dba Time Warner

4    Cable ("TWC"). I have personal knowledge of the facts set forth herein and, if called to testify, I

5    could and would testify competently thereto.

6    2.    In instances where TWC negotiates a bulk contract with a homeowners'

7    association ("Bulk-customer HOA"), the Bulk-customer HOA is TWC's client for the services, is

8    billed for the services provided, and pays TWC for such services. TWC does not charge Bulk-

9    customer HOA residents for the services it provides to the Bulk-customer HOA, nor do Bulk-

10   customer HOA residents pay TWC for the cable services they receive through the Bulk-customer

11   HOA.

12   3.    Residents within Bulk-customer HOAs are able to order additional cable services

13   from TWC that are not provided for in the contract between TWC and the Bulk-customer HOA

14   ("Additional Services"), through entering into an agreement with TWC for such services.

15   4.    TWC entered into a bulk agreement with Sea Point Townhomes, Plaintiff Leon

16   Alpert's HOA, whereby TWC provides basic cable services to the homes in the Sea Point

17   Townhomes, and Sea Point Townhomes pays TWC for such services.

18   5.    Each private contract between TWC and its bulk customers are individually

19   negotiated agreements that are considered confidential and/or proprietary information.

20   I declare under penalty of perjury under the laws of the State of California and the United

21   States of America that the foregoing is true and correct and that this declaration was executed on

22   February 6, 2008, in San Diego, California.

23

24                                                                Terri Rhodes

25

26

27

28

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9

                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12
   LEON ALPERT, an individual, on behalf          CASE NO.  GIC881621
13 of himself, on behalf of all those similarly
   situated, and on behalf of the general         **PROOF OF SERVICE**
14 public,
                                                   Dept:      63
15            Plaintiffs,                          Judge:     Luis R. Vargas

16       v.                                        Complaint: March 13, 2007
                                                   FAC:       May 16, 2007
17 TIME WARNER CABLE, INC., a
   Delaware corporation, and DOES 1 TO
18 100,

19            Defendants.

20

21

22

23

24

25

26

27

28
DLA PIPER US LLP   SD\1735197.1
   SAN DIEGO       325566-11

─────────────────────────────────────────────
                    PROOF OF SERVICE

1       I am a resident of the State of California, over the age of eighteen years, and not a party to

2 the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On February 7, 2008, I served the within document(s):

3      **1.   DEFENDANT TIME WARNER CABLE'S MEMORANDUM OF POINTS AND**

4 **AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**

5

6      **2.   DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF**

7 **DOCUMENTS]**

8      **3.   DECLARATION OF TERRI RHODES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S**

9 **RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**

10

11      **4.   DECLARATION OF RYAN T. HANSEN IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL COMPLIANCE [RE: TIME WARNER CABLE'S**

12 **RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**

13      **5.   DEFENDANT TIME WARNER CABLE'S SEPARATE STATEMENT OF ITEMS IN DISPUTE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

14 **COMPLIANCE [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS]**

15

16 ☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

17

18 ☒     by overnight mail by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same

19 day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express

20 service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for

21 delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in

22 the ordinary course of business, to each addressee as set forth below.

23

24 ☐     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

25

26

27

28

SD\1735197.1
325566-11

-1-

PROOF OF SERVICE

☐   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Attorneys for Plaintiff**

Barron E. Ramos, Esq.            David R. Markham, Esq.
Attorney at Law                 Clark & Markham
132 N. El Camino Real, Suite 303    401 West A Street, Suite 2200
Encinitas, CA 92024           San Diego, CA 92101
(858) 349-6019               (619) 239-1321
(760) 994-1354 (fax)         (619) 239-5888 (fax)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 7, 2008, at San Diego, California.

_____
Sarah Walter

SD\1735197.1
325566-11

-2-

PROOF OF SERVICE

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Telephone: (760) 274-6438
4  Facsimile:  (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888

9
   Attorneys for plaintiff and the Class
10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                      **COUNTY OF SAN DIEGO**

13  LEON ALPERT, an individual,              ) Case No. GIC 881621
    on behalf of himself, on behalf of all those )
14  similarly situated, and on behalf of the general ) **CLASS ACTION**
    public,                                  )
15                                           ) **PLAINTIFF'S REPLY IN SUPPORT OF**
           Plaintiffs,                       ) **MOTION TO COMPEL and REQUEST**
16                                           ) **FOR SANCTIONS IN THE SUM OF**
    v.                                       ) **$ 9,687.50**
17  TIME WARNER CABLE, INC., a Delaware )
    corporation, and DOES 1 TO 100,          ) Date: March 14, 2008
18                                           ) Time: 10:00 a.m.
           Defendants.                       )
19                                           ) Dept: 63
                                             ) Judge: Hon. Luis R. Vargas
20                                           )
                                             ) Trial Date: None Set
21                                           ) Case Filed: March 13, 2007
                                             )
22                                           )
                                             )
23  _____ )

24

25

26

27

28

                              1

## I. SUMMARY OF REPLY

In its opposition, TWC defends its decision to not produce responsive documents by narrowing plaintiff's Request for Production to a tiny *subset* of the documents actually requested. Plaintiff did not request "rate cards" – he requested "all" pricing documents. In its response, TWC stated that it made a "good faith effort" to supply all responsive documents. TWC now admits that statement was false since it concedes that it has further responsive documents that it simply refuses to produce.

As for the documents TWC admits it has but refuses to produce, TWC now takes the position that those documents are "confidential," reversing the position TWC took in the meet and confer process leading up to this Motion. If the documents are truly "confidential," TWC does not explain why it did not bother to move for a protective order or why it otherwise won't agree to produce the documents subject to a stipulated protective order.

Finally, TWC's opposition to plaintiff's Motion for Compel Compliance completely ignores plaintiff's alternative Motion to Compel. Thus, even though TWC claims it complied with the Request thereby rendering the Motion to Compel Compliance "moot" (which it plainly did not since it concedes that are unproduced responsive documents), TWC does not defend or even address the alternative Motion to Compel. TWC's objections are classic boilerplate nuisance objections. At a minimum, TWC should be compelled to provide a proper response, admit or deny the existence of the requested documents, and not hide behind semantic tricks designed to conceal the existence of further responsive documents.

TWC's gamesmanship to avoid production of plainly relevant documents while simultaneously moving for summary judgment should not be permitted. Plaintiff cannot adequately defend against TWC's pending summary judgment and cannot move to certify a class without the responsive documents. Plaintiff's motion should be granted and sanctions awarded.

2

## II. PLAINTIFF'S MOTION TO COMPEL IS UNOPPOSED

As clearly set forth in footnote 1 on p.3:26 of plaintiff's Motion: "To the extent Time Warner takes the position that it has not agreed to produce said documents, notwithstanding its Response that it would produce the documents, this Motion can and should be considered a Motion to Compel Further Responses under CCP section 2031.310." TWC's opposition to plaintiff's motion ignores that the motion is to compel compliance *or, alternatively*, to compel further responses.

TWC's argument in its opposition that it never agreed to produce the documents sought is not only wrong (as set forth below), it does not bother to address plaintiff's alternative Motion to Compel.[1] TWC offers no opposition to plaintiff's Motion to Compel Compel and thus the Motion to Compel must be granted even if the Motion to Compliance is not.

## III. PLAINTIFF'S REQUEST IS NOT LIMITED TO CURRENT "RATE CARDS"

TWC claims that plaintiff's Request for Production is limited to "rate cards," which TWC does not define for the Court (and has never defined for plaintiff's counsel). TWC's Memo at p.8:22. "Plaintiff's motion is based on an alleged failure by TWC to produce the rate cards and rate change letters that it agreed to produce in its discovery response." Ibid.

TWC is wrong. The request is not so limited and encompasses "all" pricing documents.

> **Please produce all DOCUMENTS which depict pricing for <u>all</u> of YOUR products and services, including any bundled packages, to RESIDENTS.** (Emphasis added)

TWC's self-styled limitation in its response to "rate cards" does not appear anywhere in the Request. Nor does TWC bother to define what a "rate card" is, leaving plaintiff, and now the

---

[1] TWC's response to plaintiff's Request for Production was "subject to" TWC's objections and "based on discovery ... to date." Both statements are plainly designed to hedge the response given and attempt to conceal a complete and accurate response. That is why this is not only a Motion to Compel Compliance, but also a Motion to Compel.

3

1    Court, to speculate.

2         In contrast, plaintiff's Request for Production seeks "*all*" documents "which depict pricing"

3    for "Residents." TWC's response indicates they will comply with the Request. The Response

4    does not indicate there are other documents that are responsive but that TWC is withholding. To

5    the contrary, the full Response, as set forth in the Separate Statement, indicates that:

6

7         **TWC has performed a *good faith effort to supply documents that***

8         ***identify a price* for TWC products and services, and TWC will**

9         **produce rate cards and rate change letters.**

10        (Emphasis added)

11        TWC's "good faith" apparently was solely to its client, not to plaintiff, when it elected not

12   produce all of the responsive documents. Indeed, the correspondence trail between plaintiff's

13   counsel and TWC's counsel plainly indicates that (i) TWC knew it had "individually negotiated

14   bundles" for HOA's outside of the San Diego area, (ii) that plaintiff requested said documents be

15   produced as responsive to the Request for Production, and (iii) that TWC refused to do so. TWC

16   Memo at p.6:4-21.

17        For TWC to now claim it produced all documents is absurd. Indeed, TWC concedes this

18   point by stating that "to the extent those [documents] may be considered technically responsive to

19   Plaintiff's discovery request, TWC refers to its objections..." TWC Memo, ftnt 24 at p.12:27. In

20   other words, TWC admits it has other documents, it just won't produce them.

21        Not only did TWC refuse to produce documents it concedes are responsive, it also admits in

22   its opposition that it only produced its "*current* retail pricing" (TWC Memo at p.5:19) for those

23   areas outside of San Diego and the Desert Cities, which obviously would have little or nothing to

24

25

26   do with the pricing in effect *during the class period*. The Request for Production plainly defines

27   the class period and incorporates that definition within the Request. Nonetheless, TWC makes the

28

4

1   untenable argument that it has somehow fully complied with the Request for Production.

2       In addition to mischaracterizing plaintiff's Request to avoid production and its admission

3   that it did not produce documents relevant to the class period, TWC also argues beyond all

4   credulity that pricing to "Residents" would somehow not include TWC's pricing for basic cable

5   services to the Residents embodied in the agreements between TWC and the HOAs. Rather, TWC

6   takes the position that such pricing is to the Resident's HOA, not the Resident. Apparently this is

7   part of the "good faith" effort TWC undertook to determine which documents are responsive.

8

9       Setting aside the semantic game being played by TWC to avoid production, the contracts

10  between the Residents' HOA and TWC plainly establish the very pricing at issue in this litigation:

11  pricing between Residents and TWC. This case is obviously about TWC's systematic

12  overcharging of Residents that have already paid for basic cable through agreements between their

13  HOA and TWC.[2] Since the class is statewide, plaintiff is entitled to know - and to move to certify

14  *must* know - what Residents throughout the state are paying TWC.

15

16      Moreover, TWC's argument that it can't produce its agreements with statewide HOAs

17  because those agreements are "confidential" is nonsense since (i) TWC did *not* base its refusal to

18  produce the documents on confidentiality (see Decl. Barron E. Ramos in Support of Motion at

19  para. 6), (ii) the parties can work out the terms of a stipulated protective order if necessary, and (iii)

20  TWC has failed to move for a protective order. In its opposition, TWC reverses course and now

21  claims it won't produce the HOA agreements because they are suddenly "confidential" – yet

22  another reason why sanctions are warranted here.

23

24  **IV. TWC MISREPRESENTS THE FACTS UNDERLYING THIS CASE**

25      Although a minor point and potentially unnecessary for purposes of determining whether to

26

27  _____

28      [2] TWC admits it overcharged Residents outside of San Diego because TWC offered "retail bundles" without giving a credit for basic cable fees collected. TWC's Memo at p.10:11.

1   grant this Motion, TWC's misrepresentation of how plaintiff Alpert ultimately received the correct

2   pricing for his TWC services needs to be corrected.  Contrary to TWC's representation, Alpert

3   never "changed" his services to a bundle or any other package when he called in the fall of 2006.

4   TWC's Memo at p.3:22.  Rather, he called TWC and demanded the correct pricing after he learned

5   of the correct pricing in a newsletter from his HOA.  He never requested any change in his service

6

7   or to be bundled as will be set forth in detail in plaintiff's upcoming Opposition to TWC's Motion

8   for Summary Judgment.  Moreover, as will also be made plain in that Opposition, TWC destroyed

9   its *only recording* of that conversation with Alpert even though TWC retained and has produced all

10  other recorded conversations it had with Alpert over the years.[3]

11  **V. SANCTIONS**

12

13  TWC's opposition to plaintiff's request for sanctions does not dispute the sum sought by

14  plaintiff's counsel in bringing this motion.  Rather, TWC merely disputes plaintiff's entitlement to

15  the sanctions claiming TWC has not acted without substantial justification.  Thus, if the Court

16  grants plaintiff's request for sanctions, it should do so in the full and unopposed sum sought in the

17  Motion.

18  The Court should grant plaintiff's request for sanctions for many reasons.  Playing semantic

19  games in an effort to frustrate plaintiff's discovery, raising nuisance objections ("relevance" and

20

21

22

23

24  [3] TWC "suggests," but apparently does not argue, that its upcoming MSJ makes plaintiff's Request
    for Production "even more improper" (TWC Memo at p.14:5) since TWC's HOA pricing is not, according

25  to TWC, germane to the issues raised in its MSJ.  Id. at p.14:6.  Since TWC's MSJ is based upon the
    premise that it does not overcharge its HOA consumers, pricing documents are plainly relevant and likely

26  will, at a minimum, lead to the discovery of admissible evidence.  It is not up to TWC to determine whether
    those documents are relevant to this case and how, if at all, they may be used in opposition to its MSJ.  If

27  anything, TWC is undermining its ability to move for summary judgment since an MSJ can never be
    granted when outstanding discovery requests may lead to admissible evidence necessary to oppose such a

28  motion – an argument plaintiff will surely make if TWC has not complied with all discovery requests.

6

1   "vagueness"),[4] hiding behind objections made but then later denied during the meet and confer

2   process ("confidentiality"), claiming in its Response to have made a "good faith" effort to produce

3   all responsive documents while concealing many (if not most) of them, failing to oppose the

4   Motion to Compel and only opposing the Motion to Compel Compliance, failing to move for a

5   Protective Order, and forcing plaintiff to expend the time and fees necessary to obtain plainly

6   necessary and relevant documents make sanctions in this case not only warranted - but appropriate.

7

8        The sum requested by plaintiff of $ 9,687.50 should be granted in full.

9

10  Dated: February 14, 2008

11                                                Barron E. Ramos
                                                  Attorneys for plaintiff
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  _____

27      [4] Objections based upon purported "vagueness" are nothing more than "nuisance objections."
    *Standon Co. Inc. v. Superior Court* (Kim) (1990) 225 Cal.App.3d 898, 903.  Indeed, such boilerplate
    objections are typically sanctionable.  *Korea Data Systems Co., Ltd., v. Superior Court* (Aamazing Tech.
28  Corp.) (1997) 51 Cal.App.4th 1513, 1516.

1    **PROOF OF SERVICE**

2        I am employed in the County of San Diego, California.  I am over the age of 18 years and

3    not a party to the within action.  My business address is 132 N. El Camino Real, # 303, Encinitas,

4    California 92024.

5        On February 14, 2008, I served the following documents:

6    **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL and REQUEST FOR SANCTIONS IN THE SUM OF $ 9,687.50**

7

8    on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

9    follows:

10   Jeffrey M. Shohet                    *Attorneys for Time Warner Entertainment-*
                                          *Advance NewHouse Partnership, A New York*
11   Julie L. Hussey                      *General Partnership, Through its San Diego*
     Carrie S. Dolton                     *Division d.b.a. Time Warner Cable*
12   **DLA PIPER US LLP**
     401 B Street, Suite 1700
13   San Diego, CA 92101-4297
     Facsimile: (619) 764-6644
14

15

16   X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-
          class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California
17        92024, following ordinary business practices.  I am familiar with the practice of collection
          and processing of correspondence, said practice being that in the ordinary course of business,
18        correspondence is deposited in the United States Postal service the same day as it is placed
          for collection.

19

20        (BY FACSIMILE) I transmitted the above-listed document to the party listed above via
          facsimile.  The transmission was reported complete and without error.  The telephone number
21        of the facsimile machine I used was (760) 274-6438.

22        I declare under penalty of perjury under the laws of the State of California that the

23   foregoing is true and correct.

24        Executed at Encinitas, California on February 14, 2008.

25

26   _____
                                     Barron E. Ramos
27

28

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**HALL OF JUSTICE**
**TENTATIVE RULINGS - February 21, 2008**

EVENT DATE: 02/22/2008        EVENT TIME:    10:00:00 AM        DEPT.: C-63

JUDICIAL OFFICER: Luis R. Vargas

CASE NO.:    GIC881621

CASE TITLE:   ALPERT VS TIME WARNER CABLE INC

CASE CATEGORY: Civil - Unlimited        CASE TYPE: Business Tort

EVENT TYPE:  Motion Hearing (Civil)
CAUSAL DOCUMENT Motion to Compel Discovery, 12/18/2007
/DATE FILED:

Plaintiff's Motion to Compel is granted.

Plaintiff's Request for Production No. 1 seeks "all" documents "which depict pricing" for "Residents." A "Resident" is defined as occupants of properties during the operative time period that were part of an HOA in California with whom Defendant Time Warner Cable, Inc. ("TWC") entered into a contract to provide basic cable services. (Plaintiff's Separate Statement). Thus, this request includes pricing documents and/or contracts between TWC and all bulk-customer HOAs in California.

Responsive to this Request, TWC produced HOA rate cards for the Desert Cities and San Diego. TWC states there are no rate cards for other areas of California, as the HOA pricing for other areas of California is the result of individually negotiated HOA specific contracts. TWC refuses to produce the individually negotiated contracts between TWC and the bulk-customer HOAs "because such documents are largely non-responsive to the discovery request at issue." (TWC's Separate Statement, p. 5).

Good cause justifies the discovery sought by this inspection demand, as the difference between HOA pricing and retail pricing, if any, in California during the class period is relevant to the certification of a Plaintiff class. TWC fails to meet its burden to justify its objections.

All requests for sanctions are denied.

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO
### CENTRAL

### MINUTE ORDER

Date: 02/22/2008                    Time: 10:00:00 AM        Dept: C-63
Judicial Officer Presiding: Judge Luis R. Vargas
Clerk: Richard Cersosimo

Bailiff/Court Attendant:
ERM:
Reporter: , Not Reported

Case Init. Date: 03/13/2007

Case No: GIC881621                        Case Title: ALPERT vs TIME WARNER CABLE INC

Case Category: Civil - Unlimited          Case Type: Business Tort

---

Event Type: Motion Hearing (Civil)
Moving Party: LEON ALPERT
Causal Document & Date Filed: Motion to Compel Discovery, 12/18/2007

---

**Appearances:**


---

The Court, having taken the above-entitled matter under submission on 02/22/2008 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Having taken Plaintiffs' Motion to Compel Compliance under submission, the Court now rules as follows:

Plaintiffs' Motion to Compel Compliance is **denied, without prejudice**.

Plaintiff's Request for Production No. 1 sought "all" documents "which depict pricing" for "Residents." (Plaintiff's Separate Statement). Defendant Time Warner Cable, Inc. ("TWC") responded, "TWC has performed a good faith effort to supply documents that identify a price for TWC products and services, and TWC will produce rate cards and rate change letters." (Plaintiff's Separate Statement).

Plaintiff's notice of motion in this case stated Plaintiff was moving "for an Order compelling compliance with Time Warner's Response to Request for Production of Documents . . . " on grounds "Time Warner had previously agreed to produce the documents in its Response to plaintiff's Request for Production." (Notice of Motion at 2:4-5, 9-10). Responsive to Plaintiff's Request for Production, TWC produced HOA rate cards for the Desert Cities and San Diego. There are no rate cards for other areas of California, as the HOA pricing for other areas of California is the result of individually negotiated HOA specific contracts. (TWC's Separate Statement). By way of the instant motion, Plaintiff is seeking to compel TWC to produce these individually negotiated HOA contracts.

However, Plaintiff's notice of motion prevents the court from granting the requested relief. The notice of motion must state in the first paragraph exactly what relief is sought and on what grounds. (Code Civ. Pro., § 1010; Cal. Rules of Court, rule 3.1110(a); see *People v. American Sur. Ins. Co.* (1999) 75 Cal.App.4th 719, 726 (citing text)). The court cannot grant different relief, or relief on different grounds, than stated in the notice of motion. (See *People v. American Sur. Ins. Co.*, supra, 75 Cal.App.4th at 726; *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124).

---

Date: 02/22/2008                        MINUTE ORDER                        Page: 1
Dept: C-63                                                              Calendar No.:

Case Title: ALPERT vs TIME WARNER CABLE INC        Case No: GIC881621

Plaintiff's motion fails as a Motion to Compel Compliance. As set forth above, in its Response to Plaintiff's Request for Production, TWC agreed only to produce rate cards and rate change letters. Since TWC did not previously agree to produce the individually negotiated HOA contracts, TWC did not fail to comply with its statement of compliance. (See Code Civ. Pro. § 2031.320(a)).

Plaintiff's footnote in his Memorandum of Points and Authorities that, alternatively, the motion should be considered a Motion to Compel Further Responses under Code of Civil Procedure section 2031.310 does not satisfy the requirement of notice as set forth in Code of Civil Procedure section 1010.

All requests for sanctions are **denied**.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** ALPERT vs TIME WARNER CABLE INC

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: GIC881621 |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 02/29/2008.

Clerk of the Court, by: _____ , Deputy
                                                     R. Censotimo

Julie L. Hussey
401 B Street # suite 1700
DLA PIPER US LLP
San Diego, CA 92101

DAVID MARKHAM
401 W A Street # 2200
CLARK & MARKHAM
San Diego, CA 92101

BARRON E. RAMOS
132 N. El Camino Real # 303
Encinitas, CA 92024

KRISTEN E. CAVERLY
P. O. Box 9144
Rancho Santa Fe, CA 92067-9144

☐ Additional names and address attached.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**                                          Page: 1

COPY

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9

10                    SUPERIOR COURT OF CALIFORNIA

11                         COUNTY OF SAN DIEGO

12

13  LEON ALPERT, an individual, on behalf        CASE NO. GIC881621
    of himself, on behalf of all those similarly
14  situated, and on behalf of the general       **NOTICE OF ERRATA REGARDING**
    public,                                       **SEPARATE STATEMENT OF**
15                                                **UNDISPUTED FACTS AND NOTICE OF**
                    Plaintiffs,                    **LODGMENT IN SUPPORT OF**
16                                                **DEFENDANT TIME WARNER CABLE'S**
            v.                                     **MOTION FOR SUMMARY JUDGMENT**
17
    TIME WARNER CABLE, INC., a               Date      April 4, 2008
18  Delaware corporation, and DOES 1 TO      Time      10:30 a.m.
    100,                                     Dept:     63
19                                           Judge:    Luis R. Vargas
                    Defendants.
20                                           Complaint: March 13, 2007
                                             FAC:       May 16, 2007
21

22

23

24

25

26

27

28

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that the Separate Statement of Undisputed Facts in Support of

3    Time Warner Cable's Motion for Summary Judgment was inadvertently formatted per California

4    Rule of Court 3.1350 as effective through December 31, 2007, and does not reflect the formatting

5    changes made in Rule 3.1350 as of January 1, 2008. Accordingly, Defendant Time Warner

6    Entertainment-Advance/Newhouse Partnership, through its San Diego Division, dba Time

7    Warner Cable ("TWC") has filed and served, concurrently with this Notice of Errata, an

8    Amended Separate Statement of Undisputed Facts in Support of Time Warner Cable's Motion for

9    Summary Judgment. The Amended Separate Statement is also attached hereto as "Exhibit A."

10          Additionally, Plaintiff's October 12, 2006 bill was omitted from Exhibit E of the Notice of

11   Lodgment of Exhibits and Non-California Authorities in Support of Defendant Time Warner

12   Cable's Motion for Summary Judgment. The October 12, 2006 bill reflects the changes made to

13   Plaintiff's TWC account in September and October, 2006. The correct Exhibit E is attached

14   hereto as "Exhibit E" and should replace Exhibit E of the Notice of Lodgment that was filed on

15   January 15, 2006.

16   Dated: February 22, 2008

                                        DLA PIPER US LLP

17

18

19                                      By

20                                        JEFFREY M. SHOHET
                                          JULIE L. HUSSEY
21                                        CARRIE S. DOLTON
                                          Attorneys for Time Warner Cable

22

23

24

25

26

27

28

DLA PIPER US LLP
   SAN DIEGO

SD\1780967.3                              -1-

NOTICE OF ERRATA

**EXHIBIT A**

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA 92101-4297
4   Tel: 619.699.2700
    Fax: 619.699.2701
5

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9
                    SUPERIOR COURT OF CALIFORNIA
10
                        COUNTY OF SAN DIEGO
11

12
    LEON ALPERT, an individual, on behalf        CASE NO. GIC881621
13  of himself, on behalf of all those similarly
    situated, and on behalf of the general       **AMENDED SEPARATE STATEMENT OF**
14  public,                                      **UNDISPUTED FACTS IN SUPPORT OF**
                                                 **DEFENDANT TIME WARNER CABLE'S**
15              Plaintiffs,                       **MOTION FOR SUMMARY JUDGMENT**

16         v.                                     Date        April 4, 2008
                                                 Time        10:30 a.m.
17  TIME WARNER CABLE, INC., a                    Dept:       63
    Delaware corporation, and DOES 1 TO          Judge:      Luis R. Vargas
18  100,
                                                 Complaint:  March 13, 2007
19              Defendants.                       FAC:        May 16, 2007

20

21

22

23

24

25

26

27

28

SD\1778388.3

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

1   Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2   general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3   erroneously as Time Warner Cable, Inc., respectfully submits the following statement of

4   undisputed material facts in support of its motion for summary judgment.

5   **Issue #1: Plaintiff's Cause of Action for Violation of Business & Professions Code**

6   **section 17200 *et seq.*, based on TWC engaging in unlawful conduct in violation of the**

7   **Consumer Legal Remedies Act ("CLRA"), lacks merit as a matter of law because Plaintiff**

8   **cannot prove a violation of the CLRA.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff Leon Alpert ("Plaintiff") is a resident of Sea Point Townhomes in Del Mar, California.<br><br>Deposition of Leon Alpert ("Alpert Deposition"), p. 123, lines 12-15; Deposition Transcript, Notice of Lodgment of Exhibits and Non-California Authorities in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("NOL"), Ex. A. | |
| 2. Sea Point Townhomes is a Home Owners' Association ("HOA" or the "HOA") that has contracted with TWC, under an agreement referred to as a Residential Bulk Services Agreement, for certain cable services to be provided to the residents of Sea Point Townhomes (the "Agreement").<br><br>Declaration of Terri Rhodes in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("Rhodes Decl."), ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 3. The Agreement provides that TWC will provide 76 cable channels, sometimes referred to as "basic cable," to each home/unit of Sea Point Townhomes, and that Sea Point Townhomes will pay TWC a monthly fee per home/unit for such services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 4. Section 1 of the Agreement, entitled "Operator's Service Obligations," provides that TWC "will offer Bulk Multi-Channel Video Services to Residents."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 5. Section 2 of the Agreement, entitled "Rates and Services," states that the "HOA shall pay to [TWC] a monthly Bulk Multi-Channel Video Services fee" which is set forth in Exhibit B to the Agreement.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2. | |
| 6. The fee for basic cable services is to be billed for and paid by the Sea Point Community HOA.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 7. Although basic cable is provided to HOA residents through the HOA, individual residents are free to order additional services from TWC and/or otherwise do business with TWC.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Alpert Deposition, p. 124, lines 17-23; p. 126, lines 2-25; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 8. TWC may, but is not obligated to, offer the residents of Sea Point Townhomes services *other than* the 76 cable channels provided for in the Agreement (hereafter "Additional Service" or "Additional Services").<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 9. Section 1 of the Agreement provides that TWC "may offer and provide Additional Service to Residents on a non-exclusive basis."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 10. Additional Services are defined as "any services other than the Bulk Multi-Channel Video Services, including, but not limited to, premium channels, pay-per-view, music, digital tier, video-on-demand, and other video and music services not included in the Bulk Multi-Channel Video Services package, high speed data and Internet access services, voice services, etc."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1-2. | |
| 11. HOA residents who chose to order Additional Services from TWC are responsible for paying TWC for such services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2; Alpert Deposition, p. 124, lines 17-23; p. 126, lines 2-25; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 12. Pursuant to Section 2 of the Agreement, "Residents will be billed directly for all service charges, taxes, franchise fees, and other fees assessed in conjunction with Additional Services."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2. | |
| 13. No rates or special pricing for Additional Services are provided for in the Agreement.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 14. Since March 2003, TWC has provided the Bulk Multi-Channel Services ("basic cable") to Plaintiff's residence as set forth in the Agreement between TWC and the HOA.<br><br>Rhodes Decl. ¶ 3. | |
| 15. TWC has not billed or collected money from Plaintiff for these services, nor has Plaintiff paid anything to TWC for the services.<br><br>Rhodes Decl. ¶ 4; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 16. TWC is paid by the HOA for providing basic cable services to Plaintiff's residence.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 17. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 18. Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement").<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C; Alpert Deposition, p. 88, lines 8-13; Deposition Transcript, NOL Ex. A. | |
| 19. TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services.<br><br>Rhodes Decl. ¶ 6; Alpert Deposition, p. 136, lines 1-18; p. 140, lines 8-12; Deposition Transcript, NOL Ex. A. | |
| 20. TWC's bills to Plaintiff for his Additional Services contain a detailed itemization of each Additional Service and associated charge for each such service.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 21. The invoices show that Plaintiff was charged only for the Additional Services he ordered and was not charged for basic cable services.<br><br>Rhodes Decl. ¶¶ 7, 9, August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 22. As recently as August 2006, the Additional Services ordered by Plaintiff included the following features and pricing:<br><br>Digital Phone Package ($39.95); iControl Premium Service ($6.95); HDTV Converters ($7.00 x 2); Service Protection Plan ($2.95); Premier Digital ($11.00); Any 4 Premium Channels ($24.95); Wireless Road Runner ($54.90); special order items such as on-demand movies; as well as applicable taxes and fees.<br><br>These prices reflect TWC's published and/or established rates for such a la carte services.<br><br>Rhodes Decl. ¶ 7; August 2006 Bill, NOL Ex. D. | |
| 23. In 2005, TWC began to offer Additional Services in various bundled packages for bulk customers, such as HOA members, at a discount off the aggregate price of the individual services.<br><br>Rhodes Decl. ¶ 8. | |
| 24. Plaintiff was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount off the a la carte price for the same services.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 25. In or about September 2006, having become aware that TWC was offering a bundled package of Additional Services that included many of the services Plaintiff was purchasing a la carte, Plaintiff switched his Additional Services to order new services, including a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 26, lines 4-11; Deposition Transcript, NOL Ex. A. | |
| 26. Plaintiff changed his Additional Services to a bundled package in order to get a better price.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |
| 27. Plaintiff's new Additional Services included a bundled package with the following features and pricing:<br><br>HDTV Converter ($8.00); Service Protection Plan ($2.95); Hoa DIGIPiC 4000 Plan ($121.90)—which includes Wireless Roadrunner, Digital Phone Package, Free On Demand, iControl Premium Service, Digital Access, Cinemax, HBO, Navigator Screen Guide, Showtime, STARZ, Digital Movie Pack, Digital Sports Pack, Digital Variety Pack, Basic Cable Paid by Hoa, and Road Runner High Speed; special order items such as on-demand movies; as well as applicable taxes and fees.<br><br>Rhodes Decl. ¶ 9; September 2006 Bill, NOL Ex. E. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 28. As a result of Plaintiff modifying the Additional Services ordered, and ordering them in a bundled package vis-à-vis a la carte, Plaintiff's charges for Additional Services decreased.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 29. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 30. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 31. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 32. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." <br><br> Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |
| 33. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package. <br><br> Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

**TWC Has Not Violated section 1770(a)(3) of the CLRA**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 34. Plaintiff Leon Alpert claims that TWC has violated section 1770(a)(3) of the CLRA by (1) not informing him of the rates for Additional Services that he was allegedly entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) not disclosing to Plaintiff that TWC was collecting fees for his basic cable service from the HOA. <br><br> First Amended Complaint ¶ 14. | |
| 35. Plaintiff was not entitled to any particular rates for Additional Services. <br><br> Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 36. TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 37. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |
| 38. TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 39. TWC did not charge or collect money from Plaintiff for basic cable.<br><br>Rhodes Decl. ¶ 4; August 2006 Bill, NOL. Ex. D; September 2006 Bill, NOL Ex. E.. | |
| 40. TWC correctly charged Plaintiff for the Additional Services he ordered.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

/////

/////

/////

/////

**TWC Has Not Violated section 1770(a)(13) of the CLRA**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 41. Plaintiff claims that TWC has violated section 1770(a)(13) of the CLRA by misinforming him that his cable bill was reduced because he ordered a bundle of services vis-à-vis individual services, when the real reason for the price reduction was due to TWC already collecting basic cable fees on behalf of Plaintiff.<br><br>First Amended Complaint ¶¶ 15, 42. | |
| 42. Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 43. Plaintiff's bill for Additional Services was reduced because he changed his services and ordered a bundled package rather than a host of individual services.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 44. Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 45. Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

**TWC Has Not Violated section 1770(a)(19) of the CLRA**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 46. Plaintiff claims that TWC has violated section 1770(a)(19) of the CLRA, which precludes inserting an unconscionable provision into a contract, by requiring customers to report billing errors within thirty days.<br><br>First Amended Complaint ¶¶ 21-23, 40. | |
| 47. The billing provision at issue provides:<br><br>"I agree that it is my responsibility to report TWC billing errors within 30 days from receipt of the bill so that service levels and all payments can be verified. If not reported within 30 days, the errors are waived."<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 48. Each TWC invoice also states the following text directly below a capitalized and underlined title "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>": <br><br> "Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct." <br><br> Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 49. TWC's invoices use the same font size for the reminder regarding reporting billing errors within thirty days as is used in the same area on the billing statement. <br><br> Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 50. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package. <br><br> Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 51. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." <br><br> Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

DLA PIPER US LLP
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 52. Plaintiff had other means of obtaining the entertainment provided by his ordering Additional Services from TWC, such as renting movies, using a satellite service, using another telephone provider, and using another internet provider. Request for Judicial Notice in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("RJN"), ¶ 1. | |
| 53. Plaintiff could have simply foregone ordering Additional Services from TWC. RJN ¶ 2. | |

**Issue #2: Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unlawful conduct by breaching its agreement with Sea Point Townhomes' Home Owners' Association (the "HOA"), lacks merit as a matter of law because TWC did not breach its agreement with the HOA.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 54. Plaintiff claims that TWC breached its agreement with the HOA by charging him directly for services already provided and paid for under the HOA agreement. First Amended Complaint ¶¶ 29(g), 43. | |
| 55. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents. Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 56. TWC provided basic cable services to HOA residents. Rhodes Decl. ¶ 3. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 57. TWC charged the HOA for providing basic cable services to HOA residents. Rhodes Decl. ¶ 4. | |
| 58. The HOA paid TWC for providing basic cable services to HOA residents. Rhodes Decl. ¶ 4. | |
| 59. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services. Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A | |
| 60. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices. Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

**Issue #3:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unfair conduct by overcharging Plaintiff, lacks merit as a matter of law because TWC did not overcharge Plaintiff.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 61. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging HOA customers for cable services and not providing pricing that reflected services already provided for under TWC's contract with the HOA. First Amended Complaint ¶ 38. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 62. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 63. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 64. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

/////

/////

/////

/////

/////

/////

/////

SD\1778388.3                                      -16-

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

**Issue #4:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day notification of billing errors while failing to disclose HOA pricing that accounted for HOA payments, lacks merit as a matter of law because such notification terms are reasonable.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 65. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 66. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |
| 67. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 68. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>:"<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 69. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

///// 
///// 
///// 
///// 
///// 
///// 
///// 
///// 
///// 
///// 
/////

1    **Issue #5:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2    **section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day**

3    **notification of billing errors while failing to disclose HOA pricing that accounted for HOA**

4    **payments, lacks merit as a matter of law because the notification term had no effect on**

5    **Plaintiff, yet has a legitimate business benefit to TWC.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 70. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 71. TWC requires customers to notify it of billing errors within thirty days so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 72. TWC correctly charged Plaintiff for the Additional Services he ordered both before and after he changed his services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

23    /////

24    /////

25    /////

26    /////

27    /////

28    /////

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

1    **Issue #6:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2    **section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day**

3    **notification of billing errors while failing to disclose HOA pricing that accounted for HOA**

4    **payments, lacks merit as a matter of law because TWC did not fail to disclose such pricing.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 73. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 74. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 75. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 76. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 77. TWC was under no obligation to provide special pricing for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 78. TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |

\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\

| | |
|---|---|
| 1 | **Issue #7:  Plaintiff's Cause of Action for Violation of Business & Professions Code** |
| 2 | **section 17200 *et seq.*, based on TWC engaging in unfair conduct by breaching its agreement** |
| 3 | **with the HOA, lacks merit as a matter of law because TWC did not breach its agreement** |
| 4 | **with the HOA.** |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 79. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by breaching its Agreement with the HOA via charging Plaintiff for services already provided for under TWC's Agreement with the HOA.<br><br>First Amended Complaint ¶ 43. | |
| 80. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 81. TWC provided basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 3. | |
| 82. TWC charged the HOA for providing basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 4. · | |
| 83. The HOA paid TWC for providing basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 4. | |
| 84. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services.<br><br>Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 85. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

**Issue #8:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in misleading conduct by overcharging Plaintiff, lacks merit as a matter of law because TWC did not overcharge Plaintiff.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 86. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging Plaintiff for Additional Services.<br><br>First Amended Complaint ¶ 38. | |
| 87. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 88. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 89. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

**Issue #9:** Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC misleading Plaintiff regarding when he was required to notify TWC of billing errors by hiding notification requirements and failing to disclose HOA pricing that accounted for HOA payments, lacks merit as a matter of law because the notification term was included in Plaintiff's contract and on every invoice sent to Plaintiff.

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 90. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 91. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 92. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 93. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 94. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

\\\\\

1      **Issue #10:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2      **section 17200 *et seq.*, based on TWC concealing HOA pricing that accounted for HOA**

3      **payments, lacks merit as a matter of law because TWC did not fail to disclose such pricing.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 95. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by concealing HOA pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 29(b). | |
| 96. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 97. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 98. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
| --- | --- |
| 99. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |
| 100.    The "HOA Pricing" referred to by Plaintiff is merely the pricing of one bundle of Additional Services that, until recently, was available to HOA residents who were willing to purchase all of the bundled services.<br><br>Rhodes Decl. ¶ 11. | |
| 101.    Plaintiff could have asked TWC at any point if any bundled options were available for his Additional Services.<br><br>Rhodes Decl. ¶ 12. | |
| 102.    TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 103.    TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |

\\\\\

\\\\\

\\\\\

\\\\\

DLA PIPER US LLP
SAN DIEGO

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

**Issue #11:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC misrepresenting its affiliation, connection, or association with the HOA, lacks merit as a matter of law because TWC made no such misrepresentations.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 104.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by misrepresenting its affiliation, connection, or association with the HOA.  Plaintiff claims that TWC (1) failed to inform him of the rates for Additional Services that he was allegedly entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) failed to disclose to Plaintiff that TWC was collecting fees for his basic cable service from the HOA.  First Amended Complaint ¶ 14, 41. | |
| 105.    Plaintiff was not entitled to any particular rates for Additional Services.  Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 106.    TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services.  Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 107.    Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.  Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 108.    TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 109.    TWC did not charge Plaintiff for basic cable.<br><br>Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 110.    · TWC correctly charged Plaintiff for the Additional Services he ordered.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

**Issue #12:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC misrepresenting the reason for the decrease in Plaintiff's bill for Additional Services after he changed his services to a bundled package, lacks merit as a matter of law because TWC made no such misrepresentations.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 111.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by misrepresenting that the reason for the decrease in his bill for Additional Services was due to ordering a bundled package, when the real reason for the price reduction was due to TWC already collecting basic cable fees on behalf of Plaintiff.<br><br>First Amended Complaint ¶ 42. | |