| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 112.    Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 113.    Plaintiff's bill for Additional Services was reduced was because he changed his services and ordered a bundled package rather than a host of individual services.<br><br>Rhodes Decl. ¶¶ 7, 9, 10; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 114.    Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |
| 115.    Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

\\\\\

\\\\\

\\\\\

\\\\\

1   **Issue #13:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2   **section 17200 *et seq.*, based on TWC engaging in misleading or deceptive conduct, lacks**

3   **merit as a matter of law because Plaintiff cannot prove the general public would likely be**

4   **misled or deceived by TWC's conduct.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 116.    Plaintiff lacks evidence to show that the general public would likely be misled or deceived by TWC's purported conduct. | |

9   **Issue #14:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

10   **section 17200 *et seq.* lacks merit as a matter of law because Plaintiff lacks standing since he**

11   **has not been injured and lost money or property as a result of TWC's purported conduct.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 117.    Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement").<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C; Alpert Deposition, p. 88, lines 8-13; Deposition Transcript, NOL Ex. A. | |
| 118.    Plaintiff has received the Additional Services that he ordered from TWC.<br><br>Alpert Deposition, p. 151, l21—p. 152, line 4; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 119.   TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 136, lines 1-18; p. 151, l21—p. 152, line 4; Deposition Transcript, NOL Ex. A. | |
| 120.   Plaintiff testified in his deposition that the bills he received for Additional Services were correct.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

Dated: January **27**, 2008

DLA PIPER US LLP

By _____
JEFFREY M. SHOHET
JULIE L. HUSSEY
CARRIE S. DOLTON
Attorneys for Time Warner Cable

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

EXHIBIT E

Page 1 of 3

8949 WARE COURT SAN DIEGO CA    0004721
92121-2275    8340 1000 NX 7 12

Billing Date:                September 12, 2006
Account Number:    **834010 110 0088309**

How to reach us ....

☎    CUSTOMER SERVICE (858) 695-3220
    TECHNICAL SUPPORT OPEN 24 HOURS
    BILLING OR SALES 8-8 M-F & 8-5 SAT

#BWNKTKR
#16598988999911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

||h||h.....h.ll|h......lh.l.h.ll|h.....l.hl.l....ll.l.h.l.l

## *Account Snapshot*

| Previous Balance | $ 180.66 |
|---|---|
| Payments | - 180.66 |
| Monthly Charges | 156.70 |
| Pay-Per-View Charges | 7.94 |
| Taxes & Fees | 7.66 |
| Amount Due | $172.30 |
| Payment Due Date | 10/02/06 |

*(See additional page(s) for account details.)*

## *Important Viewer News*



Showtime will offer a Free Preview Oct. 6-9 to Time Warner Cable digital customers on channels 640,642-650, 661 and 662. An HD converter and an HD TV are required to receive Showtime HD. Some programs may contain PG, PG-13, TV14, TVMA and R rated programs.

The Showtime Free preview can be blocked by using your Parental Control features. Tune to channel 100 and follow the tutorial instructions. You may also visit our website at www.twcsd.com or call us at 858-695-3220.



To view the call detail for all of your Digital Phone calls, go to http://www.twcdigitalphone.com and select the "My Account" link.

## Payment Coupon

LEON ALPERT
Billing Date:                September 12, 2006
Account Number:    **834010 110 0088309**

Please detach and enclose this coupon with your payment.
*Do not send cash. Make checks payable to*
*TIME WARNER CABLE.*
Allow 4-5 days for your mailed payment to be credited.

CUSTOMER SERVICE (858) 695-3220

| Amount Due | $172.30 |
|---|---|
| Payment Due Date | 10/02/06 |

Amount Enclosed    [ $         ]

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

||h.l.l.ll|h.....ll.l.l.l....l|h.l.h.ll.....l.l..ll.l.l

8340101100088309001723O4

TW0112

| | LEON ALPERT | Page 2 of 3 |
|---|---|---|
| 8340 1000 NX 7 12    0004721 | Billing Date: | September 12, 2006 |
| | Account Number: | 834010 110 0088309 |

## *Account Details*

This statement is for service from 9\12\06 to 10\11\06
Payments received after September 12, 2006 will be reflected on your next bill.

| Previous Balance | | | $ 180.66 |
|---|---|---|---|

| **Payments** | | | **Amount** |
|---|---|---|---|
| 09/01 | Payment - Thank You | | - 180.66 |

| **Monthly Charges** | | | **Amount** |
|---|---|---|---|
| 09/12 - 10/11 | Digital Phone Package -- Includes Unlimited Local And | | 39.95 |
| | Long Distance Calling Within The United States, | | |
| | Us Territories And Canada | | |
| 09/12 - 10/11 | iCONTROL Premium Service | | 6.95 |
| | Your Pay Service(s) On Demand | | |
| 09/12 - 10/11 | HDTV Converter      (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | HDTV Converter      (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | Service Protection Plan | | 2.95 |
| 09/12 - 10/11 | Premier Digital | | 11.00 |
| | Digital Movie Pack | $4.00 | |
| | Digital Variety Pack | $4.00 | |
| | Navigator Screen Guide | $3.00 | |
| 09/12 - 10/11 | Any 4 Premium Channels | | 24.95 |
| | Cinemax | $6.24 | |
| | HBO | $6.24 | |
| | Showtime | $6.24 | |
| | STARZ | $6.23 | |
| 09/12 - 10/11 | Wireless Road Runner | | 54.90 |
| 09/12 - 10/11 | Navigator Screen Guide | | .00 |

| **Pay-Per-View Charges** | | | **Amount** |
|---|---|---|---|
| 08/26 | The Matador | Start 09:01 P.M. | 3.95 |
| 09/02 | Angels With Dirty Fa | Start 08:41 P.M. | 0.00 |
| 09/02 | 16 Blocks Widescreen | Start 09:09 P.M. | 3.99 |

**ADDITIONAL DETAILS CONTINUED ON NEXT PAGE**

### ABOUT YOUR TIME WARNER CABLE AGREEMENT
**OFFICE LOCATION and WRITTEN INQUIRES:**
San Diego: 8949 Ware Ct., San Diego, CA. 92121. Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118. Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
**Note:** If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct. Our billing number is (858) 695-3228, or (619) 435-0157.
**Payments:** Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill. If we do not receive your payment by this date, your service may be interrupted. If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for each outlet. Advance payment of a deposit and your next month's service fee may also be required. You may request your deposit returned after one year of a good payment record by calling (858) 695-3228, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically. Equipment: Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property of Time Warner Cable. Additional cable connections and alterations to our equipment are not authorized unless performed by company personnel on behalf of the company. Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable wear and tear excepted. If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment. If your credit is less than $3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund. However, if you have an outstanding balance at the time service is terminated, we will apply any deposits to the payment of such charges and issue a refund, if applicable, of the difference.
**Franchising Authority Information:**

| City of San Diego: | County of San Diego | City of Poway: | City of Coronado: | Navy Housing: |
|---|---|---|---|---|
| City of San Diego | (outside city limits): | City of Poway | 1825 Strand Way | NAVCOMTELSTA |
| 1200 3rd Ave., Suite 250 | County of San Diego | 13325 Civic Center Drive | Coronado, CA 92118 | San Diego, Code NS2 |
| San Diego, CA 92101 | 1600 Pacific Hwy., Room 208 | Poway, CA 92064 | (619) 522-7335 | Box 357056 |
| (619) 236-6010 | San Diego, CA 92101 | (858) 668-4590 | Comm ID# CA0431 | San Diego, CA 92135-7056 |
| Comm ID# CA0428 | (619) 595-4650 | Comm ID# CA0572 | | (619) 532-1364 |
| | Comm ID# CA0568 | | | Comm ID# CA0428 |

**Digital Phone Consumer Information:** Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: the CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ("slamming"). The California consumer protection rules are available online at www.cpuc.ca.gov.                                                        tc030127

LEON ALPERT
Billing Date:                       Page 3 of 3
8340 1000 NX 7 12    0004721    Account Number:              September 12, 2006
                                                             834010 110 0088309

## *Account Details*

This statement is for service from 9\12\06 to 10\11\06
Payments received after September 12, 2006 will be reflected on your next bill.

**Taxes & Fees**

| Date | Description | *Amount* |
|------|-------------|--------|
| 09/12 | Cable Franchise Fee | 3.67 |
| 09/12 | CA Relay Service & Comm. Device Fund | .09 |
| 09/12 | CA Universal Lifeline Tel Serv Surcharge | .31 |
| 09/12 | CA High Cost Fund A | .05 |
| 09/12 | CA High Cost Fund B | .63 |
| 09/12 | Emergency Telephone Users Surcharge Tax | .19 |
| 09/12 | Federal Universal Service Fund | 2.72 |
| **Amount Due** | | **$ 172.30** |

TW0114

Page 1 of 3

8949 WARE COURT SAN DIEGO CA
92121-2275          8340 1000 NX 7 12      0004700

Billing Date:                      October 12, 2006
Account Number:        834010 110 0088309

#BWNKTKR
#1659898899911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

**How to reach us ....**
☎    CUSTOMER SERVICE (858) 695-3220
TECHNICAL SUPPORT OPEN 24 HOURS
BILLING OR SALES 8-8 M-F & 8-5 SAT

## *Account Snapshot*

| | |
|---|---|
| Previous Balance | $ 172.30 |
| Payments | - 99.00 |
| Monthly Charges | 109.00 |
| Pay-Per-View Charges | 3.99 |
| Adjustments | - 42.95 |
| Taxes & Fees | 6.42 |
| Amount Due | $ 149.76 |
| Payment Due Date | 11/01/06 |

*(See additional page(s) for account details.)*

## *Important Viewer News*

Section 14 of your Subscriber Agreement has been amended. The new version is available at http://help.twcable.com/html/policies.html.

To view the call detail for all of your Digital Phone calls, go to http://www.twcdigitalphone.com and select the "My Account" link.

## Payment Coupon

LEON ALPERT
Billing Date:                      October 12, 2006
Account Number:        834010 110 0088309

Please detach and enclose this coupon with your payment.
*Do not send cash. Make checks payable to*
*TIME WARNER CABLE* .
Allow 4-5 days for your mailed payment to be credited.

**CUSTOMER SERVICE (858) 695-3220**

| | |
|---|---|
| Amount Due | $ 149.76 |
| Payment Due Date | 11/01/06 |

**Amount Enclosed** [ $            ]

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

834010110008830900149765

LEON ALPERT
Billing Date:
Account Number:

8340 1000 NX 7 12    0004700

Page 2 of 3
October 12, 2006
834010 110 0088309

## *Account Details*

This statement is for service from 10\12\06 to 11\11\06
Payments received after October 12, 2006 will be reflected on your next bill.

| Previous Balance | | $ 172.30 |
|---|---|---|

**Payments**

| 10/03 | Payment - Thank You | Amount |
|---|---|---|
| | | - 99.00 |

**Monthly Charges**

| Date | Description | Period | Amount |
|---|---|---|---|
| 09/21 | Digital Phone Package -- | Partial Month(s) 09/12-10/11 | - 39.95 |
| 09/21 | iCONTROL Premium Service | Partial Month(s) 09/12-10/11 | - 6.95 |
| 09/21 | HDTV Converter | Partial Month(s) 09/12-10/11 | - 8.00 |
| 09/21 | Premier Digital | Partial Month(s) 09/12-10/11 | - 11.00 |
| 09/21 | Any 4 Premium Channels | Partial Month(s) 09/12-10/11 | - 24.95 |
| 09/21 | Wireless Road Runner | Partial Month(s) 09/12-10/11 | - 54.90 |
| 09/21 | Hoa DIGIPiC 4000 Trio | Partial Month(s) 09/12-10/11 | 121.90 |
| 10/12 - 11/11 | HDTV Converter    (Includes Digital Remote) | | 8.00 |
| 10/12 - 11/11 | Service Protection Plan | | 2.95 |
| 10/12 - 11/11 | Hoa DIGIPiC 4000 Trio | | 121.90 |
| | Wireless Road Runner | | |
| | Digital Phone Package -- | | |
| | Free On Demand | | |
| | iCONTROL Premium Service | | |
| | Digital Access | | |
| | Cinemax | | |
| | HBO | | |
| | Navigator Screen Guide | | |
| | Showtime | | |
| | STARZ | | |
| | Digital Movie Pack | | |
| | Digital Sports Pack | | |
| | Digital Variety Pack | | |
| | Hoa Standard Service | | |
| | Road Runner High Speed | | |

## ADDITIONAL DETAILS CONTINUED ON NEXT PAGE

ABOUT YOUR TIME WARNER CABLE AGREEMENT

OFFICE LOCATION and WRITTEN INQUIRIES:
San Diego: 8949 Ware Ct, San Diego, CA. 92121. Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118. Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the
discrepancy the statement will be considered correct. Our billing number is (858) 695-3220, or (619) 435-0157.
Payments: Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill. If we do not receive your payment by this date,
your service may be interrupted. If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for
each outlet. Advance payment of a deposit and your next month's service fee may also be required. You may request your deposit returned after one year of a good payment
record by calling (858) 695-3220, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent
statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically.
Equipment: Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property
of Time Warner Cable. Additional cable connections and alterations to our equipment are not authorized unless performed by company personnel on behalf of the company.
Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable
wear and tear excepted. If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the
amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment. If your credit is less than
$3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund. However, if you have an outstanding balance at the time service is terminated, we will apply any
deposits to the payment of such charges and issue a refund, if applicable, of the difference.
Franchising Authority Information:

City of San Diego:
City of San Diego
1200 3rd Ave., Suite 250
San Diego, CA 92101
(619) 236-6010
Comm ID# CA0428

County of San Diego
(outside city limits):
County of San Diego
1600 Pacific Hwy., Room 208
San Diego, CA 92101
(619) 595-4650
Comm ID# CA0568

City of Poway:
City of Poway
13325 Civic Center Drive
Poway, CA 92064
(858) 668-4590
Comm ID# CA0572

City of Coronado:
1825 Strand Way
Coronado, CA 92118
(619) 522-7335
Comm ID# CA0431

Navy Housing:
NAVCOMTELSTA
San Diego, Code N52
Box 357056
San Diego, CA 92135-7056
(619) 532-1364
Comm ID# CA0429

Digital Phone Consumer Information: Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of
your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave.,
San Francisco, CA 94102, or at www.cpuc.ca.gov, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at
Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: the CPUC handles complaints
of both interstate and intrastate unauthorized carrier changes ('slamming'). The California consumer protection rules are available online at www.cpuc.ca.gov.

LEON ALPERT
Billing Date:
Account Number:

8340 1000 NX 7 12    0004700

Page 3 of 3
October 12, 2006
834010 110 0088309

## Account Details

This statement is for service from 10\12\06 to 11\11\06
Payments received after October 12, 2006 will be reflected on your next bill.

**Pay-Per-View Charges**

| Date | Description | | Amount |
|---|---|---|---|
| 10/08 | Syriana | Start 09:08 P.M. | 3.99 |

**Adjustments**

| Date | Description | | Amount |
|---|---|---|---|
| 09/15 | Oper/Dir Assistance | | .99 |
| 09/02 | 16 Blocks Widescreen | - Adjustment | - 3.99 |
| 09/20 | Digital Phone | - Adjustment | - 39.95 |

**Taxes & Fees**

| Date | Description | Amount |
|---|---|---|
| 10/12 | Cable Franchise Fee | 2.41 |
| 10/12 | CA Relay Service & Comm. Device Fund | .01 |
| 10/12 | CA Universal Lifeline Tel Serv Surcharge | .38 |
| 10/12 | CA High Cost Fund A | .06 |
| 10/12 | CA High Cost Fund B | .58 |
| 10/12 | Emergency Telephone Users Surcharge Tax | .19 |
| 10/12 | Federal Universal Service Fund | 2.79 |

**Amount Due**    **$ 149.76**

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9

                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public, | CASE NO. GIC881621 |
| | **AMENDED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT** |
| Plaintiffs, | |
| v. | Date        April 4, 2008 |
| | Time        10:30 a.m. |
| TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100, | Dept:       63 |
| | Judge:     Luis R. Vargas |
| Defendants. | Complaint:  March 13, 2007 |
| | FAC:        May 16, 2007 |

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2  general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3  erroneously as Time Warner Cable, Inc., respectfully submits the following statement of

4  undisputed material facts in support of its motion for summary judgment.

5    **Issue #1: Plaintiff's Cause of Action for Violation of Business & Professions Code**

6  **section 17200 *et seq.*, based on TWC engaging in unlawful conduct in violation of the**

7  **Consumer Legal Remedies Act ("CLRA"), lacks merit as a matter of law because Plaintiff**

8  **cannot prove a violation of the CLRA.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1. Plaintiff Leon Alpert ("Plaintiff") is a resident of Sea Point Townhomes in Del Mar, California.<br><br>Deposition of Leon Alpert ("Alpert Deposition"), p. 123, lines 12-15; Deposition Transcript, Notice of Lodgment of Exhibits and Non-California Authorities in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("NOL"), Ex. A. | |
| 2. Sea Point Townhomes is a Home Owners' Association ("HOA" or the "HOA") that has contracted with TWC, under an agreement referred to as a Residential Bulk Services Agreement, for certain cable services to be provided to the residents of Sea Point Townhomes (the "Agreement").<br><br>Declaration of Terri Rhodes in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("Rhodes Decl."), ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| 3. | The Agreement provides that TWC will provide 76 cable channels, sometimes referred to as "basic cable," to each home/unit of Sea Point Townhomes, and that Sea Point Townhomes will pay TWC a monthly fee per home/unit for such services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 4. | Section 1 of the Agreement, entitled "Operator's Service Obligations," provides that TWC "will offer Bulk Multi-Channel Video Services to Residents."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 5. | Section 2 of the Agreement, entitled "Rates and Services," states that the "HOA shall pay to [TWC] a monthly Bulk Multi-Channel Video Services fee" which is set forth in Exhibit B to the Agreement.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2. | |
| 6. | The fee for basic cable services is to be billed for and paid by the Sea Point Community HOA.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 7. | Although basic cable is provided to HOA residents through the HOA, individual residents are free to order additional services from TWC and/or otherwise do business with TWC.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Alpert Deposition, p. 124, lines 17-23; p. 126, lines 2-25; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 8.  TWC may, but is not obligated to, offer the residents of Sea Point Townhomes services *other than* the 76 cable channels provided for in the Agreement (hereafter "Additional Service" or "Additional Services").<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 9.  Section 1 of the Agreement provides that TWC "may offer and provide Additional Service to Residents on a non-exclusive basis."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1. | |
| 10. Additional Services are defined as "any services other than the Bulk Multi-Channel Video Services, including, but not limited to, premium channels, pay-per-view, music, digital tier, video-on-demand, and other video and music services not included in the Bulk Multi-Channel Video Services package, high speed data and Internet access services, voice services, etc."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 1-2. | |
| 11. HOA residents who chose to order Additional Services from TWC are responsible for paying TWC for such services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2; Alpert Deposition, p. 124, lines 17-23; p. 126, lines 2-25; Deposition Transcript, NOL Ex. A. | |

SD\1778388.3

-3-

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 12. Pursuant to Section 2 of the Agreement, "Residents will be billed directly for all service charges, taxes, franchise fees, and other fees assessed in conjunction with Additional Services."<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B, p. 2. | |
| 13. No rates or special pricing for Additional Services are provided for in the Agreement.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 14. Since March 2003, TWC has provided the Bulk Multi-Channel Services ("basic cable") to Plaintiff's residence as set forth in the Agreement between TWC and the HOA.<br><br>Rhodes Decl. ¶ 3. | |
| 15. TWC has not billed or collected money from Plaintiff for these services, nor has Plaintiff paid anything to TWC for the services.<br><br>Rhodes Decl. ¶ 4; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 16. TWC is paid by the HOA for providing basic cable services to Plaintiff's residence.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |
| 17. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |

| | MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | 18. Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement").<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C; Alpert Deposition, p. 88, lines 8-13; Deposition Transcript, NOL Ex. A. | |
| | 19. TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services.<br><br>Rhodes Decl. ¶ 6; Alpert Deposition, p. 136, lines 1-18; p. 140, lines 8-12; Deposition Transcript, NOL Ex. A. | |
| | 20. TWC's bills to Plaintiff for his Additional Services contain a detailed itemization of each Additional Service and associated charge for each such service.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| | 21. The invoices show that Plaintiff was charged only for the Additional Services he ordered and was not charged for basic cable services.<br><br>Rhodes Decl. ¶¶ 7, 9, August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 22. As recently as August 2006, the Additional Services ordered by Plaintiff included the following features and pricing:<br><br>Digital Phone Package ($39.95); iControl Premium Service ($6.95); HDTV Converters ($7.00 x 2); Service Protection Plan ($2.95); Premier Digital ($11.00); Any 4 Premium Channels ($24.95); Wireless Road Runner ($54.90); special order items such as on-demand movies; as well as applicable taxes and fees.<br><br>These prices reflect TWC's published and/or established rates for such a la carte services.<br><br>Rhodes Decl. ¶ 7; August 2006 Bill, NOL Ex. D. | |
| 23. In 2005, TWC began to offer Additional Services in various bundled packages for bulk customers, such as HOA members, at a discount off the aggregate price of the individual services.<br><br>Rhodes Decl. ¶ 8. | |
| 24. Plaintiff was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount off the a la carte price for the same services.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 25. In or about September 2006, having become aware that TWC was offering a bundled package of Additional Services that included many of the services Plaintiff was purchasing a la carte, Plaintiff switched his Additional Services to order new services, including a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 26, lines 4-11; Deposition Transcript, NOL Ex. A. | |
| 26. Plaintiff changed his Additional Services to a bundled package in order to get a better price.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |
| 27. Plaintiff's new Additional Services included a bundled package with the following features and pricing:<br><br>HDTV Converter ($8.00); Service Protection Plan ($2.95); Hoa DIGIPiC 4000 Plan ($121.90)—which includes Wireless Roadrunner, Digital Phone Package, Free On Demand, iControl Premium Service, Digital Access, Cinemax, HBO, Navigator Screen Guide, Showtime, STARZ, Digital Movie Pack, Digital Sports Pack, Digital Variety Pack, Basic Cable Paid by Hoa, and Road Runner High Speed; special order items such as on-demand movies; as well as applicable taxes and fees.<br><br>Rhodes Decl. ¶ 9; September 2006 Bill, NOL Ex. E. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 28. As a result of Plaintiff modifying the Additional Services ordered, and ordering them in a bundled package vis-à-vis a la carte, Plaintiff's charges for Additional Services decreased.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 29. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 30. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 31. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 32. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |
| 33. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

**TWC Has Not Violated section 1770(a)(3) of the CLRA**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 34. Plaintiff Leon Alpert claims that TWC has violated section 1770(a)(3) of the CLRA by (1) not informing him of the rates for Additional Services that he was allegedly entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) not disclosing to Plaintiff that TWC was collecting fees for his basic cable service from the HOA.<br><br>First Amended Complaint ¶ 14. | |
| 35. Plaintiff was not entitled to any particular rates for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

DLA PIPER US LLP
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 36. TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 37. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |
| 38. TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 39. TWC did not charge or collect money from Plaintiff for basic cable.<br><br>Rhodes Decl. ¶ 4; August 2006 Bill, NOL. Ex. D; September 2006 Bill, NOL Ex. E.. | |
| 40. TWC correctly charged Plaintiff for the Additional Services he ordered.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

///// 

///// 

///// 

/////

1

**TWC Has Not Violated section 1770(a)(13) of the CLRA**

2

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 41. Plaintiff claims that TWC has violated section 1770(a)(13) of the CLRA by misinforming him that his cable bill was reduced because he ordered a bundle of services vis-à-vis individual services, when the real reason for the price reduction was due to TWC already collecting basic cable fees on behalf of Plaintiff.<br><br>First Amended Complaint ¶¶ 15, 42. | |
| 42. Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 43. Plaintiff's bill for Additional Services was reduced because he changed his services and ordered a bundled package rather than a host of individual services.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 44. Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

DLA PIPER US LLP
SAN DIEGO

SD\1778388.3

-11-

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 45. Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price.<br><br>Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

### TWC Has Not Violated section 1770(a)(19) of the CLRA

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 46. Plaintiff claims that TWC has violated section 1770(a)(19) of the CLRA, which precludes inserting an unconscionable provision into a contract, by requiring customers to report billing errors within thirty days.<br><br>First Amended Complaint ¶¶ 21-23, 40. | |
| 47. The billing provision at issue provides:<br><br>"I agree that it is my responsibility to report TWC billing errors within 30 days from receipt of the bill so that service levels and all payments can be verified. If not reported within 30 days, the errors are waived."<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 48. Each TWC invoice also states the following text directly below a capitalized and underlined title "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>":<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 49. TWC's invoices use the same font size for the reminder regarding reporting billing errors within thirty days as is used in the same area on the billing statement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 50. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 51. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 52. Plaintiff had other means of obtaining the entertainment provided by his ordering Additional Services from TWC, such as renting movies, using a satellite service, using another telephone provider, and using another internet provider.<br><br>Request for Judicial Notice in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("RJN"), ¶ 1. | |
| 53. Plaintiff could have simply foregone ordering Additional Services from TWC.<br><br>RJN ¶ 2. | |

**Issue #2:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unlawful conduct by breaching its agreement with Sea Point Townhomes' Home Owners' Association (the "HOA"), lacks merit as a matter of law because TWC did not breach its agreement with the HOA.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 54. Plaintiff claims that TWC breached its agreement with the HOA by charging him directly for services already provided and paid for under the HOA agreement.<br><br>First Amended Complaint ¶¶ 29(g), 43. | |
| 55. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 56. TWC provided basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 3. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 57. TWC charged the HOA for providing basic cable services to HOA residents.  Rhodes Decl. ¶ 4. | |
| 58. The HOA paid TWC for providing basic cable services to HOA residents.  Rhodes Decl. ¶ 4. | |
| 59. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services.  Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A | |
| 60. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices.  Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

**Issue #3:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unfair conduct by overcharging Plaintiff, lacks merit as a matter of law because TWC did not overcharge Plaintiff.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 61. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging HOA customers for cable services and not providing pricing that reflected services already provided for under TWC's contract with the HOA.  First Amended Complaint ¶ 38. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 62. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 63. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 64. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

/////

/////

/////

/////

/////

/////

/////

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

**Issue #4: Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day notification of billing errors while failing to disclose HOA pricing that accounted for HOA payments, lacks merit as a matter of law because such notification terms are reasonable.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 65. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 66. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |
| 67. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 68. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>:"<br><br>"Note:  If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 69. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

/////

1   **Issue #5:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2   **section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day**

3   **notification of billing errors while failing to disclose HOA pricing that accounted for HOA**

4   **payments, lacks merit as a matter of law because the notification term had no effect on**

5   **Plaintiff, yet has a legitimate business benefit to TWC.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 70. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 71. TWC requires customers to notify it of billing errors within thirty days so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 72. TWC correctly charged Plaintiff for the Additional Services he ordered both before and after he changed his services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

23   /////

24   /////

25   /////

26   /////

27   /////

28   /////

1    **Issue #6: Plaintiff's Cause of Action for Violation of Business & Professions Code**

2    **section 17200 *et seq.*, based on TWC engaging in unfair conduct by requiring thirty-day**

3    **notification of billing errors while failing to disclose HOA pricing that accounted for HOA**

4    **payments, lacks merit as a matter of law because TWC did not fail to disclose such pricing.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 73. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 74. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 75. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 76. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 77. TWC was under no obligation to provide special pricing for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 78. TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |

\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\
\\\\\

**Issue #7:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in unfair conduct by breaching its agreement with the HOA, lacks merit as a matter of law because TWC did not breach its agreement with the HOA.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 79. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by breaching its Agreement with the HOA via charging Plaintiff for services already provided for under TWC's Agreement with the HOA.<br><br>First Amended Complaint ¶ 43. | |
| 80. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 81. TWC provided basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 3. | |
| 82. TWC charged the HOA for providing basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 4. | |
| 83. The HOA paid TWC for providing basic cable services to HOA residents.<br><br>Rhodes Decl. ¶ 4. | |
| 84. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services.<br><br>Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 32, lines 17-20; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 85. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

**Issue #8: Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC engaging in misleading conduct by overcharging Plaintiff, lacks merit as a matter of law because TWC did not overcharge Plaintiff.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 86. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging Plaintiff for Additional Services.<br><br>First Amended Complaint ¶ 38. | |
| 87. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 88. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 89. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

**Issue #9:** Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 *et seq.*, based on TWC misleading Plaintiff regarding when he was required to notify TWC of billing errors by hiding notification requirements and failing to disclose HOA pricing that accounted for HOA payments, lacks merit as a matter of law because the notification term was included in Plaintiff's contract and on every invoice sent to Plaintiff.

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 90. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 39. | |
| 91. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C, p. 3. | |

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 92. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.<br><br>Rhodes Decl. ¶ 5; Consumer Agreement; NOL Ex. C, p. 3. | |
| 93. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"<br><br>"Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct."<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 94. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."<br><br>Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL Ex. A. | |

\\\\\\
\\\\\\
\\\\\\
\\\\\\
\\\\\\
\\\\\\
\\\\\\

1    **Issue #10: Plaintiff's Cause of Action for Violation of Business & Professions Code**

2    **section 17200 *et seq.*, based on TWC concealing HOA pricing that accounted for HOA**

3    **payments, lacks merit as a matter of law because TWC did not fail to disclose such pricing.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 95. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by concealing HOA pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 29(b). | |
| 96. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 97. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 98. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 99. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |
| 100.    The "HOA Pricing" referred to by Plaintiff is merely the pricing of one bundle of Additional Services that, until recently, was available to HOA residents who were willing to purchase all of the bundled services.<br><br>Rhodes Decl. ¶ 11. | |
| 101.    Plaintiff could have asked TWC at any point if any bundled options were available for his Additional Services.<br><br>Rhodes Decl. ¶ 12. | |
| 102.    TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 103.    TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |

\\\\\

\\\\\

\\\\\

\\\\\

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

1    **Issue #11:  Plaintiff's Cause of Action for Violation of Business & Professions Code**

2    **section 17200 *et seq.*, based on TWC misrepresenting its affiliation, connection, or**

3    **association with the HOA, lacks merit as a matter of law because TWC made no such**

4    **misrepresentations.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 104.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by misrepresenting its affiliation, connection, or association with the HOA.  Plaintiff claims that TWC (1) failed to inform him of the rates for Additional Services that he was allegedly entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) failed to disclose to Plaintiff that TWC was collecting fees for his basic cable service from the HOA.<br><br>First Amended Complaint ¶ 14, 41. | |
| 105.    Plaintiff was not entitled to any particular rates for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B. | |
| 106.    TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 107.    Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC.<br><br>Alpert Deposition, p. 32, line 17—p. 33, line 6; p. 86, lines 18-22; Deposition Transcript, NOL Ex. A. | |

DLA PIPER US LLP
San Diego

SD\1778388.3

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 108.    TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable.<br><br>Rhodes Decl. ¶ 2; Residential Bulk Services Agreement, NOL Ex. B; Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C. | |
| 109.    TWC did not charge Plaintiff for basic cable.<br><br>Rhodes Decl. ¶¶ 4, 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 110.    TWC correctly charged Plaintiff for the Additional Services he ordered.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

**Issue #12:  Plaintiff's Cause of Action for Violation of Business & Professions Code section 17200 _et seq._, based on TWC misrepresenting the reason for the decrease in Plaintiff's bill for Additional Services after he changed his services to a bundled package, lacks merit as a matter of law because TWC made no such misrepresentations.**

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 111.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 _et seq._ by misrepresenting that the reason for the decrease in his bill for Additional Services was due to ordering a bundled package, when the real reason for the price reduction was due to TWC already collecting basic cable fees on behalf of Plaintiff.<br><br>First Amended Complaint ¶ 42. | |

DLA PIPER US LLP
SAN DIEGO

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 112.   Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price.

Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |
| 113.   Plaintiff's bill for Additional Services was reduced was because he changed his services and ordered a bundled package rather than a host of individual services.

Rhodes Decl. ¶¶ 7, 9, 10; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E. | |
| 114.   Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte.

Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |
| 115.   Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price.

Alpert Deposition, p. 96, line 18—p. 99, line 15; Deposition Transcript, NOL Ex. A. | |

\\\\\

\\\\\

\\\\\

\\\\\

1

**Issue #13:** Plaintiff's Cause of Action for Violation of Business & Professions Code

2   section 17200 *et seq.*, based on TWC engaging in misleading or deceptive conduct, lacks

3   merit as a matter of law because Plaintiff cannot prove the general public would likely be

4   misled or deceived by TWC's conduct.

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 116.   Plaintiff lacks evidence to show that the general public would likely be misled or deceived by TWC's purported conduct. | |

9

**Issue #14:** Plaintiff's Cause of Action for Violation of Business & Professions Code

10  section 17200 *et seq.* lacks merit as a matter of law because Plaintiff lacks standing since he

11  has not been injured and lost money or property as a result of TWC's purported conduct.

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 117.   Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement").<br><br>Rhodes Decl. ¶ 5; Consumer Agreement, NOL Ex. C; Alpert Deposition, p. 88, lines 8-13; Deposition Transcript, NOL Ex. A. | |
| 118.   Plaintiff has received the Additional Services that he ordered from TWC.<br><br>Alpert Deposition, p. 151, l21—p. 152, line 4; Deposition Transcript, NOL Ex. A. | |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 119.  TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services.<br><br>Rhodes Decl. ¶¶ 7, 9; August 2006 Bill, NOL Ex. D; September 2006 Bill, NOL Ex. E; Alpert Deposition, p. 136, lines 1-18; p. 151, l21—p. 152, line 4; Deposition Transcript, NOL Ex. A. | |
| 120.  Plaintiff testified in his deposition that the bills he received for Additional Services were correct.<br><br>Alpert Deposition, p. 144, lines 15-18; p. 148, line 17—p. 149, line 1; p. 151, line 21—p. 152, line 4; p. 155, line 25—p. 157, line 18; p. 158, line 2—p. 159, line 6; Deposition Transcript, NOL Ex. A. | |

Dated: January 29, 2008

DLA PIPER US LLP

By _____
JEFFREY M. SHOHET
JULIE L. HUSSEY
CARRIE S. DOLTON
Attorneys for Time Warner Cable

SD\1778388.3

-32-

DEFENDANT'S AMENDED SEPARATE STATEMENT OF FACTS ISO MOTION FOR SUMMARY JUDGMENT

EXHIBIT E

Page 1 of 3

8949 WARE COURT SAN DIEGO CA
92121-2275        8340 1000 NX 7 12      0004721

#BWNKTKR
#1659898899911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

Billing Date:                    September 12, 2006
Account Number:      834010 110 0088309

**How to reach us ....**
☎    CUSTOMER SERVICE (858) 695-3220
      TECHNICAL SUPPORT OPEN 24 HOURS
      BILLING OR SALES 8-8 M-F & 8-5 SAT

## *Account Snapshot*

| | |
|---|---|
| Previous Balance | $ 180.66 |
| Payments | - 180.66 |
| Monthly Charges | 156.70 |
| Pay-Per-View Charges | 7.94 |
| Taxes & Fees | 7.66 |
| Amount Due | $ 172.30 |
| Payment Due Date | 10/02/06 |

*(See additional page(s) for account details.)*

## Important Viewer News



Showtime will offer a Free Preview Oct. 6-9 to Time Warner Cable digital customers on channels 640,642-650, 661 and 662. An HD converter and an HD TV are required to receive Showtime HD. Some programs may contain PG, PG-13, TV14, TVMA and R rated programs.

The Showtime Free preview can be blocked by using your Parental Control features. Tune to channel 100 and follow the tutorial instructions. You may also visit our website at www.twcsd.com or call us at 858-695-3220.



To view the call detail for all of your Digital Phone calls, go to http://www.twcdigitalphone.com and select the "My Account" link.

## Payment Coupon

LEON ALPERT
Billing Date:                    September 12, 2006
Account Number:      834010 110 0088309

Please detach and enclose this coupon with your payment.
*Do not send cash. Make checks payable to*
*TIME WARNER CABLE .*
Allow 4-5 days for your mailed payment to be credited.

**CUSTOMER SERVICE (858) 695-3220**

| | |
|---|---|
| Amount Due | $ 172.30 |
| Payment Due Date | 10/02/06 |

**Amount Enclosed** | $

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

834010110008830900172304

**TW0112**

LEON ALPERT  
Billing Date:  
Account Number:  

8340 1000 NX 7 12    0004721

Page 2 of 3  
September 12, 2006  
834010 110 0088309

## *Account Details*

This statement is for service from 9\12\06 to 10\11\06  
**Payments received after September 12, 2006 will be reflected on your next bill.**

| Previous Balance | | | $ 180.66 |
|---|---|---|---|

| Payments | | | *Amount* |
|---|---|---|---|
| 09/01 | Payment - Thank You | | - 180.66 |

| Monthly Charges | | | *Amount* |
|---|---|---|---|
| 09/12 - 10/11 | Digital Phone Package -- Includes Unlimited Local And Long Distance Calling Within The United States, Us Territories And Canada | | 39.95 |
| 09/12 - 10/11 | iCONTROL Premium Service Your Pay Service(s) On Demand | | 6.95 |
| 09/12 - 10/11 | HDTV Converter (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | HDTV Converter (Includes Digital Remote) | | 8.00 |
| 09/12 - 10/11 | Service Protection Plan | | 2.95 |
| 09/12 - 10/11 | Premier Digital | | 11.00 |
| | Digital Movie Pack | $4.00 | |
| | Digital Variety Pack | $4.00 | |
| | Navigator Screen Guide | $3.00 | |
| 09/12 - 10/11 | Any 4 Premium Channels | | 24.95 |
| | Cinemax | $6.24 | |
| | HBO | $6.24 | |
| | Showtime | $6.24 | |
| | STARZ | $6.23 | |
| 09/12 - 10/11 | Wireless Road Runner | | 54.90 |
| 09/12 - 10/11 | Navigator Screen Guide | | .00 |

| Pay-Per-View Charges | | | *Amount* |
|---|---|---|---|
| 08/26 | The Matador | Start 09:01 P.M. | 3.95 |
| 09/02 | Angels With Dirty Fa | Start 08:41 P.M. | 0.00 |
| 09/02 | 16 Blocks Widscreen | Start 09:09 P.M. | 3.99 |

**ADDITIONAL DETAILS CONTINUED ON NEXT PAGE**

**ABOUT YOUR TIME WARNER CABLE AGREEMENT**

**OFFICE LOCATION and WRITTEN INQUIRIES:**
San Diego: 8949 Ware Ct., San Diego, CA. 92121, Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118, Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
Note: If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question. If we are not notified of the discrepancy the statement will be considered correct. Our billing number is (858) 695-3220, or (619) 435-0157.
Payments: Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill. If we do not receive your payment by this date, your service may be interrupted. If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for each outlet. Advance payment of a deposit and your next month's service fee may also be required. You may request your deposit returned after one year of a good payment record by calling (858) 695-3220, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically. Equipment: Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property of Time Warner Cable. Additional cable connections and alterations to our equipment are not authorized unless performed by company personnel on behalf of the company. Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable wear and tear excepted. If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment. If your credit is less than $3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund. However, if you have an outstanding balance at the time service is terminated, we will apply any deposits to the payment of such charges and issue a refund, if applicable, of the difference.
Franchising Authority Information:

| City of San Diego: | County of San Diego | City of Poway: | City of Coronado: | Navy Housing: |
|---|---|---|---|---|
| City of San Diego | (outside city limits): | City of Poway | 1825 Strand Way | NAVCOMTELSTA |
| 1200 3rd Ave., Suite 250 | County of San Diego | 13325 Civic Center Drive | Coronado, CA 92118 | San Diego, Code N52 |
| San Diego, CA 92101 | 1600 Pacific Hwy., Room 208 | Poway, CA 92064 | (619) 522-7335 | Box 357056 |
| (619) 236-6010 | San Diego, CA 92101 | (858) 668-4590 | Comm ID# CA0431 | San Diego, CA 92135-7056 |
| Comm ID# CA0428 | (619) 595-4650 | Comm ID# CA0572 | | (619) 532-1364 |
| | Comm ID# CA0568 | | | Comm ID# CA0428 |

**Digital Phone Consumer Information:** Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or at www.cpuc.ca.gov, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: the CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ("slamming"). The California consumer protection rules are available online at www.cpuc.ca.gov.    sc000127

**TW0113**

| | | LEON ALPERT | Page 3 of 3 |
|---|---|---|---|
| 8340 1000 NX 7 12 | 0004721 | Billing Date: | September 12, 2006 |
| | | Account Number: | 834010 110 0088309 |

## *Account Details*

**This statement is for service from 9\12\06 to 10\11\06**
Payments received after September 12, 2006 will be reflected on your next bill.

| Taxes & Fees | | *Amount* |
|---|---|---|
| 09/12 | Cable Franchise Fee | 3.67 |
| 09/12 | CA Relay Service & Comm. Device Fund | .09 |
| 09/12 | CA Universal Lifeline Tel Serv Surcharge | .31 |
| 09/12 | CA High Cost Fund A | .05 |
| 09/12 | CA High Cost Fund B | .63 |
| 09/12 | Emergency Telephone Users Surcharge Tax | .19 |
| 09/12 | Federal Universal Service Fund | 2.72 |
| **Amount Due** | | **$ 172.30** |

Page 1 of 3

8949 WARE COURT SAN DIEGO CA
92121-2275        8340 1000 NX 7 12        0004700

Billing Date:                    October 12, 2006
Account Number:    **834010 110 0088309**

#BWNKTKR
#165989899911696#
LEON ALPERT
12968 CAMINITO DEL CANTO
DEL MAR CA 92014-3757

How to reach us ....
☎  CUSTOMER SERVICE (858) 695-3220
    TECHNICAL SUPPORT OPEN 24 HOURS
    BILLING OR SALES 8-8 M-F & 8-5 SAT

## *Account Snapshot*

| | |
|---|---|
| Previous Balance | $ 172.30 |
| Payments | - 99.00 |
| Monthly Charges | 109.00 |
| Pay-Per-View Charges | 3.99 |
| Adjustments | - 42.95 |
| Taxes & Fees | 6.42 |
| Amount Due | $ 149.76 |
| Payment Due Date | 11/01/06 |

*(See additional page(s) for account details.)*

## *Important Viewer News*

Section 14 of your Subscriber Agreement has been amended. The new version is available at http://help.twcable.com/html/policies.html.

To view the call detail for all of your Digital Phone calls, go to http://www.twcdigitalphone.com and select the "My Account" link.

## Payment Coupon

LEON ALPERT
Billing Date:                    October 12, 2006
Account Number:    **834010 110 0088309**

Please detach and enclose this coupon with your payment.
*Do not send cash.* *Make checks payable to*
*TIME WARNER CABLE* .
Allow 4-5 days for your mailed payment to be credited.

**CUSTOMER SERVICE (858) 695-3220**

| | |
|---|---|
| Amount Due | $ 149.76 |
| Payment Due Date | 11/01/06 |
| Amount Enclosed | $ |

*Thank You*
*We appreciate your business.*

TIME WARNER CABLE
PO BOX 29390
PHOENIX AZ 85038-9390

834010110008830900149765

LEON ALPERT
Billing Date:                    Page 2 of 3
Account Number:              October 12, 2006
834010 110 0088309

8340 1000 NX 7 12    0004700

## *Account Details*

This statement is for service from 10\12\06 to 11\11\06
Payments received after October 12, 2006 will be reflected on your next bill.

| | | | |
|---|---|---|---|
| **Previous Balance** | | | $ 172.30 |
| **Payments** | | | *Amount* |
| 10/03 | Payment - Thank You | | - 99.00 |
| **Monthly Charges** | | | *Amount* |
| 09/21 | Digital Phone Package -- | Partial Month(s) 09/12-10/11 | - 39.95 |
| 09/21 | iCONTROL Premium Service | Partial Month(s) 09/12-10/11 | - 6.95 |
| 09/21 | HDTV Converter | Partial Month(s) 09/12-10/11 | - 8.00 |
| 09/21 | Premier Digital | Partial Month(s) 09/12-10/11 | - 11.00 |
| 09/21 | Any 4 Premium Channels | Partial Month(s) 09/12-10/11 | - 24.95 |
| 09/21 | Wireless Road Runner | Partial Month(s) 09/12-10/11 | - 54.90 |
| 09/21 | Hoa DIGIPiC 4000 Trio | Partial Month(s) 09/12-10/11 | 121.90 |
| 10/12 - 11/11 | HDTV Converter | (Includes Digital Remote) | 8.00 |
| 10/12 - 11/11 | Service Protection Plan | | 2.95 |
| 10/12 - 11/11 | Hoa DIGIPiC 4000 Trio | | 121.90 |
| | Wireless Road Runner | | |
| | Digital Phone Package -- | | |
| | Free On Demand | | |
| | iCONTROL Premium Service | | |
| | Digital Access | | |
| | Cinemax | | |
| | HBO | | |
| | Navigator Screen Guide | | |
| | Showtime | | |
| | STARZ | | |
| | Digital Movie Pack | | |
| | Digital Sports Pack | | |
| | Digital Variety Pack | | |
| | Hoa Standard Service | | |
| | Road Runner High Speed | | |

**ADDITIONAL DETAILS CONTINUED ON NEXT PAGE**

**ABOUT YOUR TIME WARNER CABLE AGREEMENT**

**OFFICE LOCATION and WRITTEN INQUIRIES:**
San Diego: 8949 Ware Ct., San Diego, CA. 92121. Lobby Hours: Monday-Saturday, 8:00am to 7:00pm.
Coronado: 1110 Orange Ave., Coronado, CA. 92118. Lobby Hours: Monday-Friday, 8:30am-5:00pm, Saturday 8:30am-Noon.
**Note:** If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct. Our billing number is (858) 695-3220, or (619) 435-0157.
**Payments:** Your bill is due and payable upon receipt and becomes delinquent the day after the due date shown on your bill.  If we do not receive your payment by this date, your service may be interrupted.  If your service is interrupted for non-payment, reconnection will require payment in full of the amount owed plus a reconnection charge for each outlet.  Advance payment of a deposit and your next month's service fee may also be required.  You may request your deposit returned after one year of a good payment record by calling (858) 695-3220, or (619) 435-0157. If we have not received your full payment for the previous month's service within seventeen days past the delinquent statement process date, a late charge of $4.25 will be applied to your account. Time Warner Cable reserves the right to process your check payment electronically.
**Equipment:** Cable channel selectors, remote control units, video switchers, cable modem equipment, and all other equipment installed at your home shall remain the property of Time Warner Cable. Additional cable connections and alterations to our equipment are not authorized unless performed by company personnel on behalf of the company. Upon termination, for whatever reason, of your cable service with us, you must return this equipment to us in the original operating condition as when received, reasonable wear and tear excepted.  If our cable equipment is destroyed, damaged, lost or stolen, or if you fail to return it to us upon termination of your service, you will be charged the amount necessary to repair or replace the equipment. We will return to you any credit due you within thirty (30) days of our receipt of the equipment.  If your credit is less than $3.00, please call (858) 695-3220 or (619) 435-0157 to request a refund.  However, if you have an outstanding balance at the time service is terminated, we will apply any deposits to the payment of such charges and issue a refund, if applicable, of the difference.

**Franchising Authority Information:**

| City of San Diego: | County of San Diego | City of Poway: | City of Coronado: | Navy Housing: |
|---|---|---|---|---|
| City of San Diego | (outside city limits): | City of Poway | 1825 Strand Way | NAVCOMTELSTA |
| 1200 3rd Ave., Suite 250 | County of San Diego | 13325 Civic Center Drive | Coronado, CA 92118 | San Diego, Code N52 |
| San Diego, CA 92101 | 1600 Pacific Hwy., Room 208 | Poway, CA 92064 | (619) 522-7335 | Box 357056 |
| (619) 236-6010 | San Diego, CA 92101 | (858) 668-4590 | Comm ID# CA0431 | San Diego, CA 92135-7056 |
| Comm ID# CA0428 | (619) 595-4650 | Comm ID# CA0572 | | (619) 532-1364 |
| | Comm ID# CA0568 | | | Comm ID# CA0428 |

**Digital Phone Consumer Information:** Non-payment of any portion of your cable television, high-speed data, and/or Digital Phone service could result in disconnection of your local telephone service. If you have a complaint you cannot resolve with us, write the California Utilities Commission at Consumer Affairs Branch, 505 Van Ness Ave., San Francisco, CA 94102, or call (800) 649-7570 or TDD (800) 229-6846. If your complaint concerns interstate or international calling, write the FCC at Consumer Complaints, 445 12th Street SW, Washington, DC 20554 or at fccinfo@fcc.gov, or call (888) 225-5322 or TTY (888) 835-5322. Note: The CPUC handles complaints of both interstate and intrastate unauthorized carrier changes ("slamming"). The California consumer protection rules are available online at www.cpuc.ca.gov.

sc0820127

LEON ALPERT
Billing Date:
Account Number:

Page 3 of 3
October 12, 2006
834010 110 0088309

8340 1000 NX 7 12      0004700

## Account Details

This statement is for service from 10\12\06 to 11\11\06
Payments received after October 12, 2006 will be reflected on your next bill.

**Pay-Per-View Charges**

| 10/08 | Syriana | Start 09:08 P.M. | *Amount* |
|---|---|---|---|
| | | | 3.99 |

**Adjustments**

| 09/15 | Oper/Dir Assistance | | *Amount* |
|---|---|---|---|
| | | | .99 |
| 09/02 | 16 Blocks Widescreen | - Adjustment | - 3.99 |
| 09/20 | Digital Phone | - Adjustment | - 39.95 |

**Taxes & Fees**

| 10/12 | Cable Franchise Fee | *Amount* |
|---|---|---|
| | | 2.41 |
| 10/12 | CA Relay Service & Comm. Device Fund | .01 |
| 10/12 | CA Universal Lifeline Tel Serv Surcharge | .38 |
| 10/12 | CA High Cost Fund A | .06 |
| 10/12 | CA High Cost Fund B | .58 |
| 10/12 | Emergency Telephone Users Surcharge Tax | .19 |
| 10/12 | Federal Universal Service Fund | 2.79 |

**Amount Due**                                                    **$ 149.76**

COPY

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9
                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12
   LEON ALPERT, an individual, on behalf       CASE NO.  GIC881621
13 of himself, on behalf of all those similarly
   situated, and on behalf of the general      **PROOF OF SERVICE**
14 public,
                                               Dept:      63
15          Plaintiffs,                        Judge:     Luis R. Vargas
16     v.                                      Complaint: March 13, 2007
                                               FAC:       May 16, 2007
17 TIME WARNER CABLE, INC., a
   Delaware corporation, and DOES 1 TO
18 100,
19          Defendants.
20
21
22
23
24
25
26
27
28

DLA PIPER US LLP
   SAN DIEGO

SD\1735197.1
325566-11
                              PROOF OF SERVICE

1      I am a resident of the State of California, over the age of eighteen years, and not a party to

2 the within action.  My business address is Central Attorney Service, Inc., 1241 State Street, San Diego, CA 92101.  On February 27, 2008, I served the within document(s):

3 **1.    NOTICE OF ERRATA REGARDING SEPARATE STATEMENT OF UNDISPUTED FACTS AND NOTICE OF LODGMENT IN SUPPORT OF**

4 **DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT; and**

5

6 **2.    AMENDED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

7

8 ☐   by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

9

10 ☐   by overnight mail by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same

11 day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express

12 service carrier to receive documents.  I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for

13 delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in

14 the ordinary course of business, to each addressee as set forth below.

15

16 ☐   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

17

18 ☒   by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

19

**Attorneys for Plaintiff**

20

21 Barron E. Ramos, Esq.                            David R. Markham, Esq.
Attorney at Law                                Clark & Markham

22 132 N. El Camino Real, Suite 303        401 West A Street, Suite 2200
Encinitas, CA 92024                     San Diego, CA  92101

23 (858) 349-6019                             (619) 239-1321
(760) 994-1754 (fax)                   (619) 239-5888 (fax)

24

25      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

26      Executed on February 27, 2008, at San Diego, California.

27

28                              Process Server

DLA PIPER US LLP
SAN DIEGO

SD\1735197.1
325566-11

-1-

PROOF OF SERVICE

COPY

1 | JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
2 | CARRIE S. DOLTON (Bar No. 234298)
**DLA PIPER US LLP**
3 | 401 B Street, Suite 1700
San Diego, CA 92101-4297
4 | Tel: 619.699.2700
Fax: 619.699.2701
5 |

F I L E D
Clerk
FEB 2 8 2008
By: K. ROBERTS, Deputy

6 | Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
7 | NEWHOUSE PARTNERSHIP, A NEW YORK
GENERAL PARTNERSHIP, THROUGH ITS SAN
8 | DIEGO DIVISION, DBA TIME WARNER CABLE

9 |

SUPERIOR COURT OF CALIFORNIA

10 |

COUNTY OF SAN DIEGO

11 |

12 |
LEON ALPERT, an individual, on behalf
13 | of himself, on behalf of all those similarly
situated, and on behalf of the general
14 | public,

15 |                Plaintiffs,

16 |        v.

17 | TIME WARNER CABLE, INC., a
Delaware corporation, and DOES 1 TO
18 | 100,

19 |                Defendants.

CASE NO.  GIC881621

**PROOF OF SERVICE**

Dept:        63
Judge:     Luis R. Vargas

Complaint:  March 13, 2007
FAC:          May 16, 2007

20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

DLA PIPER US LLP
SAN DIEGO

SD\1735197.1
325566-11

PROOF OF SERVICE

1    I am a resident of the State of California, over the age of eighteen years, and not a party to
2 the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On February 27, 2008, I served the within document(s):

3    **1.    NOTICE OF ERRATA REGARDING SEPARATE STATEMENT OF**
4 **UNDISPUTED FACTS AND NOTICE OF LODGMENT IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

5    **2.    AMENDED SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT**
6 **OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

7    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
8         forth below on this date before 5:00 p.m.

9    ☐    by overnight mail by placing a sealed envelope or package designated by UPS,
10        with delivery fees paid or provided for, a true copy of each documents(s) above, in
          DLA Piper US LLP's mail room for collection, processing and delivery this same
11        day to a deposit box or other facility regularly maintained by the express service
          carrier, or delivered to an authorized courier or driver authorized by the express
12        service carrier to receive documents. I further declare that I am readily familiar
          with the business' practice for collection and processing of correspondence for
13        delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the
          correspondence shall be deposited with an express service carrier this same day in
14        the ordinary course of business, to each addressee as set forth below.

15   ☒    by placing the document(s) listed above in a sealed envelope with postage thereon
          fully prepaid, in the United States mail at San Diego, California addressed as set
16        forth below.

17

18        Barron E. Ramos, Esq.
          Attorney at Law
19        132 N. El Camino Real, Suite 303
          Encinitas, CA  92024
20        (858) 349-6019
          (760) 994-1354 (fax)

21        I am readily familiar with the firm's practice of collection and processing correspondence
22 for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same
   day with postage thereon fully prepaid in the ordinary course of business. I am aware that on
23 motion of the party served, service is presumed invalid if postal cancellation date or postage
   meter date is more than one day after date of deposit for mailing affidavit.

24        I declare under penalty of perjury under the laws of the State of California that the above
25 is true and correct.

26        Executed on February 27, 2008, at San Diego, California.

27

28
          Eloy Rodriguez

SD\1735197.1
325566-11                              -1-

DLA PIPER US LLP
SAN DIEGO

PROOF OF SERVICE

**BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
Barron E. Ramos (State Bar No. 179620)
132 N. El Camino Real, # 303
Encinitas, California 92024
Telephone: (760) 274-6438
Facsimile: (760) 994-1354

**CLARK & MARKHAM**
David R. Markham (State Bar No. 071814)
R. Craig Clark (State Bar No. 129219)
James M. Treglio (State Bar No. 228077)
401 West "A" Street, Suite 2200
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile: (619) 239-5888

Attorneys for plaintiff and the Class

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>    Plaintiffs,<br><br>v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>    Defendants. | Case No. GIC 881621<br><br>**CLASS ACTION**<br><br>*RENEWED* NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES; SEPARATE STATEMENT OF ITEMS IN DISPUTE; and DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION<br><br>Date: April 4, 2008<br>Time: 10:30 a.m.<br><br>Dept: 63<br>Judge: Hon. Luis R. Vargas<br><br>Trial Date: None Set<br>Case Filed: March 13, 2007 |

TO THE COURT AND ALL INTERESTED PARTIES:

1

1    PLEASE TAKE NOTICE THAT on April 4, 2008, at 10:30 a.m., or as soon thereafter as

2    counsel may be heard, in Department 63 of the California Superior Court for the County of Diego,

3    located at 330 West Broadway, San Diego, California 92101, the Honorable Luis R. Vargas

4    presiding, plaintiff will move the Court for an Order compelling further responses to plaintiff's

5    Request for Production of Documents.  The previous Motion to Compel Compliance was also a

6    Motion to Compel Further Responses, but the Court denied the Motion without prejudice due to an

7

8    infirmity in the Notice.  Accordingly, plaintiff renews his Motion to Compel Further Responses

9    and corrects the infirmity in the Notice herein.

10    Good cause exists to bring this Motion as the documents sought are necessary to defend

11    against defendant's pending Motion for Summary Judgment, as well as to certify this as a class

12    action.  There is no justifiable reason for withholding the documents and  plaintiff's counsel has

13    exhausted the meet and confer process attempting to avoid this motion.

14

15    This Motion is based upon this Notice of Motion, the Brief Memorandum of Points and

16    Authorities submitted herewith, the separate statement of items in dispute, the accompanying

17    declaration of Barron E. Ramos, the other papers on file in this action, and such other materials or

18    arguments of counsel that the Court may receive at or before the hearing on this Motion.

19

20    Dated: March 10, 2007

                                           Barron E. Ramos
21                                         Attorneys for plaintiff

22

23

24

25

26

27

28

## I. BRIEF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

CCP 2031.310 provides that on receipt of a response to an inspection demand, the party demanding an inspection may move for an order compelling further response to the demand if the demanding party deems that any of the following apply:  (1) A statement of compliance with the demand is incomplete.  (2) A representation of inability to comply is inadequate, incomplete, or evasive.  (3) An objection in the response is without merit or too general.  Such a motion must set forth specific facts showing good cause justifying the discovery sought by the inspection demand, be accompanied by a meet and confer declaration under Section 2016.040, and noticed within 45 days of the service of the response.

Here, plaintiff previously and timely filed a Motion to Compel Compliance and alternative Motion to Compel Further Responses.  The Court ruled that the alternative basis for the motion, which was set forth in Footnote 1 of the moving papers, failed to meet the notice requirements governing such motions.  The Court then denied the motion "without prejudice" on the procedural infirmity.  This Motion is a renewal of the Motion to Compel Further Responses which was presented in the previous moving papers though improperly noticed to the Court' s satisfaction.

At oral argument on the previous Motion, defendant Time Warner Cable's (TWC) counsel represented to the Court that failure to provide the alternative basis for the motion in the Notice was a "jurisdictional" defect.  That is false.  Code of Civil Procedure section 1010 requires that a notice of motion must state "the grounds upon which it will be made."  As a general rule, the trial court may consider only the grounds stated in the notice of motion.  *Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545.  However, an omission in the notice may be overlooked **if the supporting papers make clear the grounds for the relief sought**. *Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 807-808; *Geary Street, L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1200.

Indeed, as the California Supreme Court stated nearly a hundred years ago:

3

1

> Even though the notice of motion fails to state a particular ground for
> the motion, where the notice states, as here, that the motion is being
> made upon the notice of motion and accompanying papers and the
> record, and these papers and the record support that particular
> ground, the matter is properly before the court and the defect in the
> notice of motion should be disregarded.

2

3

4

5
*Savage v. Smith* (1915) 170 Cal. 472, 474

6
Plaintiff's previous moving papers made clear the grounds for the relief sought, both as a

7
Motion to Compel Compliance and a Motion to Compel Further Responses. There was no surprise

8
to TWC in the nature of the alternative motion. In fact, in TWC's opposing papers they

9
specifically explain the bases for their objections to the specific request for production. There

10
would obviously be no need to do that unless TWC was also defending against a Motion to Compel

11

12
Further Responses since the propriety of objections is not at issue when a party has agreed to

13
produce documents - but simply chooses not to do so. The question presented in a Motion to

14
Compel Compliance is whether a party actually complied as agreed, not whether its objections

15
have merit. In any event, since the Court denied plaintiff's previous motion "without prejudice,"

16
plaintiff now renews his Motion to Compel Further Responses.

17

18
TWC's statement of compliance was evasive and incomplete. Specifically, as set forth in

19
the previous motion and Separate Statement, as well as the Separate Statement again filed

20
herewith, TWC responded to the Request for Production of all pricing documents as follows:

21
**TWC has performed a _good faith effort_ to _supply documents_ that**

22
**_identify a price_ for TWC products and services, and TWC will**

23

24
**produce rate cards and rate change letters.**

25
(Emphasis added)

26
The response unambiguously indicates that TWC was acting in "good faith" to "supply

27
documents" that "identify a price for TWC products and services." The response then states that

28

4

1    TWC will produce rate cards and rate change letters.  But that is not all TWC has, as plaintiff

2    learned in the meet and confer process and as is this Court is now well aware.[1]  Rather, TWC is

3    intentionally withholding pricing documents that reflect pricing for consumers outside of the San

4    Diego and Desert Cities areas.  Thus, either TWC's response is intentionally misleading or it is

5    intentionally incomplete.

6

7          Code of Civil Procedure section 2031.210 requires that a party to whom an inspection

8    demand has been directed respond with either a statement that the party will comply with the

9    particular demand for inspection and any related activities, a representation that the party lacks the

10   ability to comply with the demand for inspection of a particular item or category of item, or an

11   objection to the particular demand.  Here, TWC indicated that it conducted a "good faith" effort to

12   identify responsive documents and then enumerates the responsive documents as only "rate cards"

13   and "rate change letters."  That is a representation that TWC will comply with the request for

14   production.  There is no statement contained therein that TWC is withholding *any* responsive

15   documents or even that such documents exist.  TWC has since admitted that, despite this

16   concealment, it is, in fact, withholding responsive pricing documents for areas outside of the San

17   Diego and Desert Cities areas.

18

19         To the extent TWC is hiding behind its objections, Code of Civil Procedure section

20   2031.240 provides that if the responding party objects to the demand for inspection of an item or

21   category of item, the response shall do *both* of the following: (1) Identify with particularity any

22

23   document, tangible thing, or land falling within any category of item in the demand to which an

24   _____

25      [1] The "good faith" statement by TWC is why the previous motion was styled as a Motion to
     Compel Compliance or alternative Motion to Compel Further Responses.  TWC's response states

26   that TWC is acting in "good faith" and <u>will produce the responsive documents</u>.  The qualifier after
     stating it was acting in "good faith," that TWC was producing rate cards and rate change letters, is

27

28

1   objection is being made.  (2) Set forth clearly the extent of, and the specific ground for, the

2   objection... In its deceptive response, TWC failed to "identify with particularity any document ...

3   falling within any category of item in the demand to which an objection is being made." TWC

4   states only that rate cards and rate change letters are responsive when TWC knows that is false.

5

6         To date, Time Warner has refused to produce any HOA rates other than the HOA rates

7   applicable to the Desert Cities and San Diego.  However, as this Court is well aware, Mr. Alpert's

8   class is <u>statewide</u>, not merely limited to San Diego or the Desert Cities.  Paragraph 4 of plaintiff's

9   FAC defines the class:

10         4.      The class in this case is comprised of all TIME WARNER

11         subscribers in the State of California during the four (4) years prior to

12         the filing of this complaint who were members of  homeowners

13         associations (HOAs) and/or tenants of such members, where the

14         subscriber's HOA had contracted with TIME WARNER for basic

15         cable services (also sometimes called "bulk multi-channel video

16         services") and where the subscriber purchased additional cable and

17         cable related services directly from TIME WARNER but was not

18         provided a credit for already paying the for basic cable services

19         ("HOA Standard Service") through the subscriber's HOA.

20

21

22       Time Warner's attempt to narrow the class to San Diego and the Desert Cities is improper

23   and is frustrating plaintiff's discovery.  The documents sought are relevant and necessary to

24   establish the essential element of commonality among class members that HOA pricing and so-

25   called "retail" pricing differed during the class period.  That is the core allegation of plaintiff's

26

27   only one part of TWC's response.  In its totality, TWC's response is that it will comply with the

28   Request, act in good faith, and locate and produce responsive documents.  TWC did not.

RENEWED NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES; SEPARATE STATEMENT OF ITEMS IN
DISPUTE; and DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION

1    action. The documents are thus relevant and necessary.

2         Moreover, the answering party is not, apparently, even the defendant in this case. The

3    defendant is "Time Warner Cable, Inc., a Delaware Corporation," whereas the responses state they

4    are from TWC "through its San Diego Division, dba Time Warner Cable *and no other person or*

5    *entity*." (Emphasis added; Exhibit C, p.3:20-22") That entity is not a party to this litigation and is

6
7    not named in the FAC. Thus, all of the responses are defective as they relate to an entity that is not

8    the defendant in this case.

9         To make matters worse, while refusing to produce these documents, TWC has chosen to

10   move for summary judgment. Plaintiff cannot adequately oppose TWC's motion any more than

11   plaintiff could go to trial without these relevant documents. Though it is not essential to

12
13   demonstrate "good cause," here there is no practical or realistic alternative source for the

14   information sought. *Associated Brewers Dist. Co. v. Superior Court* (1967) 65 Cal.2d 583, 588.

15   The information contained in those documents are highly relevant to these proceedings and most

16   certainly contain information that is either admissible against TWC in opposition to its MSJ, or

17   certainly would lead to the discovery of such information.

18        Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery

19   regarding any matter, not privileged, that is relevant to the subject matter involved in the pending

20   action or to the determination of any motion made in that action, if the matter either is itself

21
22   admissible in evidence or appears reasonably calculated to lead to the discovery of admissible

23   evidence." "The scope of discovery is very broad." *Tien v. Superior Court* (2006) 139

24   Cal.App.4th 528, 535. The "expansive scope of discovery" (*Emerson Electric Co. v. Superior*

25   *Court* (1997) 16 Cal.4th 1101, 1108) is a deliberate attempt to "take the `game' element out of trial

26   preparation" and to "do away ‘with the sporting theory of litigation — namely, surprise at the

27   trial.'" *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.

28

7

1    Moreover, this is B&P section 17200 case.  As our Supreme Court has made plain, in

2  proving an unfair business practice violation, claimants are entitled to introduce evidence not only

3  of practices which affect them individually, but also similar practices involving other members of

4  the public who are not parties to the action.  *Perdue v. Crocker National Bank* (1985) 38 Cal.3d

5  913, 929.  TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of

6

7  discovery permitted under Code of Civil Procedure section 2017.010 and is contrary to the

8  expansive scope of discovery in both class actions and B&P section 17200 claims in particular.

9    For all these reasons, plaintiff's Renewed Motion to Compel Further Responses should be

10  granted.

11

12

Dated: March 10, 2008

13                                    Barron E. Ramos
                                      Attorneys for plaintiff
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RENEWED NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES; SEPARATE STATEMENT OF ITEMS IN
DISPUTE; and DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION

## SEPARATE STATEMENT OF ITEMS IN DISPUTE

The following are certain of the Inspection Demands verbatim, the responses received verbatim and the reasons why compliance (i.e., production) should be compelled.

**REQUEST NO. ONE**:

Please produce all DOCUMENTS which depict pricing for all of YOUR products and services, including any bundled packages, to RESIDENTS. (RESIDENTS is defined as "occupants of properties during the time period from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide basic cable services to the HOA members.").

**RESPONSE TO REQUEST NO. ONE**:

TWC objects to this Request as vague, ambiguous[2], overbroad, unduly burdensome and oppressive, and is not reasonably calculated to lead to the discovery of admissible information. The phrase "depict pricing" vaguely requests every document that refers to pricing. TWC objects to the extent that this request seeks confidential trade secret information regarding negotiated prices for bulk rate customers. Subject to, and without waiving the General and Specific objections herein, and based on discovery and TWC's investigation to date, TWC further responds as follows: TWC has performed a good faith effort to supply documents that identify a price for TWC products and services, and TWC will produce rate cards and rate change letters.

***Why the Documents Should Be Produced***:

TWC's response unambiguously indicates that TWC was acting in "good faith" to "supply

---

[2] When a Request is as clear as this, objections based upon purported "vagueness" are nothing more than "nuisance objections." *Standon Co. Inc. v. Superior Court* (Kim) (1990) 225 Cal.App.3d 898, 903. Indeed, such boilerplate objections are typically sanctionable. *Korea Data Systems Co., Ltd., v. Superior Court* (Aamazing Tech. Corp.) (1997) 51 Cal.App.4th 1513, 1516.

1   documents" that "identify a price for TWC products and services." The response then states that

2   TWC will produce rate cards and rate change letters. But that is not all TWC has, as plaintiff

3   learned in the meet and confer process and as is this Court is now well aware. Rather, TWC is

4   intentionally withholding pricing documents that reflect pricing for consumers outside of the San

5   Diego and Desert Cities areas. Thus, either TWC's response is intentionally misleading or it is

6   intentionally incomplete.

7

8        Moreover, the answering party is not, apparently, even the defendant in this case. The

9   defendant is "Time Warner Cable, Inc., a Delaware Corporation," whereas the responses state they

10  are from TWC "through its San Diego Division, dba Time Warner Cable *and no other person or*

11  *entity.*" (Emphasis added; Exhibit C, p.3:20-22") That entity is not a party to this litigation and is

12  not named in the FAC. Thus, all of the responses are defective as they relate to an entity that is not

13  the defendant in this case.

14

15       Code of Civil Procedure section 2031.210 requires that a party to whom an inspection

16  demand has been directed respond with either a statement that the party will comply with the

17  particular demand for inspection and any related activities, a representation that the party lacks the

18  ability to comply with the demand for inspection of a particular item or category of item, or an

19  objection to the particular demand. Here, TWC indicated that it conducted a "good faith" effort to

20  identify responsive documents and then enumerates the responsive documents as "rate cards" and

21  "rate change letters." That is a representation that TWC will comply with the request for

22  production. There is no statement contained therein that TWC is withholding responsive

23  documents or even that such documents exist. TWC has since admitted that, despite this

24  concealment, it is, in fact, withholding responsive pricing documents for areas outside of the San

25  Diego and Desert Cities areas.

26

27       To the extent TWC is somehow hiding behind its objections, Code of Civil Procedure

28

10

section 2031.240 provides that if the responding party objects to the demand for inspection of an item or category of item, the response shall do *both* of the following: (1) Identify with particularity any document, tangible thing, or land falling within any category of item in the demand to which an objection is being made. (2) Set forth clearly the extent of, and the specific ground for, the objection... In its deceptive response, TWC failed to "identify with particularity any document ... falling within any category of item in the demand to which an objection is being made." TWC states only that rate cards and rate change letters are responsive when TWC knows that is false.

The documents sought are relevant and necessary to establish the essential element of commonality among class members that HOA pricing and so-called "retail" pricing differed during the class period. That is the core allegation of plaintiff's action. The documents are thus relevant and necessary.

While refusing to produce these documents, TWC has moved for summary judgment. Plaintiff cannot adequately oppose TWC's motion any more than plaintiff could go to trial without these relevant documents. Though it is not essential to demonstrate "good cause," here there is no practical or realistic alternative source for the information sought. *Associated Brewers Dist. Co. v. Superior Court* (1967) 65 Cal.2d 583, 588. The information contained in those documents is highly relevant to these proceedings and most certainly contains information that is either admissible against TWC in opposition to its MSJ, or certainly would lead to the discovery of such information.

Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." "The scope of discovery is very broad." *Tien v. Superior Court* (2006) 139

11

1   Cal.App.4th 528, 535.  The "expansive scope of discovery" (*Emerson Electric Co. v. Superior*

2   *Court* (1997) 16 Cal.4th 1101, 1108) is a deliberate attempt to "take the `game' element out of trial

3   preparation" and to "do away `with the sporting theory of litigation — namely, surprise at the

4   trial.'" *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.

5

6         This is B&P section 17200 case.  As our Supreme Court has made plain, in proving an

7   unfair business practice violation, claimants are entitled to introduce evidence not only of practices

8   which affect them individually, but also similar practices involving other members of the public

9   who are not parties to the action.  *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 929.

10  TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of discovery

11  permitted under Code of Civil Procedure section 2017.010 and is contrary to the expansive scope

12  of discovery in both class actions and B&P section 17200 claims in particular.

13

14

15  Dated: March 1b , 2008

16                                                          Barron E. Ramos
                                                            Attorneys for plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF BARRON E. RAMOS IN SUPPORT OF

## MOTION TO COMPEL

I, Barron E. Ramos, declare as follows:

1.      I am one of the attorneys for plaintiff Leon Alpert and have personal knowledge of each of the facts set forth herein, and if called upon as a witness could and would testify competently thereto.  This declaration is submitted in support of Mr. Alpert's Motion to Compel.

2.      On September 17, 2007 I caused to be served on Time Warner plaintiff's first Request for Production of Documents.  (See Exhibit "A")

3.      On or about October 23, 2007, Time Warner responded to the demand.  (See Exhibit "B").

4.      On February 22, 2008, this Court denied plaintiff's Motion to Compel Compliance and alternative Motion to Compel "without prejudice."  (See Exhibit "C")  The denial was due to an error in the Notice which did not identify the alternative basis for the Motion, even though the supporting papers and record did identify that alternative basis.

5.      Time Warner produced the so-called "retail" rates for areas outside of San Diego and the Desert Cities, but has refused to produce the rates charged to HOA customers in those same areas. Plaintiff's counsel attempted to meet and confer on multiple occasions which resulted in multiple correspondence to and from Time Warner's counsel all to no avail.

6.      Throughout the meet and confer process, Time Warner made clear that it was not refusing to produce the requested documents because of the necessity of a protective order.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this __10th__ day of March, 2008 at Encinitas, California.

Barron E. Ramos

13

# EXHIBIT A

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Phone (858) 349-6019
4  Fax (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888

9
   Attorneys for plaintiff and the Class

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                    **COUNTY OF SAN DIEGO**

12  LEON ALPERT, an individual,          ) Case No. GIC 881621
13  on behalf of himself, on behalf of all those)
    similarly situated, and on behalf of the general) **CLASS ACTION**
14  public,                              )
                                         ) **PLAINTIFF'S REQUEST FOR**
15          Plaintiffs,                  ) **PRODUCTION OF DOCUMENTS,**
                                         ) **SET NO. ONE (1)**
    v.                                   )
16                                       )
    TIME WARNER CABLE, INC., a Delaware)
17  corporation, and DOES 1 TO 100,     ) Dept: 63
                                         ) Judge: Hon. Luis R. Vargas
18          Defendants.                  )
                                         ) Trial Date: None Set
19                                       ) Case Filed: March 13, 2007
                                         )
20                                       )
                                         )
21                                       )
                                         )
22  _____ )

23

24

25  PROPOUNDING PARTY:              PLAINTIFF LEON ALPERT

26  RESPONDING PARTY:              TIME WARNER CABLE, INC.

27  NO:                            ONE

28                                 1

1    **PLEASE TAKE NOTICE** that on or before October 25, at 10:00 a.m. in the Law Offices

2    of BARRON E. RAMOS, Attorney at Law, A Professional Corporation, 132 N. El Camino Real,

3    # 303, Encinitas, California 92024, plaintiff Chadwick Bowen will require defendant TIME

4    WARNER CABLE, INC., to produce for inspection and copying the following pursuant to

5    California Code of Civil Procedure Section 2C31.010 to wit:

6        Definitions:

7        A.    The term "DOCUMENT" or "DOCUMENTS" shall include any "writing" as

8    defined in California Evidence Code section 250, whether printed, recorded, filmed or reproduced

9    by any other mechanical or electrical process, or written or produced by hand, and whether or not

10   claimed to be privileged against discovery on any ground, and including all originals, masters, and

11   non-identical copies.

12       B.    The term "YOU" or "YOUR" shall refer to TIME WARNER CABLE, INC., all

13   affiliated entities of TIME WARNER CABLE, INC., including its parent company, if any, and all

14   subsidiaries of such parent, the employees, agents, officers, directors and representatives of all of

15   these entities, and all other persons or entities acting on behalf or under the control of these entities.

16       C.    The term RESIDENT shall refer to occupants of properties during the time period

17   from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in

18   California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide

19   basic cable services to the HOA members.

20       D.    The term RETAIL CUSTOMER shall refer to California consumers to whom YOU

21   provided products and services during the time period from March 13, 2003 to March 13, 2007,

22   other than RESIDENTS.

23       **REQUEST NUMBER ONE:**

24       Please produce all DOCUMENTS which depict pricing for all of YOUR products and

25   services, including any bundled service packages, to RESIDENTS.

26       **REQUEST NUMBER TWO:**

27       Please produce all DOCUMENTS which depict pricing for all of YOUR products and

28

2

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS,
SET NO. ONE (1)

**REQUEST NUMBER FOUR:**

Please produce a copy of any scripts used by YOUR employees when dealing with RESIDENTS that call to complain about their bill.

**REQUEST NUMBER FIVE:**

Please produce a copy of any scripts used by YOUR employees when dealing with RETAIL CUSTOMERS that call to complaint about their bill.

**REQUEST NUMBER SIX:**

Please produce a copy of all web pages YOU posted during the time period from March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any bundled service packages, to RESIDENTS.

**REQUEST NUMBER SEVEN:**

Please produce a copy of all web pages YOU posted during the time period from March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any bundled service packages, to RETAIL CUSTOMERS.

**REQUEST NUMBER EIGHT:**

Please produce a copy of all DOCUMENTS which explain why RESIDENTS and RETAIL CUSTOMERS are charged differing rates for YOUR products and services.

**REQUEST NUMBER NINE:**

Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees that handle incoming customer calls determine whether the customer that is calling is a RESIDENT or a RETAIL CUSTOMER.

3

**REQUEST NUMBER TEN:**

Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees determine whether to charge a customer purchasing products or services as a RESIDENT customer or a RETAIL CUSTOMER.

**REQUEST NUMBER ELEVEN:**

Please produce a copy of YOUR policies and procedures when dealing with RESIDENTS

16
17
18
19
20
21
22
23
24
25
26
27
28

4

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS,
SET NO. ONE (1)

**PROOF OF SERVICE**

I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas, California 92024.

On September 17, 2007, I served the following documents:

**REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. ONE**

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Jeffrey M. Shohet
Julie L. Hussey
Carrie S. Dolton
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Facsimile: (619) 699-2701

*Attorneys for Time Warner Entertainment-Advance NewHouse Partnership, A New York General Partnership, Through its San Diego Division d.b.a. Time Warner Cable*

X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California 92024, following ordinary business practices. I am familiar with the practice of collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal service the same day as it is placed for collection.

(BY FACSIMILE) I transmitted the above-listed document to the party listed above via facsimile. The transmission was reported complete and without error. The telephone number of the facsimile machine I used was (858) 720-0752.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Encinitas, California on September 17, 2007.

Barron E. Ramos

CASE NO. GIC 881621
PROOF OF SERVICE

1

# EXHIBIT B

Case 3:08-cv-00582-W-WMC     Document 1-5     Filed 03/2?/2008     Page 76 of 121

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5
6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9                    SUPERIOR COURT OF CALIFORNIA

10                      COUNTY OF SAN DIEGO

11

12  LEON ALPERT, an individual, on behalf          CASE NO.  GIC881621
    of himself, on behalf of all those similarly
13  situated, and on behalf of the general         **DEFENDANT TIME WARNER
    public,                                        ENTERTAINMENT-ADVANCE/
14                                                 NEWHOUSE PARTNERSHIP, THROUGH
                    Plaintiffs,                    ITS SAN DIEGO DIVISION, DBA TIME
15                                                 WARNER CABLE'S RESPONSES TO
            v.                                     PLAINTIFF'S REQUEST FOR
16                                                 PRODUCTION OF DOCUMENTS, SET
    TIME WARNER CABLE, INC., a                     NO. ONE (1)**
17  Delaware corporation, and DOES 1 TO
    100,                                           Dept:     63
18                                                 Judge:    Luis R. Vargas
                    Defendants.
19                                                 Complaint: March 13, 2007
                                                   FAC:       May 16, 2007
20

21

22

23  **PROPOUNDING PARTY:**        **Plaintiff LEON ALPERT**

24  **RESPONDING PARTY:**         **Defendant TIME WARNER CABLE**

25  **SET NO:**                   **ONE**

26          Pursuant to Code of Civil Procedure section 2031.010, *et seq.*, Defendant Time Warner

27  Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San

28  Diego Division, dba Time Warner Cable ("TWC"), sued erroneously as Time Warner Cable, Inc.,
                                          -1-

1    responds to plaintiff Leon Alpert's ("Plaintiff") first set of request for production of documents

2    ("Requests") as follows:

3    **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

4        TWC has not completed investigation of this case, has not completed discovery, and has

5    not completed preparation for trial. All of the responses contained herein are based only on such

6    information that is presently available to and specifically known to TWC. It is anticipated that

7    further discovery, independent investigation, legal research and analysis will supply additional

8    facts, add additional meaning to the known facts, as well as establish entirely new factual

9    conclusions and legal contentions, all of which may lead to substantial additions to, changes in,

10    and variations from the responses herein set forth.

11        The following written responses are given without prejudice to TWC's right to produce

12    evidence of any subsequently discovered fact or facts that TWC may later develop. The

13    responses contained herein are made in a good faith effort to supply as much factual information

14    as is presently known, but should in no way lead to the prejudice of TWC in relation to further

15    discovery, research or analysis. TWC will produce responsive documents reflective of the time

16    period identified in Plaintiff's Requests, including March 13, 2003 until March 13, 2007.

17        In providing responses to the demands, TWC does not in any manner waive or intend to

18    waive, but rather intends to preserve and is preserving:

19        (1) All objections as to competency, relevancy, materiality and admissibility of the

20    requested documents or the subject matter thereof;

21        (2) All rights to object to the use of any documents produced, or the subject matter

22    thereof, in any subsequent proceedings; and

23        (3) All rights to object on any ground to any request for further responses to these or any

24    other demands for documents or other discovery demands involving or related to the subject

25    matter of the demands.

26    /////

27    /////

28    /////

DLA PIPER US LLP
SAN DIEGO

GT6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

**A.    General Objections.**

1    TWC objects to the demands to the extent they seek discovery of matters that constitute or
2    reflect work product of attorneys, material prepared in anticipation of litigation, attorney-client
3    communications or are protected by privileges provided for under applicable state or federal law.
4    TWC also objects to this request to the extent that it seeks TWC's trade secret or
5    confidential and/or commercially sensitive business information without a protective order in
6    place.
7    TWC further objects to the location of the production and will produce documents in a
8    mutually agreeable manner, time and place.
9    TWC incorporates by reference each and every general objection set forth above into each
10   and every specific response.  By responding that documents will be produced, TWC does not
11   represent that such documents exist; rather, only that a reasonable good faith search for such
12   documents will be made and, to the extent that such documents do exist, those documents will be
13   produced subject to the objections stated.

**B.    Objections to Plaintiff's Defined Terms.**

14   TWC objects to Plaintiff's purported definition of the terms "YOU," and "YOUR" to the
15   extent that it renders each request including these terms to be vague and ambiguous, as well as
16   overly broad.  The definition is so overbroad that it appears to call for information from literally
17   hundreds of different corporate entities and their privileged communications with their counsel.
18   TWC shall construe the terms "YOU," and "YOUR," when used in the Requests, to mean Time
19   Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, through
20   its San Diego Division, dba Time Warner Cable and no other person or entity.
21   TWC objects to Plaintiff's definition of the term "RESIDENT" to the extent that it renders
22   each request including this term to be vague and ambiguous, as well as overly broad.
23   TWC objects to Plaintiff's definition of the term "RETAIL CUSTOMER" to the extent
24   that it renders each request including this term to be vague and ambiguous, as well as overly
25   broad.  Among other things, Plaintiff's definition is further flawed by the inclusion of the term
26   "consumers."  TWC provides products and services to millions of individuals, residential

-3-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1  properties, and business entities across the United States. Plaintiff has only brought a claim

2  purportedly on behalf of himself and on behalf of all California TWC subscribers: (1) who were

3  members of HOAs and/or tenants of such members; (2) where the subscriber's HOA had

4  contracted with TWC for basic cable services; and (3) where the subscriber purchased additional

5  cable and cable related services directly from TWC but allegedly was not provided a credit for the

6  basic cable services provided through the subscriber's HOA. Therefore, the inclusion of

7  "consumers" in the definition renders each request which includes the defined term "RETAIL

8  CUSTOMER" overbroad, beyond the scope of permissible discovery, unduly burdensome and

9  harassing. TWC shall construe the term "RETAIL CUSTOMER" when used in the Requests, to

10  mean TWC San Diego division subscribers of TWC products and services, other than bulk

11  subscribers or business subscribers.

12       These preliminary objections are hereby incorporated into each and every objection to the

13  Requests set forth below. Subject to the limitations and objections set forth above, TWC

14  responds to the Requests as follows:

15                    **REQUESTS FOR PRODUCTION**

16  REQUEST FOR PRODUCTION NO. 1:

17       Please produce all DOCUMENTS which depict pricing for all of YOUR products and

18  services, including any bundled service packages, to RESIDENTS.

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

20       TWC objects to this Request as vague, ambiguous, overbroad, unduly burdensome and

21  oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

22  The phrase "depict pricing" vaguely requests *every* document that refers to pricing. TWC objects

23  to the extent that this request seeks confidential trade secret information regarding negotiated

24  prices for bulk rate customers. Subject to, and without waiving the General and Specific

25  Objections herein, and based on discovery and TWC's investigation to date, TWC further

26  responds as follows: TWC has performed a good faith effort to supply documents that identify a

27  price for TWC products and services, and TWC will produce rate cards and rate change letters.

28  /////

-4-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1    REQUEST FOR PRODUCTION No. 2:

2       Please produce all DOCUMENTS which depict pricing for all of YOUR products and

3    services, including any bundled service packages, to RETAIL CUSTOMERS.

4    RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

5       TWC objects to this Request as vague, ambiguous, overbroad, unduly burdensome and

6    oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

7    The phrase "depict pricing" vaguely requests *every* document that refer to pricing.  TWC objects

8    to the extent that this request seeks confidential trade secret information regarding negotiated

9    prices for bulk rate customers.  Subject to, and without waiving the General and Specific

10    Objections herein, and based on discovery and TWC's investigation to date, TWC further

11    responds as follows:  TWC has performed a good faith effort to supply documents that identify a

12    price for TWC products and services, and TWC will produce rate cards, rate estimates, rate letters

13    and bill notification messages.

14    REQUEST FOR PRODUCTION NO. 3:

15       Please produce all DOCUMENTS which depict all communications with plaintiff Leon

16    Alpert at any time, including, but not limited to, transcripts of telephone conversations,

17    correspondence to and from Mr. Alpert, e-mail communications to and from Mr. Alpert, and any

18    other form in which YOU maintain such communications (e.g., audio recordings).

19    RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

20       Subject to, and without waiving the General and Specific Objections herein, and based on

21    discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

22    all non-privileged documents in its possession, custody or control which it can located and

23    identify as responsive to this request.

24    REQUEST FOR PRODUCTION NO. 4:

25       Please produce a copy of any scripts used by YOUR employees when dealing with

26    RESIDENTS that call to complain about their bill.

27    /////

28    /////

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1    <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 4</u>:

2        Subject to, and without waiving the General and Specific Objections herein, and based on

3    discovery and TWC's investigation to date, TWC further responds as follows: TWC has

4    performed a good faith effort to supply responsive documents to Plaintiff's requests for

5    production of documents and has not yet identified any documents in its possession, custody or

6    control which it can identify as being responsive to this request.

7    <u>REQUEST FOR PRODUCTION NO. 5</u>:

8        Please produce a copy of any scripts used by YOUR employees when dealing with

9    RETAIL CUSTOMERS that call to complaint about their bill.

10   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 5</u>:

11       Subject to, and without waiving the General and Specific Objections herein, and based on

12   discovery and TWC's investigation to date, TWC further responds as follows: TWC has

13   performed a good faith effort to supply responsive documents to Plaintiff's requests for

14   production of documents and has not yet identified any documents in its possession, custody or

15   control which it can identify as being responsive to this request.

16   <u>REQUEST FOR PRODUCTION NO. 6</u>:

17       Please produce a copy of all web pages YOU posted during the time period from

18   March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services,

19   including any bundled service packages, to RESIDENTS.

20   <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 6</u>:

21       TWC objects to this request as overbroad, unduly burdensome , and not reasonably

22   calculated to lead to the discovery of admissible evidence. TWC does not archive its web pages

23   and overwrites them with updated web pages at the time of update. Subject to, and without

24   waiving the General and Specific Objections herein, and based on discovery and TWC's

25   investigation to date, TWC further responds as follows: TWC has performed a good faith effort

26   to supply responsive documents to Plaintiff's requests for production of documents and has not

27   yet identified any documents in its possession, custody or control which it can identify as being

28   responsive to this request.

-6-

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1   REQUEST FOR PRODUCTION NO. 7:

2        Please produce a copy of all web pages YOU posted during the time period from

3   March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services,

4   including any bundled service packages, to RETAIL CUSTOMERS.

5   RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

6        TWC objects to this request as overbroad, unduly burdensome , and not reasonably

7   calculated to lead to the discovery of admissible evidence.  TWC does not archive its web pages

8   and overwrites them with updated web pages at the time of update.  Subject to, and without

9   waiving the General and Specific Objections herein, and based on discovery and TWC's

10  investigation to date, TWC further responds as follows:  TWC has performed a good faith effort

11  to supply responsive documents to Plaintiff's requests for production of documents and has not

12  yet identified any documents in its possession, custody or control which it can identify as being

13  responsive to this request.

14  REQUEST FOR PRODUCTION NO. 8:

15       Please produce a copy of all DOCUMENTS which explain why RESIDENTS and

16  RETAIL CUSTOMERS are charged differing rates for YOUR products and services.

17  RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

18       TWC objects to this request as vague, ambiguous, seeking confidential trade secret

19  information and argumentative.  TWC also objects to this request as overly burdensome to

20  produce each HOA agreement.  Some RESIDENTS are also charged less than other RESIDENTS

21  *and* RETAIL CUSTOMERS for basic and additional cable services as specifically negotiated by

22  their HOAs.  Subject to, and without waiving the General and Specific Objections herein, and

23  based on discovery and TWC's investigation to date, TWC further responds as follows:  TWC

24  has performed a good faith effort to supply responsive documents to Plaintiff's requests for

25  production of documents and has not yet identified any documents in its possession, custody or

26  control which it can identify as being responsive to this request.

27  /////

28  /////

-7-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1   REQUEST FOR PRODUCTION NO. 9:

2        Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees

3   that handle incoming customer calls determine whether the customer that is calling is a

4   RESIDENT or a RETAIL CUSTOMER.

5   RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

6        TWC objects to this request as overbroad, unduly burdensome , seeking confidential

7   information, and not reasonably calculated to lead to the discovery of admissible evidence.

8   Subject to, and without waiving the General and Specific Objections herein, and based on

9   discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

10  all non-privileged documents in its possession, custody or control which it can identify as being

11  responsive to this request, including documents that indicate the screen viewed by TWC

12  employees that is used to determine whether the customer is a RESIDENT or a RETAIL

13  customer.  Because of consumer confidentiality, only Plaintiff's record indicating such will be

14  produced.

15  REQUEST FOR PRODUCTION NO. 10:

16       Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees

17  determine whether to charge a customer purchasing products or services as a RESIDENT

18  customer or a RETAIL CUSTOMER.

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

20       TWC objects to this request as overbroad, unduly burdensome, seeking confidential

21  information, and not reasonably calculated to lead to the discovery of admissible evidence.

22  Subject to, and without waiving the General and Specific Objections herein, and based on

23  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

24  all non-privileged documents in its possession, custody or control which it can identify as being

25  responsive to this request, including documents that indicate the screen viewed by TWC

26  employees that is used to determine whether the customer is a RESIDENT or a RETAIL

27  customer.  Because of consumer confidentiality, only Plaintiff's record indicating such will be

28  produced.

-8-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

8  responsive to this request.

9  REQUEST FOR PRODUCTION NO. 12:

10      Please produce a copy of YOUR policies and procedures when dealing with RETAIL

11 CUSTOMERS that request a refund for being overcharged for products and services provided by

12 YOU.

13 RESPONSE TO REQUEST FOR PRODUCTION No. 12:

14      Subject to, and without waiving the General and Specific Objections herein, and based on

15 discovery and TWC's investigation to date, TWC further responds as follows: TWC will produce

16 all non-privileged documents in its possession, custody or control which it can identify as being

17 responsive to this request, at a mutually convenient date and time.

18 Dated: October 23, 2007

19                                DLA PIPER US LLP

20

21                     By _____

22                                JEFFREY M. SHOHET
                                   JULIE L. HUSSEY
                                   CARRIE S. DOLTON
23                                 Attorneys for Defendant
                                   TIME WARNER ENTERTAINMENT-
24                                 ADVANCE/NEWHOUSE PARTNERSHIP, A
                                   NEW YORK GENERAL PARTNERSHIP,
25                                 THROUGH ITS SAN DIEGO DIVISION,
                                   DBA TIME WARNER CABLE
26

27

28                                          -9-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1          DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
325566-11                  FOR PRODUCTION OF DOCUMENTS, SET ONE

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On October 23, 2007, I served the within document(s):

**TIME WARNER ENTERTAINMENT-ADVANCE/ NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL PARTNERSHIP, THROUGH ITS SAN DIEGO DIVISION, DBA TIME WARNER CABLE'S NOTICE OF DEPOSITION OF PLAINTIFF LEON ALPERT**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in the ordinary course of business, to each addressee as set forth below.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Attorneys for Plaintiff**

| | |
|---|---|
| Barron E. Ramos, Esq. | David R. Markham, Esq. |
| 132 N El Camino Real, Ste 303 | Clark & Markham |
| Encinitas CA  92024 | 401 West A St, Ste 2200 |
| (858) 349-6019 | San Diego CA  92101 |
| (760) 994-1354 (fax) | (619) 239-1321 |
| | (619) 239-5888 (fax) |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 23, 2007, at San Diego, California.

_____
Eloy Rodriguez

-10-

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE

# EXHIBIT C

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN DIEGO
CENTRAL

**MINUTE ORDER**

Date: 02/22/2008                        Time: 10:00:00 AM        Dept: C-63
Judicial Officer Presiding:  Judge Luis R. Vargas
Clerk: Richard Cersosimo

Bailiff/Court Attendant:
ERM:
Reporter: , Not Reported

Case Init. Date: 03/13/2007

Case No: GIC881621                      Case Title: ALPERT vs TIME WARNER CABLE INC

Case Category: Civil - Unlimited        Case Type: Business Tort

---

Event Type: Motion Hearing (Civil)
Moving Party: LEON ALPERT
Causal Document & Date Filed: Motion to Compel Discovery,  12/18/2007

---

**Appearances:**


---

The Court, having taken the above-entitled matter under submission on 02/22/2008 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

Having taken Plaintiffs' Motion to Compel Compliance under submission, the Court now rules as follows:

Plaintiffs' Motion to Compel Compliance is **denied, without prejudice**.

Plaintiff's Request for Production No. 1 sought "all" documents "which depict pricing" for "Residents." (Plaintiff's Separate Statement). Defendant Time Warner Cable, Inc. ("TWC") responded, "TWC has performed a good faith effort to supply documents that identify a price for TWC products and services, and TWC will produce rate cards and rate change letters." (Plaintiff's Separate Statement).

Plaintiff's notice of motion in this case stated Plaintiff was moving "for an Order compelling compliance with Time Warner's Response to Request for Production of Documents . . . " on grounds "Time Warner had previously agreed to produce the documents in its Response to plaintiff's Request for Production." (Notice of Motion at 2:4-5, 9-10). Responsive to Plaintiff's Request for Production, TWC produced HOA rate cards for the Desert Cities and San Diego. There are no rate cards for other areas of California, as the HOA pricing for other areas of California is the result of individually negotiated HOA specific contracts. (TWC's Separate Statement). By way of the instant motion, Plaintiff is seeking to compel TWC to produce these individually negotiated HOA contracts.

However, Plaintiff's notice of motion prevents the court from granting the requested relief. The notice of motion must state in the first paragraph exactly what relief is sought and on what grounds. (Code Civ. Pro., § 1010; Cal. Rules of Court, rule 3.1110(a); see *People v. American Sur. Ins. Co.* (1999) 75 Cal.App.4th 719, 726 (citing text)). The court cannot grant different relief, or relief on different grounds, than stated in the notice of motion. (See *People v. American Sur. Ins. Co.*, supra, 75 Cal.App.4th at 726; *Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124).

---

Case Title: ALPERT vs TIME WARNER CABLE INC          Case No: G. J81621

Plaintiff's motion fails as a Motion to Compel Compliance. As set forth above, in its Response to Plaintiff's Request for Production, TWC agreed only to produce rate cards and rate change letters. Since TWC did not previously agree to produce the individually negotiated HOA contracts, TWC did not fail to comply with its statement of compliance. (See Code Civ. Pro. § 2031.320(a)).

Plaintiff's footnote in his Memorandum of Points and Authorities that, alternatively, the motion should be considered a Motion to Compel Further Responses under Code of Civil Procedure section 2031.310 does not satisfy the requirement of notice as set forth in Code of Civil Procedure section 1010.

All requests for sanctions are **denied**.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

SHORT TITLE: ALPERT vs TIME WARNER CABLE INC

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>GIC881621 |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 02/29/2008.


Clerk of the Court, by: _R. Cersosimo_ _____, Deputy

Julie L. Hussey
401 B Street # suite 1700
DLA PIPER US LLP
San Diego, CA 92101

DAVID MARKHAM
401 W A Street # 2200
CLARK & MARKHAM
San Diego, CA 92101

BARRON E. RAMOS
132 N. El Camino Real # 303
Encinitas, CA 92024

KRISTEN E. CAVERLY
P. O. Box 9144
Rancho Santa Fe, CA 92067-9144

☐ Additional names and address attached.

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**                                    Page: 1

1                         **PROOF OF SERVICE**

2         I am employed in the County of San Diego, California.  I am over the age of 18 years and

3   not a party to the within action.  My business address is 132 N. El Camino Real, # 303, Encinitas,

4   California 92024.

5         On March 10, 2008, I served the following documents:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER**
6   **RESPONSES TO INTERROGATORIES; SEPARATE STATEMENT OF ITEMS IN**
**DISPUTE; and REQUEST FOR SANCTIONS IN THE SUM OF $ 3,440**

7

**DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION TO COMPEL**
8   **FURTHER RESPONSES TO INTERROGATORIES and REQUEST FOR SANCTIONS IN**
**THE SUM OF $ 3,440**

9

*RENEWED* **NOTICE OF MOTION AND MOTION TO COMPEL FURTHER**
10   **RESPONSES; SEPARATE STATEMENT OF ITEMS IN DISPUTE; and DECLARATION**
**OF BARRON E. RAMOS IN SUPPORT OF MOTION**

11

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as
12

follows:
13

14   Jeffrey M. Shohet                      *Attorneys for Time Warner Entertainment-*
Julie L. Hussey                         *Advance NewHouse Partnership, A New York*
15   Carrie S. Dolton                       *General Partnership, Through its San Diego*
**DLA PIPER US LLP**               *Division d.b.a. Time Warner Cable*
16   401 B Street, Suite 1700
San Diego, CA 92101-4297
17   Facsimile: (619) 764-6644

18

19   X    (BY UPS *Overnight Delivery*) I placed each such sealed envelope, with postage thereon fully
         prepaid, for collection and mailing via UPS overnight delivery at 132 N. El Camino Real, #
20        303, Encinitas, California 92024, following ordinary business practices.

21

       (BY FACSIMILE) I transmitted the above-listed document to the party listed above via
22        facsimile.  The transmission was reported complete and without error.  The telephone number
        of the facsimile machine I used was (760) 274-6438.
23

24        I declare under penalty of perjury under the laws of the State of California that the

25   foregoing is true and correct.

26        Executed at Encinitas, California on March 10, 2008.

27                                           Barron E. Ramos

28

                                  1

1   **BARRON E. RAMOS**
    Attorney at Law, A Professional Corporation
2   Barron E. Ramos (State Bar No. 179620)
    132 N. El Camino Real, # 303
3   Encinitas, California 92024
    Telephone: (760) 274-6438
4   Facsimile: (760) 994-1354

5   **CLARK & MARKHAM**
    David R. Markham (State Bar No. 071814)
6   R. Craig Clark (State Bar No. 129219)
    James M. Treglio (State Bar No. 228077)
7   401 West "A" Street, Suite 2200
    San Diego, CA 92101
8   Telephone: (619) 239-1321
    Facsimile: (619) 239-5888
9
    Attorneys for plaintiff and the Class
10

11                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                        **COUNTY OF SAN DIEGO**

13   LEON ALPERT, an individual,                ) Case No. GIC 881621
     on behalf of himself, on behalf of all those)
14   similarly situated, and on behalf of the general) **CLASS ACTION**
     public,                                      )
15                                                ) **PLAINTIFF'S NOTICE OF MOTION AND**
              Plaintiffs,                         ) **MOTION TO COMPEL FURTHER**
16                                                ) **RESPONSES TO INTERROGATORIES;**
     v.                                           ) **SEPARATE STATEMENT OF ITEMS IN**
17   TIME WARNER CABLE, INC., a Delaware) **DISPUTE; and REQUEST FOR**
     corporation, and DOES 1 TO 100,             ) **SANCTIONS IN THE SUM OF $ 3,440**
18                                                )
              Defendants.                         )
19                                                ) Date: April 4, 2008
                                                  ) Time: 10:30 a.m.
20                                                )
                                                  ) Dept: 63
21                                                ) Judge: Hon. Luis R. Vargas
                                                  )
22                                                ) Trial Date: None Set
                                                  ) Case Filed: March 13, 2007
23   _____

24

25

26

27
     TO THE COURT AND ALL INTERESTED PARTIES:
28                                          1
_____

1    PLEASE TAKE NOTICE THAT on April 4, 2008, at 10:30 a.m., or as soon thereafter as
2    counsel may be heard, in Department 63 of the California Superior Court for the County of Diego,
3    located at 330 West Broadway, San Diego, California 92101, the Honorable Luis R. Vargas
4
5    presiding, plaintiff will move the Court for an Order compelling further responses to plaintiff's
6    special and form interrogatories and seeking sanctions in the sum of $ 3,440.
7        Good cause exists to bring this Motion as the further responses are necessary for plaintiff to
8    defend against defendant's pending Motion for Summary Judgment and for plaintiff to move to
9    certify the statewide class in this action.  Moreover, defendant has no justifiable reason for failing
10   to properly respond to the interrogatories.  Lastly, attempting to avoid this motion, plaintiff's
11   counsel has exhausted the meet and confer process yet defendant refuses to provide complete
12
13   responses to the interrogatories propounded.
14       This Motion is based upon this Notice of Motion, the Brief Memorandum of Points and
15   Authorities submitted herewith, the separate statement of items in dispute, the accompanying
16   declaration of Barron E. Ramos, the other papers on file in this action, and such other materials or
17   arguments of counsel that the Court may receive at or before the hearing on this Motion.
18
19   Dated: March 10, 2008

Barron E. Ramos
20                                              Attorneys for plaintiff
21
22
23
24
25
26
27
28

2

1

## I. BRIEF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

2

CCP 2030.300(a) provides that if, upon receipt of responses to interrogatories, the

3

responses contain objections without merit or that are too general, or contains answers that are

4

evasive or incomplete, the propounding party may thereafter move to compel further responses.

5

The interrogatories at issue in this Motion include a basic form interrogatory as well as special

6

interrogatories, all of which are necessary for plaintiff to defend against Time Warner Cable's

7

(TWC) pending Motion for Summary Judgment and are necessary for plaintiff to move to certify

8

his statewide class of similarly situated consumers aggrieved by TWC's unlawful, unfair and

9

deceptive conduct.  TWC's responses to both sets of interrogatories are plainly improper as the

10

responses attempt to self-limit the responses to only the San Diego and Desert Cities areas, whereas

11

the scope of the interrogatories clearly deal with TWC's statewide activities.  This is the very same

12

tactic employed by TWC in previously refusing to produce responsive documents which also lead

13

to another motion to compel, heard in late February.

14

15

Again, Mr. Alpert's class is statewide, not merely limited to San Diego or the Desert Cities.

16

Paragraph 4 of plaintiff's FAC defines the class:

17

18

> 4.    The class in this case is comprised of all TIME WARNER

19

> subscribers in the State of California during the four (4) years prior to

20

> the filing of this complaint who were members of  homeowners

21

> associations (HOAs) and/or tenants of such members, where the

22

> subscriber's HOA had contracted with TIME WARNER for basic

23

> cable services (also sometimes called "bulk multi-channel video

24

> services") and where the subscriber purchased additional cable and

25

> cable related services directly from TIME WARNER but was not

26

> provided a credit for already paying the for basic cable services

27

28

3

1    ("HOA Standard Service") through the subscriber's HOA.

2        Time Warner's renewed attempt to narrow the class to San Diego and the Desert Cities is

3    improper and is frustrating plaintiff's discovery.  The interrogatories are plainly relevant and

4    necessary to establish the essential element of commonality among class members that HOA

5    pricing and so-called "retail" pricing differed during the class period.  Even more importantly,

6

7    TWC is improperly withholding responses which are plainly necessary for plaintiff to oppose

8    TWC's pending MSJ.  In other words, TWC has moved for summary judgment while it continues

9    to deny plaintiff the discovery necessary to oppose that motion.

10        In its responses, Time Warner asserted "General Objections" that are improper, that are

11   incorporated into every single response, and that attempt to self-limit the responses by re-defining

12   TWC as follows: TWC "shall construe the terms 'YOU' and 'YOUR,' when used in the

13

14   interrogatories, to mean Time Warner Entertainment …. through its San Diego Division, which

15   operates in the San Diego and Desert Cities areas."  See General Objection No. 3.

16        Objections to an entire set of interrogatories, such as TWC has raised here, are not

17   sustainable if any of the questions are proper.  *Wooldridge v. Mounts* (1962) 199 Cal.App.2d 620,

18   628.  By answering all of the questions, but limiting all of its answers to only San Diego and the

19   Desert Cities, TWC concedes the propriety of the questions - but simply refuses to answer the

20   questions beyond the San Diego and Desert Cities areas.

21

22        The FAC at paragraph 4 makes plain that this is a statewide action, not a San Diego and

23   Desert Cities action.  The propounded interrogatories are not limited to the San Diego and Desert

24   Cities areas.  Rather, as used in the interrogatories, the terms "YOU" or "YOUR" specifically

25   "refer to defendant Time Warner Cable, Inc., its parent company, if any, and all subsidiaries of

26   such parent, the employees, agents, officers, directors and representatives of all of these entities,

27   and all other persons or entities acting on behalf or under the control of these entities."  See Special

28                                             4

1   Interrogatory No. 1.  The defendant in this case is not the San Diego or Desert Cities division of

2   TWC, the defendant is "TIME WARNER CABLE, INC., a Delaware corporation."  Neither the

3   interrogatories, nor the First Amended Complaint (FAC), define TWC as TWC attempts to do in its

4   responses.  The answering party is therefore, apparently, not even the defendant in this case.

5

6       Moreover, the interrogatories specifically incorporate the defined term "RESIDENTS"

7   which is defined as "occupants of properties during the CLASS PERIOD that were part of a

8   homeowners' association (HOA) *in California* with whom YOU had entered into a "Residential

9   Bulk Services Agreement" to provide basic cable services to the HOA members."  (Emphasis

10  added)  The term "RESIDENTS" is plainly not limited to San Diego or the Desert Cities.  Each of

11  TWC's responses to plaintiff's Special Interrogatories incorporates its "General Objection" and

12  thereby limits the response to only San Diego and the Desert Cities.

13

14      Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery

15  regarding any matter, not privileged, that is relevant to the subject matter involved in the pending

16  action or to the determination of any motion made in that action, if the matter either is itself

17  admissible in evidence or appears reasonably calculated to lead to the discovery of admissible

18  evidence."  "The scope of discovery is very broad."  *Tien v. Superior Court* (2006) 139

19  Cal.App.4th 528, 535.  The "expansive scope of discovery" (*Emerson Electric Co. v. Superior*

20  *Court* (1997) 16 Cal.4th 1101, 1108) is a deliberate attempt to "take the `game' element out of trial

21  preparation" and to "do away `with the sporting theory of litigation — namely, surprise at the

22  trial.'" *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.  Here, TWC takes the game

23  element in this case to a new level by hiding relevant documents and now refusing to answer

24  interrogatories, all while simultaneously attempting to move for summary judgment.

25      Finally, this is B&P section 17200 case.  As our Supreme Court has made plain, in proving

26  an unfair business practice violation, claimants are entitled to introduce evidence not only of

27

28                                            5

practices which affect them individually, but also similar practices involving other members of the public who are not parties to the action. *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 929. TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of discovery permitted under Code of Civil Procedure section 2017.010, is a deliberate attempt to put the "game element" back into litigation, and is contrary to the expansive scope of discovery in both class actions and B&P section 17200 claims in particular. Since TWC has answered the interrogatories on behalf of its San Diego and Desert Cities entity only, the responses are improper and inadequate. These same objections infect all of TWC's responses to plaintiff's entire set of both special and form interrogatories. The responses are improper and must be amended accordingly.

As set forth below in the declaration of Barron E. Ramos, plaintiff has attempted to meet and confer with TWC in an effort to avoid this motion, only to be stonewalled and told that TWC simply refuses to amend its answers. Plaintiff's Motion should be granted.

## II. SANCTIONS

As before, Mr. Alpert and his counsel have again been more than patient attempting to avoid this Motion. Notwithstanding repeated requests, Time Warner refused to amend its responses thereby forcing this motion. This Motion was unavoidable as the interrogatories are essential to plaintiff's upcoming Motion to Certify and, more importantly, essential to defend against TWC's pending MSJ. Alpert's counsel bills at a rate of $425 per hour and has expended 8 hours preparing this motion, including the anticipated time necessary to file a reply and attend the hearing. Alpert also incurred a filing fee of $40. Alpert therefore seeks sanctions against Time Warner in the sum of $3,440.

Dated: March 10, 2008

Barron E. Ramos
Attorneys for plaintiff

6

### III. SEPARATE STATEMENT OF ITEMS IN DISPUTE

TWC's responses to plaintiff's special and form interrogatories span 58 pages total. See Exhibits "C" and "D" to the declaration of Barron E. Ramos filed herewith. The following statement groups the interrogatories and then identifies the repeated improper objection that TWC relies upon to self-limit its responses to only the San Diego and Desert Cities areas. The responses are improper as they relate solely to TWC's San Diego and Desert Cities unit. In contrast, the definitions used in the interrogatories are not limited to San Diego and the Desert Cities. To the contrary, the definition of "RESIDENT" used in the interrogatories is defined as "occupants of properties during the CLASS PERIOD that were part of a homeowners' association (HOA) *in California* with whom YOU had entered into a 'Residential Bulk Services Agreement' to provide basic cable services to the HOA members." Ibid. (Emphasis added) Finally, this is statewide class, not a San Diego and Desert Cities class. Plaintiff simply cannot oppose TWC's pending MSJ or otherwise move to certify a class without complete responses to these interrogatories.

The following are (1) the special interrogatories and one form interrogatory at issue, verbatim, (ii) the repeated objection to each one that includes and incorporates the "General Objection" and thereby limits the response to San Diego and the Desert Cities only, (iii) the reasons why further responses should be compelled.

### (i) THE SPECIAL INTERROGATORIES

1. During the CLASS PERIOD (The term "CLASS PERIOD" shall refer to the time period beginning March 13, 2003 and ending March 13, 2007), for how many RESIDENTS (The term "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD that were part of a homeowners' association (HOA) in California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide basic cable services to the HOA members) did YOU (The term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent company, if

7

any, and all subsidiaries of such parent, the employees, agents, officers, directors and representatives of all of these entities, and all other persons or entities acting on behalf or under the control of these entities) provide service in the State of California?

2. During the entire CLASS PERIOD, did YOU provide RESIDENTS pricing for services that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable services through their HOA (hereinafter "RESIDENT Pricing")?

3. If during the entire CLASS PERIOD YOU did not provide RESIDENT Pricing for services that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable services through their HOA, why not?

4. If YOU provided RESIDENT Pricing for services that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable services through their HOA for a portion of the CLASS PERIOD, please identify the dates that YOU provided such pricing.

5. During the CLASS PERIOD, if YOU published RESIDENT Pricing on the Internet just as you published retail pricing, please identify the specific URLs where such pricing appeared.

6. If during the CLASS PERIOD YOU did not publish RESIDENT Pricing on the Internet just as you published retail pricing, why not?

7. During the CLASS PERIOD, did YOU make RESIDENT Pricing known to RESIDENTS?

8. If during the CLASS PERIOD YOU made RESIDENT Pricing known to RESIDENTS, how did YOU do so?

9. Do YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT requests a specific bundle?

10. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT requests a specific bundle, please state all facts that support that contention.

11. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT requests a specific bundle, please identify all witnesses that support that contention.

12. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

8

1    requests a specific bundle, please identify all documents that support that contention.

2        13.  Please identify the customer service representative whose recorded conversation with

3    plaintiff Alpert (which Time Warner has misplaced/destroyed) resulted in Alpert being placed in an

4    HOA bundle in the fall of 2006.

5        14. Did plaintiff Alpert have bundled services before he had the conversation with YOUR

6    customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

7    2006?

8        15. If plaintiff Alpert had bundled services before he had the conversation with YOUR

9    customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

10   2006, please identify each and every bundle he already had in place at the time that conversation

11   occurred.

12        16. If plaintiff Alpert had bundled services before he had the conversation with YOUR

13   customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

14   2006, for each bundle Alpert had at that time, please state whether Alpert had specifically

15   requested that particular bundle or whether YOU had bundled Alpert.

16        17.  Do YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

17   the conversation with YOUR customer service representative that resulted in Alpert being placed

18   in an HOA bundle in the fall of 2006?

19        18.  If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

20   conversation with YOUR customer service representative that resulted in Alpert being placed in an

21   HOA bundle in the fall of 2006, please state all facts that support that contention.

22        19.  If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

23   conversation with YOUR customer service representative that resulted in Alpert being placed in an

24   HOA bundle in the fall of 2006, please identify all documents that support that contention.

25        20. If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

26   conversation with YOUR customer service representative that resulted in Alpert being placed in an

27   HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

28

9

1    21.  Why did YOU destroy the audio recording of the conversation with YOUR customer

2    service representative that resulted in Alpert being placed in an HOA bundle in the fall of 2006?

3    22.  Do YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

4    conversation with YOUR customer service representative that resulted in Alpert being placed in an

5    HOA bundle in the fall of 2006?

6    23.  If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

7    conversation with YOUR customer service representative that resulted in Alpert being placed in an

8    HOA bundle in the fall of 2006, please state all facts that support that contention

9    24. If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

10   conversation with YOUR customer service representative that resulted in Alpert being placed in an

11   HOA bundle in the fall of 2006, please identify all documents which support that contention.

12   25.  If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

13   conversation with YOUR customer service representative that resulted in Alpert being placed in an

14   HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

15   26.  When did YOU begin offering HOA bundles in California?

16   27.  When did YOU begin offering retail bundles in California?

17   28.  With how many HOAs in the State of California did YOU have a contract to provide

18   services during the CLASS PERIOD?

19   29. Did YOU automatically bundle services when RESIDENTS called to request additional

20   services during the CLASS PERIOD?

21   30. Do YOU contend that the class in this case should not be certified?

22   31. If YOU contend that the class in this case should not be certified, please state all facts

23   upon which YOU base that contention.

24   32. If YOU contend that the class in this case should not be certified, please identify all

25   documents which support that contention.

26   33. If YOU contend that the class in this case should not be certified, please identify all

27   witnesses who support that contention.

28

10

### (ii) FORM INTERROGATORY NO. 15.1

Identify each denial of a material allegation and each special and affirmative defense in your pleadings and for each:

     (a) state all facts upon which you base the denial or special or affirmative defense;

     (b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

     (c) identify all DOCUMENTS and other tangible things that support your denial or special or affirmative defenses, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

### (iii) TWC's RESPONSE TO SPECIAL INTERROGATORY NOS. 1 – 33, and to FORM INTERROGATORY NO. 15.1:

*Each* of the responses incorporates the following prefatory language which is used to improperly limit the response to only the San Diego and Desert Cities areas:

"In addition to the General Objections set forth above, which are incorporated by reference herein, TWC-SAN DIEGO/DESERT CITIES objects to this interrogatory …" This identical statement appears in each response. Each interrogatory is then answered, but only as it relates to TWC's San Diego and Desert Cities unit with the following language:

"Subject to and without waiving the foregoing objections or the General Objections set forth above, TWC-SAN DIEGO/DESERT CITIES responds as follows:" This statement appears in each "answer."

***Why a Further Response Should Be Ordered***:

It is well settled that objections to an entire set of interrogatories, such as TWC has raised here, are not sustainable if any of the questions are proper. *Wooldridge v. Mounts* (1962) 199 Cal.App.2d 620, 628. By answering all of the questions, but limiting all of its answers to only San Diego and the Desert Cities, TWC concedes the propriety of the questions - but simply refuses to

11

1    answer the questions beyond the San Diego and Desert Cities areas.  The FAC at paragraph 4

2    makes plain that this a statewide action, not a San Diego and Desert Cities action.

3        Moreover, the answering party is not, apparently, even the defendant in this case.  The

4    defendant is "Time Warner Cable, Inc., a Delaware Corporation," whereas the responses state they

5
     are from "TWC-SAN DIEGO/DESERT CITIES."  That entity is not a party to this litigation and is

6
7    not named in the FAC.  Thus, all of the responses, including the critical factual bases for TWC's

8    numerous affirmative defenses, are defective as they relate to an entity that is not the defendant in

9    this case.

10       Code of Civil Procedure section 2017.010 provides that unless the court imposes limits,

11   "any party may obtain discovery regarding any matter, not privileged, that is relevant to the

12
     subject matter involved in the pending action or to the determination of any motion made in that

13
14   action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead

15   to the discovery of admissible evidence."  "The scope of discovery is very broad."  *Tien v. Superior*

16   *Court* (2006) 139 Cal.App.4th 528, 535.

17       The "expansive scope of discovery" (*Emerson Electric Co. v. Superior Court* (1997) 16

18   Cal.4th 1101, 1108) is a deliberate attempt to "take the `game' element out of trial preparation" and

19   to "do away `with the sporting theory of litigation — namely, surprise at the trial.'" *Greyhound*

20
     *Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.  TWC takes the game element in this case to a

21
22   new level by hiding relevant documents and now refusing to answer interrogatories.

23       Finally, this is B&P section 17200 case.  As our Supreme Court has made plain, in proving

24   an unfair business practice violation, claimants are entitled to introduce evidence not only of

25   practices which affect them individually, but also similar practices involving other members of the

26   public who are not parties to the action.  *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913,

27   929.

28
                                      12

1    TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of

2 discovery permitted under Code of Civil Procedure section 2017.010, is a deliberate attempt to put

3 the "game element" back into litigation, and is contrary to the expansive scope of discovery in both

4 class actions and B&P section 17200 claims in particular.

5    For all these reasons and those set forth herein, plaintiff's Motion should be granted.

6

7

8 Dated: March 10, 2008

9                                        Barron E. Ramos
                                         Attorneys for plaintiff
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                       13

**PROOF OF SERVICE**

     I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas, California 92024.

     On March 10, 2008, I served the following documents:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES; SEPARATE STATEMENT OF ITEMS IN DISPUTE; and REQUEST FOR SANCTIONS IN THE SUM OF $ 3,440**

**DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES and REQUEST FOR SANCTIONS IN THE SUM OF $ 3,440**

***RENEWED* NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES; SEPARATE STATEMENT OF ITEMS IN DISPUTE; and DECLARATION OF BARRON E. RAMOS IN SUPPORT OF MOTION**

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Jeffrey M. Shohet
Julie L. Hussey
Carrie S. Dolton
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Facsimile: (619) 764-6644

*Attorneys for Time Warner Entertainment-Advance NewHouse Partnership, A New York General Partnership, Through its San Diego Division d.b.a. Time Warner Cable*

X    (BY UPS *Overnight Delivery*) I placed each such sealed envelope, with postage thereon fully prepaid, for collection and mailing via UPS overnight delivery at 132 N. El Camino Real, # 303, Encinitas, California 92024, following ordinary business practices.

    (BY FACSIMILE) I transmitted the above-listed document to the party listed above via facsimile. The transmission was reported complete and without error. The telephone number of the facsimile machine I used was (760) 274-6438.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    Executed at Encinitas, California on March 10, 2008.

Barron E. Ramos

1

CASE NO. GIC 881621
PROOF OF SERVICE

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Telephone: (760) 274-6438
4  Facsimile: (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888

9
   Attorneys for plaintiff and the Class
10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                        **COUNTY OF SAN DIEGO**

13  LEON ALPERT, an individual,                    ) Case No. GIC 881621
    on behalf of himself, on behalf of all those)
14  similarly situated, and on behalf of the general) **CLASS ACTION**
    public,                                        )
15                                                 ) **DECLARATION OF BARRON E. RAMOS**
         Plaintiffs,                               ) **IN SUPPORT OF MOTION TO COMPEL**
16  v.                                             ) **FURTHER RESPONSES TO**
                                                   ) **INTERROGATORIES and REQUEST FOR**
17  TIME WARNER CABLE, INC., a Delaware) **SANCTIONS IN THE SUM OF $ 3,440**
    corporation, and DOES 1 TO 100,               )
18                                                 )
         Defendants.                               )
19                                                 ) Date:  April 4, 2008
                                                   ) Time:  10:30 a.m.
20                                                 )
                                                   ) Dept: 63
21                                                 ) Judge: Hon. Luis R. Vargas
                                                   )
22                                                 ) Trial Date: None Set
                                                   ) Case Filed: March 13, 2007
23  _____)

24

25

26

27  I, Barron E. Ramos, declare as follows:

28                                     1

1.     I am one of the attorneys for plaintiff Leon Alpert and have personal knowledge of each of the facts set forth herein, and if called upon as a witness could and would testify competently thereto.

2.     This declaration is submitted in support of Mr. Alpert's Motion to Compel.

3.     On January 2, 2008 I caused to be served on Time Warner plaintiff's first set of Special and Form Interrogatories.  (See Exhibits "A" and "B")

4.     On or about February 11, 2008, Time Warner responded by refusing to answer as to TWC's conduct statewide.  (See Exhibits "C" and "D").

5.     I attempted to avoid this motion by meeting and conferring with TWC on the issues presented in this motion.  On March 5, 2008, TWC refused to amend its responses.

7.     To prepare and revise these moving papers, I expended 4 hours of time.  It is estimated that to review and research the opposition, prepare and file a reply, and then attend the hearing in this matter will require an additional 4 hours of time, minimum.  My billing rate is $ 425 per hour as I have been practicing law for 12 years.  At $ 425 per hour, the total billing for preparing this motion, including the anticipated time necessary to file a reply and attend the hearing, including the filing fee of $ 40 paid, totals $ 3,440.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 10th day of March, 2008 at Encinitas, California.

Barron E. Ramos

2

# EXHIBIT A

DISC-001

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Barron E. Ramos (179620)<br>Attorney at Law, APC<br>132 N. El Camino Real, # 303<br>Encinitas, CA 92024<br>TELEPHONE NO.: 760-274-6438<br>FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  plaintiff Leon Alpert | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego

SHORT TITLE OF CASE:
Alpert v. Time Warner

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| **Asking Party:** plaintiff Leon Alpert<br><br>**Answering Party:** defendant Time Warner<br>**Set No.:** one | GIC 881621 |

### Sec. 1. Instructions to All Parties

(a)  Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)  For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c)  These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

### Sec. 2. Instructions to the Asking Party

(a)  These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form Interrogatories—Limited Civil Cases (Economic Litigation) (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)  Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)  You may insert your own definition of **INCIDENT** in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)  The interrogatories in section 16.0, Defendant's Contentions–Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)  Additional interrogatories may be attached.

### Sec. 3. Instructions to the Answering Party

(a)  An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)  As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c)  Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)  If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)  Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)  Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)  If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)  Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____     _____
        *(DATE)*                              *(SIGNATURE)*

### Sec. 4. Definitions

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

[✓]  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

Form Approved for Optional Use<br>Judicial Council of California<br>DISC-001 [Rev. January 1, 2008]

**FORM INTERROGATORIES—GENERAL**

Code of Civil Procedure,<br>§§ 2030.010-2030.410, 2033.710<br>www.courtinfo.ca.gov

American LegalNet, Inc.<br>www.FormsWorkflow.com

DISC-001

☐ (2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

**(b) YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c) PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d) DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of a handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e) HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

**(f) ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

## CONTENTS

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
   Family Law *[See separate form FL-145]*

**1.0 Identity of Persons Answering These Interrogatories**

☑ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information—Individual**

☐ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☐ 2.2 State the date and place of your birth.

☐ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

☐ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☐ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☐ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☐ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☐ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

DISC-001

☐ 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON?** If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON**; and
(b) a description of your duties.

☐ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the · **INCIDENT?** If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT.**

☐ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

## 3.0 General Background Information—Business Entity

☑ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

☑ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

☑ 3.5 Are you an unincorporated association?
If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

☑ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

☑ 3.7 Within the past five years has any public entity regis-tered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

## 4.0 Insurance

☑ 4.1 At the time of the **INCIDENT,** was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS**, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage con-tained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

☑ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT?** If so, specify the statute.

## 5.0 · *[Reserved]*

## 6.0 Physical, Mental, or Emotional Injuries

☐ 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 6.2 through 6.7).*

☐ 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

DISC-001

6.3   Do you still have any complaints that you attribute to the **INCIDENT?** If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4   Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT?** If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS,** and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5   Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT?** If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6   Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS,** and telephone number of each provider.

6.7   Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT?** If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0   Property Damage**

7.1   Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT?** If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS,** and telephone number of the seller, the date of sale, and the sale price.

7.2   Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS,** and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS,** and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3   Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS,** and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS,** and telephone number of the **PERSON** who paid for the repair.

**8.0   Loss of Income or Earning Capacity**

8.1   Do you attribute any loss of income or earning capacity to the **INCIDENT?** *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2   State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT;** and
(c) the date your employment began.

8.3   State the last date before the **INCIDENT** that you worked for compensation.

8.4   State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5   State the date you returned to work at each place of employment following the **INCIDENT.**

8.6   State the dates you did not work and for which you lost income as a result of the **INCIDENT.**

8.7   State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8   Will you lose income in the future as a result of the **INCIDENT?** If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

DISC-001

## 9.0 Other Damages

☐ 9.1  Are there any other damages that you attribute to the **INCIDENT?** If so, for each item of damage state:
(a)  the nature;
(b)  the date it occurred;
(c)  the amount; and
(d)  the name, **ADDRESS,** and telephone number of each **PERSON** to whom an obligation was incurred.

☐ 9.2  Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

## 10.0  Medical History

☐ 10.1  At any time before the **INCIDENT** did you have complaints or injuries that involved the same part of your body claimed to have been injured in the **INCIDENT?** If so, for each state:

(a)  a description of the complaint or injury;
(b)  the dates it began and ended; and
(c)  the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** whom you consulted or who examined or treated you.

☐ 10.2  List all physical, mental, and emotional disabilities you had immediately before the **INCIDENT.** *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

☐ 10.3  At any time after the **INCIDENT,** did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:

(a)  the date and the place it occurred;
(b)  the name, **ADDRESS,** and telephone number of any other **PERSON** involved;
(c)  the nature of any injuries you sustained;
(d)  the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER** who you consulted or who examined or treated you; and
(e)  the nature of the treatment and its duration.

## 11.0  Other Claims and Previous Claims

☐ 11.1  Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:

(a)  the date, time, and place and location (closest street **ADDRESS** or intersection) of the **INCIDENT** giving rise to the action, claim, or demand;
(b)  the name, **ADDRESS,** and telephone number of each **PERSON** against whom the claim or demand was made or the action filed;

(c)  the court, names of the parties, and case number of any action filed;
(d)  the name, **ADDRESS,** and telephone number of any attorney representing you;
(e)  whether the claim or action has been resolved or is pending; and
(f)  a description of the injury.

☐ 11.2  In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:

(a)  the date, time, and place of the **INCIDENT** giving rise to the claim;
(b)  the name, **ADDRESS,** and telephone number of your employer at the time of the injury;
(c)  the name, **ADDRESS,** and telephone number of the workers' compensation insurer and the claim number;
(d)  the period of time during which you received workers' compensation benefits;
(e)  a description of the injury;
(f)  the name, **ADDRESS,** and telephone number of any **HEALTH CARE PROVIDER** who provided services; and
(g)  the case number at the Workers' Compensation Appeals Board.

## 12.0  Investigation—General

☐ 12.1  State the name, **ADDRESS,** and telephone number of each individual:

(a)  who witnessed the **INCIDENT** or the events occurring immediately before or after the **INCIDENT;**
(b)  who made any statement at the scene of the **INCIDENT;**
(c)  who heard any statements made about the **INCIDENT** by any individual at the scene; and
(d)  who **YOU OR ANYONE ACTING ON YOUR BEHALF** claim have knowledge of the **INCIDENT** (except for expert witnesses covered by Code of Civil Procedure section 2034).

☐ 12.2  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **INCIDENT?** If so, for each individual state:

(a)  the name, **ADDRESS,** and telephone number of the individual interviewed;
(b)  the date of the interview; and
(c)  the name, **ADDRESS,** and telephone number of the **PERSON** who conducted the interview.

☐ 12.3  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **INCIDENT?** If so, for each statement state:

(a)  the name, **ADDRESS,** and telephone number of the individual from whom the statement was obtained;
(b)  the name, **ADDRESS,** and telephone number of the individual who obtained the statement;
(c)  the date the statement was obtained; and
(d)  the name, **ADDRESS,** and telephone number of each **PERSON** who has the original statement or a copy.

DISC-001

**12.4  Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;

(b) the places, objects, or persons photographed, filmed, or videotaped;

(c) the date the photographs, films, or videotapes were taken;

(d) the name, **ADDRESS,** and telephone number of the individual taking the photographs, films, or videotapes; and

(e) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

**12.5  Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) concerning the **INCIDENT**? If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);

(b) the subject matter; and

(c) the name, **ADDRESS,** and telephone number of each **PERSON** who has it.

**12.6  Was a report made by any PERSON** concerning the **INCIDENT**? If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;

(b) the date and type of report made;

(c) the name, **ADDRESS,** and telephone number of the **PERSON** for whom the report was made; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of the report.

**12.7  Have YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**? If so, for each inspection state:

(a) the name, **ADDRESS,** and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and

(b) the date of the inspection.

**13.0  Investigation—Surveillance**

**13.1  Have YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS,** and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, **ADDRESS,** and telephone number of the individual who conducted the surveillance; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

**13.2** Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, **ADDRESS,** and telephone number of the individual who prepared the report; and

(d) the name, **ADDRESS,** and telephone number of each **PERSON** who has the original or a copy.

**14.0  Statutory or Regulatory Violations**

**14.1  Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**? If so, identify the name, **ADDRESS,** and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

**14.2**  Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:

(a) the name, **ADDRESS,** and telephone number of the **PERSON;**

(b) the statute, ordinance, or regulation allegedly violated;

(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and

(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0  Denials and Special or Affirmative Defenses**

[✓] **15.1**  Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**16.0  Defendant's Contentions—Personal Injury**

**16.1**  Do you contend that any **PERSON,** other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON:**

(a) state the name, **ADDRESS,** and telephone number of the **PERSON;**

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**16.2**  Do you contend that plaintiff was not injured in the **INCIDENT**? If so:

(a) state all facts upon which you base your contention;

(b) state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

DISC-001

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the **INCIDENT**? If so, for each injury:

(a)  identify it;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.4  Do you contend that any of the services furnished by any **HEALTH CARE PROVIDER** claimed by plaintiff in discovery proceedings thus far in this case were not due to the **INCIDENT**? If so:

(a)  identify each service;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.5  Do you contend that any of the costs of services furnished by any **HEALTH CARE PROVIDER** claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a)  identify each cost;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the **INCIDENT**? If so:

(a)  identify each part of the loss;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the **INCIDENT**? If so:

(a)  identify each item of property damage;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a)  identify each cost item;
(b)  state all facts upon which you base your contention;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of the facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.9  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the **INCIDENT** by a plaintiff in this case? If so, for each plaintiff state:

(a)  the source of each **DOCUMENT**;
(b)  the date each claim arose; and
(c)  the nature of each claim; and
(d)  the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT**.

16.10  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** have any **DOCUMENT** concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a **HEALTH CARE PROVIDER** not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a)  the name, **ADDRESS,** and telephone number of each **HEALTH CARE PROVIDER;**
(b)  a description of each **DOCUMENT**; and
(c)  the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT.**

**17.0 Responses to Request for Admissions**

17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a)  state the number of the request;
(b)  state all facts upon which you base your response;
(c)  state the names, **ADDRESSES,** and telephone numbers of all **PERSONS** who have knowledge of those facts; and
(d)  identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS,** and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**18.0**  *[Reserved]*

**19.0**  *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the **INCIDENT** (closest street **ADDRESS** or intersection).

20.2  For each vehicle involved in the **INCIDENT,** state:

(a)  the year, make, model, and license number;
(b)  the name, ADDRESS, and telephone number of the driver;

DISC-001

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

☐ 20.6 Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:
(a) your location when you first saw it;
(b) the color;
(c) the number of seconds it had been that color; and
(d) whether the color changed between the time you first saw it and the **INCIDENT**.

☐ 20.8 State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:
(a) just before the **INCIDENT**;
(b) at the time of the **INCIDENT**; and (c) just
after the **INCIDENT**.

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and
(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**? If so:
(a) identify the vehicle;
(b) identify each malfunction or defect;
(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ 20.11 State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

☑ 50.1 For each agreement alleged in the pleadings:
(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;
(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;
(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;
(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

☑ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☑ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☑ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☑ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☑ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

## PROOF OF SERVICE

I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas, California 92024.

On January 2, 2008, I served the following documents:

**PLAINTIFF'S SPECIAL INTERROGATORIES, SET NO. ONE**
**PLAINTIFF'S FORM INTERROGATORIES, SET NO. ONE**

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Jeffrey M. Shohet
Julie L. Hussey
Carrie S. Dolton
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Facsimile: (619) 764-6644

*Attorneys for Time Warner Entertainment-Advance NewHouse Partnership, A New York General Partnership, Through its San Diego Division d.b.a. Time Warner Cable*

X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California 92024, following ordinary business practices. I am familiar with the practice of collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal service the same day as it is placed for collection.

(BY FACSIMILE) I transmitted the above-listed document to the party listed above via facsimile. The transmission was reported complete and without error. The telephone number of the facsimile machine I used was (760) 274-6438.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Encinitas, California on January 2, 2008.

Barron E. Ramos

1

CASE NO. GIC 881621
PROOF OF SERVICE

# EXHIBIT B

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Phone (858) 349-6019
4  Fax (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888
9
   Attorneys for plaintiff and the Class
10
                  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11
                             **COUNTY OF SAN DIEGO**
12
   LEON ALPERT, an individual,           ) Case No. GIC 881621
13 on behalf of himself, on behalf of all those)
   similarly situated, and on behalf of the general) **CLASS ACTION**
14 public,                                )
                                          ) **PLAINTIFF'S SPECIAL**
15         Plaintiffs,                     ) **INTERROGATORIES, SET NO. ONE**
   v.                                     )
16                                        )
   TIME WARNER CABLE, INC., a Delaware) Dept: 63
17 corporation, and DOES 1 TO 100,       ) Judge: Hon. Luis R. Vargas
                                          )
18         Defendants.                     ) Trial Date: None Set
                                          ) Case Filed: March 13, 2007
19                                        )
                                          )
20                                        )
                                          )
21                                        )
                                          )
22 _____)

23

24

25 PROPOUNDING PARTY:                        PLAINTIFF LEON ALPERT

26 RESPONDING PARTY:                         TIME WARNER CABLE, INC.

27 NO:                                       ONE

28                                    1

1      Plaintiff Leon Alpert requests that defendant Time Warner answer each of the following

2  interrogatories, under oath, fully and separately within thirty (30) days pursuant to the provisions of

3  Section 2030 of the California Code of Civil Procedure.

4  **SPECIAL INTERROGATORIES**

5      1. During the CLASS PERIOD (The term "CLASS PERIOD" shall refer to the time period

6  beginning March 13, 2003 and ending March 13, 2007), for how many RESIDENTS (The term

7  "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD that were part of a

8  homeowners' association (HOA) in California with whom YOU had entered into a "Residential

9  Bulk Services Agreement" to provide basic cable services to the HOA members) did YOU (The

10 term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent company, if

11 any, and all subsidiaries of such parent, the employees, agents, officers, directors and

12 representatives of all of these entities, and all other persons or entities acting on behalf or under the

13 control of these entities) provide service in the State of California?

14     2. During the entire CLASS PERIOD, did YOU provide RESIDENTS pricing for services

15 that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable

16 services through their HOA (hereinafter "RESIDENT Pricing")?

17     3. If during the entire CLASS PERIOD YOU did not provide RESIDENT Pricing for

18 services that reflected the fact that RESIDENTS were already paying for basic and/or expanded

19 cable services through their HOA, why not?

20     4. If YOU provided RESIDENT Pricing for services that reflected the fact that

21 RESIDENTS were already paying for basic and/or expanded cable services through their HOA for

22 a portion of the CLASS PERIOD, please identify the dates that YOU provided such pricing.

23     5. During the CLASS PERIOD, if YOU published RESIDENT Pricing on the Internet just

24 as you published retail pricing, please identify the specific URLs where such pricing appeared.

25     6. If during the CLASS PERIOD YOU did not publish RESIDENT Pricing on the Internet

26 just as you published retail pricing, why not?

27     7. During the CLASS PERIOD, did YOU make RESIDENT Pricing known to

28 2

1    RESIDENTS?

2        8. If during the CLASS PERIOD YOU made RESIDENT Pricing known to RESIDENTS,

3    how did YOU do so?

4        9. Do YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

5    requests a specific bundle?

6        10. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

7    requests a specific bundle, please state all facts that support that contention.

8        11. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

9    requests a specific bundle, please identify all witnesses that support that contention.

10        12. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

11    requests a specific bundle, please identify all documents that support that contention.

12        13. Please identify the customer service representative whose recorded conversation with

13    plaintiff Alpert (which Time Warner has misplaced/destroyed) resulted in Alpert being placed in an

14    HOA bundle in the fall of 2006.

15        14. Did plaintiff Alpert have bundled services before he had the conversation with YOUR

16    customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

17    2006?

18        15. If plaintiff Alpert had bundled services before he had the conversation with YOUR

19    customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

20    2006, please identify each and every bundle he already had in place at the time that conversation

21    occurred.

22        16. If plaintiff Alpert had bundled services before he had the conversation with YOUR

23    customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

24    2006, for each bundle Alpert had at that time, please state whether Alpert had specifically

25    requested that particular bundle or whether YOU had bundled Alpert.

26        17. Do YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

27    the conversation with YOUR customer service representative that resulted in Alpert being placed

28

3