1    in an HOA bundle in the fall of 2006?

2          18.  If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

3    conversation with YOUR customer service representative that resulted in Alpert being placed in an

4    HOA bundle in the fall of 2006, please state all facts that support that contention.

5          19.  If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

6    conversation with YOUR customer service representative that resulted in Alpert being placed in an

7    HOA bundle in the fall of 2006, please identify all documents that support that contention.

8          20.  If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

9    conversation with YOUR customer service representative that resulted in Alpert being placed in an

10   HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

11         21.  Why did YOU destroy the audio recording of the conversation with YOUR customer

12   service representative that resulted in Alpert being placed in an HOA bundle in the fall of 2006?

13         22.  Do YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

14   conversation with YOUR customer service representative that resulted in Alpert being placed in an

15   HOA bundle in the fall of 2006?

16         23.  If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

17   conversation with YOUR customer service representative that resulted in Alpert being placed in an

18   HOA bundle in the fall of 2006, please state all facts that support that contention

19         24.  If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

20   conversation with YOUR customer service representative that resulted in Alpert being placed in an

21   HOA bundle in the fall of 2006, please identify all documents which support that contention.

22         25.  If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

23   conversation with YOUR customer service representative that resulted in Alpert being placed in an

24   HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

25         26.  When did YOU begin offering HOA bundles in California?

26         27.  When did YOU begin offering retail bundles in California? .

27         28.  With how many HOAs in the State of California did YOU have a contract to provide

28

· 4

1    services during the CLASS PERIOD?

2         29. Did YOU automatically bundle services when RESIDENTS called to request additional

3    services during the CLASS PERIOD?

4         30. Do YOU contend that the class in this case should not be certified?

5         31. If YOU contend that the class in this case should not be certified, please state all facts

6    upon which YOU base that contention.

7         32. If YOU contend that the class in this case should not be certified, please identify all

8    documents which support that contention.

9         33. If YOU contend that the class in this case should not be certified, please identify all

10   witnesses who support that contention.

11

12   Dated: January 2, 2008

                                              Barron E. Ramos
13                                            Attorneys for plaintiffs and the class

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA  92101-4297
4   Tel:  619.699.2700
    Fax:  619.699.2701
5
    Attorneys for Defendant
6   TIME WARNER ENTERTAINMENT-ADVANCE/
    NEWHOUSE PARTNERSHIP, A NEW YORK
7   GENERAL PARTNERSHIP, THROUGH ITS SAN
    DIEGO DIVISION, DBA TIME WARNER CABLE
8

9            SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

10                           CENTRAL DIVISION

11

12   LEON ALPERT, an individual, on behalf        CASE NO.  GIC881621
     of himself, on behalf of all those similarly
13   situated, and on behalf of the general       **TIME WARNER ENTERTAINMENT-**
     public,                                      **ADVANCE / NEWHOUSE PARTNERSHIP,**
14                                                 **A NEW YORK GENERAL PARTNERSHIP,**
                  Plaintiff,                       **THROUGH ITS SAN DIEGO DIVISION,**
15                                                 **DBA TIME WARNER CABLE'S**
            v.                                     **RESPONSES TO FORM**
16                                                 **INTERROGATORIES (SET ONE)**
     TIME WARNER CABLE, INC., a                    **PROPOUNDED BY PLAINTIFF LEON**
17   Delaware corporation, and DOES 1 TO          **ALPERT**
     100,
18                                                 Dept:   63
                  Defendants.                      Judge:  Luis R. Vargas
19

20

21

22

23

24

25

26

27

28

1   **PROPOUNDING PARTY: Plaintiff Leon Alpert**

2   **RESPONDING PARTY:**   **Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York General Partnership, through its San**

3   **Diego Division, dba Time Warner Cable**

4   **SET NUMBER:**   **ONE**

5   Pursuant to Code of Civil Procedure section 2030.210, *et seq.*, Defendant Time Warner

6   Entertainment-Advance/Newhouse Partnership, a New York General Partnership, through its San

7   Diego Division dba Time Warner Cable ("TWC—SAN DIEGO/DESERT CITIES") responds to

8   Plaintiff Leon Alpert's ("Plaintiff") first set of form interrogatories as follows:

9                       **GENERAL OBJECTIONS**

10     1.    The following responses are given without prejudice to TWC—SAN DIEGO/DESERT

11   CITIES' right to produce evidence of any subsequently discovered fact or facts that TWC—SAN

12   DIEGO/DESERT CITIES may later develop. The responses contained herein are made in a good

13   faith effort to supply as much factual information as is presently known, but should in no way lead

14   to the prejudice of TWC—SAN DIEGO/DESERT CITIES in relation to further discovery,

15   research or analysis.

16     2.    TWC—SAN DIEGO/DESERT CITIES objects to Plaintiff's purported definition of the

17   terms "YOU," and "YOUR" on the ground that it renders each interrogatory including these terms

18   to be vague and ambiguous, as well as overly broad. The definition is so overbroad that it appears

19   to call for information from literally hundreds of different corporate entities and their privileged

20   communications with their counsel. TWC—SAN DIEGO/DESERT CITIES shall construe the

21   terms "YOU," and "YOUR," when used in the interrogatories, to mean Time Warner

22   Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San

23   Diego Division ("TWC—SAN DIEGO/DESERT CITIES"), which operates in the San Diego and

24   Desert Cities areas, dba Time Warner Cable and no other person or entity.

25     3.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories, including the

26   definitions therein, to the extent that they purport to impose on TWC—SAN DIEGO/DESERT

27   CITIES obligations beyond those imposed by the California Code of Civil Procedure.

28   /////

1       4.      TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

2   and to the extent that they seek the disclosure of information that is not material or relevant to any

3   cause of action asserted by Plaintiff, or any defense TWC—SAN DIEGO/DESERT CITIES may

4   assert, and are not likely to lead to the discovery of admissible evidence.

5       5.      TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

6   and to the extent that they seek information that is equally available to Plaintiff.

7       6.      TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

8   and to the extent that they fail to specify a time period and are overbroad.

9       7.      TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories to the extent

10  that they may require disclosure of information that is protected by the attorney-client privilege,

11  the work product doctrine, or any other applicable privilege. TWC—SAN DIEGO/DESERT

12  CITIES hereby claims such privileges and protections to the extent implicated by each

13  interrogatory. Any disclosure of privileged or protected information is inadvertent and is not

14  intended to waive those privileges or protections.

15      8.      TWC—SAN DIEGO/DESERT CITIES objects to each and every interrogatory to the

16  extent it seeks TWC—SAN DIEGO/DESERT CITIES' private, confidential, trade secret, and/or

17  proprietary information.

18      9.      TWC—SAN DIEGO/DESERT CITIES' responses to these interrogatories are not

19  intended to waive or prejudice any objections TWC—SAN DIEGO/DESERT CITIES may assert

20  now or in the future, including objections as to the admissibility at trial of any of the documents

21  identified in response to the interrogatories.

22      10.     TWC—SAN DIEGO/DESERT CITIES reserves the right to supplement and/or amend

23  in any way any of its specific or general objections or responses to any or all of Plaintiff's

24  interrogatories.

25      These foregoing General Objections are incorporated into each and every one of TWC—

26  SAN DIEGO/DESERT CITIES' responses below.

27  /////

28  /////

## FORM INTERROGATORIES

**INTERROGATORY NO. 1.1:**

State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**RESPONSE TO INTERROGATORY NO. 1.1:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to the extent that it seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, an individual's right to privacy, and/or any other privilege or similar protection. TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds and to the extent it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Jeffrey Shohet, Esq., Julie Hussey, Esq., Ryan Hansen, Esq. and Jillian Proctor, Esq. of DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, CA 92101, (619) 699-2700, Attorneys for TWC—SAN DIEGO/DESERT CITIES; Craig Goldberg, Esq., Time Warner Cable, Mr. Goldberg can be contacted through TWC—SAN DIEGO/DESERT CITIES' counsel.

**INTERROGATORY NO. 3.1:**

Are you a corporation? If so, state:

    (a)    the name stated in the current articles of incorporation;

    (b)    all other names used by the corporation during the past 10 years and the dates each was used;

    (c)    the date and place of incorporation;

    (d)    the **ADDRESS** of the principal place of business; and

    (e)    whether you are qualified to do business in California.

**RESPONSE TO INTERROGATORY NO. 3.1:**

No.

/////

**INTERROGATORY NO. 3.2:**

Are you a partnership? If so, state:

(a)    the current partnership name;

(b)    all other names used by the partnership during the past 10 years and the dates each was used;

(c)    whether you are a limited partnership and, if so, under the laws of what jurisdiction;

(d)    the name and **ADDRESS** of each general partner; and

(e)    the **ADDRESS** of the principal place of business.

**RESPONSE TO INTERROGATORY NO. 3.2:**

TWC—SAN DIEGO/DESERT CITIES is the San Diego Division of Time Warner Entertainment-Advance/Newhouse Partnership, a New York General Partnership. TWC—SAN DIEGO/DESERT CITIES responds to this Interrogatory with information regarding Time Warner Entertainment-Advance/Newhouse Partnership, a New York General Partnership.

(a)    Time Warner Entertainment-Advance/Newhouse Partnership.

(b)    TWC—SAN DIEGO/DESERT CITIES objects to the extent this Interrogatory seeks the names used by entities and/or divisions of Time Warner Entertainment-Advance/Newhouse Partnership other than TWC—SAN DIEGO/DESERT CITIES on the ground that such information is irrelevant and not likely to lead to the discovery of admissible information as it has no bearing on the claims or facts at issue. TWC—SAN DIEGO/DESERT CITIES has used the following names: American Cablevision of Coronado, May 17, 1995 to current; Southwestern Cable TV, May 17, 1995 to current; Time Warner Entertainment-Advance/Newhouse Partnership, November 14, 2006 to current; Time Warner Cable, November 14, 2006 to current.

(c)    No.

(d)    TWE-A/N Holdco, L.P.; Time Warner NY Cable LLC; Advance/Newhouse Partnership. TWC—SAN DIEGO/DESERT CITIES objects to the extent this Interrogatory seeks the address of each general partner on the ground that such information is irrelevant and not likely

1  to lead to the discovery of admissible information as it has no bearing on the claims or facts at

2  issue.

3          (e)     New York, New York.

4  **INTERROGATORY NO. 3.3:**

5          Are you a limited liability company?  If so, state:

6          (a)     the name stated in the current articles of organization;

7          (b)     all other names used by the company during the past 10 years and the date each

8  was used;

9          (c)     the date and place of filing of the articles of organization;

10          (d)     the **ADDRESS** of the principal place of business; and

11          (e)     whether you are qualified to do business in California.

12  **RESPONSE TO INTERROGATORY NO. 3.3:**

13          No.

14  **INTERROGATORY NO. 3.4:**

15          Are you a joint venture?  If so, state:

16          (a)     the current joint venture name;

17          (b)     all other names used by the joint venture during the past 10 years and the dates

18  each was used;

19          (c)     the name and **ADDRESS** of each joint venturer; and

20          (d)     the **ADDRESS** of the principal place of business.

21  **RESPONSE TO INTERROGATORY NO. 3.4:**

22          No.

23  **INTERROGATORY NO. 3.5:**

24          Are you an unincorporated association?  If so, state:

25          (a)     the current unincorporated association name;

26          (b)     all other names used by the unincorporated association during the past 10 years

27  and the dates each was used; and

28          (c)     the **ADDRESS** of the principal place of business.

1   **RESPONSE TO INTERROGATORY NO. 3.5:**

2      No.

3   **INTERROGATORY NO. 3.6:**

4      Have you done business under a fictitious name during the past 10 years? If so, for each

5   fictitious name state:

6      (a)     the name;

7      (b)     the dates each was used;

8      (c)     the state and county of each fictitious name filing; and

9      (d)     the **ADDRESS** of the principal place of business.

10   **RESPONSE TO INTERROGATORY NO. 3.6:**

11      Yes.

12      (a)     See response to Interrogatory No. 3.2(b), which is incorporated herein by

13   reference.

14      (b)     See response to Interrogatory No. 3.2(b), which is incorporated herein by

15   reference.

16      (c)     See response to Interrogatory No. 3.2(b), which is incorporated herein by

17   reference.

18      (d)     290 Harbor Drive, Stamford, CT 06902 - from 1998 to April 2007; One Time

19   Warner Center, North Tower, 17th Floor, New York, NY 10019 - from April 2007 to present.

20   **INTERROGATORY NO. 3.7:**

21      Within the past five years has any public entity registered or licensed your business? If

22   so, for each license or registration:

23      (a)     identify the license or registration;

24      (b)     state the name of the public entity; and

25      (c)     state the dates of issuance and expiration.

26   **RESPONSE TO INTERROGATORY NO. 3.7:**

27      In addition to the General Objections set forth above, which are incorporated by reference

28   herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory, and each of its

1  subparts, on the grounds that it is overbroad, overly burdensome and oppressive. TWC—SAN

2  DIEGO/DESERT CITIES further objects to this Interrogatory, and each of its subparts, on the

3  grounds that it seeks information that is irrelevant and not likely to lead to the discovery of

4  admissible evidence given the context of this lawsuit. Subject to and without waiving the above

5  objections, TWC—SAN DIEGO/DESERT CITIES responds as follows:

6         TWC—SAN DIEGO/DESERT CITIES is a cable operator. Under federal law, local

7  municipalities and state governments have the right to enter into franchise agreements with

8  TWC—SAN DIEGO/DESERT CITIES. TWC—SAN DIEGO/DESERT CITIES has an

9  appropriate franchise to do business in every area in which it offers services throughout the San

10  Diego and Desert Cities areas. It is also registered with the FCC. Some of Time Warner Cable's

11  franchises are owned by CAC Exchange I, LLC and Time Warner NY Cable LLC, its residential

12  Digital Phone business is provided by TWC Digital Phone LLC and its commercial and

13  wholesale telecommunications services are provided by Time Warner Cable Information Services

14  (California), LLC. Like all LLCs, these entities register with the various Secretaries of State

15  where they do business. The d/b/a of Time Warner Cable is registered with state and county

16  offices throughout the United States. Time Warner Cable Information Services (California), LLC

17  is also licensed by the CA Public Utilities Commission and registered with the FCC.

18  **INTERROGATORY NO. 4.1:**

19         At the time of the **INCIDENT**, was there in effect any policy of insurance through which

20  you were or might be insured in any manner (for example, primary, pro-rata, or excess liability

21  coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of

22  the **INCIDENT**? If so, for each policy state:

23         (a)    the kind of coverage;

24         (b)    the name and **ADDRESS** of the insurance company;

25         (c)    the name, **ADDRESS**, and telephone number of each named insured;

26         (d)    the policy number;

27         (e)    the limits of coverage for each type of coverage contained in the policy;

28  /////

1      (f)     whether any reservation of rights or controversy or coverage dispute exists

2  between you and the insurance company; and

3      (g)     the name, **ADDRESS**, and telephone number of the custodian of the policy.

4  **RESPONSE TO INTERROGATORY NO. 4.1:**

5      In addition to the General Objections set forth above, which are incorporated by reference

6  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory, and each of its

7  subparts, on the grounds and to the extent that it seeks information that is confidential and/or

8  protected from disclosure by the privacy rights of TWC—SAN DIEGO/DESERT CITIES and/or

9  third parties. Finally, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory, and

10  each of its subparts, on the grounds that it seeks information that is irrelevant and not likely to

11  lead to the discovery of admissible evidence given the context of this lawsuit.

12      Subject to and without waiving the above objections, TWC—SAN DIEGO/DESERT

13  CITIES responds as follows:  Yes.

14      (a)     Liability;

15      (b)     ACE American Insurance Company

16      (c)     TWC—SAN DIEGO/DESERT CITIES is insured under the policy

17      (d)     HDO G2 1733647

18      (e)     $3 million

19      (f)     That issue has not yet been determined as it relates to this litigation.

20      (g)     Steve Reisner. Mr. Reisner can be contacted through TWC—SAN

21  DIEGO/DESERT CITIES' counsel.

22      * * * * *

23      (a)     Errors & Omissions;

24      (b)     National Union, AIG Technical Services

25      (c)     TWC—SAN DIEGO/DESERT CITIES is insured under the policy

26      (d)     673-86-69

27      (e)     $150 million

28      (f)     That issue has not yet been determined as it relates to this litigation.

1    (g)    Steve Reisner.  Mr. Reisner can be contacted through TWC—SAN

2 DIEGO/DESERT CITIES' counsel.

3 **INTERROGATORY NO. 4.2:**

4    Are you self-insured under any statute for the damages, claims, or actions that have arisen

5 out of the **INCIDENT**?  If so, specify the statute.

6 **RESPONSE TO INTERROGATORY NO. 4.2:**

7    In addition to the General Objections set forth above, which are incorporated by reference

8 herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

9 the extent that it seeks information that is confidential and/or protected from disclosure by the

10 privacy rights of TWC—SAN DIEGO/DESERT CITIES and/or third parties.  Finally, TWC—

11 SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to the extent that

12 it seeks information that is irrelevant and not likely to lead to the discovery of admissible

13 evidence given the context of this lawsuit.

14    Subject to and without waiving the above objections, TWC—SAN DIEGO/DESERT

15 CITIES responds as follows:  TWC—SAN DIEGO/DESERT CITIES is not aware of any statutes

16 requiring self-insurance for the purported damages, claims, and actions alleged by Plaintiff in this

17 lawsuit.

18 **INTERROGATORY NO. 15.1:**

19    Identify each denial of a material allegation and each special or affirmative defense in

20 your pleadings and for each:

21    (a)    state all facts upon which you base the denial or special or affirmative defense;

22    (b)    state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who

23 have knowledge of those facts; and

24    (c)    identify all **DOCUMENTS** and other tangible things that support your denial or

25 special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the

26 **PERSON** who has each **DOCUMENT**.

27 /////

28 /////

**RESPONSE TO INTERROGATORY NO. 15.1:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory, and each of its subparts, on the grounds and to the extent that it is premature, overly broad, burdensome and oppressive, and seeks information that is protected by the attorney-client privilege, the attorney work product doctrine, an individual's right to privacy, and/or any other privilege or similar protection. TWC—SAN DIEGO/DESERT CITIES also objects to this Interrogatory, and each of its subparts, on the grounds and to the extent that it seeks the premature disclosure of expert witness opinions and information and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections or the General Objections set forth above, TWC—SAN DIEGO/DESERT CITIES responds as follows:

**Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated section 1770(a)(3) of the Consumer Legal Remedies Act ("CLRA").**

(a)    Plaintiff was not entitled to any particular rates for cable services other than basic cable (hereafter "Additional Services"). TWC—SAN DIEGO/DESERT CITIES had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services. Plaintiff knew and understood that his homeowners' association (hereafter the "HOA" or "HOA") paid TWC—SAN DIEGO/DESERT CITIES for the basic cable he received from TWC—SAN DIEGO/DESERT CITIES. TWC—SAN DIEGO/DESERT CITIES had no duty to inform Plaintiff that the HOA was paying TWC—SAN DIEGO/DESERT CITIES for his basic cable. TWC—SAN DIEGO/DESERT CITIES did not charge or collect money from Plaintiff for basic cable. TWC—SAN DIEGO/DESERT CITIES correctly charged Plaintiff for the Additional Services he ordered.

(b)    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—SAN DIEGO/DESERT CITIES.

(c)    Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

1  this litigation and is, presumably, in Plaintiff's possession. Transcript of Plaintiff's deposition,

2  which is also in Plaintiff's possession or equally available to Plaintiff.

3      **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated section**

4  **1770(a)(13) of the Consumer Legal Remedies Act ("CLRA").**

5      (a)    Plaintiff was charged the correct price by TWC—SAN DIEGO/DESERT CITIES

6  both when he ordered Additional Services a la carte, and when he later ordered a bundled package

7  for a lower price. Plaintiff's bill for Additional Services was reduced because he changed his

8  services and ordered a bundled package rather than a host of individual services. Plaintiff

9  testified at deposition that he was familiar with TWC—SAN DIEGO/DESERT CITIES

10  advertising relating to bundled packages and knew that customers ordering bundled services

11  received a discount vis-à-vis ordering the same services a la carte. Plaintiff testified at deposition

12  that he changed his Additional Services to a bundled package in order to get a better price.

13      (b)    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

14  SAN DIEGO/DESERT CITIES.

15      (c)    Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

16  CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

17  this litigation and is, presumably, in Plaintiff's possession. Time Warner Cable Residential

18  Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

19  ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

20  in this litigation and is, presumably, in Plaintiff's possession. Bills from TWC—SAN

21  DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

22  Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

23  litigation and are, presumably, in Plaintiff's possession. Transcript of Plaintiff's deposition,

24  which is also in Plaintiff's possession or equally available to Plaintiff.

25      **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated section**

26  **1770(a)(19) of the Consumer Legal Remedies Act ("CLRA").**

27      (a)    The billing provision at issue provides: "I agree that it is my responsibility to

28  report TWC—SAN DIEGO/DESERT CITIES billing errors within 30 days from receipt of the

1    bill so that service levels and all payments can be verified. If not reported within 30 days, the

2    errors are waived." Each TWC—SAN DIEGO/DESERT CITIES invoice also states the

3    following text directly below a capitalized and underlined title "ABOUT YOUR TIME

4    WARNER CABLE AGREEMENT": "Note: If you believe this statement contains a billing

5    error, we must hear from you within 30 days of receipt of the statement in question. If we are not

6    notified of the discrepancy the statement will be considered correct." TWC—SAN

7    DIEGO/DESERT CITIES' invoices use the same font size for the reminder regarding reporting

8    billing errors within thirty days as is used in the same area on the billing statement.

9         Plaintiff testified in his deposition that the bills he received for Additional Services were

10   correct both before and after he altered his services and ordered a bundled package. At

11   deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to

12   identify billing errors within thirty days by stating that "I don't think it's unreasonable to make

13   the complaint within 30 days. . . you know – that seems reasonable." Plaintiff had other means of

14   obtaining the entertainment provided by his ordering Additional Services from TWC—SAN

15   DIEGO/DESERT CITIES, such as renting movies, using a satellite service, using another

16   telephone provider, and using another internet provider. Plaintiff could have simply foregone

17   ordering Additional Services from TWC—SAN DIEGO/DESERT CITIES.

18        **(b)**    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

19   SAN DIEGO/DESERT CITIES.

20        **(c)**    Time Warner Cable Residential Services Subscriber Agreement between TWC—

21   SAN DIEGO/DESERT CITIES and Plaintiff ("Consumer Agreement"), which has been produced

22   by TWC—SAN DIEGO/DESERT CITIES in this litigation and is, presumably, in Plaintiff's

23   possession. Bills from TWC—SAN DIEGO/DESERT CITIES to Plaintiff for the Additional

24   Services he ordered under the Consumer Agreement, which have been produced by TWC—SAN

25   DIEGO/DESERT CITIES in this litigation and are, presumably, in Plaintiff's possession.

26   Transcript of Plaintiff's deposition, which is also in Plaintiff's possession or equally available to

27   Plaintiff.

28   /////

DLA PIPER US LLP
SAN DIEGO

SD\1778978.7

-13-

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO FORM
INTERROGATORIES (SET ONE)

1    **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated Business &**

2    **Professions Code section 17200 *et seq.* by breaching its agreement with the HOA.**

3        **(a)**    The contract between TWC—SAN DIEGO/DESERT CITIES and the HOA

4    provided that TWC—SAN DIEGO/DESERT CITIES would provide basic cable to HOA

5    residents. TWC—SAN DIEGO/DESERT CITIES provided basic cable services to HOA

6    residents. TWC—SAN DIEGO/DESERT CITIES charged the HOA for providing basic cable

7    services to HOA residents. The HOA paid TWC—SAN DIEGO/DESERT CITIES for providing

8    basic cable services to HOA residents. TWC—SAN DIEGO/DESERT CITIES has not billed or

9    collected money from Plaintiff or other HOA residents for their basic cable services. TWC—

10   SAN DIEGO/DESERT CITIES was not contractually bound to offer Additional Services to

11   Plaintiff at any particular prices.

12       **(b)**    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

13   SAN DIEGO/DESERT CITIES.

14       **(c)**    Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

15   CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

16   this litigation and is, presumably, in Plaintiff's possession. Bills from TWC—SAN

17   DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

18   Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

19   litigation and are, presumably, in Plaintiff's possession. Transcript of Plaintiff's deposition,

20   which is also in Plaintiff's possession or equally available to Plaintiff.

21   **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES overcharged**

22   **Plaintiff.**

23       **(a)**    TWC—SAN DIEGO/DESERT CITIES correctly billed Plaintiff for the Additional

24   Services he ordered from TWC—SAN DIEGO/DESERT CITIES both before and after he

25   changed such services to a bundled package. TWC—SAN DIEGO/DESERT CITIES' contract

26   with the HOA provides only for basic cable services to be provided to HOA residents and does

27   not contain, suggest, or require pricing for any Additional Services that may be ordered by

28   residents. TWC—SAN DIEGO/DESERT CITIES' pricing of Additional Services to Plaintiff,

1    both before and after he switched his programming to a bundled package, properly reflected the

2    services already provided under the Agreement between TWC—SAN DIEGO/DESERT CITIES

3    and the HOA because it did not charge Plaintiff for basic cable—the services provided per the

4    Agreement.

5        **(b)**    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

6    SAN DIEGO/DESERT CITIES.

7        **(c)**    Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

8    CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

9    this litigation and is, presumably, in Plaintiff's possession.  Time Warner Cable Residential

10   Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

11   ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

12   in this litigation and is, presumably, in Plaintiff's possession.  Bills from TWC—SAN

13   DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

14   Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

15   litigation and are, presumably, in Plaintiff's possession.  Transcript of Plaintiff's deposition,

16   which is also in Plaintiff's possession or equally available to Plaintiff.

17       **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated Business &**

18   **Professions Code section 17200 *et seq.*, by requiring thirty-day notification of billing errors**

19   **while failing to disclose HOA pricing that accounted for HOA payments.**

20       **(a)**    TWC—SAN DIEGO/DESERT CITIES requires customers to notify it of billing

21   errors within thirty days so that service levels and payments can be verified.  As part of the

22   Consumer Agreement under which Additional Services were provided by TWC—SAN

23   DIEGO/DESERT CITIES to Plaintiff, Plaintiff agreed that it was his responsibility to report

24   TWC—SAN DIEGO/DESERT CITIES billing errors within thirty days from the receipt of any

25   bill containing such errors, so that service levels and payments can be verified.  Plaintiff further

26   agreed to waive any errors that were not reported within thirty days of receipt.  Plaintiff's

27   monthly invoices from TWC—SAN DIEGO/DESERT CITIES for his Additional Services

28   included the following language under a heading titled "ABOUT YOUR TIME WARNER

1    CABLE AGREEMENT": "Note: If you believe this statement contains a billing error, we must

2    hear from you within 30 days of receipt of the statement in question. If we are not notified of the

3    discrepancy the statement will be considered correct." At deposition, Plaintiff responded to

4    questions regarding the reasonableness of asking customers to identify billing errors within thirty

5    days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you

6    know – that seems reasonable."

7          TWC—SAN DIEGO/DESERT CITIES correctly charged Plaintiff for the Additional

8    Services he ordered both before and after he changed his services to a bundled package. TWC—

9    SAN DIEGO/DESERT CITIES' contract with the HOA provides only for basic cable services to

10   be provided to HOA residents and does not contain, suggest, or require pricing for any Additional

11   Services that may be ordered by residents. TWC—SAN DIEGO/DESERT CITIES' pricing of

12   Additional Services to Plaintiff, both before and after he switched his programming to a bundled

13   package, properly reflected the services already provided under the Agreement between TWC—

14   SAN DIEGO/DESERT CITIES and the HOA because it did not charge Plaintiff for basic cable—

15   the services provided per the Agreement. TWC—SAN DIEGO/DESERT CITIES was under no

16   obligation to provide special pricing for Additional Services. TWC—SAN DIEGO/DESERT

17   CITIES was not obligated to notify Plaintiff of all potential packages and prices for its Additional

18   Services.

19         **(b)**     Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

20   SAN DIEGO/DESERT CITIES.

21         **(c)**     Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

22   CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

23   this litigation and is, presumably, in Plaintiff's possession. Time Warner Cable Residential

24   Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

25   ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

26   in this litigation and is, presumably, in Plaintiff's possession. Bills from TWC—SAN

27   DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

28   Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

1   litigation and are, presumably, in Plaintiff's possession.  Transcript of Plaintiff's deposition,

2   which is also in Plaintiff's possession or equally available to Plaintiff.

3           **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated Business &**

4   **Professions Code section 17200 *et seq.*, by concealing "HOA pricing" that accounted for**

5   **HOA payments to TWC—SAN DIEGO/DESERT CITIES.**

6          **(a)**  TWC—SAN DIEGO/DESERT CITIES correctly billed Plaintiff for the Additional

7   Services he ordered from TWC—SAN DIEGO/DESERT CITIES both before and after he

8   changed such services to a bundled package.  TWC—SAN DIEGO/DESERT CITIES' contract

9   with the HOA provides only for basic cable services to be provided to HOA residents and does

10  not contain, suggest, or require pricing for any Additional Services that may be ordered by

11  residents.  TWC—SAN DIEGO/DESERT CITIES' pricing of Additional Services to Plaintiff,

12  both before and after he switched his programming to a bundled package, properly reflected the

13  services already provided under the Agreement between TWC—SAN DIEGO/DESERT CITIES

14  and the HOA because it did not charge Plaintiff for basic cable—the services provided per the

15  Agreement.  Plaintiff knew and understood that the HOA paid TWC—SAN DIEGO/DESERT

16  CITIES for the basic cable he received from TWC—SAN DIEGO/DESERT CITIES.  The "HOA

17  Pricing" referred to by Plaintiff is merely the pricing of one bundle of Additional Services that,

18  until recently, was available to HOA residents who were willing to purchase all of the bundled

19  services.  Plaintiff could have asked TWC—SAN DIEGO/DESERT CITIES at any point if any

20  bundled options were available for his Additional Services.  TWC—SAN DIEGO/DESERT

21  CITIES was not contractually bound to offer Additional Services to Plaintiff at any particular

22  prices.  TWC—SAN DIEGO/DESERT CITIES was not obligated to notify Plaintiff of all

23  potential packages and prices for its Additional Services.

24         **(b)**  Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

25  SAN DIEGO/DESERT CITIES.

26         **(c)**  Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

27  CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

28  this litigation and is, presumably, in Plaintiff's possession.  Time Warner Cable Residential

1   Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

2   ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

3   in this litigation and is, presumably, in Plaintiff's possession.  Bills from TWC—SAN

4   DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

5   Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

6   litigation and are, presumably, in Plaintiff's possession.  Transcript of Plaintiff's deposition,

7   which is also in Plaintiff's possession or equally available to Plaintiff.

8        **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated Business &**

9   **Professions Code section 17200 *et seq.*, by misrepresenting its affiliation, connection, or**

10  **association with the HOA.**

11       (a)  Plaintiff was not entitled to any particular rates for Additional Services.  TWC—SAN

12  DIEGO/DESERT CITIES had no duty to inform Plaintiff of all its rates, packages, and

13  promotions for Additional Services.  Plaintiff knew and understood that the HOA paid TWC—

14  SAN DIEGO/DESERT CITIES for the basic cable he received from TWC—SAN

15  DIEGO/DESERT CITIES.  TWC—SAN DIEGO/DESERT CITIES had no duty to inform

16  Plaintiff that the HOA was paying TWC—SAN DIEGO/DESERT CITIES for his basic cable.

17  TWC—SAN DIEGO/DESERT CITIES did not charge Plaintiff for basic cable.  TWC—SAN

18  DIEGO/DESERT CITIES correctly charged Plaintiff for the Additional Services he ordered.

19       **(b)**  Plaintiff, Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

20  SAN DIEGO/DESERT CITIES.

21       **(c)**  Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

22  CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

23  this litigation and is, presumably, in Plaintiff's possession.  Time Warner Cable Residential

24  Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

25  ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

26  in this litigation and is, presumably, in Plaintiff's possession.  Bills from TWC—SAN

27  DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

28  Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

1    litigation and are, presumably, in Plaintiff's possession. Transcript of Plaintiff's deposition,

2    which is also in Plaintiff's possession or equally available to Plaintiff.

3    **Denial of allegation that TWC—SAN DIEGO/DESERT CITIES violated Business &**

4    **Professions Code section 17200 *et seq.*, by misrepresenting the reason for the decrease in**

5    **Plaintiff's bill for Additional Services after he changed his services to a bundled package.**

6    (a) Plaintiff was charged the correct price by TWC—SAN DIEGO/DESERT CITIES

7    both when he ordered Additional Services a la carte, and when he later ordered a bundled package

8    for a lower price. Plaintiff's bill for Additional Services was reduced was because he changed his

9    services and ordered a bundled package rather than a host of individual services. Plaintiff

10   testified at deposition that he was familiar with TWC—SAN DIEGO/DESERT CITIES

11   advertising relating to bundled packages and knew that customers ordering bundled services

12   received a discount vis-à-vis ordering the same services a la carte. Plaintiff testified at deposition

13   that he changed his Additional Services to a bundled package in order to get a better price.

14   (b)    Plaintiff; Terri Rhodes, Ms. Rhodes can be contacted through counsel for TWC—

15   SAN DIEGO/DESERT CITIES.

16   (c)    Residential Bulk Services Agreement between TWC—SAN DIEGO/DESERT

17   CITIES and the HOA, which has been produced by TWC—SAN DIEGO/DESERT CITIES in

18   this litigation and is, presumably, in Plaintiff's possession. Time Warner Cable Residential

19   Services Subscriber Agreement between TWC—SAN DIEGO/DESERT CITIES and Plaintiff

20   ("Consumer Agreement"), which has been produced by TWC—SAN DIEGO/DESERT CITIES

21   in this litigation and is, presumably, in Plaintiff's possession. Bills from TWC—SAN

22   DIEGO/DESERT CITIES to Plaintiff for the Additional Services he ordered under the Consumer

23   Agreement, which have been produced by TWC—SAN DIEGO/DESERT CITIES in this

24   litigation and are, presumably, in Plaintiff's possession. Transcript of Plaintiff's deposition,

25   which is also in Plaintiff's possession or equally available to Plaintiff.

26   **First Affirmative Defense for Failure to State a Claim.**

27   (a)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the facts

28   identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of allegations.

1   Additionally, Plaintiff has suffered no damage or loss of property as a result of the purported

2   actions in his First Amended Complaint because he has received exactly what he paid for.

3   Plaintiff cannot prove a likelihood that the public would be misled by any of TWC—SAN

4   DIEGO/DESERT CITIES' purported conduct.

5        (b)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

6   witnesses identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

7   allegations.

8        (c)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

9   documents identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

10   allegations.

11       **Second Affirmative Defense—Ninth Affirmative Defense.**

12        (a)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the facts

13   identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of allegations.

14   Additionally, TWC—SAN DIEGO/DESERT CITIES complied with the law in performing under

15   its contracts with the HOA and Plaintiff and in charging Plaintiff for the Additional Services he

16   ordered.

17        (b)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

18   witnesses identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

19   allegations.

20        (c)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

21   documents identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

22   allegations.

23       **Tenth Affirmative Defense for Inability to Meet Requirements to Maintain a Class**

24   **Action.**

25        (a)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the facts

26   identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of allegations.

27   Additionally, The putative class is overbroad as it appears to include individuals outside of the

28   San Diego and Desert Cities areas, and TWC—SAN DIEGO/DESERT CITIES provides cable

1    services only to the San Diego and Desert Cities areas. Class members outside TWC—SAN

2    DIEGO/DESERT CITIES' service areas do business with other entities that may have different

3    pricing, services, and other business practices than TWC—SAN DIEGO/DESERT CITIES.

4    Class certification is also improper because there is a lack of commonality among putative class

5    members. TWC—SAN DIEGO/DESERT CITIES' contracts with each of its many bulk

6    customers, such as homeowners' associations and landlords, are individually negotiated and

7    include varying terms, services, rates, and other features. For example, whereas the contract

8    between TWC—SAN DIEGO/DESERT CITIES and Plaintiff's homeowners' association

9    provided for TWC—SAN DIEGO/DESERT CITIES to supply basic cable services, other bulk

10   customers contract for basic cable and expanded cable services—such as the additional services

11   that were ordered by Plaintiff and form the basis for this lawsuit. Other individual issues also

12   predominate, such as what particular cable services putative class members were ordering from

13   TWC—SAN DIEGO/DESERT CITIES, whether and to what extent they would have been

14   interested in bundled products, and their knowledge about bundled products.

15       (b)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

16   witnesses identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

17   allegations.

18       (c)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

19   documents identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

20   allegations. Additionally, TWC—SAN DIEGO/DESERT CITIES' contracts with its bulk

21   customers.

22       **Eleventh Affirmative Defense—Twentieth Affirmative Defense.**

23       (a)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the facts

24   identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of allegations and

25   affirmative defenses.

26       (b)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

27   witnesses identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

28   allegations and affirmative defenses.

1    (c)    TWC—SAN DIEGO/DESERT CITIES incorporates by reference all of the

2    documents identified above in response to TWC—SAN DIEGO/DESERT CITIES' denials of

3    allegations and affirmative defenses.

4    **INTERROGATORY NO. 50.1:**

5    For each agreement alleged in the pleadings:

6    (a)    identify each **DOCUMENT** that is part of the agreement and for each state the

7    name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

8    (b)    state each part of the agreement not in writing, the name, **ADDRESS**, and

9    telephone number of each **PERSON** agreeing to that provision, and the date that part of the

10    agreement was made;

11    (c)    identify all **DOCUMENTS** that evidence any part of the agreement not in writing

12    and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the

13    **DOCUMENT**;

14    (d)    identify all **DOCUMENTS** that are part of any modification to the agreement, and

15    for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the

16    **DOCUMENT**;

17    (e)    state each modification not in writing, the date, and the name, **ADDRESS**, and

18    telephone number of each **PERSON** agreeing to the modification, and the date the modification

19    was made;

20    (f)    identify all **DOCUMENTS** that evidence any modification of the agreement not in

21    writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who

22    has the **DOCUMENT**.

23    **RESPONSE TO INTERROGATORY NO. 50.1:**

24    In addition to the General Objections set forth above, which are incorporated by reference

25    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory, and each of its

26    subparts, on the grounds and to the extent that it is overly broad, burdensome and oppressive and

27    seeks information that is protected by the attorney-client privilege, the attorney work product

28    doctrine, an individual's right to privacy, and/or any other privilege or similar protection.

1    TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory, and each of its

2    subparts, on the grounds and to the extent that it seeks the premature disclosure of expert witness

3    opinions and information and seeks information that is neither relevant nor reasonably calculated

4    to lead to the discovery of admissible evidence.

5        Subject to and without waiving its General Objections or the foregoing objections,

6    TWC—SAN DIEGO/DESERT CITIES responds as follows:

7        (a)    Residential Bulk Services Agreement between Sea Point Townhomes and TWC—

8    SAN DIEGO/DESERT CITIES.  This document has been produced in this litigation and is, thus,

9    in the propounding party's possession, custody and/or control.

10        (b)    TWC—SAN DIEGO/DESERT CITIES does not believe that any part of the

11    agreement is not in writing.

12        (c)    TWC—SAN DIEGO/DESERT CITIES does not believe that any part of the

13    agreement is not in writing.

14        (d)    TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

15    been modified.

16        (e)    TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

17    been modified.

18        (f)    TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

19    been modified.

20        and

21        (a)    Time Warner Residential Services Subscriber Agreement between Plaintiff and

22    TWC—SAN DIEGO/DESERT CITIES.  This document has been produced in this litigation and

23    is, thus, in the propounding party's possession, custody and/or control.

24        (b)    TWC—SAN DIEGO/DESERT CITIES does not believe that any part of the

25    agreement is not in writing.

26        (c)    TWC—SAN DIEGO/DESERT CITIES does not believe that any part of the

27    agreement is not in writing.

28        (d)    TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

1 | been modified.

2 | (e) TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

3 | been modified.

4 | (f) TWC—SAN DIEGO/DESERT CITIES does not believe that the agreement has

5 | been modified.

6 | **INTERROGATORY NO. 50.2:**

7 | Was there a breach of any agreement alleged in the pleadings? If so, for each breach

8 | describe and give the date of every act or omission that you claim is the breach of the agreement.

9 | **RESPONSE TO INTERROGATORY NO. 50.2:**

10 | In addition to the General Objections set forth above, which are incorporated by reference

11 | herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

12 | the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the

13 | discovery of admissible evidence. TWC—SAN DIEGO/DESERT CITIES further objects to this

14 | Interrogatory on the grounds and to the extent that it seeks information that is protected by the

15 | attorney-client privilege, the attorney work product doctrine, an individual's right to privacy,

16 | and/or any other privilege or similar protection.

17 | Subject to and without waiving its General Objections or the foregoing objections,

18 | TWC—SAN DIEGO/DESERT CITIES responds as follows: No.

19 | **INTERROGATORY NO. 50.3:**

20 | Was performance of any agreement alleged in the pleadings excused? If so, identify each

21 | agreement excused and state why performance was excused.

22 | **RESPONSE TO INTERROGATORY NO. 50.3:**

23 | In addition to the General Objections set forth above, which are incorporated by reference

24 | herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

25 | the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the

26 | discovery of admissible evidence. TWC—SAN DIEGO/DESERT CITIES further objects to this

27 | Interrogatory on the grounds and to the extent that it seeks information that is protected by the

28 | attorney-client privilege, the attorney work product doctrine, an individual's right to privacy,

1   and/or any other privilege or similar protection.

2          Subject to and without waiving its General Objections or the foregoing objections,

3   TWC—SAN DIEGO/DESERT CITIES responds as follows: No.

4   **INTERROGATORY NO. 50.4:**

5          Was any agreement alleged in the pleadings terminated by mutual agreement, release,

6   accord and satisfaction, or novation? If so, identify each agreement terminated, the date of

7   termination, and the basis of the termination.

8   **RESPONSE TO INTERROGATORY NO. 50.4:**

9          In addition to the General Objections set forth above, which are incorporated by reference

10  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

11  the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the

12  discovery of admissible evidence. TWC—SAN DIEGO/DESERT CITIES further objects to this

13  Interrogatory on the grounds and to the extent that it seeks information that is protected by the

14  attorney-client privilege, the attorney work product doctrine, an individual's right to privacy,

15  and/or any other privilege or similar protection.

16         Subject to and without waiving its General Objections or the foregoing objections,

17  TWC—SAN DIEGO/DESERT CITIES responds as follows: No.

18  **INTERROGATORY NO. 50.5:**

19         Is any agreement alleged in the pleadings unenforceable? If so, identify each

20  unenforceable agreement and state why it is unenforceable.

21  **RESPONSE TO INTERROGATORY NO. 50.5:**

22         In addition to the General Objections set forth above, which are incorporated by reference

23  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

24  the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the

25  discovery of admissible evidence. TWC—SAN DIEGO/DESERT CITIES further objects to this

26  Interrogatory on the grounds and to the extent that it seeks information that is protected by the

27  attorney-client privilege, the attorney work product doctrine, an individual's right to privacy,

28  and/or any other privilege or similar protection.

DLA PIPER US LLP
SAN DIEGO

SD\1778978.7

-25-

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO FORM
INTERROGATORIES (SET ONE)

1    Subject to and without waiving its General Objections or the foregoing objections,

2  TWC—SAN DIEGO/DESERT CITIES responds as follows:  No.

3  **INTERROGATORY NO. 50.6:**

4    Is any agreement alleged in the pleadings ambiguous?  If so, identify each ambiguous

5  agreement and state why it is ambiguous.

6  **RESPONSE TO INTERROGATORY NO. 50.6:**

7    In addition to the General Objections set forth above, which are incorporated by reference

8  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds and to

9  the extent that it seeks information that is neither relevant nor reasonably calculated to lead to the

10  discovery of admissible evidence.  TWC—SAN DIEGO/DESERT CITIES further objects to this

11  Interrogatory on the grounds and to the extent that it seeks information that is protected by the

12  attorney-client privilege, the attorney work product doctrine, an individual's right to privacy,

13  and/or any other privilege or similar protection.

14    Subject to and without waiving its General Objections or the foregoing objections,

15  TWC—SAN DIEGO/DESERT CITIES responds as follows:  No.

16  Dated: February _11_, 2008

DLA PIPER US LLP

17

18

19  By _____

JEFFREY M. SHOHET
20  JULIE L. HUSSEY
CARRIE S. DOLTON
21  Attorneys for Defendant
TIME WARNER ENTERTAINMENT-
22  ADVANCE/ NEWHOUSE PARTNERSHIP, A
NEW YORK GENERAL PARTNERSHIP,
23  THROUGH ITS SAN DIEGO DIVISION,
DBA TIME WARNER CABLE

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1778978.7

-26-

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO FORM
INTERROGATORIES (SET ONE)

# PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On February 11, 2008, I served the within document(s):

**TIME WARNER ENTERTAINMENT-ADVANCE / NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL PARTNERSHIP, THROUGH ITS SAN DIEGO DIVISION, DBA TIME WARNER CABLE'S ANSWERS TO FORM INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF LEON ALPERT**

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐     by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in the ordinary course of business, to each addressee as set forth below.

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Attorneys for Plaintiff**

Barron E. Ramos, Esq.
132 N El Camino Real, Ste 303
Encinitas CA  92024
(858) 349-6019
(760) 994-1354 (fax)

David R. Markham, Esq.
Clark & Markham
401 West A St, Ste 2200
San Diego CA  92101
(619) 239-1321
(619) 239-5888 (fax)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 11, 2008, at San Diego, California.

_____
Sarah Walter

# EXHIBIT D



1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA 92101-4297
4   Tel: 619.699.2700
    Fax: 619.699.2701
5
    Attorneys for Defendant
6   TIME WARNER ENTERTAINMENT-ADVANCE/
    NEWHOUSE PARTNERSHIP, A NEW YORK
7   GENERAL PARTNERSHIP, THROUGH ITS SAN
    DIEGO DIVISION, DBA TIME WARNER CABLE
8

9           SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

10                            CENTRAL DIVISION

11

12   LEON ALPERT, an individual, on behalf      CASE NO. GIC881621
     of himself, on behalf of all those similarly
13   situated, and on behalf of the general     **TIME WARNER ENTERTAINMENT-**
     public,                                     **ADVANCE/ NEWHOUSE PARTNERSHIP,**
14                                               **A NEW YORK GENERAL PARTNERSHIP,**
                    Plaintiff,                   **THROUGH ITS SAN DIEGO DIVISION,**
15                                               **DBA TIME WARNER CABLE'S**
          v.                                     **RESPONSES TO SPECIAL**
16                                               **INTERROGATORIES (SET ONE) OF**
     TIME WARNER CABLE, INC., a                  **PLAINTIFF LEON ALPERT**
17   Delaware corporation, and DOES 1 TO
     100,                                        Dept:   63
18                                               Judge:  Luis R. Vargas
                    Defendants.
19

20

21

22

23

24

25

26

27

28
DLA PIPER US LLP
   SAN DIEGO

1   **PROPOUNDING PARTY: Plaintiff Leon Alpert**

2   **RESPONDING PARTY:   Defendant Time Warner Entertainment-Advance / Newhouse Partnership, a New York General Partnership, through its San**

3   **Diego Division, dba Time Warner Cable**

4   **SET NUMBER:     ONE**

5   Pursuant to Code of Civil Procedure section 2030.210, *et seq.*, Defendant Time Warner

6   Entertainment-Advance / Newhouse Partnership, a New York General Partnership, through its

7   San Diego Division, dba Time Warner Cable ("TWC—SAN DIEGO/DESERT CITIES")

8   responds to Plaintiff Leon Alpert's ("Plaintiff") first set of form interrogatories as follows:

9   <div align="center">**GENERAL OBJECTIONS**</div>

10   1.   The following responses are given without prejudice to TWC—SAN DIEGO/DESERT

11   CITIES' right to produce evidence of any subsequently discovered fact or facts that TWC—SAN

12   DIEGO/DESERT CITIES may later develop.  The responses contained herein are made in a good

13   faith effort to supply as much factual information as is presently known, but should in no way lead

14   to the prejudice of TWC—SAN DIEGO/DESERT CITIES in relation to further discovery,

15   research or analysis.

16   2.   TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

17   and to the extent that they include definitions in direct violation of California Code of Civil

18   Procedure Section 2030.060(d), which provides that "[e]ach interrogatory shall be full and

19   complete in and of itself."

20   3.   TWC—SAN DIEGO/DESERT CITIES objects to Plaintiff's purported definition of the

21   terms "YOU," and "YOUR" on the ground that it renders each interrogatory including these terms

22   to be vague and ambiguous, as well as overly broad.  The definition is so overbroad that it appears

23   to call for information from literally hundreds of different corporate entities and their privileged

24   communications with their counsel.  TWC—SAN DIEGO/DESERT CITIES shall construe the

25   terms "YOU," and "YOUR," when used in the interrogatories, to mean Time Warner

26   Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San

27   Diego Division, which operates in the San Diego and Desert Cities areas, dba Time Warner Cable

28   and no other person or entity.

1    4.    TWC—SAN DIEGO/DESERT CITIES objects to Plaintiff's definition of the term

2    "RESIDENTS" on the ground that it renders each interrogatory including this term to be vague

3    and ambiguous, as well as overly broad.  TWC—SAN DIEGO/DESERT CITIES shall construe

4    the term "RESIDENTS," when used in the interrogatories, to mean residents of homeowners'

5    associations with which Time Warner Entertainment-Advance/Newhouse Partnership, a New

6    York general partnership, through its San Diego Division, dba Time Warner Cable entered into a

7    bulk contract to provide cable services.

8    5.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories, including the

9    definitions therein, to the extent that they purport to impose on TWC—SAN DIEGO/DESERT

10    CITIES obligations beyond those imposed by the California Code of Civil Procedure.

11    6.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

12    and to the extent that they seek the disclosure of information that is not material or relevant to any

13    cause of action asserted by Plaintiff, or any defense TWC—SAN DIEGO/DESERT CITIES may

14    assert, and are not likely to lead to the discovery of admissible evidence.

15    7.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

16    and to the extent that they seek information that is equally available to Plaintiff.

17    8.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories on the ground

18    and to the extent that they fail to specify a time period and are overbroad.

19    9.    TWC—SAN DIEGO/DESERT CITIES objects to these interrogatories to the extent

20    that they may require disclosure of information that is protected by the attorney-client privilege,

21    the work product doctrine, or any other applicable privilege.  TWC—SAN DIEGO/DESERT

22    CITIES hereby claims such privileges and protections to the extent implicated by each

23    interrogatory.  Any disclosure of privileged or protected information is inadvertent and is not

24    intended to waive those privileges or protections.

25    10.    TWC—SAN DIEGO/DESERT CITIES objects to each and every interrogatory to the

26    extent it seeks TWC—SAN DIEGO/DESERT CITIES' private, confidential, trade secret, and/or

27    proprietary information.

28    /////

DLA PIPER US LLP
SAN DIEGO

SD\1778981.8                                        -3-
DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

11.   TWC—SAN DIEGO/DESERT CITIES' responses to these interrogatories are not intended to waive or prejudice any objections TWC—SAN DIEGO/DESERT CITIES may assert now or in the future, including objections as to the admissibility at trial of any of the documents identified in response to the interrogatories.

12.   TWC—SAN DIEGO/DESERT CITIES reserves the right to supplement and/or amend in any way any of its specific or general objections or responses to any or all of Plaintiff's interrogatories.

These foregoing General Objections are incorporated into each and every one of TWC—SAN DIEGO/DESERT Cities' responses below.

## SPECIAL INTERROGATORIES

**SPECIAL INTERROGATORY NO. 1:**

During the CLASS PERIOD (The term "CLASS PERIOD" shall refer to the time period beginning March 13, 2003 and ending March 13, 2007), for how many RESIDENTS (The term "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD that were part of a homeowners' association (HOA) in California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide basic cable services to the HOA members) did YOU (The term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent company, if any, and all subsidiaries of such parent, the employees, agents, officers, directors and representatives of all of these entities, and all other persons or entities acting on behalf or under the control of these entities) provide service in the State of California?

**RESPONSE TO SPECIAL INTERROGATORY NO. 1:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, confusing, vague and ambiguous, seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and seeks the disclosure of information that constitutes confidential and/or proprietary business information.

/////

DLA PIPER US LLP
SAN DIEGO

SD\1778981.8                                    -4-
                    DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
                    INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1    Subject to and without waiving the foregoing objections or the General Objections set

2    forth above, TWC—SAN DIEGO/DESERT CITIES responds as follows: TWC—SAN

3    DIEGO/DESERT CITIES, as defined above, provides cable services only in the San Diego and

4    Desert Cities areas in California and does not provide cable services to other California locations,

5    including but not limited to the Los Angeles area. TWC—SAN DIEGO/DESERT CITIES has a

6    record, by calendar year, of homes that are part of homeowners' associations in the San Diego

7    and Desert Cities areas with which TWC—SAN DIEGO/DESERT CITIES has entered into a

8    bulk contract to provide cable services as follows:

9    San Diego Area:

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| 6,390 units | 6,919 units | 7,268 units | 7,418 units | 10,692 units |

12    Desert Cities Area:

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| 45,539 units | 47,029 units | 49,163 units | 50,042 units | 50,283 units |

15    **SPECIAL INTERROGATORY NO. 2:**

16    During the entire CLASS PERIOD, did YOU provide RESIDENTS pricing for services

17    that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable

18    services through their HOA (hereinafter "RESIDENT Pricing")?

19    **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**

20    In addition to the General Objections set forth above, which are incorporated by reference

21    herein, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly

22    burdensome, compound, conjunctive and/or disjunctive, confusing, vague and ambiguous as to

23    the meaning of "CLASS PERIOD," "YOU," and "RESIDENTS," and seeks information that is

24    neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

25    Subject to and without waiving the foregoing objections or the General Objections set

26    forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

27    the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

28    SAN DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents of

DLA PIPER US LLP
SAN DIEGO

SD\1778981.8                                -5-
DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1    homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

2    contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as follows:

3    Yes.

4    **SPECIAL INTERROGATORY NO. 3:**

5        If during the entire CLASS PERIOD YOU did not provide RESIDENT Pricing for

6    services that reflected the fact that RESIDENTS were already paying for basic and/or expanded

7    cable services through their HOA, why not?

8    **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**

9        In addition to the General Objections set forth above, which are incorporated by reference

10   herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

11   is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

12   and ambiguous as to the meaning of "CLASS PERIOD," "YOU," "RESIDENT Pricing," and

13   "RESIDENTS," seeks seeking information that is neither relevant nor reasonably calculated to

14   lead to the discovery of admissible evidence; potentially seeks disclosure of information that is

15   protected by the attorney-client privilege, the attorney work product, and/or any other privilege or

16   similar protection; and potentially seeks disclosure of information that constitutes confidential

17   and/or proprietary business information.

18       Subject to and without waiving the foregoing objections or the General Objections set

19   forth above, TWC—SAN DIEGO/DESERT CITIES responds as follows:  Not applicable.

20   **SPECIAL INTERROGATORY NO. 4:**

21       If YOU provided RESIDENT Pricing for services that reflected the fact that RESIDENTS

22   were already paying for basic and/or expanded cable services through their HOA for a portion of

23   the CLASS PERIOD, please identify the dates that YOU provided such pricing.

24   **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**

25       In addition to the General Objections set forth above, which are incorporated by reference

26   herein, Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly

27   burdensome, compound, conjunctive and/or disjunctive, confusing, vague and ambiguous as to

28   the meaning of "provided RESIDENT Pricing," "RESIDENT Pricing," "CLASS PERIOD,"

1   "YOU," and "RESIDENTS," and seeks information that is neither relevant nor reasonably

2   calculated to lead to the discovery of admissible evidence.

3           Subject to and without waiving the foregoing objections or the General Objections set

4   forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

5   the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

6   SAN DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents of

7   homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

8   contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as follows:

9           TWC—SAN DIEGO/DESERT CITIES always provided such pricing because it never

10  charged RESIDENTS for the services that were paid for by their homeowners' associations.

11  Moreover, with respect to the prices for the additional services purchased by RESIDENTS

12  directly from TWC—SAN DIEGO/DESERT CITIES, generally provides new customers with a

13  rate card showing his or her rates and/or other available rates. TWC—SAN DIEGO/DESERT

14  Cities' bills to RESIDENTS for their additional cable services would also show such pricing, as

15  the bills contain a detailed, itemized list of services and accompanying charges and would not

16  include services and charges for services that were being provided pursuant to a bulk contract and

17  paid for by RESIDENTS' homeowners' associations. Pricing data is also available upon request

18  from TWC—SAN DIEGO/DESERT CITIES customers, and is sent to consumers or otherwise

19  made available to consumers from time to time through various marketing materials.

20  **SPECIAL INTERROGATORY NO. 5:**

21          During the CLASS PERIOD, if YOU published RESIDENT Pricing on the Internet just as

22  you published retail pricing, please identify the specific URLs where such pricing appeared.

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**

24          In addition to the General Objections set forth above, which are incorporated by reference

25  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

26  is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

27  and ambiguous as to the meaning of "CLASS PERIOD," "YOU," "RESIDENT Pricing," and

28  "retail pricing," seeks seeking information that is neither relevant nor reasonably calculated to

1    lead to the discovery of admissible evidence, potentially seeks disclosure of information that is

2    protected by the attorney-client privilege, the attorney work product, and/or any other privilege or

3    similar protection, and potentially seeks disclosure of information that constitutes confidential

4    and/or proprietary business information.

5        Subject to and without waiving the foregoing objections or the General Objections set

6    forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

7    the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

8    SAN DIEGO/DESERT CITIES, as defined above, "RESIDENT Pricing" refers to the pricing of

9    RESIDENTS' additional cable services, other than those included in the bulk contracts with

10   RESIDENTS' homeowners' associations, which reflects the fact that their respective

11   homeowners' associations were paying for basic cable and/or expanded cable services, and "retail

12   pricing" refers to pricing for services other than "RESIDENT Pricing," TWC—SAN

13   DIEGO/DESERT CITIES responds as follows:

14       TWC—SAN DIEGO/DESERT CITIES published rate cards for a la carte cable services

15   during the class period, which would appear to fall within the definitions of both "RESIDENT

16   Pricing" and "retail pricing" in this Interrogatory, on its Internet website at

17   www.timewarnercable.com and/or webpages linked to that website. The specific URLs for each

18   webpage linked to www.timewarnercable.com that may have displayed such pricing during the

19   class period are not known or available to TWC-SAN DIEGO/DESERT CITIES.

20   **SPECIAL INTERROGATORY NO. 6:**

21       If during the CLASS PERIOD YOU did not publish RESIDENT Pricing on the Internet

22   just as you published retail pricing, why not?

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**

24       In addition to the General Objections set forth above, which are incorporated by reference

25   herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

26   is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

27   and ambiguous as to the meaning of "CLASS PERIOD," "YOU," and "RESIDENT Pricing,"

28   seeks seeking information that is neither relevant nor reasonably calculated to lead to the

1  discovery of admissible evidence, potentially seeks disclosure of information that is protected by

2  the attorney-client privilege, the attorney work product, and/or any other privilege or similar

3  protection, and potentially seeks disclosure of information that constitutes confidential and/or

4  proprietary business information.

5        Subject to and without waiving the foregoing objections or the General Objections set

6  forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

7  the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

8  SAN DIEGO/DESERT CITIES, as defined above, and "RESIDENT Pricing" refers to the pricing

9  of RESIDENTS' additional cable services, other than those included in the bulk contracts with

10  RESIDENTS' homeowners' associations, which reflects the fact that their respective

11  homeowners' associations were paying for basic cable and/or expanded cable services, TWC—

12  SAN DIEGO/DESERT CITIES responds as follows:  Not applicable.

13  **SPECIAL INTERROGATORY NO.  7:**

14        During the CLASS PERIOD, did YOU make RESIDENT Pricing known to

15  RESIDENTS?

16  **RESPONSE TO SPECIAL INTERROGATORY NO.  7:**

17        In addition to the General Objections set forth above, which are incorporated by reference

18  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

19  is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

20  and ambiguous as to the meaning of "CLASS PERIOD," "YOU," "RESIDENT Pricing," and

21  "RESIDENTS," seeks seeking information that is neither relevant nor reasonably calculated to

22  lead to the discovery of admissible evidence, and potentially seeks disclosure of information that

23  constitutes confidential and/or proprietary business information.

24        Subject to and without waiving the foregoing objections or the General Objections set

25  forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

26  the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

27  SAN DIEGO/DESERT CITIES, as defined above, "RESIDENTS" refers to residents of

28  homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

1  contract to provide cable services, and "RESIDENT Pricing" refers to the pricing of

2  RESIDENTS' additional cable services, other than those included in the bulk contracts with

3  RESIDENTS' homeowners' associations, which reflects the fact that their respective

4  homeowners' associations were paying for basic cable and/or expanded cable services, TWC—

5  SAN DIEGO/DESERT CITIES responds as follows: Yes.

6  **SPECIAL INTERROGATORY NO. 8:**

7      If during the CLASS PERIOD YOU made RESIDENT Pricing known to RESIDENTS,

8  how did YOU do so?

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**

10      In addition to the General Objections set forth above, which are incorporated by reference

11  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

12  is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

13  and ambiguous as to the meaning of "CLASS PERIOD," "YOU," "RESIDENT Pricing," and

14  "RESIDENTS," seeks seeking information that is neither relevant nor reasonably calculated to

15  lead to the discovery of admissible evidence, and potentially seeks disclosure of information that

16  constitutes confidential and/or proprietary business information.

17      Subject to and without waiving the foregoing objections or the General Objections set

18  forth above, and assuming, for purposes of this Interrogatory, that "CLASS PERIOD" refers to

19  the time period beginning March 13, 2003 through March 13, 2007, "YOU" refers to TWC—

20  SAN DIEGO/DESERT CITIES, as defined above, "RESIDENTS" refers to residents of

21  homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

22  contract to provide cable services, and "RESIDENT Pricing" refers to the pricing of

23  RESIDENTS' additional cable services, other than those included in the bulk contracts with

24  RESIDENTS' homeowners' associations, which reflects the fact that their respective

25  homeowners' associations were paying for basic cable and/or expanded cable services, TWC—

26  SAN DIEGO/DESERT CITIES responds as follows:

27      TWC—SAN DIEGO/DESERT CITIES generally provides new customers with a rate

28  card showing his or her rates and/or other available rates. TWC—SAN DIEGO/DESERT Cities'

1    bills to RESIDENTS for their additional cable services would also show such pricing, as the bills

2    contain a detailed, itemized list of services and accompanying charges and would not include

3    services and charges for services that were being provided pursuant to a bulk contract and paid

4    for by RESIDENTS' homeowners' associations. TWC—SAN DIEGO/DESERT CITIES pricing

5    is also available upon request from TWC—SAN DIEGO/DESERT CITIES customers, and is sent

6    to consumers or otherwise made available to consumers from time to time through various

7    marketing materials and TWC—SAN DIEGO/DESERT CITIES' Internet website

8    (www.timewarnercable.com).

9    **SPECIAL INTERROGATORY NO. 9:**

10    Do YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

11    requests a specific bundle?

12    **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**

13    In addition to the General Objections set forth above, which are incorporated by reference

14    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

15    is overly broad, unduly burdensome, vague and ambiguous as to the meaning of "YOU" and

16    "RESIDENTS," and potentially seeks information that is neither relevant nor reasonably

17    calculated to lead to the discovery of admissible evidence.

18    Subject to and without waiving the foregoing objections or the General Objections set

19    forth above, and assuming, for purposes of responding to this Interrogatory, that "YOU" refers to

20    TWC—SAN DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents

21    of homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a

22    bulk contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as

23    follows: No.

24    **SPECIAL INTERROGATORY NO. 10:**

25    If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

26    requests a specific bundle, please state all facts that support that contention.

27    /////

28    /////

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague and ambiguous as to the meaning of "YOU" and "RESIDENTS," seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, potentially seeks disclosure of information that is protected by the attorney-client privilege, the attorney work product, and/or any other privilege or similar protection, and potentially seeks disclosure of information that constitutes confidential and/or proprietary business information.

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of this Interrogatory, that "YOU" refers to TWC—SAN DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents of homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as follows: Not applicable.

**SPECIAL INTERROGATORY NO. 11:**

If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT requests a specific bundle, please identify all witnesses that support that contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague and ambiguous as to the meaning of "YOU" and "RESIDENTS," seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, potentially seeks disclosure of information that is protected by the attorney-client privilege, the attorney work product, and/or any other privilege or similar protection, and potentially seeks disclosure of information that constitutes confidential and/or proprietary business information.

/////

1    Subject to and without waiving the foregoing objections or the General Objections set

2    forth above, and assuming, for purposes of this Interrogatory, that "YOU" refers to TWC—SAN

3    DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents of

4    homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

5    contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as follows:

6    Not applicable.

7    **SPECIAL INTERROGATORY NO. 12:**

8    If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

9    requests a specific bundle, please identify all documents that support that contention.

10    **RESPONSE TO SPECIAL INTERROGATORY NO. 12:**

11    In addition to the General Objections set forth above, which are incorporated by reference

12    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

13    is overly broad, unduly burdensome, compound, conjunctive and/or disjunctive, confusing, vague

14    and ambiguous as to the meaning of "YOU" and "RESIDENTS," seeks information that is neither

15    relevant nor reasonably calculated to lead to the discovery of admissible evidence, potentially

16    seeks disclosure of information that is protected by the attorney-client privilege, the attorney

17    work product, and/or any other privilege or similar protection, and potentially seeks disclosure of

18    information that constitutes confidential and/or proprietary business information.

19    Subject to and without waiving the foregoing objections or the General Objections set

20    forth above, and assuming, for purposes of this Interrogatory, that "YOU" refers to TWC—SAN

21    DIEGO/DESERT CITIES, as defined above, and "RESIDENTS" refers to residents of

22    homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES entered into a bulk

23    contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES responds as follows:

24    Not applicable.

25    **SPECIAL INTERROGATORY NO. 13:**

26    Please identify the customer service representative whose recorded conversation with

27    plaintiff Alpert (which Time Warner has misplaced/destroyed) resulted in Alpert being placed in

28    an HOA bundle in the fall of 2006.

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**

2  In addition to the General Objections set forth above, which are incorporated by reference

3  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

4  is vague and ambiguous as to the meaning of "HOA bundle," and potentially seeks disclosure of

5  information that is protected by the privacy rights of third parties.

6  Subject to and without waiving the foregoing objections or the General Objections set

7  forth above, and assuming, for purposes of this Interrogatory, that "HOA bundle" refers to the

8  bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

9  DIEGO/DESERT CITIES responds as follows: Bertha Ruiz.

10  **SPECIAL INTERROGATORY NO. 14:**

11  Did plaintiff Alpert have bundled services before he had the conversation with YOUR

12  customer service representative that resulted in Alpert being placed in an HOA bundle in the fall

13  of 2006?

14  **RESPONSE TO SPECIAL INTERROGATORY NO. 14:**

15  In addition to the General Objections set forth above, which are incorporated by reference

16  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

17  is vague and ambiguous as to the meaning of "YOUR" and "HOA bundle."

18  Subject to and without waiving the foregoing objections or the General Objections set

19  forth above, and assuming, for purposes of this Interrogatory, that "YOUR" refers to TWC—

20  SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the bundled

21  services that Plaintiff ordered in or about September 2006, TWC—SAN DIEGO/DESERT

22  CITIES responds as follows: Yes.

23  **SPECIAL INTERROGATORY NO. 15:**

24  If Plaintiff Alpert had bundled services before he had the conversation with YOUR

25  customer service representative that resulted in Alpert being placed in an HOA bundle in the fall

26  of 2006, please identify each and every bundle he already had in place at the time that

27  conversation occurred.

28  /////

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

**RESPONSE TO SPECIAL INTERROGATORY NO. 15:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOUR" and "HOA bundle."

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of this Interrogatory, that "YOUR" refers to TWC— SAN DIEGO/DESERT CITIES, as defined above, TWC—SAN DIEGO/DESERT CITIES responds as follows:

Tier Package (Digital Movies, Digital Variety) (Plaintiff's San Diego Account);

Premium Package (HBO, Cinemax, Showtime, Starz) (Plaintiff's San Diego Account);

Digipic 2000 Combo (Plaintiff's Desert Cities Account).

**SPECIAL INTERROGATORY NO. 16:**

If plaintiff Alpert had bundled services before he had the conversation with YOUR customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of 2006, for each bundle Alpert had at that time, please state whether Alpert had specifically requested that particular bundle or whether YOU had bundled Alpert.

**RESPONSE TO SPECIAL INTERROGATORY NO. 16:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle."  TWC— SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the ground that it requests information that is equally available to Plaintiff and/or solely available from Plaintiff since it seeks information relating to whether he made certain requests.  TWC—SAN DIEGO/DESERT CITIES also objects to this Interrogatory on the grounds that it is compound, conjunctive, and disjunctive and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1  TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

2  bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

3  DIEGO/DESERT CITIES responds as follows: ~~No. However,~~ if Plaintiff asked for a particular

4  bundle of services, then he would have received it. In addition, if Plaintiff placed an order

5  for Additional Services and after placing the order, TWC—SAN DIEGO/DESERT CITIES'

6  computer recognized that his account included each of the components of an existing bundle

7  and the bundle would be less costly than the component services, then he would have been billed

8  for those services as a bundle (see Response to Special Interrogatory No. 29).

9  **SPECIAL INTERROGATORY NO. 17:**

10      Do YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

11  conversation with YOUR customer service representative that resulted in Alpert being placed in

12  an HOA bundle in the fall of 2006?

13  **RESPONSE TO SPECIAL INTERROGATORY NO. 17:**

14      In addition to the General Objections set forth above, which are incorporated by reference

15  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

16  is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

17  SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the ground that it requests

18  information that is equally available to Plaintiff.

19      Subject to and without waiving the foregoing objections or the General Objections set

20  forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

21  TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

22  bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

23  DIEGO/DESERT CITIES responds as follows: ~~No.~~

24  **SPECIAL INTERROGATORY NO. 18:**

25      If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

26  conversation with YOUR customer service representative that resulted in Alpert being placed in

27  an HOA bundle in the fall of 2006, please state all facts that support that contention.

28  /////

1    **RESPONSE TO SPECIAL INTERROGATORY NO. 18:**

2          In addition to the General Objections set forth above, which are incorporated by reference

3    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

4    is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

5    SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the ground that it requests

6    information that is equally available to Plaintiff.

7          Subject to and without waiving the foregoing objections or the General Objections set

8    forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

9    TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

10    bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

11    DIEGO/DESERT CITIES responds as follows: Not applicable.

12    **SPECIAL INTERROGATORY NO. 19:**

13          If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

14    conversation with YOUR customer service representative that resulted in Alpert being placed in

15    an HOA bundle in the fall of 2006, please identify all documents that support that contention.

16    **RESPONSE TO SPECIAL INTERROGATORY NO. 19:**

17          In addition to the General Objections set forth above, which are incorporated by reference

18    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

19    is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

20    SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the ground that it requests

21    information that is equally available to Plaintiff.

22          Subject to and without waiving the foregoing objections or the General Objections set

23    forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

24    TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

25    bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

26    DIEGO/DESERT CITIES responds as follows: Not applicable.

27    /////

28    /////

1    **SPECIAL INTERROGATORY NO. 20:**

2        If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

3    conversation with YOUR customer service representative that resulted in Alpert being placed in

4    an HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

5    **RESPONSE TO SPECIAL INTERROGATORY NO. 20:**

6        In addition to the General Objections set forth above, which are incorporated by reference

7    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

8    is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

9    SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the ground that it requests

10   information that is equally available to Plaintiff.

11       Subject to and without waiving the foregoing objections or the General Objections set

12   forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

13   TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

14   bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

15   DIEGO/DESERT CITIES responds as follows:  Not applicable.

16   **SPECIAL INTERROGATORY NO. 21:**

17       Why did YOU destroy the audio recording of the conversation with YOUR customer

18   service representative that resulted in Alpert being placed in an HOA bundle in the fall of 2006?

19   **RESPONSE TO SPECIAL INTERROGATORY NO. 21:**

20       In addition to the General Objections set forth above, which are incorporated by reference

21   herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

22   is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle."

23       Subject to and without waiving the foregoing objections or the General Objections set

24   forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

25   TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

26   bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

27   DIEGO/DESERT CITIES responds as follows:  It is TWC—SAN DIEGO/DESERT CITIES'

28   normal business practice to store audio call recordings onto TWC—SAN DIEGO/DESERT

1   CITIES' call recording server for 90 days. After 90 days, audio call recordings are archived to

2   DVD and stored in a secure Data Center for one year. ~~Once the call recordings become older~~

3   ~~than one year, they are destroyed.~~ The record of the audio recording was destroyed in the normal

4   course of business after it was one year old.

5   **SPECIAL INTERROGATORY NO. 22:**

6           Do YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

7   conversation with YOUR customer service representative that resulted in Alpert being placed in

8   an HOA bundle in the fall of 2006?

9   **RESPONSE TO SPECIAL INTERROGATORY NO. 22:**

10          In addition to the General Objections set forth above, which are incorporated by reference

11  herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

12  is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

13  SAN DIEGO/DESERT CITIES further objects to this Interrogatory on

14  the grounds that it requests information that is equally available to Plaintiff and seeks information

15  that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

16          Subject to and without waiving the foregoing objections or the General Objections set

17  forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

18  TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

19  bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

20  DIEGO/DESERT CITIES responds as follows: TWC—SAN DIEGO/DESERT CITIES has not

21  made the contention that it directly notified Plaintiff of "HOA bundles" before the telephone call

22  in question; however, TWC—SAN DIEGO/DESERT CITIES cannot rule out the possibility that

23  it directly notified Plaintiff of, or otherwise made Plaintiff aware of, "HOA bundles" prior to the

24  call, as detailed below in TWC—SAN DIEGO/DESERT CITIES' response to Special

25  Interrogatory No. 23. TWC—SAN DIEGO/DESERT CITIES contends that Plaintiff was notified

26  of HOA bundles by Plaintiff's homeowners' association when it provided Plaintiff with a copy of

27  a TWC—SAN DIEGO/DESERT CITIES document reflecting pricing for an "HOA bundle" prior

28  to the conversation in question. TWC—SAN DIEGO/DESERT CITIES also contends that

1    Plaintiff was generally aware of the existence of bundled pricing before September 2006 because

2    his Desert Cities account had bundled services.

3  **SPECIAL INTERROGATORY NO. 23:**

4         If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

5    conversation with YOUR customer service representative that resulted in Alpert being placed in

6    an HOA bundle in the fall of 2006, please state all facts that support that contention

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 23:**

8         In addition to the General Objections set forth above, which are incorporated by reference

9    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

10    is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

11    SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it

12    potentially requests information that is equally available to Plaintiff and seeks information that is

13    neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

14         Subject to and without waiving the foregoing objections or the General Objections set

15    forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

16    TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

17    bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

18    DIEGO/DESERT CITIES responds as follows:  At the very least, Plaintiff was notified of HOA

19    bundles by Plaintiff's homeowners' association when it provided Plaintiff with a copy of a

20    TWC—SAN DIEGO/DESERT CITIES document reflecting pricing for an "HOA bundle" prior

21    to the conversation in question.  Plaintiff was generally aware of the existence of bundled pricing

22    before September 2006 because his Desert Cities account had bundled services.

23         Plaintiff may also have been notified of pricing for bundled packages available to

24    residents of homeowners' associations that had bulk contracts with TWC—SAN

25    DIEGO/DESERT CITIES by virtue of marketing materials and/or other information TWC—SAN

26    DIEGO/DESERT CITIES provided to his homeowners' association.  Plaintiff also could have

27    called TWC—SAN DIEGO/DESERT CITIES and spoken to a customer service representative,

28    visited www.timewarnercable.com, or gone into any San Diego TWC—SAN DIEGO/DESERT

1 | CITIES store to request pricing for bundled packages that were available to residents of

2 | homeowners' associations that had bulk contracts with TWC—SAN DIEGO/DESERT CITIES,

3 | as well as other pricing and bundled services.

4 | **SPECIAL INTERROGATORY NO. 24:**

5 | If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

6 | conversation with YOUR customer service representative that resulted in Alpert being placed in

7 | an HOA bundle in the fall of 2006, please identify all documents which support that contention.

8 | **RESPONSE TO SPECIAL INTERROGATORY NO. 24:**

9 | In addition to the General Objections set forth above, which are incorporated by reference

10 | herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

11 | is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—

12 | SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it

13 | potentially requests information that is equally available to Plaintiff and seeks information that is

14 | neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

15 | Subject to and without waiving the foregoing objections or the General Objections set

16 | forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to

17 | TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the

18 | bundled services that Plaintiff ordered in or about September 2006, TWC—SAN

19 | DIEGO/DESERT CITIES responds as follows:  Document titled "San Diego and Desert Cities

20 | 2006 DIGIPIC HOA Packages," which TWC—SAN DIEGO/DESERT CITIES understands is

21 | the document that Plaintiff's homeowners' association provided to Plaintiff regarding HOA

22 | bundles.

23 | **SPECIAL INTERROGATORY NO. 25:**

24 | If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

25 | conversation with YOUR customer service representative that resulted in Alpert being placed in

26 | an HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

27 | /////

28 | /////

**RESPONSE TO SPECIAL INTERROGATORY NO. 25:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOU," "YOUR" and "HOA bundle." TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it potentially requests information that is equally available to Plaintiff and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of this Interrogatory, that "YOU" and "YOUR" refers to TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the bundled services that Plaintiff ordered in or about September 2006, TWC—SAN DIEGO/DESERT CITIES responds as follows:  Not applicable.

**SPECIAL INTERROGATORY NO. 26:**

When did YOU begin offering HOA bundles in California?

**RESPONSE TO SPECIAL INTERROGATORY NO. 26:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is overly broad, vague and ambiguous as to time, location, and the meaning of "YOU" and "HOA bundle." TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of this Interrogatory, that "YOU" refers to TWC—SAN DIEGO/DESERT CITIES, as defined above, and "HOA bundle" refers to the bundled services that Plaintiff ordered in or about September 2006, TWC—SAN DIEGO/DESERT CITIES responds as follows:  TWC—SAN DIEGO/DESERT CITIES, as defined above, provides cable services only in the San Diego and Desert Cities areas in California and does not provide cable services to other California locations, including but not limited to the Los Angeles area. TWC—

1    SAN DIEGO/DESERT CITIES offered bundled packages of additional cable services for HOA

2    residents whose homeowners' association had a bulk contract with TWC—SAN

3    DIEGO/DESERT CITIES, as well as for other residents of TWC—SAN DIEGO/DESERT

4    Cities' bulk customers, (such as the bundled package of additional services Plaintiff purchased in

5    or about September 2006) beginning in or about 2005.

6    **SPECIAL INTERROGATORY NO. 27:**

7        When did YOU begin offering retail bundles in California?

8    **RESPONSE TO SPECIAL INTERROGATORY NO. 27:**

9        In addition to the General Objections set forth above, which are incorporated by reference

10   herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

11   is overly broad, vague and ambiguous as to time, location, and the meaning of "YOU" and "retail

12   bundles." TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the

13   grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the

14   discovery of admissible evidence.

15       Subject to and without waiving the foregoing objections or the General Objections set

16   forth above, and assuming, for purposes of this Interrogatory, that "YOU" refers to TWC—SAN

17   DIEGO/DESERT CITIES, as defined above, and "retail bundles" refers to bundled cable services

18   available to at least some TWC—SAN DIEGO/DESERT CITIES customers, TWC—SAN

19   DIEGO/DESERT CITIES responds as follows:  TWC—SAN DIEGO/DESERT CITIES, as

20   defined above, provides cable services only in the San Diego and Desert Cities areas in California

21   and does not provide cable services to other California locations, including but not limited to the

22   Los Angeles area.  TWC—SAN DIEGO/DESERT CITIES began to offer retail bundles at or

23   about the time it first started providing cable services.

24   **SPECIAL INTERROGATORY NO. 28:**

25       With how many HOAs in the State of California did YOU have a contract to provide

26   services during the CLASS PERIOD?

27   /////

28   /////

**RESPONSE TO SPECIAL INTERROGATORY NO. 28:**

In addition to the General Objections set forth above, which are incorporated by reference herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOU" and "CLASS PERIOD." TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. TWC—SAN DIEGO/DESERT CITIES has a variety of contracts with HOAs to provide services other than cable programming which have no relevance to this case.

Subject to and without waiving the foregoing objections or the General Objections set forth above, and assuming, for purposes of responding to this Interrogatory, that "YOU" refers to TWC—SAN DIEGO/DESERT CITIES, as defined above, and "CLASS PERIOD" refers to the period from March 13, 2003 to March 13, 2007, and "services" refers to cable programming, TWC—SAN DIEGO/DESERT CITIES responds as follows:

TWC—SAN DIEGO/DESERT CITIES, as defined above, provides cable services only in the San Diego and Desert Cities areas in California and does not provide cable services to other California locations, including but not limited to the Los Angeles area. TWC—SAN DIEGO/DESERT CITIES has a record, by calendar year, of its contracts to provide cable services to homeowners' associations in the San Diego and Desert Cities areas and thus responds as follows:

San Diego Area:

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| 41 HOAs | 43 HOAs | 46 HOAs | 47 HOAs | 73 HOAs |

Desert Cities Area:

| 2003 | 2004 | 2005 | 2006 | 2007 |
|------|------|------|------|------|
| 166 HOAs | 180 HOAs | 189 HOAs | 194 HOAs | 196 HOAs |

**SPECIAL INTERROGATORY NO. 29:**

Did YOU automatically bundle services when RESIDENTS called to request additional services during the CLASS PERIOD?

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1    **RESPONSE TO SPECIAL INTERROGATORY NO. 29**:

2         In addition to the General Objections set forth above, which are incorporated by reference

3    herein, TWC—SAN DIEGO/DESERT CITIES objects to this Interrogatory on the grounds that it

4    is vague and ambiguous as to the meaning of "YOU," "CLASS PERIOD," and "RESIDENTS."

5    TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the grounds that it

6    seeks information that is neither relevant nor reasonably calculated to lead to the discovery of

7    admissible evidence.

8         Subject to and without waiving the foregoing objections or the General Objections set

9    forth above, and assuming, for purposes of responding to this Interrogatory, that "YOU" refers to

10   the TWC—SAN DIEGO/DESERT CITIES, as defined above, "CLASS PERIOD" refers to the

11   time period beginning March 13, 2003 through March 13, 2007, and "RESIDENTS" refers to

12   residents of homeowners' associations with which TWC—SAN DIEGO/DESERT CITIES

13   entered into a bulk contract to provide cable services, TWC—SAN DIEGO/DESERT CITIES

14   responds as follows:

15        Yes, in certain circumstances.  As a courtesy to its customers, the TWC—SAN

16   DIEGO/DESERT CITIES' system is programmed to automatically place RESIDENTS in a

17   particular bundle when a RESIDENT contacts TWC—SAN DIEGO/DESERT CITIES to place

18   an order for Additional Services and after placing the order, the computer recognizes that the

19   RESIDENT'S account includes each of the components of an existing bundle and the bundle will

20   be less costly to the RESIDENT than the component services.

21   **SPECIAL INTERROGATORY NO. 30**:

22        Do YOU contend that the class in this case should not be certified?

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 30**:

24        In addition to the General Objections set forth above, which are incorporated by reference

25   herein, Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous as to

26   the meaning of "YOU."   TWC—SAN DIEGO/DESERT CITIES also objects to this

27   Interrogatory on the ground that it is premature.  TWC—SAN DIEGO/DESERT CITIES further

28   objects to this Interrogatory to the extent that it seeks the disclosure of information that is

DLA PIPER US LLP
SAN DIEGO

SD\1778981.8                            -25-
DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1  protected by the attorney-client privilege, the attorney work product, and/or any other privilege or

2  similar protection. TWC—SAN DIEGO/DESERT CITIES has deferred requesting discovery

3  uniquely addressing class issues while its dispositive motion is pending. In the event its

4  dispositive motion is denied, TWC—SAN DIEGO/DESERT CITIES will work with Plaintiff to

5  complete all discovery ,including discovery relating to class issues on a timely basis.

6  **SPECIAL INTERROGATORY NO. 31:**

7      If YOU contend that the class in this case should not be certified, please state all facts

8  upon which YOU base that contention.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 31:**

10     In addition to the General Objections set forth above, which are incorporated by reference

11 herein, Defendant objects to this Interrogatory on the grounds that it is vague and ambiguous as to

12 the meaning of "YOU." TWC—SAN DIEGO/DESERT CITIES also objects to this

13 Interrogatory on the ground that it is premature. TWC—SAN DIEGO/DESERT CITIES further

14 objects to this Interrogatory to the extent that it seeks the disclosure of information that is

15 protected by the attorney-client privilege, the attorney work product, and/or any other privilege or

16 similar protection. TWC—SAN DIEGO/DESERT CITIES has deferred requesting discovery

17 uniquely addressing class issues while its dispositive motion is pending. In the event its

18 dispositive motion is denied, TWC—SAN DIEGO/DESERT CITIES will work with Plaintiff to

19 complete all discovery ,including discovery relating to class issues on a timely basis.

20 **SPECIAL INTERROGATORY NO. 32:**

21     If YOU contend that the class in this case should not be certified, please identify all

22 documents which support that contention.

23 **RESPONSE TO SPECIAL INTERROGATORY NO. 32:**

24     In addition to the General Objections set forth above and the specific objections to Special

25 Interrogatory No. 31, which are incorporated by reference herein, Defendant objects to this

26 Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOU."

27 TWC—SAN DIEGO/DESERT CITIES also objects to this Interrogatory on the ground that it is

28 premature. TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory on the

1   ground that it seeks confidential and/or proprietary information and to the extent that it seeks the

2   disclosure of information that is protected by the attorney-client privilege, the attorney work

3   product, and/or any other privilege or similar protection. TWC—SAN DIEGO/DESERT CITIES

4   has deferred requesting discovery uniquely addressing class issues while its dispositive motion is

5   pending. In the event its dispositive motion is denied, TWC—SAN DIEGO/DESERT CITIES

6   will work with Plaintiff to complete all discovery ,including discovery relating to class issues on a

7   timely basis.

8   **SPECIAL INTERROGATORY NO. 33:**

9       If YOU contend that the class in this case should not be certified, please identify all

10  witnesses who support that contention.

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 33:**

12      In addition to the General Objections set forth above and the specific objections to Special

13  Interrogatory No. 31, which are incorporated by reference herein, Defendant objects to this

14  Interrogatory on the grounds that it is vague and ambiguous as to the meaning of "YOU."

15  TWC—SAN DIEGO/DESERT CITIES also objects to this Interrogatory on the ground that it is

16  premature. TWC—SAN DIEGO/DESERT CITIES further objects to this Interrogatory to the

17  extent that it seeks the disclosure of information that is protected by the attorney-client privilege,

18  the attorney work product, and/or any other privilege or similar protection. TWC—SAN

19  DIEGO/DESERT CITIES has deferred requesting discovery uniquely addressing class issues

20  /////

21  /////

22  /////

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

1    while its dispositive motion is pending.  In the event its dispositive motion is denied, TWC—

2    SAN DIEGO/DESERT CITIES will work with Plaintiff to complete all discovery ,including

3    discovery relating to class issues on a timely basis.

4    Dated: February _//_, 2008

                              DLA PIPER US LLP

                              By _____
                                 JEFFREY M. SHOHET
                                 JULIE L. HUSSEY
                                 CARRIE S. DOLTON
                                 RYAN T. HANSEN
                                 Attorneys for Defendant
                                 TIME WARNER ENTERTAINMENT-
                                 ADVANCE/ NEWHOUSE PARTNERSHIP, A
                                 NEW YORK GENERAL PARTNERSHIP,
                                 THROUGH ITS SAN DIEGO DIVISION,
                                 DBA TIME WARNER CABLE

SD\1778981.8                          -28-

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL
INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On February 11, 2008, I served the within document(s):

**TIME WARNER ENTERTAINMENT-ADVANCE/ NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL PARTNERSHIP, THROUGH ITS SAN DIEGO DIVISION, DBA TIME WARNER CABLE'S ANSWERS TO SPECIAL INTERROGATORIES (SET ONE) OF PLAINTIFF LEON ALPERT**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in the ordinary course of business, to each addressee as set forth below.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Attorneys for Plaintiff**

| | |
|---|---|
| Barron E. Ramos, Esq. | David R. Markham, Esq. |
| 132 N El Camino Real, Ste 303 | Clark & Markham |
| Encinitas CA 92024 | 401 West A St, Ste 2200 |
| (858) 349-6019 | San Diego CA 92101 |
| (760) 994-1354 (fax) | (619) 239-1321 |
| | (619) 239-5888 (fax) |

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 11, 2008, at San Diego, California.

_Sarah Walter_

Sarah Walter

DEFENDANT TWC—SAN DIEGO/DESERT CITIES' RESPONSES TO SPECIAL INTERROGATORIES (SET ONE) PROPOUNDED BY PLAINTIFF

1 | JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
2 | CARRIE S. DOLTON (Bar No. 234298)
**DLA PIPER US LLP**
3 | 401 B Street, Suite 1700
San Diego, CA  92101-4297
4 | Tel:  619.699.2700
Fax:  619.699.2701
5 |
Attorneys for Defendant
6 | TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK
7 | GENERAL PARTNERSHIP, THROUGH ITS SAN
DIEGO DIVISION, DBA TIME WARNER CABLE
8 |

9 | <div align="center">SUPERIOR COURT OF CALIFORNIA</div>

10 | <div align="center">COUNTY OF SAN DIEGO</div>

11 |

12 | LEON ALPERT, an individual, on behalf
of himself, on behalf of all those similarly
13 | situated, and on behalf of the general
public,
14 |
                    Plaintiff,
15 |
          v.
16 |
TIME WARNER CABLE, INC., a
17 | Delaware corporation, and DOES 1 to 100,
18 |                 Defendant.

CASE NO.  GIC881621

**NOTICE OF MOTION AND MOTION OF DEFENDANT TIME WARNER CABLE FOR PROTECTIVE ORDER STAYING PLAINTIFF'S CLASS DISCOVERY PENDING RESOLUTION OF TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

Date:        April 11, 2008
Time:       10:30 a.m.
Dept:        63
Judge:      Hon. Luis R. Vargas

Complaint: March 13, 2007
FAC:        May 16, 2007

28

DLA PIPER US LLP
SAN DIEGO

GT\6562590.1
325566-11

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2          PLEASE TAKE NOTICE that on April 11, 2008 at 10:30 a.m., or as soon thereafter as

3    can be heard, in Department 63 of the above-entitled Court, located at 330 W. Broadway, San

4    Diego, California 92101, Defendant Time Warner Entertainment-Advance/Newhouse

5    Partnership, through its San Diego Division, dba Time Warner Cable ("TWC") will and hereby

6    does move this Court for a protective order staying staying Plaintiff's class discovery pending

7    resolution of Time Warner Cable's Motion for Summary Judgment, including discovery other

8    than that related to TWC's San Diego/Desert Cities Division, pending resolution of TWC's

9    Motion for Summary Judgment.

10          This motion is made pursuant to California Code of Civil Procedures sections

11    2019.030(a)(2), 2025.420(b)(10), and 2031.060, and upon the grounds that discovery and taking

12    of depositions on class discovery, including topics other than that related to TWC's San

13    Diego/Desert Cities Division, prior to resolution of TWC's Motion for Summary Judgment would

14    be a irrelevant, unduly burdensome, expensive, and a waste of judicial resources.

15          This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

16    and Authorities in Support of this Motion, the Declaration of Terri Rhodes, the Declaration of

17    Julie L. Hussey and the attached exhibits, all of which are served and filed herewith, and the

18    complete records and files of this action, and any argument or additional evidence that is

19    permitted by this Court.

20                                  Respectfully submitted,

21    Dated:  March _10_, 2008

22                                  DLA PIPER US LLP

23

24                          By _____

25                              JEFFREY M. SHOHET
                                JULIE L. HUSSEY
26                              CARRIE S. DOLTON
                                Attorneys for Defendant
27                              TIME WARNER CABLE

28

DLA PIPER US LLP
SAN DIEGO

GT\6562590.1
325566-11

-1-

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
7  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE
8
9               SUPERIOR COURT OF CALIFORNIA
10                 COUNTY OF SAN DIEGO
11
12  LEON ALPERT, an individual, on behalf          CASE NO. GIC881621
    of himself, on behalf of all those similarly
13  situated, and on behalf of the general         **MEMORANDUM OF POINTS AND**
    public,                                        **AUTHORITIES IN SUPPORT OF**
14                                                 **DEFENDANT TIME WARNER CABLE'S**
                     Plaintiff,                    **MOTION FOR PROTECTIVE ORDER**
15                                                 **STAYING PLAINTIFF'S CLASS**
         v.                                        **DISCOVERY PENDING RESOLUTION**
16                                                 **OF TIME WARNER CABLE'S MOTION**
    TIME WARNER CABLE, INC., a                     **FOR SUMMARY JUDGMENT**
17  Delaware corporation, and DOES 1 to 100,
                                                   Date:       April 11, 2008
18                   Defendant.                    Time:       10:30 a.m.
                                                   Dept:       63
19                                                 Judge:      Hon. Luis R. Vargas
20                                                 Complaint:  March 13, 2007
                                                   FAC:        May 16, 2007
21
22
23
24
25
26
27
28
GT\6562587.4
325566-11

MEMO OF POINTS AND AUTHORITIES ISO MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY

# I.     INTRODUCTION.

Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC") hereby seeks a protective order staying discovery relating to putative class members and class allegations until TWC's pending Motion for Summary Judgment is resolved and, if necessary, class certification is at issue.  TWC promptly filed its Motion for Summary Judgment before challenging class certification, due to the complete lack of support for Plaintiff's claims and in an effort to resolve this meritless case before the parties incur the significant burden and expense of protracted litigation.  TWC believes that this case is ripe for summary judgment in its favor where the undisputed evidence, including Plaintiff's deposition testimony and monthly TWC bills, shows that TWC did not overcharge Plaintiff as he contends in his complaint.

In the interest of judicial economy and to avoid undue expense, TWC has repeatedly proposed to Plaintiff that the parties focus on the merits of Plaintiff's claim at this stage and address class discovery and other class issues following a ruling on TWC's Motion for Summary Judgment, if necessary.  Although TWC's Motion for Summary Judgment is just weeks away (scheduled for hearing on April 4, 2008), and despite TWC's agreement to postpone challenging class certification until the Motion for Summary Judgment is heard, Plaintiff nonetheless has insisted that TWC provide written discovery responses, documents, and deposition testimony on class issues prior to the Summary Judgment Motion being heard.

Good cause exists to stay Plaintiff's class discovery because of the considerable burden and expense involved in responding to such potentially unnecessary discovery.  Responding to Plaintiff's class discovery would require inquiry into documents and information from multiple decentralized entities throughout California, as well as the production of Person(s) Most Knowledgeable from each such entity on a variety of deposition topics—tasks that would likely require hundreds of hours to accomplish.  TWC has acted promptly and in good faith to resolve this frivolous lawsuit as quickly as possible and should not be forced to incur the burden of Plaintiff's class discovery in the few weeks prior to TWC's dispositive Motion for Summary Judgment.  Accordingly, TWC respectfully requests the Court grant its Motion for a Protective

1    Order to stay Plaintiff's class discovery pending a determination of TWC's Motion for Summary

2    Judgment.

3    **II.    BACKGROUND FACTS.**

4        **A.    Summary of Plaintiff's Complaint Against TWC.**

5            TWC is a provider of cable services and sells its cable services generally to members of

6    the public. TWC also enters into bulk contracts with entities, such as apartments and

7    homeowners' associations ("HOA"), to provide cable services to all of the homes within the

8    complex at negotiated "bulk" rates. Plaintiff is a resident of a Bulk-customer HOA in the San

9    Diego area which is part of the San Diego/Desert Cities division of Time Warner. Under the bulk

10   contract between TWC and Plaintiff's HOA, TWC provides the basic tier of cable television

11   channels to all residences in the HOA, including Plaintiff's residence, and the HOA pays TWC

12   for such services. In addition, Plaintiff entered into his own agreement with TWC to order movie

13   channels, internet service and other "Additional Services." TWC bills Plaintiff directly for the

14   Additional Services that he ordered, and Plaintiff pays TWC for such services.

15           On or about May 16, 2007, Plaintiff, on behalf of himself and other residents of Bulk-

16   customer HOAs in California, filed the operative amended Complaint against TWC in this case,

17   alleging a single cause of action under California's Unfair Competition Law ("UCL"). Plaintiff's

18   claim against TWC is based on a theory (or more precisely an unfounded suspicion) that TWC

19   overcharged him by charging him for basic cable services provided for under the bulk contract

20   with his HOA. A class has not been certified, and there are currently no scheduling deadlines in

21   this matter.

22           The undisputed facts, including Plaintiff's own deposition testimony, show that, in

23   accordance with the terms of the agreements between the HOA (for basic cable services to all the

24   residences in the complex) and Plaintiff (for the Additional Services he purchased on his own) (1)

25   TWC did not charge or collect any money from Plaintiff for the basic cable services it provided to

26   his residence; (2) TWC charged and was paid by Plaintiff's HOA for the basic cable services; (3)

27   Plaintiff was aware that his HOA paid TWC for his basic cable; (4) TWC charged Plaintiff the

28   correct price for the Additional Services he purchased – both when he initially ordered a variety

1   of individually priced services, and when he later ordered a bundled package of services in order

2   to obtain a discounted price. It was this price reduction that caused Plaintiff to speculate that he

3   had previously been overcharged. However, this price reduction reflects a discount that was

4   available at that time for ordering such services in a bundle and in no way supports his claim that

5   he had previously been overcharged.

6   **B.    TWC Files a Motion for Summary Judgment, Agreeing to Address Class Issues, if Necessary, After the Motion.**

7

8   Based on these facts and the complete lack of support for Plaintiff's claims, TWC

9   promptly filed a Motion for Summary Judgment (before challenging class certification) on that

10  grounds that Plaintiff cannot prove his cause of action for violation of the UCL. The resolution of

11  TWC's Motion for Summary Judgment is dispositive of every issues in this litigation. In an

12  effort to resolve this meritless class action lawsuit and avoid significant expense and burden of

13  protracted litigation, TWC has chosen to contest the liability issues prior to class certification and

14  forego the benefits of a res judicata determination of its motion that would be binding on the

15  entire class. At this point in the litigation, only liability issues related specifically to Plaintiff

16  Alpert and specifically related to TWC's San Diego/Desert Cities Division are at issue.

17  Accordingly, discovery relating to putative class members and class allegations are unnecessary,

18  unduly burdensome and expensive.

19  At the initial Case Management Conference, TWC alerted counsel and the court to its plan

20  to file an early motion for summary judgment and its intent to work with counsel to defer the

21  expense associated with class proceedings until its dispositive motion could be heard. [insert date

22  and citation].

23  **C.    Plaintiff Propounds and Seeks to Enforce Class Discovery.**

24  Despite TWC's counsels' multiple communications to Plaintiff Alpert's counsel that

25  TWC has chosen to contest the merits of Plaintiff Alpert's claim instead of contesting class

26  certification at this time, and despite that TWC has agreed to postpone addressing class

27  certification issues until after TWC's Motion for Summary Judgment, Plaintiff has nonetheless

28  propounded and seeks to enforce extensive class discovery responses to numerous interrogatories

1   and production requests as well as depositions of PMKs for all divisions throughout California.

2   Specifically Plaintiff has served Requests for Production of Documents, Form Interrogatories,

3   Special Interrogatories, and a Notice of Deposition of TWC's Person Most Knowledgeable on

4   topics related to class certification and topics other than that contested in TWC's Motion for

5   Summary Judgment, namely TWC's San Diego/Desert Cities Division. (Declaration of Julie L.

6   Hussey[1] ("Hussey Decl."), ¶¶ 2-5.).

7        Plaintiff's broad discovery requests seek information about TWC's practices in separate

8   California divisions that operate independently outside of the area covered by the San

9   Diego/Desert Cities Division.  Such discovery would be relevant, if at all, to support his class

10   action allegations.  But TWC (as defined above - Defendant Time Warner Entertainment-

11   Advance/Newhouse Partnership, a New York general partnership, through its San Diego

12   Division, dba Time Warner Cable) provides cable services only in the San Diego and Desert

13   Cities areas in California and does not provide cable services to other California locations,

14   including but not limited to the Los Angeles area.

15      **D.**    **Responding to Plaintiff's Class Discovery Would Result in Significant Burden and Expense.**

16

17        As explained on multiple occasions to Plaintiff's counsel, Mr. Barron Ramos, responding

18   to Plaintiff's class discovery would result in significant burden and expense to TWC, considering

19   the decentralized structure of Time Warner (Hussey Decl. ¶¶ 6-11).  Time Warner Cable is a

20   decentralized company. (Declaration of Terri Rhodes[2] ("Rhodes Decl.") ¶ 2.)  There are many

21   divisions of Time Warner Cable across the United States, and each separate division acts as a

22   separate and distinct entity. (Rhodes Decl. ¶ 2.)  The separate divisions have separate marketing,

23   finance, customer service, and human resources departments. (Rhodes Decl. ¶ 3.)  The separate

24   divisions have separate budgets with their own expenses and revenues. (Rhodes Decl. ¶ 4.)  The

25   separate divisions have separate pricing policies and procedures. (Rhodes Decl. ¶ 5.)  The

26

27   [1] "Declaration of Julie L. Hussey" and "Hussey Decl." refers to the Declaration of Julie L. in Support of Defendant Time Warner Cable's Motion for Protective Order Staying Discovery.

28   [2] "Declaration of Terri Rhodes" and "Rhodes Decl." refer to the Declaration of Terri Rhodes in Support of Defendant Time Warner Cable's Motion for Protective Order Staying Discovery.

1   separate divisions have separate marketing policies and procedures.  (Rhodes Decl. ¶ 6.)  The

2   separate divisions have separate components, products and packages of services from the other

3   divisions.  (Rhodes Decl. ¶ 7.)  The separate divisions also train their customer service

4   representative separately.  (Rhodes Decl. ¶ 8.)

5       Plaintiff has two accounts with TWC in the San Diego/Desert Cities division.  (Rhodes

6   Decl. ¶ 9.)  That division provides cable services only in the San Diego and Desert Cities areas in

7   California and does not provide cable services to other California locations.  (Rhodes Decl. ¶¶ 10-

8   11.)  Accordingly, any attempt by Plaintiffs to conduct discovery related to other than TWC's San

9   Diego/Desert Cities Division is unrelated and irrelevant to the issues of liability to Alpert

10  underlying the pending motion for summary judgment.  Accordingly, a stay pending the

11  resolution of the pending motion is appropriate.

12  **III.    IT IS WITHIN THIS COURT'S DISCRETION TO STAY DISCOVERY WHERE,
          AS HERE, PLAINTIFF' S CLASS CERTIFICATION DISCOVERY IS
13         UNNECESSARY, UNDULY BURDENSOME AND EXPENSIVE.**

14      Code of Civil Procedure section 2031.060 provides that "[t]he court, for good cause

15  shown, may make any order that justice requires to protect any party or other natural person or

16  organization from unwarranted annoyance, embarrassment, or oppression, or undue burden and

17  expense."  Code of Civil Procedure section 2025.420(b)(10) states that the court may for good

18  cause shown limit the scope of deposition examination to protect any party from undue burden

19  and expenses.  Code of Civil Procedure section 2019.030(a)(2) states that the court shall restrict

20  discovery if the discovery is unduly burdensome or expensive, taking into account the needs of

21  the case.  Issuance of a protective order is proper where, as here, Plaintiff's discovery allegedly

22  relevant information is irrelevant at this point in the case and therefore is unduly burdensome and

23  expensive.  *See Pac. Architects Collaborative v. State*, 100 Cal. App. 3d 110, 127 (1979) (holding

24  that the trial court did not abuse its discretion in refusing to permit the discovery of allegedly

25  relevant information by issuing a protective order precluding, until after the summary judgment

26  hearing, deposition of defendant employees).

27  /////

28  /////

**IV.    DISCOVERY RELATED TO CLASS CERTIFICATION AT THIS EARLY STAGE IS UNNECESSARY, UNDULY BURDENSOME, AND EXPENSIVE.**

Given the particular circumstances of this case as described above, there is no immediate need for any discovery other than related to the merits of Plaintiff Alpert's case and specifically to the TWC's San Diego/Desert Cities Division.  Discovery related to information other than TWC's San Diego/Desert Cities Division, and specifically any class certification discovery is completely unnecessary because the resolution of TWC's Motion for Summary Judgment may completely obviate the need to conduct such discovery.  Discovery related to TWC divisions other than TWC's San Diego/Desert Cities Division or class certification issues in general is irrelevant to the liability issues on which TWC's Motion for Summary Judgment is based.  Any potential relevance to these documents for class certification purposes can be resolved after decision on the pending dispositive motion.

TWC's Motion for Summary Judgment is determinative of the need for *any* class certification discovery.  If TWC's Motion for Summary Judgment is granted the recent, burdensome, and costly discovery onslaught will have been a complete waste of resources for all concerned.  At a minimum, the equities weigh in favor of permitting the Motion for Summary Judgment to be resolved before rushing into discovery related to class certification.  A brief stay addresses these concerns without causing any prejudice to Plaintiff as there are currently no scheduling deadlines in the case.

The inconvenience and expense of responding to class certification discovery at this stage clearly outweighs the potential benefits to be obtained.  Additionally, any discovery beyond Plaintiff's claim against TWC's San Diego/Desert Cities division, which is the subject of the pending Motion for Summary Judgment, is simply a fishing expedition.  A brief stay of discovery other than that related to TWC's San Diego/Desert Cities division and other than that specifically related to the merits of Plaintiff Alpert's claims relating to his treatment by his cable provider (the San Diego/Desert Cities Division of TWC) would ensure that neither the court nor the parties will be required to devote time and resources to issues which would become irrelevant in the event TWC's Motion for Summary Judgment is granted.

1    **V.    CONCLUSION**

2          Given the circumstances of this case, class discovery, including the discovery of

3    information other than that related to TWC's San Diego/Desert Cities Division is not yet

4    warranted and is unduly burdensome, pending a determination of TWC's Motion for Summary

5    Judgment.  TWC's pending Motion for Summary Judgment on a pure issue of law is dispositive

6    of every issue in this litigation.  TWC respectfully requests that this Court briefly stay class

7    discovery until the resolution of its Motion for Summary Judgment, which is set for hearing on

8    April 4, 2008.

9    Dated: March _10_, 2008

10                                          DLA PIPER US LLP

11

12                                 By _____
                                        JEFFREY M. SHOHET
13                                      JULIE L. HUSSEY
                                        CARRIE S. DOLTON
14                                      Attorneys for Defendant
                                        TIME WARNER ENTERTAINMENT-
15                                      ADVANCE/ NEWHOUSE PARTNERSHIP,
                                        A NEW YORK GENERAL PARTNERSHIP,
16                                      THROUGH ITS SAN DIEGO DIVISION,
                                        DBA TIME WARNER CABLE
17

18

19

20

21

22

23

24

25

26

27

28

1 | JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
2 | CARRIE S. DOLTON (Bar No. 234298)
**DLA PIPER US LLP**
3 | 401 B Street, Suite 1700
San Diego, CA 92101-4297
4 | Tel: 619.699.2700
Fax: 619.699.2701
5 |
Attorneys for Defendant
6 | TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK
7 | GENERAL PARTNERSHIP, THROUGH ITS SAN
DIEGO DIVISION, DBA TIME WARNER CABLE
8 |

9 |                    SUPERIOR COURT OF CALIFORNIA

10 |                        COUNTY OF SAN DIEGO

11 |

12 | LEON ALPERT, an individual, on behalf        CASE NO. GIC881621
of himself, on behalf of all those similarly
13 | situated, and on behalf of the general       **DECLARATION OF TERRI RHODES IN
public,                                       SUPPORT OF DEFENDANT TIME
14 |                                               WARNER CABLE'S MOTION FOR
Plaintiff,                    PROTECTIVE ORDER STAYING
15 |                                               PLAINTIFF'S CLASS DISCOVERY
v.                                     PENDING RESOLUTION OF TIME
16 |                                               WARNER CABLE'S MOTION FOR
TIME WARNER CABLE, INC., a                     SUMMARY JUDGMENT**
17 | Delaware corporation, and DOES 1 to 100,
Date:       April 11, 2008
18 |        Defendant.                            Time:       10:30 a.m.
Dept:       63
19 |                                               Judge:      Hon. Luis R. Vargas

20 |                                               Complaint:  March 13, 2007
FAC:        May 16, 2007
21 |

22 |

23 |        I, Terri Rhodes, declare:

24 |        1.      I am Director of Marketing, Customer Retention at the San Diego/Desert Cities

25 | division of Time Warner Entertainment-Advance/Newhouse Partnership, a New York general

26 | partnership, through its San Diego Division, dba Time Warner Cable ("TWC-SAN

27 | DIEGO/DESERT CITIES"). I have personal knowledge of the facts set forth herein and, if called

28 | to testify, I could and would testify competently thereto.

1

2        2.     Time Warner Cable is a decentralized company.  There are many divisions of

3  Time Warner Cable across the United States, and each separate division acts as a separate and

4  distinct entity.

5        3.     The separate divisions have separate marketing, finance, customer service, and

6  human resources departments.

7        4.     The separate divisions have separate budgets with their own expenses and

8  revenues.

9        5.     The separate divisions have separate pricing policies and procedures.

10        6.     The separate divisions have separate marketing policies and procedures.

11        7.     The separate divisions have separate components, products and packages of

12  services from the other divisions.

13        8.     The separate divisions train their customer service representatives separately.

14        9.     Leon Alpert has two accounts in the San Diego/Desert Cities division.

15        10.    TWC–SAN DIEGO/DESERT CITIES, the division with whom Plaintiff Alpert

16  has two accounts, provides cable services only in the San Diego and Desert Cities areas in

17  California.

18        11.    The TWC-SAN DIEGO/DESERT CITIES division does not provide cable

19  services to other California locations.

20        I declare under penalty of perjury under the laws of the State of California and the United

21  States of America that the foregoing is true and correct and that this declaration was executed on

22  March 7, 2008, in San Diego, California.

23

24  Terri Rhodes

25

26

27

28

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
7  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE
8
9                        SUPERIOR COURT OF CALIFORNIA
10                          COUNTY OF SAN DIEGO
11
12  LEON ALPERT, an individual, on behalf        CASE NO. GIC881621
    of himself, on behalf of all those similarly
13  situated, and on behalf of the general       **DECLARATION OF JULIE L. HUSSEY IN**
    public,                                      **SUPPORT OF DEFENDANT TIME**
14                                               **WARNER CABLE'S MOTION FOR**
                     Plaintiff,                  **PROTECTIVE ORDER STAYING**
15                                               **PLAINTIFF'S CLASS DISCOVERY**
            v.                                   **PENDING RESOLUTION OF TIME**
16                                               **WARNER CABLE'S MOTION FOR**
    TIME WARNER CABLE, INC., a                   **SUMMARY JUDGMENT**
17  Delaware corporation, and DOES 1 to 100,
                                                 Date:    April 11, 2008
18                   Defendant.                  Time:    10:30 a.m.
                                                 Dept:    63
19                                               Judge:   Hon. Luis R. Vargas
20                                               Complaint: March 13, 2007
                                                 FAC:     May 16, 2007
21
22      I, Julie L. Hussey, declare and state as follows:

23      1.      I am an attorney duly admitted to practice law in the State of California, and

24  admitted to appear before this Court. I am a partner with the law firm of DLA Piper US LLP,

25  attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

26  New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC-

27

28

2.      On September 17, 2007, Plaintiff propounded Request for Production of Documents (Set 1) on TWC.  Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Request for Production of Documents (Set 1).

3.      On January 2, 2008, Plaintiff propounded Form Interrogatories (Set 1) on TWC. Attached hereto as Exhibit B is a true and correct copy of Plaintiff's Form Interrogatories (Set 1).

4.      On January 2, 2008, Plaintiff propounded Special Interrogatories (Set 1) on TWC . Attached hereto as Exhibit C is a true and correct copy of Plaintiff's Form Interrogatories (Set 1).

5.      On February 21, 2008, Plaintiff noticed the deposition of TWC's Person Most Knowledgeable for March 14, 2008 at 10 p.m.. Attached hereto as Exhibit D is a true and correct copy of Plaintiff's Notice of Deposition of TWC's Person Most Knowledgeable ("PMK").

6.      On February 27, 2007, as a good faith effort to meet and confer, I discussed with Barron Ramos, counsel for Plaintiff, the issue of limiting the scope of the PMK deposition to the San Diego/Desert Cities Division or even initially focusing on the San Diego/Desert Cities Division with the possibility that after the resolution of TWC's pending Motion Summary Judgment . I also discussed with Mr. Ramos regarding the scope of Plaintiff's Interrogatories. Mr. Ramos stated that he would not consider limiting any of Plaintiff's discovery to the San Diego/Desert Cities division – not now and not ever.

7.      On February 28, 2008, Plaintiff served an amended noticed the deposition of TWC's Person Most Knowledgeable for March 14, 2008 at 10 a.m.. Attached hereto as Exhibit E is a true and correct copy of Plaintiff's Amended Notice of Deposition of TWC's Person Most Knowledgeable.

8.      On March 4, 2008, I received two letters from Mr. Ramos stating that he would file a Motion to Compel TWC-SAN DIEGO/DESERT CITIES responses to Interrogatories to information beyond the San Diego/Desert Cities division.  Attached hereto as Exhibit F is a true and correct copy of two letters to me from Barron Ramos, counsel for Plaintiff, dated March 4, 2008.

9.      In response to Mr. Ramos' two letters, I sent Mr. Ramos an email stating that Plaintiff's discovery outside of the San Diego/Desert Cities division is irrelevant and improper at

1  this time and as a result of TWC-SAN DIEGO/DESERT CITIES would file a protective order to

2  stay discovery related to other than the San Diego/Desert Cities Division.  Attached hereto as

3  Exhibit G is a true and correct copy of my March 4, 2008 email to Mr. Ramos.

4          10.     Attached hereto as Exhibit H is a true and correct copy of an email exchange

5  between Mr. Ramos and me that took place on March 5, 2008 and March 6, 2008 including

6  further discussions regarding the scope of discovery and the PMK deposition.

7          11.     On March 6, 2008, I received an email from Mr. Ramos indicating that he would

8  agree to limit the PMK deposition to the San Diego/Desert Cities location, with the understanding

9  that Plaintiff would take the PMK deposition regarding all of California at a later time.  Attached

10  hereto as Exhibit I is a true and correct copy of the March 6, 2008 email from Mr. Ramos.

11          I declare under penalty of perjury under the laws of the State of California and the United

12  States of America that the foregoing is true and correct and that this declaration was executed on

13  March __, 2008, in San Diego, California.

14

15  _____

16  Julie L. Hussey

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF TERRI RHODES ISO MOTION FOR PROTECTIVE ORDER STAYING DISCOVERY

**EXHIBIT A**



1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Phone (858) 349-6019
4  Fax (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888
9
   Attorneys for plaintiff and the Class
10
             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11
                        **COUNTY OF SAN DIEGO**
12
   LEON ALPERT, an individual,              ) Case No. GIC 881621
13 on behalf of himself, on behalf of all those)
   similarly situated, and on behalf of the general) **CLASS ACTION**
14 public,                                   )
                                             ) **PLAINTIFF'S REQUEST FOR**
15        Plaintiffs,                        ) **PRODUCTION OF DOCUMENTS,**
   v.                                        ) **SET NO. ONE (1)**
16                                           )
   TIME WARNER CABLE, INC., a Delaware)
17 corporation, and DOES 1 TO 100,          ) Dept: 63
                                             ) Judge: Hon. Luis R. Vargas
18        Defendants.                        )
                                             ) Trial Date: None Set
19                                           ) Case Filed: March 13, 2007
                                             )
20                                           )
                                             )
21                                           )
                                             )
22 _____ )

23

24

25 PROPOUNDING PARTY:                    PLAINTIFF LEON ALPERT

26 RESPONDING PARTY:                     TIME WARNER CABLE, INC.

27 NO:                                   ONE

28                           1
   _____
                            PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS,
                                                         SET NO. ONE (1)

1      **PLEASE TAKE NOTICE** that on or before October 25, at 10:00 a.m. in the Law Offices

2  of BARRON E. RAMOS, Attorney at Law, A Professional Corporation, 132 N. El Camino Real,

3  # 303, Encinitas, California 92024, plaintiff Chadwick Bowen will require defendant TIME

4  WARNER CABLE, INC., to produce for inspection and copying the following pursuant to

5  California Code of Civil Procedure Section 2031.010 to wit:

6      Definitions:

7      A.    The term "DOCUMENT" or "DOCUMENTS" shall include any "writing" as

8  defined in California Evidence Code section 250, whether printed, recorded, filmed or reproduced

9  by any other mechanical or electrical process, or written or produced by hand, and whether or not

10  claimed to be privileged against discovery on any ground, and including all originals, masters, and

11  non-identical copies.

12      B.    The term "YOU" or "YOUR" shall refer to TIME WARNER CABLE, INC., all

13  affiliated entities of TIME WARNER CABLE, INC., including its parent company, if any, and all

14  subsidiaries of such parent, the employees, agents, officers, directors and representatives of all of

15  these entities, and all other persons or entities acting on behalf or under the control of these entities.

16      C.    The term RESIDENT shall refer to occupants of properties during the time period

17  from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in

18  California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide

19  basic cable services to the HOA members.

20      D.    The term RETAIL CUSTOMER shall refer to California consumers to whom YOU

21  provided products and services during the time period from March 13, 2003 to March 13, 2007,

22  other than RESIDENTS.

23      **REQUEST NUMBER ONE:**

24      Please produce all DOCUMENTS which depict pricing for all of YOUR products and

25  services, including any bundled service packages, to RESIDENTS.

26      **REQUEST NUMBER TWO:**

27      Please produce all DOCUMENTS which depict pricing for all of YOUR products and

28

2

1   services, including any bundled service packages, to RETAIL CUSTOMERS.

2   **REQUEST NUMBER THREE:**

3   Please produce all DOCUMENTS which depict all communications with plaintiff Leon

4   Alpert at any time, including, but not limited to, transcripts of telephone conversations,

5   correspondence to and from Mr. Alpert, e-mail communications to and from Mr. Alpert, and any

6   other form in which YOU maintain such communications (e.g., audio recordings).

7   **REQUEST NUMBER FOUR:**

8   Please produce a copy of any scripts used by YOUR employees when dealing with

9   RESIDENTS that call to complain about their bill.

10  **REQUEST NUMBER FIVE:**

11  Please produce a copy of any scripts used by YOUR employees when dealing with

12  RETAIL CUSTOMERS that call to complaint about their bill.

13  **REQUEST NUMBER SIX:**

14  Please produce a copy of all web pages YOU posted during the time period from March 13,

15  2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any

16  bundled service packages, to RESIDENTS.

17  **REQUEST NUMBER SEVEN:**

18  Please produce a copy of all web pages YOU posted during the time period from March 13,

19  2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any

20  bundled service packages, to RETAIL CUSTOMERS.

21  **REQUEST NUMBER EIGHT:**

22  Please produce a copy of all DOCUMENTS which explain why RESIDENTS and RETAIL

23  CUSTOMERS are charged differing rates for YOUR products and services.

24  **REQUEST NUMBER NINE:**

25  Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees that

26  handle incoming customer calls determine whether the customer that is calling is a RESIDENT or

27  a RETAIL CUSTOMER.

28

3

1   **REQUEST NUMBER TEN:**

2   Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees

3   determine whether to charge a customer purchasing products or services as a RESIDENT customer

4   or a RETAIL CUSTOMER.

5   **REQUEST NUMBER ELEVEN:**

6   Please produce a copy of YOUR policies and procedures when dealing with RESIDENTS

7   that request a refund for being overcharged for products and services provided by YOU.

8   **REQUEST NUMBER TWELVE:**

9   Please produce a copy of YOUR policies and procedures when dealing with RETAIL

10  CUSTOMERS that request a refund for being overcharged for products and services provided by

11  YOU.

12

13

14  DATED: September 17, 2007                    By: _____

15                                                  Barron E. Ramos
                                                    Attorneys for Plaintiff and the Class
16

17

18

19

20

21

22

23

24

25

26

27

28                                  4

**PROOF OF SERVICE**

I am employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas, California 92024.

On September 17, 2007, I served the following documents:

**REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. ONE**

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Jeffrey M. Shohet
Julie L. Hussey
Carrie S. Dolton
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Facsimile: (619) 699-2701

*Attorneys for Time Warner Entertainment-Advance NewHouse Partnership, A New York General Partnership, Through its San Diego Division d.b.a. Time Warner Cable*

X   (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California 92024, following ordinary business practices. I am familiar with the practice of collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal service the same day as it is placed for collection.

(BY FACSIMILE) I transmitted the above-listed document to the party listed above via facsimile. The transmission was reported complete and without error. The telephone number of the facsimile machine I used was (858) 720-0752.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Encinitas, California on September 17, 2007.

Barron E. Ramos

1

CASE NO. GIC 881621
PROOF OF SERVICE

DISC-001

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Barron E. Ramos (179620)
Attorney at Law, APC
132 N. El Camino Real, # 303
Encinitas, CA 92024
TELEPHONE NO.: 760-274-6438
FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name): plaintiff Leon Alpert

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego

SHORT TITLE OF CASE:
Alpert v. Time Warner

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| Asking Party: plaintiff Leon Alpert<br><br>Answering Party: defendant Time Warner<br>Set No.: one | GIC 881621 |

**Sec. 1. Instructions to All Parties**

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2. Instructions to the Asking Party**

(a) These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, Form *Interrogatories—Limited Civil Cases (Economic Litigation)* (form DISC-004), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c) You may insert your own definition of INCIDENT in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d) The interrogatories in section 16.0, Defendant's Contentions–Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e) Additional interrogatories may be attached.

**Sec. 3. Instructions to the Answering Party**

(a) An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____     _____
        (DATE)                              (SIGNATURE)

**Sec. 4. Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a) *(Check one of the following):*

[✓] (1) **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.

Page 1 of 8

Form Approved for Optional Use
Judicial Council of California
DISC-001 [Rev. January 1, 2008]

**FORM INTERROGATORIES—GENERAL**

Code of Civil Procedure,
§§ 2030.010-2030.410, 2033.710
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

(2) **INCIDENT** means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(e)(2)"):*

**(b) YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

**(c) PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

**(d) DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

**(e) HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

**(f) ADDRESS** means the street address, including the city, state, and zip code.

**Sec. 5. Interrogatories**

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

<div align="center"><strong>CONTENTS</strong></div>

1.0 Identity of Persons Answering These Interrogatories
2.0 General Background Information—Individual
3.0 General Background Information—Business Entity
4.0 Insurance
5.0 *[Reserved]*
6.0 Physical, Mental, or Emotional Injuries
7.0 Property Damage
8.0 Loss of Income or Earning Capacity
9.0 Other Damages
10.0 Medical History
11.0 Other Claims and Previous Claims
12.0 Investigation—General
13.0 Investigation—Surveillance
14.0 Statutory or Regulatory Violations
15.0 Denials and Special or Affirmative Defenses
16.0 Defendant's Contentions Personal Injury
17.0 Responses to Request for Admissions
18.0 *[Reserved]*
19.0 *[Reserved]*
20.0 How the Incident Occurred—Motor Vehicle
25.0 *[Reserved]*
30.0 *[Reserved]*
40.0 *[Reserved]*
50.0 Contract
60.0 *[Reserved]*
70.0 Unlawful Detainer *[See separate form DISC-003]*
101.0 Economic Litigation *[See separate form DISC-004]*
200.0 Employment Law *[See separate form DISC-002]*
     Family Law *[See separate form FL-145]*

**DISC-001**

**1.0 Identity of Persons Answering These Interrogatories**

☑ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

**2.0 General Background Information—Individual**

☐ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☐ 2.2 State the date and place of your birth.

☐ 2.3 At the time of the **INCIDENT**, did you have a driver's license? If so state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.4 At the time of the **INCIDENT**, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☐ 2.5 State:
(a) your present residence **ADDRESS**;
(b) your residence **ADDRESSES** for the past five years; and
(c) the dates you lived at each **ADDRESS**.

☐ 2.6 State:
(a) the name, **ADDRESS**, and telephone number of your present employer or place of self-employment; and
(b) the name, **ADDRESS**, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the **INCIDENT** until today.

☐ 2.7 State:
(a) the name and **ADDRESS** of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☐ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☐ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☐ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

**DISC-001**

☐ 2.11 At the time of the **INCIDENT** were you acting as an agent or employee for any **PERSON**? If so, state:
(a) the name, **ADDRESS**, and telephone number of that **PERSON**; and
(b) a description of your duties.

☐ 2.12 At the time of the **INCIDENT** did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the **INCIDENT**? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the **INCIDENT**.

☐ 2.13 Within 24 hours before the **INCIDENT** did you or any person involved in the **INCIDENT** use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, **ADDRESS**, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the **ADDRESS** where each substance was used or taken;
(f) the name, **ADDRESS**, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, **ADDRESS**, and telephone number of any **HEALTH CARE PROVIDER** who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

**3.0 General Background Information—Business Entity**

☑ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and **ADDRESS** of each general partner; and
(e) the **ADDRESS** of the principal place of business.

☑ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the **ADDRESS** of the principal place of business; and
(e) whether you are qualified to do business in California.

☑ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and **ADDRESS** of each joint venturer; and
(d) the **ADDRESS** of the principal place of business.

☑ 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the **ADDRESS** of the principal place of business.

☑ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the **ADDRESS** of the principal place of business.

☑ 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

**4.0 Insurance**

☑ 4.1 At the time of the **INCIDENT**, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, for each policy state:
(a) the kind of coverage;
(b) the name and **ADDRESS** of the insurance company;
(c) the name, **ADDRESS**, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

☑ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **INCIDENT**? If so, specify the statute.

**5.0** *[Reserved]*

**6.0 Physical, Mental, or Emotional Injuries**

☐ 6.1 Do you attribute any physical, mental, or emotional injuries to the **INCIDENT**? (*If your answer is "no," do not answer interrogatories 6.2 through 6.7*).

☐ 6.2 Identify each injury you attribute to the **INCIDENT** and the area of your body affected.

**DISC-001**

6.3   Do you still have any complaints that you attribute to the **INCIDENT**? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4   Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) or treatment from a **HEALTH CARE PROVIDER** for any injury you attribute to the **INCIDENT**? If so, for each **HEALTH CARE PROVIDER** state:
(a) the name, **ADDRESS**, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5   Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the **INCIDENT**? If so, for each medication state:
(a) the name;
(b) the **PERSON** who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6   Are there any other medical services necessitated by the injuries that you attribute to the **INCIDENT** that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, **ADDRESS**, and telephone number of each provider.

6.7   Has any **HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **INCIDENT**? If so, for each injury state:
(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER**;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

**7.0  Property Damage**

7.1   Do you attribute any loss of or damage to a vehicle or other property to the **INCIDENT**?  If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, **ADDRESS**, and telephone number of the seller, the date of sale, and the sale price.

7.2   Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, **ADDRESS**, and telephone number of the **PERSON** who prepared it and the date prepared;
(b) the name, **ADDRESS**, and telephone number of each **PERSON** who has a copy of it; and
(c) the amount of damage stated.

7.3   Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, **ADDRESS**, and telephone number of the **PERSON** who repaired it;
(e) the name, **ADDRESS**, and telephone number of the **PERSON** who paid for the repair.

**8.0  Loss of Income or Earning Capacity**

8.1   Do you attribute any loss of income or earning capacity to the **INCIDENT**? *(If your answer is "no," do not answer interrogatories 8.2 through 8.8).*

8.2   State:
(a) the nature of your work;
(b) your job title at the time of the **INCIDENT**; and
(c) the date your employment began.

8.3   State the last date before the **INCIDENT** that you worked for compensation.

8.4   State your monthly income at the time of the **INCIDENT** and how the amount was calculated.

8.5   State the date you returned to work at each place of employment following the **INCIDENT**.

8.6   State the dates you did not work and for which you lost income as a result of the **INCIDENT**.

8.7   State the total income you have lost to date as a result of the **INCIDENT** and how the amount was calculated.

8.8   Will you lose income in the future as a result of the **INCIDENT**? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

DISC-001

**9.0 Other Damages**

9.1  Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:
(a)  the nature;
(b)  the date it occurred;
(c)  the amount; and
(d)  the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

9.2  Do any DOCUMENTS support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**10.0 Medical History**

10.1  At any time before the INCIDENT did you have complaints or injuries that involved the same part of your body claimed to have been injured in the INCIDENT? If so, for each state:
(a)  a description of the complaint or injury;
(b)  the dates it began and ended; and
(c)  the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER whom you consulted or who examined or treated you.

10.2  List all physical, mental, and emotional disabilities you had immediately before the INCIDENT. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

10.3  At any time after the INCIDENT, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a)  the date and the place it occurred;
(b)  the name, ADDRESS, and telephone number of any other PERSON involved;
(c)  the nature of any injuries you sustained;
(d)  the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER who you consulted or who examined or treated you; and
(e)  the nature of the treatment and its duration.

**11.0 Other Claims and Previous Claims**

11.1  Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a)  the date, time, and place and location (closest street ADDRESS or intersection) of the INCIDENT giving rise to the action, claim, or demand;
(b)  the name, ADDRESS, and telephone number of each PERSON against whom the claim or demand was made or the action filed;

(c)  the court, names of the parties, and case number of any action filed;
(d)  the name, ADDRESS, and telephone number of any attorney representing you;
(e)  whether the claim or action has been resolved or is pending; and
(f)  a description of the injury.

11.2  In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a)  the date, time, and place of the INCIDENT giving rise to the claim;
(b)  the name, ADDRESS, and telephone number of your employer at the time of the injury;
(c)  the name, ADDRESS, and telephone number of the workers' compensation insurer and the claim number;
(d)  the period of time during which you received workers' compensation benefits;
(e)  a description of the injury;
(f)  the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who provided services; and
(g)  the case number at the Workers' Compensation Appeals Board.

**12.0 Investigation—General**

12.1  State the name, ADDRESS, and telephone number of each individual:
(a)  who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;
(b)  who made any statement at the scene of the INCIDENT;
(c)  who heard any statements made about the INCIDENT by any individual at the scene; and
(d)  who YOU OR ANYONE ACTING ON YOUR BEHALF claim has knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

12.2  Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state:
(a)  the name, ADDRESS, and telephone number of the individual interviewed;
(b)  the date of the interview; and
(c)  the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

12.3  Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:
(a)  the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;
(b)  the name, ADDRESS, and telephone number of the individual who obtained the statement;
(c)  the date the statement was obtained; and
(d)  the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

**DISC-001**

12.4  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the **INCIDENT** or plaintiff's injuries? If so, state:

(a) the number of photographs or feet of film or videotape;

(b) the places, objects, or persons photographed, filmed, or videotaped;

(c) the date the photographs, films, or videotapes were taken;

(d) the name, **ADDRESS**, and telephone number of the individual taking the photographs, films, or videotapes; and

(e) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the photographs, films, or videotapes.

12.5  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310) concerning the **INCIDENT**? If so, for each item state:

(a) the type (i.e., diagram, reproduction, or model);

(b) the subject matter; and

(c) the name, **ADDRESS**, and telephone number of each **PERSON** who has it.

12.6  Was a report made by any **PERSON** concerning the **INCIDENT**? If so, state:

(a) the name, title, identification number, and employer of the **PERSON** who made the report;

(b) the date and type of report made;

(c) the name, **ADDRESS**, and telephone number of the **PERSON** for whom the report was made; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of the report.

12.7  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the **INCIDENT**? If so, for each inspection state:

(a) the name, **ADDRESS**, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and

(b) the date of the inspection.

**13.0  Investigation—Surveillance**

13.1  Have **YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the **INCIDENT** or any party to this action? If so, for each surveillance state:

(a) the name, **ADDRESS**, and telephone number of the individual or party;

(b) the time, date, and place of the surveillance;

(c) the name, **ADDRESS**, and telephone number of the individual who conducted the surveillance; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy of any surveillance photograph, film, or videotape.

13.2  Has a written report been prepared on the surveillance? If so, for each written report state:

(a) the title;

(b) the date;

(c) the name, **ADDRESS**, and telephone number of the individual who prepared the report; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original or a copy.

**14.0  Statutory or Regulatory Violations**

14.1  Do **YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any **PERSON** involved in the **INCIDENT** violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the **INCIDENT**? If so, identify the name, **ADDRESS**, and telephone number of each **PERSON** and the statute, ordinance, or regulation that was violated.

14.2  Was any **PERSON** cited or charged with a violation of any statute, ordinance, or regulation as a result of this **INCIDENT**? If so, for each **PERSON** state:

(a) the name, **ADDRESS**, and telephone number of the **PERSON**;

(b) the statute, ordinance, or regulation allegedly violated;

(c) whether the **PERSON** entered a plea in response to the citation or charge and, if so, the plea entered; and

(d) the name and **ADDRESS** of the court or administrative agency, names of the parties, and case number.

**15.0  Denials and Special or Affirmative Defenses**

☑ 15.1  Identify each denial of a material allegation and each special or affirmative defense in your pleadings and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT**.

**16.0  Defendant's Contentions—Personal Injury**

16.1  Do you contend that any **PERSON**, other than you or plaintiff, contributed to the occurrence of the **INCIDENT** or the injuries or damages claimed by plaintiff? If so, for each **PERSON**:

(a) state the name, **ADDRESS**, and telephone number of the **PERSON**;

(b) state all facts upon which you base your contention;

(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

16.2  Do you contend that plaintiff was not injured in the **INCIDENT**? If so:

(a) state all facts upon which you base your contention;

(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of the facts; and

(c) identify all **DOCUMENTS** and other tangible things that support your contention and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

**DISC-001**

16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the INCIDENT? If so, for each injury:

(a) identify it;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.4  Do you contend that any of the services furnished by any HEALTH CARE PROVIDER claimed by plaintiff in discovery proceedings thus far in this case were not due to the INCIDENT? If so:

(a) identify each service;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.5  Do you contend that any of the costs of services furnished by any HEALTH CARE PROVIDER claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:

(a) identify each cost;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the INCIDENT? If so:

(a) identify each part of the loss;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.7  Do you contend that any of the property damage claimed by plaintiff in discovery Proceedings thus far in this case was not caused by the INCIDENT? If so:

(a) identify each item of property damage;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:

(a) identify each cost item;

(b) state all facts upon which you base your contention;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and

(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

16.9  Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the INCIDENT by a plaintiff in this case? If so, for each plaintiff state:

(a) the source of each DOCUMENT;

(b) the date each claim arose;

(c) the nature of each claim; and

(d) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

16.10  Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a HEALTH CARE PROVIDER not previously identified (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310)? If so, for each plaintiff state:

(a) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER;

(b) a description of each DOCUMENT; and

(c) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**17.0 Responses to Request for Admissions**

17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;

(b) state all facts upon which you base your response;

(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and

(d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**18.0** *[Reserved]*

**19.0** *[Reserved]*

**20.0 How the Incident Occurred—Motor Vehicle**

20.1  State the date, time, and place of the INCIDENT (closest street ADDRESS or intersection).

20.2  For each vehicle involved in the INCIDENT, state:

(a) the year, make, model, and license number;

(b) the name, ADDRESS, and telephone number of the driver;

DISC-001

(c) the name, **ADDRESS**, and telephone number of each occupant other than the driver;

(d) the name, **ADDRESS**, and telephone number of each registered owner;

(e) the name, **ADDRESS**, and telephone number of each lessee;

(f) the name, **ADDRESS**, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ **20.3** State the **ADDRESS** and location where your trip began and the **ADDRESS** and location of your destination.

☐ **20.4** Describe the route that you followed from the beginning of your trip to the location of the **INCIDENT**, and state the location of each stop, other than routine traffic stops, during the trip leading up to the **INCIDENT**.

☐ **20.5** State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the **INCIDENT** for the 500 feet of travel before the **INCIDENT**.

☐ **20.6** Did the **INCIDENT** occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ **20.7** Was there a traffic signal facing you at the time of the **INCIDENT**? If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the **INCIDENT**.

☐ **20.8** State how the **INCIDENT** occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the **INCIDENT**;

(b) at the time of the **INCIDENT**; and (c) just after the **INCIDENT**.

☐ **20.9** Do you have information that a malfunction or defect in a vehicle caused the **INCIDENT**? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ **20.10** Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the **INCIDENT**? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, **ADDRESS**, and telephone number of each **PERSON** who is a witness to or has information about each malfunction or defect; and

(d) state the name, **ADDRESS**, and telephone number of each **PERSON** who has custody of each defective part.

☐ **20.11** State the name, **ADDRESS**, and telephone number of each owner and each **PERSON** who has had possession since the **INCIDENT** of each vehicle involved in the **INCIDENT**.

**25.0** *[Reserved]*

**30.0** *[Reserved]*

**40.0** *[Reserved]*

**50.0 Contract**

☑ **50.1** For each agreement alleged in the pleadings:

(a) identify each **DOCUMENT** that is part of the agreement and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(b) state each part of the agreement not in writing, the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to that provision, and the date that part of the agreement was made;

(c) identify all **DOCUMENTS** that evidence any part of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(d) identify all **DOCUMENTS** that are part of any modification to the agreement, and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**;

(e) state each modification not in writing, the date, and the name, **ADDRESS**, and telephone number of each **PERSON** agreeing to the modification, and the date the modification was made;

(f) identify all **DOCUMENTS** that evidence any modification of the agreement not in writing and for each state the name, **ADDRESS**, and telephone number of each **PERSON** who has the **DOCUMENT**.

☑ **50.2** Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☑ **50.3** Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☑ **50.4** Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☑ **50.5** Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☑ **50.6** Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

**60.0** *[Reserved]*

**PROOF OF SERVICE**

1

2    I am employed in the County of San Diego, California.  I am over the age of 18 years and

3    not a party to the within action.  My business address is 132 N. El Camino Real, # 303, Encinitas,

4    California 92024.

5    On January 2, 2008, I served the following documents:

6    **PLAINTIFF'S SPECIAL INTERROGATORIES, SET NO. ONE**
     **PLAINTIFF'S FORM INTERROGATORIES, SET NO. ONE**
7

8    on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

9    follows:

10   Jeffrey M. Shohet                    *Attorneys for Time Warner Entertainment-*
                                          *Advance NewHouse Partnership, A New York*
11   Julie L. Hussey                      *General Partnership, Through its San Diego*
     Carrie S. Dolton                     *Division d.b.a. Time Warner Cable*
12   **DLA PIPER US LLP**
     401 B Street, Suite 1700
13   San Diego, CA 92101-4297
     Facsimile: (619) 764-6644
14

15

16   X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-
          class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California
17        92024, following ordinary business practices.  I am familiar with the practice of collection
          and processing of correspondence, said practice being that in the ordinary course of business,
18        correspondence is deposited in the United States Postal service the same day as it is placed
          for collection.

19

20        (BY FACSIMILE) I transmitted the above-listed document to the party listed above via
          facsimile.  The transmission was reported complete and without error.  The telephone number
21        of the facsimile machine I used was (760) 274-6438.

22        I declare under penalty of perjury under the laws of the State of California that the

23   foregoing is true and correct.

24        Executed at Encinitas, California on January 2, 2008.

25

26   _____
     Barron E. Ramos
27

28

                                        1                    CASE NO. GIC 881621
                                                             PROOF OF SERVICE

**EXHIBIT C**

1  **BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
132 N. El Camino Real, # 303
3  Encinitas, California 92024
Telephone: (760) 274-6438
4  Facsimile: (760) 994-1354

5  **CLARK & MARKHAM**
David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
San Diego, CA 92101
8  Telephone: (619) 239-1321
Facsimile: (619) 239-5888
9
Attorneys for plaintiff and the Class
10
### SUPERIOR COURT OF THE STATE OF CALIFORNIA
11
### COUNTY OF SAN DIEGO
12

| | |
|---|---|
| 13  LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public, | ) Case No. GIC 881621 |
| 14 | ) **CLASS ACTION** |
| 15      Plaintiffs, | ) **PLAINTIFF'S SPECIAL** |
| 16  v. | ) **INTERROGATORIES, SET NO. ONE** |
| 17  TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100, | ) Dept: 63 |
| 18      Defendants. | ) Judge: Hon. Luis R. Vargas |
| 19 | ) Trial Date: None Set |
| 20 | ) Case Filed: March 13, 2007 |

13  LEON ALPERT, an individual,     ) Case No. GIC 881621
on behalf of himself, on behalf of all those)
14  similarly situated, and on behalf of the general) **CLASS ACTION**
public,                         )
15                              ) **PLAINTIFF'S SPECIAL**
      Plaintiffs,              ) **INTERROGATORIES, SET NO. ONE**
16  v.                          )
                               )
17  TIME WARNER CABLE, INC., a Delaware) Dept: 63
corporation, and DOES 1 TO 100,  ) Judge: Hon. Luis R. Vargas
18                              )
      Defendants.              ) Trial Date: None Set
19                              ) Case Filed: March 13, 2007
20
21
22
23
24
25  PROPOUNDING PARTY:                    PLAINTIFF LEON ALPERT
26  RESPONDING PARTY:                     TIME WARNER CABLE, INC.
27  NO:                                   ONE
28                              1

1         Plaintiff Leon Alpert requests that defendant Time Warner answer each of the following

2   interrogatories, under oath, fully and separately within thirty (30) days pursuant to the provisions of

3   Section 2030 of the California Code of Civil Procedure.

4                                          **SPECIAL INTERROGATORIES**

5         1. During the CLASS PERIOD (The term "CLASS PERIOD" shall refer to the time period

6   beginning March 13, 2003 and ending March 13, 2007), for how many RESIDENTS (The term

7   "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD that were part of a

8   homeowners' association (HOA) in California with whom YOU had entered into a "Residential

9   Bulk Services Agreement" to provide basic cable services to the HOA members) did YOU (The

10  term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent company, if

11  any, and all subsidiaries of such parent, the employees, agents, officers, directors and

12  representatives of all of these entities, and all other persons or entities acting on behalf or under the

13  control of these entities) provide service in the State of California?

14        2. During the entire CLASS PERIOD, did YOU provide RESIDENTS pricing for services

15  that reflected the fact that RESIDENTS were already paying for basic and/or expanded cable

16  services through their HOA (hereinafter "RESIDENT Pricing")?

17        3. If during the entire CLASS PERIOD YOU did not provide RESIDENT Pricing for

18  services that reflected the fact that RESIDENTS were already paying for basic and/or expanded

19  cable services through their HOA, why not?

20        4. If YOU provided RESIDENT Pricing for services that reflected the fact that

21  RESIDENTS were already paying for basic and/or expanded cable services through their HOA for

22  a portion of the CLASS PERIOD, please identify the dates that YOU provided such pricing.

23        5. During the CLASS PERIOD, if YOU published RESIDENT Pricing on the Internet just

24  as you published retail pricing, please identify the specific URLs where such pricing appeared.

25        6. If during the CLASS PERIOD YOU did not publish RESIDENT Pricing on the Internet

26  just as you published retail pricing, why not?

27        7. During the CLASS PERIOD, did YOU make RESIDENT Pricing known to

28                                  2

1  RESIDENTS?

2      8. If during the CLASS PERIOD YOU made RESIDENT Pricing known to RESIDENTS,

3  how did YOU do so?

4      9. Do YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

5  requests a specific bundle?

6      10. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

7  requests a specific bundle, please state all facts that support that contention.

8      11. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

9  requests a specific bundle, please identify all witnesses that support that contention.

10     12. If YOU contend that YOU only bundle services for RESIDENTS when a RESIDENT

11 requests a specific bundle, please identify all documents that support that contention.

12     13. Please identify the customer service representative whose recorded conversation with

13 plaintiff Alpert (which Time Warner has misplaced/destroyed) resulted in Alpert being placed in an

14 HOA bundle in the fall of 2006.

15     14. Did plaintiff Alpert have bundled services before he had the conversation with YOUR

16 customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

17 2006?

18     15. If plaintiff Alpert had bundled services before he had the conversation with YOUR

19 customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

20 2006, please identify each and every bundle he already had in place at the time that conversation

21 occurred.

22     16. If plaintiff Alpert had bundled services before he had the conversation with YOUR

23 customer service representative that resulted in Alpert being placed in an HOA bundle in the fall of

24 2006, for each bundle Alpert had at that time, please state whether Alpert had specifically

25 requested that particular bundle or whether YOU had bundled Alpert.

26     17. Do YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

27 the conversation with YOUR customer service representative that resulted in Alpert being placed

28                                    3

1  in an HOA bundle in the fall of 2006?

2      18. If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

3  conversation with YOUR customer service representative that resulted in Alpert being placed in an

4  HOA bundle in the fall of 2006, please state all facts that support that contention.

5      19. If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

6  conversation with YOUR customer service representative that resulted in Alpert being placed in an

7  HOA bundle in the fall of 2006, please identify all documents that support that contention.

8      20. If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had the

9  conversation with YOUR customer service representative that resulted in Alpert being placed in an

10  HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

11      21. Why did YOU destroy the audio recording of the conversation with YOUR customer

12  service representative that resulted in Alpert being placed in an HOA bundle in the fall of 2006?

13      22. Do YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

14  conversation with YOUR customer service representative that resulted in Alpert being placed in an

15  HOA bundle in the fall of 2006?

16      23. If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

17  conversation with YOUR customer service representative that resulted in Alpert being placed in an

18  HOA bundle in the fall of 2006, please state all facts that support that contention

19      24. If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

20  conversation with YOUR customer service representative that resulted in Alpert being placed in an

21  HOA bundle in the fall of 2006, please identify all documents which support that contention.

22      25. If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

23  conversation with YOUR customer service representative that resulted in Alpert being placed in an

24  HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

25      26. When did YOU begin offering HOA bundles in California?

26      27. When did YOU begin offering retail bundles in California?

27      28. With how many HOAs in the State of California did YOU have a contract to provide

28                                   4

1    services during the CLASS PERIOD?

2        29. Did YOU automatically bundle services when RESIDENTS called to request additional

3    services during the CLASS PERIOD?

4        30. Do YOU contend that the class in this case should not be certified?

5        31. If YOU contend that the class in this case should not be certified, please state all facts

6    upon which YOU base that contention.

7        32. If YOU contend that the class in this case should not be certified, please identify all

8    documents which support that contention.

9        33. If YOU contend that the class in this case should not be certified, please identify all

10   witnesses who support that contention.

11

12   Dated: January 2, 2008

13                                       Barron E. Ramos
                                         Attorneys for plaintiffs and the class
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S SPEICAL INTERROGATORIES,
SET NO. ONE (1)

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Phone (858) 349-6019
4  Fax (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888

9

   Attorneys for plaintiff and the Class
10
                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11
                              **COUNTY OF SAN DIEGO**
12
   LEON ALPERT, an individual,                    ) Case No. GIC 881621
13 on behalf of himself, on behalf of all those)
   similarly situated, and on behalf of the general) **CLASS ACTION**
14 public,                                        )
                                                  ) **NOTICE OF DEPOSITION OF**
15         Plaintiffs,                            ) **PERSON MOST KNOWLEDGEABLE**
   v.                                             ) **[CCP 2025.010]**
16                                                )
   TIME WARNER CABLE, INC., a Delaware)
17 corporation, and DOES 1 TO 100,               ) Dept: 63
                                                  ) Judge: Hon. Luis R. Vargas
18         Defendants.                            )
                                                  ) Trial Date: None Set
19                                                ) Case Filed: March 13, 2007
                                                  )
20                                                )
                                                  )
21                                                )
                                                  )
22 _____)

23

24

25

26

27         TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

28                                        1

1    PLEASE TAKE NOTICE that on March 14, 2008, beginning at 10:00 p.m., plaintiff Leon

2    Alpert will take the deposition of defendant Time Warner Cable, Inc. (TWC) upon oral

3    examination before an officer authorized by law to administer oaths at the Law Offices of CLARK

4    & MARKHAM, 401 West "A" Street, Suite 2200, San Diego, CA 92101. The deposition will

5    continue from day to day or to a mutually agreed upon date until completed, weekends and

6    holidays excepted. This deposition will be recorded stenographically.

7    You are further advised that, pursuant to CCP 2025.230, TWC shall designate and produce

8    at the deposition those of its officers, directors, managing agents, employees or agents who are

9    most qualified to testify on its behalf as to the subject matters set forth below to the extent of any

10   information known or reasonably available to TWC.

11   **Definitions**:

12   The term "CLASS PERIOD" shall refer to the time period beginning March 13, 2003 and

13   ending March 13, 2007.

14   The term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent

15   company, if any, and all subsidiaries of such parent, the employees, agents, officers, directors and

16   representatives of all of these entities, and all other persons or entities acting on behalf or under the

17   control of these entities..

18   The term "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD

19   that were part of a homeowners' association (HOA) in California with whom YOU had entered

20   into a "Residential Bulk Services Agreement" to provide basic cable services to the HOA

21   members.

22       1.       YOUR pricing for services during the CLASS PERIOD to RESIDENTS and to

23                 non-RESIDENTS including, but not limited to, "a la carte" pricing and so called

24                 "bundle" pricing.

25       2.       Whether, during the CLASS PERIOD, YOU provided RESIDENTS pricing for

26                 services that reflected the fact that RESIDENTS were already paying for basic

27

28    2

1     and/or expanded cable services through their HOA (hereinafter "RESIDENT

2     Pricing") and, if so, how YOU did so.

3    3.     The identity and location of each HOA for which YOU provided RESIDENT

4     pricing during the CLASS PERIOD and the dates YOU provided such

5     RESIDENT pricing.

6    4.     Whether, during the CLASS PERIOD, YOU published RESIDENT Pricing on

7     the Internet just as you published retail pricing and, if so, the specific URLs

8     where such pricing appeared during the CLASS PERIOD.

9    5.     How YOU bundled services for RESIDENTS and non-RESIDENTS during the

10     CLASS PERIOD, including any auto-bundling software YOU used to do so.

11    6.     The policies and procedures YOU used during the CLASS PERIOD when

12     customers called in to obtain services.

13    7.     All of the services YOU provided to plaintiff ALPERT during the CLASS

14     PERIOD, when such services were requested and provided, and whether YOU

15     bundled ALPERT for such services.

16    8.     The destruction of the audio recording of the conversation with YOUR customer

17     service representative that resulted in Alpert being placed in an HOA bundle in

18     the fall of 2006.

19    9.     When YOU begin offering HOA bundles and retail bundles in California.

20    10.    What YOU have done to comply with the FCC's ruling of October 2007

21     concerning the unlawfulness/unfairness of exclusive agreements with HOAs.

22    11.    The Agreement between plaintiff Alpert's HOA and YOU including when the

23     Agreement first became effective, and any and all amendment or changes

24     implemented to the Agreement.

25    12.    Agreements between YOU and HOA's and other multiple dwelling units

26     (MDUs) used in California during the CLASS PERIOD.

27    13.    Why YOU offered HOA bundled pricing in San Diego sometime in 2005.

28

14. Why YOU stopped offering HOA bundles pricing in San Diego sometime in 2007.

15. How YOU communicated rates and services available to RESIDENTS during the CLASS PERIOD.

16. How YOU communicated rates and services available to non-RESIDENTS during the CLASS PERIOD.

17. YOUR 30 day notice requirement for customers, including RESIDENTS, to dispute the accuracy of YOUR bill.

18. Whether YOU had a rate structure for the provision of cable service that was uniform throughout the geographic area of San Diego during the CLASS PERIOD and, if not, why not.

19. Whether bundles were available to RESIDENTS at the time plaintiff first signed up for service in San Diego.

20. If bundles were available to RESIDENTS at the time plaintiff first signed up for service in San Diego, the least expensive bundle(s) available at that time to RESIDENTS which included all the services ordered by plaintiff at that time.

21. The name of the bundle(s) (if any existed) responsive to Subject No. 20 above and whether the same bundle(s) (if any) were available to non-RESIDENTS at the same time, and for the same price.

22. Whether, at the time plaintiff first signed up for YOUR services, the pricing software used by customer service representatives automatically suggested or computed the least expensive bundle to RESIDENTS when they ordered cable services which included those services, or, alternatively, automatically suggested or computed "a la carte" pricing.

23. Whether, at the time plaintiff first signed up for YOUR services in San Diego, the software described in Subject No. 22 above showed whether a customer was a RESIDENT or not.

4

1   24.   Why TWC decided to offer "HOA bundles" in 2005.

2   25.   What steps were followed by YOU in San Diego in 2005 and 2006 to notify

3         RESIDENTS that "HOA bundle" pricing was then available to them.

4   26.   Whether any studies or analyses were done by YOU before "HOA bundled"

5         pricing was offered in 2005 to assess whether such pricing would increase or

6         decrease revenues.

7   27.   Whether "HOA bundle pricing" was ever published by YOU on YOUR pricing

8         website between 2005 and 2007.

9   28.   How many RESIDENTS switched to "HOA bundled" pricing when it was

10        offered in 2005, 2006 and 2007.

11  29.   Whether any studies or analyses were done by YOU prior to discontinuing HOA

12        bundle pricing to determine what effect the discontinuance would have on

13        revenues.

14  30.   Whether RESIDENTS who did not sign up for "HOA bundle" pricing between

15        2005 and 2007 could sign up for "HOA bundle" pricing after it was discontinued

16        in 2007.

17  31.   From the beginning of the class period until YOU started offering "HOA

18        bundled" pricing on 2005, the least expensive bundle offered by YOU for which

19        would have covered the services ordered by plaintiff at that time?

20  32.   The price of the bundle identified in response to Subject No.31 and the name of

21        that bundle.

22  33.   Whether, in the time period described in Subject No. 31, YOU offered the same

23        bundle to both RESIDENTS and non-RESIDENTS, and at the same price.

24

25  Dated: February 20, 2008

26                                          Barron E. Ramos
                                            Attorneys for plaintiff
27

28

                                5

**PROOF OF SERVICE**

1

2    I am employed in the County of San Diego, California. I am over the age of 18 years and

3  not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas,

4  California 92024.

5    On February 20, 2008, I served the following documents:

6              **NOTICE OF DEPOSITION OF**
             **PERSON MOST KNOWLEDGEABLE**
7                    **[CCP 2025.010**

8  on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

9  follows:

10  Jeffrey M. Shohet                    *Attorneys for Time Warner Entertainment-*
                                       *Advance NewHouse Partnership, A New York*
11  Julie L. Hussey                     *General Partnership, Through its San Diego*
    Carrie S. Dolton                    *Division d.b.a. Time Warner Cable*
12  **DLA PIPER US LLP**
    401 B Street, Suite 1700
13  San Diego, CA 92101-4297
    Facsimile: (619) 764-6644
14

15

16  X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-
         class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California
17       92024, following ordinary business practices. I am familiar with the practice of collection
         and processing of correspondence, said practice being that in the ordinary course of business,
18       correspondence is deposited in the United States Postal service the same day as it is placed
         for collection.

19

20  X    (BY FACSIMILE) I transmitted the above-listed document to the party listed above via
         facsimile. The transmission was reported complete and without error. The telephone number
21       of the facsimile machine I used was (760) 274-6438.

22     I declare under penalty of perjury under the laws of the State of California that the

23  foregoing is true and correct.

24     Executed at Encinitas, California on February 20, 2008.

25

26                                         Barron E. Ramos

27

28
                                    1                      CASE NO. GIC 881621
                                                           PROOF OF SERVICE

**EXHIBIT E**



**BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
Barron E. Ramos (State Bar No. 179620)
132 N. El Camino Real, # 303
Encinitas, California 92024
Telephone: (760) 274-6438
Facsimile: (760) 994-1354

**CLARK & MARKHAM**
David R. Markham (State Bar No. 071814)
R. Craig Clark (State Bar No. 129219)
James M. Treglio (State Bar No. 228077)
401 West "A" Street, Suite 2200
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile: (619) 239-5888

Attorneys for plaintiff and the Class

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN DIEGO

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>     Plaintiffs,<br>v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>     Defendants. | Case No. GIC 881621<br><br>**CLASS ACTION**<br><br>**AMENDED NOTICE OF DEPOSITION OF PERSON MOST KNOWLEDGEABLE [CCP 2025.010]**<br><br>Dept: 63<br>Judge: Hon. Luis R. Vargas<br><br>Trial Date: None Set<br>Case Filed: March 13, 2007 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

1

1      PLEASE TAKE NOTICE that on March 14, 2008, beginning at 10:00 a.m., plaintiff Leon

2  Alpert will take the deposition of defendant Time Warner Cable, Inc. (TWC) upon oral

3  examination before an officer authorized by law to administer oaths at the Law Offices of CLARK

4  & MARKHAM, 401 West "A" Street, Suite 2200, San Diego, CA 92101.  The deposition will

5  continue from day to day or to a mutually agreed upon date until completed, weekends and

6  holidays excepted.  This deposition will be recorded stenographically.

7      You are further advised that, pursuant to CCP 2025.230, TWC shall designate and produce

8  at the deposition those of its officers, directors, managing agents, employees or agents who are

9  most qualified to testify on its behalf as to the subject matters set forth below to the extent of any

10  information known or reasonably available to TWC.

11  **<u>Definitions</u>**:

12      The term "CLASS PERIOD" shall refer to the time period beginning March 13, 2003 and

13  ending March 13, 2007.

14      The term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent

15  company, if any, and all subsidiaries of such parent, the employees, agents, officers, directors and

16  representatives of all of these entities, and all other persons or entities acting on behalf or under the

17  control of these entities..

18      The term "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD

19  that were part of a homeowners' association (HOA) in California with whom YOU had entered

20  into a "Residential Bulk Services Agreement" to provide basic cable services to the HOA

21  members.

22      1.      YOUR pricing for services during the CLASS PERIOD to RESIDENTS and to

23                non-RESIDENTS including, but not limited to, "a la carte" pricing and so called

24                "bundle" pricing.

25      2.      Whether, during the CLASS PERIOD, YOU provided RESIDENTS pricing for

26                services that reflected the fact that RESIDENTS were already paying for basic

27

28

<div align="center">2</div>

<div align="right">NOTICE OF DEPOSITION OF<br>PERSON MOST KNOWLEDGEABLE</div>

1    and/or expanded cable services through their HOA (hereinafter "RESIDENT

2    Pricing") and, if so, how YOU did so.

3.    The identity and location of each HOA for which YOU provided RESIDENT

pricing during the CLASS PERIOD and the dates YOU provided such

RESIDENT pricing.

4.    Whether, during the CLASS PERIOD, YOU published RESIDENT Pricing on

the Internet just as you published retail pricing and, if so, the specific URLs

where such pricing appeared during the CLASS PERIOD.

5.    How YOU bundled services for RESIDENTS and non-RESIDENTS during the

CLASS PERIOD, including any auto-bundling software YOU used to do so.

6.    The policies and procedures YOU used during the CLASS PERIOD when

customers called in to obtain services.

7.    All of the services YOU provided to plaintiff ALPERT during the CLASS

PERIOD, when such services were requested and provided, and whether YOU

bundled ALPERT for such services.

8.    The destruction of the audio recording of the conversation with YOUR customer

service representative that resulted in Alpert being placed in an HOA bundle in

the fall of 2006.

9.    When YOU begin offering HOA bundles and retail bundles in California.

10.    What YOU have done to comply with the FCC's ruling of October 2007

concerning the unlawfulness/unfairness of exclusive agreements with HOAs.

11.    The Agreement between plaintiff Alpert's HOA and YOU including when the

Agreement first became effective, and any and all amendment or changes

implemented to the Agreement.

12.    Agreements between YOU and HOA's and other multiple dwelling units

(MDUs) used in California during the CLASS PERIOD.

13.    Why YOU offered HOA bundled pricing in San Diego sometime in 2005.

3

14.    Why YOU stopped offering HOA bundles pricing in San Diego sometime in 2007.

15.    How YOU communicated rates and services available to RESIDENTS during the CLASS PERIOD.

16.    How YOU communicated rates and services available to non-RESIDENTS during the CLASS PERIOD.

17.    YOUR 30 day notice requirement for customers, including RESIDENTS, to dispute the accuracy of YOUR bill.

18.    Whether YOU had a rate structure for the provision of cable service that was uniform throughout the geographic area of San Diego during the CLASS PERIOD and, if not, why not.

19.    Whether bundles were available to RESIDENTS at the time plaintiff first signed up for service in San Diego.

20.    If bundles were available to RESIDENTS at the time plaintiff first signed up for service in San Diego, the least expensive bundle(s) available at that time to RESIDENTS which included all the services ordered by plaintiff at that time.

21.    The name of the bundle(s) (if any existed) responsive to Subject No. 20 above and whether the same bundle(s) (if any) were available to non-RESIDENTS at the same time, and for the same price.

22.    Whether, at the time plaintiff first signed up for YOUR services, the pricing software used by customer service representatives automatically suggested or computed the least expensive bundle to RESIDENTS when they ordered cable services which included those services, or, alternatively, automatically suggested or computed "a la carte" pricing.

23.    Whether, at the time plaintiff first signed up for YOUR services in San Diego, the software described in Subject No. 22 above showed whether a customer was a RESIDENT or not.

4

24.     Why TWC decided to offer "HOA bundles" in 2005.

25.     What steps were followed by YOU in San Diego in 2005 and 2006 to notify RESIDENTS that "HOA bundle" pricing was then available to them.

26.     Whether any studies or analyses were done by YOU before "HOA bundled" pricing was offered in 2005 to assess whether such pricing would increase or decrease revenues.

27.     Whether "HOA bundle pricing" was ever published by YOU on YOUR pricing website between 2005 and 2007.

28.     How many RESIDENTS switched to "HOA bundled" pricing when it was offered in 2005, 2006 and 2007.

29.     Whether any studies or analyses were done by YOU prior to discontinuing HOA bundle pricing to determine what effect the discontinuance would have on revenues.

30.     Whether RESIDENTS who did not sign up for "HOA bundle" pricing between 2005 and 2007 could sign up for "HOA bundle" pricing after it was discontinued in 2007.

31.     From the beginning of the class period until YOU started offering "HOA bundled" pricing on 2005, the least expensive bundle offered by YOU for which would have covered the services ordered by plaintiff at that time?

32.     The price of the bundle identified in response to Subject No.31 and the name of that bundle.

33.     Whether, in the time period described in Subject No. 31, YOU offered the same bundle to both RESIDENTS and non-RESIDENTS, and at the same price.

Dated: February 27, 2008

Barron E. Ramos
Attorneys for plaintiff

5

**EXHIBIT F**

**BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354


*VIA FAX (619) 764-6644*

March 4, 2008

Julie L. Hussey
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

     Re:   *Alpert v. Time Warner*

Dear Julie:

     I just received the Court's order re my previous Motion to Compel Compliance as I'm sure you have too. While the Court apparently agreed with Jeff's procedural argument for purposes of the Motion, the Court did not limit discovery to San Diego as you had hoped or anticipated. Accordingly, we need to resolve how to proceed with your client's rog responses which are going to be a subject of yet another Motion to Compel shortly. In our last conversation a few days ago, you indicated that if the Court limited discovery to San Diego you would likely fight us on the scope of the rogs. Since the Court has not done that, what is your position now? I need to move to compel if your client is going to continue to refuse to answer the rogs.

     Kindly let me know by close of business tomorrow, March 5, 2008, how you would like to proceed. I already have a draft ready to file, as I indicated before, since you had not replied to my previous meet and confer correspondence concerning this issue. I intend to file the Motion on Friday (or thereabouts) if your client continues to refuse to answer the rogs as propounded.

     Please advise.

                          Very truly yours,

                          Barron E. Ramos

cc    David R. Markham
       CLARK & MARKHAM *via fax* 619-239-5888
BER:sq

**BARRON E. RAMOS**
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354


*VIA FAX (619) 764-6644*

March 4, 2008

Julie L. Hussey
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

     Re:   *Alpert v. Time Warner*

Dear Julie:

     Given the pending PMK depo, the scope of which you have indicated TWC may dispute, and the other discovery disputes involving the rog responses and the failure of TWC to produce documents outside of the San Diego area, your previous offer to move the MSJ hearing date, should there be outstanding discovery matters, is now becoming a necessity.

     If I need to move to compel rog responses and deal with the scope of the PMK depo, that will take a couple of months, depending on the Court's calendar. Let me know if you move the hearing date out far enough to accommodate all of the discovery matters yet to be resolved. Please advise.

                Very truly yours,

                Barron E. Ramos

cc    David R. Markham
       CLARK & MARKHAM *via fax* 619-239-5888
BER:sq



**Dolton, Carrie**

| | |
|---|---|
| **From:** | Hussey, Julie |
| **Sent:** | Tuesday, March 04, 2008 4:18 PM |
| **To:** | 'barron@yourclasscounsel.com' |
| **Cc:** | Shohet, Jeffrey |
| **Subject:** | Alpert v. Time Warner - Interrogatories, PMK Deposition and MSJ hearing |

Barron -

One of your letters today indicated that we have not yet responded to your meet and confer efforts. To be clear, we talked last week for some time and discussed the interrogatory responses, PMK and other varied matters. As discussed last week, discovery outside of the San Diego division is irrelevant and improper at this time. When we spoke last week in response to your meet and confer letter, I notified you that unless the court's order on the Motion to Compel Compliance indicated that we should do so, Time Warner will not agree to respond to the overly broad interrogatories on behalf of the decentralized and varied California divisions. While we have not yet seen the court's order on the Motion to Compel Compliance that you described, Time Warner will not agree to respond to the subject interrogatories on behalf of all of California at this time and will continue to limit its responses to the San Diego Division.

Additionally, last week I requested that Plaintiff limit the initial PMK deposition to only the San Diego division and Plaintiff declined. Time Warner is willing and plans to move forward with the noticed PMK deposition on or about March 14 for the San Diego division only so that Plaintiff may obtain the necessary discovery to respond to the pending Motion for Summary Judgment. Time Warner will produce a PMK for the San Diego division on or about March 14. We are still working with the witness to determine what the schedule allows. Time Warner plans to move the court for a protective order staying all discovery outside the San Diego division until the MSJ is is ruled upon.

Finally, the scope of the MSJ is limited and Plaintiff has had months to conduct discovery. Time Warner has produced documents, responded to the written discovery for the San Diego division and agreed to produce a PMK for the San Diego division so that Plaintiff may complete all discovery regarding the MSJ. Time Warner will not agree to move the hearing date to accommodate the requested irrelevant and improper discovery.

Please let me know if you have any questions regarding any of the issues above.

Julie


**DLA PIPER**

Julie L. Hussey
Partner

**DLA Piper US LLP**
401 B Street, Suite 1700
San Diego, California 92101

619.699.2844 T
619.764.6644 F
Julie.Hussey@dlapiper.com
www.dlapiper.com

**Wiese, Gini**

| | |
|---|---|
| **From:** | Dolton, Carrie |
| **Sent:** | Thursday, March 06, 2008 11:48 AM |
| **To:** | Wiese, Gini |
| **Subject:** | Please print |

**Attachments:** Time Warner PMK depo



Time Warner PMK
depo

Carrie Schoomaker Dolton
DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California 92101
619.699.2859 T
619.699.2701 F
carrie.dolton@dlapiper.com
www.dlapiper.com

-----Original Message-----
From: Hussey, Julie
Sent: Thursday, March 06, 2008 11:47 AM
To: Dolton, Carrie
Subject: FW: Alpert v. Time Warner - Interrogatories, PMK Deposition and MSJ hearing

-----Original Message-----
From: Hussey, Julie
Sent: Thursday, March 06, 2008 9:33 AM
To: 'barron@yourclasscounsel.com'
Cc: Shohet, Jeffrey
Subject: RE: Alpert v. Time Warner - Interrogatories, PMK Deposition and MSJ hearing

Barron --

I am glad that you wrote me with your understanding of our conversation last week so that
we can get on the same page.
Yes, Time Warner would have been willing to accommodate an extension on the MSJ hearing if
the court had ruled in plaintiff's favor on the Motion to Compel Compliance. Had Time
Warner been ordered to produce more documents under the court's decision, an extension
would have been acceptable. As you know, such motion was denied so we are not clear what
outstanding discovery you seek that will be allowed beyond San Diego. So, to summarize,
yes, we would have accommodated outstanding discovery/MSJ hearing change if such
outstanding discovery or the requirement of a last minute production ordered by the court
existed. None exists at this time so we plan to move forward.

Secondly, yes, we told you that we had been waiting/were waiting until the court's ruling
on the Motion to Compel Compliance so that we could respond to the interrogatory meet and
confer letter. I asked that you give us a few more days to respond so we could use the
order as a guideline. As discussed, we were waiting on the ruling so that we had guidance
on whether the court was expanding discovery to all of California. I told you that if the
court ruled for plaintiff and expanded the scope of the RFP then we would probably not

1

require a motion to compel further interrogatory responses.  I never once said or
indicated that if the court's ruling was in Time Warner's favor that we would strangely
change our position and then respond on behalf of all California to your pending
discovery.  In fact, you asked me a similar question, I explained our position and then
you said  "well it sounds like I need to continue with my draft motion" and I agreed.
What part of this is/was misleading? We got the ruling (from your description in the faxed
letter) and then we immediately responded to your meet and confer letter letting you know
we would not expand the interrogatory responses because the court ruled in our favor.

We simply disagree regarding your third point.  Time Warner has responded to all discovery
requests timely and in good faith, despite your meritless accusations.  The case has been
pending for almost one year and Time Warner's position regarding the scope of discovery
has been clear since the beginning:  San Diego division only.

If plaintiff has issues regarding Time Warner's Interrogatory responses other than the
difference of opinion regarding the limitation of the scope (San Diego v. California) then
please let me know and we will do our best to accommodate your request.

Finally, in response to your email from this morning (attached), the PMK witness is
available on March 14 at 10:00 am to respond on behalf of San Diego and we prefer to
produce our witness at the DLA Piper downtown San Diego office.  Please advise us if this
is not acceptable.  We will plan for the deposition to move forward on March 14.

Regards,


Julie


-----Original Message-----
From: barron@yourclasscounsel.com [mailto:barron@yourclasscounsel.com]
Sent: Wednesday, March 05, 2008 9:08 AM
To: Hussey, Julie
Subject: Re: Alpert v. Time Warner - Interrogatories, PMK Deposition and MSJ hearing

Julie,

There are so many mistatements in your e-mail that it's hard to know where
to begin.

First, you told me long ago that your client would have no problem moving
the MSJ date back to accomodate discovery matters.  That's suddenly
changed.

Second, you told me when we spoke last week that the reason you had not
replied to my meet and confer letters was because you were waiting to see
what the Court would do re my pending motion to compel.  Specifically, you
indicated that if the Court limited discovery to San Diego you would
limit future discovery accordingly.  On other other hand, you were quite
clear that if the Court did not limit discovery to San Diego (which he did
not), you would not fight us on the scope of discovery outside of San
Diego.  Now, again, that's suddenly changed as well.

Third, permit me to correct your misperception of reality - we have not
had "months" to conduct discovery since that statement necessarily implies
that you will properly respond to same.  You did not.  Specifically,
(i) you failed to produce responsive documents necessitating the motion to
compel which was just heard last week on an order shortening time, (ii)
those responsive documents are still outstanding and necessary to
adequately prepare our MSJ opp, (iii) you have failed to respond to our
rogs in full thereby necessitating another motion to compel, and (iv) you
have failed to agree to the noticed date for the PMK depo and have already
indicated you will limit the scope of inquiry.

It looks like saying one thing and then doing another is how you all do
business over there.  I sure don't understand that approach, but I guess I
have to learn to deal with it.

2

I'll·be in touch as to how we intend to proceed given your change in
positions on these issues and refusal to permit discovery necessary to
oppose your MSJ.

Barron




> 
> 
> Barron -
> 
> One of your letters today indicated that we have not yet responded to
> your meet and confer efforts.  To be clear, we talked last week for some
> time and discussed the interrogatory responses, PMK and other varied
> matters.  As discussed last week, discovery outside of the San Diego
> division is irrelevant and improper at this time.  When we spoke last
> week in response to your meet and confer letter, I notified you that
> unless the court's order on the Motion to Compel Compliance indicated
> that we should do so, Time Warner will not agree to respond to the
> overly broad interrogatories on behalf of the decentralized and varied
> California divisions.  While we have not yet seen the court's order on
> the Motion to Compel Compliance that you described, Time Warner will not
> agree to respond to the subject interrogatories on behalf of all of
> California at this time and will continue to limit its responses to the
> San Diego Division.
> 
> Additionally, last week I requested that Plaintiff limit the initial PMK
> deposition to only the San Diego division and Plaintiff declined.  Time
> Warner is willing and plans to move forward with the noticed PMK
> deposition on or about March 14 for the San Diego division only so that.
> Plaintiff may obtain the necessary discovery to respond to the pending
> Motion for Summary Judgment.    Time Warner will produce a PMK for the
> San.Diego division on or about March 14.   We are still working with the
> witness to determine what the schedule allows.  Time Warner plans to
> move the court for a protective order staying all discovery outside the
> San Diego division until the MSJ is is ruled upon.
> 
> Finally, the scope of the MSJ is limited and Plaintiff has had months to
> conduct discovery. Time Warner has produced documents, responded to the
> written discovery for the San Diego division and agreed to produce a PMK
> for the San Diego division so that Plaintiff may complete all discovery
> regarding the MSJ.    Time Warner will not agree to move the hearing date
> to accommodate the requested irrelevant and improper discovery.
> 
> Please let me know if you have any questions regarding any of the issues
> above.
> 
> Julie
> 
> 
>  <http://www.dlapiper.com/>
> 
> Julie L. Hussey
> Partner
> 
> DLA Piper US LLP
> 401 B Street, Suite 1700
> San.Diego,.California 92101
> 
> 619.699.2844 T
> 619.764.6644 F
> Julie.Hussey@dlapiper.com
> 

3

```
> www.dlapiper.com <http://www.dlapiper.com/>
>
>
>
>
>
> <font face="Arial" size="2" color="#008000">
> Please consider the environment before printing this email.</font>
>
> _____
>
> The information contained in this email may be confidential and/or legally
> privileged. It has been sent for the sole use of the intended
> recipient(s). If the reader of this message is not an intended recipient,
> you are hereby notified that any unauthorized review, use, disclosure,
> dissemination, distribution, or copying of this communication, or any of
> its contents, is strictly prohibited. If you have received this
> communication in error, please contact the sender by reply email and
> destroy all copies of the original message. To contact our email
> administrator directly, send to postmaster@dlapiper.com
>
> Thank you.
> _____
```

--
BARRON E. RAMOS
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354

**Dolton, Carrie**

| | |
|---|---|
| **From:** | barron@yourclasscounsel.com |
| **Sent:** | Thursday, March 06, 2008 7:29 AM |
| **To:** | Shohet, Jeffrey |
| **Cc:** | Hussey, Julie |
| **Subject:** | Time Warner PMK depo |

Jeff,

Please confirm by the close of business today that the PMK depo is going forward on the date noticed.  We will agree to limit the PMK depo to San Diego/Desert Cities, as you have requested, with the understanding that we will take the California PMK depo at a later time.  Of course, our agreement to limit the depo to San Diego/Desert Cities is merely an accomodation to you and does not waive any argument that we have not been provided all discovery necessary to oppose your pending MSJ.

Again, please advise if the PMK depo is going forward on the noticed date by the close of business today.  If it is not, notwithstanding our accomodation of your request, we will be appearing ex-parte to move out the MSJ hearing date accordingly.

--
BARRON E. RAMOS
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
7  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE
8

9                  SUPERIOR COURT OF CALIFORNIA

10                     COUNTY OF SAN DIEGO

11

12 | LEON ALPERT, an individual, on behalf | CASE NO.  GIC881621
   | of himself, on behalf of all those similarly |
13 | situated, and on behalf of the general | **[PROPOSED] ORDER GRANTING**
   | public, | **PROTECTIVE ORDER**
14 |  |
   |  | Date:      April 11, 2008
15 |          Plaintiff, | Time:      10:30 a.m.
   |  | Dept:      63
16 |          v. | Judge:    Hon. Luis R. Vargas
   |  |
17 | TIME WARNER CABLE, INC., a | Complaint:  March 13, 2007
   | Delaware corporation, and DOES 1 to 100, | FAC:          May 16, 2007
18 |  |
   |          Defendant. |
19

20

21

22

23

24

25

26

27

28
   GT\6562587.1
   325566-11
DLA PIPER US LLP
   SAN DIEGO
                    [PROPOSED] ORDER GRANTING PROTECTIVE ORDER

1     The motion of Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

2  New York general partnership, through its San Diego Division, dba Time Warner Cable

3  ("TWC"), sued erroneously as Time Warner Cable, Inc., for entry of a protective order staying all

4  class discovery, including discovery other than that related to TWC's San Diego/Desert Cities

5  Division, pending resolution of TWC's Motion for Summary Judgment (scheduled for hearing on

6  April 4) came on regularly for hearing before Honorable Vargas in Department 63 of the above-

7  entitled court on April 11, 2008 at 10:30 a.m.

8     Based upon the papers filed in connection with the motion, and all of the records,

9  pleadings, and files in this action, the arguments of counsel, and good cause appearing:

10     IT IS HEREBY ORDERED that:

11     All class discovery, including discovery other than that related to TWC's San

12  Diego/Desert Cities Division, be stayed pending resolution on TWC's Motion for Summary

13  Judgment.

14

15  IT IS SO ORDERED.

16  Dated: _____, 2008

17

18  _____

19  THE HONORABLE LUIS R. VARGAS
    Judge of the Superior Court

20

21

22

23

24

25

26

27

28

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA 92101-4297
4   Tel: 619.699.2700
    Fax: 619.699.2701

5

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9

                    SUPERIOR COURT OF CALIFORNIA
10

                      COUNTY OF SAN DIEGO
11

12

13   LEON ALPERT, an individual, on behalf
    of himself, on behalf of all those similarly
14   situated, and on behalf of the general
    public,

15              Plaintiffs,

16       v.

17   TIME WARNER CABLE, INC., a
    Delaware corporation, and DOES 1 TO
18   100,

19           Defendants.

| | |
|---|---|
| CASE NO. GIC881621 | |
| **PROOF OF SERVICE** | |
| Dept: | 63 |
| Judge: | Luis R. Vargas |
| Complaint: | March 13, 2007 |
| FAC: | May 16, 2007 |

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1785677.1
325566-11

1        I am a resident of the State of California, over the age of eighteen years, and not a party to
2    the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101.  On March 10, 2008, I served the within document(s):

3    **1.    NOTICE OF MOTION AND MOTION OF DEFENDANT TIME WARNER CABLE FOR PROTECTIVE ORDER STAYING PLAINTIFF'S CLASS DISCOVERY**
4    **PENDING RESOLUTION OF TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT;**

5

6    **2.    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR PROTECTIVE ORDER**
7    **STAYING PLAINTIFF'S CLASS DISCOVERY PENDING RESOLUTION OF TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

8    **3.    DECLARATION OF TERRI RHODES IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR PROTECTIVE ORDER STAYING**
9    **PLAINTIFF'S CLASS DISCOVERY PENDING RESOLUTION OF TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

10

11    **4.    DECLARATION OF JULIE L. HUSSEY IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR PROTECTIVE ORDER STAYING**
12    **PLAINTIFF'S CLASS DISCOVERY PENDING RESOLUTION OF TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**

13    **5.    [PROPOSED] ORDER GRANTING PROTECTIVE ORDER**

14    ☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set
15    forth below on this date before 5:00 p.m.

16    ☒  by overnight mail by placing a sealed envelope or package designated by UPS,
17    with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same
18    day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express
19    service carrier to receive documents.  I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for
20    delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in
21    the ordinary course of business, to each addressee as set forth below.

22    ☐  by placing the document(s) listed above in a sealed envelope with postage thereon
23    fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

24

25

26

27

28

1

2 ☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

3 **Attorneys for Plaintiff**

4
Barron E. Ramos, Esq.                 David R. Markham, Esq.
5 Attorney at Law                      Clark & Markham
132 N. El Camino Real, Suite 303       401 West A Street, Suite 2200
6 Encinitas, CA  92024                 San Diego, CA  92101
(858) 349-6019                         (619) 239-1321
7 (760) 994-1354 (fax)                 (619) 239-5888 (fax)

8          I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
9 day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage
10 meter date is more than one day after date of deposit for mailing affidavit.

11          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

12          Executed on March 10, 2008, at San Diego, California.

13

14                                        _Debra Stitcher_ (signature)
                                          Debra Stitcher
15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1785677.1
325566-11

-2-

PROOF OF SERVICE

**Stitcher, Debra**

| | |
|---|---|
| **From:** | UPS Quantum View [auto-notify@ups.com] |
| **Sent:** | Tuesday, March 11, 2008 10:46 AM |
| **To:** | Stitcher, Debra |
| **Subject:** | UPS Delivery Notification, Tracking Number 1Z02Y7470196747343 |



\*\*\*Do not reply to this e-mail. UPS and DLA Piper US LLP will not receive your reply.

**At the request of DLA Piper US LLP, this notice is to confirm that the following shipment has been delivered.**

**Important Delivery Information**

**Delivery Date / Time:** 11-March-2008 / 9:54 AM
**Delivery Location:** RECEPTION
**Signed by:** MPTY

**Shipment Detail**

**Ship To:**
Markham, David R.
Clark & Markham
401 West A Street
Suite 2200
SAN DIEGO
CA
921017918
US

| | |
|---|---|
| **UPS Service:** | NEXT DAY AIR |
| **Weight:** | 2.0 LBS |

**Tracking Number:**     1Z02Y7470196747343
**Reference Number 1:** 325566-000011
**Reference Number 2:** 13977

_____2II2II2m8E4Rv2WzZGOnDogoPizGaWMO7g7zGnPEJ____

Discover more about UPS:
Visit www.ups.com
Learn About UPS Companies
Sign Up For Additional E-Mail From UPS
Read Compass Online



© 2008 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of
United Parcel Service of America, Inc. All rights reserved.
For more information on UPS's privacy practices, refer to the UPS Privacy Policy.
Please do not reply directly to this e-mail. UPS will not receive any reply message.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential. If you are not the intended recipient,
the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed
to please delete this e-mail immediately.
Privacy Policy
Contact UPS

**Stitcher, Debra**

**From:** UPS Quantum View [auto-notify@ups.com]

**Sent:** Tuesday, March 11, 2008 10:17 AM

**To:** Stitcher, Debra

**Subject:** UPS Delivery Notification, Tracking Number 1Z02Y7470195034329



\*\*\*Do not reply to this e-mail. UPS and DLA Piper US LLP will not receive your reply.

**At the request of DLA Piper US LLP, this notice is to confirm that the following shipment has been delivered.**

**Important Delivery Information**

**Delivery Date / Time:** 11-March-2008 / 9:12 AM
**Delivery Location:** RECEIVER
**Signed by:** TERI

**Shipment Detail**

Ship To:
Ramos, Barron E.
132 N. El Camino Real
Suite 303
ENCINITAS
CA
920242801
US

| | |
|---|---|
| **UPS Service:** | NEXT DAY AIR |
| **Weight:** | 1.0 LBS |

**Tracking Number:** 1Z02Y7470195034329
**Reference Number 1:** 325566-000011
**Reference Number 2:** 13977

____2ll2ll2i8q-.gYpyf0ulOxJx3my0Bp6uPJPy0l3qt____

Discover more about UPS:
Visit www.ups.com
Learn About UPS Companies
Sign Up For Additional E-Mail From UPS
Read Compass Online

3/11/2008



© 2008 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of
United Parcel Service of America, Inc. All rights reserved.
For more information on UPS's privacy practices, refer to the UPS Privacy Policy.
Please do not reply directly to this e-mail. UPS will not receive any reply message.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential.  If you are not the intended recipient,
the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed
to please delete this e-mail immediately.
Privacy Policy
Contact UPS

## Stitcher, Debra

**From:**    UPS Quantum View [auto-notify@ups.com]
**Sent:**    Tuesday, March 11, 2008 10:46 AM
**To:**      Stitcher, Debra
**Subject:** UPS Delivery Notification, Tracking Number 1Z02Y7470196747343



\*\*\*Do not reply to this e-mail. UPS and DLA Piper US LLP will not receive your reply.

At the request of DLA Piper US LLP, this notice is to confirm that the following shipment has been delivered.

**Important Delivery Information**

**Delivery Date / Time:** 11-March-2008 / 9:54 AM
**Delivery Location:** RECEPTION
**Signed by:** MPTY

**Shipment Detail**

**Ship To:**
Markham, David R.
Clark & Markham
401 West A Street
Suite 2200
SAN DIEGO
CA
921017918
US

**UPS Service:**    NEXT DAY AIR
**Weight:**         2.0 LBS

**Tracking Number:**      1Z02Y7470196747343
**Reference Number 1:** 325566-000011
**Reference Number 2:** 13977

____2lI2lI2m8E4Rv2WzZGOnDogoPizGaWMO7g7zGnPEJ____

Discover more about UPS:
Visit www.ups.com
Learn About UPS Companies
Sign Up For Additional E-Mail From UPS
Read Compass Online



© 2008 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of
United Parcel Service of America, Inc. All rights reserved.
For more information on UPS's privacy practices, refer to the UPS Privacy Policy.
Please do not reply directly to this e-mail. UPS will not receive any reply message.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential. If you are not the intended recipient,
the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed
to please delete this e-mail immediately.
Privacy Policy
Contact UPS

3/11/2008

**Stitcher, Debra**

| | |
|---|---|
| **From:** | UPS Quantum View [auto-notify@ups.com] |
| **Sent:** | Tuesday, March 11, 2008 10:17 AM |
| **To:** | Stitcher, Debra |
| **Subject:** | UPS Delivery Notification, Tracking Number 1Z02Y7470195034329 |



***Do not reply to this e-mail. UPS and DLA Piper US LLP will not receive your reply.

**At the request of DLA Piper US LLP, this notice is to confirm that the following shipment has been delivered.**

**Important Delivery Information**

**Delivery Date / Time:** 11-March-2008 / 9:12 AM
**Delivery Location:** RECEIVER
**Signed by:** TERI

**Shipment Detail**

Ship To:
Ramos, Barron E.
132 N. El Camino Real
Suite 303
ENCINITAS
CA
920242801
US

| | |
|---|---|
| **UPS Service:** | NEXT DAY AIR |
| **Weight:** | 1.0 LBS |

**Tracking Number:** 1Z02Y7470195034329
**Reference Number 1:** 325566-000011
**Reference Number 2:** 13977

_____2Il2Il2i8q-.gYpyf0ulOxJx3my0Bp6uPJPy0I3qt____

Discover more about UPS:
Visit www.ups.com
Learn About UPS Companies
Sign Up For Additional E-Mail From UPS
Read Compass Online



© 2008 United Parcel Service of America, Inc. UPS, the UPS brandmark, and the color brown are trademarks of
United Parcel Service of America, Inc. All rights reserved.
For more information on UPS's privacy practices, refer to the UPS Privacy Policy.
Please do not reply directly to this e-mail. UPS will not receive any reply message.
For questions or comments, visit Contact UPS.

This communication contains proprietary information and may be confidential. If you are not the intended recipient,
the reading, copying, disclosure or other use of the contents of this e-mail is strictly prohibited and you are instructed
to please delete this e-mail immediately.
Privacy Policy
Contact UPS

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
7  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE
8
9                    SUPERIOR COURT OF CALIFORNIA
10                      COUNTY OF SAN DIEGO
11

| | |
|---|---|
| 12  LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public, <br><br> 14 <br> 15        Plaintiff, <br><br> 16      v. <br><br> 17  TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 to 100, <br><br> 18        Defendant. | CASE NO.  GIC881621 <br><br> **OBJECTIONS OF DEFENDANT TIME WARNER CABLE TO PLAINTIFF LEON ALPERT'S NOTICE OF TAKING DEPOSITION OF PERSON MOST KNOWLEDGEABLE** <br><br> Date:     March 14, 2008 <br> Time:    10:00 a.m. |

19
20
21
22
23
24
25
26
27
28

1    Pursuant to California Code of Civil Procedure section 2025.410, Defendant Time Warner

2   Entertainment-Advance/Newhouse Partnership, through its San Diego Division, dba Time

3   Warner Cable ("TWC-SAN DIEGO/DESERT CITIES"), sued erroneously as Time Warner

4   Cable, Inc., hereby submits the following objections to Plaintiff Leon Alpert's ("Plaintiff" or

5   "Alpert") Amended Notice of Deposition of Person Most Knowledgeable ("PMK"), served on

6   February 28, 2008.

7                                    **OBJECTIONS**

8            1.  TWC-SAN DIEGO/DESERT CITIES objects to Plaintiff's purported definition of

9   the terms "YOU," and "YOUR" on the ground that it renders each designated topic including

10  these terms to be vague and ambiguous, as well as overly broad.  The definition is so overbroad

11  that it appears to call for information from literally hundreds of different corporate entities and

12  their privileged communications with their counsel.  TWC-SAN DIEGO/DESERT CITIES shall

13  construe the terms "YOU," and "YOUR," when used in the designated topics included in the

14  Amended Notice of Deposition, to mean Time Warner Entertainment-Advance/Newhouse

15  Partnership, a New York general partnership, through its San Diego Division, which operates in

16  the San Diego and Desert Cities areas, dba Time Warner Cable and no other person or entity.

17           2.  TWC-SAN DIEGO/DESERT CITIES also objects to Plaintiff's purported

18  definition of the term "RESIDENTS" on the ground that it renders each topic including this term

19  to be vague and ambiguous, as well as overly broad.  TWC-SAN DIEGO/DESERT CITIES shall

20  construe the term "RESIDENTS," when used in the designated topics included in the Amended

21  Notice of Taking Deposition , to mean residents of homeowners' associations with which time

22  Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, through

23  its San Diego Division, dba Time Warner Cable entered into a bulk contract to provide cable

24  services.

25           3.  TWC-SAN DIEGO/DESERT CITIES also objects to Plaintiff's purported

26  definition of the term "RESIDENT Pricing" on the ground that it renders each topic including this

27  term to be vague and ambiguous, as well as overly broad.

28  /////

DLA PIPER US LLP    GT\6562814.4                              -2-
    SAN DIEGO

OBJECTIONS OF DEFENDANT TIME WARNER CABLE TO NOTICE OF DEPOSITION OF PMK

1    4.  TWC-SAN DIEGO/DESERT CITIES also objects to the designated topics on the

2    ground and to the extent that they seek the disclosure of information that is not material or

3    relevant to any cause of action asserted by Plaintiff, or any defense TWC-SAN DIEGO/DESERT

4    CITIES may assert, and are not likely to lead to the discovery of admissible evidence.

5    5.  TWC—SAN DIEGO/DESERT CITIES objects to the designated topics to the

6    extent that they may require disclosure of information that is protected by the attorney-client

7    privilege, the work product doctrine, or any other applicable privilege.

8    6.  TWC—SAN DIEGO/DESERT CITIES objects to the designated topics to the

9    extent they seek TWC—SAN DIEGO/DESERT CITIES' private, confidential, trade secret,

10   and/or proprietary information.

11   7.  TWC-SAN DIEGO/DESERT CITIES further objects to the designated topics as

12   set forth in the Amended Deposition Notice that seek information regarding

13   "Agreements between YOU and HOA's and other multiple dwelling units (MDUs) used in

14   California during the CLASS PERIOD" and "The identity and location of each HOA for which

15   YOU provided RESIDENT pricing during the CLASS PERIOD and the dates YOU provided

16   such RESIDENT pricing."  These designated deposition topics seek the confidential, proprietary

17   or trade secret information of TWC.  TWC further objects to these topics on the ground that they

18   request information protected by the attorney-client privilege, the work product doctrine, or any

19   other applicable privilege.

20   8.  TWC-SAN DIEGO/DESERT CITIES also objects to the designated deposition

21   topic that seeks information about TWC-SAN DIEGO/DESERT CITIES efforts to comply with

22   the FCC's ruling of October 2007 concerning exclusive agreements with HOAs.  The subject

23   October 31, 2007 Order ruling is clearly outside the class period defined as beginning March 13,

24   2003 and ending March 13, 2007.  Moreover, this information is irrelevant as the subject FCC

25   ruling applies to exclusive contracts, whereas the subject agreement between TWC-SAN

26   DIEGO/DESERT CITIES and Plaintiff's HOA is not an exclusive contract.

27   9.  TWC-SAN DIEGO/DESERT CITIES also objects to the designated deposition

28   topics to the extent they fail to specify a time period and are overbroad as to time.

1           10. TWC-SAN DIEGO/DESERT CITIES objects to deposition topic No. 3 on the

2  grounds that it is vague, ambiguous, overbroad, and seeks information that is irrelevant and not

3  likely to lead to the discovery of admissible evidence.  TWC-SAN DIEGO/DESERT CITIES

4  further objects to this deposition topic to the extent it requests information outside the defined

5  class period.

6           11. TWC-SAN DIEGO/DESERT CITIES objects to deposition topic No. 5 on the

7  grounds that it is vague, ambiguous, overbroad, and seeks information that is irrelevant and not

8  likely to lead to the discovery of admissible evidence, particularly as to "auto-bundling software."

9           12. TWC-SAN DIEGO/DESERT CITIES objects to the deposition topics No. 19, 20,

10  21, 22, and 23 to the extent they request information outside the defined class period.

11           13. TWC-SAN DIEGO/DESERT CITIES further objects that many of the deposition

12  topics are overbroad, irrelevant, and it is unduly burdensome to request TWC to produce

13  corporate representatives with respect to each topic.

14           14. TWC-SAN DIEGO/DESERT CITIES has agreed to produce a PMK witness on

15  March 14, 2008 at 10:00 a.m. to respond on behalf of TWC-SAN DIEGO/DESERT CITIES.

16  Dated:  March _____, 2008

17                            DLA PIPER US LLP

19                       By _____

20                         JEFFREY M. SHOHET

                           JULIE L. HUSSEY

21                         CARRIE S. DOLTON

22                         Attorneys for Defendant

                           TIME WARNER CABLE

23

24

25

26

27

28

| Attorney of Party Without Attorney (Name and Address) | | Telephone No: | FOR COURT USE ONLY |
|---|---|---|---|
| DLA Piper US LLP<br>401 "B" Street                  Suite 1700<br>San Diego          CA          92101<br>Attorney For: | | 619-699-2700<br><br>Reference Number:<br>89357                04909 | |

Superior Court State of California in and for the
County of San Diego Central Division (Unlimited)

Plaintiff/Petitioner:        Leon Alpert

Defendant/Respondent:    Time Warner Cable, Inc.

| **PROOF OF SERVICE** | Hearing Date:<br>3/14/2008 | Time:<br>10:00am | Dept./Div.: | Case Number:<br>GIC881621 |
|---|---|---|---|---|

DOCUMENTS:

Objections Of Defendant Time Warner Cable To Plaintiff Leon Alpert's Notice Of Taking
Deposition Of Person Most Knoweledgeable

On 3/11/2008 at 3:36pm, I served the above entitled documents by personally
delivering them to the person(s) indicated below in the manner as provided by Civil Code
of Procedure 1011.

Entity:    David R. Markham, Esq.

Addres:    401 West A Street Suite 2200
           San Diego, CA 92101.

by delivering the copies to:    John Doe,    Title: Receptionist
Description:

Date Served:      3/11/2008
Time Served:      3:36pm

7. Person Serving  (name, address, and telephone No.):

**Central Attorney Service, Inc.**
1241 State Street
San Diego, CA 92101
(619)233-3344 Fax (619)233-3350

Fee for service: $    $60.00

Don Goodwin
Registered California process server:
(i) owner
(ii) Registration No.: 1082
(iii) County: San Diego

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  3/11/2008

(Signature)

Judicial Council form POS-010                                    Code Civil Procedure 417.10(f)

**Proof of Service**

| Attorney of Party Without Attorney (Name and Address) | | Telephone No: | FOR COURT USE ONLY |
|---|---|---|---|
| DLA Piper US LLP<br>401 "B" Street         Suite 1700<br>San Diego        CA        92101<br>Attorney For: | | 619-699-2700<br><br>Reference Number:<br>89356 | |

Superior Court State of California in and for the
County of San Diego Central Division (Unlimited)

Plaintiff/Petitioner:     Leon Alpert
Defendant/Respondent:     Time Warner Cable, Inc.

| **PROOF OF SERVICE** | Hearing Date:<br>3/14/2008 | Time:<br>10:00am | Dept./Div.: | Case Number:<br>GIC881621 |
|---|---|---|---|---|

DOCUMENTS:

Objections Of Defendant Time Warner Cable To Plaintiff Leon Alpert's Notice Of Taking
Deposition Of Person Most Knoweledgeable

On 3/11/2008 at 4:30pm, I served the above entitled documents by personally
delivering them to the person(s) indicated below in the manner as provided by Civil Code
of Procedure 1011.

Entity:   Barron E. Ramos, Esq.

Addres:   132 N. El Camino Real Suite 303
          Encinitas, CA 92024.

by delivering the copies to:     Jana Bassett,   Title: Manager
Description:

Date Served:     3/11/2008
Time Served:     4:30pm

7. Person Serving  (name, address, and telephone No.):

# Central Attorney Service, Inc.
**1241 State Street**
**San Diego, CA 92101**
**(619)233-3344  Fax (619)233-3350**

Fee for service: $   $95.00

Lee Griffey
Registered California process server:
(i) employee
(ii) Registration No.:  1390
(iii) County: San Diego

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  3/11/2008

(Signature)

Judicial Council form POS-010

**Proof of Service**

Code Civil Procedure 417.10(f)