JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
CARRIE S. DOLTON (Bar No. 234298)
RYAN T. HANSEN (Bar No. 234329)
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL
PARTNERSHIP

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>Defendants. | CV No. 08CV582 BTM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date        May 23, 2008<br>Time        11:00 a.m.<br>Ctrm:       15<br>Judge:     Hon. Barry Ted Moskowitz<br><br>**[NO ORAL ARGUMENT UNLESS  REQUESTED BY THE COURT]**<br><br>Complaint:   March 13, 2007<br>FAC:         May 16, 2007<br>Removal:     March 28, 2008 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION. ........................................................................................... 1

II.    BRIEF PROCEDURAL HISTORY. ................................................................ 2

III.   STATEMENT OF UNCONTROVERTED FACTS. ........................................ 3

    A.     Plaintiff's Homeowners' Association's Contract with TWC.................... 3

        1.     The Agreement Between the HOA and TWC is Limited to Basic Cable Services. ........................................................................... 3

        2.     Residents May Contract with TWC for Additional Services. .......... 3

    B.     Plaintiff's Relationship with TWC. ......................................................... 4

        1.     Plaintiff Orders Several Additional Services from TWC. .......... 4

        2.     Plaintiff Changes His Additional Services to a Bundle Package............... 5

        3.     Plaintiff Testifies TWC's Bills for Additional Services Were Correct. .......................................................................................... 5

        4.     Plaintiff Agrees to Notify TWC of Billing Errors. ...................... 6

IV.    STANDARD OF REVIEW. .......................................................................... 6

V.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF TWC BECAUSE PLAINTIFF CANNOT PROVE A UCL VIOLATION. ...................... 7

    A.     Plaintiff Cannot Prove That TWC Engaged in Unlawful Conduct........................ 8

        1.     Standard for "Unlawful Conduct" Under the UCL.................... 8

        2.     Plaintiff Cannot Prove TWC Violated of Civil Code Section 1770(a)(3). ...................................................................................... 8

        3.     Plaintiff Cannot Prove TWC Violated Civil Code Section 1770(a)(13). .................................................................................... 9

        4.     Plaintiff Cannot Prove TWC Violated Civil Code Section 1770(a)(19). .................................................................................. 10

            a.     Plaintiff Lacks Standing to Challenge the Contract Provision. .................................................................. 11

            b.     The Contract Provision is Not Unconscionable. ........................... 12

        5.     Plaintiff Cannot Prove Unlawful Conduct Due to a Purported Breach of Contract Between TWC and the HOA. .................................. 13

    B.     Plaintiff Cannot Prove that TWC Engaged in Unfair Business Practices............. 14

        1.     Standard for Unfair Business Practices Under the UCL.......................... 14

        2.     TWC Did Not Overcharge Plaintiff. ...................................... 15

        3.     TWC Did Not Unfairly Require Notification of Billing Errors While Failing to Disclose Pricing That Accounted for HOA Payments. ............................................................................. 16

        4.     TWC Did Not Breach its Agreement with the HOA. ............................. 17

## TABLE OF CONTENTS
### (continued)

**Page**

C.   Plaintiff Cannot Prove That TWC Engaged in Misleading or Deceptive Business Practices. .............................................................................. 18

    1.   Standard for Misleading or Deceptive Conduct Under the UCL. ............. 18

    2.   TWC Did Not Overcharge Plaintiff. ........................................................ 19

    3.   TWC Did Not Misled Plaintiff Regarding Notification of Billing Errors While Failing to Disclose Pricing That Accounted for HOA Payments. ................................................................................................ 19

    4.   TWC Did Not Deceptively Conceal HOA Pricing. .................................. 19

    5.   TWC Did Not Misrepresent its Affiliation with the HOA. ....................... 20

    6.   TWC Did Not Mislead Plaintiff Regarding the Price Discount for Purchasing a Bundled Package of Additional Services. ........................... 20

    7.   Plaintiff Cannot Prove that the Public Would Be Misled or Deceived. .................................................................................................. 20

VI.   PLAINTIFF LACKS STANDING TO BRING A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200. .......................................... 21

VII.   CONCLUSION. .................................................................................................... 22

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

### **CASES**

4

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................................................ 6

5

*Armendariz v. Foundation Health Pyschcare Services, Inc.*,
6
    24 Cal. 4th 83 (2000) ............................................................................................................. 11

7

*Aron v. U-Haul Co. of California*,
    143 Cal. App. 4th 796 (2006) ............................................................................................... 11

8

*Belton v. Comcast Cable Holdings, LLC*,
9
    151 Cal. App. 4th 1224 (2007) ...................................................................................... 11, 17

10

*Bernando v. Planned Parenthood Federation of America*,
    115 Cal. App. 4th 322 (2004) ........................................................................................ 13, 14

11

*Brockey v. Moore*,
12
    107 Cal. App. 4th 86 (2003) .......................................................................................... 18, 20

13

*California Grocers Assn. v. Bank of America*,
    22 Cal. App. 4th 205 (1994) ................................................................................................. 17

14

*Cel-Tech Communications v. Los Angeles Cellular Tel. Co.*,
15
    20 Cal. 4th 163 (1999) .......................................................................................................... 14

16

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................................ 7

17

*Comm. on Children's Television v. Gen. Foods Corp.*,
18
    35 Cal. 3d 197 (1983) ........................................................................................................... 18

19

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) ................................................................................................. 9

20

*Day v. AT&T Corp.*,
21
    63 Cal. App. 4th 325 (1998) ................................................................................................. 21

22

*Far Out Productions, Inc. v. Oskar*,
    247 F.3d 986 (9th Cir. 2001) .............................................................................................. 6, 7

23

*Farmers Ins. Exchange v. Superior Court*,
24
    2 Cal. 4th 377 (1992) .............................................................................................................. 8

25

*Freeman v. Wal-Mart Stores, Inc.*,
    111 Cal. App. 4th 660 (2003) ............................................................................................... 11

26

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
27
    466 U.S. 2 (1984) .................................................................................................................. 17

28

1

## TABLE OF CONTENTS
### (continued)

2

**Page**

3

*Klein v. Earth Elements, Inc.*,
    59 Cal. App. 4th 965 (1997) ........................................................................ 13

4

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) ............................................................... 18, 20

5

6

*Leahy v. Warden*,
    163 Cal. 178 (1912) ..................................................................................... 13

7

*Lee v. Interinsurance Exchange*,
    50 Cal. App. 4th 694 (1996) ....................................................................... 15

8

9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................................... 7

10

*Morris v. Redwood Empire Bancorp*,
    128 Cal. App. 4th  1305 (2005) ................................................................. 12

11

12

*Motors, Inc. v. Times Mirror, Co.*,
    102 Cal. App. 3d 735 (1980)....................................................................... 15

13

*Olsen v. Breeze, Inc.*,
    48 Cal. App. 4th 608 (1996) ....................................................................... 11

14

15

*Perry v. Otay Irr. Dist.*,
    127 Cal. 565 (1900) ..................................................................................... 13

16

*Plotkin v. Sajahtera, Inc.*,
    106 Cal. App. 4th 953 (2003) ..................................................................... 18

17

18

*Podolsky v. First Healthcare Corp.*,
    50 Cal.  App. 4th 632 (1996) ....................................................................... 14

19

*Richards v. Neilsen Freight Lines*,
    810 F.2d 898 (9th Cir. 1987).......................................................................... 7

20

21

*Riensche v. Cingular Wireless LLC*,
    No. C06-1325Z, 2007 WL 3407137 (W.D. Wash. Nov. 9, 2007)................... 13

22

*Schnall v. Hertz Corp.*,
    78 Cal. App. 4th 1144 (2000) ..................................................................... 14

23

24

*Scripps Clinic v. Superior Court*,
    108 Cal. App. 4th 917 (2003) ..................................................................... 14

25

*Searle v. Wyndham Int'l, Inc.*,
    102 Cal. App. 4th 1327 (2002) ................................................................... 18

26

27

*Shvarts v. Budget Group, Inc.*,
    81 Cal. App. 4th 1153 (2000) ..................................................................... 18

28

1

2

### TABLE OF CONTENTS
### (continued)

Page

*Sierra Inv. Corp. v. County of Sacr.*,
    252 Cal. App. 2d 339 (1967) ........................................................................... 13

*Smith v. State Farm Mut. Auto. Ins. Co.*,
    93 Cal. App. 4th 700 (2001) .......................................................................... 13

*State Farm Fire & Casualty Co. v. Superior Court*,
    45 Cal. App. 4th 1093 (1996) ....................................................................... 15

### STATUTES

Cal. Bus. & Prof. Code § 17200 ........................................................... 1, 8, 13, 14, 18

Cal. Bus. & Prof. Code § 17204 ............................................................................... 21

Cal. Civ. Code § 1770 ................................................................................................ 8

Cal. Civ. Code § 1770(a)(1) .............................................................................. 8, 9, 10

Cal. Civ. Code § 1770(a)(3) ........................................................................................ 8

Cal. Civ. Code § 1770(a)(13) ................................................................................ 9, 10

Cal. Civ. Code § 1770(a)(19) ................................................................................... 10

Fed. R. Civ. P. 56(c) .................................................................................................... 6

Fed. R. Civ. P. 56(e) .................................................................................................... 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2  general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3  erroneously as Time Warner Cable, Inc., respectfully submits the following memorandum of

4  points and authorities in support of its motion for summary judgment or, in the alternative, partial

5  summary judgment.

6  **I.    INTRODUCTION.**

7  Plaintiff Leon Alpert's ("Plaintiff") class action lawsuit against TWC is based on his

8  erroneous suspicion, and nothing more, that he was overcharged for his cable and cable related

9  services.  Plaintiff stuffs multiple alleged theories of unlawful, unfair, and deceptive conduct into

10  a single cause of action for violation of California Business & Professions Code section 17200, *et*

11  *seq.* ("Unfair Competition Law" or "UCL"), yet all of Plaintiff's claims are based on the same

12  factual premise—his mistaken belief that TWC charged him for basic cable services.

13  In fact, TWC never charged or received payment from Plaintiff for basic cable (the

14  primary grouping of cable television channels that virtually all cable customers purchase).

15  Rather, basic cable was paid for by Plaintiff's homeowners' association pursuant to a separate

16  bulk agreement providing for the provision of the basic cable channels to all the units within his

17  complex.  Pursuant to that agreement, Plaintiff was permitted to (and did) purchase additional

18  cable services (movie channels, digital phone service and internet access) under his own account

19  with TWC.   TWC never overcharged Plaintiff by billing Plaintiff for basic cable services (or in

20  any other manner) as Plaintiff contends.

21  The undisputed facts, including Plaintiff's own deposition testimony, show that (1) TWC

22  did not charge or collect any money from Plaintiff for the basic cable services it provided to his

23  residence; (2) TWC charged and was paid by Plaintiff's homeowners' association for the basic

24  cable services; (3) Plaintiff was aware that his homeowners' association paid TWC for his basic

25  cable; and (4) TWC charged Plaintiff the correct price for the additional services (that is, those

26  services other than basic cable) he purchased—both when he initially ordered a variety of

27  individually priced services, and when he later ordered a bundled package of services in order to

28  obtain a discounted price.  It was this price reduction that caused Plaintiff to speculate that he had

1   previously been overcharged.  However, this price reduction reflects a discount that was available

2   at that time for ordering such services in a bundle and in no way supports his claim that he had

3   previously been overcharged.

4        All of Plaintiff's claims are based on the incorrect premise that he had somehow been

5   charged for basic cable services even though his homeowners' association was paying for basic

6   cable on his behalf.  However, Plaintiff's itemized bills contained no charges for basic cable, and,

7   at all material times, he was aware that his homeowners' association was paying for his basic

8   cable.  These theories are based on facts that simply do not exist and, accordingly, cannot be

9   proven.  In the end, Plaintiff cannot escape the fact that he received exactly what he paid for from

10  TWC.  TWC respectfully requests that the Court grant its motion for summary judgment on the

11  grounds that Plaintiff cannot prove his cause of action for violation of the UCL.

12  ## II.      BRIEF PROCEDURAL HISTORY.

13       On or about March 13, 2007, Plaintiff commenced this action in the Superior Court of

14  California, County of San Diego, on behalf of himself and all others similarly situated.  Following

15  a demurrer by TWC, Plaintiff filed a First Amended Complaint on or about May 16, 2007.

16  Plaintiff's original Complaint and First Amended Complaint allege a single unfair competition

17  claim against TWC and contain no allegations to establish an amount in controversy that would

18  exceed $5 million.

19       On January 15, 2008, TWC filed a motion for summary judgment, which was scheduled

20  to be heard on April 4, 2008.  During the seventy-five day notice period allowed for the motion,

21  Plaintiff conducted and sought to enforce discovery as he deemed necessary to oppose TWC's

22  summary judgment motion.  On or about March 24, 2008, Plaintiff filed his opposition to TWC's

23  motion for summary judgment, in which he referenced a federal predatory pricing claim and

24  violation of a Federal Communications Commission ("FCC") order.  Plaintiff's opposition papers

25  also alleged damages in an amount that would exceed $5 million.

26       On March 28, 2008, TWC removed the action to this Court in response to Plaintiff's

27  opposition papers raising federal claims and setting forth an amount in controversy that satisfies

28  the Class Action Fairness Act of 2005.  TWC hereby re-files its motion for summary judgment,

1  which is substantively identical to its motion filed in state court.  Class certification issues have

2  been postponed pending the results of this motion.

3  **III.    STATEMENT OF UNCONTROVERTED FACTS.**

4  **A.    Plaintiff's Homeowners' Association's Contract with TWC.**

5  Plaintiff is a resident of Sea Point Townhomes in Del Mar, California.  (Separate

6  Statement of Undisputed Facts in Support of Defendant Time Warner Cable's Motion for

7  Summary Judgment ("SS") ¶ 1.)  Sea Point Townhomes is a homeowners' association that has

8  contracted with TWC for certain cable services to be provided to the residents of Sea Point

9  Townhomes (the "HOA" or "HOA").  (SS ¶ 2.)  This agreement between Sea Point Townhomes

10  and TWC is referred to as a Residential Bulk Services Agreement (the "Agreement").  (SS ¶ 2.)

11
12  **1.    The Agreement Between the HOA and TWC is Limited to Basic Cable Services.**

13  The Agreement provides that TWC will provide 76 cable channels, sometimes referred to

14  as "basic cable," to each home/unit of Sea Point Townhomes, and that Sea Point Townhomes will

15  pay TWC a monthly fee per home/unit for such services.  (SS ¶ 3.)  Specifically, Section 1 of the

16  Agreement, entitled "Operator's Service Obligations," provides that TWC "*will* offer Bulk Multi-

17  Channel Video Services to Residents."  (SS ¶ 4 (emphasis added).)  Bulk Multi-Channel Video

18  Services is defined as a "basic cable" package of services that includes 76 cable television

19  channels listed in Exhibit B to the Agreement.  (SS ¶ 5.)  Section 2 of the Agreement, entitled

20  "Rates and Services," states that the "HOA shall pay to [TWC] a monthly Bulk Multi-Channel

21  Video Services fee" which is set forth in Exhibit B to the Agreement.  (SS ¶ 5.)  The fee for such

22  basic cable services is to be billed for and paid by the Sea Point Community HOA.  (SS ¶ 6.)

23  **2.    Residents May Contract with TWC for Additional Services.**

24  Although basic cable is provided to HOA residents under the Agreement with the HOA,

25  individual residents are free to order additional services from TWC and/or otherwise do business

26  with TWC.  (SS ¶ 7.)  In that regard, Section 1 of the Agreement provides that TWC "*may* [but is

27  not obligated to] offer and provide Additional Service to Residents on a non-exclusive basis."

28  (SS ¶ 8, 9 (emphasis added).)  Additional Services are defined as "any services *other than* the

1   Bulk Multi-Channel Video Services [basic cable], including, but not limited to, premium

2   channels, pay-per-view, music, digital tier, video-on-demand, and other video and music services

3   not included in the Bulk Multi-Channel Video Services package, high speed data and Internet

4   access services, voice services, etc." (SS ¶ 10 (emphasis added).)

5        HOA residents who chose to order Additional Services from TWC are responsible for

6   paying TWC for such services.  (SS ¶ 11.)  Pursuant to Section 2 of the Agreement, "Residents

7   will be billed directly for all service charges, taxes, franchise fees, and other fees assessed in

8   conjunction with Additional Services."  (SS ¶ 12.)  No rates or special pricing for Additional

9   Services are provided for in the Agreement.  (SS ¶ 13.)

10       **B.     Plaintiff's Relationship with TWC.**

11       Since March 2003, TWC has provided the Bulk Multi-Channel Services ("basic cable") to

12  Plaintiff's residence as set forth in the Agreement between TWC and the HOA.  (SS ¶ 14.)  TWC

13  has not billed or collected money from Plaintiff for these services, nor has Plaintiff paid anything

14  to TWC for the services.  (SS ¶ 15.)  Per the Agreement, TWC is paid by the HOA for providing

15  such services.  (SS ¶ 16.)  Plaintiff knew and understood that the HOA paid TWC for the basic

16  cable he received from TWC.  (SS ¶ 17.)

17       **1.     Plaintiff Orders Several Additional Services from TWC.**

18       Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a

19  contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer

20  Agreement").  (SS ¶ 18.)  TWC has billed Plaintiff for the Additional Services he ordered, and

21  Plaintiff has paid TWC directly for such services.  (SS ¶ 19.)  TWC's bills to Plaintiff for his

22  Additional Services contain a detailed itemization of each Additional Service and associated

23  charge for each such service.  (SS ¶ 20.)  It is clear from the invoices that he was charged only for

24  the Additional Services he ordered and was not charged for basic cable services.  (SS ¶ 21.)  As

25  recently as August 2006, the Additional Services ordered by Plaintiff included the following

26  features and pricing:

27          Digital Phone Package ($39.95); iControl Premium Service ($6.95);
            HDTV Converters ($7.00 x 2); Service Protection Plan ($2.95);
28          Premier Digital ($11.00); Any 4 Premium Channels ($24.95);

1  Wireless Road Runner ($54.90); special order items such as on-
   demand movies; as well as applicable taxes and fees.
2

3  (SS ¶ 22.)

4  **2.    Plaintiff Changes His Additional Services to a Bundle Package.**

5  In 2005, TWC began to offer Additional Services in various bundled packages for bulk

6  customers, such as HOA members, at a discount off the aggregate price of the individual services.

7  (SS ¶ 23.)  Plaintiff was generally familiar with TWC advertising relating to bundled packages

8  and knew that customers ordering bundled services received a discount off the a la carte price for

9  the same services.  (SS ¶ 24.)

10  In or about August, 2006, Plaintiff  became aware that TWC was offering a particular

11  bundled package of Additional Services that included many of the services Plaintiff was

12  individually purchasing.  In or about September, 2006, Plaintiff changed his account with TWC to

13  add Additional Services including this bundled package (shown below in item 3) with the

14  following features and pricing:

15  (1) HDTV Converter ($8.00); (2) Service Protection Plan ($2.95);
    (3) Hoa DIGIPiC 4000 Plan ($121.90)—which includes Wireless
16  Roadrunner, Digital Phone Package, Free On Demand, iControl
    Premium Service, Digital Access, Cinemax, HBO, Navigator
17  Screen Guide, Showtime, STARZ, Digital Movie Pack, Digital
    Sports Pack, Digital Variety Pack, Basic Cable Paid by Hoa, and
18  Road Runner High Speed; special order items such as on-demand
    movies; as well as applicable taxes and fees.
19

20  (SS ¶¶ 25, 27.)  Plaintiff changed to this bundled package in order to get a better price.  (SS ¶ 26.)

21  As a result of Plaintiff modifying his Additional Services, and ordering them in a bundled

22  package vis-à-vis a la carte, Plaintiff's charges for Additional Services decreased.  (SS ¶ 28.)

23  **3.    Plaintiff Testifies TWC's Bills for Additional Services Were Correct.**

24  At deposition, Plaintiff testified that the bills he received for Additional Services were

25  correct both before and after he altered his services and ordered a bundled package in September,

26  2006.  (SS ¶ 33.).  Plaintiff also testified that he knew and understood that the HOA was paying

27  for his basic cable at or around the time he first moved into his residence:

28  /////

"Q: [You] were aware . . . that your HOA was paying Time Warner for basic cable service for your service.  Correct?

A:  Yes.

Q:  When do you recall being first aware of the fact that the HOA had an agreement with Time Warner, the result of which is basic cable was provided by Time Warner—by the HOA?

A:  I believe it was around the time we moved in."

(SS ¶ 37.)

### 4.    Plaintiff Agrees to Notify TWC of Billing Errors.

As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified.  (SS ¶ 29.)  Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt.  (SS ¶ 30.)  Additionally, Plaintiff's monthly invoices from TWC for his Additional Services included conspicuous reminders to report billing errors within thirty days.  (SS ¶ 31.)

At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable."  (SS ¶ 32.)  Plaintiff never had occasion to report billing errors to TWC because, as Plaintiff testified in his deposition, the bills he received for Additional Services were correct.  (SS ¶ 33.)

## IV.    STANDARD OF REVIEW.

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249-50.

1    The moving party has the initial burden to show the absence of a material and triable issue

2    of fact. *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987). The burden then

3    moves to the opposing party, who must present significant probative evidence tending to support

4    its claim or defense. *Id.* The opposing party must go beyond the pleadings and by his own

5    evidence set forth specific facts showing that there is a genuine issue for trial. *Far Out*

6    *Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001); Fed. R. Civ. P. 56(e). Summary

7    judgment is appropriate when the opposing party "fails to make a showing sufficient to establish

8    the existence of an element essential to that party's case, and on which that party will bear the

9    burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita*

10   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

11   **V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN FAVOR OF TWC**
**BECAUSE PLAINTIFF CANNOT PROVE A UCL VIOLATION.**
12

13   Plaintiff brings one cause of action against TWC under the UCL, alleging that TWC

14   violated the UCL by engaging in the following conduct:

15       (1) overcharging HOA customers for cable services by not
         providing such customers with HOA pricing that accounts for the
16       cable services already provided under TWC's contract with the
         customers' HOA;
17

18       (2) attempting to limit customers' right to seek refunds for billing
         errors to thirty days while failing to disclose that HOA pricing is
19       available to HOA subscribers;

20       (3) including an unconscionable clause in customer agreements that
         require customers to notify TWC of billing errors within thirty days
21       in alleged violation of Civil Code 1770(a)(19);

22       (4) misrepresenting to customers its affiliation, connection, or
         association with HOAs with whom it has contracted to provide
23       cable services in alleged violation of Civil Code 1770(a)(1);

24       (5) making false or misleading statements that the reduction in price
         for customers ordering a bundled package of services vis-à-vis a la
25       carte services is due to discounts associated with the bundling of
         services, when in reality the reduction in price is due to HOA
26       pricing that HOA residents are entitled to, in alleged violation of
         Civil Code 1770(a)(13); and

27       /////

28       /////

1
2
3

    (6) breaching its agreements with HOAs by charging HOA customers directly for services already provided for under agreements between TWA and the HOAs and paid for by the HOAs.

4 (First Amended Complaint ¶¶ 38-43.)  These various claims are grounded on Plaintiff's incorrect

5 theories that TWC charged him for basic cable service already being provided by his HOA.  Such

6 theories are entirely incorrect and contradicted by the undisputed facts.  Summary judgment

7 should be granted in favor of TWC because Plaintiff cannot prove that TWC engaged in any

8 unlawful, unfair, or misleading conduct to support his UCL claim.

9    **A.**  **Plaintiff Cannot Prove That TWC Engaged in Unlawful Conduct.**

10     **1.**  **Standard for "Unlawful Conduct" Under the UCL.**

11    A business act or practice is "unlawful" under the UCL only if it is "forbidden by law."

12 *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  The California Supreme

13 Court has explained that Section 17200 "'borrows' violations of other laws and treats them as

14 unlawful practices independently actionable under section 17200 *et seq.*"  *Id.*

15    There is no evidence that TWC engaged in an act or practice considered "unlawful."

16 Plaintiff attempts to create a causes of action under the "unlawful" prong of Section 17200 by

17 alleging violations of the Civil Legal Remedies Act ("CLRA") and a breach of contract between

18 TWC and the HOA.  In particular, Plaintiff argues that TWC violated Civil Code sections

19 1770(a)(3)[1], 1770(a)(13), and 1770(a)(19).  However, such arguments are unsupported by the

20 facts, lack merit, and cannot withstand summary judgment.

21     **2.**  **Plaintiff Cannot Prove TWC Violated of Civil Code Section 1770(a)(3).**

22    Section 1770(a)(3) of the CLRA prohibits "[m]isrepresenting the affiliation, connection,

23 or associate with, or certification by, another."  Cal. Civ. Code § 1770(a)(3).  A claim may be

24 stated under CLRA for failure to disclose, but it has been held that "to be actionable the omission

25

26 [1] In the FAC, Plaintiff alleges that TWC misrepresented its affiliation, connection, or association with the HOA in violation of Civil Code section 1770(a)(1).  However, section 1770(a)(1) proscribes "[p]assing off goods or services
27 as those of another."  It is section 1770(a)(3) that prohibits "[m]isrepresenting the affiliation, connection, or association with, or certification by, another."  Cal. Civ. Code § 1770.  Accordingly, Plaintiff's citation to section
28 1770(a)(1) is in error and should be to section 1770(a)(3).

1   must be contrary to a representation actually made by the defendant, or an omission of a fact the

2   defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th

3   824, 835 (2006).

4       Plaintiff alleges that TWC violated section 1770(a)(3) of the CLRA by misrepresenting its

5   affiliation with Plaintiff's HOA.  This purported misrepresentation is based on two grounds:  (1)

6   TWC not informing Plaintiff of the rates for Additional Services that he was allegedly entitled to

7   as an HOA member and which would have reflected the fact that his basic cable was already

8   being paid through the HOA, and (2) TWC not disclosing to Plaintiff that it was collecting fees

9   for his basic cable service from the HOA.  (First Amended Complaint ¶ 14.)

10      Plaintiff's claim that TWC violated section 1770(a)(3) of the CLRA fails as a matter of

11  law because the undisputed facts show that:

12          (1) Plaintiff was not entitled to any particular rates for Additional
            Services (SS ¶ 35.);
13

14          (2) TWC had no duty to inform Plaintiff of all its rates, packages,
            and promotions for Additional Services, which were not even in
            existence at the time Plaintiff originally ordered Additional
15          Services (SS ¶¶ 18, 23, 36.);

16          (3) Plaintiff knew and understood that the HOA paid TWC for his
            basic cable (SS ¶ 37.);
17

18          (4) TWC had no duty to inform Plaintiff that the HOA was paying
            TWC for his basic cable (SS ¶ 38.);

19          (5) TWC did not charge or collect money from Plaintiff for basic
            cable (SS ¶ 39.);
20

21          (6) TWC correctly charged Plaintiff for the Additional Services he
            ordered (SS ¶ 40.).

22  Each one of these undisputed facts alone negates Plaintiff's UCL claim based on purported

23  unlawful conduct by TWC in violation of Civil Code section 1770(a)(3).

24          **3.      Plaintiff Cannot Prove TWC Violated Civil Code Section 1770(a)(13).**

25      Section 1770(a)(13) of the CLRA prohibits "[m]aking false or misleading statements of

26  fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code §

27  1770(a)(13).  Plaintiff alleges that TWC violated this statute by misinforming him that his cable

28  bill was reduced because he ordered a bundle of services rather than individual services, when the

1    real reason for the price reduction was due to TWC already collecting basic cable fees on behalf

2    of Plaintiff.  (First Amended Complaint ¶¶ 15, 42.)

3        Similar to Plaintiff's claims for violation of section 1770(a)(3), Plaintiff's attempt to

4    establish a violation of section 1770(a)(13) by TWC fails as a matter of law because it is factually

5    incorrect.  Plaintiff has admitted that he was charged the correct price by TWC both when he

6    ordered Additional Services a la carte, and when he later ordered a bundled package for a lower

7    price.  (SS ¶ 42.)

8        The real reason that Plaintiff's bill for Additional Services was reduced was because he

9    changed his services and ordered a bundled package rather than a host of individual services.  (SS

10   ¶ 43.)  Plaintiff's own deposition testimony confirms that the price reduction was due to his

11   switch to a bundled package.  Plaintiff testified at deposition that he was familiar with TWC

12   advertising relating to bundled packages and knew that customers ordering bundled services

13   received a discount off the price for the same services ordered a la carte.  (SS ¶ 44.)  Plaintiff

14   even admitted that he changed his Additional Services to a bundled package in order to get a

15   better price.  (SS ¶ 45.)  The undisputed evidence shows that Plaintiff's reduction in price was

16   due to the bundled discount, something that he was well aware of, and something that he

17   specifically sought.  Accordingly, there is no violation of Civil Code section 1770(a)(13) to

18   support Plaintiff's UCL claim.

19        **4.    Plaintiff Cannot Prove TWC Violated Civil Code Section 1770(a)(19).**

20        Civil Code section 1770(a)(19) proscribes "[i]nserting an unconscionable provision in the

21   contract."  Cal. Civ. Code § 1770(a)(19).  Plaintiff claims that TWC violated section 1770(a)(19)

22   by requiring customers to report billing errors within thirty days.  (First Amended Complaint

23   ¶¶ 21-23, 40.)  That provision of the Consumer Agreement provides:  "I agree that it is my

24   responsibility to report TWC billing errors within 30 days from receipt of the bill so that service

25   levels and all payments can be verified.  If not reported within 30 days, the errors are waived."

26   (SS ¶ 47.)  A reminder is also included in each TWC invoice, conspicuously stating:

27   /////

28   /////

1    "Note:  If you believe this statement contains a billing error, we
     must hear from you within 30 days of receipt of the statement in
2    question.  If we are not notified of the discrepancy the statement
     will be considered correct."
3

4    (SS ¶ 48.)

5         A court may deem a contract provision unconscionable only if it is both procedurally and

6    substantively unconscionable.  *See Armendariz v. Foundation Health Pyschcare Services, Inc.*, 24

7    Cal. 4th 83, 114 (2000).  The procedural element of unconscionability focuses on two factors:

8    oppression and surprise.  *Id.*  Oppression arises where there is an inequality of bargaining power

9    resulting in no real negotiation and an absence of meaningful choice.  *Aron v. U-Haul Co. of*

10   *California*, 143 Cal. App. 4th 796, 808 (2006).  Surprise "involves the extent to which the

11   supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the

12   party seeking to enforce the disputed terms."  *Id.*  The substantive element of unconscionability

13   deals with the "actual terms of the agreement and evaluates whether they create 'overly harsh' or

14   'one-sided' results as to 'shock the conscience.'"  *Id.*

15        Any claim of oppression is defeated if there an availability of alternative sources from

16   which to obtain the desired service.  *See, e.g., Freeman v. Wal-Mart Stores, Inc.*, 111 Cal. App.

17   4th 660, 670 (2003).  Moreover, when the challenged term is in a contract concerning a

18   nonessential recreational activity, the consumer always has the option of simply foregoing the

19   activity.  *Belton v. Comcast Cable Holdings, LLC*, 151 Cal. App. 4th 1224 (2007) (requirement

20   that plaintiff purchase basic cable tier to listen to music or FM radio is not unconscionable

21   because listening to music or FM radio is a nonessential recreational activity that Plaintiff could

22   simply have forgone); *Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 621-22 (1996) (ski repair

23   company's contract provision releasing company from liability for injury resulting from its work

24   is not unconscionable because skiing is a nonessential recreational activity).

25             **a.    Plaintiff Lacks Standing to Challenge the Contract Provision.**

26        Plaintiff's assertion that this provision is unconscionable is nothing more than a red

27   herring argument which, in any event, he lacks standing to raise.  TWC's requirement of thirty-

28   day notification of billing errors is entirely inapplicable to Plaintiff's allegations—which do not

-11-

1    involve a billing error.  Plaintiff admits that he was correctly charged for the Additional Services

2    he ordered both before and after he switched to a bundled package.  (SS ¶ 50.)   Accordingly,

3    there were no billing errors for Plaintiff to report and the provision does not come into play.  The

4    fact that Plaintiff received a better price after changing to a package of bundled services does not

5    render TWC's earlier a la carte pricing "erroneous."  In any event, Plaintiff was not denied a

6    retroactive credit because he failed to report an "error" within 30 days.  Rather, it was denied

7    because he was not entitled to it.

8                          **b.      The Contract Provision is Not Unconscionable.**

9            Furthermore, Plaintiff cannot prove that this common billing provision is unconscionable

10   for several reasons.  First, Plaintiff did not lack a meaningful choice in bargaining for TWC to

11   provide him with Additional Services.  Plaintiff had other means of obtaining the entertainment

12   provided by his ordering Additional Services from TWC, such as renting movies, reading books,

13   using a satellite service, using another telephone provider, and using another internet provider.

14   (SS ¶ 52.)  Furthermore, Plaintiff could have simply foregone the nonessential recreational

15   activity altogether.  (SS ¶ 53.)  On this ground alone, TWC's contract provision is not oppressive.

16           Second, there was no element of "surprise" because the requirement that Plaintiff report

17   billing errors within thirty days was not hidden.  Not only is the provision in the contract itself—

18   which Plaintiff admitted that he reviewed prior to purchasing Additional Services from TWC—

19   but it is also conspicuously included in every billing statement directly below an all caps and

20   underlined title "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>."  (SS ¶ 48.)  The

21   font is the same size as the rest of the text in the same area on the billing statement.  (SS ¶ 49.)

22   The language from the contract and billing statements is clear and unambiguous.  This provision

23   is not hidden, but is conspicuously displayed on a regular basis to customers, including Plaintiff.

24           Third, the provision at issue is not substantively unconscionable.  Plaintiff testified in his

25   deposition that requiring customers to report billing errors within thirty days is reasonable.  (SS

26   ¶ 51.)  Accordingly, Plaintiff cannot prove that such a term creates "overly harsh" or "one-sided"

27   results that "shock the conscience."  Plaintiff cannot even prove that the contract provision is

28   unreasonable, a much lower standard.  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th

                                                    -12-

1305, 1322-23 (2005) (finding that unreasonableness of terms does not equate to

unconscionability, rather terms must be such an extreme departure from common business

practice as to shock the conscience).

Finally, the notice requirement about which Plaintiff complains is supported by the

voluntary payment doctrine which, as the name implies, provides that payments made voluntarily

to another with knowledge of the facts cannot be recovered. *Sierra Inv. Corp. v. County of Sacr.*,

252 Cal. App. 2d 339, 342 (1967); *Leahy v. Warden*, 163 Cal. 178, 181 (1912); *Perry v. Otay Irr.

Dist.*, 127 Cal. 565, 570 (1900); *see also Riensche v. Cingular Wireless LLC*, No. C06-1325Z,

2007 WL 3407137 (W.D. Wash. Nov. 9, 2007) (Notice of Lodgment of Exhibits and Non-

California Authorities in Support of Defendant Time Warner Cable's Motion for Summary

Judgment, Ex. F.). The "voluntary payment" doctrine reflects the policy that requiring timely

notification of billing errors is reasonable and lawful, and cannot be found to be unconscionable.

**5.    Plaintiff Cannot Prove Unlawful Conduct Due to a Purported Breach
of Contract Between TWC and the HOA.**

The "unlawful" prong of Section 17200 proscribes engaging in business practices that are

forbidden by law. *Smith v. State Farm Mut. Auto. Ins. Co.,* 93 Cal. App. 4th 700, 717-18 (2001).

However, mere civil claims, such as a breach of contract claim, do not give rise to a cause of

action under the "unlawful" prong of Section 17200. *See Klein v. Earth Elements, Inc.*, 59 Cal.

App. 4th 965, 969 (1997). In *Klein*, the California Court of Appeal rejected a plaintiff's assertion

that the "liability imposed under the doctrines of 'strict products liability and…breach of the

implied warranty of fitness' will support an independent action under the 'unlawful' prong of

section 17200." *Id.* The court explained that, "[w]hile these doctrines do provide for civil

liability upon proof of their elements they do not, by themselves, describe acts or practices that

are illegal or otherwise forbidden by law." *Id.; see also Bernando v. Planned Parenthood

Federation of America*, 115 Cal. App. 4th 322 (2004) (plaintiff's allegations that websites

contained misleading statements failed to provide basis for unlawfulness under Section 17200).

Plaintiff argues that he is a third party beneficiary of a contract between TWC and

Plaintiff's HOA, and that TWC breached that agreement by charging him directly for services

-13-

1    already provided and paid for under the HOA agreement.  (First Amended Complaint ¶¶ 29(g),

2    43.)  Even if they were true, these allegations cannot form the basis of a claim under the

3    "unlawful" prong of the UCL because, as discussed above, a UCL "unlawful" claim cannot be

4    based on a breach of contract.  But as we demonstrate herein, the suggestion that TWC breached

5    its contract with either plaintiff or the HOA is patently false.  In that regard, (1) the HOA

6    Agreement provides that TWC would provide basic cable to HOA residents (SS ¶ 55.), (2) TWC

7    provided basic cable services to HOA residents (SS ¶ 56.), (3) TWC charged the HOA for such

8    services, and the HOA paid TWC for the services (SS ¶¶ 57, 58.), (4) TWC never charged

9    Plaintiff or other HOA residents for their basic cable services (SS ¶ 59.) and, (5) TWC was not

10   contractually bound to offer Additional Services to Plaintiff at any particular prices (SS ¶ 60.).

11        **B.        Plaintiff Cannot Prove that TWC Engaged in Unfair Business Practices.**

12             **1.        Standard for Unfair Business Practices Under the UCL.**

13        An action may be deemed a violation of Section 17200 if it is "unfair," even if it is not

14   specifically proscribed by some other law.  *Cel-Tech Communications v. Los Angeles Cellular*

15   *Tel. Co.,* 20 Cal. 4th 163, 180 (1999).  In *Cel-Tech,* the California Supreme Court explained that

16   under the "unfair" prong of Section 17200, "[c]ourts may not simply impose their own notions of

17   the day as to what is fair or unfair."  *Id.* at 182.  "We must require that any finding of unfairness

18   to competitors under section 17200 be tethered to some legislatively declared policy or proof of

19   some actual or threatened impact on competition."  *Id.* at 186-87.  Although the Supreme Court in

20   *Cel-Tech* limited that holding to cases involving injury to "competitors" as opposed to

21   "consumers," *id.* at 187 n. 12, subsequent decisions have extended the analysis of *Cel-Tech* to

22   consumer cases.  *Bernardo v. Planned Parenthood Fed'n of Am.*, 115 Cal App. 4th 322, 353

23   (2004) ("*Cel-Tech ...* may signal a narrower interpretation of the prohibition of unfair acts or

24   practices in *all* unfair competition claims."); *Scripps Clinic v. Superior Court,* 108 Cal. App. 4th

25   917, 940 (2003); *Schnall v. Hertz Corp.,*  78 Cal. App. 4th 1144, 1166 (2000).

26        Furthermore, the test of whether TWC's business practices are "unfair" "involves an

27   examination of [that practice's] impact on its alleged victim, balanced against the reasons,

28   justifications and motives of the alleged wrongdoer."  *Podolsky v. First Healthcare Corp.*, 50 Cal.

-14-

1   App. 4th 632, 647 (1996) (quoting *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal.

2   App. 4th 1093, 1103-04 (1996).

3        Because a corporation has a contractual right to manage its business as it sees fit, there

4   exists a "business justification" defense to a claim brought under 17200.  *See Lee v.*

5   *Interinsurance Exchange*, 50 Cal. App. 4th 694 (1996); *see also Motors, Inc. v. Times Mirror,*

6   *Co.*, 102 Cal. App. 3d 735, 740 (1980) (defendant's reasons, justifications, and motives" should

7   be taken into account when weighing the "utility of the defendant's conduct").  In *Lee*, the

8   plaintiffs were subscribers of an insurance carrier attempting to force the company to pay out a

9   surplus of the fund, but the court held that the action was barred by the "business judgment rule."

10  The court stated, "[A]ctions which are reasonable exercises of business judgment, are not

11  forbidden by law, and fall within the discretion of the directors of a business under the business

12  judgment rule cannot constitute unlawful business practices."  *Lee*, 50 Cal. App. 4th at 713-14.

13       Plaintiff claims that TWC engaged in unfair business conduct in violation of the UCL by

14  (1) overcharging HOA customers for cable services and not providing pricing that reflected

15  services already provided for under TWC's contract with the HOA; (2) requiring Plaintiff to

16  notify it of billing errors within thirty days of receiving erroneous charges while failing to

17  disclose that "HOA pricing" is available to HOA subscribers that properly accounts for the basic

18  cable paid for by the HOA; and (3) by breaching its agreement with the HOA by charging

19  Plaintiff for services already provided for under TWC's agreement with the HOA.  (First

20  Amended Complaint ¶¶ 38, 39, 43.)  Each of these three claims is contradicted by undisputed

21  facts and cannot be proven by Plaintiff, as discussed below.

22              **2.      TWC Did Not Overcharge Plaintiff.**

23       Plaintiff's overcharging theory is completely erroneous and cannot be proven on several

24  grounds.  First, TWC did not overcharge Plaintiff for cable services.  As Plaintiff acknowledged

25  in his deposition, TWC correctly billed Plaintiff for the Additional Services he ordered from

26  TWC both before and after he changed such services to a bundled package.  (SS ¶ 62.)  Secondly,

27  the HOA Agreement provides only that basic cable services will be provided to HOA residents

28  and does not contain, suggest, or require pricing for any Additional Services that may be ordered

-15-

by residents.  (SS ¶ 63.)  TWC's pricing to Plaintiff, both before and after he switched his

programming to a bundled package, properly accounted for the services already provided under

the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—

the services provided per the HOA Agreement.  (SS ¶ 64.)  Plaintiff was not unfairly

"overcharged" for the Additional Services that he ordered a la carte simply because he later

requested and was given a better price on a bundled package of services.

> **3.    TWC Did Not Unfairly Require Notification of Billing Errors While Failing to Disclose Pricing That Accounted for HOA Payments.**

Plaintiff's theory that TWC acted unfairly in requiring notification of billing errors within

thirty days while failing to disclose pricing that accounted for HOA payments is similarly

incorrect and without merit for several, independent reasons.  First, as explained above, Plaintiff

lacks standing to assert claims based on TWC's thirty-day notification requirement for billing

errors because there were no errors on Plaintiff's bills, nor was he in any way affected by the

notification provision.  (*See supra*, Part V.A.4.a.)

Second, the practice of requiring timely notification of billing errors is not inherently

unfair or harmful to competition or consumers.  At deposition, Plaintiff acknowledged that

requiring customers to notify TWC of billing errors within thirty days is reasonable.  (SS ¶ 69.)

Third, the justification for such a provision greatly outweighs the impact of the provision on

Plaintiff.  As explained in the notification provision, TWC requires customers to notify it of

billing errors within thirty days so that service levels and payments can be verified.  (SS ¶ 71.)

While this provision allows TWC to effectively and efficiently resolve any billing issues, the

provision has had no harmful effect—or any effect at all—on Plaintiff.  As Plaintiff admitted in

his deposition, TWC correctly charged Plaintiff for the Additional Services he ordered both

before and after he changed his services to a bundled package.  (SS ¶ 72.)  Accordingly, there

were no billing errors for Plaintiff to report.

Fourth, the factual premise of the claim is entirely wrong—TWC did not unfairly fail to

disclose pricing to Plaintiff that properly considered basic cable payments made by the HOA.  As

explained above, TWC's pricing for Additional Services included only the proper charges for

-16-

1    such services and did not include any charges for basic cable. (*See supra*, Part V.B.2.)

2    Accordingly, TWC could not have possibly failed to disclose such "improper" pricing because

3    there was no improper pricing.  Although Plaintiff has not claimed otherwise, it is worth noting

4    that TWC was under no obligation to provide special pricing for Additional Services, nor was it

5    obligated to notify Plaintiff of all potential packages and prices for its Additional Services, which

6    were not even in existence at the time Plaintiff originally ordered Additional Services (SS ¶¶ 18,

7    23, 77, 78.)

8           There is certainly nothing unfair about TWC's offering bundled services packages at a

9    discounted rate.  Furthermore, and although Plaintiff's complaint does not assert otherwise, there

10    is nothing "unfair" about offering such discount packages to those customers who specifically

11    order the bundle without attempting to determine if certain other customers might want to

12    consider switching to the bundled pricing because the services they are currently ordering are

13    similar to those contained in the bundle.  TWC made a decision to offer bundled pricing packages

14    to bulk residents, including members of homeowners' associations.  It is not uncommon for

15    businesses to package discrete goods or services together, nor is the practice necessarily

16    undesirable from the standpoint of the consumer.  *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,

17    466 U.S. 2, 11-12 (1984).  In the absence of some restraint upon competition, the mere practice of

18    packaging services together is not inherently anticompetitive or harmful to consumers.  *Id.*  TWC

19    is entitled to exercise its business discretion in making choices regarding the pricing and bundling

20    of its products, an area of economic policy in which courts have refrained from being involved.

21    *Belton*, 151 Cal. App. 4th at 1247, citing *California Grocers Assn. v. Bank of America*, 22 Cal.

22    App. 4th 205, 218 (1994).

23        **4.**    **TWC Did Not Breach its Agreement with the HOA.**

24           Plaintiff cannot prove a UCL violation based on the theory that TWC breached its

25    Agreement with the HOA by charging Plaintiff for basic cable services already provided for

26    under TWC's Agreement with the HOA.  The undisputed facts show that TWC did not breach its

27    Agreement with the HOA or charge Plaintiff for services provided under the Agreement.  (*See*

28    *supra*, Part V.A.5.)

**C.     Plaintiff Cannot Prove That TWC Engaged in Misleading or Deceptive Business Practices.**

**1.     Standard for Misleading or Deceptive Conduct Under the UCL.**

A business act or practice is misleading or deceptive under the UCL if a plaintiff can show that members of the public are likely to be deceived. *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983); *Shvarts v. Budget Group, Inc.*, 81 Cal. App. 4th 1153, 1160 (2000). "Likely to deceive" means that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). This requires more than a "mere possibility that the [purportedly misleading matter] might conceivably be misunderstood by some few consumers." *Id.* Where the subject matter is not deceptive on its face, the plaintiff must produce more evidence than just the purported misleading statements and his testimony, or a few isolated examples of misled consumers, in order to meet the burden of showing a significant number of reasonable consumers would be misled. *Brockey v. Moore,* 107 Cal. App. 4th 86, 99-100 (2003).

The "deceptive" prong of Section 17200 does not impose an affirmative obligation for businesses to provide the "best possible notice" to prevent any possible misleading of the public. For example, in *Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966 (2003), the Court of Appeal held that although a sign at a hotel warning patrons about a $21 charge for valet parking might have been better than the notice provided, "there is no requirement [under the UCL] that reasonable notice has to be the best possible notice." The court added "[m]oreover, a potential parker could ask if there is a charge or a self-parking lot and thus is not forced to use valet parking." *Id.* Likewise in *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002) the court held that a hotel's practice of not expressly advising patrons that service charges on room service bills were paid to their servers did not violate the UCL.

Similar to his claims for unfair business practices, Plaintiff claims that TWC engaged in misleading and deceptive conduct in violation of the UCL by: (1) overcharging HOA customers for cable services and not providing pricing that reflected services already provided for under

-18-

TWC's contract with the HOA; (2) requiring Plaintiff to notify it of billing errors within thirty days of receiving erroneous charges while failing to disclose that "HOA pricing" is available to HOA subscribers that properly accounts for the basic cable paid for by the HOA; (3) deceptively concealing HOA pricing; (4) misrepresenting TWC's affiliation with the HOA; and (5) making false or misleading statements that Plaintiff's cable bill was reduced due to the bundling of services when the real reason for the decrease in price was that Plaintiff obtained "HOA pricing to which [he] and the HOA residents were entitled all along."  (First Amended Complaint ¶¶ 29(b), 29(e), 38, 39, 43.)  Each of these three claims is contradicted by undisputed facts and cannot be proven by Plaintiff, as discussed below.

### 2.    TWC Did Not Overcharge Plaintiff.

As explained above, TWC could not have misled Plaintiff based on Plaintiff's overcharging theory because TWC did not overcharge Plaintiff, nor did its pricing to Plaintiff fail to account for the HOA's payments to TWC for Plaintiff's basic cable.  (*See supra*, Part V.B.2.)

### 3.    TWC Did Not Misled Plaintiff Regarding Notification of Billing Errors While Failing to Disclose Pricing That Accounted for HOA Payments.

As explained above, TWC did not mislead Plaintiff regarding when he was required to notify TWC of billing errors, nor did TWC fail to disclose pricing that reflected the HOA's payments to TWC for Plaintiff's basic cable.  (*See supra*, Part V.B.3.)

### 4.    TWC Did Not Deceptively Conceal HOA Pricing.

There are no facts to support Plaintiff's theory that TWC deceptively concealed "HOA Pricing" from Plaintiff.  The undisputed facts show that the only pricing agreed to between TWC and the HOA related to the pricing for basic cable.  (SS ¶ 97.)  Furthermore, Plaintiff was aware that the HOA paid TWC for his basic cable.  (SS ¶ 99.)  TWC and the HOA had no agreement regarding Additional Services.  (SS ¶¶ 97, 100, 102.)

The "HOA Pricing" referred to by Plaintiff is merely the pricing of one bundle of Additional Services that was made available to HOA residents who were prepared to purchase all of the services in the bundle.  (SS ¶ 100.)  TWC had no duty to inform Plaintiff of this or any other rates, packages, or promotions for Additional Services that were available to Plaintiff.  (SS

-19-

¶ 103.)  Nor was TWC obligated to offer any particular bundle packages or pricing to Plaintiff for his Additional Services.  (SS ¶ 102.)  Under Plaintiff's theory, businesses would have an affirmative duty to inform all their customers regarding every available option for purchase, and would then be retroactively liable if the customers later chose a different product at a lesser price.  Such a theory is simply ridiculous.  Plaintiff was not misled by purportedly concealed pricing because he understood businesses bundle products at a discounted rate, and he could have asked TWC at any point if any options were available for a bundle of Additional Services.  (SS ¶ 101.)

### 5.    TWC Did Not Misrepresent its Affiliation with the HOA.

As explained above, TWC did not misrepresent or mislead Plaintiff regarding its affiliation, connection, or association with the HOA.  (*See supra*, Part V.A.2.)

### 6.    TWC Did Not Mislead Plaintiff Regarding the Price Discount for Purchasing a Bundled Package of Additional Services.

As explained above, TWC did not misrepresent or mislead Plaintiff regarding his decreased bill for Additional Services upon ordering a bundled package of services vis-à-vis a variety of a la carte services.  (*See supra*, Part V.A.3.)

### 7.    Plaintiff Cannot Prove that the Public Would Be Misled or Deceived.

As noted above, it is clear that Plaintiff himself was not deceived or misled by any conduct from or associated with TWC.  Furthermore, Plaintiff cannot prove that the general public would likely be misled or deceived, as is required to support his claims under the UCL's "misleading" prong.  *Lavie*, 105 Cal. App. 4th at 508.  To succeed on his claims, Plaintiff must produce more evidence than just the purported misleading statements and his testimony, or a few isolated examples of misled consumers.  *Brockey,* 107 Cal. App. 4th at 99-100.  Rather, he must present evidence showing a significant number of reasonable consumers were or would be misled.  *Id*.  Plaintiff cannot present such evidence.  (SS ¶ 116.)  For this reason, Plaintiff cannot prove any of his claims that TWC engaged in misleading or deceptive conduct under the UCL.

/////

/////

/////

**VI.    PLAINTIFF LACKS STANDING TO BRING A CLAIM UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200.**

In addition to the above, Plaintiff's action fails as a matter of law for lack of standing to bring a UCL claim.  Following passage of Proposition 64, the UCL limits standing to individuals who have been injured and lost money or property as a result of the alleged unfair competition. Cal. Bus. & Prof. Code § 17204.  The undisputed facts show that Plaintiff has received exactly what he paid for by purchasing his cable related services and has not been injured.

The UCL "operates only to return to a person those measurable amounts which are wrongfully taken by means of an unfair business practice…[I]n the absence of a measurable loss the section does not allow the imposition of a monetary sanction merely to achieve [a] deterrent effect." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998).  In *Day*, purchasers of calling cards brought a UCL action against the telephone company because the cards claimed to have ten minutes of calling time when in fact calls were rounded up to the nearest minute.  *Id.* at 329.  The *Day* court dismissed the section 17200 claim because purchasers were on notice of the rounding practice, and even if misled into purchasing the cards by the representations, they "received exactly what they paid for" when using the cards after purchased.  *Id.* at 339.

Restitution under the UCL requires both that the offending party received something it would not have received but for the unfair business practice, and that the victim gave up something they were entitled to keep.  *Id.* at 340.  For this reason, consumers who receive the "benefit of their bargain" cannot sustain a UCL claim.  The undisputed facts show that Plaintiff received exactly what he paid for when purchasing Additional Services from TWC.   Plaintiff admitted that he purchased and paid for Additional Services, that TWC's billings for the Additional Services he ordered were correct, and that he received the Additional Services that he ordered.  (SS ¶¶ 118-120.)  Therefore, Plaintiff received exactly what he paid for and has no measurable loss to support a UCL claim.  Any attempt to calculate a monetary amount to be paid by Plaintiff would result in a refund or rebate of properly collected fees for services.

/////

/////

1

**VII.    CONCLUSION.**

2

        For all the foregoing reasons, Plaintiff cannot prove any triable issues of material fact to

3

support his claim that TWC engaged in any unfair, unlawful, or fraudulent conduct.  Accordingly,

4

TWC requests the Court grant its motion for summary judgment or, in the alternative, partial

5

summary judgment.

6

Dated:  April 2, 2008                           DLA PIPER US LLP

7

8

                                        By:  s/Jeffrey M. Shohet

9

                                            JEFFREY M. SHOHET
                                            JULIE L. HUSSEY

10

                                            CARRIE S. DOLTON
                                            RYAN T. HANSEN

11

                                            Attorneys for Defendant Time Warner
                                            Entertainment-Advance/Newhouse Partnership,

12

                                            a New York General Partnership, through its
                                            San Diego Division, dba Time Warner Cable

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28