1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL
7  PARTNERSHIP

8
                    UNITED STATES DISTRICT COURT
9
                 SOUTHERN DISTRICT OF CALIFORNIA
10

11  LEON ALPERT, an individual, on behalf of      Case No. 08 CV 0582 BTM WMc
    himself, on behalf of all those similarly
12  situated, and on behalf of the general public,   **NOTICE OF ERRATA**

13            Plaintiffs,

14       v.                                          Judge:   Hon. Barry Ted Moskowitz
                                                     Ctrm:    15
15  TIME WARNER CABLE, INC., a Delaware
    corporation, and DOES 1 to 100,
16
              Defendants.
17

18

19  TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

20            PLEASE TAKE NOTICE that the signed Stipulated Protective Order attached hereto as

21  Exhibit A was inadvertently omitted from the Superior Court file that was attached as Exhibit A

22  to the Removal filed by Defendant Time Warner Entertainment-Advance/Newhouse Partnership,

23  a New York general partnership ("TWC") on March 27, 2008.

24            The documents attached as Exhibit B were received by TWC after filing its Removal.

25  Specifically, attached are conformed copies of TWC's opposition to Plaintiff's motion to compel

26  further responses to interrogatories and TWC's opposition to Plaintiff's renewed motion to

27  compel further responses, which were received from the Superior Court after filing its Removal;

28  and copies of Plaintiff's reply in support of motion to compel further responses to interrogatories

                                        -1-

1    and Plaintiff's reply in support of renewed motion to compel further responses, which Plaintiff

2    filed with the Superior Court after TWC filed its Removal.

3          TWC hereby submits these documents so the Superior Court file is full and complete.

4    Dated:  April 10, 2008

5                                    By  s/Julie L. Hussey

6                                        JULIE L. HUSSEY
                                         DLA PIPER US LLP

7                                        Attorneys for Defendant
                                         Time Warner Entertainment-Advance/Newhouse

8                                        Partnership, A New York General Partnership
                                         Email:  julie.hussey@dlapiper.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibits

Table of Contents

| Exhibit | Title | Page |
|---------|-------|------|
| A | Stipulated Protective Order | 5 |
| B | Documents Received by TWC After Filing Its Removal: | |
| | TWC's Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories; | 20 |
| | TWC's Opposition to Plaintiff's Renewed Motion to Compel Further Responses; | 76 |
| | Plaintiff's Reply in Support of Motion to Compel Further Responses to Interrogatories; | 121 |
| | Plaintiff's Reply in Support of Renewed Motion to Compel Further Responses | 130 |

08 CV 0582 BTM WMc

# EXHIBIT A

Exhibit A    4 · ·

COPY

| | |
|---|---|
| 1 | JEFFREY M. SHOHET (Bar No. 067529)<br>JULIE L. HUSSEY (Bar No. 237711) |
| 2 | CARRIE S. DOLTON (Bar No. 234298)<br>**DLA PIPER US LLP** |
| 3 | 401 B Street, Suite 1700<br>San Diego, CA  92101-4297 |
| 4 | Tel:  619.699.2700<br>Fax:  619.699.2701 |
| 5 | |
| 6 | Attorneys for Defendant<br>TIME WARNER ENTERTAINMENT-ADVANCE/<br>NEWHOUSE PARTNERSHIP, A NEW YORK |
| 7 | GENERAL PARTNERSHIP, THROUGH ITS SAN<br>DIEGO DIVISION, DBA TIME WARNER CABLE |
| 8 | |

F ̶ ̶ ̶
Clerk of the S.

MAR 2 1 2008

By: Y. STO—————

9              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

10                                  CENTRAL DIVISION

| | | |
|---|---|---|
| 12 | LEON ALPERT, an individual, on behalf<br>of himself, on behalf of all those similarly | CASE NO.  GIC881621 |
| 13 | situated, and on behalf of the general<br>public, | **STIPULATED [PROPOSED]**<br>**PROTECTIVE ORDER** |
| 14 | | |
| 15 | Plaintiff, | Dept: 63<br>Judge:  Luis R. Vargas |
| 16 | v. | |
| 17 | TIME WARNER CABLE, INC., a<br>Delaware corporation, and DOES 1 TO | |
| 18 | 100, | |
| 19 | Defendants. | |

GT\6552663.3

STIPULATED PROTECTIVE ORDER

EXHIBIT A    5

1    Plaintiff LEON ALPERT ("Plaintiff") and named Defendant TIME WARNER

2    ENTERTAINMENT-ADVANCE/ NEWHOUSE PARTNERSHIP, a New York General

3    Partnership ("Defendant"), (collectively, the "Parties") assert that they may possess confidential

4    information in the form of trade secrets or other confidential and/or proprietary business, personal

5    and/or technical information related to the subject matter of this litigation and that it may be

6    necessary to disclose such materials during the course of this litigation.  However, the Parties

7    desire to limit disclosure and prevent the use or misuse of such information for purposes other

8    than the prosecution and defense of this action.

9         Subject to the California Rules of Court, as well as the California Code of Civil

10    Procedure, the Parties, by and through their respective counsel of record hereby stipulate and

11    agree to the request, and entry of, the following Protective Order ("Order").  The Parties hereby

12    stipulate and agree that any findings made by the Court pursuant to this Order shall be made

13    pursuant to Rules of Court 2.550 and 2.551.  Consequently, no court proceedings or court

14    transcripts may be sealed in advance pursuant to the Parties' stipulations, alone.  Furthermore, the

15    parties stipulate and agree that this Order shall not bind third parties to this action nor bind any

16    other court.

17         Good cause exists for the Court to enter this Order because the property and privacy

18    interests of the Parties outweighs the public's interest in full and complete access to judicial

19    proceedings and because this Order provides a mechanism by which any Party or interested

20    member of the public may challenge a confidentiality designation.

21         Accordingly, to expedite discovery and pursuant to the stipulation of counsel, and good

22    cause having been shown, the Court hereby ORDERS as follows:

23         1.    Confidential Materials:  At the time of production or disclosure of any documents,

24    discovery responses, testimony, data or other materials, or portions thereof, by any party

25    believing that said materials contain proprietary, trade secret and/or confidential information

26    (hereafter "the Producing Party"), the Producing Party may designate the materials as being

27    subject to this Order by affixing a legend to the materials indicating that said material was

28    produced in this case as "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS EYES

STIPULATED PROTECTIVE ORDER

EXHIBIT A    6

1   ONLY" material which shall be subject to the terms of this Order (hereafter "Protected

2   Materials").

3         2.      Designation and Access to Protected Materials:  Production of Protected Materials

4   shall be subject to the following terms and conditions:

5                A.      All documents and/or materials subject to the terms of this Order shall be

6   clearly marked by the Producing Party in the manner specified in Paragraph 1 above; the marking

7   will be done, insofar as practicable, in a way that does not render illegible the substantive portions

8   of the documents containing Protected Materials;

9                B.      Protected Materials shall only be used in the litigation of this case and any

10  trial or post-trial proceedings in this case and for no other purpose(s) whatsoever and shall not be

11  used by anyone subject to the terms of this Order for any business, commercial, or competitive

12  purposes.  Production of Protected Materials in this action shall not operate as a waiver of the

13  Parties' confidentiality over the Protected Materials.

14               C.      Confidential Material:  Designation of "CONFIDENTIAL" Protected

15  Materials shall be limited to materials that, in a good faith determination by the Producing Party

16  and its counsel, contain proprietary, trade secret and/or confidential information not otherwise

17  available to the public.  Access to CONFIDENTIAL Protected Materials, and the information

18  contained therein (including extracts, copies, notes, and summaries derived from them), shall be

19  restricted to the following:

20                       i.      The parties, attorneys of record in this case and personnel assisting

21  and supporting those attorneys in their work in this case (which specifically includes partners,

22  associates and employees of the firm as well as outside attorney services whose assistance is

23  required in the preparation of this case for trial);

24                       ii.      Those agents of the party, or other consulted professionals,

25  including attorneys, whose assistance is required in the preparation of this case for trial and who

26  must have access to the material to render assistance in that preparation;

27  /////

28  /////

EXHIBIT A     7

1            iii.    Experts or consultants retained or consulted in connection with the

2      preparation or trial that have executed the Acknowledgement attached hereto as Exhibit A

3      (hereafter "Acknowledgement");

4            iv.    Any individual who is indicated as an author or wrote the document

5      or information in issue; or any individual who is indicated as a recipient of the document or

6      information in issue;

7            v.    Such other persons as counsel for the Producing Party may

8      authorize in writing, or as ordered by the Court;

9            vi.    Any court reporter or videographer reporting a deposition in this

10     action, and;

11           vii.    The Court and court personnel, including stenographic reporters

12     engaged in such proceedings, as are necessarily incident to the handling, preparation or pre-trial

13     hearings of this case.

14           D.    <u>Confidential—Attorneys-Eyes Only Materials</u>:  Designation of

15     "CONFIDENTIAL---ATTORNEYS EYES ONLY" Protected Materials shall be limited to

16     materials that, in a good faith determination by the Producing Party and its counsel, contain

17     proprietary, trade secret and/or confidential information not otherwise available to the public and

18     which the Producing Party reasonably believes would cause competitive injury to the Producing

19     Party if such information were to be disclosed to the other party or others, thus warranting that

20     disclosure be further limited as set forth herein.  Access to "CONFIDENTIAL—ATTORNEYS

21     EYES ONLY" Protected Materials, and the information contained therein (including extracts,

22     copies, notes, and summaries derived from them), shall be restricted to the following:

23           i.    Outside counsel of record in this case and personnel assisting and

24     supporting those attorneys in their work in this case (which specifically includes partners,

25     associates and employees of the firm as well as outside attorney services whose assistance is

26     required in the preparation of this case for trial);

27           ii.    Experts or consultants retained or consulted in connection with the

28     preparation or trial that have executed the Acknowledgement attached hereto as Exhibit A;

DLA PIPER US LLP
SAN DIEGO

GT\6552663.3

-3-

**EXHIBIT A    8**

iii.    Any deponent who has authored or wrote the document or information in issue; or any deponent who is indicated as a recipient of the document or information in issue;

iv.    Such other persons as counsel for the Producing Party may authorize in writing, or as ordered by the Court;

v.    Any court reporter or videographer reporting a deposition in this action, and;

vi.    The Court and court personnel, including stenographic reporters engaged in such proceedings, as are necessarily incident to the handling, preparation or pre-trial hearings of this case.

E.    The parties to whom such Protected Materials are made available will not disclose, directly or indirectly, the specific contents of the Protected Materials produced herein (including extracts, copies, notes, and summaries derived from them) to anyone except those persons identified in Paragraphs C and D, immediately above.

F.    It shall be the duty of counsel receiving such Protected Materials, prior to its disclosure to those permitted to receive it under this Order, to instruct those persons as to the confidentiality of such Protected Materials and the terms of this Order; before any such person shall receive any Protected Materials produced in this case, each such person shall be required to read this Order and agree in writing, in the Acknowledgment attached hereto as Exhibit A, to be bound by each of the terms of this Order.

3.    Use of Protected Materials Subject to Protective Order:  All information contained in Protected Materials produced pursuant to this Order, including all information derived there from, shall be used only for the purposes of this litigation and any trial or post-trial proceedings in this case and for no other purpose(s) whatsoever.

A.    Use of Protected Materials at Deposition:  Counsel shall not disclose Protected Material to a witness testifying at a deposition except in strict conformity with the provisions of this Order or unless the party producing the Protected Materials assents to the disclosure of such information in writing or on the record of the deposition.

EXHIBIT A     9

1        i.     <u>Designation of Protected Materials at Deposition</u>: To designate a

2  portion or an entire deposition transcript as subject to this Order, counsel may either (a) request

3  on the record, or (b) request within fourteen (14) days of receipt of the transcript of the

4  deposition, that the information disclosed be designated as CONFIDENTIAL or

5  CONFIDENTIAL—ATTORNEYS EYES ONLY as appropriate and considered subject to this

6  Order. Pending such designation by counsel, the entire deposition transcript, including exhibits,

7  shall be deemed "CONFIDENTIAL," except for those portions of the transcript which counsel

8  previously designated as "CONFIDENTIAL—ATTORNEYS EYES ONLY." At the expiration

9  of the fourteen (14) day designation period, only the pertinent pages of the deposition transcript

10  or exhibits so designated will be treated as Protected Materials and will be utilized only as

11  permitted by this Order, unless otherwise ordered by the Court.

12        ii.    <u>Attendance at Depositions</u>: In the event that questions asked or

13  responses provided during depositions require the disclosure of Protected Materials, or if any

14  party desires to make an inquiry into Protected Materials, the attorney shall make such inquiry

15  only in the presence of those persons authorized to access such information under this Order and

16  counsel shall have the right to exclude from oral deposition any person who is not authorized by

17  this Order to receive said information. Such right of exclusion shall be applicable only during the

18  period where such Protected Materials are being discussed.

19        iii.   <u>Treatment of Confidential Material During Inspection of</u>

20  <u>Documents</u>: It is contemplated that a party may make certain files and/or documents available for

21  inspection by the other party, which files may contain confidential material, and that following

22  such inspection, the inspecting party may designate certain documents and/or materials to be

23  copied and produced. All documents and their contents made available for such inspection shall

24  be treated as "CONFIDENTIAL—ATTORNEYS' EYES ONLY" Protected Materials for a

25  period of fourteen (14) days after said inspection to permit the producing party reasonable time to

26  designate and mark those documents which were requested to be produced as either

27  "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS EYES ONLY" pursuant to the terms

28  of this Order.

STIPULATED PROTECTIVE ORDER

EXHIBIT A   10

1    4.    Subsequent Designation of Protected Material:  In the event a party inadvertently

2    fails to stamp or otherwise designate any document, discovery response, summary, testimony or

3    any other material as Protected Materials, such failure shall not operate as a waiver and said party

4    may, as soon as practicable after disclosure, or receipt of the deposition transcript, designate such

5    information as Protected Materials by giving written notice to all parties.  Under such

6    circumstances, however, no receiving party shall have any obligation or liability due to any

7    disclosure of the information which occurred prior to receipt of such notice; provided, however,

8    any subsequent disclosures shall be in accordance with such designations and this Order.

9    5.    Filing of Protected Materials:  Any item(s) designated as Protected Materials, and

10    any memorandum or document(s) purporting to reproduce or reveal the contents of such

11    Protected Materials, that a party intends to file or lodge with the Court will be filed or lodged

12    under seal in accordance with the following procedure:

13    A.    Any party contemplating the filing or use of Protected Materials in a Court

14    proceeding, including trial, other than an ex parte application, shall do so in accordance with

15    California Rule of Court 2.550—2.551, and pursuant to any local rules;

16    B.    Whereafter, the Producing Party shall have ten (10) days pursuant to

17    California Rule of Court 2.551 from the date of receipt of written notice that Protected Material

18    will be filed with the Court, to file a motion or an application to obtain an Order sealing the filing

19    of such Protected Materials in accordance with California Rule of Court 2.551;

20    C.    No Protected Materials will be filed with the Court, other than in

21    connection with an ex parte application (the procedure for which is specified in paragraph D,

22    immediately below), without adherence to the procedure set forth in California Rules of Court

23    2.550 and 2.551;

24    D.    In the event of an ex parte application requiring the Court's consideration

25    of Protected Materials, the moving party will give written notice to the producing party of the

26    intended use of the Protected Materials and either:  (a) will not, in its application, produce or

27    reveal the contents of the Protected Materials, or (b) will lodge the Protected Materials in strict

28    accordance with the procedure specified in California Rules of Court 2.551.

DLA Piper US LLP
San Diego

GT\6552663.3                    -6-

STIPULATED PROTECTIVE ORDER

EXHIBIT A    11

E.    Outside counsel of record for the parties shall have the right to access the Court's files in this case, including materials which have been designated as "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS EYES ONLY." Counsel of record may provide written authorization to an attorney service to access and copy the entire file in this case, including materials which have been filed under seal. The Clerk is directed and authorized to allow access to such attorney service upon presentation of such written authorization.

6.    <u>Pretrial Application Only</u>: This Order shall apply only to pretrial discovery. If the case proceeds to trial, the parties shall raise any issues related to the handling of Protected Materials with the Court at the Trial Readiness Conference and the Court will determine the procedures to be followed regarding the handling of Protected Materials at trial.

7.    <u>Court Proceedings</u>: Nothing herein shall be construed to prejudice any party's right to use before the Court any Protected Materials. However, before doing so, to the extent not otherwise authorized to be so used hereunder, the party intending to use Protected Materials shall so inform the Court, and any party may apply to the Court for appropriate protection, including clearing of the hearing room or courtroom of persons not entitled to receive Protected Materials as authorized herein.

A.    <u>Admissibility and Objections</u>: This Order shall not constitute a waiver of any party's or non-party's right to object to the admissibility into evidence of any Protected Materials as provided by California and/or Federal law. Nothing in this Order shall prejudice the right of a party to (a) object to a request on any ground; (b) seek additional protective treatment for any information; (c) object to the designation of any document as Protected Materials or (d) seek any modification of or relief from any provision of this Order. Nothing in this Order shall abridge the rights of any party to seek judicial review or to pursue other appropriate judicial action with respect to any ruling made by the Court concerning issues of the status of Protected Materials.

8.    <u>Meet and Confer</u>: Prior to filing any motion or application to enforce this Order or to challenge the designation of Protected Materials, the moving party shall notify the responding party in writing and meet and confer in good faith in an attempt to resolve the dispute(s).

9.      <u>Challenge to Confidential Designations</u>:  If a party objects to the designation of any documents, information, materials and/or deposition testimony as CONFIDENTIAL or CONFIDENTIAL—ATTORNEYS EYES ONLY, that party shall state its objection and the basis therefore in writing to the Producing Party's counsel, and shall maintain the confidentiality of the information unless and until the dispute is resolved by agreement of counsel or court order. Counsel for the parties shall meet and confer within five (5) days after receipt of such written objection in an effort to resolve any such dispute.  If counsel are unable to resolve the dispute, it shall be the obligation of the Producing Party to seek a court order resolving the dispute within ten (10) days after the meet and confer process has concluded.  The burden of proof will be on the Producing Party seeking protection for the materials in question.  The confidential status of the information in dispute shall be maintained until service of a final court order resolving the dispute.  Documents already produced in this litigation (i.e., before the execution of this Protective Order) are subject to the terms of this Order.  Plaintiff retains his right to object to the confidential designation of previously produced documents  and may object to such designation as outlined within this paragraph within ten (10) days of execution of this order by counsel.

10.      <u>Disclosure to Unauthorized Persons</u>:  If information subject to this Order is disclosed to any unauthorized person either through inadvertence, mistake or otherwise without authorization by the designating party, or other than in a manner authorized by this Order, the person responsible for the disclosure shall immediately (a) inform the Producing Party of all pertinent facts related to such disclosure, including without limitation, the name, address, and telephone number of the recipient and his or her employer; (b) use his or her best efforts to retrieve the disclosed information and all copies thereof; (c) advise the recipient of the improperly disclosed information, in writing, of the terms of this Order; (d) make his or her best efforts to require the recipient to execute an agreement to be bound by the terms of this Order in the form of the Acknowledgement attached as Exhibit A; and (e) take all other reasonable steps to prevent further disclosure by or to the unauthorized person who received the protected information.

/////

/////

EXHIBIT A    13

11.   <u>Return of Confidential Materials Upon Final Resolution</u>:  Upon written request of the Producing Party, within sixty (60) days after the entry of a final judgment no longer subject to appeal or the execution of any final agreement between the parties to resolve and settle this case, any party who has received Protected Materials, their counsel, and any person authorized by this Order to receive protected Materials shall, within thirty (30) days from the receipt of the written request, return to the Producing Party, or destroy, all information and documents subject to this Order, and any copies thereof, and any other writing containing, summarizing and/or disclosing the contents of any Protected Materials.

A.    Returned materials shall be delivered in sealed envelopes marked "CONFIDENTIAL" to the Producing Parties' respective counsel;

B.    Counsel of record shall be entitled to retain a copy of such materials in order to preserve its litigation file in this case;

C.    An attorney from the outside law firm of record for each Party who received any Protected Materials in the course of this proceedings shall, upon request, provide a declaration under penalty of perjury certifying that, to the best of his or her knowledge, all Protected Materials (except outside counsel's litigation file) in their possession, custody or control have been destroyed or returned to outside counsel of record for the Producing Party.

12.   <u>Disposition of Evidence</u>:  At the conclusion of this case, the disposition of all Protected Materials entered into evidence shall be governed by the California Rules of Court or applicable Local Rules and may be withdrawn from evidence and the Court files by the Producing Party as permitted, unless otherwise ordered by the Court.

13.   Nothing in this Order shall bar or otherwise restrict any attorney signing herein from rendering advice to his or her client with respect to this litigation and in the course thereof, referring to or relying upon his or her examination of Protected Materials; provided, however, that in rendering such advice the attorney shall not disclose the content or source of information to those persons not authorized to receive it.

/////

/////

STIPULATED PROTECTIVE ORDER

EXHIBIT A    14

1    14.    Amendment:  This Order may be amended by the written agreement of counsel for

2    the parties to this agreement in the form of a stipulation that shall be filed in this case; provided

3    such amendment does not impose additional burdens on the Court and is approved by the Court.

4    15.    Jurisdiction:  The terms of this Order shall survive the conclusion of this action

5    and this Court shall retain jurisdiction of this action, the parties, their attorneys, and all other

6    persons to whom confidential information has been disclosed after its conclusion for the purposes

7    of enforcing the terms of this Order or redressing any violation thereof.

8    16.    Access and Public Challenge:  The Clerk is authorized to show a copy of this

9    Order to anyone desiring access to any of the papers of this suit and is ordered to deny access to

10    all papers filed pursuant to paragraph 5 of this Order.  Any party or any interested member of the

11    public may seek leave of the Court to challenge the designation of particular documents filed

12    under seal as Protected Materials.  If an interested member of the public makes such a challenge,

13    the Party who designated the material as Protected Materials shall be given the opportunity to

14    oppose any such challenge.

15    17.    Good Faith:  Each party agrees that designations of Protected Materials as

16    "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS' EYES ONLY" information and any

17    request and responses to permit further disclosure of any such designated information shall be

18    made in good faith and not to (a) impose burden or delay on any party, or (b) to use for tactical

19    purpose or other advantages in litigation.

20    18.    Right to Further Relief:  Any party knowing or believing that any other party is in

21    violation of or intends to violate this Order and has raised the question of violation or potential

22    violation with the opposing party and has been unable to resolve the matter by agreement, may

23    move the Court for an injunction or an Order to Show Cause seeking to hold that party in

24    contempt of Court and seeking such other relief, including sanctions, as may be appropriate under

25    the circumstances.  Pending disposition of the motion by the Court, the party alleged to be in

26    violation of or intending to violate this Order shall discontinue the performance of and/or shall

27    not undertake the further performance of any action alleged to constitute a violation of this Order.

28    /////

DLA PIPER US LLP
SAN DIEGO

GT\6552663.3                                         -10-

1      19.    Any party signing through counsel, and any party's counsel signing this Order or

2   anyone signing the Acknowledgement attached as Exhibit A after the date that this Order is

3   entered by this Court, will be bound by the terms of this Order.

4          IT IS SO STIPULATED.

5   Dated: March ǀ4ǀ , 2008                      DLA PIPER US LLP

6

7                                               By: _____

8                                                   JULIE L. HUSSEY
                                                    Attorneys for Defendant
9                                                   TIME WARNER ENTERTAINMENT-
                                                    ADVANCE/ NEWHOUSE PARTNERSHIP, A
10                                                  NEW YORK GENERAL PARTNERSHIP,
                                                    THROUGH ITS SAN DIEGO DIVISION,
11                                                  DBA TIME WARNER CABLE

12  Dated: March ǀ4ǀ , 2008                      By _____

13                                                  BARRON E. RAMOS
                                                    Attorneys for Plaintiff LEON ALPERT
14  Dated: March ǀ4ǀ , 2008

15                                               CLARK AND MARKHAM

16                                               By _____
                                                    DAVID R. MARKHAM
17                                                  Attorneys for Plaintiff LEON ALPERT

18

19  IT IS SO ORDERED.

20  Dated: ___MAR 21 2008___ , ~~2008~~

21                                                  Luis R. Vargas, Judge
                                                 _____
22                                               HONORABLE LUIS R. VARGAS.
                                                 JUDGE OF THE SUPERIOR COURT

23

24

25

26

27

28

## ACKNOWLEDGEMENT AND AGREEMENT PURSUANT
## TO STIPULATED PROTECTIVE ORDER

I, the undersigned, being duly sworn, agree and acknowledge:

(A)     That I have read and understand the provisions of the STIPULATED PROTECTIVE ORDER entered by the San Diego Superior Court in the action titled *Leon Alpert v. Time Warner Cable, Inc.*, Case No. GIC88162 and agree to be bound thereby;

(B)     For the purpose of enforcing the aforesaid STIPULATED PROTECTIVE ORDER I hereby submit myself to the personal jurisdiction of the Court captioned above;

(C)     I understand that documents and discovery materials produced in this action and designated at Protected Materials may not be disclosed to anyone except as authorized in the STIPULATED PROTECTIVE ORDER and may not be used for any purpose other than this litigation. I will not disclose, discuss, write, or otherwise convey the Protected Materials which are the subject of the STIPULATED PROTECTIVE ORDER or the contents of or information in such Protected Materials, to anyone other than those authorized in the STIPULATED PROTECTIVE ORDER.

(D)     I shall, at the conclusion of this action, deliver to counsel for the party who has provided such Protected Materials to me, for transmission to counsel for the Producing Party, all documents that constitute Protected Materials which are the subject of the STIPULATED PROTECTIVE ORDER and any and all notes, compilations, photographs, memos, etc., which refer to the documents which are the subject of the STIPULATED PROTECTIVE ORDER, or contents of or information in said documents.         .

(E)     I understand that a violation of this Acknowledgement and Agreement is a violation of the STIPULATED PROTECTIVE ORDER and may be punishable by sanctions imposed by the Court, including but not limited to, citation for contempt.

/////

/////

/////

1        I declare under penalty of perjury that the foregoing is true and correct and that this

2    Acknowledgement and Agreement is executed this ___ day of _____, at

3    _____.

4

5                              By: _____

6                              Address: _____

7                                            _____

8                              Phone: _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   RYAN T. HANSEN (Bar No. 234329)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.2700
5  Fax:  619.699.2701

6

7  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
8  GENERAL PARTNERSHIP, THROUGH ITS SAN
   DIEGO DIVISION, DBA TIME WARNER CABLE
9

10              SUPERIOR COURT OF CALIFORNIA

11                 COUNTY OF SAN DIEGO

12

13  LEON ALPERT, an individual, on behalf     CASE NO.  GIC881621
    of himself, on behalf of all those similarly
14  situated, and on behalf of the general     **DEFENDANT TIME WARNER CABLE'S**
    public,                                    **MEMORANDUM OF POINTS AND**
15                                             **AUTHORITIES IN OPPOSITION TO**
              Plaintiffs,                      **PLAINTIFF'S MOTION TO COMPEL**
16                                             **FURTHER RESPONSES TO**
         v.                                    **INTERROGATORIES**
17
    TIME WARNER CABLE, INC., a              Date:       April 4, 2008
18  Delaware corporation, and DOES 1 TO    Time:       10:30 a.m.
    100,                                    Dept:       63
19                                          Judge:      Luis R. Vargas
              Defendants.
20                                          Complaint:  March 13, 2007
                                            FAC:        May 16, 2007
21

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO

SD\1785941.4

TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B    20

1

## <u>TABLE OF CONTENTS</u>

2

<div align="right"><u>Page</u></div>

3   I.     INTRODUCTION ...............................................................................................1

4   II.    FACTUAL BACKGROUND................................................................................2

5          A.    Summary of Plaintiff's Complaint Against TWC ....................................2

6          B.    TWC Files a Motion for Summary Judgment, Agreeing to Address Class
                 Issues, if Necessary, After the Motion....................................................3

7          C.    Plaintiff Propounds and Seeks to Enforce Class Discovery ....................3

8   III.   PLAINTIFF'S MOTION TO COMPEL IS PREMATURE......................................3

9          A.    The Class Discovery Sought by Plaintiff May be Unnecessary After the
                 Court Rules on TWC's Pending Motion for Summary Judgment...........3

10         B.    Responding to Plaintiff's Class Discovery Would Cause Undue Burden
                 and Expense ............................................................................................4

11
12  IV.    PLAINTIFF IS NOT ENTITLED TO CLASS DISCOVERY BECAUSE HE
           LACKS STANDING TO BRING A UCL CLAIM .............................................5

13
14  V.     PLAINTIFF'S MOTION TO COMPEL IS DEFECTIVE AND INCOMPLETE.............7

15         A.    Plaintiff's Separate Statement does not Comply with CRC Rule 3.1020(c) ...........7

16         B.    Plaintiff Does Not Challenge TWC's Specific Objections........................8

17         C.    The Court Must Rule on Each Objection Separately.................................9

18  VI.    PLAINTIFF'S REQUEST FOR SANCTIONS IS ENTIRELY UNWARRANTED .........9

19  VII.   CONCLUSION...............................................................................................10

20
21
22
23
24
25
26
27
28

DLA PIPER US LLP
SAN DIEGO

SD\1785941.4                           -i-

EXHIBIT B    21

1

## <u>TABLE OF AUTHORITIES</u>

2
<div align="right"><u>Page</u></div>

3
### CASES

4   *Californians for Disabilities Rights v. Mervyn's, LLC,*
        39 Cal. 4th 223, 228 (2006) .................................................................6
5
    *Consumer Advocacy Group, Inc. v. Kintetsu Enterprises of America,*
6       150 Cal. App. 4th 953 (2007) ................................................................5

7   *Day v. AT&T Corp.,*
        63 Cal. App. 4th 325 (1998) ...................................................................6
8
    *Deaile v. General Telephone Co. of Calif.,*
9       40 Cal. App. 3d 841 (1974) ....................................................................9

10  *First American Title Insurance Co. v. Superior Court,*
        146 Cal. App. 4th 1564 (2007) ...........................................................5, 6
11
    *Perdue v. Crocker National Bank,*
12      38 Cal. 3d 913 (1985) .............................................................................6

13
### STATUTES

14  California Bus. & Prof. Code § 17204 .........................................................5

15  California Civil Procedure Code § 2023.030(a) ..........................................10

16  California Civil Procedure Code § 2031.310(d) ...........................................9

17  California Civil Procedure Code § 2031.320(b) ...........................................9

18  California Rules of Court Rule 3.1020(c) ..................................................7, 8

19  Robert I. Weil *et al.*, *California Practice Guide: Civil Procedure Before Trial* ¶ 8:1182, at
        8F-72 (The Rutter Group, 2007) .............................................................9

20

21

22

23

24

25

26

27

28

EXHIBIT B    22

Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued erroneously as Time Warner Cable, Inc.,[1] submits the following Memorandum of Points and Authorities in Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories.

## I.    INTRODUCTION.

Plaintiff's motion to compel should be denied for several independent reasons. First, Plaintiff's motion is premature because it seeks statewide discovery, which is the very subject of TWC's pending motion for a protective order. In fact, TWC has repeatedly proposed to Plaintiff that in the interest of judicial economy and to avoid undue expense the parties should now focus on the merits of Plaintiff's claim and address class discovery and other class issues following a ruling on TWC's Motion for Summary Judgment. Although TWC's motion for Summary Judgment is scheduled for hearing on April 4, 2008, and despite TWC's agreement to postpone challenging class certification until after the Motion for Summary Judgment is heard, Plaintiff nonetheless has brought this motion to compel class discovery—which will be heard at the same time as TWC's Motion for Summary Judgment.

Second, Plaintiff's motion to compel class discovery issues is improper because Plaintiff lacks standing to assert his unfair competition claim on behalf of himself or a class. Plaintiff has suffered no injury or damage as a result of any alleged conduct by TWC and, therefore, has no standing to bring an unfair competition claim. In such cases, individuals like Plaintiff who lack standing are not permitted to conduct class discovery.

Lastly, Plaintiff's motion to compel must also be denied, regardless of how the Court rules on TWC's Motion for Summary Judgment, because it fails as a matter of law. Specifically,

---

[1] Plaintiff makes a reference in his moving papers that "Time Warner Cable, Inc., a Delaware Corporation" is the defendant in this case and should have answered the discovery requests instead of TWC. As pointed out by TWC at the commencement of this litigation, Plaintiff's naming of Time Warner Cable, Inc. was in error, as Time Warner Cable, Inc. is not the entity that owns and operates the cable business in San Diego. Rather than demurrer to Plaintiff's pleadings due to his error in identifying the correct corporate entity, TWC answered Plaintiff's amended complaint with the explanation that it had been "erroneously sued as Time Warner Cable, Inc." Plaintiff made no objection, nor has Plaintiff at anytime in this litigation objected to TWC's involvement in this litigation as the defendant erroneously sued as "Time Warner Cable, Inc." If Plaintiff wishes to proceed against Time Warner Cable, Inc. and not TWC, TWC requests a dismissal with prejudice from this lawsuit. Furthermore, Plaintiff's motion should be denied, as Time Warner Cable, Inc. has not been served with Plaintiff's operative complaint, nor has it entered an appearance in this case.

1    Plaintiff's moving papers fail to comply with court rules and make no mention of TWC's multiple

2    objections to each disputed interrogatory.  Plaintiff does not even fully address the one objection

3    by TWC which he challenges, TWC's limitation of its responses to the San Diego/Desert Cities

4    areas.  As explained below, TWC was justified in limiting its responses in this manner.

5    Moreover, Plaintiff does not challenge TWC's multiple other objections, which alone requires

6    Plaintiff's motion be denied.

7         For all of these reasons, TWC respectfully requests the Court deny Plaintiff's motion to

8    compel and request for sanctions.

9    **II.   FACTUAL BACKGROUND.**

10        **A.    Summary of Plaintiff's Complaint Against TWC.**

11        TWC provides cable services generally to members of the public.  TWC also enters into

12   bulk contracts with entities, such as apartments and homeowners' associations ("HOA"), to

13   provide cable services to all of the homes within the complex at negotiated "bulk" rates.  Plaintiff

14   is a resident of a Bulk-customer HOA in the San Diego area which is part of the San

15   Diego/Desert Cities division of Time Warner.  Under the bulk contract between TWC and

16   Plaintiff's HOA, TWC provides the basic tier of cable television channels to all residences in the

17   HOA, including Plaintiff's residence, and the HOA pays TWC for such services.  In addition,

18   Plaintiff entered into his own agreement with TWC to order movie channels, internet service and

19   other "Additional Services."  TWC bills Plaintiff directly for the Additional Services that he

20   ordered, and Plaintiff pays TWC for such services.

21        On or about May 16, 2007, Plaintiff filed the operative amended Complaint as a class

22   action against TWC, alleging a single cause of action under California's Unfair Competition Law

23   ("UCL").  Plaintiff alleges that TWC overcharged him by charging him for basic cable services

24   provided under the bulk contract with his HOA.  A class has not yet been certified and there are

25   currently no scheduling deadlines in this matter.

26   /////

27   /////

28   /////

DLA PIPER US LLP
SAN DIEGO

SD\1785941.4                                    -2-

EXHIBIT B     24

**B.      TWC Files a Motion for Summary Judgment, Agreeing to Address Class Issues, if Necessary, After the Motion.**

On or about January 15, 2008, before challenging class certification, TWC filed a Motion for Summary Judgment on the ground that Plaintiff cannot prove his cause of action for violation of the UCL.  If granted, TWC's Motion for Summary Judgment will dispose of every issue in this litigation.  In an effort to resolve this meritless class action lawsuit and avoid significant expense and burden of litigation, TWC has chosen to file its summary judgment motion prior to challenging class certification.  At this point in the litigation, only the issues related to Plaintiff individually and TWC's San Diego/Desert Cities Division are at issue.  Indeed, at the initial Case Management Conference, TWC alerted counsel and the Court to its plan to file an early motion for summary judgment and its desire to defer the expense associated with class proceedings until its dispositive motion could be heard.   TWC's summary judgment motion is scheduled to be heard at the same time as this motion to compel.  Accordingly, discovery relating to putative class members and class allegations is unnecessary, unduly burdensome and expensive.

**C.      Plaintiff Propounds and Seeks to Enforce Class Discovery.**

Even though TWC has moved for summary judgment on the merits of Plaintiff's claim before contesting class certification, and even though Plaintiff knows that TWC has agreed to postpone addressing class certification issues until after TWC's Motion for Summary Judgment, Plaintiff has nonetheless propounded and moved to compel responses to interrogatories relating to class certification—an issue that likely will be rendered moot following the Court's order on TWC's Motion for Summary Judgment that will be heard at the same time as this motion.

**III.     PLAINTIFF'S MOTION TO COMPEL IS PREMATURE.**

**A.      The Class Discovery Sought by Plaintiff May be Unnecessary After the Court Rules on TWC's Pending Motion for Summary Judgment.**

Plaintiff has moved to compel further responses to one form interrogatory and all of the special interrogatories propounded on TWC.  (Motion to Compel, p. 7-11.)  The only basis for his motion is that "the responses attempt to self-limit the responses [to the interrogatories] to only the San Diego and Desert Cities areas, whereas the scope of the interrogatories clearly deal with

EXHIBIT B     25

1    TWC's statewide activities." (Motion to Compel, p. 3. ll. 10-13.) As discussed in more detail

2    below, the potential scope of the interrogatories extends far beyond TWC's statewide activities.

3    But even if the interrogatories did seek information limited to divisions of TWC in California,

4    Plaintiff's motion should nevertheless be denied because it is premature given that the pending

5    motion for summary judgment may moot any and all class certification issues.[2]

6    **B.    Responding to Plaintiff's Class Discovery Would Cause Undue Burden and
        Expense.**

7

8    As explained on multiple occasions to Plaintiff's counsel, Mr. Barron Ramos, responding

9    to Plaintiff's class discovery at this time would result in undue burden and expense to TWC, in

10   light of the decentralized structure of Time Warner (Declaration of Julie Hussey[3] ("Hussey

11   Decl.") ¶¶ 2-4). Time Warner Cable is a decentralized company. (Declaration of Terri Rhodes[4]

12   ("Rhodes Decl.") ¶ 2.) There are many divisions of Time Warner Cable across the United States,

13   and each separate division acts as a separate and distinct entity. (Rhodes Decl. ¶ 2.) The separate

14   divisions have separate marketing, finance, customer service, and human resources departments.

15   (Rhodes Decl. ¶ 3.) They have separate budgets with their own expenses and revenues. (Rhodes

16   Decl. ¶ 4.) They have separate pricing policies and procedures. (Rhodes Decl. ¶ 5.) They have

17   separate marketing policies and procedures. (Rhodes Decl. ¶ 6.) They have separate

18   components, products and packages of services from the other divisions. (Rhodes Decl. ¶ 7.)

19   The separate divisions even train their customer service representative separately. (Rhodes Decl.

20   ¶ 8.)

21   Plaintiff has two accounts with TWC in the San Diego/Desert Cities division. (Rhodes

22   Decl. ¶ 9; Hussey Decl. ¶ 5, Ex. C.) That division provides cable services only in the San Diego

23

24   [2] Although Plaintiff's moving papers allege that further responses to the interrogatories are "necessary for plaintiff to
     defend against TWC's pending Motion for Summary Judgment," it is unclear how the sought-after class discovery

25   would have *any* bearing on the merits of Plaintiff's allegations, which is the subject of TWC's motion for summary
     judgment. (Motion to Compel, p. 2, ll. 7-8.)

26   [3] "Declaration of Julie Hussey" and "Hussey Decl." refer to the Declaration of Julie Hussey in Support of Defendant
     Time Warner Cable's Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories.

27

28   [4] "Declaration of Terri Rhodes" and "Rhodes Decl." refer to the Declaration of Terri Rhodes in Support of Defendant
     Time Warner Cable's Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories.

DLA PIPER US LLP
SAN DIEGO                SD\1785941.4                                    -4-
TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B    26

1   and Desert Cities areas in California and does not provide cable services to other California

2   locations.  (Rhodes Decl. ¶¶ 10-11.)  Accordingly, any attempt by Plaintiffs to conduct discovery

3   related to other than TWC's San Diego/Desert Cities Division is irrelevant to the issues of

4   liability to Alpert underlying the pending motion for summary judgment.  Thus, because: (1) class

5   discovery is irrelevant to the pending motion for summary judgment; (2) the court's ruling on the

6   motion for summary judgment will likely  moot all class issues; and (3) class discovery would

7   require premature and undue burden and expense from TWC, Plaintiff's motion to compel should

8   be denied.

9   **IV.  PLAINTIFF IS NOT ENTITLED TO CLASS DISCOVERY BECAUSE HE LACKS**
    **STANDING TO BRING A UCL CLAIM.**

10

11          Additionally, Plaintiff's motion should be denied because Plaintiff does not have standing

12  to bring this action, and thus he is not entitled to class discovery.  *See First American Title*

13  *Insurance Co. v. Superior Court*, 146 Cal. App. 4th 1564, 1573 (2007).  After the passage of

14  Proposition 64 in 2004, an individual has standing to pursue remedies under the UCL only if he

15  personally "suffered injury in fact and has lost money or property as a result of such unfair

16  competition."  Cal. Bus. & Prof. Code § 17204; *Consumer Advocacy Group, Inc. v. Kintetsu*

17  *Enterprises of America*, 150 Cal. App. 4th 953, 802 (2007).  Further, to pursue a representative

18  action under the UCL, the Plaintiff must "meet the standing requirements of Section 17204."  *Id.*

19  § 17203.  Thus, Plaintiff has standing to bring this action *only* if he suffered injury in fact from

20  the allegedly unlawful practice.

21          A plaintiff who lacks standing to bring a representative action under the UCL may not

22  obtain class discovery.  *First American Title Insur. Co. v. Superior Court*, 146 Cal. App. 4th

23  1564, 1573 (2007).[5]  In *First American Title,* the court held that it is an abuse of discretion for a

24  court to allow a plaintiff who purports to bring a cause of action on behalf of a class of which he

25  was never a member to obtain pre-certification discovery to find a new class representative.  *Id.*

26  ──────────

[5] In *First American Title,* the court acknowledged that "when a class representative lacks standing to represent the
27  class, the representative may be granted leave to amend to redefine the class or add new individual plaintiffs, or
    both." *First American Title,* 146 Cal. App. 4th at 1574. However, "[t]his rule is usually applied in situations where
28  the class representative *originally* had standing, but has since lost it be intervening law or facts." *Id.* Here, Plaintiff
    never had standing to bring this action.

EXHIBIT B    27

1  The court explained that "California law is clear that a representative plaintiff must be a member

2  of the class he seeks to represent. Indeed, Proposition 64 was enacted to prevent abuses of the

3  class action system by 'prohibiting private attorneys from filing lawsuits for unfair competition

4  where they have no client who has been injured in fact.'" *Id.* at 743 (citing *Californians for*

5  *Disabilities Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 228 (2006)). Further, the court stated that

6  it "cannot permit attorneys to make an 'end-run' around Proposition 64 by filing class actions in

7  the name of private individuals who are not members of the classes they seek to represent and

8  then using pre-certification discovery to obtain more appropriate plaintiffs." *Id.*

9       Here, Plaintiff has never had standing to bring this representative action under the UCL.

10  As explained in TWC's Motion for Summary Judgment, Plaintiff has not suffered any injury from

11  purchasing his cable services from TWC. (*See* Memorandum of Points and Authorities in

12  Support of Defendant Time Warner Cable's Motion for Summary Judgment ("Motion for

13  Summary Judgment brief"), p. 20-21.) Plaintiff received exactly what he paid for when

14  purchasing Additional Services from TWC, and thus did not lose any money or property as a

15  result of TWC's practices. *See Day v. AT&T Corp.,* 63 Cal. App. 4th 325, 339 (1998) (section

16  17200 claim dismissed because purchasers of calling cards, even if misled into purchasing the

17  cards by defendant's representations, "received exactly what they paid for" when using the cards

18  after their purchase). Plaintiff admitted that he purchased and paid for Additional Services, that

19  TWC's billing for the Additional Services he ordered were correct, and that he received the

20  Additional Services that he ordered. (Hussey Decl. ¶ 5, Ex. C) Therefore, Plaintiff received

21  exactly what he paid for and has no measurable loss to support a UCL claim. Accordingly,

22  Plaintiff lacks standing and should not be permitted to conduct class discovery.

23       Plaintiff's citation to *Perdue v. Crocker National Bank,* 38 Cal. 3d 913, 929 (1985) as

24  authority for his contention that "in proving an unfair business practice violation, claimants are

25  entitled to introduce evidence not only of practices which affect them individually, but also

26  similar practices involving other members of the public who are not parties to the action," is

27  misplaced and does not support his position. *Perdue* makes no mention of discovery or

28  evidentiary issues. And there is certainly nothing in that case that supports the notion that a

DLA PIPER US LLP
SAN DIEGO
SD\1785941.4

TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B   28

1   Plaintiff to an UCL action may introduce evidence that has no bearing on the merits of his case,

2   especially in light of the standing requirements created by the passage of Proposition 64.

3   **V.    PLAINTIFF'S MOTION TO COMPEL IS DEFECTIVE AND INCOMPLETE.**

4           Additionally, Plaintiff's motion to compel must be denied because it is defective and fails

5   to address the multiple objections TWC raised in response to the disputed interrogatories.

6   Plaintiff's separate statement is a confusing mixture of interrogatories and partial responses that

7   fails to comply with the rules for a motion to compel, fails to address all of the objections and

8   issues regarding each of the interrogatories at issue, and fails to provide proper support for

9   Plaintiff's motion.

10          **A.    Plaintiff's Separate Statement does not Comply with CRC Rule 3.1020(c).**

11          Under California Rules of Court Rule 3.1020(c) ("Rule 3.1020(c)"), a motion to compel

12  further responses to interrogatories *must* be accompanied by a separate statement that is "full and

13  complete so that no person is required to review any other document in order to determine the full

14  request and the full response." It must also set forth "the text of each response, answer, or

15  objection" and a "statement of the factual and legal reasons for compelling further responses,

16  answers, or production *as to each matter in dispute*." Rule 3.1020(c)(2)-(3)(emphasis added).

17          Plaintiff's unique separate statement does not comply with the statute. Rather than setting

18  forth verbatim each response and every objection made by TWC to Plaintiff's interrogatories, the

19  separate statement paraphrases TWC's responses and fails to address *any* of TWC's specific

20  objections to each interrogatory. The sole objection Plaintiff challenges—TWC's general

21  objection limiting its responses to "TWC-SAN DIEGO/DESERT CITIES," is not even set forth

22  in Plaintiff's Separate Statement. Plaintiff included merely an excerpt of TWC's responses

23  and/or objections that indicates "TWC-SAN DIEGO/DESERT CITIES objects to this

24  interrogatory" and/or "TWC-SAN DIEGO/DESERT CITIES responds as follows," not

25  addressing the objection behind such excerpts:

26          TWC-SAN DIEGO/DESERT CITIES objects to Plaintiff's purported definition
            of the terms "YOU," and "YOUR" on the ground that it renders each
27          interrogatory including these terms to be vague and ambiguous, as well as overly
            broad. The definition is so overbroad that it appears to call for information from
28

EXHIBIT B    29

1    literally hundreds of different corporate entities and their privileged
2    communications with their counsel. TWC—SAN DIEGO/DESERT CITIES shall
     construe the terms "YOU," and "YOUR," when used in the interrogatories, to
3    mean Time Warner Entertainment-Advance/Newhouse Partnership, a New York
     general partnership, through its San Diego Division ("TWC—SAN
4    DIEGO/DESERT CITIES"), which operates in the San Diego and Desert Cities
     areas, dba Time Warner Cable and no other person or entity.
5

6    (See TWC Separate Statement p. 4-5.)[6]  Presumably, Plaintiff's failed to address the entirety of

7    the above objection because it is valid. Had TWC not restricted its responses to "TWC-SAN

8    DIEGO/DESERT CITIES" and answered the interrogatories as requested, it may have been

9    forced to provide clearly irrelevant and burdensome information about all TWC entities

10   throughout the state and perhaps even the nation—or simply object to all the interrogatories and

11   provide no answers at all. However, in an attempt to provide Plaintiff with as much relevant and

12   responsive information as possible, TWC answered only on behalf of the TWC Division with

13   whom Plaintiff had accounts.

14       **B.    Plaintiff Does Not Challenge TWC's Specific Objections.**

15       Additionally, in responding to each interrogatory at issue, TWC made multiple objections

16   that were tailored to each specific interrogatory. Plaintiff's separate statement does not set forth

17   any of the general or specific objections to each interrogatory in dispute, let alone address why

18   such objections should not apply. Plaintiff merely claims that "each of the responses incorporates

19   the following prefatory language which is used to improperly limit the response to only the San

20   Diego and Desert Cities areas." (Motion to Compel, p. 11, ll. 12-13.)[7]  This is simply not

21   sufficient.

22       Plaintiff cannot seek to compel further responses by cherry-picking only certain responses

23   made by TWC and ignoring its other responses and objections to the same interrogatories. See

24   Cal. Rule of Court Rule 3.1020(c)(2)-(3). California law requires that the separate statement

25   _____

26   [6] "TWC Separate Statement" refers to Defendant Time Warner Cable's Separate Statement in Opposition to
     Plaintiff's Motion to Compel Further Responses to Plaintiff's Interrogatories.

27   [7] Plaintiff also contends that TWC conceded the propriety of each interrogatory by answering all of the questions but
     limiting its answers to only San Diego and the Desert Cities. (Motion to Compel, p. 11, ll. 26-27.) Such assertion is
28   mistaken, since TWC made specific objections to each and every interrogatory in dispute.

DLA PIPER US LLP
SAN DIEGO

TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B    30

1  address each of the objections for the interrogatories in dispute. *Id.* Plaintiff has not done this,

2  and thus his motion to compel should be denied.

3        C.    **The Court Must Rule on Each Objection Separately.**

4        In ruling on a motion to compel, the court must rule on each objection separately. *See*

5  Robert I. Weil et al., *California Practice Guide: Civil Procedure Before Trial* ¶ 8:1182, at 8F-72

6  (The Rutter Group, 2007). It is an abuse of discretion to fully grant a motion to compel if *any* of

7  the objections to a discovery request are valid. *Deaile v. General Telephone Co. of Calif.*, 40 Cal.

8  App. 3d 841, 851 (1974). A court may deny "in toto" the motion to compel further answers

9  where the questions are objectionable in their entirety. *Id.*

10        Neither Plaintiff's motion to compel nor his separate statement set forth or address *any* of

11  TWC's individual objections to each interrogatory. In fact, it appears that Plaintiff only takes

12  issue with one of TWC's general objections pertaining to Plaintiff's overly broad definition of

13  "YOU" and "YOUR." However, even in attacking that one general objection, Plaintiff does not

14  provide the full text of TWC's objection. Rather, he merely sets forth the restrictive language in

15  the responses that reflect TWC's objection. Thus, because Plaintiff has not challenged the

16  sufficiency of each of TWC's objections, and because the motion to compel must be denied if

17  even *one* of the objections is valid, it would be improper for the court to grant Plaintiff's motion

18  as presented.

19  **VI.   PLAINTIFF'S REQUEST FOR SANCTIONS IS ENTIRELY UNWARRANTED.**

20        The Discovery Act provides that monetary sanctions shall be imposed against the losing

21  party and/or attorney on a motion to compel, except where the Court finds the losing party acted

22  with substantial justification. Cal. Civ. Proc. Code §§ 2031.310(d), 2031.320(b). Sanctions

23  against TWC are not proper here because, as explained above, discovery unrelated to TWC's San

24  Diego/Desert Cities Division is currently irrelevant and unnecessary because the resolution of

25  TWC's Motion for Summary Judgment may eliminate the need for any such discovery. If

26  TWC's Motion for Summary Judgment is granted the recent, burdensome, and costly discovery

27  onslaught will have been a complete waste of resources for all concerned. At a minimum,

28  principles of judicial economy require that the Motion for Summary Judgment be resolved before

DLA PIPER US LLP
SAN DIEGO
SD\1785941.4          -9-
TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES
EXHIBIT B    31

1  discovery related to class certification be undertaken.  Furthermore, Plaintiff has not made any

2  attempt to address or refute TWC's many objections to the discovery requests at issue.  In light of

3  these considerations, sanctions are not warranted.  Cal. Civ. Proc. Code § 2023.030(a).[8]

4  **VII.    CONCLUSION.**

5          For all the foregoing reasons, TWC requests that the Court deny Plaintiff's motion to

6  compel and request for sanctions.

7  Dated: March 21, 2008

8                                                          DLA PIPER US LLP

9                                                          By _____

10                                                         JEFFREY M. SHOHET
                                                           JULIE L. HUSSEY
11                                                         CARRIE S. DOLTON
                                                           RYAN T. HANSEN
12                                                         Attorneys for Defendant
                                                           TIME WARNER ENTERTAINMENT-
13                                                         ADVANCE/NEWHOUSE PARTNERSHIP, A
                                                           NEW YORK GENERAL PARTNERSHIP,
14                                                         THROUGH ITS SAN DIEGO DIVISION,
                                                           DBA TIME WARNER CABLE
15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [8] Moreover, TWC disputes the amount of sanctions requested by Plaintiff, as a large portion of his moving papers
28  appear to have been copied and pasted nearly verbatim from his other motions to compel.  Additionally, TWC does
    not believe the briefing reflects eight hours of work.

DLA PIPER US LLP
SAN DIEGO

SD\1785941.4                                      -10-

TIME WARNER CABLE'S OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B    32

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    RYAN T. HANSEN (Bar No. 234329)
3   **DLA PIPER US LLP**
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9

10                  SUPERIOR COURT OF CALIFORNIA

11                     COUNTY OF SAN DIEGO

12

13  LEON ALPERT, an individual, on behalf      CASE NO. GIC881621
    of himself, on behalf of all those similarly
14  situated, and on behalf of the general     **DEFENDANT TIME WARNER CABLE'S**
    public,                                    **SEPARATE STATEMENT IN**
15                                             **OPPOSITION TO PLAINTIFF'S MOTION**
                    Plaintiffs,                **TO COMPEL FURTHER RESPONSES TO**
16                                             **PLAINTIFF'S INTERROGATORIES**
            v.
17                                             Date      April 4, 2008
    TIME WARNER CABLE, INC., a                 Time:     10:30 a.m.
18  Delaware corporation, and DOES 1 TO        Dept:     63
    100,                                       Judge:    Hon. Luis R. Vargas
19
                    Defendants.                Complaint: March 13, 2007
20                                             FAC:       May 16, 2007

21

22

23

24

25

26

27

28

DLA PIPER US LLP
   SAN DIEGO
            SD\1786513.1

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B   33

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2    general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3    erroneously as Time Warner Cable, Inc., respectfully submits the following Separate Statement in

4    Opposition to Plaintiff's Motion to Compel Further Responses to Plaintiff's Interrogatories.

5    <u>**(i) THE SPECIAL INTERROGATORIES**</u>

6    1.    During the CLASS PERIOD (The term "CLASS PERIOD" shall refer to the time

7    period beginning March 13, 2003 and ending March 13, 2007), for how many RESIDENTS (The

8    term "RESIDENT" shall refer to occupants of properties during the CLASS PERIOD that were

9    part of a homeowners' association (HOA) in California with whom YOU had entered into a

10   "Residential Bulk Services Agreement" to provide basic cable services to the HOA members) did

11   YOU (The term "YOU" or "YOUR" shall refer to defendant Time Warner Cable, Inc., its parent

12   company, if any, and all subsidiaries of such parent, the employees, agents, officers, directors and

13   representatives of all of these entities, and all other persons or entities acting on behalf or under

14   the control of these entities) provide service in the State of California?

15   2.    During the entire CLASS PERIOD, did YOU provide RESIDENTS pricing for

16   services that reflected the fact that RESIDENTS were already paying for basic and/or expanded

17   cable services through their HOA (hereinafter "RESIDENT Pricing")?

18   3.    If during the entire CLASS PERIOD YOU did not provide RESIDENT Pricing for

19   services that reflected the fact that RESIDENTS were already paying for basic and/or expanded

20   cable services through their HOA, why not?

21   4.    If YOU provided RESIDENT Pricing for services that reflected the fact that

22   RESIDENTS were already paying for basic and/or expanded cable services through their HOA

23   for a portion of the CLASS PERIOD, please identify the dates that YOU provided such pricing.

24   5.    During the CLASS PERIOD, if YOU published RESIDENT Pricing on the

25   Internet just as you published retail pricing, please identify the specific URLs where such pricing

26   appeared.

27   6.    If during the CLASS PERIOD YOU did not publish RESIDENT Pricing on the

28   Internet just as you published retail pricing, why not?

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1    -1-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    34

1     7.     During the CLASS PERIOD, did YOU make RESIDENT Pricing known to

2     RESIDENTS?

3     8.     If during the CLASS PERIOD YOU made RESIDENT Pricing known to

4     RESIDENTS, how did YOU do so?

5     9.     Do YOU contend that YOU only bundle services for RESIDENTS when a

6     RESIDENT requests a specific bundle?

7     10.     If YOU contend that YOU only bundle services for RESIDENTS when a

8     RESIDENT requests a specific bundle, please state all facts that support that contention.

9     11.     If YOU contend that YOU only bundle services for RESIDENTS when a

10     RESIDENT requests a specific bundle, please identify all witnesses that support that contention.

11     12.     If YOU contend that YOU only bundle services for RESIDENTS when a

12     RESIDENT requests a specific bundle, please identify all documents that support that contention.

13     13.     Please identify the customer service representative whose recorded conversation

14     with plaintiff Alpert (which Time Warner has misplaced/destroyed) resulted in Alpert being

15     placed in an HOA bundle in the fall of 2006.

16     14.     Did plaintiff Alpert have bundled services before he had the conversation with

17     YOUR customer service representative that resulted in Alpert being placed in an HOA bundle in

18     the fall of 2006?

19     15.     If Plaintiff Alpert had bundled services before he had the conversation with YOUR

20     customer service representative that resulted in Alpert being placed in an HOA bundle in the fall

21     of 2006, please identify each and every bundle he already had in place at the time that

22     conversation occurred.

23     16.     If plaintiff Alpert had bundled services before he had the conversation with YOUR

24     customer service representative that resulted in Alpert being placed in an HOA bundle in the fall

25     of 2006, for each bundle Alpert had at that time, please state whether Alpert had specifically

26     requested that particular bundle or whether YOU had bundled Alpert.

27     /////

28     /////

EXHIBIT B    35

1        17.    Do YOU contend that plaintiff Alpert had an HOA bundle of any kind before he

2  had the conversation with YOUR customer service representative that resulted in Alpert being

3  placed in an HOA bundle in the fall of 2006?

4        18.    If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

5  the conversation with YOUR customer service representative that resulted in Alpert being placed

6  in an HOA bundle in the fall of 2006, please state all facts that support that contention.

7        19.    If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

8  the conversation with YOUR customer service representative that resulted in Alpert being placed

9  in an HOA bundle in the fall of 2006, please identify all documents that support that contention.

10        20.    If YOU contend that plaintiff Alpert had an HOA bundle of any kind before he had

11  the conversation with YOUR customer service representative that resulted in Alpert being placed

12  in an HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

13        21.    Why did YOU destroy the audio recording of the conversation with YOUR

14  customer service representative that resulted in Alpert being placed in an HOA bundle in the fall

15  of 2006?

16        22.    Do YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

17  conversation with YOUR customer service representative that resulted in Alpert being placed in

18  an HOA bundle in the fall of 2006?

19        23.    If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

20  conversation with YOUR customer service representative that resulted in Alpert being placed in

21  an HOA bundle in the fall of 2006, please state all facts that support that contention

22        24.    If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

23  conversation with YOUR customer service representative that resulted in Alpert being placed in

24  an HOA bundle in the fall of 2006, please identify all documents which support that contention.

25        25.    If YOU contend that YOU notified plaintiff Alpert of HOA bundles before the

26  conversation with YOUR customer service representative that resulted in Alpert being placed in

27  an HOA bundle in the fall of 2006, please identify all witnesses that support that contention.

28  /////

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1          -3-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    36

1     26.    When did YOU begin offering HOA bundles in California?

2     27.    When did YOU begin offering retail bundles in California?

3     28.    With how many HOAs in the State of California did YOU have a contract to

4  provide services during the CLASS PERIOD?

5     29.    Did YOU automatically bundle services when RESIDENTS called to request

6  additional services during the CLASS PERIOD?

7     30.    Do YOU contend that the class in this case should not be certified?

8     31.    If YOU contend that the class in this case should not be certified, please state all

9  facts upon which YOU base that contention.

10     32.    If YOU contend that the class in this case should not be certified, please identify

11  all documents which support that contention.

12     33.    If YOU contend that the class in this case should not be certified, please identify

13  all witnesses who support that contention.

14                 **(ii) FORM INTERROGATORY NO. 15.1**

15     Identify each denial of a material allegation and each special and affirmative defense in

16  your pleadings and for each:

17     (a)    state all facts upon which you base the denial or special or affirmative defense;

18     (b)    state the names, ADDRESSES, and telephone numbers of all PERSONS who have

19  knowledge of those facts; and

20     (c)    identify all DOCUMENTS and other tangible things that support your denial or

21  special or affirmative defenses, and state the name, ADDRESS, and telephone number of the

22  PERSON who has each DOCUMENT.

23        **(iii) TWC'S RESPONSE TO SPECIAL INTERROGATORY NOS. 1-33, AND TO FORM**
                          **INTERROGATORY NO. 15.1**

24

25     *Each* of the responses incorporates the following prefatory language which is used to

26  improperly limit the response to only the San Diego and Desert Cities areas:

27     "In addition to the General Objections set forth above, which are incorporated by

28  reference herein, TWC-SAN DIEGO/DESERT CITIES objects to this interrogatory..." This

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1

EXHIBIT B    37

1   identical statement appears in each response. Each interrogatory is then answered, but only as it

2   relates to TWC's San Diego and Desert Cities unit with the following language:

3          "Subject to and without waiving the foregoing objections or the General Objections set

4   forth above, TWC-SAN DIEGO/DESERT CITIES responds as follows:" This statement appears

5   in each "answer."

6   **PLAINTIFF'S BASIS FOR COMPELLING FURTHER RESPONSES TO**
    **INTERROGATORIES**

7

8          It is well settled that objections to an entire set of interrogatories, such as TWC has raised

9   here, are not sustainable if any of the questions are proper. *Wooldridge v. Mounts* (1962) 199

10  Cal.App.2d 620, 628. By answering all of the questions, but limiting all of its answers to only

11  San Diego and Desert Cities, TWC concedes the propriety of the questions – but simply refuses to

12  answer the questions beyond the San Diego and Desert Cities areas. The FAC at paragraph 4

13  makes plain that this is a statewide action, not a San Diego and Desert Cities action.

14         Moreover, the answering party is not, apparently, even the defendant in this case. The

15  defendant is "Time Warner Cable, Inc., a Delaware Corporation," whereas the responses state

16  they are from "TWC-SAN DIEGO/DESERT CITIES." That entity is not a party to this litigation

17  and is not named in the FAC. Thus, all of the responses, including the critical factual bases for

18  TWC's numerous affirmative defenses, are defective as they relate to an entity that is not the

19  defendant in this case.

20         Code of Civil Procedure section 2017.010 provides that unless the court imposes limits,

21  "any party may obtain discovery regarding any matter, not privileged, that is relevant to the

22  subject matter involved in the pending action or to the determination of any motion made in that

23  action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead

24  to the discovery of admissible evidence." "The scope of discovery is very broad." *Tien v.*

25  *Superior Court* (2006) 139 Cal.App.4th 528, 535.

26         The "expansive scope of discovery" (*Emerson Electric Co. v. Superior Court* (1997) 16

27  Cal.4th 1101, 1108) is a deliberate attempt to "take the 'game' element out of trial preparation"

28  and to "do away 'with the sporting theory of litigation – namely, surprise at the trial.'"

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1

-5-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B     38

1   *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376. TWC takes the game element in

2   this case to a new level by hiding relevant documents and now refusing to answer interrogatories.

3         Finally, this is B&P section 17200 case. As our Supreme Court has made plain, in

4   proving an unfair business practice violation, claimants are entitled to introduce evidence not only

5   of practices which affect them individually, but also similar practices involving other members of

6   the public who are not parties to the action. *Perdue v. Crocker National Bank* (1985) 38 Cal.3d

7   913, 929.

8         TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of

9   discovery permitted under Code of Civil Procedure section 2017.010, is a deliberate attempt to

10  put the "game element" back into litigation, and is contrary to the expansive scope of discovery in

11  both class actions and B&P section 17200 claims in particular.

12        For all these reasons and those set forth herein, plaintiff's Motion should be granted.

13  **REASONS WHY NO FURTHER RESPONSE IS REQUIRED:**

14        Plaintiff's motion to compel should be denied for several independent reasons. First,

15  Plaintiff's motion is premature because it seeks statewide discovery, which is the very subject of

16  TWC's pending motion for a protective order. In fact, TWC has repeatedly proposed to Plaintiff

17  that in the interest of judicial economy and to avoid undue expense the parties should now focus

18  on the merits of Plaintiff's claim and address class discovery and other class issues following a

19  ruling on TWC's Motion for Summary Judgment. Although TWC's motion for Summary

20  Judgment is scheduled for hearing on April 4, 2008, and despite TWC's agreement to postpone

21  challenging class certification until after the Motion for Summary Judgment is heard, Plaintiff

22  nonetheless has brought this motion to compel class discovery—which will be heard at the same

23  time as TWC's Motion for Summary Judgment.

24        As explained on multiple occasions to Plaintiff's counsel, Mr. Barron Ramos, responding

25  to Plaintiff's class discovery at this time would result in undue burden and expense to TWC, in

26  light of the decentralized structure of Time Warner (Declaration of Julie Hussey[1] ("Hussey

27  ---
[1] "Declaration of Julie Hussey" and "Hussey Decl." refer to the Declaration of Julie Hussey in Support of Defendant
28  Time Warner Cable's Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories.

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1                                    -6-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    39

1   Decl.") ¶¶ 2-4). Time Warner Cable is a decentralized company. (Declaration of Terri Rhodes[2]

2   ("Rhodes Decl.") ¶ 2.) There are many divisions of Time Warner Cable across the United States,

3   and each separate division acts as a separate and distinct entity. (Rhodes Decl. ¶ 2.) The separate

4   divisions have separate marketing, finance, customer service, and human resources departments.

5   (Rhodes Decl. ¶ 3.) They have separate budgets with their own expenses and revenues. (Rhodes

6   Decl. ¶ 4.) They have separate pricing policies and procedures. (Rhodes Decl. ¶ 5.) They have

7   separate marketing policies and procedures. (Rhodes Decl. ¶ 6.) They have separate

8   components, products and packages of services from the other divisions. (Rhodes Decl. ¶ 7.)

9   The separate divisions even train their customer service representative separately. (Rhodes Decl.

10  ¶ 8.)

11        Plaintiff has two accounts with TWC in the San Diego/Desert Cities division. (Rhodes

12  Decl. ¶ 9; Hussey Decl. ¶ 5, Ex. C.) That division provides cable services only in the San Diego

13  and Desert Cities areas in California and does not provide cable services to other California

14  locations. (Rhodes Decl. ¶¶ 10-11.) Accordingly, any attempt by Plaintiffs to conduct discovery

15  related to other than TWC's San Diego/Desert Cities Division is irrelevant to the issues of

16  liability to Alpert underlying the pending motion for summary judgment. Thus, because: (1) class

17  discovery is irrelevant to the pending motion for summary judgment; (2) the court's ruling on the

18  motion for summary judgment will likely moot all class issues; and (3) class discovery would

19  require premature and undue burden and expense from TWC, Plaintiff's motion to compel should

20  be denied.

21        Second, Plaintiff's motion to compel class discovery issues is improper because Plaintiff

22  lacks standing to assert his unfair competition claim on behalf of himself or a class. Plaintiff has

23  suffered no injury or damage as a result of any alleged conduct by TWC and, therefore, has no

24  standing to bring an unfair competition claim. In such cases, individuals like Plaintiff who lack

25  standing are not permitted to conduct class discovery. *See First American Title Insurance Co. v.*

26  *Superior Court*, 146 Cal. App. 4th 1564, 1573 (2007).

27  ───────────────

28  [2] "Declaration of Terri Rhodes" and "Rhodes Decl." refer to the Declaration of Terri Rhodes in Support of Defendant Time Warner Cable's Opposition to Plaintiff's Motion to Compel Further Responses to Interrogatories.

EXHIBIT B    40

1       After the passage of Proposition 64 in 2004, an individual has standing to pursue remedies

2 under the UCL only if he personally "suffered injury in fact and has lost money or property as a

3 result of such unfair competition." Cal. Bus. & Prof. Code § 17204; *Consumer Advocacy Group,*

4 *Inc. v. Kintetsu Enterprises of America,* 150 Cal. App. 4th 953, 802 (2007). Further, to pursue a

5 representative action under the UCL, the Plaintiff must "meet the standing requirements of

6 Section 17204." *Id.* § 17203. Thus, Plaintiff has standing to bring this action *only* if he suffered

7 injury in fact from the allegedly unlawful practice.

8       A plaintiff who lacks standing to bring a representative action under the UCL may not

9 obtain class discovery. *First American Title Insur. Co. v. Superior Court,* 146 Cal. App. 4th

10 1564, 1573 (2007).[3] In *First American Title,* the court held that it is an abuse of discretion for a

11 court to allow a plaintiff who purports to bring a cause of action on behalf of a class of which he

12 was never a member to obtain pre-certification discovery to find a new class representative. *Id.*

13 The court explained that "California law is clear that a representative plaintiff must be a member

14 of the class he seeks to represent. Indeed, Proposition 64 was enacted to prevent abuses of the

15 class action system by 'prohibiting private attorneys from filing lawsuits for unfair competition

16 where they have no client who has been injured in fact.'" *Id.* at 743 (citing *Californians for*

17 *Disabilities Rights v. Mervyn's, LLC,* 39 Cal. 4th 223, 228 (2006)). Further, the court stated that

18 it "cannot permit attorneys to make an 'end-run' around Proposition 64 by filing class actions in

19 the name of private individuals who are not members of the classes they seek to represent and

20 then using pre-certification discovery to obtain more appropriate plaintiffs." *Id.*

21       Here, Plaintiff has never had standing to bring this representative action under the UCL.

22 As explained in TWC's Motion for Summary Judgment, Plaintiff has not suffered any injury from

23 purchasing his cable services from TWC. (*See* Memorandum of Points and Authorities in

24 Support of Defendant Time Warner Cable's Motion for Summary Judgment ("Motion for

25 Summary Judgment brief"), p. 20-21.) Plaintiff received exactly what he paid for when

---

26 [3] In *First American Title,* the court acknowledged that "when a class representative lacks standing to represent the
class, the representative may be granted leave to amend to redefine the class or add new individual plaintiffs, or

27 both." *First American Title,* 146 Cal. App. 4th at 1574. However, "[t]his rule is usually applied in situations where
the class representative *originally* had standing, but has since lost it be intervening law or facts." *Id.* Here, Plaintiff

28 never had standing to bring this action.

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    41

1   purchasing Additional Services from TWC, and thus did not lose any money or property as a

2   result of TWC's practices.  *See Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (section

3   17200 claim dismissed because purchasers of calling cards, even if misled into purchasing the

4   cards by defendant's representations, "received exactly what they paid for" when using the cards

5   after their purchase).  Plaintiff admitted that he purchased and paid for Additional Services, that

6   TWC's billing for the Additional Services he ordered were correct, and that he received the

7   Additional Services that he ordered.  (Hussey Decl. ¶ 5, Ex. C)  Therefore, Plaintiff received

8   exactly what he paid for and has no measurable loss to support a UCL claim.  Accordingly,

9   Plaintiff lacks standing and should not be permitted to conduct class discovery.

10      Plaintiff's citation to *Perdue v. Crocker National Bank*, 38 Cal. 3d 913, 929 (1985) as

11  authority for his contention that "in proving an unfair business practice violation, claimants are

12  entitled to introduce evidence not only of practices which affect them individually, but also

13  similar practices involving other members of the public who are not parties to the action," is

14  misplaced and does not support his position.  *Perdue* makes no mention of discovery or

15  evidentiary issues.  And there is certainly nothing in that case that supports the notion that a

16  Plaintiff to an UCL action may introduce evidence that has no bearing on the merits of his case,

17  especially in light of the standing requirements created by the passage of Proposition 64.

18      Lastly, Plaintiff's motion to compel must also be denied, regardless of how the Court rules

19  on TWC's Motion for Summary Judgment, because it fails as a matter of law.  Specifically,

20  Plaintiff's moving papers fail to comply with court rules and make no mention of TWC's multiple

21  objections to each disputed interrogatory, which alone requires Plaintiff's motion be denied.

22  Plaintiff does not even fully address the one objection by TWC which he challenges, TWC's

23  limitation of its responses to the San Diego/Desert Cities areas.

24      Under California Rules of Court Rule 3.1020(c) ("Rule 3.1020(c)"), a motion to compel

25  further responses to interrogatories *must* be accompanied by a separate statement that is "full and

26  complete so that no person is required to review any other document in order to determine the full

27  request and the full response."  It must also set forth "the text of each response, answer, or

28  /////

DLA PIPER US LLP
SAN DIEGO

SDV1786513.1

-9-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    42

1  objection" and a "statement of the factual and legal reasons for compelling further responses,

2  answers, or production *as to each matter in dispute.*" Rule 3.1020(c)(2)-(3)(emphasis added).

3        Plaintiff's unique separate statement does not comply with the statute. Rather than setting

4  forth verbatim each response and every objection made by TWC to Plaintiff's interrogatories, the

5  separate statement paraphrases TWC's responses and fails to address *any* of TWC's specific

6  objections to each interrogatory. The sole objection Plaintiff challenges—TWC's general

7  objection limiting its responses to "TWC-SAN DIEGO/DESERT CITIES," is not even set forth

8  in Plaintiff's Separate Statement. Plaintiff included merely an excerpt of TWC's responses

9  and/or objections that indicates "TWC-SAN DIEGO/DESERT CITIES objects to this

10 interrogatory" and/or "TWC-SAN DIEGO/DESERT CITIES responds as follows," not

11 addressing the objection behind such excerpts:

12        TWC-SAN DIEGO/DESERT CITIES objects to Plaintiff's
          purported definition of the terms "YOU," and "YOUR" on the
13        ground that it renders each interrogatory including these terms to be
          vague and ambiguous, as well as overly broad. The definition is so
14        overbroad that it appears to call for information from literally
          hundreds of different corporate entities and their privileged
15        communications with their counsel. TWC—SAN
          DIEGO/DESERT CITIES shall construe the terms "YOU," and
16        "YOUR," when used in the interrogatories, to mean Time Warner
          Entertainment-Advance/Newhouse Partnership, a New York
17        general partnership, through its San Diego Division ("TWC—SAN
          DIEGO/DESERT CITIES"), which operates in the San Diego and
18        Desert Cities areas, dba Time Warner Cable and no other person or
          entity.
19

20 Presumably, Plaintiff's failed to address the entirety of the above objection because it is valid.

21 Had TWC not restricted its responses to "TWC-SAN DIEGO/DESERT CITIES" and answered

22 the interrogatories as requested, it may have been forced to provide clearly irrelevant and

23 burdensome information about *all* TWC entities throughout the state and perhaps even the

24 nation—or simply object to all the interrogatories and provide no answers at all. However, in an

25 attempt to provide Plaintiff with as much relevant and responsive information as possible, TWC

26 answered only on behalf of the TWC Division with whom Plaintiff had accounts.

27        Additionally, in responding to each interrogatory at issue, TWC made multiple objections

28 that were tailored to each specific interrogatory. Plaintiff's separate statement does not set forth

1   *any* of the general or specific objections to each interrogatory in dispute, let alone address why

2   such objections should not apply.  Plaintiff merely claims that "each of the responses incorporates

3   the following prefatory language which is used to improperly limit the response to only the San

4   Diego and Desert Cities areas." (Motion to Compel, p. 11, ll. 12-13.)[4]  This is simply not

5   sufficient.

6        Plaintiff cannot seek to compel further responses by cherry-picking only certain responses

7   made by TWC and ignoring its other responses and objections to the same interrogatories.  *See*

8   Cal. Rule of Court Rule 3.1020(c)(2)-(3).  California law requires that the separate statement

9   address each of the objections for the interrogatories in dispute.  *Id.*  Plaintiff has not done this,

10  and thus his motion to compel should be denied.

11       In ruling on a motion to compel, the court must rule on each objection separately.  *See*

12  Robert I. Weil et al., *California Practice Guide: Civil Procedure Before Trial* ¶ 8:1182, at 8F-72

13  (The Rutter Group, 2007).  It is an abuse of discretion to fully grant a motion to compel if *any* of

14  the objections to a discovery request are valid.  *Deaile v. General Telephone Co. of Calif.*, 40 Cal.

15  App. 3d 841, 851 (1974).  A court may deny "in toto" the motion to compel further answers

16  where the questions are objectionable in their entirety.  *Id.*

17       Neither Plaintiff's motion to compel nor his separate statement set forth or address *any* of

18  TWC's individual objections to each interrogatory.  In fact, it appears that Plaintiff only takes

19  issue with one of TWC's general objections pertaining to Plaintiff's overly broad definition of

20  "YOU" and "YOUR."  However, even in attacking that one general objection, Plaintiff does not

21  provide the full text of TWC's objection.  Rather, he merely sets forth the restrictive language in

22  the responses that reflect TWC's objection.  Thus, because Plaintiff has not challenged the

23  sufficiency of each of TWC's objections, and because the motion to compel must be denied if

24  even *one* of the objections is valid, it would be improper for the court to grant Plaintiff's motion

25  as presented.

26  /////

27

28

---

[4] Plaintiff also contends that TWC conceded the propriety of each interrogatory by answering all of the questions but limiting its answers to only San Diego and the Desert Cities. (Motion to Compel, p. 11, ll. 26-27.)  Such assertion is mistaken, since TWC made specific objections to each and every interrogatory in dispute.

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1                         -11-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    44

1    Finally, with respect to Plaintiff's argument that "Time Warner Cable, Inc., a Delaware

2  Corporation" is the defendant in this case and should have answered the discovery requests

3  instead of TWC, it should be noted that TWC pointed out at the commencement of this litigation

4  that Plaintiff's naming of Time Warner Cable, Inc. was in error.  Time Warner Cable, Inc. is not

5  the entity that owns and operates the cable business in San Diego.  Rather than demurrer to

6  Plaintiff's pleadings due to his error in identifying the correct corporate entity, TWC answered

7  Plaintiff's amended complaint with the explanation that it had been "erroneously sued as Time

8  Warner Cable, Inc."  Plaintiff made no objection, nor has Plaintiff at anytime in this litigation

9  objected to TWC's involvement in this litigation as the defendant erroneously sued as "Time

10 Warner Cable, Inc."  If Plaintiff wishes to proceed against Time Warner Cable, Inc. and not

11 TWC, TWC requests a dismissal with prejudice from this lawsuit.  Furthermore, Plaintiff's

12 motion should be denied, as Time Warner Cable, Inc. has not been served with Plaintiff's

13 operative complaint, nor has it entered an appearance in this case.

14 Dated: March _21_, 2008

DLA PIPER US LLP

By _____
JEFFREY M. SHOHET
JULIE L. HUSSEY
CARRIE S. DOLTON
RYAN T. HANSEN
Attorneys for Defendant
TIME WARNER ENTERTAINMENT-
ADVANCE/NEWHOUSE PARTNERSHIP, A
NEW YORK GENERAL PARTNERSHIP,
THROUGH ITS SAN DIEGO DIVISION,
DBA TIME WARNER CABLE

DLA PIPER US LLP
SAN DIEGO

SD\1786513.1

-12-

TWC'S SEP. STATE. IN OPP. TO PLTF'S MOTION TO COMPEL FURTHER RESP. TO PLTF'S ROGS.

EXHIBIT B    45

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA 92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9

                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12
   LEON ALPERT, an individual, on behalf        CASE NO.  GIC881621
13 of himself, on behalf of all those similarly
   situated, and on behalf of the general       **DECLARATION OF TERRI RHODES IN**
14 public,                                       **SUPPORT OF TWC'S OPPOSITION TO**
                                                 **PLAINTIFF'S MOTION TO COMPEL**
15              Plaintiffs,                       **FURTHER RESPONSES TO**
                                                 **INTERROGATORIES**
16         v.
                                                 Date:      April 4, 2008
17 TIME WARNER CABLE, INC., a                     Time:      10:30 a.m.
   Delaware corporation, and DOES 1 TO           Dept:      63
18 100,                                           Judge:     Luis R. Vargas
19              Defendants.                       Complaint: March 13, 2007
                                                 FAC:       May 16, 2007
20

21

22

23

24

25

26

27

28
DLA PIPER US LLP   SD\1786501.1
   SAN DIEGO
                  DECLARATION OF TERRI RHODES ISO TWC'S OPPOSITION TO MOTION TO COMPEL

                        EXHIBIT B    46

1    I, Terri Rhodes, declare:

2    1.    I am Director of Marketing at Time Warner Entertainment-Advance/Newhouse

3    Partnership, a New York general partnership, through its San Diego Division, dba Time Warner

4    Cable ("TWC–SAN DIEGO/DESERT CITIES"). I have personal knowledge of the facts set

5    forth herein and, if called to testify, I could and would testify competently thereto.

6    2.    Time Warner Cable is a decentralized company. There are many divisions of

7    Time Warner Cable across the United States, and each separate division acts as a separate and

8    distinct entity.

9    3.    The separate divisions have separate marketing, finance, customer service, and

10    human resources departments.

11    4.    The separate divisions have separate budgets with their own expenses and

12    revenues.

13    5.    The separate divisions have separate pricing policies and procedures.

14    6.    The separate divisions have separate marketing policies and procedures.

15    7.    The separate divisions have separate components, products and packages of

16    services from the other divisions.

17    8.    The separate divisions train their customer service representatives separately.

18    9.    Leon Alpert has two accounts in the San Diego/Desert Cities division.

19    10.    TWC–SAN DIEGO/DESERT CITIES, the division with whom Plaintiff Alpert

20    has two accounts, provides cable services only in the San Diego and Desert Cities areas in

21    California.

22    11.    The TWC-SAN DIEGO/DESERT CITIES division does not provide cable

23    services to other California locations.

24    I declare under penalty of perjury under the laws of the State of California and the United

25    States of America that the foregoing is true and correct and that this declaration was executed on

26    March 20, 2008, in San Diego, California.

27    _____
     Terri Rhodes

28

DECLARATION OF TERRI RHODES ISO TWC'S OPPOSITION TO MOTION TO COMPEL

EXHIBIT B    47

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA 92101-4297
4   Tel: 619.699.2700
    Fax: 619.699.2701
5

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9

                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12
    LEON ALPERT, an individual, on behalf      CASE NO.  GIC881621
13  of himself, on behalf of all those similarly
    situated, and on behalf of the general     **DECLARATION OF JULIE L. HUSSEY IN**
14  public,                                    **OPPOSITION TO PLAINTIFF'S MOTION**
                                               **TO COMPEL FURTHER RESPONSES TO**
15            Plaintiffs,                       **INTERROGATORIES**

16       v.                                    Date:      April 4, 2008
                                               Time:      10:30 a.m.
17  TIME WARNER CABLE, INC., a                 Dept:      63
    Delaware corporation, and DOES 1 TO        Judge:     Luis R. Vargas
18  100,
                                               Complaint: March 13, 2007
19            Defendants.                      FAC:       May 16, 2007

20

21

22

23

24

25

26

27

28  SD\1786515.1

DLA PIPER US LLP
  SAN DIEGO

DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES
TO INTERROGATORIES

EXHIBIT B    48

1    I, Julie L. Hussey, declare and state as follows:

2    1.    I am an attorney duly admitted to practice law in the State of California, and

3    admitted to appear before this Court. I am a partner with the law firm of DLA Piper US LLP,

4    attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

5    New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC")

6    in the above-captioned action. I have personal knowledge of the facts set forth herein and, if

7    called to testify, I could and would testify competently thereto.

8    2.    On February 27, 2007, as a good faith effort to meet and confer, I discussed with

9    Barron Ramos, counsel for Plaintiff, the issue of limiting the scope of Plaintiff's Interrogatories to

10   the San Diego/Desert Cities Division with the possibility that after the resolution of TWC's

11   pending Motion for Summary Judgment, such discovery would be unnecessary. Mr. Ramos

12   refused to consider limiting the scope of Plaintiff's discovery to the San Diego/Desert Cities

13   Division.

14   3.    Attached hereto as Exhibit A is a true and correct copy of an email I sent to Mr.

15   Ramos on March 4, 2008 stating that any discovery pertaining to information outside of the San

16   Diego/Desert Cities Division is irrelevant and improper at this time.

17   4.    Attached hereto as Exhibit B is a true and correct copy of an email exchange

18   between Barron Ramos, counsel for Plaintiff, and me that took place on March 5, 2008 and

19   March 6, 2008 regarding the scope of discovery.

20   5.    Attached hereto as Exhibit C is a true and correct copy of excerpts from the

21   deposition of Leon Alpert taken on November 6, 2007.

22   I declare under penalty of perjury under the laws of the State of California and the United

23   States of America that the foregoing is true and correct and that this declaration was executed on

24   March 20 , 2008, in San Diego, California.

25

26                                             Julie L. Hussey

27

28

DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO MOTION TO COMPEL FURTHER RESPONSES
TO INTERROGATORIES

EXHIBIT B    49

**EXHIBIT A**

**Dolton, Carrie**

| | |
|---|---|
| **From:** | Hussey, Julie |
| **Sent:** | Tuesday, March 04, 2008 4:18 PM |
| **To:** | 'barron@yourclasscounsel.com' |
| **Cc:** | Shohet, Jeffrey |

**Subject:** Alpert v. Time Warner – Interrogatories, PMK Deposition and MSJ hearing

Barron -

One of your letters today indicated that we have not yet responded to your meet and confer efforts. To be clear, we talked last week for some time and discussed the interrogatory responses, PMK and other varied matters. As discussed last week, discovery outside of the San Diego division is irrelevant and improper at this time. When we spoke last week in response to your meet and confer letter, I notified you that unless the court's order on the Motion to Compel Compliance indicated that we should do so, Time Warner will not agree to respond to the overly broad interrogatories on behalf of the decentralized and varied California divisions. While we have not yet seen the court's order on the Motion to Compel Compliance that you described, Time Warner will not agree to respond to the subject interrogatories on behalf of all of California at this time and will continue to limit its responses to the San Diego Division.

Additionally, last week I requested that Plaintiff limit the initial PMK deposition to only the San Diego division and Plaintiff declined. Time Warner is willing and plans to move forward with the noticed PMK deposition on or about March 14 for the San Diego division only so that Plaintiff may obtain the necessary discovery to respond to the pending Motion for Summary Judgment. Time Warner will produce a PMK for the San Diego division on or about March 14. We are still working with the witness to determine what the schedule allows. Time Warner plans to move the court for a protective order staying all discovery outside the San Diego division until the MSJ is is ruled upon.

Finally, the scope of the MSJ is limited and Plaintiff has had months to conduct discovery. Time Warner has produced documents, responded to the written discovery for the San Diego division and agreed to produce a PMK for the San Diego division so that Plaintiff may complete all discovery regarding the MSJ. Time Warner will not agree to move the hearing date to accommodate the requested irrelevant and improper discovery.

Please let me know if you have any questions regarding any of the issues above.

Julie



DLA PIPER

Julie L. Hussey
Partner

DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California 92101

619 599 2844 T
619 764 6644 F
Julie Hussey@dlapiper.com

www.dlapiper.com

EXHIBIT B    51

**EXHIBIT B**

**Hussey, Julie**

| | |
|---|---|
| **From:** | barron@yourclasscounsel.com |
| **Sent:** | Thursday, March 06, 2008 10:12 AM |
| **To:** | Hussey, Julie |
| **Subject:** | RE: Alpert v. Time Warner - Interrogatories,    PMK Deposition and MSJ hearing |

Julie,

Your position that the Court has somehow limited discovery to San Diego is simply wrong. The Court's denial of the motion was "without prejudice" and dealt only with Jeff's procedural argument re the Notice of Motion (which was wrong per Cal. Supreme Court case law and I will now likely bring a renewed motion accordingly). In any event, why you insist this is a San Diego only case is beyond me and is contrary to the pleadings.

As for the rog responses, I am calendaring a motion to compel as I said I would given your refusal yesterday to fully respond to those rogs. Now that your position is clear, the motion will be filed.

With regard to the PMK depo, we will take it as noticed at Dave's office downtown with the understanding that the limitation to San Diego is only an accomodation to you and does not waive our right to your PMK for all of Calif.

Lastly, you indicated to me clearly that if the previously heard motion was in our favor, Time Warner would no longer dispute the scope of discovery outside of San Diego. That's what you said, no question about it. If your position is different now, that's fine, I understand how things operate over there.

I'll serve the rog motion as soon as I get a hearing date and look forward to the PMK depo next week. Let me know if you have any questions or concerns re anything above.

Barron


> 
> Barron --
> 
> I am glad that you wrote me with your understanding of our conversation
> last week so that we can get on the same page.
> Yes, Time Warner would have been willing to accommodate an extension on
> the MSJ hearing if the court had ruled in plaintiff's favor on the
> Motion to Compel Compliance. Had Time Warner been ordered to produce
> more documents under the court's decision, an extension would have been
> acceptable. As you know, such motion was denied so we are not clear
> what outstanding discovery you seek that will be allowed beyond San
> Diego. So, to summarize, yes, we would have accommodated outstanding
> discovery/MSJ hearing change if such outstanding discovery or the
> requirement of a last minute production ordered by the court existed.
> None exists at this time so we plan to move forward.
> 
> Secondly, yes, we told you that we had been waiting/were waiting until
> the court's ruling on the Motion to Compel Compliance so that we could
> respond to the interrogatory meet and confer letter. I asked that you
> give us a few more days to respond so we could use the order as a
> guideline. As discussed, we were waiting on the ruling so that we had
> guidance on whether the court was expanding discovery to all of
> California. I told you that if the court ruled for plaintiff and
> expanded the scope of the RFP then we would probably not require a

1

EXHIBIT B    53

> motion to compel further interrogatory responses.  I never once said or
> indicated that if the court's ruling was in Time Warner's favor that we
> would strangely change our position and then respond on behalf of all
> California to your pending discovery.  In fact, you asked me a similar
> question, I explained our position and then you said  "well it sounds
> like I need to continue with my draft motion" and I agreed.  What part
> of this is/was misleading? We got the ruling (from your description in
> the faxed letter) and then we immediately responded to your meet and
> confer letter letting you know we would not expand the interrogatory
> responses because the court ruled in our favor.
>
> We simply disagree regarding your third point.  Time Warner has
> responded to all discovery requests timely and in good faith, despite
> your meritless accusations.  The case has been pending for almost one
> year and Time Warner's position regarding the scope of discovery has
> been clear since the beginning:  San Diego division only.
>
> If plaintiff has issues regarding Time Warner's Interrogatory responses
> other than the difference of opinion regarding the limitation of the
> scope (San Diego v. California) then please let me know and we will do
> our best to accommodate your request.
>
> Finally, in response to your email from this morning (attached), the PMK
> witness is available on March 14 at 10:00 am to respond on behalf of San
> Diego and we prefer to produce our witness at the DLA Piper downtown San
> Diego office.  Please advise us if this is not acceptable.  We will plan
> for the deposition to move forward on March 14.
>
> Regards,
>
>
> Julie
>
>
>
> -----Original Message-----
> From: barron@yourclasscounsel.com [mailto:barron@yourclasscounsel.com]
> Sent: Wednesday, March 05, 2008 9:08 AM
> To: Hussey, Julie
> Subject: Re: Alpert v. Time Warner - Interrogatories, PMK Deposition and
> MSJ hearing
>
> Julie,
>
> There are so many mistatements in your e-mail that it's hard to know
> where
> to begin.
>
> First, you told me long ago that your client would have no problem
> moving
> the MSJ date back to accomodate discovery matters.  That's suddenly
> changed.
>
> Second, you told me when we spoke last week that the reason you had not
> replied to my meet and confer letters was because you were waiting to
> see
> what the Court would do re my pending motion to compel.  Specifically,
> you
> indicated that if the Court limited discovery to San Diego you would
> limit future discovery accordingly.  On other other hand, you were quite
> clear that if the Court did not limit discovery to San Diego (which he
> did
> not), you would not fight us on the scope of discovery outside of San
> Diego.  Now, again, that's suddenly changed as well.
>
> Third, permit me to correct your misperception of reality - we have not
> had "months" to conduct discovery since that statement necessarily
> implies

EXHIBIT B    54

> that you will properly respond to same.  You did not.  Specifically,
> (i) you failed to produce responsive documents necessitating the motion
> to
> compel which was just heard last week on an order shortening time, (ii)
> those responsive documents are still outstanding and necessary to
> adequately prepare our MSJ opp, (iii) you have failed to respond to our
> rogs in full thereby necessitating another motion to compel, and (iv)
> you
> have failed to agree to the noticed date for the PMK depo and have
> already
> indicated you will limit the scope of inquiry.
>
> It looks like saying one thing and then doing another is how you all do
> business over there.  I sure don't understand that approach, but I guess
> I
> have to learn to deal with it.
>
> I'll be in touch as to how we intend to proceed given your change in
> positions on these issues and refusal to permit discovery necessary to
> oppose your MSJ.
>
> Barron
>
>
>
>
>
>>
>>
>> Barron -
>>
>> One of your letters today indicated that we have not yet responded to
>> your meet and confer efforts.  To be clear, we talked last week for
> some
>> time and discussed the interrogatory responses, PMK and other varied
>> matters.  As discussed last week, discovery outside of the San Diego
>> division is irrelevant and improper at this time.  When we spoke last
>> week in response to your meet and confer letter, I notified you that
>> unless the court's order on the Motion to Compel Compliance indicated
>> that we should do so, Time Warner will not agree to respond to the
>> overly broad interrogatories on behalf of the decentralized and varied
>> California divisions.  While we have not yet seen the court's order on
>> the Motion to Compel Compliance that you described, Time Warner will
> not
>> agree to respond to the subject interrogatories on behalf of all of
>> California at this time and will continue to limit its responses to
> the
>> San Diego Division.
>>
>> Additionally, last week I requested that Plaintiff limit the initial
> PMK
>> deposition to only the San Diego division and Plaintiff declined.
> Time
>> Warner is willing and plans to move forward with the noticed PMK
>> deposition on or about March 14 for the San Diego division only so
> that
>> Plaintiff may obtain the necessary discovery to respond to the pending
>> Motion for Summary Judgment.  Time Warner will produce a PMK for the
>> San Diego division on or about March 14.  We are still working with
> the
>> witness to determine what the schedule allows.  Time Warner plans to
>> move the court for a protective order staying all discovery outside
> the
>> San Diego division until the MSJ is is ruled upon.
>>
>> Finally, the scope of the MSJ is limited and Plaintiff has had months
> to

3

EXHIBIT B    55

>> conduct discovery. Time Warner has produced documents, responded to
> the
>> written discovery for the San Diego division and agreed to produce a
> PMK
>> for the San Diego division so that Plaintiff may complete all
> discovery
>> regarding the MSJ.    Time Warner will not agree to move the hearing
> date
>> to accommodate the requested irrelevant and improper discovery.
>>
>> Please let me know if you have any questions regarding any of the
> issues
>> above.
>>
>> Julie
>>
>>
>>  <http://www.dlapiper.com/>
>>
>> Julie L. Hussey
>> Partner
>>
>> DLA Piper US LLP
>> 401 B Street, Suite 1700
>> San Diego, California 92101
>>
>> 619.699.2844 T
>> 619.764.6644 F
>> Julie.Hussey@dlapiper.com
>>
>> www.dlapiper.com <http://www.dlapiper.com/>
>>
>>
>>
>>
>>
>> <font face="Arial" size="2" color="#008000">
>> Please consider the environment before printing this email.</font>
>>
>>
> _____
> _____
>>
>> The information contained in this email may be confidential and/or
> legally
>> privileged. It has been sent for the sole use of the intended
>> recipient(s). If the reader of this message is not an intended
> recipient,
>> you are hereby notified that any unauthorized review, use, disclosure,
>> dissemination, distribution, or copying of this communication, or any
> of
>> its contents, is strictly prohibited. If you have received this
>> communication in error, please contact the sender by reply email and
>> destroy all copies of the original message. To contact our email
>> administrator directly, send to postmaster@dlapiper.com
>>
>> Thank you.
>>
> _____
> _____
>
>
> --
> BARRON E. RAMOS
> Attorney at Law, A Professional Corporation
> 132 N. El Camino Real, # 303
> Encinitas, California 92024

4

```
> Phone (760) 274-6438
> Mobile (858) 349-6019
> Fax (760) 994-1354
>
>
>
>
> _____
>
> The information contained in this email may be confidential and/or legally
> privileged. It has been sent for the sole use of the intended
> recipient(s). If the reader of this message is not an intended recipient,
> you are hereby notified that any unauthorized review, use, disclosure,
> dissemination, distribution, or copying of this communication, or any of
> its contents, is strictly prohibited. If you have received this
> communication in error, please contact the sender by reply email and
> destroy all copies of the original message. To contact our email
> administrator directly, send to postmaster@dlapiper.com
>
> Thank you.
> _____


--
BARRON E. RAMOS
Attorney at Law, A Professional Corporation
132 N. El Camino Real, # 303
Encinitas, California 92024
Phone (760) 274-6438
Mobile (858) 349-6019
Fax (760) 994-1354
```

EXHIBIT B    57

**EXHIBIT C**

EXHIBIT B    5 8

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CENTRAL DIVISION

LEON ALPERT, an individual, on
behalf of himself, on behalf of
all those similarly situated,
and on behalf of the general
public,

              Plaintiff,

   vs.                       Case No. GIC881621

TIME WARNER CABLE, INC., a
Deleware corporation, and DOES
1 TO 100,

              Defendants.

**CERTIFIED**

**COPY**

---

VIDEOTAPED DEPOSITION OF LEON SETH ALPERT

VOLUME 1

SAN DIEGO, CALIFORNIA

TUESDAY, NOVEMBER 6, 2007

Reported by:
R. Denise Marlow
CSR No. 11631

Job No. 75324

1              SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

2                            CENTRAL DIVISION

3

4    LEON ALPERT, an individual, on
     behalf of himself, on behalf of
5    all those similarly situated,
     and on behalf of the general
6    public,

7                          Plaintiff,

8       vs.                              Case No. GIC881621

9    TIME WARNER CABLE, INC., a
     Deleware corporation, and DOES
10   1 TO 100,

11                         Defendants.

12   _____

13

14

15

16           DEPOSITION OF LEON SETH ALPERT, Volume 1, taken

17   at 401 B Street, Suite 1700, San Diego, California, on

18   Tuesday, November 6, 2007, at 9:39 a.m., before

19   R. Denise Marlow, Certified Shorthand Reporter, in and

20   for the State of California.

21

22

23

24

25

2

EXHIBIT B    60

1   Appearances:

2       For Plaintiff:

3           Law Office of Barron E. Ramos
            By:  Barron E. Ramos
4           132 North El Camino Real, Suite 303
            Encinitas, California  92024
5           760.274.6438  Fax 760.994.1354
            E-mail:  Barron@yourclasscounsel.com
6
                     - and -
7
            Clark & Markham, LLP
8           By:  David R. Markham
            401 West A Street, Suite 2200
9           San Diego, California  92101
            619.239.1321  Fax 619.239.5888
10          E-mail:  Dmarkham@clarkmarkham.com

11      For Defendant:

12          DLA Piper US LLP
            By:  Jeffrey M. Shohet
13                   - and -
                 Carrie S. Dolton
14          401 B Street, Suite 1700
            San Diego, California  92101-4297
15          619.699.2859  Fax 619.764.6659
            E-mail:  Jeffrey.shohet@dlapiper.com
16
        Also Present:
17
            Victor Renteria, Videographer
18

19

20

21

22

23

24

25

3

LEON SETH ALPERT                                11/06/07

10:56:59  1        Q    Well, there might have been a purpose to change

10:57:01  2    the billing for those services.

10:57:02  3             MR. RAMOS:  Well, objection.  Calls for

10:57:04  4    speculation.

10:57:05  5             MR. SHOHET:  I'm just suggesting there might

10:57:08  6    have been another purpose.

10:57:10  7             MR. RAMOS:  Is there a question?

10:57:11  8             MR. SHOHET:  No, there isn't.  But there will

10:57:12  9    be.

10:57:12 10    BY MR. SHOHET:

10:57:12 11        Q    And the question is, Were you aware of the

10:57:14 12    existence of a package of services called the Digipac

10:57:17 13    2000 at any time before Palm Springs Rental Agency began

10:57:22 14    to negotiate for it on your behalf?

10:57:24 15        A    No, I wasn't aware.

10:57:36 16        Q    Now, other than on behalf of your property in

10:57:43 17    Desert Cities and your primary residence in Del Mar, do

10:57:46 18    you contract for cable television services for any other

10:57:52 19    property?

10:57:53 20        A    No.

10:58:05 21        Q    What's the highest level of education that

10:58:07 22    you've attained?

10:58:08 23        A    Master's degree.

10:58:09 24        Q    In what?

10:58:10 25        A    Economics.

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT B    62

LEON SETH ALPERT                                    11/06/07

12:48:02  1      Q    Mr. Alpert, I'm not quarreling that you are the
12:48:06  2   ultimate economic source of that payment.  I simply want
12:48:10  3   you to agree with me on a fact that I think is not in
12:48:13  4   dispute.  And that is the package of services that are
12:48:16  5   in the bulk multichannel video service group are
12:48:18  6   services that are provided to you through the HOA
12:48:22  7   payment that you make, and the additional services you
12:48:27  8   have to write a check for.  That's all I'm trying to get
12:48:30  9   to.  You agree with me on that, don't you?
12:48:32  10     A    I --
12:48:32  11          MR. RAMOS:  Sorry.  Let me just object.  The
12:48:34  12   document speaks for itself, and it's vague and
12:48:36  13   ambiguous.
12:48:37  14          THE WITNESS:  If the scope of your question is
12:48:39  15   that outside of that -- excuse me -- that 28.77 I wrote
12:48:44  16   a check for to Time Warner every month, there is no
12:48:48  17   dispute because I, in fact, wrote a check for it every
12:48:51  18   month.
12:48:51  19   BY MR. SHOHET:
12:48:51  20     Q    And those are the additional services above and
12:48:53  21   beyond the services that your HOA provides to you.
12:48:57  22          MR. RAMOS:  Let me just object.
12:48:58  23   BY MR. SHOHET:
12:48:58  24     Q    Correct?
12:48:59  25          MR. RAMOS:  That calls for speculation because

                                                          136

EXHIBIT B    63

LEON SETH ALPERT                    11/06/07

13:00:53  1          THE WITNESS:  I didn't really think about it.

13:00:54  2   BY MR. SHOHET:

13:00:54  3      Q    And just to clarify the record, you received

13:00:58  4   the services that are identified in this heading

13:01:02  5   "Digital Phone Package" as of the billing date of

13:01:05  6   February 12th, 2006.  Correct?

13:01:06  7      A    Correct.

13:01:07  8      Q    And then for your iControl premium service,

13:01:11  9   that's your digital or your -- your pay services on

13:01:15 10   demand subscription of $6.95, do you have any reason to

13:01:19 11   believe that there was a lower charge available to you

13:01:23 12   for that premium service ordered on -- on a standalone

13:01:29 13   or nonbundled basis?

13:01:30 14          MR. RAMOS:  Same objection.  It calls for

13:01:32 15   speculation.

13:01:32 16   BY MR. SHOHET:

13:01:32 17      Q    In other words, the question really is, Do you

13:01:34 18   have any understanding that that is not the proper rate

13:01:37 19   that Time Warner charges for that service as part of a

13:01:41 20   nonbundled package?

13:01:42 21          MR. RAMOS:  Calls for speculation.

13:01:43 22          THE WITNESS:  No.  I -- I mean, all I

13:01:45 23   understood was that I asked for, you know, a bundle of

13:01:48 24   those services, and then -- and they quoted me a rate or

13:01:55 25   I saw it on the ad or a combination, and that's the bill

EXHIBIT B    64

| | | |
|---|---|---|
| 13:01:58 | 1 | and that's what I paid. |
| 13:01:59 | 2 | BY MR. SHOHET: |
| 13:01:59 | 3 | Q    You say you asked for a bundle of services. |
| 13:02:05 | 4 | And I understand -- well, tell me when you asked for the |
| 13:02:09 | 5 | bundle of services? |
| 13:02:10 | 6 | A    I think when I first upgraded to the digital |
| 13:02:17 | 7 | phone and the wireless -- and the Road Runner, I -- I |
| 13:02:22 | 8 | wanted -- you know, wanted the extra movie channels and |
| 13:02:26 | 9 | the other stuff, so I believe that's when the whole |
| 13:02:28 | 10 | thing came up that way. |
| 13:02:29 | 11 | Q    I never remember you -- when you answered my |
| 13:02:31 | 12 | questions about that, I don't remember your stating that |
| 13:02:34 | 13 | you specifically asked the customer service |
| 13:02:36 | 14 | representative about a bundle or bundled rate.  Is it |
| 13:02:39 | 15 | your testimony that you did have that conversation with |
| 13:02:42 | 16 | the customer service rep? |
| 13:02:44 | 17 | A    I may have.  I may not have used the word |
| 13:02:47 | 18 | "bundle," or I may have.  I just saw -- responded to the |
| 13:02:51 | 19 | ad in wishing to upgrade my services. |
| 13:02:52 | 20 | Q    This is now going back to the 2004/2005 -- |
| 13:02:56 | 21 | A    Yeah.  No, I understand. |
| 13:02:58 | 22 | Q    I just wanted to be sure we were talking |
| 13:03:00 | 23 | about -- |
| 13:03:00 | 24 | A    No.  I understand exactly what you're talking |
| 13:03:02 | 25 | about. |

149

EXHIBIT B    65

LEON SETH ALPERT                                    11/06/07

13:04:18  1        A     Yeah.  Any four premium channels, yeah.

13:04:20  2        Q     Okay.  Now, you received all of those services

13:04:22  3   that are shown on this bill at the time of this billing.

13:04:26  4   Correct?

13:04:27  5        A     As far as I recall, yes.

13:04:29  6        Q     And then there was the Wireless Road Runner for

13:04:42  7   $54.90.  You see that?

13:04:42  8        A     Yes, I do.

13:04:43  9        Q     And you received that at the time as well.

13:04:44 10   Correct?

13:04:44 11        A     When it worked, yes.

13:04:46 12        Q     And you don't -- and as you sit here today, do

13:04:48 13   you have any understanding or belief that that was

13:04:52 14   available to you at some lower price than is charged

13:04:55 15   here for that service?

13:04:56 16              MR. RAMOS:  Calls for speculation.

13:04:57 17              THE WITNESS:  I didn't think about it.  I mean,

13:05:00 18   I just saw the ad, talked to the customer service, and

13:05:04 19   decided that's what I wanted and paid for it.

13:05:05 20   BY MR. SHOHET:

13:05:05 21        Q     All right.  So you agree with me, then, that

13:05:11 22   you received all of the services -- when they were good,

13:05:14 23   when you got the signals, you did receive all the

13:05:17 24   services that are shown on your February 12th, 2006,

13:05:19 25   bill.  Correct?

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT B    66

13:05:20  1      A    Yes.

13:05:21  2      Q    And you received them and paid the price that's

13:05:24  3  shown on this bill.  Correct?

13:05:25  4      A    Correct.

13:05:26  5      Q    Now, do you recall seeing rate cards or rate

13:05:29  6  sheets being sent to you periodically from Time Warner

13:05:33  7  Cable regarding what the current pricing or rates were

13:05:37  8  for Time Warner services?

13:05:38  9      A    Hmm.  You know, they -- they continually

13:05:47  10  advertise stuff, so -- and they -- there's always

13:05:51  11  inserts of one sort or another in the billing and I see

13:05:55  12  ads.  So, you know, on a broad, broad sense, yeah, I was

13:06:03  13  aware that they advertised rates.

13:06:05  14      Q    So you did from time to time receive some

13:06:09  15  information from some source about rates and rate

13:06:12  16  changes from Time Warner?

13:06:13  17      A    I imagine so.  I can't point to anything

13:06:17  18  specifically but just in the normal course of how they

13:06:19  19  do business.

13:06:19  20      Q    And at any time between the time you started

13:06:25  21  contracting with Time Warner Cable for additional

13:06:29  22  services as a homeowner resident -- homeowners

13:06:34  23  association resident, do you recall that the rates

13:06:36  24  changed, again, before the September rate change?

13:06:39  25      A    Not specifically.

EXHIBIT B    67

| | | |
|---|---|---|
| 13:08:43 | 1 | Q     Exactly.  Exhibit 3 and Exhibit -- |
| 13:08:43 | 2 | A     No, not that I recall. |
| 13:08:43 | 3 | Q     Or a document similar to Exhibit 4.  Did you |
| 13:08:48 | 4 | ever do a comparison of the rates that you were being |
| 13:08:51 | 5 | charged to a rate sheet or the rate card that you were |
| 13:08:52 | 6 | given? |
| 13:08:52 | 7 | A     Not that I recall. |
| 13:08:54 | 8 | Q     Turn to the second page. |
| 13:08:55 | 9 | A     Okay. |
| 13:08:56 | 10 | Q     You see it's 39.95 for digital phone? |
| 13:09:01 | 11 | A     Yes. |
| 13:09:01 | 12 | Q     With digital cable and Road Runner.  Do you see |
| 13:09:04 | 13 | that? |
| 13:09:04 | 14 | A     Digital phone with digital cable and Road |
| 13:09:07 | 15 | Runner, 39.95 per month. |
| 13:09:09 | 16 | Q     You see that? |
| 13:09:10 | 17 | A     Yeah. |
| 13:09:10 | 18 | Q     And -- |
| 13:09:11 | 19 | A     But there's two lines.  One says -- or Road |
| 13:09:15 | 20 | Runner.  Okay. |
| 13:09:16 | 21 | Q     In other words, if you buy the bundle of |
| 13:09:18 | 22 | digital phone along with Road Runner, you get the |
| 13:09:20 | 23 | digital phone for 39.95.  Do you see that? |
| 13:09:24 | 24 | A     Yes. |
| 13:09:25 | 25 | Q     And does that refresh your recollection that |

155

EXHIBIT B    68

**LEON SETH ALPERT**                                      **11/06/07**

| | |
|---|---|
| 13:09:27 1 | you ever made a comparison with the rate for your |
| 13:09:29 2 | digital phone service to any published or rate card rate |
| 13:09:34 3 | to determine whether you were properly being charged for |
| 13:09:36 4 | that? |
| 13:09:36 5 | MR. RAMOS: Objection. Asked and answered. |
| 13:09:37 6 | THE WITNESS: I -- you know, when I first |
| 13:09:41 7 | ordered these services in a bundle, I believe I probably |
| 13:09:46 8 | checked my bill against what I was told, and it was |
| 13:09:49 9 | probably correct, and then I never -- |
| 13:09:51 10 | BY MR. SHOHET: |
| 13:09:51 11 | Q    All right. |
| 13:09:51 12 | A    I look at my bill every month, but I never -- |
| 13:09:54 13 | you know, I didn't notice any big changes, so -- |
| 13:09:58 14 | Q    And then at the bottom of the first page where |
| 13:10:03 15 | it says high-speed Internet service -- |
| 13:10:05 16 | A    Yeah. |
| 13:10:05 17 | Q    -- Road Runner 44.95, and then the wireless is |
| 13:10:09 18 | 9.95, which totals 54.90, do you see that? |
| 13:10:13 19 | A    Yes. |
| 13:10:14 20 | Q    And did you ever make that comparison against |
| 13:10:16 21 | what you were being charged for Wireless Road Runner to |
| 13:10:19 22 | see if you were being charged the correct rate card |
| 13:10:23 23 | rate? |
| 13:10:23 24 | A    I most likely compared it on the first bill |
| 13:10:27 25 | after I ordered the services to make sure I was being |

156

LEON SETH ALPERT                                    11/06/07

| | | |
|---|---|---|
| 13:10:29 | 1 | charged correctly, but I don't recall anytime since |
| 13:10:31 | 2 | then. |
| 13:10:31 | 3 | Q    Okay. |
| 13:10:32 | 4 | A    But I don't recall ever seeing this rate card. |
| 13:10:34 | 5 | Q    What did you compare it to then? |
| 13:10:37 | 6 | A    Either -- maybe I wrote it down, what I was |
| 13:10:40 | 7 | told by the customer service rep, or maybe I had an -- I |
| 13:10:43 | 8 | had an ad or something that -- |
| 13:10:44 | 9 | Q    Okay. |
| 13:10:45 | 10 | A    -- an insert or something else.  But I don't |
| 13:10:47 | 11 | recall specifically a detail rate card. |
| 13:10:49 | 12 | Q    All right.  Whatever comparison you were making |
| 13:10:51 | 13 | to, whether it was the ad or the rate card or some other |
| 13:10:54 | 14 | document, you did that kind of a comparison when you |
| 13:10:56 | 15 | first received the bill, and you were satisfied that the |
| 13:11:00 | 16 | rates were as they were advertised or represented to be? |
| 13:11:03 | 17 | A    Yes, because I paid the bill without dispute |
| 13:11:07 | 18 | every month. |
| 13:11:08 | 19 | Q    Okay.  And then just to complete the line of |
| 13:11:19 | 20 | questioning on this, let me show you Exhibit 4 -- |
| 13:11:32 | 21 | THE REPORTER:  5. |
| 13:11:32 | 22 | MR. SHOHET:  5.  Excuse me.  Exhibit 5.  Thank |
| 13:11:32 | 23 | you. |
| 13:11:32 | 24 | (Exhibit 5 marked) |
| 13:11:32 | 25 | THE WITNESS:  All right.  Thank you. |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

EXHIBIT B    70

| | |
|---|---|
| 13:11:39 | 1 |
| 13:11:44 | 2 |
| 13:11:59 | 3 |
| 13:12:03 | 4 |
| 13:12:04 | 5 |
| 13:12:04 | 6 |
| 13:12:10 | 7 |
| 13:12:12 | 8 |
| 13:12:12 | 9 |
| 13:12:17 | 10 |
| 13:12:23 | 11 |
| 13:12:26 | 12 |
| 13:12:30 | 13 |
| 13:12:32 | 14 |
| 13:12:33 | 15 |
| 13:12:43 | 16 |
| 13:12:46 | 17 |
| 13:12:49 | 18 |
| 13:12:50 | 19 |
| 13:12:51 | 20 |
| 13:12:54 | 21 |
| 13:12:57 | 22 |
| 13:13:00 | 23 |
| 13:13:03 | 24 |
| 13:13:05 | 25 |

BY MR. SHOHET:

Q    This is, for the record, a bill to you for your Caminito del Canto residence, dated December 12th, 2006. Do you recognize it as such?

A    Yes.

Q    And on the second page it identifies the HOA Digipac 4000 Trio.  Correct?

A    Yes.

Q    And this is a bill that is similar to, in terms of the identification of the Digipac 4000 Trio combo, that is a bill -- this bill represents the billing after the change as a result of your conversation with Time Warner in or about September.  Correct?

A    Yeah.

Q    Now, it -- and in your -- in your complaint in paragraph 12 of your complaint, you state that this changed the billing to reflect what it should have been all along.  Right?

A    Believe so, yes.

Q    So you don't dispute the correctness of this bill from this point forward.

A    The new -- you mean Exhibit --

Q    The bill -- the billing that's reflected in Exhibit 12 -- I'm sorry -- in Exhibit 5 --

A    Exhibit 5.

158

EXHIBIT B    71

13:13:06  1      Q      -- which is dated December 12th, which you

13:13:08  2   identified as similar to the billings that you began to

13:13:12  3   receive after the phone call in September with Time

13:13:14  4   Warner Cable, this now correctly, in your view, charges

13:13:18  5   you for these services.  Is that right?

13:13:19  6      A      I believe so, yes.

13:13:20  7      Q      All right.  And now I want to understand one

13:13:26  8   thing that I've been confused about, I have to tell you,

13:13:29  9   since I first began this case --

13:13:30 10      A      Okay.

13:13:31 11      Q      -- in reading the complaint.  Is it your

13:13:36 12   contention that the reduction in the bill is somehow

13:13:39 13   because before the change you were being charged for

13:13:45 14   services to which you were already entitled because your

13:13:48 15   HOA contracted for those services and paid $28.77 on

13:13:54 16   your behalf?  Is that your testimony?

13:13:56 17      A      My understanding is that I understood that I

13:14:00 18   was being overcharged because there's -- had been some

13:14:05 19   sort of an agreement on pricing reflected by the notice

13:14:09 20   in the homeowners association newsletter and I was being

13:14:13 21   overcharged for that, purely just overcharged.

13:14:16 22      Q      Okay.  And the agreement related some special

13:14:19 23   pricing for the additional services above and beyond

13:14:23 24   what the HOA was paying on your behalf for as basic

13:14:28 25   services.  Is that your understanding?

EXHIBIT B    72

```
 1                    PENALTY OF PERJURY

 2

 3

 4

 5

 6

 7

 8

 9

10          I, LEON SETH ALPERT, do hereby declare under

11   penalty of perjury that I have read the foregoing

12   transcript; that I have made any corrections as appear

13   noted, in ink, initialed by me, or attached hereto; that

14   my testimony as contained herein, as corrected,

15   is true and correct.

16

17          EXECUTED this _____ day of _____,

18   2007, at _____, _____.
                      (City)              (State)
19

20

21            _____

22            LEON SETH ALPERT
              Volume 1
23

24

25
```

EXHIBIT B    73

1      I, the undersigned, a Certified Shorthand

2   Reporter of the State of California, do hereby certify:

3      That the foregoing proceedings were taken

4   before me at the time and place herein set forth; that

5   any witnesses in the foregoing proceedings, prior to

6   testifying, were duly sworn; that a record of the

7   proceedings was made by me using machine shorthand

8   which was thereafter transcribed under my direction;

9   that the foregoing transcript is a true record of the

10  testimony given.

11     Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript [  ] was [  ] was not requested.

15     I further certify I am neither financially

16  interested in the action nor a relative or employee

17  of any attorney or party to this action.

18     IN WITNESS WHEREOF, I have this date

19  subscribed my name.

20

21  Dated: _____NOV 12 2007_____

22

23          R. Denise Marlow

24          R. DENISE MARLOW
            CSR No. 11631

25

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    RYAN T. HANSEN (Bar No. 234329)
3   **DLA PIPER US LLP**
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9
                    SUPERIOR COURT OF CALIFORNIA
10
                        COUNTY OF SAN DIEGO
11

12
    LEON ALPERT, an individual, on behalf        CASE NO.  GIC881621
13  of himself, on behalf of all those similarly
    situated, and on behalf of the general       **DEFENDANT TIME WARNER CABLE'S**
14  public,                                      **MEMORANDUM OF POINTS AND**
                                                 **AUTHORITIES IN OPPOSITION TO**
15              Plaintiffs,                       **PLAINTIFF'S RENEWED MOTION TO**
                                                 **COMPEL FURTHER RESPONSES [RE:**
16        v.                                      **TIME WARNER CABLE'S RESPONSES**
                                                 **TO PLAINTIFF'S REQUESTS FOR**
17  TIME WARNER CABLE, INC., a                    **PRODUCTION OF DOCUMENTS]**
    Delaware corporation, and DOES 1 TO
18  100.                                          Date:      April 4, 2008
                                                 Time:      10:30 a.m.
19              Defendants.                       Dept:      63
                                                 Judge:     Luis R. Vargas
20
                                                 Complaint: March 13, 2007
21                                               FAC:       May 16, 2007

22

23

24

25

26

27

28

DLA PIPER US LLP
   SAN DIEGO          SD\1785914.5

─────────────────────────────────────────────────────────
        TIME WARNER CABLE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL

**EXHIBIT B    76**

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    PROCEDURAL HISTORY ................................................................................2

III.   PLAINTIFF HAS WAIVED HIS RIGHT TO COMPEL FURTHER RESPONSES........3

       A.    Plaintiff's Motion is Time-Barred and Must be Denied As a Matter of Law..........3

       B.    Plaintiff's Attempts to Evade the 45-day Deadline for This Motion Are
             Without Merit ................................................................................................3

             1.    Plaintiff's Motion is Not Timely as a "Renewed" Motion ..........................4

             2.    The Court's Denial of Plaintiff's Motion to Compel Compliance
                   "Without Prejudice" Does Not Extend the 45-day Filing Deadline ...........5

             3.    Plaintiff's Collateral Attack on the Court's Previous Order is
                   Improper..........................................................................................6

IV.    PLAINTIFF'S REQUEST FOR SANCTIONS IS UNWARRANTED..............................7

V.     SANCTIONS SHOULD BE AWARDED AGAINST PLAINTIFF AND HIS
       COUNSEL FOR BRINGING THIS FRIVOLOUS MOTION ..........................................7

VI.    CONCLUSION....................................................................................................8

EXHIBIT B    77

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Beresh v. Sovereign Life Ins. Co. of Cal.,*
     92 Cal. App. 3d 547 (1979) ................................................................4, 5

5

*Carrasco v. Craft,*
     164 Cal. App. 3d 796 (1985) ...................................................................6

6

7

*Geary Street, L.P. v. Sup. Ct.,*
     219 Cal. App. 3d 1186 (1990) .................................................................6

8

*Northridge Fin. Corp. v. Hamblin,*
     48 Cal. App. 3d 819 (1975) ...............................................................4, 5, 6

9

10

*Prof'l Career Colleges, Magna Institute, Inc. v. Sup. Ct.,*
     207 Cal. App. 3d 490 (1989) ...................................................................3

11

*Sexton v. Sup. Ct. (Mullikin Med. Ctr.),*
     58 Cal. App. 4th 1403 (1997) .................................................................3

12

13

*Standon Co., Inc. v. Sup. Ct. (Kim),*
     225 Cal. App. 3d 898 (1990) ...................................................................3

14

15

### STATUTES

16

California Civil Procedure Code § 1008(b), (e) ...............................................6

17

California Civil Procedure Code § 1010 .........................................................7

18

California Civil Procedure Code § 2023.030(a) ...............................................7

19

California Civil Procedure Code § 2031.310 ................................................3, 4

20

California Civil Procedure Code § 2031.310(d) ...............................................7

21

California Civil Procedure Code § 2031.320(a) ...............................................4

22

California Civil Procedure Code § 2031.320(b) ...............................................7

23

California Rules of Court Rule 3.1110(a).........................................................7

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1785914.5                                   -ii-

EXHIBIT B    7 8

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2    general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3    erroneously as Time Warner Cable, Inc.[1] submits the following Memorandum of Points and

4    Authorities in Opposition to Plaintiff's Renewed Motion to Compel Further Responses [Re:

5    TWC's Responses to Plaintiff's Requests for Production of Documents] ("Renewed Motion to

6    Compel").

7    **I.     INTRODUCTION.**

8        This motion to compel is entirely frivolous, as it is clearly outside the required time limit

9    in which to bring a motion to compel and, thus, must be denied as a matter of law. Whereas

10   motions to compel must be filed within the mandatory and jurisdictional deadline of 45 days from

11   the date of the discovery response, Plaintiff filed this motion 139 days after TWC provided the

12   discovery response at issue. The law is clear that Plaintiff's motion is untimely and must be

13   denied.

14       Plaintiff makes several desperate attempts in his moving papers to bypass the 45-day time

15   limit and justify his tardy motion. First, Plaintiff characterizes his new motion as a "renewed"

16   motion relating back to his previous motion to compel compliance. Plaintiff fails to explain how

17   his new motion (seeking further responses) can be considered a renewal of the previous motion

18   which was entirely different (seeking compliance with responses). Moreover, renewed motions

19   are not exempt from the time limits established for such motions. Plaintiff cannot confer

20   jurisdiction on this Court to grant an untimely motion by claiming some sort of "relation back"

21   doctrine—for which he cites no authority.

22   /////

---

23   [1] Plaintiff makes a reference in his moving papers that "Time Warner Cable, Inc., a Delaware Corporation" is the
     defendant in this case and should have answered the discovery requests instead of TWC. As pointed out by TWC at

24   the commencement of this litigation, Plaintiff's naming of Time Warner Cable, Inc. was in error, as Time Warner
     Cable, Inc. is not the entity that owns and operates the cable business in San Diego. Rather than demurrer to

25   Plaintiff's pleadings due to his error in identifying the correct corporate entity, TWC answered Plaintiff's amended
     complaint with the explanation that it had been "erroneously sued as Time Warner Cable, Inc." Plaintiff made no

26   objection, nor has Plaintiff at anytime in this litigation objected to TWC's involvement in this litigation as the
     defendant erroneously sued as "Time Warner Cable, Inc." If Plaintiff wishes to proceed against Time Warner Cable,

27   Inc. and not TWC, TWC requests a dismissal with prejudice from this lawsuit. Furthermore, Plaintiff's motion
     should be denied, as Time Warner Cable, Inc. has not been served with Plaintiff's operative complaint, nor has it

28   entered an appearance in this case.

1    Plaintiff even goes so far as to use his moving papers to collaterally attack the Court's

2    ruling on his previous motion to compel compliance.  Plaintiff's attempt at showing error on the

3    part of the Court and implicitly requesting reconsideration is improper and misplaced.  Due to the

4    jurisdictional time limit, Plaintiff's motion addressing the discovery requests at issue is untimely

5    regardless of how it is styled.  Furthermore, the Court did not err in its previous ruling denying

6    Plaintiff's motion to compel compliance.

7    Similarly, Plaintiff's request for sanctions associated with bringing this untimely and

8    unsupported motion is without merit.  Conversely, TWC should be awarded sanctions to

9    reimburse it for its costs in opposing this motion which seeks relief that cannot be granted as a

10   matter of law.  For all these reasons, TWC respectfully requests the Court deny Plaintiff's motion

11   to compel and request for sanctions and award TWC its costs for opposing this motion.

12   **II.    PROCEDURAL HISTORY.**

13   Plaintiff propounded his Requests for Production of Document, Set One, on or about

14   September 17, 2007.  (Declaration of Julie L. Hussey[2] ("Hussey Decl."), ¶ 2, Ex. A.)  TWC

15   responded to Plaintiff's requests on or about October 23, 2007.  (Hussey Decl. ¶ 3, Ex. B.)  On or

16   about December 1, 2007, Plaintiff moved to compel compliance with TWC's responses.  The

17   court heard Plaintiff's motion to compel compliance on February 22, 2008, took it under

18   submission, and issued its Order denying the motion on March 13, 2008 (the "Order").  Plaintiff

19   now brings this motion, styled as a motion to "renew" his earlier motion, by filing a *different*

20   motion to compel *further responses* to his September 17, 2007 document requests.  Plaintiff filed

21   the pending motion to compel further responses on March 10, 2008—139 days after TWC served

22   its responses to Plaintiff's requests for production.

23   /////

24   /////

25   /////

26   /////

27   ―――――――――――――――――――――
     [2] "Declaration of Julie L. Hussey" and "Hussey Decl." refers to the Declaration of Julie L. Hussey in Opposition to
28   Plaintiff's Motion to Compel Further Responses [Re: TWC's Responses to Plaintiff's Requests for Production of
     Documents].

EXHIBIT B     80

III.    **PLAINTIFF HAS WAIVED HIS RIGHT TO COMPEL FURTHER RESPONSES.**

A.    **Plaintiff's Motion is Time-Barred and Must be Denied As a Matter of Law.**

Plaintiff's motion to compel further responses must be denied because it is untimely. Section 2031.310(c) states that "[u]nless notice of this motion is given within 45 days of the service of the response, or any supplemental response, or on or before any specific later date to which the demanding party and the responding party have agreed in writing, *the demanding party waives any right to compel a further response to the inspection demand.*" Cal. Civ. Proc. Code § 2031.310(c)(emphasis added).  The 45-day time limit runs from the date the response is served rather than the date set for production. *Standon Co., Inc. v. Sup. Ct. (Kim)*, 225 Cal. App. 3d 898, 908 (1990).  Additionally, the time limit is "mandatory and jurisdictional," and thus the court does not have authority to grant a late motion. *Sexton v. Sup. Ct. (Mullikin Med. Ctr.)*, 58 Cal. App. 4th 1403, 1410 (1997) (holding that the 45-day time limit is jurisdictional and "render the court without authority to rule on motions to compel other than to deny them"); *Prof'l Career Colleges, Magna Institute, Inc. v. Sup. Ct.*, 207 Cal. App. 3d 490, 492-93 (1989) (holding the 45-day time limit is mandatory and jurisdictional).

The untimeliness of Plaintiff's motion is not even a close call.  TWC responded to the requests for production that are the subject of Plaintiff's motion to compel on October 23, 2007. Plaintiff filed and served his moving papers on March 10, 2008—139 days after TWC served its responses.  Thus, Plaintiff's motion is untimely and cannot be granted as a matter of law.

B.    **Plaintiff's Attempts to Evade the 45-day Deadline for This Motion Are Without Merit.**

Plaintiff tries to bypass the mandatory 45-day deadline for bringing this motion to compel by relying on several novel, but meritless, arguments.  First, Plaintiff characterizes his motion as a "*Renewed* Motion to Compel Further Responses" and implies that his tardy motion relates back to his previous motion to compel compliance.  Second, Plaintiff argues that the denial of his previous motion to compel compliance "without prejudice" allows him to file this motion 139 days after TWC's responses.  Lastly, Plaintiff collaterally attacks the Court's Order denying his

1  previous motion to compel compliance in an apparent attempt to petition for reconsideration of

2  that Order. All of these attempts to justify Plaintiff's tardy motion lack merit.

3        **1.    Plaintiff's Motion is Not Timely as a "Renewed" Motion.**

4           **a.    Plaintiff's "Renewed" Motion is An Entirely Different Motion.**

5      Plaintiff tries to evade the 45-day rule by calling this motion a "*Renewed* Motion to

6  Compel Further Responses" and implying that his tardy motion relates back to his previous

7  motion to compel compliance. Plaintiff's position in this regard is incorrect and entirely without

8  merit. As the Court pointed out in its Order denying Plaintiff's previous motion, the previous

9  motion was a "Motion to Compel Compliance" brought under section 2031.320(a)—not a

10  "Motion to Compel Further Responses" under section 2031.310. In response to Plaintiff's

11  attempts to characterize that motion as a motion to compel further responses rather than a motion

12  to compel compliance, the Court explained that it "cannot grant different relief, or relief on

13  different grounds, than stated in the notice of motion," and thus "Plaintiff's motion fails as a

14  Motion to Compel Compliance." (Order, p. 1.) Plaintiff did not previously bring a motion to

15  compel further responses. Accordingly, Plaintiff cannot now "renew" a motion that he never

16  brought in the first place.

17           **b.    Plaintiff's New Motion Does Not Relate Back.**

18      Furthermore, Plaintiff's theory of a relation back doctrine applying to his new motion is

19  unsupported. Plaintiff cites no authority to support the theory that a "renewed" motion can

20  bypass the jurisdictional requirements of section 2031.310(c) and relate back to a previously filed

21  motion. Nor is TWC aware of any authorities supporting such a theory. In similar circumstances,

22  courts have found that motions filed after a jurisdictional time limit has expired do not relate back

23  to previously filed motions. *Beresh v. Sovereign Life Ins. Co. of Cal.*, 92 Cal. App. 3d 547, 551-

24  555 (1979); *Northridge Fin. Corp. v. Hamblin*, 48 Cal. App. 3d 819, 824-26 (1975).

25      In *Northridge Financial*, defendants filed a motion under section 473 for relief from a

26  default judgment six days prior to the six-month jurisdictional time limit for such a motion.

27  *Northridge Financial Corp.*, 48 Cal. App. 3d at 821-822. The trial court denied defendants'

28  motion, and defendants promptly filed a "motion for reconsideration," which by then was twenty-

1   four days after the six month time limit for a motion under section 473. *Id.* at 822. The trial court

2   denied defendants' second motion on the grounds that it lacked jurisdiction to grant the motion

3   because it was filed after the six-month time limit. *Id.*

4        On appeal, *Northridge Financial* affirmed the trial court's denial of defendants' second

5   motion on jurisdictional grounds. Noting that there was no authority for a "motion for

6   reconsideration" the court considered the second motion as a renewal of defendants' previous

7   motion. *Id.* at 825. Because the "renewed" motion was filed after the six-month time limit for

8   bringing a motion under section 473, the court held the motion was properly denied on

9   jurisdictional grounds. *Id.* at 825-26 ("Since the second motion for relief was made after the

10  prescribed period had expired, the court was without jurisdiction to act."). Although plaintiff

11  argued that the trial court's ruling on the first motion came after the six-month time limit and,

12  thus, precluded him from filing a "renewed" motion within the six-month period, the *Northridge*

13  *Financial* court rejected the argument as "asking this court to extend the jurisdictional time period

14  of section 473, which is not within our province." *Id.* at 826; *see also Beresh*, 92 Cal. App. 3d at

15  554-55 (upholding denial of renewed motion on jurisdictional grounds for failure to file within

16  prescribed time period).

17       Plaintiff's current motion to compel has been filed after the jurisdictional time period for

18  bringing this motion has elapsed (by more than three months). As in *Northridge Financial*,

19  Plaintiff's motion cannot be considered to relate back to the previous motion, even if considered

20  as a renewed motion, because the prescribed 45-day time limit is jurisdictional. Moreover, unlike

21  *Northridge Financial*, Plaintiff's motion here cannot be considered a renewal of his previous

22  motion to compel because the two motions are entirely different. (*See supra*, Part III.B.1.a)

23       **2.     The Court's Denial of Plaintiff's Motion to Compel Compliance
                 "Without Prejudice" Does Not Extend the 45-day Filing Deadline.**

24

25       Plaintiff similarly suggests that the Court's denial of his earlier motion to compel

26  compliance "without prejudice" should be read somehow to extend the 45-day deadline. Plaintiff

27  cites no authority supporting this contention, because there is none. As mentioned above, the 45-

28  /////

DLA PIPER US LLP
  SAN DIEGO

TIME WARNER CABLE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL

EXHIBIT B    83

1  day limit is mandatory and jurisdictional. (*See supra*, Part III.B.I) Accordingly, Plaintiff's

2  Motion to Compel Further Responses must be denied.

3          **3.    Plaintiff's Collateral Attack on the Court's Previous Order is**

4                  **Improper.**

5          Plaintiff even uses his new motion to compel in order to collaterally attack the Court's

6  Order denying Plaintiff's previous motion. This attack on the Court's Order is untimely,

7  improper, and without merit. As in *Northridge Financial*, even if this Court were to entertain

8  Plaintiff's second bite at the apple, the Court is without jurisdiction to grant Plaintiff's motion due

9  to the 45-day prescribed time period for such motions. *Northridge Fin. Corp.*, 48 Cal. App. 3d at

10  826.

11          Additionally, Plaintiff has not brought this motion under California Code of Civil

12  Procedure § 1008, as is required if seeking reconsideration of a court order. Cal. Civ. Proc. Code

13  § 1008(e). Nor can Plaintiff's motion possibly be considered a motion for reconsideration where

14  he has failed to submit the required affidavit and failed to make the required showing for such a

15  motion. Cal. Civ. Proc. Code § 1008(b) ("[I]t shall be shown by affidavit what application was

16  made before, when and to what judge, what order or decisions were made, and what new or

17  different facts, circumstances, or law are claimed to be shown.").

18          Furthermore, Plaintiff's attempts to show error by the Court are misplaced. First, it should

19  be noted that the court took this issue under submission before rendering its Order. It has already

20  analyzed the relevant law and concluded that Plaintiff did not provide the requisite notice for his

21  earlier motion. Additionally, the cases cited by Plaintiff—none of which are new law that has

22  been published since the Court's previous ruling—state only that a court may overlook a defect in

23  the notice of motion where the notice requested the relief sought but simply failed to detail the

24  particular ground for the motion. *Carrasco v. Craft*, 164 Cal. App. 3d 796, 808 (1985); *Geary*

25  *Street, L.P. v. Sup. Ct.*, 219 Cal. App. 3d 1186, 1200 (1990). Further, the court in *Geary* stated

26  that it may overlook a defect in the notice of motion *only* if the accompanying papers and the

27  record support the particular ground for recovery that was overlooked by the notice papers.

28  *Geary Street, L.P. v. Sup. Ct.*, 219 Cal. App. 3d at 1200.

1    Here, Plaintiff's notice in the earlier motion did not request relief in the form of further

2    responses. As the Court found, Plaintiff's alleged relief sought and ground for recovery was

3    placed in a footnote in his Memorandum of Points and Authorities in Support of his Motion to

4    Compel Compliance, and hence failed to satisfy the notice requirement of notice as set forth by

5    California Civil Procedure Code section 1010 and California Rules of Court Rule 3.1110(a).

6    Plaintiff's scant reference to an alternative motion buried in a footnote within the moving papers

7    does not overcome the defects in Plaintiff's notice of motion and motion. Moreover, no mention

8    of Plaintiff's purported alternative motion was included in the separate statement accompanying

9    his motion. Thus, Plaintiff's attempt to justify the current motion by attacking the Court's earlier

10   Order fails.[3]

### IV.    PLAINTIFF'S REQUEST FOR SANCTIONS IS UNWARRANTED.

12   The Discovery Act provides that monetary sanctions shall be imposed against the losing

13   party and/or attorney on a motion to compel, except where the Court finds the losing party acted

14   with substantial justification. Cal. Civ. Proc. Code §§ 2031.310(d), 2031.320(b). Sanctions

15   against TWC are not proper here because, as explained above, Plaintiff's motion is untimely and

16   substantively without merit. TWC has acted with substantial justification in meeting and

17   conferring with Plaintiff's counsel and in attempting to resolve this discovery dispute.

18   Accordingly, sanctions are not warranted against TWC.[4] Cal. Civ. Proc. Code § 2023.030(a).

### V.    SANCTIONS SHOULD BE AWARDED AGAINST PLAINTIFF AND HIS COUNSEL FOR BRINGING THIS FRIVOLOUS MOTION.

21   Sanctions should, however, be awarded against Plaintiff and his counsel for the costs and

22   fees incurred by TWC in opposing this motion. Plaintiff's motion is clearly untimely and seeks

23   relief that the Court is without jurisdiction to grant. Nonetheless, Plaintiff filed and refused to

24   withdraw this frivolous motion. Plaintiff's tactics in bringing this motion are a misuse of the

---

[3] While Plaintiff's motion is improper and must be denied on jurisdictional grounds, TWC notes that the motion is also substantively without merit for the same reasons set forth in TWC's concurrently filed opposition to Plaintiff's motion to compel regarding TWC's interrogatory responses and TWC's motion for a protective order.

[4] Moreover, TWC disputes the amount of sanctions requested by Plaintiff, as a large portion of his moving papers appear to be copied and pasted verbatim from his earlier motion to compel compliance and concurrent motion to compel further responses regarding TWC's responses to Plaintiff's interrogatories.

1    discovery process and justify sanctions to compensate TWC for its costs and fees in defending

2    this motion.  Accordingly, TWC requests the Court award sanctions in favor of TWC and against

3    Plaintiff and his counsel, jointly and severally, in the amount of $3,208.50.  (Declaration of Jillian

4    L. Proctor ("Proctor Decl.") ¶ 2-3.)[5]

5    **VI.     CONCLUSION.**

6            For all the foregoing reasons, TWC respectfully requests that the Court deny Plaintiff's

7    motion to compel and request for sanctions.  TWC further requests that the Court award sanctions

8    against Plaintiff and his counsel, jointly and severally, in the amount of $3,208.50 to be paid to

9    TWC within fifteen days.

10   Dated: March 21, 2008

                                                   DLA PIPER US LLP

11

12

13   By _____
                                                   JEFFREY M. SHOHET
14                                                 JULIE L. HUSSEY
                                                   CARRIE S. DOLTON
15                                                 RYAN T. HANSEN
                                                   Attorneys for Defendant
16                                                 TIME WARNER ENTERTAINMENT-
                                                   ADVANCE/NEWHOUSE PARTNERSHIP, A
17                                                 NEW YORK GENERAL PARTNERSHIP,
                                                   THROUGH ITS SAN DIEGO DIVISION,
18                                                 DBA TIME WARNER CABLE

19

20

21

22

23

24

25

26

27   ---
     [5] "Declaration of Jillian L. Proctor" and "Proctor Decl." refers to the Declaration of Jillian L. Proctor in Opposition to
     Plaintiff's Renewed Motion to Compel Further Responses [Re: TWC's Responses to Plaintiff's Requests for
28   Production of Documents].

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    RYAN T. HANSEN (Bar No. 234329)
3   **DLA PIPER US LLP**
    401 B Street, Suite 1700
4   San Diego, CA 92101-4297
    Tel: 619.699.2700
5   Fax: 619.699.2701

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9

10                 SUPERIOR COURT OF CALIFORNIA

11                   COUNTY OF SAN DIEGO

12

13   LEON ALPERT, an individual, on behalf     CASE NO. GIC881621
    of himself, on behalf of all those similarly
14   situated, and on behalf of the general       **DEFENDANT TIME WARNER CABLE'S**
    public,                               **SEPARATE STATEMENT IN**
15                               **OPPOSITION TO PLAINTIFF'S**
              Plaintiffs,           **RENEWED MOTION TO COMPEL**
16                               **FURTHER RESPONSES TO REQUEST**
        v.                             **FOR PRODUCTION OF DOCUMENTS**
17
    TIME WARNER CABLE, INC., a
18   Delaware corporation, and DOES 1 TO     Date:       April 4, 2008
    100,                                 Time:       10:30 a.m.
19                                 Dept:       63
              Defendants.         Judge:     Hon. Luis R. Vargas
20
                                Complaint: March 13, 2007
21                               FAC:       May 16, 2007

22

23

24

25

26

27

28

SD\1786517.1

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B     87

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2  general partnership, through its San Diego Division, dba Time Warner Cable ("TWC"), sued

3  erroneously as Time Warner Cable, Inc., respectfully submits the following Separate Statement of

4  Items in Dispute in Opposition to Plaintiff's *Renewed* Motion to Compel Further Responses to

5  Plaintiff's Request for Production of Documents].

6  **REQUEST NO. ONE:**

7    Please produce all DOCUMENTS which depict pricing for all of YOUR products and

8  services, including any bundled packages, to RESIDENTS, (RESIDENTS is defined as

9  "occupants of properties during the time period from March 13, 2003 to March 13, 2007 that

10 were part of a homeowners' association (HOA) in California with whom YOU had entered into a

11 "Residential Bulk Services Agreement" to provide basic cable series to the HOA members.").

12 **RESPONSE TO REQUEST NO. ONE:**

13    TWC objects to this Request as vague, ambiguous, overbroad, unduly burdensome and

14 oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

15 The phrase "depict pricing" vaguely requests every document that refers to pricing. TWC objects

16 to the extent that this request seeks confidential trade secret information regarding negotiated

17 prices for bulk rate customers. Subject to, and without waiving the General and Specific

18 objections herein, and based on discovery and TWC's investigation to date, TWC further

19 responds as follows: TWC has performed a good faith effort to supply documents that identify a

20 price for TWC products and services, and TWC will produce rate cards and rate change letters.

21 **PLAINTIFF'S BASIS FOR COMPELLING RESPONSE TO REQUEST NO. ONE:**

22    TWC's response unambiguously indicates that TWC was acting in "good faith" to supply

23 documents" that "identify a price for TWC products and services." The response then states that

24 TWC will produce rate cards and rate change letters. But that is not all TWC has, as plaintiff

25 learned in the meet and confer process and as is this Court is now well aware. Rather, TWC is

26 intentionally withholding pricing documents that reflect pricing for consumers outside of the San

27 Diego and Desert Cities areas. Thus, either TWC's response is intentionally misleading or it is

28 intentionally incomplete.

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                                      -1-

TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

1    Moreover, the answering party is not, apparently, even the defendant in this case. The

2    defendant is "Time Warner Cable, Inc., a Delaware Corporation," whereas the responses state

3    they are from TWC "through its San Diego Division, dba Time Warner Cable *and no other*

4    *person or entity*." (Emphasis added; Exhibit C, p.3:20-22") That entity is not a party to this

5    litigation and is not named in the FAC. Thus, all of the responses are defective as they relate to

6    an entity that is not the defendant in this case.

7    Code of Civil Procedure section 2031.210 requires that a party to whom an inspection

8    demand has been directed respond with either a statement that the party will comply with the

9    particular demand for inspection and any related activities, a representation that the party lacks

10   the ability to comply with the demand for inspection of a particular item or category of item, or an

11   objection to the particular demand. Here, TWC indicated that it conducted a "good faith" effort

12   to identify responsive documents and then enumerates the responsive documents as "rate cards"

13   and "rate change letters." That is a representation that TWC will comply with the request for

14   production. There is no statement contained therein that TWC is withholding responsive

15   documents or even that such, documents exist. TWC has since admitted mat, despite this

16   concealment, it is, in fact, withholding responsive pricing documents for areas outside of the San

17   Diego and Desert Cities areas.

18   To the extent TWC is somehow hiding behind its objections, Code of Civil Procedure

19   section 2031.240 provides that if the responding party objects to the demand for inspection of an

20   item or category of item, the response shall do both of the following: (1) Identify with

21   particularity any document, tangible thing, or land felling within any category of item in the

22   demand to which an objection is being made. (2) Set forth clearly the extent of and the specific

23   ground for, the objection . . . In its deceptive response, TWC failed to "identify with particularity

24   any document . . . falling within any category of item in the demand to which an objection is

25   being made," TWC states only that rate cards and rate change letters are responsive when TWC

26   knows that is false.

27   The documents sought are relevant and necessary to establish the essential element of

28   commonality among class members that HOA pricing and so-called "retail" pricing differed

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                                           -2-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    89

1    during the class period. That is the core allegation of plaintiff s action. The documents are thus

2    relevant and necessary.

3         While refusing to produce these documents, TWC has moved for summary judgment.

4    Plaintiff cannot adequately oppose TWC's motion any more than plaintiff could go to trial

5    without these relevant documents. Though it is not essential to demonstrate "good cause," here

6    there is no practical or realistic alternative source for the information sought. *Associated Brewers*

7    *Dist Co. v. Superior Court* (1967) 65 Cal.2d 583, 588. The information contained in those

8    documents is highly relevant to these proceedings and most certainly contains information that is

9    either admissible against TWC in opposition to its MSJ, or certainly would lead to the discovery

10   of such information.

11        Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery

12   regarding any matter, not privileged, that is relevant to the subject matter involved in the pending

13   action or to the determination of any motion made in that action, if the matter either is itself

14   admissible in evidence or appears reasonably calculated to lead to the discovery of admissible

15   evidence." "The scope of discovery is very broad." *Tien v. Superior Court* (2006) 139

16   Cal.App.4th 528, 535. The "expansive scope of discovery" (*Emerson Electric Co. v. Superior*

17   *Court* (1997) 16 Cal.4th 1101,1108) is a deliberate attempt to "take the 'game' element out of

18   trial preparation" and to "do away 'with the sporting theory of litigation — namely, surprise at the

19   trial.'" *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.

20        This is B&P section 17200 case. As our Supreme Court has made plain, in proving an

21   unfair business practice violation, claimants are entitled to introduce evidence not only of

22   practices which affect them individually, but also similar practices involving other members of

23   the public who are not parties to the action. *Perdue v. Crocker National Bank* (1985) 38 Cal.3d

24   913, 929. TWC's attempt to limit discovery in this case is thus contrary to the "broad" scope of

25   discovery permitted under Code of Civil Procedure section 2017.010 and is contrary to the

26   expansive scope of discovery in both class actions and B&P section 17200 claims in particular.

27   /////

28   /////

DLA PIPER US LLP
San Diego

SD\1786517.1                         -3-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    90

1    **REASONS WHY NO FURTHER RESPONSE IS REQUIRED:**

2        This motion to compel was brought far outside the required time limit in which to bring a

3    motion to compel. Thus, as a matter of law, Plaintiff's motion must be denied and no further

4    responses are required. Whereas motions to compel must be filed within the mandatory and

5    jurisdictional deadline of 45 days from the date of the discovery response, Plaintiff filed this

6    motion 139 days after TWC provided the discovery response at issue. The law is clear that

7    Plaintiff's motion is untimely and must be denied.

8        Section 2031.310(c) states that "[u]nless notice of this motion is given within 45 days of

9    the service of the response, or any supplemental response, or on or before any specific later date

10   to which the demanding party and the responding party have agreed in writing, *the demanding*

11   *party waives any right to compel a further response to the inspection demand.*" Cal. Civ. Proc.

12   Code § 2031.310(c)(emphasis added). The 45-day time limit runs from the date the response is

13   served rather than the date set for production. *Standon Co. , Inc. v. Sup. Ct. (Kim)*, 225 Cal. App.

14   3d 898, 908 (1990). Additionally, the time limit is "mandatory and jurisdictional," and thus the

15   court does not have authority to grant a late motion. *Sexton v. Sup. Ct. (Mullikin Med. Ctr.)*, 58

16   Cal. App. 4th 1403, 1410 (1997) (holding that the 45-day time limit is jurisdictional and "render

17   the court without authority to rule on motions to compel other than to deny them"); *Prof'l Career*

18   *Colleges, Magna Institute, Inc. v. Superior Court*, 207 Cal. App. 3d 490, 492-93 (1989) (holding

19   the 45-day time limit is mandatory and jurisdictional).

20       Plaintiff propounded his Requests for Production of Document, Set One, on or about

21   September 17, 2007. (Declaration of Julie L. Hussey[1] ("Hussey Decl."), ¶ 2, Ex. A.) TWC

22   responded to Plaintiff's requests on or about October 23, 2007. (Hussey Decl. ¶ 3, Ex. B.) On or

23   about December 1, 2007, Plaintiff moved to compel compliance with TWC's responses. The

24   court heard Plaintiff's motion to compel compliance on February 22, 2008, took it under

25   submission, and issued its Order denying the motion on March 13, 2008 (the "Order"). Plaintiff

26   now brings this motion, styled as a motion to "renew" his earlier motion, by filing a *different*

27   ────────────────
     [1] "Declaration of Julie L. Hussey" and "Hussey Decl." refers to the Declaration of Julie L. Hussey in Opposition to
28   Plaintiff's Motion to Further Responses [Re: TWC's Responses to Plaintiff's Requests for Production of
     Documents].

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                                    -4-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    91

1   motion to compel *further responses* to his September 17, 2007 document requests. Plaintiff filed

2   the pending motion to compel further responses on March 10, 2008—139 days after TWC served

3   its responses to Plaintiff's requests for production. Thus, Plaintiff's motion is clearly untimely

4   and cannot be granted as a matter of law.

5          Plaintiff makes several desperate attempts in his moving papers to bypass the 45-day time

6   limit and justify his tardy motion. First, Plaintiff characterizes his new motion as a "renewed"

7   motion relating back to his previous motion to compel compliance. Plaintiff fails to explain how

8   his new motion (seeking further responses) can be considered a renewal of the previous motion

9   which was entirely different (seeking compliance with responses). As the Court pointed out in its

10  Order denying Plaintiff's previous motion, the previous motion was a "Motion to Compel

11  Compliance" brought under section 2031.320(a)—not a "Motion to Compel Further Responses"

12  under section 2031.310. In response to Plaintiff's attempts to characterize that motion as a

13  motion to compel further responses rather than a motion to compel compliance, the Court

14  explained that it "cannot grant different relief, or relief on different grounds, than stated in the

15  notice of motion," and thus "Plaintiff's motion fails as a Motion to Compel Compliance." (Order,

16  p. 1.) Plaintiff did not previously bring a motion to compel further responses. Accordingly,

17  Plaintiff cannot now "renew" a motion that he never brought in the first place.

18         Moreover, renewed motions are not exempt from the time limits established for such

19  motions. Plaintiff cannot confer jurisdiction on this Court to grant an untimely motion by

20  claiming some sort of "relation back" doctrine—for which he cites no authority. In fact, in

21  similar circumstances, courts have found that motions filed after a jurisdictional time limit has

22  expired do not relate back to previously filed motions. *Beresh v. Sovereign Life Ins. Co. of Cal.*,

23  92 Cal. App. 3d 547, 551-555 (1979); *Northridge Financial Corp. v. Hamblin*, 48 Cal. App. 3d

24  819, 824-826 (1975).

25         In *Northridge Financial*, for example, defendants filed a motion under section 473 for

26  relief from a default judgment six days prior to the six-month jurisdictional time limit for such a

27  motion. *Northridge Financial Corp.*, 48 Cal. App. 3d at 821-822. The trial court denied

28  defendants' motion, and defendants promptly filed a "motion for reconsideration," which by then

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                                    -5-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    92

1  was twenty-four days after the six month time limit for a motion under section 473. *Id.* at 822.

2  The trial court denied defendants' second motion on the grounds that it lacked jurisdiction to

3  grant the motion because it was filed after the six-month time limit. *Id.*

4      On appeal, *Northridge Financial* affirmed the trial court's denial of defendants' second

5  motion on jurisdictional grounds. Noting that there was no authority for a "motion for

6  reconsideration" the court considered the second motion as a renewal of defendants' previous

7  motion. *Id.* at 825. Because the "renewed" motion was filed after the six-month time limit for

8  bringing a motion under section 473, the court held the motion was properly denied on

9  jurisdictional grounds. *Id.* at 825-826 ("Since the second motion for relief was made after the

10  prescribed period had expired, the court was without jurisdiction to act."). Although plaintiff

11  argued that the trial court's ruling on the first motion came after the six-month time limit and,

12  thus, precluded him from filing a "renewed" motion within the six-month period, the *Northridge*

13  *Financial* court rejected the argument as "asking this court to extend the jurisdictional time period

14  of section 473, which is not within our province." *Id.* at 826; *see also Beresh*, 92 Cal. App. 3d at

15  554-555 (upholding denial of renewed motion on jurisdictional grounds for failure to file within

16  prescribed time period).

17      Plaintiff's current motion to compel has been filed after the jurisdictional time period for

18  bringing this motion has elapsed (by more than three months). As in *Northridge Financial*,

19  Plaintiff's motion cannot be considered to relate back to the previous motion, even if considered

20  as a renewed motion, because the prescribed 45-day time limit is jurisdictional. Moreover, unlike

21  *Northridge Financial*, Plaintiff's motion here cannot be considered a renewal of his previous

22  motion to compel because the two motions are entirely different.

23      Plaintiff similarly suggests that the Court's denial of his earlier motion to compel

24  compliance "without prejudice" should be read somehow to extend the 45-day deadline. Plaintiff

25  cites no authority supporting this contention, because there is none. As mentioned above, the 45-

26  day limit is mandatory and jurisdictional.

27      Plaintiff even goes so far as to use his moving papers to collaterally attack the Court's

28  ruling on his previous motion to compel. Plaintiff's attempt at showing error on the part of the

SD\1786517.1                                    -6-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

1    Court and implicitly requesting reconsideration is improper and misplaced.  Due to the

2    jurisdictional time line, Plaintiff's motion addressing the discovery requests at issue is untimely

3    regardless of how it is styled.  As in *Northridge Financial*, even if this Court were to entertain

4    Plaintiff's second bite at the apple, the Court is without jurisdiction to grant Plaintiff's motion due

5    to the 45-day prescribed time period for such motions.  *Northridge Fin. Corp.*, 48 Cal. App. 3d at

6    826.[2]

7        Furthermore, the Court did not err in its previous ruling denying Plaintiff's motion to

8    compel.  As a preliminary matter, it should be noted that the court took this issue under

9    submission before rendering its Order.  It has already analyzed the relevant law and concluded

10   that Plaintiff did not provide the requisite notice for his earlier motion.  Additionally, the cases

11   cited by Plaintiff—none of which are new law that has been published since the Court's previous

12   ruling—state only that a court may overlook a defect in the notice of motion where the notice

13   requested the relief sought but simply failed to detail the particular ground for the motion.

14   *Carrasco v. Craft*, 164 Cal. App. 3d 796, 808 (1985); *Geary Street, L.P. v. Superior Court*, 219

15   Cal. App. 3d 1186, 1200 (1990).  Further, the court in *Geary* stated that it may overlook a defect

16   in the notice of motion *only* if the accompanying papers and the record support the particular

17   ground for recovery that was overlooked by the notice papers.  *Geary Street, L.P. v. Superior*

18   *Court*, 219 Cal. App. 3d at 1200.

19       Here, Plaintiff's notice in the earlier motion did not request relief in the form of further

20   responses.  As the Court found, Plaintiff's alleged relief sought and ground for recovery was

21   placed in a footnote in his Memorandum of Points and Authorities in Support of his Motion to

22   Compel Compliance, and hence failed to satisfy the notice requirement of notice as set forth by

23   CCP § 1010 and California Rules of Court Rule 3.1110(a).  Plaintiff's scant reference to an

24   alternative motion buried in a footnote within the moving papers does not overcome the defects in

---

25   [2]  Additionally, Plaintiff has not brought this motion under California Code of Civil Procedure § 1008, as is required
26   if seeking reconsideration of a court order. Cal. Civ. Proc. Code § 1008(e).  Nor can Plaintiff's motion possibly be
     considered a motion for reconsideration where he has failed to submit the required affidavit and failed to make the
27   required showing for such a motion. Cal. Civ. Proc. Code § 1008(b) ("[I]t shall be shown by affidavit what
     application was made before, when and to what judge, what order or decisions were made, and what new or different
28   facts, circumstances, or law are claimed to be shown.").

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                    -7-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    94

1   Plaintiff's notice of motion and motion. Moreover, no mention of Plaintiff's purported alternative

2   motion was included in the separate statement accompanying his motion. Thus, Plaintiff's

3   attempt to justify the current motion by attacking the Court's earlier Order fails.

4          Finally, with respect to Plaintiff's argument that "Time Warner Cable, Inc., a Delaware

5   Corporation" is the defendant in this case and should have answered the discovery requests

6   instead of TWC, it should be noted that TWC pointed out at the commencement of this litigation

7   that Plaintiff's naming of Time Warner Cable, Inc. was in error. Time Warner Cable, Inc. is not

8   the entity that owns and operates the cable business in San Diego. Rather than demurrer to

9   Plaintiff's pleadings due to his error in identifying the correct corporate entity, TWC answered

10  Plaintiff's amended complaint with the explanation that it had been "erroneously sued as Time

11  Warner Cable, Inc." Plaintiff made no objection, nor has Plaintiff at anytime in this litigation

12  objected to TWC's involvement in this litigation as the defendant erroneously sued as "Time

13  Warner Cable, Inc." If Plaintiff wishes to proceed against Time Warner Cable, Inc. and not

14  TWC, TWC requests a dismissal with prejudice from this lawsuit. Furthermore, Plaintiff's

15  motion should be denied, as Time Warner Cable, Inc. has not been served with Plaintiff's

16  operative complaint, nor has it entered an appearance in this case.

17  Dated: March 21 , 2008

18                                        DLA PIPER US LLP

19
                              By _____
20                               JEFFREY M. SHOHET
21                               JULIE L. HUSSEY
                                 CARRIE S. DOLTON
22                               RYAN T. HANSEN
                                 Attorneys for Defendant
23                               TIME WARNER ENTERTAINMENT-
                                 ADVANCE/NEWHOUSE PARTNERSHIP, A
24                               NEW YORK GENERAL PARTNERSHIP,
                                 THROUGH ITS SAN DIEGO DIVISION,
25                               DBA TIME WARNER CABLE

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1786517.1                                    -8-
TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S *RENEWED* MOTION TO
COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS

EXHIBIT B    95

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   **DLA PIPER US LLP**
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel: 619.699.2700
   Fax: 619.699.2701

5

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9

10                 SUPERIOR COURT OF CALIFORNIA

11                    COUNTY OF SAN DIEGO

12

13  LEON ALPERT, an individual, on behalf    CASE NO.  GIC881621
    of himself, on behalf of all those similarly
14  situated, and on behalf of the general    **DECLARATION OF JULIE L. HUSSEY IN**
    public,                                   **OPPOSITION TO PLAINTIFF'S**
15                                            **RENEWED MOTION TO COMPEL**
              Plaintiffs,                     **FURTHER RESPONSES [RE: TIME**
16                                            **WARNER CABLE'S RESPONSES TO**
         v.                                   **PLAINTIFF'S REQUESTS FOR**
17                                            **PRODUCTION OF DOCUMENTS]**
    TIME WARNER CABLE, INC., a
18  Delaware corporation, and DOES 1 TO      Date:      April 4, 2008
    100,                                     Time:      10:30 a.m.
19                                           Dept:      63
              Defendants.                    Judge:     Luis R. Vargas
20
                                             Complaint: March 13, 2007
21                                           FAC:       May 16, 2007

22

23

24

25

26

27

28

DLA PIPER US LLP
San Diego

SD\1786564.1

DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO RENEWED MOTION TO COMPEL

EXHIBIT B     96

1    I, Julie L. Hussey, declare and state as follows:

2        1.    I am an attorney duly admitted to practice law in the State of California, and

3 admitted to appear before this Court. I am a partner with the law firm of DLA Piper US LLP,

4 attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

5 New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC")

6 in the above-captioned action. I have personal knowledge of the facts set forth herein and, if

7 called to testify, I could and would testify competently thereto.

8        2.    Attached hereto as Exhibit A is a true and correct copy of Plaintiff's Requests for

9 Production of Documents, Set One, that were served on TWC on or about September 17, 2007.

10        3.    Attached hereto as Exhibit B is a true and correct copy of TWC's responses to

11 Plaintiff's Requests for Production of Document, Set One, served on Plaintiff on or about October

12 23, 2007.

13    I declare under penalty of perjury under the laws of the State of California and the United

14 States of America that the foregoing is true and correct and that this declaration was executed on

15 March 20, 2008, in San Diego, California.

16

17                             Julie L. Hussey

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO RENEWED MOTION TO COMPEL

EXHIBIT B    97

**EXHIBIT A**

EXHIBIT B    9 8

1  **BARRON E. RAMOS**
   Attorney at Law, A Professional Corporation
2  Barron E. Ramos (State Bar No. 179620)
   132 N. El Camino Real, # 303
3  Encinitas, California 92024
   Phone (858) 349-6019
4  Fax (760) 994-1354

5  **CLARK & MARKHAM**
   David R. Markham (State Bar No. 071814)
6  R. Craig Clark (State Bar No. 129219)
   James M. Treglio (State Bar No. 228077)
7  401 West "A" Street, Suite 2200
   San Diego, CA 92101
8  Telephone: (619) 239-1321
   Facsimile: (619) 239-5888

9
   Attorneys for plaintiff and the Class
10
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
11
                            COUNTY OF SAN DIEGO
12
   LEON ALPERT, an individual,            ) Case No. GIC 881621
13 on behalf of himself, on behalf of all those)
   similarly situated, and on behalf of the general) **CLASS ACTION**
14 public,                                  )
                                            ) **PLAINTIFF'S REQUEST FOR**
15         Plaintiffs,                      ) **PRODUCTION OF DOCUMENTS,**
                                            ) **SET NO. ONE (1)**
   v.                                       )
16                                          )
   TIME WARNER CABLE, INC., a Delaware )
17 corporation, and DOES 1 TO 100,         ) Dept: 63
                                            ) Judge: Hon. Luis R. Vargas
18         Defendants.                      )
                                            ) Trial Date: None Set
19                                          ) Case Filed: March 13, 2007
                                            )
20                                          )
                                            )
21                                          )
                                            )
22                                          )
23
24
25 PROPOUNDING PARTY:                       PLAINTIFF LEON ALPERT

26 RESPONDING PARTY:                        TIME WARNER CABLE, INC.

27 NO:                                      ONE

28                                   1
   ────────────────────────────────────────────────

1    **PLEASE TAKE NOTICE** that on or before October 25, at 10:00 a.m. in the Law Offices

2    of BARRON E. RAMOS, Attorney at Law, A Professional Corporation, 132 N. El Camino Real,

3    # 303, Encinitas, California 92024, plaintiff Chadwick Bowen will require defendant TIME

4    WARNER CABLE, INC., to produce for inspection and copying the following pursuant to

5    California Code of Civil Procedure Section 2031.010 to wit:

6    Definitions:

7        A.    The term "DOCUMENT" or "DOCUMENTS" shall include any "writing" as

8    defined in California Evidence Code section 250, whether printed, recorded, filmed or reproduced

9    by any other mechanical or electrical process, or written or produced by hand, and whether or not

10    claimed to be privileged against discovery on any ground, and including all originals, masters, and

11    non-identical copies.

12        B.    The term "YOU" or "YOUR" shall refer to TIME WARNER CABLE, INC., all

13    affiliated entities of TIME WARNER CABLE, INC., including its parent company, if any, and all

14    subsidiaries of such parent, the employees, agents, officers, directors and representatives of all of

15    these entities, and all other persons or entities acting on behalf or under the control of these entities.

16        C.    The term RESIDENT shall refer to occupants of properties during the time period

17    from March 13, 2003 to March 13, 2007 that were part of a homeowners' association (HOA) in

18    California with whom YOU had entered into a "Residential Bulk Services Agreement" to provide

19    basic cable services to the HOA members.

20        D.    The term RETAIL CUSTOMER shall refer to California consumers to whom YOU

21    provided products and services during the time period from March 13, 2003 to March 13, 2007,

22    other than RESIDENTS.

23    **REQUEST NUMBER ONE:**

24    Please produce all DOCUMENTS which depict pricing for all of YOUR products and

25    services, including any bundled service packages, to RESIDENTS.

26    **REQUEST NUMBER TWO:**

27    Please produce all DOCUMENTS which depict pricing for all of YOUR products and

28

<div align="center">2</div>

<div align="center">EXHIBIT B     100</div>

1  services, including any bundled service packages, to RETAIL CUSTOMERS.

2  **REQUEST NUMBER THREE:**

3  Please produce all DOCUMENTS which depict all communications with plaintiff Leon

4  Alpert at any time, including, but not limited to, transcripts of telephone conversations,

5  correspondence to and from Mr. Alpert, e-mail communications to and from Mr. Alpert, and any

6  other form in which YOU maintain such communications (e.g., audio recordings).

7  **REQUEST NUMBER FOUR:**

8  Please produce a copy of any scripts used by YOUR employees when dealing with

9  RESIDENTS that call to complain about their bill.

10  **REQUEST NUMBER FIVE:**

11  Please produce a copy of any scripts used by YOUR employees when dealing with

12  RETAIL CUSTOMERS that call to complaint about their bill.

13  **REQUEST NUMBER SIX:**

14  Please produce a copy of all web pages YOU posted during the time period from March 13,

15  2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any

16  bundled service packages, to RESIDENTS.

17  **REQUEST NUMBER SEVEN:**

18  Please produce a copy of all web pages YOU posted during the time period from March 13,

19  2003 to March 13, 2007 which depict pricing for all of YOUR products and services, including any

20  bundled service packages, to RETAIL CUSTOMERS.

21  **REQUEST NUMBER EIGHT:**

22  Please produce a copy of all DOCUMENTS which explain why RESIDENTS and RETAIL

23  CUSTOMERS are charged differing rates for YOUR products and services.

24  **REQUEST NUMBER NINE:**

25  Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees that

26  handle incoming customer calls determine whether the customer that is calling is a RESIDENT or

27  a RETAIL CUSTOMER.

28

<center>3</center>

**REQUEST NUMBER TEN:**

Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees determine whether to charge a customer purchasing products or services as a RESIDENT customer or a RETAIL CUSTOMER.

**REQUEST NUMBER ELEVEN:**

Please produce a copy of YOUR policies and procedures when dealing with RESIDENTS that request a refund for being overcharged for products and services provided by YOU.

**REQUEST NUMBER TWELVE:**

Please produce a copy of YOUR policies and procedures when dealing with RETAIL CUSTOMERS that request a refund for being overcharged for products and services provided by YOU.

DATED: September 17, 2007

By: _____
Barron E. Ramos
Attorneys for Plaintiff and the Class

4

PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS,
SET NO. ONE (1)

EXHIBIT B        1 02

1

<u>**PROOF OF SERVICE**</u>

2

I am employed in the County of San Diego, California. I am over the age of 18 years and

3

not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas,

4

California 92024.

5

On September 17, 2007, I served the following documents:

6

**REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. ONE**

7

on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

8

follows:

9

10
Jeffrey M. Shohet
Julie L. Hussey

*Attorneys for Time Warner Entertainment-*
*Advance NewHouse Partnership, A New York*

11
Carrie S. Dolton
**DLA PIPER US LLP**

*General Partnership, Through its San Diego*
*Division d.b.a. Time Warner Cable*

12
401 B Street, Suite 1700
San Diego, CA 92101-4297

13
Facsimile: (619) 699-2701

14

15
X    (BY MAIL) I placed each such sealed envelope, with postage thereon fully prepaid for first-
class mail, for collection and mailing at 132 N. El Camino Real, # 303, Encinitas, California

16
92024, following ordinary business practices. I am familiar with the practice of collection
and processing of correspondence, said practice being that in the ordinary course of business,

17
correspondence is deposited in the United States Postal service the same day as it is placed
for collection.

18

19
(BY FACSIMILE) I transmitted the above-listed document to the party listed above via
facsimile. The transmission was reported complete and without error. The telephone number

20
of the facsimile machine I used was (858) 720-0752.

21

I declare under penalty of perjury under the laws of the State of California that the

22

foregoing is true and correct.

23

Executed at Encinitas, California on September 17, 2007.

24

25

26
Barron E. Ramos

27

28

1

CASE NO. GIC 881621
PROOF OF SERVICE

# EXHIBIT B

EXHIBIT B    104

1   JEFFREY M. SHOHET (Bar No. 067529)
    JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
    **DLA PIPER US LLP**
3   401 B Street, Suite 1700
    San Diego, CA  92101-4297
4   Tel:  619.699.2700
    Fax:  619.699.2701
5

6   Attorneys for Defendant
    TIME WARNER ENTERTAINMENT-ADVANCE/
7   NEWHOUSE PARTNERSHIP, A NEW YORK
    GENERAL PARTNERSHIP, THROUGH ITS SAN
8   DIEGO DIVISION, DBA TIME WARNER CABLE

9
                    SUPERIOR COURT OF CALIFORNIA
10
                       COUNTY OF SAN DIEGO
11

12
    LEON ALPERT, an individual, on behalf        CASE NO.  GIC881621
13  of himself, on behalf of all those similarly
    situated, and on behalf of the general       **DEFENDANT TIME WARNER**
14  public,                                      **ENTERTAINMENT-ADVANCE/**
                                                 **NEWHOUSE PARTNERSHIP, THROUGH**
15            Plaintiffs,                        **ITS SAN DIEGO DIVISION, DBA TIME**
                                                 **WARNER CABLE'S RESPONSES TO**
16      v.                                       **PLAINTIFF'S REQUEST FOR**
                                                 **PRODUCTION OF DOCUMENTS, SET**
17  TIME WARNER CABLE, INC., a                   **NO. ONE (1)**
    Delaware corporation, and DOES 1 TO
18  100,                                         Dept:·     63
                                                 Judge:     Luis R. Vargas
19            Defendants.
                                                 Complaint:  March 13, 2007
20                                               FAC:        May 16, 2007

21

22

23  PROPOUNDING PARTY:        **Plaintiff LEON ALPERT**

24  RESPONDING PARTY:         **Defendant TIME WARNER CABLE**

25  SET NO:                   **ONE**

26          Pursuant to Code of Civil Procedure section 2031.010, *et seq.*, Defendant Time Warner

27  Entertainment-Advance/Newhouse Partnership, a New York general partnership, through its San

28  Diego Division, dba Time Warner Cable ("TWC"), sued erroneously as Time Warner Cable, Inc.,

                                            -1-
DLA PIPER US LLP
San Diego

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT B    1 0 5

1  responds to plaintiff Leon Alpert's ("Plaintiff") first set of request for production of documents

2  ("Requests") as follows:

3  **PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

4      TWC has not completed investigation of this case, has not completed discovery, and has

5  not completed preparation for trial.  All of the responses contained herein are based only on such

6  information that is presently available to and specifically known to TWC.  It is anticipated that

7  further discovery, independent investigation, legal research and analysis will supply additional

8  facts, add additional meaning to the known facts, as well as establish entirely new factual

9  conclusions and legal contentions, all of which may lead to substantial additions to, changes in,

10  and variations from the responses herein set forth.

11      The following written responses are given without prejudice to TWC's right to produce

12  evidence of any subsequently discovered fact or facts that TWC may later develop.  The

13  responses contained herein are made in a good faith effort to supply as much factual information

14  as is presently known, but should in no way lead to the prejudice of TWC in relation to further

15  discovery, research or analysis.  TWC will produce responsive documents reflective of the time

16  period identified in Plaintiff's Requests, including March 13, 2003 until March 13, 2007.

17      In providing responses to the demands, TWC does not in any manner waive or intend to

18  waive, but rather intends to preserve and is preserving:

19      (1) All objections as to competency, relevancy, materiality and admissibility of the

20  requested documents or the subject matter thereof;

21      (2) All rights to object to the use of any documents produced, or the subject matter

22  thereof, in any subsequent proceedings; and

23      (3) All rights to object on any ground to any request for further responses to these or any

24  other demands for documents or other discovery demands involving or related to the subject

25  matter of the demands.

26  /////

27  /////

28  /////

DLA Piper US LLP
San Diego

-2-

GT6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

**EXHIBIT B    106**

**A.     General Objections.**

1

2     TWC objects to the demands to the extent they seek discovery of matters that constitute or

3   reflect work product of attorneys, material prepared in anticipation of litigation, attorney-client

4   communications or are protected by privileges provided for under applicable state or federal law.

5     TWC also objects to this request to the extent that it seeks TWC's trade secret or

6   confidential and/or commercially sensitive business information without a protective order in

7   place.

8     TWC further objects to the location of the production and will produce documents in a

9   mutually agreeable manner, time and place.

10     TWC incorporates by reference each and every general objection set forth above into each

11   and every specific response.  By responding that documents will be produced, TWC does not

12   represent that such documents exist; rather, only that a reasonable good faith search for such

13   documents will be made and, to the extent that such documents do exist, those documents will be

14   produced subject to the objections stated.

15     **B.     Objections to Plaintiff's Defined Terms.**

16     TWC objects to Plaintiff's purported definition of the terms "YOU," and "YOUR" to the

17   extent that it renders each request including these terms to be vague and ambiguous, as well as

18   overly broad.  The definition is so overbroad that it appears to call for information from literally

19   hundreds of different corporate entities and their privileged communications with their counsel.

20   TWC shall construe the terms "YOU," and "YOUR," when used in the Requests, to mean Time

21   Warner Entertainment-Advance/Newhouse Partnership, a New York general partnership, through

22   its San Diego Division, dba Time Warner Cable and no other person or entity.

23     TWC objects to Plaintiff's definition of the term "RESIDENT" to the extent that it renders

24   each request including this term to be vague and ambiguous, as well as overly broad.

25     TWC objects to Plaintiff's definition of the term "RETAIL CUSTOMER" to the extent

26   that it renders each request including this term to be vague and ambiguous, as well as overly

27   broad.  Among other things, Plaintiff's definition is further flawed by the inclusion of the term

28   "consumers."  TWC provides products and services to millions of individuals, residential

-3-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

**EXHIBIT B     107**

1  properties, and business entities across the United States. Plaintiff has only brought a claim

2  purportedly on behalf of himself and on behalf of all California TWC subscribers: (1) who were

3  members of HOAs and/or tenants of such members; (2) where the subscriber's HOA had

4  contracted with TWC for basic cable services; and (3) where the subscriber purchased additional

5  cable and cable related services directly from TWC but allegedly was not provided a credit for the

6  basic cable services provided through the subscriber's HOA. Therefore, the inclusion of

7  "consumers" in the definition renders each request which includes the defined term "RETAIL

8  CUSTOMER" overbroad, beyond the scope of permissible discovery, unduly burdensome and

9  harassing. TWC shall construe the term "RETAIL CUSTOMER" when used in the Requests, to

10  mean TWC San Diego division subscribers of TWC products and services, other than bulk

11  subscribers or business subscribers.

12      These preliminary objections are hereby incorporated into each and every objection to the

13  Requests set forth below. Subject to the limitations and objections set forth above, TWC

14  responds to the Requests as follows:

15                          **REQUESTS FOR PRODUCTION**

16  REQUEST FOR PRODUCTION NO. 1:

17      Please produce all DOCUMENTS which depict pricing for all of YOUR products and

18  services, including any bundled service packages, to RESIDENTS.

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

20      TWC objects to this Request as vague, ambiguous, overbroad, unduly burdensome and

21  oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

22  The phrase "depict pricing" vaguely requests *every* document that refers to pricing. TWC objects

23  to the extent that this request seeks confidential trade secret information regarding negotiated

24  prices for bulk rate customers. Subject to, and without waiving the General and Specific

25  Objections herein, and based on discovery and TWC's investigation to date, TWC further

26  responds as follows: TWC has performed a good faith effort to supply documents that identify a

27  price for TWC products and services, and TWC will produce rate cards and rate change letters.

28  /////

-4-

DLA PIPER US LLP
San Diego

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT B     108

1  REQUEST FOR PRODUCTION No. 2:

2      Please produce all DOCUMENTS which depict pricing for all of YOUR products and

3  services, including any bundled service packages, to RETAIL CUSTOMERS.

4  RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

5      TWC objects to this Request as vague, ambiguous, overbroad, unduly burdensome and

6  oppressive, and is not reasonably calculated to lead to the discovery of admissible information.

7  The phrase "depict pricing" vaguely requests *every* document that refer to pricing.  TWC objects

8  to the extent that this request seeks confidential trade secret information regarding negotiated

9  prices for bulk rate customers.  Subject to, and without waiving the General and Specific

10  Objections herein, and based on discovery and TWC's investigation to date, TWC further

11  responds as follows:  TWC has performed a good faith effort to supply documents that identify a

12  price for TWC products and services, and TWC will produce rate cards, rate estimates, rate letters

13  and bill notification messages.

14  REQUEST FOR PRODUCTION NO. 3:

15      Please produce all DOCUMENTS which depict all communications with plaintiff Leon

16  Alpert at any time, including, but not limited to, transcripts of telephone conversations,

17  correspondence to and from Mr. Alpert, e-mail communications to and from Mr. Alpert, and any

18  other form in which YOU maintain such communications (e.g., audio recordings).

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

20      Subject to, and without waiving the General and Specific Objections herein, and based on

21  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

22  all non-privileged documents in its possession, custody or control which it can located and

23  identify as responsive to this request.

24  REQUEST FOR PRODUCTION NO. 4:

25      Please produce a copy of any scripts used by YOUR employees when dealing with

26  RESIDENTS that call to complain about their bill.

27  /////

28  /////

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1   RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

2        Subject to, and without waiving the General and Specific Objections herein, and based on

3   discovery and TWC's investigation to date, TWC further responds as follows:  TWC has

4   performed a good faith effort to supply responsive documents to Plaintiff's requests for

5   production of documents and has not yet identified any documents in its possession, custody or

6   control which it can identify as being responsive to this request.

7   REQUEST FOR PRODUCTION NO. 5:

8        Please produce a copy of any scripts used by YOUR employees when dealing with

9   RETAIL CUSTOMERS that call to complain about their bill.

10  RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

11       Subject to, and without waiving the General and Specific Objections herein, and based on

12  discovery and TWC's investigation to date, TWC further responds as follows:  TWC has

13  performed a good faith effort to supply responsive documents to Plaintiff's requests for

14  production of documents and has not yet identified any documents in its possession, custody or

15  control which it can identify as being responsive to this request.

16  REQUEST FOR PRODUCTION NO. 6:

17       Please produce a copy of all web pages YOU posted during the time period from

18  March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services,

19  including any bundled service packages, to RESIDENTS.

20  RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

21       TWC objects to this request as overbroad, unduly burdensome , and not reasonably

22  calculated to lead to the discovery of admissible evidence.  TWC does not archive its web pages

23  and overwrites them with updated web pages at the time of update.  Subject to, and without

24  waiving the General and Specific Objections herein, and based on discovery and TWC's

25  investigation to date, TWC further responds as follows:  TWC has performed a good faith effort

26  to supply responsive documents to Plaintiff's requests for production of documents and has not

27  yet identified any documents in its possession, custody or control which it can identify as being

28  responsive to this request.

-6-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT B     110

1    REQUEST FOR PRODUCTION NO. 7:

2         Please produce a copy of all web pages YOU posted during the time period from

3    March 13, 2003 to March 13, 2007 which depict pricing for all of YOUR products and services,

4    including any bundled service packages, to RETAIL CUSTOMERS.

5    RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

6         TWC objects to this request as overbroad, unduly burdensome , and not reasonably

7    calculated to lead to the discovery of admissible evidence.  TWC does not archive its web pages

8    and overwrites them with updated web pages at the time of update.  Subject to, and without

9    waiving the General and Specific Objections herein, and based on discovery and TWC's

10   investigation to date, TWC further responds as follows:  TWC has performed a good faith effort

11   to supply responsive documents to Plaintiff's requests for production of documents and has not

12   yet identified any documents in its possession, custody or control which it can identify as being

13   responsive to this request.

14   REQUEST FOR PRODUCTION NO. 8:

15        Please produce a copy of all DOCUMENTS which explain why RESIDENTS and

16   RETAIL CUSTOMERS are charged differing rates for YOUR products and services.

17   RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

18        TWC objects to this request as vague, ambiguous, seeking confidential trade secret

19   information and argumentative.  TWC also objects to this request as overly burdensome to

20   produce each HOA agreement.  Some RESIDENTS are also charged less than other RESIDENTS

21   *and* RETAIL CUSTOMERS for basic and additional cable services as specifically negotiated by

22   their HOAs.  Subject to, and without waiving the General and Specific Objections herein, and

23   based on discovery and TWC's investigation to date, TWC further responds as follows:  TWC

24   has performed a good faith effort to supply responsive documents to Plaintiff's requests for

25   production of documents and has not yet identified any documents in its possession, custody or

26   control which it can identify as being responsive to this request.

27   /////

28   /////

DLA PIPER US LLP
San Diego

-7-

1  REQUEST FOR PRODUCTION NO. 9:

2      Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees

3  that handle incoming customer calls determine whether the customer that is calling is a

4  RESIDENT or a RETAIL CUSTOMER.

5  RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

6      TWC objects to this request as overbroad, unduly burdensome , seeking confidential

7  information, and not reasonably calculated to lead to the discovery of admissible evidence.

8  Subject to, and without waiving the General and Specific Objections herein, and based on

9  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

10  all non-privileged documents in its possession, custody or control which it can identify as being

11  responsive to this request, including documents that indicate the screen viewed by TWC

12  employees that is used to determine whether the customer is a RESIDENT or a RETAIL

13  customer.  Because of consumer confidentiality, only Plaintiff's record indicating such will be

14  produced.

15  REQUEST FOR PRODUCTION NO. 10:

16      Please produce a copy of all DOCUMENTS which demonstrate how YOUR employees

17  determine whether to charge a customer purchasing products or services as a RESIDENT

18  customer or a RETAIL CUSTOMER.

19  RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

20      TWC objects to this request as overbroad, unduly burdensome, seeking confidential

21  information, and not reasonably calculated to lead to the discovery of admissible evidence.

22  Subject to, and without waiving the General and Specific Objections herein, and based on

23  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

24  all non-privileged documents in its possession, custody or control which it can identify as being

25  responsive to this request, including documents that indicate the screen viewed by TWC

26  employees that is used to determine whether the customer is a RESIDENT or a RETAIL

27  customer.  Because of consumer confidentiality, only Plaintiff's record indicating such will be

28  produced.

-8-

DLA PIPER US LLP
SAN DIEGO

GT6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT B    112

1  <u>REQUEST FOR PRODUCTION NO. 11</u>:

2      Please produce a copy of YOUR policies and procedures when dealing with RESIDENTS

3  that request a refund for being overcharged for products and services provided by YOU.

4  <u>RESPONSE TO REQUEST FOR PRODUCTION NO. 11</u>:

5      Subject to, and without waiving the General and Specific Objections herein, and based on

6  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

7  all non-privileged documents in its possession, custody or control which it can identify as being

8  responsive to this request.

9  <u>REQUEST FOR PRODUCTION NO. 12</u>:

10      Please produce a copy of YOUR policies and procedures when dealing with RETAIL

11  CUSTOMERS that request a refund for being overcharged for products and services provided by

12  YOU.

13  <u>RESPONSE TO REQUEST FOR PRODUCTION No. 12</u>:

14      Subject to, and without waiving the General and Specific Objections herein, and based on

15  discovery and TWC's investigation to date, TWC further responds as follows:  TWC will produce

16  all non-privileged documents in its possession, custody or control which it can identify as being

17  responsive to this request, at a mutually convenient date and time.

18  Dated: October 23, 2007

19                                      DLA PIPER US LLP

20

21                              By

22                                      JEFFREY M. SHOHET
                                        JULIE L. HUSSEY
23                                      CARRIE S. DOLTON
                                        Attorneys for Defendant
24                                      TIME WARNER ENTERTAINMENT-
                                        ADVANCE/NEWHOUSE PARTNERSHIP, A
25                                      NEW YORK GENERAL PARTNERSHIP,
                                        THROUGH ITS SAN DIEGO DIVISION,
26                                      DBA TIME WARNER CABLE

27

28
                                        -9-
DLA PIPER US LLP
  San Diego
        GT\6546327.1              DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
        325566-11                FOR PRODUCTION OF DOCUMENTS, SET ONE

EXHIBIT B    113

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On October 23, 2007, I served the within document(s):

**TIME WARNER ENTERTAINMENT-ADVANCE/ NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL PARTNERSHIP, THROUGH ITS SAN DIEGO DIVISION, DBA TIME WARNER CABLE'S NOTICE OF DEPOSITION OF PLAINTIFF LEON ALPERT**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐    by placing a sealed envelope or package designated by UPS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in the ordinary course of business, to each addressee as set forth below.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth below.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

**Attorneys for Plaintiff**

Barron E. Ramos, Esq.              David R. Markham, Esq.
132 N El Camino Real, Ste 303      Clark & Markham
Encinitas CA  92024               401 West A St, Ste 2200
(858) 349-6019                    San Diego CA  92101
(760) 994-1354 (fax)              (619) 239-1321
                                  (619) 239-5888 (fax)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on October 23, 2007, at San Diego, California.

_____
Eloy Rodriguez

-10-

DLA PIPER US LLP
SAN DIEGO

GT\6546327.1
325566-11

DEFENDANT TWC'S RESPONSES TO PLAINTIFF'S REQUEST
FOR PRODUCTION OF DOCUMENTS, SET ONE

1   JEFFREY M. SHOHET (Bar No. 067529)
     JULIE L. HUSSEY (Bar No. 237711)
2   CARRIE S. DOLTON (Bar No. 234298)
     RYAN T. HANSEN (Bar No. 234329)
3   **DLA PIPER US LLP**
     401 B Street, Suite 1700
4   San Diego, CA 92101-4297
     Tel: 619.699.2700
5   Fax: 619.699.2701

6

7   Attorneys for Defendant
     TIME WARNER ENTERTAINMENT-ADVANCE/
     NEWHOUSE PARTNERSHIP, A NEW YORK
8   GENERAL PARTNERSHIP, THROUGH ITS SAN
     DIEGO DIVISION, DBA TIME WARNER CABLE

9

10               SUPERIOR COURT OF CALIFORNIA

11                COUNTY OF SAN DIEGO

12

13   LEON ALPERT, an individual, on behalf     CASE NO. GIC881621
     of himself, on behalf of all those similarly
14   situated, and on behalf of the general     **DECLARATION OF JILLIAN L.**
     public,     **PROCTOR IN OPPOSITION TO**
15                        **PLAINTIFF'S RENEWED MOTION TO**
             Plaintiffs,     **COMPEL FURTHER RESPONSES [RE:**
16                        **TIME WARNER CABLE'S RESPONSES**
         v.     **TO PLAINTIFF'S REQUESTS FOR**
17                        **PRODUCTION OF DOCUMENTS]**
     TIME WARNER CABLE, INC., a
18   Delaware corporation, and DOES 1 TO
     100,     Date:     April 4, 2008
19                        Time:     10:30 a.m.
              Defendants.     Dept:     63
20                        Judge:     Luis R. Vargas

21                        Complaint: March 13, 2007
                        FAC:      May 16, 2007

22

23

24

25

26

27

28

1       I, Jillian L. Proctor, declare and state as follows:

2       1.    I am an attorney duly admitted to practice law in the State of California, and

3   admitted to appear before this Court. I am an associate with the law firm of DLA Piper US LLP,

4   attorneys of record for Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a

5   New York general partnership, through its San Diego Division, dba Time Warner Cable ("TWC")

6   in the above-captioned action. I have personal knowledge of the facts set forth herein and, if

7   called to testify, I could and would testify competently thereto.

8       1.    I spent 9.3 hours researching and preparing TWC's opposition brief and

9   supporting documents in response to Plaintiff Leon Alpert's Renewed Motion to Compel Further

10  Responses [Re: Time Warner Cable's Responses to Plaintiff's Requests for Production of

11  Documents].

12      2.    My standard hourly rate is $345 per hour. The total amount of my time in

13  opposing this "renewed" motion to compel cost $3,208.50.

14      I declare under penalty of perjury under the laws of the state of California that the

15  foregoing is true and correct. Executed this _ZO_ day of March 2008 at San Diego, California.

JILLIAN L. PROCTOR

SD\1786925.1

- 1 -

DECLARATION OF JILLIAN L. PROCTOR IN OPPOSITION TO RENEWED MOTION TO COMPEL

EXHIBIT B   116

1  JEFFREY M. SHOHET (Bar No. 067529)
2  JULIE L. HUSSEY (Bar No. 237711)
   CARRIE S. DOLTON (Bar No. 234298)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA 92101-4297
   Tel: 619.699.2700
5  Fax: 619.699.2701

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9
                SUPERIOR COURT OF CALIFORNIA
10
                   COUNTY OF SAN DIEGO
11

12
   LEON ALPERT, an individual, on behalf      CASE NO.  GIC881621
13 of himself, on behalf of all those similarly
   situated, and on behalf of the general      **PROOF OF SERVICE**
14 public,
                                               Dept:      63
15            Plaintiffs,                       Judge:     Luis R. Vargas

16       v.                                    Complaint: March 13, 2007
                                               FAC:       May 16, 2007
17 TIME WARNER CABLE, INC., a
   Delaware corporation, and DOES 1 TO
18 100,

19            Defendants.

20

21

22

23

24

25

26

27

28

SD\1785677.1
325566-11

PROOF OF SERVICE

**EXHIBIT B    117**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San Diego, California 92101. On March 21, 2008, I served the within document(s):

**1. DEFENDANT TIME WARNER CABLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S INTERROGATORIES;**

**2. DEFENDANT TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S INTERROGATORIES;**

**3. DECLARATION OF TERRI RHODES IN SUPPORT OF TWC'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S INTERROGATORIES;**

**4. DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF'S INTERROGATORIES;**

**5. DEFENDANT TIME WARNER CABLE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL FURTHER RESPONSES [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS];**

**6. DEFENDANT TIME WARNER CABLE'S SEPARATE STATEMENT IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL FURTHER RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS;**

**7. DECLARATION OF JULIE L. HUSSEY IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL FURTHER RESPONSES [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS];**

**8. DECLARATION OF JULLIAN L. PROCTOR IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO COMPEL FURTHER RESPONSES [RE: TIME WARNER CABLE'S RESPONSES TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS].**

☒   by overnight mail by placing a sealed envelope or package designated by FEDERAL EXPRESS, with delivery fees paid or provided for, a true copy of each documents(s) above, in DLA Piper US LLP's mail room for collection, processing and delivery this same day to a deposit box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents. I further declare that I am readily familiar with the business' practice for collection and processing of correspondence for delivery with express service carriers (i.e., FedEx, DHL, etc.); and that the correspondence shall be deposited with an express service carrier this same day in the ordinary course of business, to each addressee as set forth below.

DLA PIPER US LLP
SAN DIEGO

SD\1785677.1
325566-11

-1-

PROOF OF SERVICE

EXHIBIT B    118

1    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set
2         forth below on this date before 5:00 p.m.

3    ☐    by placing the document(s) listed above in a sealed envelope with postage thereon
         fully prepaid, in the United States mail at San Diego, California addressed as set
4         forth below.

5    ☐    by personally delivering the document(s) listed above to the person(s) at the
         address(es) set forth below.
6

7    **Attorneys for Plaintiff**

8    Barron E. Ramos, Esq.            David R. Markham, Esq.
     Attorney at Law                  Clark & Markham
9    132 N. El Camino Real, Suite 303 401 West A Street, Suite 2200
     Encinitas, CA 92024              San Diego, CA 92101
10   (858) 349-6019                   (619) 239-1321
     (760) 994-1354 (fax)             (619) 239-5888 (fax)
11
         I am readily familiar with the firm's practice of collection and processing correspondence
12   for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same
     day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on
13   motion of the party served, service is presumed invalid if postal cancellation date or postage
     meter date is more than one day after date of deposit for mailing affidavit.
14
         I declare under penalty of perjury under the laws of the State of California that the above
15   is true and correct.

16       Executed on March 21, 2008, at San Diego, California.

17

18                                          _____
                                            Connie Garner
19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO
SD\1785677.1
325566-11                              -2-

PROOF OF SERVICE

**EXHIBIT B    119**

1   **BARRON E. RAMOS**
    Attorney at Law, A Professional Corporation
2   Barron E. Ramos (State Bar No. 179620)
    132 N. El Camino Real, # 303
3   Encinitas, California 92024
    Telephone: (760) 274-6438
4   Facsimile: (760) 994-1354

5   **CLARK & MARKHAM**
    David R. Markham (State Bar No. 071814)
6   R. Craig Clark (State Bar No. 129219)
    James M. Treglio (State Bar No. 228077)
7   401 West "A" Street, Suite 2200
    San Diego, CA 92101
8   Telephone: (619) 239-1321
    Facsimile: (619) 239-5888

9
    Attorneys for plaintiff and the Class
10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                      **COUNTY OF SAN DIEGO**

13   LEON ALPERT, an individual,           ) Case No. GIC 881621
     on behalf of himself, on behalf of all those)
14   similarly situated, and on behalf of the general) **CLASS ACTION**
     public,                               )
15                                         ) **PLAINTIFF'S REPLY IN SUPPORT OF**
             Plaintiffs,                   ) **MOTION TO COMPEL FURTHER**
16   v.                                    ) **RESPONSES TO INTERROGATORIES**
                                           )
17   TIME WARNER CABLE, INC., a Delaware)
     corporation, and DOES 1 TO 100,       ) Date: April 4, 2008
18                                         ) Time: 10:30 a.m.
             Defendants.                   )
19                                         ) Dept: 63
                                           ) Judge: Hon. Luis R. Vargas
20                                         )
                                           ) Trial Date: None Set
21                                         ) Case Filed: March 13, 2007
                                           )
22                                         )
                                           )
23   _____)

24

25

26

27

28
                                    1
    ─────────────────────────────────────────────────
    PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL
    FURTHER RESPONSES TO INTERROGATORIES

                  **EXHIBIT B    121**

## I. INTRODUCTION

TWC's Opposition argues that plaintiff's Motion to Compel is "premature," that plaintiff lacks standing to bring a UCL claim and that the Motion is incomplete. TWC is wrong on all counts.

Since this is a B&P Code section 17200 claim challenging TWC's statewide business practices, the discovery is appropriate, whether a class is later certified or not. Similarly, TWC's argument that plaintiff "lacks standing" is likewise wrong since plaintiff has pleaded injury and has filed a declaration of an expert in opposition to TWC's MSJ that proves that injury.

TWC's argument that the Motion is "incomplete" because the Separate Statement does not set forth each of TWC's responses is also wrong because CRC 3.1020© requires that the text of each "response, answer, *or objection*" be provided as well as a statement for compelling further responses "as to each matter *in dispute*." The text of the specific repeated objection to each interrogatory, which is the "matter in dispute," has been provided verbatim. The Separate Statement thus fully complies with CRC 3.1020©. Requiring plaintiff to provide the Court with dozens of pages of superfluous text, when the matter is dispute is but one repeated blanket general objection incorporated into each response, is nonsensical. Moreover, since TWC elected to *answer* the interrogatories, notwithstanding its objections, TWC concedes the propriety of the questions - but is hiding behind the one objection "in dispute" in this Motion so as to limit discovery to only San Diego.

Finally, TWC admits that the answering party (TWC's San Diego division) is not the party to whom the interrogatories were directed (TWC). Thus, TWC has arguably not answered any of the interrogatories in dispute. Under these circumstances, a Separate Statement is not even required to bring this motion.

Plaintiff's motion should be granted.

2

## II.     PLAINTIFF'S MOTION IS NOT "PREMATURE"

The First Amended Complaint (FAC) repeatedly makes plain that this is a statewide action, not a San Diego and Desert Cities action.  Likewise, plaintiff's discovery specifically incorporates the defined term "RESIDENTS" which is defined as "occupants of properties during the CLASS PERIOD that were part of a homeowners' association (HOA) *in California* with whom YOU had entered into a 'Residential Bulk Services Agreement' to provide basic cable services to the HOA members."  (Emphasis added)  See previously filed Decl. Ramos in Support of Motion, Exhibit A. The term "RESIDENTS" is not limited to San Diego or the Desert Cities.

Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action or to the determination of any motion made in that action, if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence."  "The scope of discovery is very broad."  *Tien v. Superior Court* (2006) 139 Cal.App.4th 528, 535.  The "expansive scope of discovery" (*Emerson Electric Co. v. Superior Court* (1997) 16 Cal.4th 1101, 1108) is a deliberate attempt to "take the 'game' element out of trial preparation" and to "do away 'with the sporting theory of litigation — namely, surprise at the trial.'"  *Greyhound Corp. v. Superior Court* (1961) 56 Cal.2d 355, 376.

In addition to the fact that discovery is "expansive" and broad, regardless of the type of claim brought, this is B&P section 17200 case.  As our Supreme Court has made plain, in proving an unfair business practice violation, claimants are entitled to introduce evidence not only of practices which affect them individually, but also similar practices involving other members of the public who are not parties to the action.  *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 929.  Thus, whether this was a class action or not, a section 17200 claim is still one which necessarily addresses unlawful, unfair and deceptive conduct as it impacts California consumers,

3

1  not merely the named plaintiff.

2  Moreover, under section 17200, price discrimination, as is specifically alleged here, is often
3
4  unlawful, "depending upon the context of the act and the intent of the perpetrator." *Id.* at 930.
5  Thus, to prove other members of the public throughout the State were likewise deceived, to analyze
6  whether TWC is engaging in alleged pricing discrimination statewide, to analyze the context of
7  those alleged acts, and to examine the intent of TWC with regard to all of these issues, plaintiff
8  must examine TWC's business practices not merely in San Diego, but throughout California. In
9  the absence of discovery, the plaintiff and the Court are simply unable to determine whether
10  TWC's business conduct in this State violates section 17200.

11  In its opposition, TWC argues that plaintiff's citation to *Perdue v. Crocker National Bank*
12  (1985) 38 Cal.3d 913, 929 does not support plaintiff's argument that claimants are entitled to
13
14  introduce evidence not only of practices which affect them individually, but also similar practices
15  involving other members of the public that are not parties to the action. Def.'s Memo at p.6:23-28.
16  TWC is wrong. "If plaintiff can show that the card or the manner in which it is presented to the
17  customer is deceptive and misleading, he can prove a cause of action for unfair competition. ...
18  [H]e need not show that he himself was misled; he need only prove that members of the public are
19
20  likely to be deceived." 38 Cal.3d at 929.

21  *Perdue* plainly stands for the proposition that a claim of deception rests on proving that
22  members of the public are likely to be deceived. Obviously, Mr. Alpert cannot show whether
23  members of the public were likely to be deceived by TWC's HOA pricing scheme unless he knows
24  what was represented by TWC to members of the public – not just in San Diego, but throughout
25  the State. Although flattered by TWC's argument, plaintiff's citation to *Perdue* was not original.
26  Indeed, it was taken directly from the Rutter's Practice Guide on the permitted scope of discovery
27  in B&P Code section 17200 claims.

28

4

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL
FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B    124

### III.    PLAINTIFF HAS STANDING

TWC's argument that plaintiff has no standing to bring a UCL claim because he was not injured is also wrong.  First, his injury is specifically and repeatedly pleaded in the First Amended Complaint (FAC).  See, e.g., FAC, paras. 12, 13, 16, 17, etc.  Second, evidentiary proof of that injury has also recently been submitted in the declaration of Wesley Nutten in opposition to TWC's MSJ.  See Decl. Nutten in Opposition to MSJ at paras. 6, 7, 8.  Mr. Alpert most certainly was overcharged by TWC under any analysis.

### IV.  PLAINTIFF'S MOTION SATISFIES CRC 3.1020

TWC's argument that plaintiff's Motion does not meet CRC 3.1020's format requirements is wrong.  CRC 3.1020© requires that the text of each "response, answer, *or objection*" be provided as well as a statement for compelling further responses "as to each matter *in dispute*."  The text of the specific repeated objection to each interrogatory, which is the "matter in dispute," has been provided verbatim.  The Separate Statement thus fully complies with CRC 3.1020©.

Notwithstanding this compliance, TWC argues that plaintiff should be required to bury the Court in dozens of pages of superfluous text when the matter is dispute is but one repeated blanket general objection incorporated into each response.  Nothing in CRC 3.2010 requires the moving party to set forth voluminous superfluous text that does not bear on the "matter in dispute."  Here, the "matter in dispute" is solely the propriety of TWC's repeated general objection and its incorporation of that objection into each and every response so as to limit the responses to its San Diego division only.

Moreover, objections to an entire set of interrogatories, such as TWC has raised here, are not sustainable if any of the questions are proper.  *Wooldridge v. Mounts* (1962) 199 Cal.App.2d 620, 628.  In its responses, TWC asserted "General Objections" that are improper, that are incorporated into every single response, and that attempt to self-limit the responses by re-defining

5

1   TWC as follows: TWC "shall construe the terms 'YOU' and 'YOUR,' when used in the

2   interrogatories, to mean Time Warner Entertainment .... through its San Diego Division, which

3   operates in the San Diego and Desert Cities areas." See General Objection No. 3, Decl. Ramos,

4   Exhibit A. By answering all of the questions, but limiting all of its answers to only San Diego and

5   the Desert Cities, TWC concedes the propriety of the questions - but simply refuses to answer the

6

7   questions beyond the San Diego and Desert Cities areas.

8       If only part of an interrogatory is objectionable, the remainder of the interrogatory "shall be

9   answered." Code of Civ. Proc. section 2030.240(a). Since TWC did not rely on its objections to

10  refuse to answer for its San Diego division, it cannot do so now in refusing to answer for the

11  remainder of the State.   Simply put, it is not that TWC failed to respond to plaintiff's

12  interrogatories based upon any other individually asserted objection(s) – TWC *did* answer the

13  interrogatories. However, TWC improperly limited its responses based upon one specific blanket

14

15  objection to the entire set. Since TWC answered the interrogatories, notwithstanding objections,

16  no other objection is at issue here. It is that sole blanket objection that limited TWC's response to

17  San Diego that is "in dispute."

18      TWC also argues that the Court "must" rule on each and every objection asserted by TWC

19  "separately" citing to the California Practice Guide. Def's Opp. at p.9:4-9. A review of the

20  specific citation in the California Practice Guide by TWC shows that the California Practice Guide

21  cites to no authority (case law or statute) for that specific proposition at all. Rather, the Practice

22

23  Guide, as does TWC, both cite to *Deaile v. General Telephone Co.* (1974) 40 Cal.App.3d 841, 851

24  which stands for the much narrower proposition that a "court may deny 'in toto' the motion to

25

26

27

28

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL
FURTHER RESPONSES TO INTERROGATORIES

EXHIBIT B     126

1    compel further answers where the questions are objectionable *in their entirety*.[1]" Def.'s Opp. at

2    p.9:4-9 (Emphasis added). TWC has made no such showing here. To the contrary, TWC, or more

3    accurately, its San Diego division, has *answered* all of plaintiff's Special Interrogatories – but

4    limited those responses to San Diego.

5

6        TWC's argument and citation to *Deaile* unwittingly supports plaintiff's Motion since that is

7    the sole question presented here: whether plaintiff's interrogatories are "objectionable in their

8    entirety" because they inquire in TWC's business practices statewide, not just countywide. If a

9    Motion to Compel can be denied "in toto" because interrogatories are "objectionable in their

10   entirety," such a Motion can likewise be granted "in toto" if the sole question presented is whether

11   they are *not* objectionable in their entirety - and that is the sole question presented here.

12

13   **IV.    TWC ADMITS IT HAS NOT ANSWERED THE DISCOVERY AT ALL**

14       Finally, TWC admits in its opposition that the defendant in this case, Time Warner Cable,

15   Inc., has never responded to the propounded discovery. Def.'s Opp at p.1:23-28. Instead, TWC

16   admits that only its San Diego "division" has responded. *Id.* The reason for TWC's self-imposed

17   limitation on plaintiff's discovery is that, according to TWC, TWC is not the entity that "operates

18   the cable business in San Diego." *Id.* at p.1:24-25.

19

20       Since this is a statewide action brought under B&P Code section 17200, TWC's argument

21   makes no sense. Plaintiff did not sue TWC's San Diego division – he sued TWC. TWC

22   apparently does business in this state through many divisions, not merely its San Diego division.

23   See e.g., TWC Decl. Rhodes at para. 2 -5. The interrogatories were directed to TWC and relate to

24   _____

25        [1] Plaintiff could find no authority to support TWC's position that a moving party must
26   address, and a court must rule, on each and every objection made, even if those objections are not
     germane to the narrow issue presented in a motion to compel – here, the propriety of one specific
27   objection. *Deaile* most certainly does not stand for such a proposition. Moreover, the burden of
     justifying objections is on the responding party. *Coy v. Sup. Ct.* (1962) 58 Cal.2d. 210, 220-221.
28
                                                      7

1 | its conduct statewide, not its conduct in any one particular division.

2 |       Code of Civ. Proc. section 2030.210 provides that: "The party to whom interrogatories have

3 | been propounded shall respond…" TWC admits in its Opposition that the party that answered the

4 | discovery is not the party to whom it was directed.[2] On this basis alone, the Motion should be

5 | granted.

6 |

7 | **V.     CONCLUSION**

8 |       Objections to an entire set of interrogatories, such as TWC has raised here, are not

9 | sustainable if any of the questions are proper. The Court has the complete and verbatim list of the

10 | interrogatories in question here as well as the specific repeated objection in dispute. TWC, or more

11 | accurately, its San Diego division, answered *all* of the interrogatories but limited those responses to

12 | its San Diego division. That limitation is improper since this case is based upon TWC's conduct

13 | throughout this State, not just in San Diego, and because this is a B&P Code section 17200 claim -

14 | whether a class is ever certified or not.

15 |

16 |       Plaintiff's Motion should be granted.

17 |

18 | Dated: March 21 2008

19 |                                      Barron E. Ramos

20 |                                      Attorneys for plaintiff

21 |

22 |

23 |

24 |

25 |

26 |

    [2] Further undermining TWC's separate statement "format" arguments, unlike the situation

27 | where an unsatisfactory response is given, here, where no response is given by a party at all, there

28 | is no requirement to even *file* a separate statement. CRC 3.1020(b).

PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL
FURTHER RESPONSES TO INTERROGATORIES

1   **BARRON E. RAMOS**
    Attorney at Law, A Professional Corporation
2   Barron E. Ramos (State Bar No. 179620)
    132 N. El Camino Real, # 303
3   Encinitas, California 92024
    Telephone: (760) 274-6438
4   Facsimile: (760) 994-1354

5   **CLARK & MARKHAM**
    David R. Markham (State Bar No. 071814)
6   R. Craig Clark (State Bar No. 129219)
    James M. Treglio (State Bar No. 228077)
7   401 West "A" Street, Suite 2200
    San Diego, CA 92101
8   Telephone: (619) 239-1321
    Facsimile: (619) 239-5888

9

    Attorneys for plaintiff and the Class

10

11              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                        **COUNTY OF SAN DIEGO**

13   LEON ALPERT, an individual,          ) Case No. GIC 881621
     on behalf of himself, on behalf of all those)
14   similarly situated, and on behalf of the general) **CLASS ACTION**
     public,                             )
15                                        ) **PLAINTIFF'S REPLY IN SUPPORT OF**
                                          ) *RENEWED* **NOTICE OF MOTION AND**
16            Plaintiffs,                 ) **MOTION TO COMPEL FURTHER**
     v.                                   ) **RESPONSES**
                                          )
17   TIME WARNER CABLE, INC., a Delaware)
     corporation, and DOES 1 TO 100,      ) Date:  April 4, 2008
18                                        ) Time:  10:00 a.m.
              Defendants.                 )
19                                        ) Dept: 63
                                          ) Judge: Hon. Luis R. Vargas
20                                        )
                                          ) Trial Date: None Set
21                                        ) Case Filed: March 13, 2007
                                          )
22                                        )
                                          )
23   _____)

24

25

26

27

28
                                   1
─────────────────────────────────────────────────────
**PLAINTIFF'S REPLY IN SUPPORT OF *RENEWED* NOTICE OF MOTION
AND MOTION TO COMPEL FURTHER RESPONSES**

## I. INTRODUCTION

In its Opposition, TWC does not dispute that TWC wrongly argued that the defect in plaintiff's previous notice was "jurisdictional" - it was not. Nor does TWC dispute the fact that it defended against plaintiff's previous motion by arguing that TWC's objections had merit and by objecting to plaintiff's requested production of documents. Since plaintiff's previous motion specifically identified the alternative basis for relief and addressed the merits of the document request and TWC's objections, the previous motion fully supported the alternative basis for relief as Motion to Compel.

TWC now also admits that the defendant in this case has never answered the discovery at all. Rather, TWC's San Diego "division" has answered. Code of Civ. Proc. section 2031.210 requires that the party to whom discovery is directed respond, not some other entity. Failure of a party to respond enables the requesting party to bring a motion compel at any time – there is no statutory time limit.

Plaintiff's Renewed Motion to Compel is proper. The Court's previous denial of the motion was "without prejudice" and the purported defect in the previous motion has been cured. TWC's failure to respond to plaintiff's discovery is without justification.

## II. PLAINTIFF'S PREVIOUS MOTION TO COMPEL WAS SUPPORTED BY HIS MOVING PAPERS

As a preliminary matter, the Court is free to revisit any of its previous rulings within a reasonable period of time, and, by denying the previous motion "without prejudice," specifically left the door open to do just that. Thus, plaintiff immediately renewed his Motion to Compel to correct the Notice of Motion which failed to specifically identify the alternative ground set forth in the moving papers.

An omission in the notice may be overlooked if the supporting papers make clear the grounds for the relief sought. *Carrasco v. Craft* (1985) 164 Cal.App.3d 796, 807-808; *Geary Street, L.P. v. Superior Court* (1990) 219 Cal.App.3d 1186, 1200.

<div align="center">2</div>

1   Even though the notice of motion fails to state a particular ground for
2   the motion, where the notice states, as here, that the motion is being
3   made upon the notice of motion and accompanying papers and the
4   record, and these papers and the record support that particular
5   ground, the matter is properly before the court and the defect in the
6   notice of motion should be disregarded.

7   *Savage v. Smith* (1915) 170 Cal. 472, 474

8       Plaintiff's previous moving papers made clear the grounds for the relief sought, both as a
9   Motion to Compel Compliance and a Motion to Compel Further Responses. Page 3 of plaintiff's
10  previous Motion to Compel stated that: "To the extent Time Warner takes the position that it has
11  not agreed to produce said documents, notwithstanding its Response that it would produce the
12  documents, this Motion can and should be considered a Motion to Compel Further Responses
13  under CCP section 2031.310." The Motion then went on to address (i) the propriety of TWC's
14  objections and (ii) why the documents were sought and relevant. Thus, the moving papers
15  supported the alternative ground for bringing the Motion.

16      There was no surprise to TWC in the nature of the alternative motion. Indeed, TWC's
17  Opposition herein is silent in response to plaintiff's argument that TWC defended its objections in
18  the previous motion. See, e.g., TWC's Opp to Plaintiff's Original Motion to Compel at p.13-14.
19  TWC's arguments plainly indicated that TWC knew all along it was defending against a Motion to
20  Compel, not just a Motion to Compel Compliance. In fact, TWC additionally took the specific
21  position that plaintiff's request for production of documents between TWC and HOAs outside of
22  San Diego was irrelevant and "improper." See e.g., TWC's Opp to Plaintiff's Original Motion to
23  Compel at p.11:2, 11:7.

24      Standing on objections and claiming a request is irrelevant and "improper" is a defense to a
25  motion to compel, not a motion to compel compliance. TWC's election to make these arguments
26  in its original opposition to plaintiff's motion undermines any argument now that TWC did not
27  address plaintiff's alternative ground in his motion and that this motion is anything "new."
28

3

**PLAINTIFF'S REPLY IN SUPPORT OF *RENEWED* NOTICE OF MOTION
AND MOTION TO COMPEL FURTHER RESPONSES**

1   Plaintiff's original motion plainly stated the alternative ground and TWC defended against that

2   alternative ground.

3   ## III. TWC'S CITED AUTHORITY UNDERMINES TWC'S POSITION

4       TWC's citation to *Northridge Financial Corp. v. Hamblin*, 48 Cal.App.3d 819 (1975) for

5   the proposition that this Court lacks jurisdiction to hear a renewed motion makes no sense. First,

6   *Northridge* did not involve a renewed motion predicated on the correction of a defect in a notice.

7   Indeed, the issue of notice was not addressed at all by the *Northridge* court.

8       Second, *Northridge* did not involve a renewed motion based upon a previous court order

9   denying a motion "without prejudice." As the *Northridge* court observed:

10          [A]ppellate courts have always recognized that a court has power, on

11          a subsequent motion, to reconsider its prior decision ... (Citations.)

12          In such cases the subsequent motion is considered as a renewal of the

13          previous motion. (Citations.). . . . "    *Id.* at 825.

14      Under Code of Civ. Proc. section 473, which is at issue in *Northridge*, a court may

15   reconsider a previous order as long as the request to do so is brought within six (6) months. Code

16   of Civ. Proc. section 473(b). "Application for this relief .. shall be made within a reasonable time,

17   in no case exceeding six months... after the ... order ... was taken." Code of Civ. Proc. section

18   473(b). Thus, to the extent TWC is arguing that section 473 controls, this motion to renew is,

19   again, timely since it was March 13, 2008 (only 2 weeks ago) that the Court issued its Order

20   denying the original motion. TWC's nonsensical reading of the *Northridge* decision such that no

21   party could ever file a renewed motion, except within the time period prescribed for the *original*

22   motion, would render Code of Civ. Proc. section 473's six month time limit meaningless and

23   effectively eliminate a court's ability to revisit its own decisions.

24   ## IV. PLAINTIFF COMPLIED WITH CCP 1008

25      TWC's argument that plaintiff did not file a declaration in support of his renewed motion as

26   required by Code of Civ. Proc. section 1008(b) is wrong. Def.'s Memo at p.7, ftnt 2. Plaintiff's

27   counsel did file such a declaration which clearly sets forth the bases for the renewed motion. Decl.

28

4

**PLAINTIFF'S REPLY IN SUPPORT OF *RENEWED* NOTICE OF MOTION
AND MOTION TO COMPEL FURTHER RESPONSES**

EXHIBIT B    133

1  Ramos at para. 4 ["On February 22, 2008, this Court denied plaintiff's Motion to Compel
2  Compliance and alternative Motion to Compel "without prejudice." The denial was due to an *error*
3  *in the Notice* which did not identify the alternative basis for the Motion, even though the
4  supporting papers and record did identify that alternative basis."] (Emphasis added)

5  **V. TWC ADMITS IS HAS NOT ANSWERED THE DISCOVERY**

6      Finally, TWC admits in its opposition that the defendant in this case, Time Warner Cable,
7  Inc., has never responded to the propounded discovery. Def.'s Opp at p.8:4-16. Instead, TWC
8  admits that only its San Diego "division" has responded. *Id.*

9      Code of Civ. Proc. section 2031.210 provides that: "The party to whom an inspection
10 demand had been directed shall respond..." TWC admits in its Opposition that the party that
11 answered the discovery is *not* the party to whom it was directed. Unlike the situation where an
12 unsatisfactory response is given, here, where no response is given at all, there is no statutory time
13 limit or deadline for filing a motion to compel, further undermining TWC's "jurisdictional"
14 argument.

15 **VI. CONCLUSION**

16     Plaintiff's Renewed Motion to Compel is proper and should be granted.

17
18 Dated: March 21 2008

19                              Barron E. Ramos
20                              Attorneys for plaintiff

21
22
23
24
25
26
27
28

5

**PLAINTIFF'S REPLY IN SUPPORT OF *RENEWED* NOTICE OF MOTION AND MOTION TO COMPEL FURTHER RESPONSES**

EXHIBIT B    134

1

## PROOF OF SERVICE

2      I am employed in the County of San Diego, California. I am over the age of 18 years and

3 not a party to the within action. My business address is 132 N. El Camino Real, # 303, Encinitas,

4 California 92024.

5      On March 27, 2008, I served the following documents:

6

7 **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO COMPEL FURTHER
RESPONSES TO INTERROGATORIES**

8 **PLAINTIFF'S REPLY IN SUPPORT OF *RENEWED* MOTION TO COMPEL FURTHER
RESPONSES**

9

10 on the parties in this action by placing a true copy thereof in a sealed envelope, addressed as

follows:

11

12 Jeffrey M. Shohet
Julie L. Hussey

13 Carrie S. Dolton
**DLA PIPER US LLP**

14 401 B Street, Suite 1700
San Diego, CA 92101-4297

15 Facsimile: (619) 764-6644

*Attorneys for Time Warner Entertainment-
Advance NewHouse Partnership, A New York
General Partnership, Through its San Diego
Division d.b.a. Time Warner Cable*

16

17 X    (BY UPS *Overnight Delivery*) I placed each such sealed envelope, with postage thereon fully
prepaid, for collection and mailing via UPS overnight delivery at 132 N. El Camino Real, #

18      303, Encinitas, California 92024, following ordinary business practices.

19

20      (BY FACSIMILE) I transmitted the above-listed document to the party listed above via
facsimile. The transmission was reported complete and without error. The telephone number
of the facsimile machine I used was (760) 274-6438.

21

22      I declare under penalty of perjury under the laws of the State of California that the

23 foregoing is true and correct.

24 Executed at Encinitas, California on March 27, 2008.

25                                          Barron E. Ramos

26

27

28

1

CASE NO. GIC 881621
PROOF OF SERVICE

EXHIBIT B    135