Barron E. Ramos (Bar No. 179620)
**LAW OFFICES OF BARRON E. RAMOS**
132 N El Camino Real #303
Encinitas, CA 92024
Telephone: (760) 274-6438
Facsimile: (760) 994-1354
barron@yourclasscounsel.com

David R. Markham (Bar No. 071814)
R. Craig Clark (Bar No. 129219)
James M. Treglio (Bar No. 228077)
**CLARK & MARKHAM, LLP**
401 West "A" Street, Suite 2200
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile: (619) 239-5888
dmarkham@clarkmarkham.com
cclark@clarkmarkham.com
jtreglio@clarkmarkham.com

Attorneys for plaintiff and the Class

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>Defendants. | Case No. 08 CV 582 W WMc<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES FOR REMAND FOR LACK OF FEDERAL JURISDICTION**<br><br>Date: June 16, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 7<br>Judge: Hon. Thomas J. Whelan<br><br>[No Oral Argument Pursuant to LR 7.1(d)(1)]<br><br>Complaint filed: March 13, 2007<br>Removal: March 27, 2008 |

1

## I. **INTRODUCTION**

Plaintiff's action arises from the fact that Time Warner Cable (TWC) overcharges its customers that reside in homeowners associations (HOAs) that have exclusive contracts with TWC to provide basic cable. While the basic cable fee is negotiated to entice HOAs into such agreements, HOA homeowners are then systematically overcharged by TWC for each "additional service" they purchase (e.g., digital TV, premium movie channels, Roadrunner internet access, digital telephone service, etc.). The overcharge is the difference between what HOA customers must pay for those specific additional services as compared to non-HOA customers that order exactly the same set of additional services. In other words, TWC uses its exclusive agreements with HOAs to lock in customers and then overcharges those customers when they upgrade to additional services such that the customers would have been better off had their HOA had no agreement with TWC at all. The FCC recently ruled that such exclusive cable agreements with HOAs are unlawful.

Although this action has been pending in state court for over a year now, TWC recently removed after receiving plaintiff's opposition to TWC's motion for summary judgment in state court and before TWC filed its reply brief thereto. TWC removed this California Business & Professions Code section 17200 class action claiming that it now meets the jurisdictional limit under the Class Action Fairness Act (28 U.S.C. section 1332(d)) ("CAFA") and because it purportedly is a claim that "arises under" federal law. Neither is true.

TWC's CAFA jurisdictional argument is predicated on numerous assumptions that defy common sense and which lack evidentiary support. For example, TWC's removal necessarily presumes that every HOA has exactly the same basic cable charge ($ 28.77) as paid by the 250 residents of plaintiff's HOA (SeaPoint). Since TWC enters into separate agreements with each HOA, and since each agreement is individually negotiated between TWC and the HOA, there is no reason to believe, nor does TWC provide any evidence to support, its proposition that each HOA had exactly the same price for basic cable as SeaPoint did.

TWC's Removal also necessarily presumes that each class member ordered exactly the

2

same set of additional services as did plaintiff Alpert (e.g., Roadrunner, Digital Cable, telephone, the exact same set of four premium movie channels, and so on). Because plaintiff Alpert ordered most of the additional services and features TWC offered, it does not follow that everyone else did. In addition to the fact that such a wild assumption defies common sense, TWC's own PMK testified that many (almost half) of TWC's HOA customers order *no additional services at all*. Those who ordered less and cheaper additional services would have significantly smaller overcharge amounts as well. In the removal papers TWC simply offers no evidence as to the amount of overcharge on customers who ordered fewer and less expensive additional services than plaintiff did.

Compounding the deficiency further, from the Class quantum must also be adjusted downward for those class members who were put into the "HOA Bundle" pricing system, which TWC used for two years of the class period. TWC had a special "HOA Bundle" pricing which removed most of the overcharges but did not publicize it to HOA customers, disclose it in ads, or make it available unless an HOA customer asked for it, or otherwise complained about their bill. The non-disclosure of this "stealth" pricing system is alleged to be deceptive under §17200. From the amount in controversy must further be subtracted to those class members who were given the "HOA Bundle" price for part of the class period. TWC has not shown or disclosed how many such customers there were, or what time periods they were covered by this "alternate" pricing system.

TWC cannot simply multiply the total number of HOA customers by the overcharge to this particular plaintiff so as to determine class-wide overcharges/restitution – yet that is exactly what TWC did in its removal papers. Many, if not most, of those HOA customers are not even class members and did not order any additional services at all. To reach the CAFA limit, TWC has simply multiplied plaintiff's damage figure by thousands of non-class member HOA customers that ordered no additional services whatsoever.

Without knowing the basic cable charge for each HOA member of the class, and without knowing what additional services were ordered by each class member, or statistics summarizing this information, it is impossible to calculate potential overcharges on a class-wide basis.

3

Certainly, TWC has failed to meet its burden of showing by the preponderance of evidence that this case meets the CAFA jurisdictional requirement and predicates its Notice of Removal on erroneous and unsupportable assumptions. TWC has simply manufactured CAFA jurisdiction without any evidentiary support and where no such jurisdiction exists.

As for TWC's federal question argument, both federal and state court decisions hold that Section 17200 claims can be predicated on violations of both state and federal law, and that if the underlying law that is "borrowed" is a federal law or regulation, that does not create or confer federal question jurisdiction. The action remains solely a state law claim under Section 17200. Also, a removal based on federal question jurisdiction is not a CAFA removal and is untimely under 28 U.S.C. §1446(b).

TWC's removal was improper. This case should be remanded to state court.

### II.   TWC HAS NOT SHOWN THIS CASE MEETS THE CAFA JURSIDICTIONAL AMOUNT IN CONTROVERSY

Remand may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. 28 U.S.C. §1447(c). Here, TWC cannot and does not meet its burden of demonstrating that the class's claims meet the $5,000,000 jurisdictional amount required under CAFA.

It is well settled that CAFA does not "alter the long-standing rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006); *Lowdermilk v United States Bank Nat'l Assn.*, 479 F.3d 994 (9th Cir. 2007). Where, as here, the amount in controversy is not alleged in the complaint, a removing defendant has the burden of proving by the preponderance of the evidence that the amount exceeds $5,000,000. *Lowdermilk*, *id.*, at 998-9. In its Notice of Removal, TWC presents no competent evidence that this case meets the CAFA jurisdictional limit because its calculation is based on fundamentally flawed assumptions. Instead, TWC relies solely on plaintiff's expert's declaration filed in opposition to TWC's recent summary judgment motion in state court, and then makes numerous wrong assumptions in an attempt to create, and exaggerate, an aggregate value of

4

the class' claims based on pure speculation. Speculation can never be a basis for establishing jurisdiction.

Specifically, TWC argues that since plaintiff's expert estimates that plaintiff suffered damages of $ 25.80 per month (Notice of Removal at p.3:20), that must also be true for everyone in the class, which TWC estimates is about 56,000 HOA customers. *Id*. at p.3:25. TWC's assumptions make no sense and are contradicted by what TWC knows to be true.

Plaintiff is a member of an HOA called SeaPoint which consists of about 250 units. Decl. Alpert in Opp to TWC's MSJ at para. 7 (submitted by TWC in its Notice of Removal, Ex. I). SeaPoint has a "bulk services" agreement with TWC for basic cable whereby SeaPoint residents pay $ 28.77 each month for basic cable through their HOA. Decl. Nutten in Opp to TWC's MSJ, para. 4 (submitted by TWC in its Notice of Removal, Ex. I). This was substantially below what a non-HOA customer paid for basic services. However, when plaintiff ordered additional services (i.e., other than and above basic cable), he was overcharged for those services by TWC in the total sum of $ 25.80 per month. *Ibid*. This was the difference between what plaintiff paid for these upgrade and what a non-HOA customer was charged for the same additional service upgrades. Plaintiff's additional services consisted of most everything TWC offered --- digital TV, all four premium channels (HBO, Showtime, etc.), Roadrunner internet service, and digital telephone service.

TWC removal papers simply multiply Alpert's restitution claim by all 56,000 customers who lived in HOAs with bulk basic service contracts. This makes no sense. First, according to TWC's state court testimony, almost half of the customers order no additional services at all (the PMK testimony was about 45% do not). Second, of those that do, most do not order everything on the menu and only order a premium channel upgrade or digital TV. (The large overcharges were on the high-end upgrades such as internet service and digital telephone, around $25 a month for both; the overcharges for the lesser upgrades was small, a few dollars in some cases). TWC makes no showing how many customers fell into these various categories of limited additional services and what the overcharge is for these customers. Third, TWC assumes that every HOA bulk basic

5

service contract is at SeaPointe's rate of $28.77 per unit per month -- although again the state court testimony is that each HOA contract is separately negotiated. Variation in these rates has an impact on the quantum of overcharge. In sum, TWC's damage "calculation" is completely flawed as it is missing the number of customers actually upgrading to additional services (a threshold requirement for even being in the class definition), whether and by how much their HOAs negotiated rates below what the general public was charged for basic service, and how many customers actually purchased which additional services as the quantum of overcharge varied significantly based on what was ordered.

While TWC cites to 56,000 *potential* class members living in HOAs, the actual testimony is that only about 55% of these, or about 30,800, buy additional services and are in the class. Decl. of Barron Ramos in Opposition to Motion for Summary Judgment (submitted by TWC in its Notice of Removal as Exhibit I), Exh. A, Rhodes Dep. at 153:23-154:11. Of these, without other data as to actual additional services upgrades by class member and amounts HOAs paid for basic service, it has not been shown that the amount in controversy exceeds $5,000,000. The quantum per class member may have been as low as a dollar or two a month, or as high as $25 or $26.

TWC's removal simply presumes without any evidence whatsoever that (i) each member of an HOA with a bulk basic service contract from TWC is in the class; (ii) each member of the class was a resident in an HOA that paid exactly the same sum as SeaPoint for basic cable each month, and (iii) that each member of the class had ordered exactly the same services as Mr. Alpert so as to result in the same overcharge figure per resident. These wrong assumptions are not based on any evidence and are contradicted by common sense.

TWC has provided neither plaintiff nor the Court with contracts with other HOAs, nor with a summary thereof, nor an affidavit from an expert or employee to support TWC's position that each HOA had exactly the same basic cable rate ($ 28.77) as did SeaPoint. On this basis alone, there is no way to ever extrapolate the quantum of damage per class member since it is necessarily a function of the basic cable rate paid by the HOA is each instance.

Second, TWC has provided neither plaintiff nor the Court with any evidence that each

6

member of the class had ordered the same quantum of additional services as plaintiff Alpert such that the overcharge figure for Mr. Alpert can be assumed to be the same for every other class member.  Mr. Alpert had ordered a significant list of additional services including Roadrunner wireless, telephone services, digital cable, multiple premium movies, and so on.  TWC's rank speculation that every member of the class ordered exactly the same basket of services as did Mr. Alpert is totally unsupported by any evidence and defies common sense.  In fact, TWC knows that only a fraction of its total customers actually ordered any additional services at all.  TWC's PMK testified that almost half of TWC's customers do not order additional services at all.  Thus, TWC asks this Court to presume something it knows is false to try to meet the CAFA limit.

Every customer of TWC that resides in an HOA is not a class member.  Paragraph 4 of the FAC defines the class as follows:
> The class in this case is comprised of all TIME WARNER subscribers in the State of California during the four (4) years prior to the filing of this complaint who were members of  homeowners associations (HOAs) and/or tenants of such members, where the subscriber's HOA had contracted with TIME WARNER for basic cable services (also sometimes called "bulk multi-channel video services") ***and where the subscriber purchased additional cable and cable related services directly from TIME WARNER but was not provided a credit for already paying the for basic cable services ("HOA Standard Service") through the subscriber's HOA***.
> (Emphasis added)

The class is not defined as broadly as TWC says it is in its Removal so as to include all HOA customers.  Many of those customers ordered no additional services and are not members of the class.  TWC cannot redefine the Class to meet the CAFA jurisdictional limit just as TWC cannot grossly overestimate, without any evidentiary support, the potential damages suffered by each class member in an effort to satisfy the amount in controversy.

In sum, TWC has presumed that every HOA has exactly the same basic cable charge as paid by the residents of SeaPoint, presumed that each class member ordered exactly the same basket of services as did plaintiff Alpert, and presumed that every member of an HOA orders additional services.  *None* of those presumptions are true and *none* of them are supported by any evidence whatsoever.  TWC's fails to meet its burden of showing jurisdiction under CAFA by the

7

1 preponderance of competent evidence.

### III. THIS CASE IS NOT BASED UPON A FEDERAL QUESTION

Plaintiff's class action complaint states one sole cause of action: violation of California's B&P Code section 17200 (Section 17200). See FAC, paras. 36-44. No federal claim is stated. Section 17200 claims may be predicated on the violation of other law, including federal law. D*iaz v. Kay-Dix Ranch,* 9 Cal.App.3d 588, 591 (1970). As the California Supreme Court has stated, Section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under Section 17200. *Farmers Ins. Exch. v. Superior Court,* 2 Cal.4th 377, 383 (1992).

TWC argues in its Notice of Removal that because plaintiff has referenced the FCC's Order of October 31, 2007 (which now recognizes that TWC's exclusive contracts with SeaPoint and other HOAs are unlawful) in briefing in opposition to TWC's recent motion for summary judgment in state court, plaintiff's action suddenly morphed into a federal claim "aris[ing] under" the laws of the United States. Notice of Removal at p.4:12. TWC is wrong. This is not a case brought under federal law – it is brought solely under Section 17200. The fact that predicate unlawful violations include a potential violation of federal law changes nothing.

Like here, in *Schwartz v. Visa International Corp., et al.* (ND Cal.) 2001 U.S. Dist. LEXIS 105, defendants removed "based on their belief that plaintiff had raised federal claims in [a] brief opposing a motion for judgment on the pleadings in state court." *Id*. at *2. The complaint stated violations of Section 17200 and were predicated on violations of both state and federal law, including the Truth in Lending Act (TILA) and the Sherman Antitrust Act. *Id.* at *3.

The *Schwartz* court remanded stating that "defendants' position would be viable only if section 17200 could not be predicated on the violation of federal law." *Id*. at *6. Citing the California Supreme Court in *Farmers Ins. Exchange*, *supra*, the District Court concluded that Section 17200 actions redresses unlawful business activities by borrowing violations of other laws, including federal law, as "unlawful practices independently actionable under section 17200 et sq.

8

and subject to the distinct remedies provided thereunder." *Id*. at *8.

Federal law, just like state law, may be "borrowed" by Section 17200. *Mangini v. R. J. Reynolds Tobacco Co.*, 793 F.Supp. 925, 927 (N.D. Cal. 1992). Here, just as in *Schwartz*, "since plaintiff has not raised any independent federal claims, there can be no basis for federal jurisdiction in this case, and the Court's analysis is concluded." *Ibid*.

Moreover, removal based on an alleged federal question under 28 U.S.C. §1331 is *not* removal under CAFA. More than one year has passed between the commencement of the action and removal and thus the removal based on federal question is impermissibly late under 28 U.S.C. §1446(b).

## IV.   CONCLUSION

TWC fails to prove by the preponderance of the evidence in its Notice of Removal papers that the amount in controversy alleged in the FAC aggregates to the jurisdictional amount of this Court under CAFA. TWC also incorrectly argues that a Section 17200 claim predicated on an unlawful business practice under federal law raises a federal question under §1331. It does not. Also, the removal under §1331 is too late under §1446(b).

This action should be remanded to state court.


Dated: April 25, 2008                                  **CLARK & MARKHAM LLP**


                                                       By: ___/s/David R. Markham____
                                                              David R. Markham,
                                                       Attorney for the Plaintiff, Leon Alpert

9

Case No. 08 CV 582 W WMc
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REMAND