

JEFFREY M. SHOHET (Bar No. 067529)
JULIE L. HUSSEY (Bar No. 237711)
CARRIE S. DOLTON (Bar No. 234298)
RYAN T. HANSEN (Bar No. 234329)
**DLA PIPER US LLP**
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL
PARTNERSHIP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>        Plaintiffs,<br><br>        v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>        Defendants. | CV No. 08CV582 W WMc<br><br>**TIME WARNER CABLE'S OPPOSITION TO PLAINTIFF ALPERT'S MOTION FOR REMAND**<br><br>Date      June 16, 2008<br>Time     10:00 a.m.<br>Ctrm:    7<br>Judge:   Hon. Thomas J. Whelan<br><br>**[No Oral Argument Pursuant to CivLR 7.1(d)(1)]**<br><br>Complaint:  March 13, 2007<br>FAC:      May 16, 2007<br>Removal:   March 27, 2008 |

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York general

2    partnership ("TWC"), sued erroneously as Time Warner Cable, Inc., submits the following

3    Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Remand.

4    **I.    INTRODUCTION**

5    Federal removal jurisdiction is undoubtedly proper in this case on two separate grounds –

6    federal question removal pursuant to 28 U.S.C. § 1131 and diversity jurisdiction, as amended by the

7    Class Action Fairness Act of 2005 ("CAFA"), pursuant to 28 U.S.C. § 1332.

8    This Court has federal question jurisdiction because Plaintiff recently purported to modify his

9    cause of action for violations of California Business and Professions Code section 17200 ("section

10   17200") by asserting claims based on federal law.  Plaintiff's operative Complaint alleges unfair

11   competition on behalf of a purported class of TWC subscribers based on TWC allegedly overcharging

12   for cable services by not properly crediting the subscribers for payments made by their respective

13   Homeowners' Associations ("HOAs") on their behalf.  Immediately prior to TWC's removal, a motion

14   for summary judgment was pending in the state court proceeding.  Plaintiff's Opposition to that motion

15   ("Opposition") asserted new federal theories and claims of liability, which included a federal predatory

16   pricing claim and a violation of a Federal Communications Commission ("FCC") order.[1]  (*See*

17   Opposition Brief 12:6-14:2.)  Because Plaintiff's section 17200 claim now appears to be based on

18   alleged violations of federal laws, Plaintiff's Complaint necessarily requires the resolution of federal

19   law and thereby triggers federal question jurisdiction.

20   This Court has a second and independent basis for jurisdiction based on the CAFA.  There is no

21   dispute that the diversity requirements for removal under the CAFA are satisfied.  Indeed, Plaintiff's

22   Motion for Remand only challenges the amount in controversy requirement.  While Plaintiff's Complaint

23   does not specify a particular amount of monetary recovery, the information provided by Plaintiff's expert

24   in Plaintiff's Opposition reveals that the amount in controversy undoubtedly exceeds $5 million.

25   Moreover, Plaintiff's own estimates and calculations in his Motion for Remand demonstrate that the

26   amount put in controversy by Plaintiff exceeds the CAFA jurisdictional minimum

27   _____

28   [1] TWC fully disputes the attempt to assert new claims in order to defeat TWC's motion for summary judgment on the
     pending claims.

DLA PIPER US LLP
SAN DIEGO

WEST\21419083.1
325566-000011

-1-

08CV582 W WMC

1    Plaintiff, on the other hand, fails to advance any persuasive argument for remanding this case to

2    state court.  It is particularly telling that Plaintiff fails to demonstrate that the class recovery will be less

3    than the jurisdictional minimum, or to stipulate to a recovery below the minimum.  Accordingly, TWC

4    properly removed this action to federal court pursuant to 28 U.S.C. §§ 1331 and 1332.

5    **II.     STANDARD FOR REMOVAL JURISDICTION.**

6         **A.     Federal Question Jurisdiction.**

7         "Any civil action of which the district courts have original jurisdiction founded on a claim or

8    right arising under the Constitution, treaties, or laws of the United States shall be removable without

9    regard to the citizenship or residence of the parties." 28 U.S.C. §§ 1441(b).  District courts have

10   jurisdiction over civil cases arising under the Constitution, treatise, or laws of the United States.  28

11   U.S.C. § 1331. "Section 1331 also confers jurisdiction when an issue of federal law undergirds a claim

12   otherwise based in state law." *County of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1025

13   (N.D. Cal. 2005) (relying on *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 208,

14   312 (2005)).  In addition, it has long been settled that "a federal court ought to be able to hear claims

15   recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify

16   resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal

17   issues…" *Grable*, 545 U.S. at 312.

18        Significantly, a "state-created cause of action can be deemed to arise under federal law" in three

19   circumstances:  (1) "where federal law completely preempts state law," (2) "where the claim is

20   necessarily federal in character," and (3) "where the right to relief depends on the resolution of a

21   substantial, disputed federal question." *ARCO Env't Remediation, L.L.C. v. Dep't of Health and Env't*

22   *Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000) (citations omitted).

23        As set forth below, federal question jurisdiction exists in this case because at least some of

24   Plaintiff's claims depend on the resolution of substantial, disputed federal questions and thus arise

25   under federal law for removal purposes.

26        **B.     Amount in Controversy.**

27        Where a complaint does not allege a specific amount in damages, the removing defendant bears

28   the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the

1   statutory minimum (in this case, $5 million per the CAFA). *Singer v. State Farm Mut. Auto. Ins. Co.,*

2   116 F.3d 373, 376 (9th Cir. 1997). The preponderance of the evidence standard means the "defendant

3   must provide evidence establishing that it is *'more likely than not'* that the amount in controversy

4   exceeds that amount." *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996)

5   (emphasis added) (citation omitted). This burden is somewhat relaxed as courts recognize that under this

6   standard, a removing defendant is not obligated to "research, state, and prove the plaintiff's claims for

7   damages." *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199 (E.D. Cal. 2008) (citation omitted).

8        A defendant must set forth the underlying facts supporting its assertion that the amount in

9   controversy exceeds the statutory minimum. *Gaus v. Miles, Inc.,* 980 F.2d 564, 567 (9th Cir. 1992). In

10  addition to the contents of the removal petition, the court considers "summary-judgment-type evidence

11  relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez*

12  *v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations omitted); *Singer,* 116 F.3d at

13  374 ("defense counsel submitted declarations to show that the amount in controversy exceeded

14  $50,000"). A court may also consider supplemental evidence later proffered by the removing defendant,

15  which was not originally included in the removal notice. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 n. 1

16  (9th Cir. 2002). If defendant presents such proof, it then becomes plaintiff's burden to show, as a matter

17  of law, that it is certain he will not recover the jurisdictional amount. *Kenneth Rothschild Trust v.*

18  *Morgan Stanley Dean Witter,* 199 F.Supp.2d 993 at 1001 (C.D. Cal. 2002) (citing *De Aguilar v. Boeing*

19  *Co.,* 47 F.3d 1404, 1411 (5th Cir. 1995)).

20        In measuring the amount in controversy, a court must assume that the allegations of the

21  complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the

22  complaint. *Id.* at 1001. The ultimate inquiry is what amount is put "in controversy" by the plaintiff's

23  complaint, not what a defendant will actually owe. *Rippee v. Boston Market Corp.,* 408 F.Supp.2d 982,

24  986 (S.D. Cal. 2005); *see also Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d

25  394, 399 (2d Cir. 2003) (recognizing that the ultimate or provable amount of damages is not what is

26  considered when determining the amount in controversy; rather, it is the amount put in controversy by

27  the plaintiff's complaint); *Brill v. Countrywide Home Loans, Inc.,* 427 F.3d 446, 448 (7th Cir. 2005)

28  /////

1   ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy'

2   between the parties.").

3          As set forth below, TWC has amply demonstrated that this case more likely than not meets the

4   CAFA jurisdictional amount in controversy and accordingly federal jurisdiction is proper.

5   **III.    FEDERAL QUESTION JURISDICTION EXISTS IN THIS CASE.**

6          **A.    Plaintiff's Claims Necessarily Raise Federal Issues.**

7          It is well settled that federal question jurisdiction exists when a state claim necessarily depends

8   on the resolution of a substantial and disputed question of federal law. *Grable & Sons Metal Products*,

9   545 U.S. at 314.  In *Grable*, the Court established a three-part test for determining whether there is

10  federal jurisdiction over a state law claim:  (1) whether the state law claim necessarily raises a federal

11  issue; (2) whether the federal issue is actually disputed and substantial; and (3) whether "a federal

12  forum may entertain [jurisdiction] without disturbing any congressionally approved balance of federal

13  and state judicial responsibilities." *Id.*

14         Federal courts have consistently applied federal subject matter jurisdiction over state law claims

15  for violation of section 17200 predicated upon a violation of federal law. *See, e.g., California ex rel.*

16  *Lockyer v. Dynegy, Inc.*, 375 F.3d 831 (9th Cir. 2004) (holding that an action alleging violation of

17  Section 17200 was inherently federal because plaintiff's claim rested on alleged violations of federal

18  tariff obligations under the Federal Power Act); *Brennan v. Southwest Airlines Co.*, 134 F.3d 1405, 1409

19  (9th Cir. 1998) (holding that plaintiff's section 17200 claim was inherently federal because it sought

20  refund of tax governed exclusively by federal law); *County of Santa Clara*, 401 F. Supp. 2d at 1025

21  (holding that plaintiff's section 17200 claim required a determination of whether defendants violated

22  any federal statutory or federal contractual obligation).

23         Here, Plaintiff's newly alleged violations of federal law necessarily depend on the resolution of

24  substantial questions of federal law.  One of Plaintiff's new grounds for alleging unfair competition

25  against TWC claims that TWC violated 47 U.S.C. § 543(b)(8)(a) by charging Plaintiff a

26  discriminatorily higher price for the additional cable services purchased directly from TWC when

27  compared to others not receiving basic cable through their HOA.  Plaintiff also claims that TWC

28  engaged in unfair competition by violating a FCC order published as FCC 07-189.

1    To resolve these new claims, this Court must necessarily analyze, interpret, and construe federal

2    regulations, including 47 U.S.C. § 543(b)(8)(a) and the FCC order published as FCC 07-189. This is

3    more than sufficient under *Grable* to find federal question jurisdiction. *Grable*, 545 U.S. at 316 (citing

4    *Shulthis v. McDougal*, 225 U.S. 561, 570 (1912)), which provided that subject matter jurisdiction over a

5    state claim is appropriate when validity, construction or effect of the federal statute is in issue).

6    Surprisingly, Plaintiff's Motion for Remand completely ignores the above-cited relevant case

7    law regarding the standard for federal question jurisdiction, which is binding precedent. Instead,

8    Plaintiff cites a single unpublished decision by the United States District Court for the Northern District

9    of California, *Schwartz v. Visa International Corp.*, 2001 U.S. Dist. LEXIS 105 (N.D. Cal.),[2] which is

10   easily distinguished and in fact, is not even applicable to this case. In *Schwartz*, the only issue before

11   the Court was whether plaintiff had raised, for the first time, entirely new independent federal claims in

12   its opposition to defendants' motion for judgment on the pleadings.[3] The court did not address the issue

13   raised in this case—whether federal law claims as a predicate for a state law claim create removal

14   jurisdiction. *Id.* at *5-6. ("The propriety of defendants' removal depends entirely on the construction of

15   plaintiff's statements in his briefing before the superior court. If those statements truly raised

16   independent federal claims, then this Court must proceed to conduct a jurisdictional analysis to

17   determine whether to retain the case.")

18   **B.    Plaintiff's Claims Present Substantial Disputed Federal Issues.**

19   The federal issues discussed above are substantial and disputed. Plaintiff's claim that TWC

20   violated federal law by charging a discriminatorily higher price for his cable services presents

21   substantial questions of federal law, which are presently in dispute. This claim raises questions as to the

22   proper interpretation and application of the federal statute to the claims at issue. As such, the resolution

23   of those claims invoke federal question jurisdiction and the removal jurisdiction of this court.

24   /////

25   [2] Ninth Circuit Rule 36-3(a) states that "unpublished dispositions and orders of this Court are not binding precedent,
except when relevant under the doctrines of law of the case, res judicata, and collateral estoppel," all of which not
26   relevant here. U.S. Ct. of App. 9th Cir. Rule 36-3(a). Thus, the *Schwartz* decision is not binding precedent.
[3] The *Schwartz* plaintiff brought a section 17200 claim predicated upon state *and federal* law. Then, in plaintiff's
27   opposition to defendants motion for judgment on the pleadings, plaintiff made reference to federal law again.
Defendants asserted that plaintiff's references to these federal laws in its briefing "made it apparent - *for the first time* -
28   that plaintiff purported to pursue *independent* claims for relief under [federal law]." *Id.* at *2 (emphasis added).

C.   **Exercise of Federal Jurisdiction Will Not Disturb the Balance of Federal and State Judicial Responsibilities.**

Exercise of federal jurisdiction in this case will not disturb the balance of federal and state judicial responsibilities. *See Grable*, 545 U.S. at 314. In *Grable*, the Supreme Court held that federal question jurisdiction was appropriate because the Government had a strong interest in the collection of taxes, and the action was a "rare" state action involving issues of federal law. *Id.* Likewise, the Government has a strong interest in the consistent application of its federal cable television regulatory regime.

Accordingly, this Court should find that all three prongs of the *Grable* test are met and accept federal question jurisdiction over this case. Plaintiff's claims involve contested issues of federal law, and the fair and consistent application of these federal regulations will be advanced by their resolution in a federal forum.

IV.   **TWC HAS AMPLY DEMONSTRATED THAT THIS CASE MORE LIKELY THAN NOT MEETS THE CAFA JURISDICTIONAL AMOUNT.**

It is undisputed that the diversity requirements for removal under the CAFA are satisfied. Plaintiff's Motion for Remand concedes as much and only challenges the amount in controversy. Accordingly, TWC only addresses that issue.

A.   **TWC Relied On Specific Factual Allegations to Prove Amount in Controversy.**

TWC provided in its petition for removal evidence establishing that it is more likely than not that the amount in controversy exceeds the jurisdictional amount. It was not TWC's burden to demonstrate the precise amount in controversy. Rather, TWC relied on Plaintiff's Opposition and the factual allegations and analysis offered by Plaintiff's own expert in calculating the claimed amount of the class' monetary recovery.

Plaintiff's Opposition papers allege that Plaintiff, the purported class representative of the class, suffered monetary loss of approximately $25.80 per month. As the purported class representative, Plaintiff's alleged monetary recovery must be representative of the class. Accordingly, for purposes of establishing the probability of a recovery exceeding the jurisdictional threshold, TWC (and the court)

1   are entitled to treat the Plaintiff's claims as a proxy for the claims of all class members. Plaintiff's

2   assertion in his Motion for Remand that his alleged monetary recovery is not representative undermines

3   his own commonality, typicality, and adequacy at representing the purported class—a matter that TWC

4   will address if and when class certification is before the Court.

5       **B.      Plaintiff's Motion for Remand Establishes That This Case Meets the CAFA**

6             **Jurisdictional Amount in Controversy.**

7       First, with respect to the number of HOA subscribers who purchased additional services, TWC

8   accepts, for purposes of determining the amount in controversy, Plaintiff's estimate that 30,800 HOA

9   subscribers in San Diego and Desert Cities purchased additional services and are therefore members of

10  the alleged class. (*See* Motion for Remand 6:9-10.) Second, TWC accepts, again for the same purpose,

11  Plaintiff's claim that the monetary loss per class member "may have been as low as a dollar or two a

12  month, or as high as $25 or $26."[4]  (*See id* at 6:14-15.) Finally, regarding the number of months that

13  potential class members were allegedly damaged, TWC relies on Plaintiff's class definition set forth in

14  his Complaint at paragraph four and quoted in his Motion for Remand, which states that the class is

15  four years, or 48 months. (*See id* at 7:12-17.)

16      Accordingly, accepting Plaintiff's own estimates and calculations, the amount put in

17  controversy by Plaintiff, "more likely than not" exceeds the CAFA jurisdictional minimum. In that

18  regard, Plaintiff's claim is that 30,800 class members suffered damages for 48 months. Accordingly to

19  reach the $5 million jurisdictional minimum, the average amount of damages suffered per class

20  member need only be $3.39 per month ($3.39 per month x 48 months x 30,8000 class members =

21  $5,011,776). $3.39 is very close to the lower end of Plaintiff's estimate of potential monetary loss per

22  class member of "a dollar or two a month." $3.39 is also well below the $13 mid-point between the

23  upper range of Plaintiff's estimate of monetary loss per class member ( $26) and the lower end ($1).

24  Because the average monetary loss need only be at the very lower end of Plaintiff's estimate of the loss

25

26  [4] The alleged monetary loss, as calculated by Plaintiff's expert in Plaintiff's Opposition to TWC's Motion for
    Summary Judgment, incorporates the basic cable rate of $28.77 paid by Plaintiff's HOA. (*See* Nutten Declaration in
27  Opposition to TWC's Motion for Summary Judgment, 2:28—3:1.) Accordingly, it is not necessary to separately
    address the individually negotiated rates for basic cable by other HOAs, as the alleged range of monetary loss provided
    by Plaintiff already incorporates this figure. Additionally, as discussed above, TWC (and the court) are entitled to treat
28  the Plaintiff's claims as a proxy for the claims of all class members.

1    per class member, Plaintiffs own numbers establish the "probability" that the jurisdictional minimum is

2    satisfied.

3        Another approach leads to the same conclusion. Plaintiff claims that he suffered a monetary

4    loss of $25.80 per month during the class period. If 4010 HOA subscribers (that is only 13% of the

5    total 30,8000 HOA class members in San Diego and Desert Cities alone) suffered a loss equivalent to

6    the class representative, the jurisdictional minimum has been satisfied ($26 per month x 48 months x

7    4010 class members = $5,004,480). Any way the numbers are sliced and diced, the total amount in

8    controversy for San Diego and Desert Cities alone exceeds the jurisdictional minimum.

9        Again, this calculation does not include any recovery for the remainder of the members of the

10   alleged state wide class[5] in the other TWC divisions in California. It also does not include attorneys'

11   fees or the value of the injunction – both of which are properly included in the calculation of the

12   amount in controversy.[6] Accordingly, in reliance on Plaintiff's assumptions and estimates of the

13   monetary loss suffered by only a subset of the class (San Diego and Desert Cities) and without reaching

14   the value of Plaintiff's additional equitable claim for injunctive relief or request for attorneys' fees,

15   TWC has demonstrated that the CAFA amount in controversy threshold is more likely than not

16   satisfied.

17   **V.    PLAINTIFF HAS NOT MET HIS BURDEN TO SHOW THAT IT IS CERTAIN**

18   **THAT HE WILL NOT RECOVER THE JURISDICTIONAL AMOUNT.**

19       Once a defendant sets forth the underlying facts supporting its assertion that the amount in

20   controversy exceeds the statutory minimum, it then becomes plaintiff's burden to show, as a matter of

21   law, that it is certain he will not recover the jurisdictional amount. *Kenneth Rothschild Trust*, 199 F.

22   Supp. 2d at 1001. TWC has submitted evidence that the amount in controversy exceeds the statutory

23   /////

---

[5] Plaintiff's Complaint alleges that the purposed class is comprised of all TWC subscribers in the State of California (not limited to San Diego and Desert Cities) during a four-year period.

[6] The calculation of the amount in controversy takes into account claims for attorneys' fees recoverable by statute or contract. *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 449 (S.D. Cal. 1995) (citations omitted). Additionally, according to the Report of the Senate Committee on the Judiciary on CAFA, the requirement under CAFA that the amount in controversy exceed $5,000,000 in the aggregate may be established "either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." S. Comm. on the Judiciary, Class Action Fairness Act of 2005, S.Rep. No. 109-14, at 40 (Feb. 28, 2005), reprinted in 2005 U.S.C.C.A.N. 3, 2005 WL 627977.

1    minimum, but Plaintiff has failed to produce any evidence (or even make an assertion) that the recovery

2    sought is less than the jurisdictional amount.

3          In essence, Plaintiff is attempting to avoid federal jurisdiction by remaining silent on the

4    amount of monetary recovery sought while expecting to seek a class recovery in excess of the

5    jurisdictional minimum. But Plaintiff cannot have his cake and eat it too. The "preponderance of the

6    evidence" standard was designed to protect defendants from the "jurisdiction shell game" whereby

7    plaintiffs seek to deprive defendants of the right to a federal forum by purporting to claim damages less

8    than the federal amount in controversy requirement, and then subsequently seeking and perhaps

9    obtaining damages in state court in excess of the federal requirement. *Lane v. Champion Int'l Corp.*,

10   844 F. Supp. 724, 731-32 (S.D. Ala. 1994).

11         It is particularly telling that Plaintiff has not stipulated to a monetary recovery less than the

12   jurisdictional amount. In *Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447 (S.D. Cal. 1995), the class

13   action plaintiffs alleged various unspecific damages, but failed to file a stipulation stating that the

14   amount in controversy was less than the jurisdictional amount. *Id.* at 450. Under those circumstances,

15   this Court found that the defendant met its burden of proof by showing that the plaintiffs' claims

16   exceeded the jurisdictional minimum. *Id.* at 451.

17         Here, as in *Richmond*, Plaintiff has not plead a specific amount of monetary relief. Plaintiff has

18   submitted no evidence to suggest the recovery sought in this case is less than the jurisdictional amount.

19   As discussed above, TWC has met its burden of showing that the recovery Plaintiff seeks is more likely

20   than not in excess of the jurisdictional amount.

21   **VI.    TWC'S REMOVAL UNDER 28 U.S.C. § 1331 IS TIMELY.**

22         Plaintiff's argument that TWC's removal based on federal question is untimely is wholly

23   without merit.[7] Removal procedure is governed by 28 U.S.C. § 1446(b), which provides that any

24   action based on a claim or right that arises under federal law may be removed to federal court under 28

25   U.S.C. § 1441, if a notice of removal is filed within 30 days after the defendant receives "a copy of an

26   

27   [7] It is undisputed that TWC's removal based on the CAFA is timely. Plaintiff's Motion for Remand concedes as much
and only challenges the timeliness of removal based on federal question. This is because the amount in controversy

28   first became known in Plaintiff's Opposition to TWC's Motion for Summary Judgment. Plaintiff's Complaint did not
establish that the monetary recovery sought would satisfy the CAFA amount in controversy.

DLA PIPER US LLP
SAN DIEGO

1  amended pleading, motion, order or other paper from which it may first be ascertained that the case is

2  one which is or has become removable."

3         Here, TWC first received notice of the existence of a federal question in plaintiff's opposition to

4  TWC's motion for summary judgment. A newly raised allegation in an opposition to a motion for

5  summary judgment is an "other paper" under 28 U.S.C. § 1446(b). On or about March 24, 2008, TWC

6  received plaintiff's opposition to its motion for summary judgment, in which plaintiff attempts to assert

7  new federal claims. Although TWC vigorously disputes this attempt to assert new federal claims in

8  order to defeat TWC's motion for summary judgment on the pending claims, its opposition to this tactic

9  does not affect the creation of removal jurisdiction by Plaintiff's attempt to do so. Three days later, on

10 or about March 27, 2008, TWC filed its removal petition. Accordingly, TWC timely filed its removal

11 petition within thirty days of receipt of an "other paper" from which it may first be ascertained that the

12 case is one which is or has become removable."

13        28 U.S.C. § 1446(b) also provides a one year outside time limit for removal of diversity cases

14 under 28 U.S.C. § 1332, but the statute does not provide a one year outside time limit for removal of

15 federal question cases. 28 U.S.C. § 1446(b) also does not apply to removal based on the CAFA.

16 Accordingly, the one year limitation is inapplicable to TWC's removal on the basis of federal question

17 and removal on the basis of the CAFA. Thus, TWC's removal is timely.

18 **VII.    CONCLUSION.**

19        For all the foregoing reasons, federal jurisdiction is present and thus this case was properly

20 removed to this Court pursuant to 28 U.S.C. §§ 1331 and 1332. Accordingly, Plaintiff's Motion for

21 Remand should be denied.

22

23 Dated: June ___, 2008

                                   DLA PIPER US LLP

24

25                                   By: s/Jeffrey M. Shohet

26                                   JEFFREY M. SHOHET
                                     Attorney for Defendant Time Warner

27                                   Entertainment-Advance/Newhouse
                                     Partnership, a New York General Partnership

28                                   E-mail: jeffrey.shohet@dlapiper.com

DLA PIPER US LLP
SAN DIEGO

1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 237711)
   DLA PIPER US LLP
3  401 B Street, Suite 1700
   San Diego, CA  92101-4297
4  Tel:  619.699.2700
   Fax:  619.699.2701
5
   Attorneys for Defendant
6  TIME WARNER ENTERTAINMENT-ADVANCE/
   NEWHOUSE PARTNERSHIP, A NEW YORK
7  GENERAL PARTNERSHIP, SUED
   ERRONEOUSLY AS TIME WARNER CABLE,
8  INC.

9

10                      UNITED STATES DISTRICT COURT

                        SOUTHERN DISTRICT OF CALIFORNIA
11

12  | LEON ALPERT, an individual, on behalf | CV NO.  08cv0582 W WMc |
    | of himself, on behalf of all those similarly |  |
13  | situated, and on behalf of the general | **CERTIFICATE OF SERVICE** |
    | public, |  |
14  |                              Plaintiffs, |  |
15  |                   v. |  |
16  |  |  |
    | TIME WARNER CABLE, INC., a |  |
17  | Delaware corporation, and DOES 1 to 100, |  |
18  |                              Defendants. |  |

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1790009.1

1    I am a resident of the state of California, over the age of eighteen years, and not a party to
the within action. My business address is DLA Piper US LLP, 401 B Street, Suite 1700, San
2    Diego, California 92101-4297. On June 2, 2008, I served the within documents: **NOTICE OF**
**APPEARANCE**
3

4    ☒    by transmitting via e-filing the document(s) listed above to the Case Management/
Electronic Case filing system, such document(s) will be served to the addressee(s)
5    specified below *as indicated below.*

6    ☒    by transmitting the documents listed above electronically, *by written agreement of*
*counsel, as indicated below.*
7

8    ☐    by transmitting via facsimile the document(s) listed above to the fax number(s)
specified in Exhibit B below on this date before 5:00 p.m.

9
☐    by placing the document(s) listed above in a sealed envelope with postage thereon
10    fully prepaid, in the United States mail at San Diego, California addressed as set
forth below.
11

12    ☐    by placing the document(s) listed above in a sealed envelope with postage thereon
fully prepaid, and deposited with UPS Overnight at San Diego, California to the
13    addressee(s) specified in Exhibit B hereto.

14    ☐    by personally delivering the document(s) listed above to the person(s) via Central
Attorney Service at the address(es) set forth in Exhibit B.
15

16    Barron E. Ramos, Esq.                          Counsel for Plaintiffs
132 N. El Camino Real, Suite 303
Encinitas, CA 92024
17    858 349-6019
760 994-1354 (fax)
18    bramos@hcesq.com
(*Via E-Filing*)
19
David R. Markham, Esq.
20    R. Craig Clark, Esq.
James Treglio
21    Clark & Markham
401 West A Street, Suite 2200
22    San Diego, CA 92101
619 239-1321
23    619 239-5888 (fax)
dmarkham@clarkmarkham.com
24    jtreglio@clarkmarkham.com
(*Via Electronic Mail*)
25

26

27

28

DLA PIPER US LLP
SAN DIEGO

SD\1790009.1                          -1-                          08CV0582 W WMc

1

2

3      I declare that I am employed in the office of a member of the Bar of or permitted to practice before this Court at whose direction the service was made.

4

5      Executed on June 2, 2008, at San Diego, California.

6

7

8                                                              Nathine Nelson

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28