1  David R. Markham (Bar No. 071814)
2  R. Craig Clark (Bar No. 129219)
   James M. Treglio (Bar No. 228077)
3  **CLARK & MARKHAM, LLP**
   600 B Street, Suite 2130
4  San Diego, CA 92101
   Telephone: (619) 239-1321
5  Facsimile: (619) 239-5888
6  dmarkham@clarkmarkham.com

7  Barron E. Ramos (Bar No. 179620)
   **LAW OFFICES OF BARRON E. RAMOS**
8  132 N El Camino Real #303
9  Encinitas, CA 92024
   Telephone: (760) 274-6438
10 Facsimile: (760) 994-1354
11 barron@yourclasscounsel.com

12 Attorneys for plaintiff and the Class

13          **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15
16 LEON ALPERT, an individual on behalf of    Case No. 08 CV 582 W WMc
   himself, and on behalf of all persons similarly
17 situated, and on behalf of the general public,   **CLASS ACTION**

18          Plaintiff,              **DECLARATION OF LEON ALPERT IN OPPOSITION TO DEFENDANT'S**
19     vs.                          **MOTION FOR SUMMARY JUDGMENT**
20 TIME WARNER CABLE INC., a Delaware
   Corporation, and Does 1 to 100,   Date: June 30, 2008
21                                   Time: 10:00 a.m.
                                     Place: Courtroom 7; 880 Front Street, San
22          Defendant               Diego, CA
                                     Judge: Hon. Thomas J. Whelan
23
                                     [No Oral Argument Pursuant to LR 7.1(d)(1)]
24
25                                   Complaint: March 13, 2007
                                     Removal: March 27, 2008
26

27 I, Leon Alpert declare as follows:

28

1    1.     I am the representative plaintiff in this class action litigation and have personal knowledge

2    of each of the facts set forth herein.  If called upon as a witness I could and would testify

3    competently thereto.

4    2.     This declaration is submitted in opposition to Time Warner Cable's (TWC) Motion for

5    Summary Judgment (MSJ).

6    3.     TWC's MSJ relies upon misrepresentations of my deposition testimony.    In particular,

7    TWC's MSJ is premised largely on one central and repeated misstatement: that in late 2006 I

8    specifically requested that TWC change my services and bundle me to thereby lower my bill.  See,

9    e.g., TWC's Separate Statement of "Fact" Nos. 25, 26, 27, 28, 40, 42, 43, 45, 62, 64, 72, 74, 76, 87,

10   89, 96, 98, 110, 112, 113, 115.  Each of these purported "undisputed facts" assumes that in late

11   2006 I called TWC and specifically requested additional services and that these services be

12   "bundled."  That is completely false.

13   4.     I never testified that I asked TWC to bundle me for a discount in late 2006.  Rather, I

14   clearly testified that I called to complain to TWC that my bill was too high and that TWC must

15   lower it.  Specifically, I testified as follows: "It's my sworn testimony that I have no recollection

16   about speaking about bundles with the Time Warner rep, only about my bill and what I thought I

17   should be paying."  Decl. Ramos, Exhibit D, Depo Alpert at p.106.

18   5.     I did not ask for any bundle.  I did not ask to change services.  I just wanted my bill to be

19   corrected, and it was.  Indeed, during that conversation, TWC admitted its error to me but refused

20   to credit more than one month of the overcharge.

21   6.     TWC's citation to my deposition at 99 is in response to the question TWC originally

22   presented to me on page 97, line 8, where the question was as follows: "There was a package of

23   movie channels where you bought four that were individually priced at maybe 6.95 or whatever

24   they were, and you bought them for a package for $ 11.  Correct?"  Decl. Ramos, Exhibit D, Depo

25   Alpert at p.97:8-12.  The following two pages of the deposition was clarification of that question

26   interspersed with objections by my counsel.  I eventually answered that specific question on page

27   99, which TWC now misrepresents to be an answer to the question presented later on p.106.

28
                                                    2

7    I am a resident of SeaPoint, a condominium project consisting of about 250 units near Torrey Pines Beach in Del Mar, CA. I have had TWC as my cable provider for as long as they have contracted with my HOA.

8    TWC provides me with basic cable which I pay TWC through the assessment of my HOA monthly dues. I pay about $ 28.77 each month for basic cable to my HOA which, in turn, remits those monies to TWC.

9    Since at least 2003, I have not had a choice of cable providers. In fact, as best I can recall, TWC has been the exclusive cable provider to SeaPoint since the mid 1990s. I believe TWC remains the exclusive provider of cable to SeaPoint even though I have learned that the FCC has recently ruled such exclusive relationships are unlawful and unfair.

10.    Among the services provided to me by TWC, I have basic cable, Roadrunner high speed Internet service, telephone service, and an assortment of movie channels. I have had some of these various additional services since 2003. Although I have ordered Additional Services in addition to basic cable, I do not recall ever being provided a "Subscriber Agreement."

11.    In the fall of 2006 I received a notice from my HOA that TWC had lower pricing for services provided to HOA members than I was paying at the time. The notice was attached to a newsletter I received from my HOA.

12.    As a result of receiving that notice, I called TWC and demanded that my bill be immediately corrected and that I receive a credit for the overcharges I had suffered. TWC admitted its error and corrected by bill. I did not order any new services nor did I request any sort of "bundle." I just asked to have my bill corrected, and it was.

13.    Although TWC admitted its error and corrected my bill, TWC refused to give me a credit for all of the months, if not years, of overcharges. Instead, TWC gave me one month's credit for phone service, or something similar. TWC refused to properly credit my account for its hundreds of dollars of overcharges.

14.    The next month after I called TWC and complained, by bill went down by about $ 30 and finally reflected correct HOA pricing. However, to this day, TWC has not properly credited my

3

1   account for the overcharges

2   15.    I am familiar with TWC's television ads and its Internet website. To this day, I have never
3   seen any HOA pricing advertised by TWC such that I, or any other potential class member, would
4   ever have known that HOA pricing was available. Had I not received the HOA newsletter in late
5   2006, I too would never have known such pricing existed.

6   16.    I understand that TWC is taking the position that I had only 30 days to inform TWC of
7   errors on my billing statements. Since TWC has concealed its HOA pricing from me and the other
8   class members, I am not sure exactly how I or any class member would have been able to detect the
9   error within 30 days, if at all. While I do not think it unreasonable to require consumers to
10  complain within 30 days about obvious errors in their bills, I am not a lawyer and do not know if
11  such a provision is legal or enforceable. Moreover, I do not think it is reasonable to have such a 30
12  day rule when the vendor, in this case TWC, is concealing information necessary for a consumer to
13  determine if the bill has an error. For example, the itemization of charges in TWC's bills was
14  deceptive in that the bills did not disclose the existence of HOA pricing available to me. I never
15  agreed that TWC could deceive me and then limit me to 30 days to catch the deception.

16  17.    Contrary to TWC's statements, I never ordered any of my services "a la carte." I simply
17  ordered cable services. In fact, some of the services I ordered were put by TWC into what appear
18  on my billing statements to be mini-bundles. My billing statements, even before TWC put me into
19  an HOA bundle in late 2006, clearly indicate that I was not "a la carte." I was, apparently, in
20  various mini-bundles, though I had never specifically requested any particular type of package or
21  pricing – I had just ordered cable and cable related services and was billed by TWC accordingly.
22  Until I called and complained in September of 2006, TWC had never put me into an HOA bundle.

23  18.    Given TWC's ongoing television advertising campaign over the last several years
24  encouraging consumers to order more services and thereby get bigger discounts, I assumed TWC
25  would likewise provide me such discounts when I ordered additional services. TWC's television
26  advertising stated plainly during the class period, as it does to this day, that if I ordered other
27  additional services (in addition to basic cable) such as premium movie channels, telephone and/or

28                                              4

1   Internet service, I would pay less since those services are discounted when many services are

2   ordered together  However, unbeknownst to me until the fall of 2006, I had not been given a

3   discount for ordering more services and was never informed by TWC that HOA pricing was

4   available for the exact same set of services that I had purchased. Since TWC did not advertise

5   HOA pricing, I had no way of knowing what the correct charges were for the services I was

6   receiving

7   19.    I am not aware of any other cable company that offers movies on demand and other cable

8   television related services at SeaPoint without the consumer purchasing basic cable service from

9   that provider. TWC was my basic cable provider. Thus, I ordered additional cable services from

10  TWC, not another cable company  Moreover, since residents like pay for basic cable to TWC

11  through our HOA, there is no other meaningful economic choice in selecting a provider for

12  additional services.

13

14  20.    TWC argues that instead of ordering additional services from TWC I could have chosen

15  other alternatives. For example, TWC argues that I could have simply rented movies, read books,

16  used a satellite service, used another phone provider, and used another Internet provider  But since

17  I was already paying TWC each month for basic cable service through my HOA, it would make

18  little sense to pay another cable or satellite provider for the same service just to get additional

19  services. There was never a meaningful choice to select another provider for additional services

20

21  while simultaneously paying TWC each and every month.

22  21    As for reading books, yes, I do read books. But I have yet to find a book that broadcasts

23  live Padres games or otherwise provides real time news and information  Nor have I found a book

24  that provides recently released movies on demand. TWC provided such content in addition to the

25  basic cable service already in my home

26  22.    In its Motion and Separate Statement, TWC speculates that "HOA Pricing" as referred to in

27  my complaint "is merely the pricing of one bundle of Additional Services that, until recently, was

28

5

1    available to HOA residents who were willing to purchase all of the bundled services." HOA

2    Pricing refers to both TWC's concealed HOA pricing which, apparently, became effective in 2005

3    and to TWC's pricing prior to that which should have reflected the fact that I was already paying

4    for basic cable

5        I declare under penalty of perjury under the laws of the State of California that the

6    foregoing is true and correct. Executed this ⎣8⎦ day of March, 2008 at Encinitas, California

7

8

9                                                            Leon Alpert

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28