1  David R. Markham (Bar No. 071814)
2  R. Craig Clark (Bar No. 129219)
   James M. Treglio (Bar No. 228077)
3  **CLARK & MARKHAM, LLP**
   600 B Street, Suite 2130
4  San Diego, CA 92101
   Telephone: (619) 239-1321
5  Facsimile:  (619) 239-5888
   dmarkham@clarkmarkham.com
6  cclark@clarkmarkham.com
7  jtreglio@clarkmarkham.com

8  Barron E. Ramos (Bar No. 179620)
   **LAW OFFICES OF BARRON E. RAMOS**
9  132 N El Camino Real #303
   Encinitas, CA 92024
10 Telephone: (760) 274-6438
   Facsimile:  (760) 994-1354
11 barron@yourclasscounsel.com

12
   Attorneys for plaintiff and the Class
13

14             **UNITED STATES DISTRICT COURT**

15           **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 | LEON ALPERT, an individual, on behalf | Case No. 08 CV 582 W WMc |
   | of himself, on behalf of all those similarly | |

18 | situated, and on behalf of the general | CLASS ACTION |
   | public, | |

19 |                      Plaintiffs, | **PLAINTIFF AND OPPOSING PARTY, LEON ALPERT'S  STATEMENT OF** |

20 |                   v. | **DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO** |
   | | **DEFENDANT TIME WARNER CABLE'S** |

21 | TIME WARNER CABLE, INC., a | **MOTION FOR SUMMARY JUDGMENT** |
   | Delaware corporation, and DOES 1 TO | |

22 | 100, | Date: June 30, 2008 |
   | | Time: 10:00 a.m. |

23 |                   Defendants. | Place: Courtroom 7; 880 Front Street, San Diego, CA |

24 | | Judge: Hon. Thomas J. Whelan |

25 | | [No Oral Argument Pursuant to LR 7.1(d)(1)] |

26 | | Complaint: March 13, 2007 |
   | | Removal:  March 27, 2008 |

27

28

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

1    Plaintiff Leon Alpert respectfully submits the following statement of disputed and

2  undisputed material facts in opposition to Time Warner Cable, Inc.'s (TWC) motion for summary

3  judgment.

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 1.  Plaintiff Leon Alpert ("Plaintiff") is a resident of Sea Point Townhomes in Del Mar, California. | Undisputed. |
| 2.  Sea Point Townhomes is a Home Owners' Association ("HOA" or the "HOA") that has contracted with TWC, under an agreement referred to as a Residential Bulk Services Agreement, for certain cable services to be provided to the residents of Sea Point Townhomes (the "Agreement"). | Undisputed. |

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 3. The Agreement provides that TWC will provide 76 cable channels, sometimes referred to as "basic cable," to each home/unit of Sea Point Townhomes, and that Sea Point Townhomes will pay TWC a monthly fee per home/unit for such services. | Undisputed, but incomplete.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 4. Section 1 of the Agreement, entitled "Operator's Service Obligations," provides that TWC "will offer Bulk Multi-Channel Video Services to Residents." | Undisputed. |
| 5. Section 2 of the Agreement, entitled "Rates and Services," states that the "HOA shall pay to [TWC] a monthly Bulk Multi-Channel Video Services fee" which is set forth in Exhibit B to the Agreement. | Undisputed, but incomplete.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 6. The fee for basic cable services is to be billed for and paid by the Sea Point Community HOA. | Undisputed, but incomplete.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 7. Although basic cable is provided to HOA residents through the HOA, individual residents are free to order additional services from TWC and/or otherwise do business with TWC. | Undisputed, but incomplete.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 8. TWC may, but is not obligated to, offer the residents of Sea Point Townhomes services *other than* the 76 cable channels provided for in the Agreement (hereafter "Additional Service" or "Additional Services"). | Undisputed, but incomplete.  Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services.  Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."]  Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | economic choice in selecting a provider of "Additional Services." Decl. Alpert at para. 19. For example, homeowners were not going to buy channels above 76 from a satellite provider when they were "locked in" to buying the first 76 channels from TWC. |
| 9. Section 1 of the Agreement provides that TWC "may offer and provide Additional Service to Residents on a non-exclusive basis." | Undisputed, but incomplete. Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services. Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."] Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful economic choice in selecting a provider of "Additional Services." Decl. Alpert at para. 19. |
| 10. Additional Services are defined as "any services other than the Bulk Multi-Channel Video Services, including, but not limited to, premium channels, pay-per-view, music, digital tier, video-on-demand, and other video and music services not included in the Bulk Multi-Channel Video Services package, high speed data and Internet access services, voice services, etc." | Undisputed. |
| 11. HOA residents who chose to order Additional Services from TWC are responsible for paying TWC for such services. | Undisputed, but incomplete. Alpert must pay TWC for basic cable through monthly assessments by his HOA. Decl. Alpert at para. 8. Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services. Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."] Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful economic choice in selecting a provider of "Additional Services." Decl. |

-3-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | Alpert at para. 19. |

-4-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 12. Pursuant to Section 2 of the Agreement, "Residents will be billed directly for all service charges, taxes, franchise fees, and other fees assessed in conjunction with Additional Services." | Undisputed, but incomplete. Alpert must pay TWC for basic cable through monthly assessments by his HOA. Decl. Alpert at para. 8. Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services. Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."] Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful economic choice in selecting a provider of "Additional Services." Decl. Alpert at para. 19. |
| 13. No rates or special pricing for Additional Services are provided for in the Agreement. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |
| 14. Since March 2003, TWC has provided the Bulk Multi-Channel Services ("basic cable") to Plaintiff's residence as set forth in the Agreement between TWC and the HOA. . | Disputed. TWC has provided basic cable to plaintiff since the 1990s. Decl. Alpert at para. 9. |
| 15. TWC has not billed or collected money from Plaintiff for these services, nor has Plaintiff paid anything to TWC for the services. | Disputed. Alpert must pay TWC for basic cable through monthly assessments collected by his HOA. Decl. Alpert at para. 8. |

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 16. TWC is paid by the HOA for providing basic cable services to Plaintiff's residence. | Disputed.  Alpert must pay TWC for basic cable through monthly assessments collected by his HOA.  Decl. Alpert at para. 8. |
| 17. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC. | Disputed.  Alpert must pay TWC for basic cable through monthly assessments collected by his HOA.  Decl. Alpert at para. 8. |
| 18. Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement"). | Disputed.  Alpert has ordered Additional Services but does not recall ever being provided a "Subscriber Agreement."  Decl. Alpert at para. 10.  TWC was Alpert's basic cable provider, thus he ordered Additional Services from that provider. *Id.* at para. 19. |
| 19. TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services. | Undisputed, but incomplete.  Alpert must also pay TWC for basic cable through monthly assessments collected by his HOA.  Decl. Alpert at para. 8. |
| 20. TWC's bills to Plaintiff for his Additional Services contain a detailed itemization of each Additional Service and associated charge for each such service. | Disputed.  TWC's bill itemization is deceptive in that it did not disclose the existence of HOA pricing applicable to Alpert.  Decl. Alpert at para. 16; see also TWC's NOL, Exhibits D and E (Alpert's bills from TWC). |
| 21. The invoices show that Plaintiff was charged only for the Additional Services he ordered and was not charged for basic cable services. | Disputed.  TWC's bill itemization is deceptive in that it did not disclose the existence of HOA pricing applicable to Alpert.  Decl. Alpert at para. 16; see also TWC's NOL, Exhibits D and E (Alpert's bills from TWC).  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |

-6-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 22. As recently as August 2006, the Additional Services ordered by Plaintiff included the following features and pricing:<br><br>Digital Phone Package ($39.95); iControl Premium Service ($6.95); HDTV Converters ($7.00 x 2); Service Protection Plan ($2.95); Premier Digital ($11.00); Any 4 Premium Channels ($24.95); Wireless Road Runner ($54.90); special order items such as on-demand movies; as well as applicable taxes and fees.<br><br>These prices reflect TWC's published and/or established rates for such a la carte services. | Disputed. The prices did not reflect TWC's rates for HOA members. Decl. Ramos, Exhibit C, TWC's 2006 HOA rate sheet. Since TWC did not advertise its HOA pricing, Alpert had no way of knowing what the correct charges were for the services he was receiving. Decl. Alpert at para. 18. TWC did not advertise its San Diego HOA rates. Decl. Ramos, Exhibit A, Depo. of TWC's PMK, Terri Rhodes, at p.163:20. TWC did not even inform HOAs of the existence of HOA pricing. *Id*. at p.211:20. Alpert never ordered any of his services "a la carte." Decl. Alpert at para. 17. TWC had always put Alpert into various bundles, but did not put him into an HOA bundle. *Id*. at para. 17. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 23. In 2005, TWC began to offer Additional Services in various bundled packages for bulk customers, such as HOA members, at a discount off the aggregate price of the individual services. | Disputed. Prior to 2005, TWC "permitted bulk [HOA] customers to purchase Additional Services" at the full retail rates (i.e., without accounting for for having already collected for basic cable). Decl. Rhodes in support of MSJ, para.8. In the 2005/2006 time frame, HOA customers like Alpert paid $ 55 to get the Digipic 4000 whereas non-HOA customers only paid an additional $ 40. Decl. Ramos, Exhibit A, Depo Rhodes, p.106:22-107:2. Alpert and other HOA customers paid more for Additional Services such as the Digipic 4000 than non-HOA customers. Id. at p.150:8. TWC doesn't consider that Alpert and the other HOA members are even paying for basic cable at all. *Id*. at p.150:12. |
| 24. Plaintiff was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount off the a la carte price for the same services. | Disputed. TWC's San Diego HOA pricing was concealed from Alpert. Decl. Alpert at para. 18. TWC did not advertise its HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.163:20; Decl. Alpert at para. 15. TWC did |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
|  | not even inform HOAs of the existence of HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.211:20. TWC did not notify HOAs in writing or otherwise of the new, special HOA rates, nor post them on its website among its other published rates where customers could be aware of them. |

-8-

CLARK & MARKHAM
San Diego

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 25. In or about September 2006, having become aware that TWC was offering a bundled package of Additional Services that included many of the services Plaintiff was purchasing a la carte, Plaintiff switched his Additional Services to order new services, including a bundled package. | Disputed. Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12. After discovering from another source that lower HOA rates were available, Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services. *Ibid.* Alpert did not request any new services or to be bundled. *Ibid.* |
| 26. Plaintiff changed his Additional Services to a bundled package in order to get a better price. | Disputed. Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12. Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services. Ibid. Alpert did not request any new services or to be bundled. *Ibid.* |
| 27. Plaintiff's new Additional Services included a bundled package with the following features and pricing:<br><br>HDTV Converter ($8.00); Service Protection Plan ($2.95); Hoa DIGIPiC 4000 Plan ($121.90)—which includes Wireless Roadrunner, Digital Phone Package, Free On Demand, iControl Premium Service, Digital Access, Cinemax, HBO, Navigator Screen Guide, Showtime, STARZ, Digital Movie Pack, Digital Sports Pack, Digital Variety Pack, Basic Cable Paid by Hoa, and Road Runner High Speed; special order items such as on-demand movies; as well as applicable taxes and fees. | Disputed. Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12. Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services. *Ibid.* Alpert did not request any new services or to be bundled. *Ibid.* |

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 28. As a result of Plaintiff modifying the Additional Services ordered, and ordering them in a bundled package vis-à-vis a la carte, Plaintiff's charges for Additional Services decreased. | Disputed.  Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12.  Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services.  *Ibid*. Alpert did not request any new services or to be bundled.  *Ibid*. |
| 29. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified. | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16.  Also, Alpert DID demand the lower rates and correction of the concealed overcharge within 30 days after his discovery thereof |
| 30. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt. | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 31. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"  "Note:  If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct." | Undisputed, but incomplete.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |

-10-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 32. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." | Disputed. Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16. Also, Alpert did demand correction of his bill within 30 days after his discovery of the overcharge. |
| 33. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package. | Disputed. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. TWC's Amended Sep. Statement, Exhibit E; Decl. Alpert at para. 14. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. The cited testimony does not indicate Alpert's agreement that TWC's bills were correct before he was put into HOA pricing. See e.g., TWC's NOL, Exhibit A, at p.144:15-18; 148:17; 151:21; 155:25; 158:2. Agreeing that a bill was received is obviously not the same as agreeing a bill was accurate. Each cited instance in the deposition transcript where Alpert was actually asked to speculate whether his bill was "accurate" is preceded by a "speculation" objection asserted by Alpert's counsel. See e.g., TWC's NOL, Exhibit A at p,.148:21; 151:16. These objections, coupled with the fact that when Alpert learned he was being overcharged in late 2006 he called TWC and demanded a correction to his bill, and that the bill was, in fact, corrected, all undermine TWC's entire argument that Alpert believed his bills were accurate. Decl. Alpert at paras. 11, 12. |
| 34. Plaintiff Leon Alpert claims that TWC has violated section 1770(a)(3) of the CLRA by (1) not informing him of the rates for Additional Services that he was allegedly | Undisputed. |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) not disclosing to Plaintiff that TWC was collecting fees for his basic cable service from the HOA. | |
| 35. Plaintiff was not entitled to any particular rates for Additional Services. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a ***higher*** price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 36. TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services. | Disputed. The Agreement requires TWC to provide its pricing to SeaPoint Residents. TWC's NOL, Exhibit B, Agreement at paras. 1.4, 4.4. |
| 37. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 38. TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |

-12-

CLARK & MARKHAM
SAN DIEGO

| MOVING PARTY'S MATERIAL "FACTS" AND SUPPORTING "EVIDENCE" | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 39. TWC did not charge or collect money from Plaintiff for basic cable. | Disputed.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 40. TWC correctly charged Plaintiff for the Additional Services he ordered. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 41. Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN
SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 42. Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 43. Plaintiff's bill for Additional Services was reduced because he changed his services and ordered a bundled package rather than a host of individual services. | Disputed.  Alpert never "switched" anything and did not request or order any "bundle."  Decl. Alpert at para. 12.  Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has |

-14-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | been overcharging him for his services. *Ibid*. Alpert did not request any new services or to be bundled. *Ibid*. |
| 44. Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte. | Disputed. TWC's San Diego HOA pricing was concealed from Alpert. Decl. Alpert at para. 18. TWC did not advertise its HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.163:20; Decl. Alpert at para. 15. Decl. Alpert at para. 15. TWC did not even inform HOAs of the existence of HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.211:20. |
| 45. Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price. | Disputed. Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12. Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services. *Ibid*. Alpert did not request any new services or to be bundled. *Ibid*. |
| 46. Plaintiff claims that TWC has violated section 1770(a)(19) of the CLRA, which precludes inserting an unconscionable provision into a contract, by requiring customers to report billing errors within thirty days. | Undisputed. |
| 47. The billing provision at issue provides:<br><br>"I agree that it is my responsibility to report TWC billing errors within 30 days from receipt of the bill so that service levels and all payments can be verified. If not reported within 30 days, the errors are waived." | Disputed. Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16. |

-15-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 48. Each TWC invoice also states the following text directly below a capitalized and underlined title "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>":<br><br>"Note:  If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 49. TWC's invoices use the same font size for the reminder regarding reporting billing errors within thirty days as is used in the same area on the billing statement. | Disputed.  The font size of the 30 day billing error notice is significantly smaller than most of the TWC billing statement, particularly those parts identifying the sum due on the bill and the "Important Viewer News."  TWC's NOL, Exhibits D and E. |

-16-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 50. Plaintiff testified in his deposition that the bills he received for Additional Services were correct both before and after he altered his services and ordered a bundled package. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8.  The cited testimony does not indicate Alpert's agreement that TWC's bills were correct before he was put into HOA pricing.  See e.g., TWC's NOL, Exhibit A, at p.144:15-18; 148:17; 151:21; 155:25; 158:2.  Agreeing that a bill was received is obviously not the same as agreeing a bill was accurate.  Each cited instance in the deposition transcript where Alpert was actually asked to speculate whether his bill was "accurate" is preceded by a "speculation" objection asserted by Alpert's counsel.  See e.g., TWC's NOL, Exhibit A at p,.148:21; 151:16.  These objections, coupled with the fact that when Alpert learned he was being overcharged in late 2006 he called TWC and demanded a correction to his bill, and that the bill was, in fact, corrected, all undermine TWC's entire argument that Alpert believed his bills were accurate.  Decl. Alpert at paras. 11, 12. |

-17-

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 51. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 52. Plaintiff had other means of obtaining the entertainment provided by his ordering Additional Services from TWC, such as renting movies, using a satellite service, using another telephone provider, and using another internet provider. | Disputed.  Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services. Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."]  Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful economic choice in selecting a provider of "Additional Services."  Decl. Alpert at para. 19.  Alpert is not aware of any other cable company that offers movies on demand and other cable television related services (e.g., telephone or Internet service) without the consumer purchasing basic cable service from that provider.  *Ibid.* |
| 53. Plaintiff could have simply foregone ordering Additional Services from TWC. | Disputed.  Under the Agreement, basic cable is provided on an "exclusive" basis, meaning there is no competition for those services. Agreement at para. 4.2 [TWC has "the exclusive right … to offer and provide multi-channel video services to Residents."]  Since residents like Leon Alpert must pay for basic cable to TWC through the HOA, there is no other meaningful economic choice in selecting a provider of "Additional Services."  Decl. Alpert at para. 19.  Alpert is not aware of any other cable company that offers movies on demand and other cable television related services (e.g., telephone or Internet service) without the consumer purchasing basic cable service from that provider.  *Ibid.* |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 54. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents. | Undisputed. |
| 55. TWC provided basic cable services to HOA residents. | Undisputed. |
| 56. TWC charged the HOA for providing basic cable services to HOA residents. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 57. The HOA paid TWC for providing basic cable services to HOA residents. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 58. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services. | Disputed. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CLARK & MARKHAM
SAN DIEGO

-19-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 59. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 60. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging HOA customers for cable services and not providing pricing that reflected services already provided for under TWC's contract with the HOA. | Undisputed. |

-20-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 61. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |

-21-

CLARK & MARKHAM
San Diego

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 62. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 63. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14. |
| 64. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of | Undisputed. |

-22-

CLARK & MARKHAM
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| billing errors within thirty days while failing to disclose pricing that accounted for HOA payments. | |
| 65. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified. | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 66. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt. | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 67. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "<u>ABOUT YOUR TIME WARNER CABLE AGREEMENT</u>:" <br><br>"Note:  If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 68. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |

-23-

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 69. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments. | Undisputed. |
| 70. TWC requires customers to notify it of billing errors within thirty days so that service levels and payments can be verified. | Disputed. Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16. |
| 71. TWC correctly charged Plaintiff for the Additional Services he ordered both before and after he changed his services to a bundled package. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. Decl. Alpert at para. 14. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 72. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of | Undisputed. |

-24-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| billing errors within thirty days while failing to disclose pricing that accounted for HOA payments. | |
| 73. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 74. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not |

-25-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| | reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14. |
| 75. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14. |

-26-

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 76. TWC was under no obligation to provide special pricing for Additional Services. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. Decl. Alpert at para. 14. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 77. TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services. | Disputed. The Agreement requires TWC to provide its pricing to SeaPoint Residents. TWC's NOL, Exhibit B, Agreement at paras. 1.4, 4.4. |
| 78. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by breaching its Agreement with the HOA via charging Plaintiff for services already provided for under TWC's Agreement with the HOA. | Undisputed. |
| 79. The contract between TWC and the HOA provided that TWC would provide basic cable to HOA residents. | Undisputed. |

-27-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 80. TWC provided basic cable services to HOA residents. | Undisputed. |
| 81. TWC charged the HOA for providing basic cable services to HOA residents. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 82. The HOA paid TWC for providing basic cable services to HOA residents. | Undisputed, but incomplete. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 83. TWC has not billed or collected money from Plaintiff or other HOA residents for their basic cable services. | Disputed. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |
| 84. TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |
| 85. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by overcharging Plaintiff for Additional Services. | Undisputed. |
| 86. TWC correctly billed Plaintiff for the | Disputed. The Agreement does not provide |

-28-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| Additional Services he ordered from TWC both before and after he changed such services to a bundled package. | that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. Decl. Alpert at para. 14. As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services. Decl. Wesley L. Nutten, CPA, at para. 8. |
| 87. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 88. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. Decl. Alpert at para. 14. |
| 89. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by requiring notification of billing errors within thirty days while failing to disclose pricing that accounted for HOA payments. | Undisputed. |
| 90. As part of the Consumer Agreement under which Additional Services were provided by TWC to Plaintiff, Plaintiff agreed that it was his responsibility to report TWC billing errors within thirty days from the receipt of any bill containing such errors, so that service levels and payments can be verified. | Disputed. Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16. |
| 91. Plaintiff further agreed to waive any errors that were not reported within thirty days of receipt. | Disputed. Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing. Decl. Alpert at para. 16. |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 92. Plaintiff's monthly invoices from TWC for his Additional Services included the following language under a heading titled "ABOUT YOUR TIME WARNER CABLE AGREEMENT:"<br><br>"Note:  If you believe this statement contains a billing error, we must hear from you within 30 days of receipt of the statement in question.  If we are not notified of the discrepancy the statement will be considered correct." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 93. At deposition, Plaintiff responded to questions regarding the reasonableness of asking customers to identify billing errors within thirty days by stating that "I don't think it's unreasonable to make the complaint within 30 days. . . you know – that seems reasonable." | Disputed.  Alpert did not agree to limit his claims against TWC to only those billing errors he could ascertain within 30 days of receiving the bill when those errors were concealed from him as a result of TWC concealing its HOA pricing.  Decl. Alpert at para. 16. |
| 94. Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by concealing HOA pricing that accounted for HOA payments.<br><br>First Amended Complaint ¶ 29(b). | Undisputed. |

-31-

CLARK & MARKHAM
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 95. TWC correctly billed Plaintiff for the Additional Services he ordered from TWC both before and after he changed such services to a bundled package. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid*.), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  Alpert never "switched" anything and did not request or order any "bundle."  Decl. Alpert at para. 12.  Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services.  *Ibid*.  Alpert did not request any new services or to be bundled.  *Ibid*.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 96. TWC's contract with the HOA provides only for basic cable services to be provided to HOA residents and does not contain, suggest, or require pricing for any Additional Services that may be ordered by residents. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |
| 97. TWC's pricing of Additional Services to Plaintiff, both before and after he switched his programming to a bundled package, properly reflected the services already provided under the Agreement between TWC and the HOA because it did not charge Plaintiff for basic cable—the services provided per the Agreement. | Disputed. The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area. Agreement at paras. 1.1(B), 2. Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers. 47 USC 543(8)(a). While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006. Decl. Alpert at para. 14. |
| 98. Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC. | Disputed. TWC is paid by monies collected from members of the HOA through monthly assessments to those members. Decl. Leon Alpert at para. 8. |

-33-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 99. The "HOA Pricing" referred to by Plaintiff is merely the pricing of one bundle of Additional Services that, until recently, was available to HOA residents who were willing to purchase all of the bundled services. | Disputed.  HOA Pricing refers to both TWC's concealed HOA pricing effective in 2005 and to TWC's pricing prior to that which should have reflected the fact that Alpert was already paying for basic cable.  Decl. Alpert at para. 22. |
| 100.    Plaintiff could have asked TWC at any point if any bundled options were available for his Additional Services. | Disputed.  Alpert was unaware of TWC's HOA pricing because TWC did not advertise such pricing and instead concealed it.  Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.163:20, 211:20,; Decl. Alpert at para. 18.  TWC had already placed Alpert into various bundles, just not the appropriate HOA bundle.  Decl. Alpert at para. 17. |
| 101.    TWC was not contractually bound to offer Additional Services to Plaintiff at any particular prices. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |
| 102.    TWC was not obligated to notify Plaintiff of all potential packages and prices for its Additional Services. | Disputed.  The Agreement requires TWC to provide its pricing to SeaPoint Residents.  TWC's NOL, Exhibit B, Agreement at paras. 1.4, 4.4. |

-34-

CLARK & MARKHAM
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 103.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by misrepresenting its affiliation, connection, or association with the HOA.  Plaintiff claims that TWC (1) failed to inform him of the rates for Additional Services that he was allegedly entitled to as member of Sea Point Townhomes' Home Owners' Association (the "HOA"), and (2) failed to disclose to Plaintiff that TWC was collecting fees for his basic cable service from the HOA. | Undisputed. |
| 104.    Plaintiff was not entitled to any particular rates for Additional Services. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers. |
| 105.    TWC had no duty to inform Plaintiff of all its rates, packages, and promotions for Additional Services. | Disputed.  The Agreement requires TWC to provide its pricing to SeaPoint Residents.  TWC's NOL, Exhibit B, Agreement at paras. 1.4, 4.4. |
| 106.    Plaintiff knew and understood that the HOA paid TWC for the basic cable he received from TWC. | Disputed.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |

CLARK & MARKHAM
SAN DIEGO

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 107.    TWC had no duty to inform Plaintiff that the HOA was paying TWC for his basic cable. | Disputed.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8.  The Agreement requires TWC to provide its pricing to SeaPoint Residents.  TWC's NOL, Exhibit B, Agreement at paras. 1.4, 4.4. |
| 108.    TWC did not charge Plaintiff for basic cable. | Disputed.  TWC is paid by monies collected from members of the HOA through monthly assessments to those members.  Decl. Leon Alpert at para. 8. |
| 109.    TWC correctly charged Plaintiff for the Additional Services he ordered. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |

CLARK & MARKHAM
SAN DIEGO

-36-

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 110.    Plaintiff claims that TWC engaged in unfair business conduct in violation of Business & Professions Code section 17200 *et seq.* by misrepresenting that the reason for the decrease in his bill for Additional Services was due to ordering a bundled package, when the real reason for the price reduction was due to TWC already collecting basic cable fees on behalf of Plaintiff. | Undisputed. |
| 111.    Plaintiff was charged the correct price by TWC both when he ordered Additional Services a la carte, and when he later ordered a bundled package for a lower price. | Disputed.  The Agreement does not provide that TWC may charge more than its published rate card pricing or more than TWC's HOA pricing for the San Diego area.  Agreement at paras. 1.1(B), 2.  Moreover, to the extent applicable, anti-discrimination regulations prohibit TWC from charging consumers in the same geographic region more than other consumers.  47 USC 543(8)(a).  While bulk "*discounts*" to HOAs and other MDUs are permitted (*Ibid.*), there is no provision in law or in the Agreement for charging a higher price to HOA/MDU customers for exactly the same services available to non-HOA/MDU customers.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 112.    Plaintiff's bill for Additional Services was reduced was because he changed his services and ordered a bundled package rather than a host of individual services. | Disputed.  Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12.  Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services.  *Ibid.* Alpert did not request any new services or to be bundled.  *Ibid.* |

-37-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 113.  Plaintiff testified at deposition that he was familiar with TWC advertising relating to bundled packages and knew that customers ordering bundled services received a discount vis-à-vis ordering the same services a la carte. | Disputed.  TWC's San Diego HOA pricing was concealed from Alpert.  Decl. Alpert at para. 18.  TWC did not advertise its HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.163:20; Decl. Alpert at para. 15.  TWC did not even inform HOAs of the existence of HOA pricing.  Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.211:20. |
| 114.  Plaintiff testified at deposition that he changed his Additional Services to a bundled package in order to get a better price. | Disputed.  Alpert never "switched" anything and did not request or order any "bundle." Decl. Alpert at para. 12.  Alpert called TWC and demanded that his bill be corrected and demanded a refund for all the months TWC has been overcharging him for his services.  *Ibid*. Alpert did not request any new services or to be bundled.  *Ibid*. |
| 115.  Plaintiff lacks evidence to show that the general public would likely be misled or deceived by TWC's purported conduct. | Objection.  This is a legal conclusion by TWC and unsupported by any cited evidence.  Legal conclusions are not "undisputed" facts.  TWC's San Diego HOA pricing was concealed from Alpert.  Decl. Alpert at para. 18.  TWC did not advertise its HOA pricing.  Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.163:20; Decl. Alpert at para. 15.  TWC did not even inform HOAs of the existence of HOA pricing. Decl. Ramos, Exhibit A, Depo. Terri Rhodes at p.211:20.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8. |
| 116.  Since March 2003, Plaintiff has ordered certain Additional Services from TWC under a contract titled "Time Warner Cable Residential Services Subscriber Agreement" ("Consumer Agreement").

. | Undisputed. |

CLARK & MARKHAM
SAN DIEGO

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|
| 117.    Plaintiff has received the Additional Services that he ordered from TWC. | Undisputed. |
| 118.    TWC has billed Plaintiff for the Additional Services he ordered, and Plaintiff has paid TWC directly for such services. | Undisputed. |
| 119.    Plaintiff testified in his deposition that the bills he received for Additional Services were correct. | Disputed.  Alpert's billing statements did not reflect HOA pricing until after he called TWC and complained in September 2006.  TWC's Amended Sep. Statement, Exhibit E; Decl. Alpert at para. 14.  As HOA members like Alpert added additional services, the incremental amount billed by TWC for those services was higher than for non-HOA customers for comparable services.  Decl. Wesley L. Nutten, CPA, at para. 8.  The cited testimony does not indicate Alpert's agreement that TWC's bills were correct before he was put into HOA pricing.  See e.g., TWC's NOL, Exhibit A, at p.144:15-18; 148:17; 151:21; 155:25; 158:2.  Agreeing that a bill was received is obviously not the same as agreeing a bill was accurate.  Each cited instance in the deposition transcript where Alpert was actually asked to speculate whether his bill was "accurate" is preceded by a "speculation" objection asserted by Alpert's counsel.  See e.g., TWC's NOL, Exhibit A at p,.148:21; 151:16.  These objections, coupled with the fact that when Alpert learned he was being overcharged in late 2006 he called TWC and demanded a correction to his bill, and that the bill was, in fact, corrected, all undermine TWC's entire argument that Alpert believed his bills were accurate.  Decl. Alpert at paras. 11, 12. |

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT

| MOVING PARTY'S UNDISPUTED MATERIAL FACTS AND SUPPORTING EVIDENCE | OPPOSING PARTY'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|

Dated: June 16, 2008

By     /s/JAMES M. TREGLIO

JAMES M. TREGLIO
DAVID R. MARKHAM
R. CRAIG CLARK
CLARK & MARKHAM LLP

BARRON E. RAMOS
ATTORNEY AT LAW

Attorneys for Leon Alpert and the Class

-40-

PLAINTIFF AND OPPOSING PARTY, LEON ALBERT'S STATEMENT OF DISPUTED AND UNDISPUTED FACTS IN SUPPORT OF HIS OPPOSITION TO DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT