David R. Markham (Bar No. 071814)
R. Craig Clark (Bar No. 129219)
James M. Treglio (Bar No. 228077)
**CLARK & MARKHAM, LLP**
600 B Street, Suite 2130
San Diego, CA 92101
Telephone: (619) 239-1321
Facsimile: (619) 239-5888
dmarkham@clarkmarkham.com
cclark@clarkmarkham.com
jtreglio@clarkmarkham.com

Barron E. Ramos (Bar No. 179620)
**LAW OFFICES OF BARRON E. RAMOS**
132 N El Camino Real #303
Encinitas, CA 92024
Telephone: (760) 274-6438
Facsimile: (760) 994-1354
barron@yourclasscounsel.com

Attorneys for plaintiff and the Class

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual on behalf of himself, and on behalf of all persons similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>vs.<br><br>TIME WARNER CABLE INC., a Delaware Corporation, and Does 1 to 100,<br><br>Defendant | Case No. 08 CV 582 W WMc<br><br>**CLASS ACTION**<br><br>**DECLARATION OF WESLEY NUTTEN IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 30, 2008<br>Time: 10:00 a.m.<br>Place: Courtroom 7; 880 Front Street, San Diego, CA<br>Judge: Hon. Thomas J. Whelan<br><br>[No Oral Argument Pursuant to LR 7.1(d)(1)]<br><br>Complaint: March 13, 2007<br>Removal: March 27, 2008 |

DECLARATION OF WESLEY L. NUTTEN

I, Wesley L. Nutten, declare as follows:

1.  I am a Partner at Desmond, Marcello & Amster (DM&A), a valuation and litigation consulting firm. I am a Certified Public Accountant (CPA), licensed to practice in the state of California, a Certified Management Accountant (CMA), am Accredited in Business Valuation (ABV), and am a Certified Fraud Examiner (CFE). I have an undergraduate degree in business with an emphasis in finance from the University of Southern California and a graduate degree in business, also with an emphasis in finance, from Loyola Marymount University. I make this declaration based on my personal knowledge, and if called to testify, I could and would testify competently to the facts stated in this declaration. Attached hereto as Exhibit A is a current copy of my curriculum vitae.

2.  My education and over 23 years of experience include significant involvement in the analysis and measurement of economic damages. I have testified on numerous occasions on economic damage issues, forensic accounting matters, and business valuations.

3.  In the current instance, I was retained by attorney David Markham to analyze and report on charges incurred by Mr. Leon Alpert for cable television, wireless Internet and digital telephone services provided by Time Warner Cable ("Time Warner") at Mr. Alpert's residence at 12968 Caminito Del Canto, Del Mar, California. As part of my assignment, I was asked to compare the charges incurred by Mr. Alpert to the prices available to the general public (i.e., a Time Warner customer that is not a member of a homeowners association) as advertised by Time Warner.

4.  In 2005, Sea Point Community Association, the homeowners association (HOA) of Sea Point Townhomes ("Sea Point"), the facility where Mr. Alpert lived, signed a System Installation and Service Agreement (the "Agreement") with Time Warner. Under the terms of the Agreement, the HOA would pay $28.77 per month per unit as a Bulk Multi-Channel Video Services fee and Time Warner would provide basic Expanded Cable Television Service ("Advantage Service") to all units within Sea Point. Approximately 75 to 77 cable channels were included with Advantage Service. The HOA passed the $28.77 fee through to the residents

1

of Sea Point as part of their monthly homeowner assessment; however, to the extent residents added additional services, they were billed directly by Time Warner.

5. At the time the Agreement was executed, the cost of Advantage Service to non-HOA members of the general public, based on Time Warner Cable's advertised rates, was $50.97. Accordingly, Mr. Alpert and the other residents Sea Point were expected to enjoy a savings of approximately $22.20 per month ($50.97 less $28.77) directly attributable to the Agreement. This figure represents the difference between what a non-HOA member of general public and a member of the HOA would pay for the same Advantage Service consisting of 75 to 77 channels (see sample document TW0212.)

6. A review of Mr. Alpert's Time Warner bills, and a comparison of these bills to Time Warner's advertised rates to non-HOA members of the general public, revealed that Time Warner charged HOA members more for added services than that which was charged to non-HOA members of the general public for the same added services. As a direct result of this billing practice, the economic benefit of $22.20 enjoyed by Mr. Alpert declined and ultimately disappeared as Mr. Alpert added services to his Time Warner plan. For example, in July 2005, Mr. Alpert's services included the basic 75 to 77 cable channels, digital cable service, premium cable channels, wireless Internet service, and digital phone service. The incremental monthly charge for these additional services was $151.75. This amount was paid by Mr. Alpert in addition to the $28.77 he was assessed each month by his HOA for the basic 75 to 77 cable channels that was billed to the HOA by Time Warner. In contrast, following the introduction of "TRIO" packages available to non-HOA members of the general public wherein digital and premium cable television, wireless Internet, and digital phone service were available in a package, the advertised price to non-HOA members of the general public for these same added services was approximately $125.95 or $25.80 less than what was being paid by Mr. Alpert. Hence, from July 2005 through September 2006, the net economic benefit enjoyed by Mr. Alpert stemming from the Agreement had disappeared and Mr. Alpert appears to have been paying approximately $3.60 per month more than the non-HOA general public for comparable services. This calculation was performed by comparing the amount Mr. Alpert paid to Time Warner in

addition to the $28.77 he was assessed by his HOA to the amount charged by Time Warner to non-HOA members of the general public. Consequently, by virtue of the difference in the amounts paid by Mr. Alpert for added services beyond the basic 75 to 77 channels relative to what was paid by a non-HOA member of the general public for the same services, Mr. Alpert suffered damages of approximately $25.80 per month during the July 2005 through September 2006 time period (see sample documents TW0212, TW0213, TW214, and TW0071.)

7. In March 2005, Time Warner introduced "HOA Packages" presumably available to subscribers that were provided Advantage Service via HOAs such as Sea Point Community Association. From this time through September 2006, Mr. Alpert continued to be charged for services on an "ala carte" basis. A comparison of total monthly charges incurred by Mr. Alpert relative to charges he would have incurred had he been a subscriber of the HOA package reveals that Mr. Alpert was actually paying a total of approximately $15.85 more per month than he would have been paying for comparable services under an HOA package. Mr. Alpert testified that he was unaware of the availability of the HOA Package from March 2005 through September 2006. In October 2006, Mr. Alpert was switched into an HOA Package that resulted in a reduction in his monthly charges of approximately $23.85 (see sample documents TW0566, TW0184, TW0113, and TW0116.)

8. In conclusion, my findings are that a) the Agreement between Time Warner and the HOA provided a savings to HOA members of approximately $22.20 relative to what non-HOA members of the general public were being charged for the basic 75 to 77 channels, b) as HOA members added additional services, the incremental amount Time Warner billed for these services was higher than the incremental amount billed to non-HOA members of the general public for comparable services, c) the economic benefit of the Agreement to HOA members was not preserved and by mid 2005, Mr. Alpert was paying _more_ than the non-HOA general public for comparable services, d) in 2005 and 2006, Time Warner instituted HOA Package rates which would have restored the economic benefit of the Agreement and reduced the amount paid by Mr. Alpert by approximately $23.85 per month; however, the benefit of the HOA Package rates was not made available to Mr. Alpert until October 2006, and e) Mr. Alpert suffered damages of

1 | approximately $25.80 per month during the July 2005 through September 2006 time period.

2 | I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE

3 | OF CALIFORNIA, THAT THE FOREGOING IS TRUE AND CORRECT.

4 | Executed this  21ST  day of  MARCH , 2008 at Los Angeles, California.

*[signature]*

Wesley L. Nutten

4

Exhibit A

**WESLEY L. NUTTEN, CPA/ABV, CMA, CFE**
*Partner*

| | |
|---|---|
| **EXPERIENCE** | Mr. Nutten brings over 23 years of litigation consulting experience to Desmond, Marcello & Amster, with a practice emphasis on damage analyses, forensic accounting investigations, business valuations, and class action claims administration. |
| | In addition to his litigation consulting experience, Mr. Nutten has managed financial statement audits, reviews and compilations, and has prepared tax returns for corporations, partnerships and individuals. |
| | Prior to joining Desmond, Marcello & Amster, Mr. Nutten was a Director of Litigation Consulting Services at BDO Seidman, and before that gained valuable experience at Price Waterhouse, Peterson Consulting and Biggs & Company. |
| **TECHNICAL AND SPECIAL EXPERTISE** | Mr Nutten provides litigation consulting services and expert witness testimony to clients involved in disputes. This aspect of his practice typically relates to the preparation and analysis of damage claims and forensic accounting investigations. |
| | Mr. Nutten also provides business valuation services in commercial, litigation and eminent domain settings; and class action claims administration services in connection with large class action settlements. |
| **EDUCATION AND CERTIFICATIONS** | MBA degree, Finance, Loyola Marymount University<br>BS degree, Finance, University of Southern California<br>Certified Public Accountant (CPA)<br>Certified Management Accountant (CMA)<br>Accredited in Business Valuation (ABV)<br>Certified Fraud Examiner (CFE) |
| **PROFESSIONAL AFFILIATIONS** | American Institute of Certified Public Accountants (AICPA)<br>California Society of Certified Public Accountants (CSCPA)<br>Institute of Management Accountants (IMA)<br>Association of Certified Fraud Examiners (ACFE)<br>Loyola Marymount University – Adjunct Professor of Accounting<br>Westchester Family YMCA – Board Member / Current Vice-Chair / Former Treasurer<br>Westchester Neighborhood School – Former Board Member / Former Treasurer<br>California Academic Decathlon – Former Board Member<br>Junior Achievement – Former Economics Instructor |

DM&A