1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  RYAN T. HANSEN (Bar No. 234329)
   CARRIE S. DOLTON (Bar No. 234298)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA  92101-4297
   Tel:  619.699.2700
5  Fax:  619.699.2701

Attorneys for Defendant
TIME WARNER ENTERTAINMENT-ADVANCE/
NEWHOUSE PARTNERSHIP, A NEW YORK
GENERAL PARTNERSHIP, THROUGH ITS SAN
DIEGO DIVISION, DBA TIME WARNER CABLE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>TIME WARNER CABLE, INC., a Delaware corporation, and DOES 1 TO 100,<br><br>　　　　Defendants. | CV No. 08CV582 W WMc<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TIME WARNER CABLE'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date　　June 30, 2008<br>Time　　10:00 a.m.<br>Dept:　　7<br>Judge:　　Hon. Thomas J. Whelan<br><br>**[No Oral Argument Pursuant to CivLR 7.1(d)(1)]**<br><br>Complaint:　March 13, 2007<br>FAC:　　　May 16, 2007<br>Removal:　March 27, 2007 |

WEST\21448605.5

08CV582 W WMC

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFF'S NEW CLAIMS CANNOT CIRCUMVENT TWC'S MOTION ............... 1

    A. Plaintiff's Tardy Claims Are Raised Solely to Avoid Summary Judgment ............ 3

    B. Plaintiff's New Federal Claims Seek to Significantly Alter the Litigation. ........... 3

    C. Consideration of Plaintiff's New Theories Would be Futile ................................. 4

III. PLAINTIFF'S NEW CLAIMS LACK MERIT ................................................................. 5

    A. Plaintiff's Predatory Pricing Claim Lacks Merit ................................................... 5

        1. Plaintiff's Claim is Inapplicable to the Facts and Allegations ................... 5

        2. Plaintiff's Claim is Not Supported by Competent Evidence ..................... 5

        3. Plaintiff's Calculations are Incorrect ......................................................... 5

    B. Plaintiff's Purported Violation of FCC Order Lacks Merit ................................... 6

    C. Plaintiff's New Overcharging Theory Lacks Merit ............................................... 6

        1. Failure to Disclose Claims Must be Based on a Duty to Disclose ............. 7

        2. No Duty to Disclose Discounts or Promotions Exists ............................... 7

IV. PLAINTIFF HAS FAILED TO IDENTIFY ANY MATERIAL DISPUTE OF FACT ................................................................................................................................ 9

    D. Plaintiff's "Disputed Facts" are Not Based on Competent Evidence .................... 9

    E. Plaintiff Contradicts His Deposition Testimony .................................................. 10

V. CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Berryman v. Merit Prop. Mgmt., Inc.*,
    152 Cal. App. 4th 1544 (2007) .................................................................................. 7

*Block v. City of Los Angeles*,
    253 F.3d 410 (2001) ................................................................................................ 10

*Buller v. Sutter Health*,
    160 Cal. App. 4th 981 (2008) ............................................................................ 7, 8, 9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................................ 5, 8, 9

*Daugherty v. Am. Honda Motor Co., Inc.*,
    144 Cal. App. 4th 824 (2006) .................................................................................. 7

*Green v. Ralee Eng'r Co.*,
    19 Cal. 4th 66 (1998) ............................................................................................... 9

*Keyes v. Echostar Commc'ns Corp.*,
    No. G034821, 2005 WL 2093016 (Cal. App. Aug. 31, 2005) ........................... 7, 8, 9

*M/V American Queen v. San Diego Marine Const. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) .......................................................................... 1, 2, 3

*Roberts v. Ariz. Bd. of Regents*,
    661 F.2d 796 (9th Cir. 1981) .................................................................................... 2

*Schlacter-Jones v. Gen. Tel. of Cal.*,
    936 F.2d 435 (9th Cir. 1991) ............................................................................ 1, 2, 3

## STATUTES

47 U.S.C. § 543 ..................................................................................................................... 4

47 U.S.C. § 543(b)(8)(A) ...................................................................................................... 5

47 U.S.C. § 547(d) ................................................................................................................ 5

Cal. Civ. Proc. Code § 437c(p)(2) ........................................................................................ 9

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 3, 8

## MISCELLANEOUS

*Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units
    and Other Real Estate Developments*,
    FCC 07-189, 43 CR 76 ( Nov. 13, 2007) ................................................................. 6

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Implementation of Sections of the Cable Television Consumer Protection and Competition Act of 1992,*
   8 FCC Rcd 5631 .................................................................................................................. 5

*Telecommunications Services Inside Wiring,*
   18 FCC Rcd 1342 (2003) ................................................................................................... 6

## I. INTRODUCTION.

Plaintiff Leon Alpert's ("Plaintiff") opposition to Time Warner Cable's ("TWC") motion for summary judgment effectively concedes his inability to succeed on his claims against TWC. Unable to rebut TWC's motion, Plaintiff abandons his complaint and turns to entirely new legal theories in his opposition. These theories, which include a federal predatory pricing claim, violation of a Federal Communications Commission ("FCC") order, and a new "overcharge" theory, are outside the scope of this lawsuit and cannot be used to circumvent TWC's motion.

Plaintiff's opposition is also deficient because it is not based on admissible evidence. Plaintiff relies on a declaration from Mr. Wesley L. Nutten to support his new theories, yet Mr. Nutten's declaration fails to provide the foundation or bases for his conclusions, relates to matters outside the scope of the litigation, and uses entirely different cable services in his purported comparison of identical services. Plaintiff also relies in part on his own declaration, which fails to create a triable issue of material fact and contradicts his prior deposition testimony. Plaintiff has presented no admissible evidence to show a triable issue of material fact.

Furthermore, Plaintiff's new "overcharging" theory—while not properly before the Court—presents a purely legal issue as to whether TWC has an affirmative duty to notify its customers of its discounts and promotions. The law is clear that no such duty exists, nor is there any triable issue of fact pertaining to this legal question. Plaintiff's new "overcharging" theory is no better than the theory alleged in his complaint, as courts have already rejected a duty to inform customers of discounts. Accordingly, TWC's motion for summary judgment should be granted.

## II. PLAINTIFF'S NEW CLAIMS CANNOT CIRCUMVENT TWC'S MOTION.

Plaintiff's new claims and theories are clearly outside the scope of his allegations against TWC and are asserted solely as a last-ditch effort to circumvent summary judgment. This Court has repeatedly held that such tactics cannot be used to defeat summary judgment. *See e.g., Schlacter-Jones v. Gen. Tel. of Cal.*, 936 F.2d 435, 443 (9th Cir. 1991) (finding that amended allegations are "not a vehicle to circumvent summary judgment.") (overruled on other grounds, *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 692-93 (9th Cir. 2001) (en banc)); *M/V American Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983)

(denying leave to amend pleadings in light of pending motion for summary judgment); *Roberts v. Ariz. Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (same).

In *Schlacter-Jones*, plaintiff sought leave to amend her complaint to assert new theories of liability in conjunction with opposing defendant's summary judgment motion. *Schlacter-Jones*, 936 F.2d at 438. The district court granted defendant summary judgment and denied plaintiff leave to amend, finding that the timing of plaintiff's request for leave—more than a year after filing her complaint and while defendant's summary judgment motion was pending—and the futility of the amendments rendered leave improper. *Id*. at 443. This Court affirmed the district court's rulings, noting that allowing parties to amend their pleadings must be considered against "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id*. (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court noted that the timing of the motion, during a pending motion for summary judgment and after discovery had been conducted, "weighs heavily against allowing leave," explaining that **"[a] motion for leave to amend is not a vehicle to circumvent summary judgment."** *Id.* at 443 (emphasis added).

Similarly, in *M/V American Queen*, the Court affirmed the denial of plaintiff's request for leave to add new theories of liability in order to survive summary judgment. Plaintiff in *M/V American Queen* originally brought several claims against defendants based on negligent repairs conducted on plaintiff's ship. *Id.* at 1486. After defendants filed a motion for summary judgment on the claims, but before the hearing on the motion, plaintiff sought leave to amend its pleadings to add claims for fraud and negligent breach of duty to disclose. *Id*. The district court denied plaintiff's request to amend and granted summary judgment to defendants. *Id*. Affirming the district court's denial of leave to amend, the *M/V American Queen* court found that permitting amended pleadings was not warranted where (1) plaintiff delayed over one year in asserting the new claims for which no newly discovered facts were alleged; (2) the new theories of liability would have significantly altered the litigation as they were based on different acts, time periods, and persons involved; and (3) a motion for summary judgment was pending and possible

1  disposition of the case would be unduly delayed by allowing the amended pleading. *Id.* at 1492.

2  As in *Schlacter-Jones* and *M/V American Queen*, Plaintiff's new claims and theories raised for the first time in his opposition brief should not be considered because they are untimely, are raised as a desperate attempt to defeat TWC's pending motion for summary judgment, would significantly alter the nature of the litigation, lack merit and are futile.

### A. Plaintiff's Tardy Claims Are Raised Solely to Avoid Summary Judgment.

Similar to *Schlacter-Jones* and M*/V American Queen*, Plaintiff's new theories are asserted for the first time, without explanation, more than one year after his complaint was filed and make no assertion of newly discovered facts or evidence. Furthermore, the fact that Plaintiff raised these new arguments for the first time in opposition to TWC's pending motion shows that the claims are intended merely as a "vehicle to circumvent summary judgment." *Schlacter-Jones*, 936 F.2d at 443. As noted by the *Schlacter-Jones* court, the timing of new allegations during a pending motion for summary judgment "weighs heavily" against the court allowing new pleadings. *Id*. Here, Plaintiff's new arguments are not only raised while a summary judgment motion is pending, but they were made—for the first time—directly in opposition to the summary judgment motion. Plaintiff should not be permitted circumvent TWC's motion for summary judgment by utilizing such tactics.

### B. Plaintiff's New Federal Claims Seek to Significantly Alter the Litigation.

Furthermore, as in *M/V American Queen*, Plaintiff's new claims would significantly alter the nature of the litigation as they are not even remotely tied to the allegations of his complaint against TWC. Plaintiff's First Amended Complaint alleges a single unfair competition claim against TWC based on (1) the incorrect premise that he had been overcharged for basic cable services that were paid for by his HOA and, to a lesser extent, (2) the inclusion of a purportedly unconscionable clause in customer agreements requiring notification of billing errors within thirty days. (First Amended Complaint ("FAC") ¶¶ 12, 14, 15, 17, 18, 20, 29, 38, 40, 43) As pled by Plaintiff in his FAC, this case is about whether "TIME WARNER has systematically violated Business & Professions Code section 17200 . . . by charging [HOA] Residents directly for services already provided for and paid for under the HOA agreements." (FAC ¶ 43, p. 12, lines

16-19.) It is undisputed that the only services "provided for and paid for under the HOA agreements" are basic cable services. (SS ¶¶ 3-11.) Nonetheless, Plaintiff's opposition largely ignores the claims he actually brought against TWC and instead argues (for the first time) that TWC engaged in federal predatory pricing and violated a FCC order. (*See* Opposition Brief p. 11, line 19—p. 14, line 13.) Plaintiff appears to assert these new claims against TWC as underlying support for his unfair competition claim. However, Plaintiff's unfair competition claim makes no mention of predatory pricing or a purported violation of a FCC order.

Similarly, Plaintiff radically changed his "overcharge" claim set forth in his FAC (based on being charged for basic cable services) to two new theories, neither of which are tied to his allegations of overcharging for basic cable services. Plaintiff attempts to redefine the case in his opposition brief by stating the lawsuit is based on two "claims:"

> (1) "whether [TWC] can bill higher a la carte rates to its HOA customers without notifying them that lower HOA rates are also in effect," and
>
> (2) a claim "involv[ing] the use of exclusive contracts for sale of basic cable channels to HOAs at rates below the basic rates for non-HOA customers, and once the HOA members are locked in, charging them higher, discriminatory rates for additional services as they are added, in violation of the unlawfulness prong of the UCL, borrowing the provisions of 47 U.S.C. § 543."

(*See* Opposition Brief, p. 1, lines 3-15.)

The first "claim" is based on a theory that customers are overcharged whenever a company creates a discounted product that might possibly be attractive to existing customers, but does not immediately inform each existing customer of the discounted product. This claim is entirely unrelated to the claims pled in the FAC—that TWC overcharged Plaintiff for cable services by charging him for basic cable services already paid for by his HOA. Similarly, Plaintiff's second theory—which is comprised of the predatory pricing claim—pertains to "discriminatory rates <u>for additional services</u>" (emphasis added) and has nothing to do with the purported overcharging <u>for basic cable services</u> alleged in his FAC.

**C.     Consideration of Plaintiff's New Theories Would be Futile.**

Finally, Plaintiff's new theories lack merit, rendering it futile for the Court to allow

1  Plaintiff to informally amend his pleadings.  As described below, Plaintiff's new claims are

2  without merit and present no dispute of material fact.  Thus, while summary judgment is

3  appropriate in any case, the futility of allowing Plaintiff to add his new claims further weighs

4  against considering them in the first place, as it would only cause delay.  For all of these reasons,

5  Plaintiff's new theories asserted in his opposition brief should not be considered by the Court.

**III.   PLAINTIFF'S NEW CLAIMS LACK MERIT.**

     **D.   Plaintiff's Predatory Pricing Claim Lacks Merit.**

          **1.   Plaintiff's Claim is Inapplicable to the Facts and Allegations.**

9  Plaintiff's vague claim of predatory pricing is entirely misplaced for multiple reasons, all

10  of which cannot be fully explained in this reply brief.  Importantly, 47 U.S.C. section 543(d)

11  pertains only to regulated cable services (basic cable and equipment) and not the Additional

12  Services (including phone and internet services) that Plaintiff's new "overcharging" claim is

13  centered on.  47 U.S.C. § 547(d); *see also, Implementation of Sections of the Cable Television*

14  *Consumer Protection and Competition Act of 1992,* 8 FCC Rcd 5631 at ¶ 421 (Section 543(d)'s

15  "focus is properly on regulated services in regulated markets.")  Likewise, 47 U.S.C. section

16  543(b)(8)(A) is in applicable because it precludes requiring "basic cable only" customers to

17  purchase additional tiers before purchasing other programming, yet there is no claim that Plaintiff

18  (or putative class members) were required to purchase additional tiers as a condition to ordering

19  Additional Services.  47 U.S.C. § 543(b)(8)(A).  Moreover, it is unclear how alleged

20  "overcharges" can support a "predatory pricing" claim—which is based on prices set below cost.

          **2.   Plaintiff's Claim is Not Supported by Competent Evidence.**

22  In opposing a summary judgment motion, a party must support its triable issues of

23  material fact, claims, and theories with admissible evidence.  *Celotex Corp. v. Catrett*, 477 U.S.

24  317, 324 (1986).  The sole support for Plaintiff's predatory pricing claim consists of Mr. Nutten's

25  declaration, which fails to provide admissible evidence.  (*See e.g.*, SS ¶ 40; *infra*, Part IV.A.)

          **3.   Plaintiff's Calculations are Incorrect.**

27  As fully described in TWC's evidentiary objections, Mr. Nutten's calculations in support

28  of Plaintiff's opposition are egregiously incorrect.  While Mr. Nutten claims that TWC charged

1  Plaintiff more than the general public for the same services, his calculations contain multiple
2  misleading "apples to oranges" comparisons.  First, Mr. Nutten compares Plaintiff's *a la carte*
3  *pricing* for Additional Services with *discounted bundled pricing* for non-bulk customers.  There is
4  no dispute that an accurate comparison of Plaintiff's a la carte pricing v. general a la carte pricing,
5  or Plaintiff's discounted bundled pricing v. general discounted bundled pricing, shows Plaintiff
6  was never charged more than the general public for the same services.  Second, Mr. Nutten used
7  the least expensive, entry level bundle available to the general public for his comparison (the
8  DIGIPIC On Demand bundle priced at $126.95) instead of the bundle that is equivalent to the one
9  ordered by Plaintiff (the DIGIPIC On Demand 4000 bundle priced at $161.95).  Mr. Nutten's
10 declaration fails to present reliable, admissible evidence, and fails to support Plaintiff's predatory
11 pricing and other claims in opposition to TWC's summary judgment motion.

### E.    Plaintiff's Purported Violation of FCC Order Lacks Merit.

Plaintiff's reference to a purported violation of the FCC's order in *Exclusive Service Contracts for Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments*, FCC 07-189, 43 CR 76 ( Nov. 13, 2007) is also nothing more than a red herring. For all relevant times during the class period, March 13, 2003—March 13, 2007, there was no prohibition on exclusive contracts for cable services.  *See, Telecommunications Services Inside Wiring*, 18 FCC Rcd 1342 (2003) at ¶ 71 ("In sum, we find that the record does not support a prohibition on exclusive contracts for video services . . .").  TWC's treatment of exclusive contracts has been legal and fair both before and since the November 13, 2007 FCC ruling.

### F.    Plaintiff's New Overcharging Theory Lacks Merit.

Plaintiff's new theory of overcharging—that TWC can not continue to charge plaintiff (and other members of the class) the "a la carte rates" they agreed to pay at the time services were ordered without notifying them that new discounted rates have become available at some later time —similarly lacks merit and cannot defeat TWC's summary judgment motion.  This new theory presents a purely legal issue as to whether service providers such as TWC have a duty to notify their customers anytime a new package discount is created that might be attractive to certain of its customers.  However, no such duty exists, as such a requirement is entirely

impractical. In the absence of such a duty, Plaintiff's new theory cannot support his claim.

### 1.  Failure to Disclose Claims Must be Based on a Duty to Disclose.

Despite Plaintiff's arguments to the contrary, it is well established that "[a]bsent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1557 (2007); *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (2006) ("We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL."); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 987 (2008) ("It appears settled that 'absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL.'"). As explained in *Buller* and *Daugherty*, the existence of a duty to disclose is necessary for a UCL claim like Plaintiff's "because a consumer is not 'likely to be deceived' by the omission of a fact that was not required to be disclosed in the first place." *Buller*, 160 Cal. App. 4th at 987; *Daugherty*, 144 Cal. App. 4th at 838.

### 2.  No Duty to Disclose Discounts or Promotions Exists.

It is similarly clear that a duty to notify all customers of discounts, as advocated by Plaintiff, simply does not exist. The plaintiff in *Buller* brought an action on this same theory, alleging an unfair competition claim against a hospital for failing to disclose discounts that were available if bills were promptly paid. *Buller*, 160 Cal. App. 4th at 983. Noting that the plaintiff had failed to identify a legal duty to support his failure to disclose claim, the *Buller* court distinguished cases cited by plaintiff on the ground that "there is a fundamental difference [] between the practice of artificially inflating the price of a service beyond its actual costs and the practice of voluntarily offering customers discounts on properly priced service." *Id*. at 989. Where plaintiff's bill was correct, but simply did not reflect the discount that was available to plaintiff upon request, the *Buller* court found that "the complaint cannot be read to allege that [defendants] have made any affirmative misrepresentations with respect to the amounts charged," and thus plaintiff's UCL claim was improper. *Id*. at 989-90.

Likewise, in *Keyes v. Echostar Communications Corp.*, the court thoroughly rejected plaintiff's unfair competition claim based on a television provider failing to disclose promotional

offers to its customers. *Keyes v. Echostar Commc'ns Corp.*, No. G034821, 2005 WL 2093016 (Cal. App. Aug. 31, 2005) (unpublished). Plaintiff in *Keyes* brought an unfair competition claim against his television provider for failing to disclose a promotional offer, which eliminated a $5 monthly surcharge, to existing customers. *Id.* at * 2. As the court explained:

> "The only question remaining is whether such conduct-i.e., offering a discounted service to new customers, while failing to affirmatively disclose and extend the same offer to current subscribers-constitutes a cause of action under either the Unfair Competition Law (Bus. & Prof.Code, § § 17200 et seq.) or the False Advertising Act (Bus. & Prof.Code, § § 17500 et seq.) We conclude it does not. . . . We are hard-pressed to find anything false or unfair in that practice"

*Id.* at *5.

The *Buller* and *Keyes* courts also recognized that imposing an affirmative duty on providers of products and services to notify customers of discounts would be impractical and, in most cases, undesired:

> "Finally, we note that it is fairly common for consumers to ask for and receive discounts on products and services. . . . . Indeed, taken to their logical conclusion, appellant's arguments would effectively require a business to disclose all discretionary discounts it might offer. While we sympathize with appellant's frustration over his failure to benefit from respondents' discount policy, when viewed from the standpoint of consumers in general we believe respondents' practice is beneficial rather than harmful, inasmuch as they apparently are not required to offer . . . any discounts whatsoever."

*Buller*, 160 Cal. App. 4th at 991-92.

> "To put it plainly, there is no free-floating requirement that parties to an ongoing contract must keep each other informed of when a more advantageous deal might be obtainable. A landlord, for example, has no obligation to inform her month-to month tenant that while she is happy to be getting $1500 per month, she would willingly settle for $1300. Likewise, that tenant has no obligation to disclose that he loves the apartment so much he would probably pay $2000 to stay. In this case, EchoStar was no more obligated to inform its current DVR subscribers, who had agreed to pay five dollars per month, that the feature might be obtainable for free, than those customers were to tell EchoStar that they loved it so much they would willingly pay ten dollars for it. Both parties are equally entitled to keep those thoughts to themselves. And that is fair."

*Keyes*, No. G034821, 2005 WL 2093016, at *7.

Here, plaintiff has failed to demonstrate TWC had a duty to disclose the availability of "bundled" discounts when they were adopted sometime after he ordered his services as required for his unfair competition claim. In Plaintiff's opposition papers, he briefly argues that no duty to disclose discounts is required, then quickly retreats to claiming that a duty may exist based on a provision in TWC consumer contracts in which new customers acknowledge they are aware of TWC's current pricing. (Opposition Brief, p. 14, lines 25-28.) However, Plaintiff fails to explain how the mere acknowledgement by new customers that they are aware of pricing when they first ordered their services somehow imposes a legal duty on TWC to notify all existing customers of any and all discounts that may later have become available. Nowhere in TWC's consumer contracts does TWC agree to disclose all future discounts, promotions, and/or pricing to its customers. Plaintiff's claim in this regard is simply misplaced.

Plaintiff also attempts to save his unfair competition claim by claiming the failure to disclose discounts violates the implied duty of good faith and fair dealing. (Opposition Brief, p. 19, lines 17-21.) This passing reference to a duty of good faith does not create a duty to disclose discounts and/or promotions. As explained in *Buller* and *Keyes*, there is nothing unfair about not disclosing every discount or promotion as it becomes available. *Buller*, 160 Cal. App. 4th at 991-92, 7; *Keyes*, No. G034821, 2005 WL 2093016, at *7. This issue of whether TWC has a duty to disclose discounts and/or promotions is a purely legal issue for which no dispute of material fact exists. Due to the absence of a duty, TWC's motion for summary judgment should be granted.

## IV. PLAINTIFF HAS FAILED TO IDENTIFY ANY MATERIAL DISPUTE OF FACT.

### A. Plaintiff's "Disputed Facts" are Not Based on Competent Evidence.

Once the moving party has established that one or more elements of the plaintiff's cause of action cannot be established, the burden shifts to the opposing party to produce admissible evidence setting forth specific facts showing a triable issue of material fact exists. Cal. Civ. Proc. Code § 437c(p)(2); *Green v. Ralee Eng'r Co.*, 19 Cal. 4th 66, 72 (1998). Claims and theories not supported by admissible evidence do not raise a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Here, Plaintiff has failed to present any triable issues of material fact. As noted above, Plaintiff's arguments in opposition relate to new claims that are not a part of this

1  case and are thus immaterial.  The only portion of plaintiff's opposition that arguably purports to
2  respond to the claims asserted in the FAC—regarding the thirty-day notice period for billing
3  errors—fails to raise a triable issue of fact on the issue of unconscionability and relies on a
4  contradiction of his deposition testimony regarding reasonableness.  (*See infra*, Part IV.B; SS ¶¶
5  66-69.)  Moreover, Plaintiff has provided no admissible evidence that could possibly provide
6  support for a dispute of material fact, as fully set forth in TWC's evidentiary objections.

### B.   Plaintiff Contradicts His Deposition Testimony.

Plaintiff's opposition relies in part on statements in Plaintiff's declaration that contradict his previous deposition testimony.  A plaintiff cannot submit witness declarations that contradict the witnesses' own prior deposition testimony in an attempt to defeat summary judgment. *Block v. City of Los Angeles*, 253 F.3d 410, 419, n.2 (2001).  For example, with regard to the purportedly unconscionability and unreasonableness of TWC's thirty-day notice period for billing errors, Plaintiff states in his declaration that he does not think it is unreasonable to require consumers to complaint within 30 days "about obvious errors in their bills," but thinks it is unreasonable here where errors are purportedly concealed. (Alpert Declaration p. 4, lines 9-13.)  However, Plaintiff testified at deposition that the 30-day provision was not unreasonable, or even applicable, in the context of this case: "Soon as I found out I was being overcharged, I did complain.  And I don't think it's unreasonable to make the complaint within 30 days." (NOL Ex. A, Leon Alpert Deposition Transcript, p. 165, lines 13-15.)  Plaintiff's change in testimony cannot defeat TWC's summary judgment motion.

### V.   CONCLUSION.

For all the foregoing reasons, and reasons set forth in TWC's moving papers, TWC respectfully requests the Court grant its motion for summary judgment.

Dated:  June 23, 2008

DLA PIPER US LLP

By  s/Jeffrey M. Shohet
  JEFFREY M. SHOHET
  Attorney for Time Warner Cable

DLA PIPER US LLP
SAN DIEGO

WEST\21448605.5                                    -10-

08CV582 W WMC