1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   RYAN T. HANSEN (Bar No. 234329)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA 92101-4297
   Tel: 619.699.2700
5  Fax: 619.699.2701

6  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
7  NEWHOUSE PARTNERSHIP, A NEW YORK
   GENERAL PARTNERSHIP, THROUGH ITS SAN
8  DIEGO DIVISION, DBA TIME WARNER CABLE

9                    UNITED STATES DISTRICT COURT

10                 SOUTHERN DISTRICT OF CALIFORNIA

11

12  LEON ALPERT, an individual, on behalf      CV No. 08CV00582 W WMc
    of himself, on behalf of all those similarly
13  situated, and on behalf of the general       **DEFENDANT TIME WARNER CABLE,**
    public,                                       **INC.'S OBJECTIONS TO EVIDENCE**
14                                                **PROFFERED AND REQUEST FOR**
                    Plaintiffs,                    **JUDICIAL NOTICE IN SUPPORT OF**
15                                                **PLAINTIFF'S OPPOSITION TO TIME**
         v.                                       **WARNER CABLE, INC.'S MOTION FOR**
16                                                **SUMMARY JUDGMENT**

17  TIME WARNER CABLE, INC., a            Date        June 30, 2008
    Delaware corporation, and DOES 1 to 100,  Time        10:00 a.m.
18                                        Dept:       7
                    Defendants.          Judge:      Hon. Thomas J. Whelan
19
                                         **[No Oral Argument Pursuant to**
20                                       **CivLR 7.1(d)(1)]**

21                                       Complaint:  March 13, 2007
                                         FAC:        May 16, 2007
22                                       Removal:    March 27, 2007

23

24

25

26

27

28

1    Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2    general partnership, ("TWC") hereby submits the following evidentiary objections to Plaintiff

3    Leon Alpert's ("Plaintiff") proffered evidence and request for judicial notice in support of his

4    opposition to TWC's Motion for Summary Judgment ("Opposition").  As shown herein,

5    Plaintiff's "evidence" in opposition to TWC's Motion for Summary Judgment is inadmissible.

6    The declarations submitted by Plaintiff and Mr. Wesley L. Nutten contain numerous statements

7    which contradict previous deposition testimony, contain legal or factual conclusions that lack

8    foundation, constitute inadmissible hearsay, and contain irrelevant statements or opinions.

9    **I.    INADMISSIBLE EVIDENCE CANNOT REBUT A MOTION FOR SUMMARY JUDGMENT.**

10

11    It is well settled that only admissible evidence may be considered by the court in ruling on

12    a motion for summary judgment.  *Beyene v. Coleman Security Servs., Inc.*, 854 F.2d 1179, 1181

13    (9th Cir. 1988); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991)

14    (declarations and other evidence of a party moving for summary judgment are subject to a timely

15    objection and may be stricken).  Thus, the facts relied upon when ruling on a motion for summary

16    judgment must be admissible under the rules governing the admission of evidence.  *Hal Roach*

17    *Studios, Inc. v. Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1990).

18    The declarations relied on by Plaintiff to oppose TWC's Motion for Summary Judgment

19    fail to present admissible evidence and should not be considered on the following evidentiary

20    grounds:

21    **A.    Declarations in Support of a Motion for Summary Judgment Cannot Contradict Prior Sworn Deposition Testimony.**

22

23    As a matter of law, declarations submitted as evidence in connection with a motion for

24    summary judgment cannot contradict prior deposition testimony.  *See, e.g., Kennedy v. Allied*

25    *Mutual Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("If a party who has been examined at length

26    on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own

27    prior testimony, this would greatly diminish the utility of summary judgment as a procedure for

28    screening out sham issues of fact."); *Lopez v. General Motors Corp.*, 697 F.2d 1328, 1333 (9th

1    Cir. 1983) ("We do not take kindly to counsel's having [the plaintiff] attempt, in a declaration ...

2    to repudiate or contradict her sworn deposition testimony."); *Maurey v. University of Southern*

3    *Cal.*, 87 F. Supp. 2d 1021, 1037 (C.D. Cal. 1999) (declaration contradicting prior sworn

4    deposition testimony inadmissible for purposes of summary judgment); *Vons Cos. v. Federal Ins.*

5    *Co.*, 57 F. Supp. 2d 933, 942 (C.D. Cal. 1998) ("'A party cannot create an issue of fact by a

6    declaration contradicting his or her own deposition or other sworn testimony.'") (citation

7    omitted).

8    **B.    Evidence Submitted in Support of a Motion for Summary Judgment Must Be Based Solely Upon Personal Knowledge.**

9

10    A declaration is inadmissible unless it is based upon the declarant's own personal

11    knowledge. Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit shall be made on personal

12    knowledge...."). Speculation and conclusions cannot create a disputed issue. *Id.* Evidence

13    submitted in support of… a motion for summary judgment must be "admissible under the

14    standard articulated in 56(e)." *In re Real Estate Associates Limited Partnership Litigation*, 2002

15    U.S. Dist. LEXIS 18050, *6 (C.D. Cal. 2002); *see also, Vons Cos.*, 57 F. Supp. 2d at 942 ("To be

16    admissible for purposes of summary judgment, declarations or affidavits must be based on

17    personal knowledge ….")

18    **C.    Evidence Submitted in Support of a Motion for Summary Judgment Cannot Contain Legal or Factual Conclusions That Lack Foundation.**

19

20    Evidentiary facts are required for declarations. Mere conclusions of fact or law are not

21    sufficient. Fed. R. Evid. 901; *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.

22    1978) (legal argument cannot establish an admissible fact for purposes of summary judgment),

23    *cert. denied*, 440 U.S. 981 (1979); *Mitchell v. Peralta Community College Dist.*, 766 F. Supp.

24    834, 841 n.9 (N.D. Cal. 1991) ("[a] [c]ourt cannot evaluate the significance [of evidence] because

25    [it] lacks foundation.").

26    /////

27    /////

28    /////

**D.    Evidence Submitted in Support of a Motion for Summary Judgment Cannot Contain Irrelevant Statements or Opinions.**

Irrelevant evidence is inadmissible.  Fed. R. Evid. 401, 402.  Likewise, subjective statements of intent or opinion are inadmissible because such statements are mere conclusions.

**E.    Evidence Submitted in Support of a Motion for Summary Judgment Cannot Contain Inadmissible Hearsay.**

Hearsay evidence is insufficient to support a motion for summary judgment.  *See, e.g., Block v. City of Los Angeles*, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court to consider declaration containing inadmissible hearsay); *Kim v. United States*, 121 F.3d 1269, 1276-77 (9th Cir. 1997) (district court properly rejected declaration containing inadmissible hearsay); *Anheuser-Busch, Inc. v. Natural Beverage Distrib's*, 69 F.3d 337, 345 n. 4 (9th Cir. 1995) (inadmissible hearsay cannot be used to defeat summary judgment); *Rossi v. Trans World Airlines, Inc.*, 507 F.2d 404, 406 (9th Cir. 1974) (affirming summary judgment; declaration submitted in opposition to summary judgment that "contained only inadmissible hearsay ... was properly disregarded by the trial court.") (citing Fed. R. Civ. Proc. 56(e)).

**F.    Evidence Submitted in Support of a Motion for Summary Judgment Cannot Violate the Best Evidence Rule.**

The Best Evidence Rule requires the production of the original in order to prove the contents of a writing.  Fed. R. Evid. 1002 ("To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required ….")  *See, e.g., Preferred Communications, Inc. v. City of Los Angeles*, 1990 U.S. Dist. LEXIS 20206, * 5 (C.D. Cal. 1990) ("[T]he best evidence rule requires a written document … when the proponent of the evidence is trying to prove the content of a writing through secondary evidence.")

/////

/////

/////

/////

## II.    TWC'S SPECIFIC EVIDENTIARY OBJECTIONS.

Based on the above authorities, TWC hereby specifically objects to the following submitted "evidence" by Plaintiff in support of Plaintiff's Opposition:

### A.    Objections to Plaintiff Leon Alpert's Declaration.

#### Objection No. 1

**Material Objected to:**

Alpert declaration, page 2, paragraph 3, lines 6 through 12: "TWC's MSJ relies upon misrepresentations of my deposition testimony. In particular, TWC's MSJ is premised largely on one central and repeated misstatement: that in late 2006 I specifically requested that TWC change my services and bundle me to thereby lower my bill. See, e.g., TWC's Separate Statement of "Fact" Nos. 25, 26, 27, 28, 40, 42, 43, 45, 62, 64, 72, 74, 76, 87, 89, 96, 98, 11., 112, 113, 115. Each of these purported "undisputed facts" assumes that in late 2006 I called TWC and specifically requested additional services and that these services be "bundled." That is completely false."

**Grounds for Objection 1:**  No Foundation; Improper Opinion; Misstates Testimony and Documents cited.  Plaintiff's statements are inadmissible factual conclusions which lack foundation and are improper opinion testimony.  Plaintiff's statements also misstates TWC's Motion for Summary Judgment and Separate Statement of Undisputed Facts.

#### Objection No. 2

**Material Objected to:**

Alpert declaration, page 2, paragraph 4, lines 13 through 17:  "I never testified that I asked TWC to bundle me for a discount in late 2006.  Rather, I clearly testified that I called to complain to TWC that my bill was too high and that TWC must lower it.  Specifically, I testified as follows:  "It's my sworn testimony that I have no recollection about speaking about bundles with the Time Warner rep, only about my bill and what I thought I should be paying."

**Grounds for Objection 2:**  Contradicts Sworn Deposition Testimony; Misstates Testimony and Documents Cited.  Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition testimony.  Plaintiff had an opportunity to review his deposition and

1  make any necessary corrections, but changes were not submitted.  Accordingly, Plaintiff waived

2  his opportunity to change his deposition testimony.

3       Plaintiff's self-serving statement must be disregarded because it is contradicted by his

4  sworn deposition testimony wherein he testified that in September 2006 he ordered a bundled

5  package in order to get a better price.  Specifically, Plaintiff testified:

6       Q:  Is the concept that you can buy a bundle or package of services and commit to

7       that bundle and get a cheaper price than you would get if you ordered each of the

8       components separately, is that a concept with which you were familiar in

9       September 2006?

10      A:  Yes, I believe so.  I -- I ordered a certain package to get a better rate.  So I

11      guess if that's what you're saying, yes, that's what I did.

12      Alpert Deposition, p. 99, lines 8-15; Deposition Transcript, Notice of Lodgment of

13  Exhibits in Support of Defendant Time Warner Cable's Motion for Summary Judgment ("NOL

14  ISO MSJ"), Ex. A.

**Objection No. 3**

15

16  **Material Objected to:**

17      Alpert declaration, page 2, paragraph 5, lines 18 through 20:  "I did not ask for any

18  bundle.  I did not ask to change services.  I just wanted my bill to be corrected, and it was.

19  Indeed, during that conversation, TWC admitted its error to me but refused to credit more than

20  one month of the overcharge."

21  **Grounds for Objection 3:**  Contradicts Sworn Deposition Testimony; Misstates

22  Testimony and Documents Cited; Hearsay.

23      Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition

24  testimony.  Plaintiff had an opportunity to review his deposition and make any necessary

25  corrections, but changes were not submitted.  Accordingly, Plaintiff waived his opportunity to

26  change his deposition testimony.

27      Plaintiff's self-serving statement must be disregarded because it is contradicted by his

28  sworn deposition testimony wherein he testified as to his recollection of his conversation with

1    TWC's customer service representative ("CSR"), wherein Plaintiff *deduced* that because his

2    billing statements decreased in amount after his call, the CSR *essentially* admitted that he was

3    being overcharged.  Plaintiff did not testify that "TWC admitted its error." Specifically, Plaintiff

4    testified:

5         A:  And I contacted Time Warner, and the customer service person *essentially*

6         *admitted* that I was being overcharged because my bills went down after that.

7    Alpert Deposition, p. 72, lines 16-18; Deposition Transcript, Notice of Lodgment of

8    Exhibits in Support of Defendant Time Warner Cable's Objections to Evidence Proffered and

9    Request for Judicial Notice in Support of Plaintiff's Opposition to Time Warner Cable, Inc.'s

10   Motion for Summary Judgment ("NOL ISO Objections to Evidence"), Ex. A.

11        Furthermore, Plaintiff's statement relies on hearsay and is inadmissible.

12                                **Objection No. 4**

13   **Material Objected to:**

14        Alpert declaration, page 2, paragraph 6, lines 21 through 27:  "TWC's citation to my

15   deposition at 99 is in response to the question TWC originally presented to me on page 97, line 8,

16   where the question was as follows: "There was a package of movie channels where you bought

17   four that were individually priced at maybe 6.95 or whatever they were, and you bought them for

18   a package for $11.  Correct?"  Decl. Ramos, Exhibit D, Depo Alpert at p. 97:8-12.  The following

19   two pages of the deposition was clarification of that question interspersed with objections by my

20   counsel.  I eventually answered that specific question on page 99, which TWC now misrepresents

21   to be an answer to the question presented later on p. 106."

22   **Grounds for Objection 4:**  Contradicts Sworn Deposition Testimony; Misstates

23   Testimony and Documents Cited.

24        Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition

25   testimony.  Plaintiff had an opportunity to review his deposition and make any necessary

26   corrections, but changes were not submitted.  Accordingly, Plaintiff waived his opportunity to

27   change his deposition testimony.

28   /////

DLA PIPER US LLP
SAN DIEGO

1   Plaintiff's self-serving statement must be disregarded because it is contradicted by his

2   sworn deposition testimony wherein he testified that in September 2006 he ordered a bundled

3   package in order to get a better price.  Specifically, Plaintiff testified:

4       Q:  Is the concept that you can buy a bundle or package of services and commit to

5           that bundle and get a cheaper price than you would get if you ordered each of the

6           components separately, is that a concept with which you were familiar in

7           September 2006?

8       A   Yes, I believe so.  I -- I ordered a certain package to get a better rate.  So I

9           guess if that's what you're saying, yes, that's what I did.

10  Alpert Deposition, p. 99, lines 8-15; Deposition Transcript, NOL ISO MSJ, Ex. A.

11      In addition to contradicting his prior sworn testimony, Plaintiff's statement also

12  mischaracterizes his prior sworn testimony.  Plaintiff's testimony on page 106 specifically refers

13  to whether Plaintiff had a conversation with TWC's CSR regarding the development of bundled

14  packages; not whether Plaintiff ordered a bundled package. Specifically, Plaintiff testified:

15      Q:  Now, is it your sworn testimony that there was no discussion with the CSR

16          about the fact that Time Warner had developed a bundled rate or a bundled

17          package of services which your services just happened to fit into?

18      A:  It's my sworn testimony that I have no recollection about speaking about

19          bundles with the Time Warner rep, only about my bill and what I thought I should

20          be paying.

21  Alpert Deposition, p. 106, lines 16-25; Deposition Transcript, NOL ISO Objections to

22  Evidence, Ex. A.

23                          **Objection No. 5**

24  **Material Objected to:**

25      Alpert declaration, page 3, paragraph 7, lines 1 through 3:  "I am a resident of SeaPoint, a

26  condominium project consisting of about 250 units near Torrey Pines Beach in Del Mar, CA.  I

27  have had TWC as my cable provider for as long as they have contracted with my HOA."

28  /////

**Grounds for Objection 5:** No Foundation.

Plaintiff's statements are inadmissible factual conclusions which lack foundation.

<strong><u>Objection No. 6</u></strong>

**Material Objected to:**

Alpert declaration, page 3, paragraph 8, lines 4 through 6: "TWC provides me with basic cable which I pay TWC through the assessment of my HOA monthly dues. I pay about $ 28.77 each month for basic cable to my HOA which, in turn, remits those monies to TWC."

**Grounds for Objection 6:** Contradicts Sworn Deposition Testimony.

Plaintiff has repeatedly admitted in pleadings and at deposition that it is undisputed that the HOA paid TWC for his basic cable. Plaintiff has presented no admissible evidence that he pays TWC for the basic cable he receives. Rather, Plaintiff testified at deposition that his HOA pays TWC for his basic cable:

Q: Were – you were aware, though, before that date that your HOA was paying Time Warner for basic cable service for your service. Correct?

A: Yes.

Alpert Deposition, p. 32, line 17-20; Deposition Transcript, NOL ISO MSJ, Ex. A.

<strong><u>Objection No. 7</u></strong>

**Material Objected to:**

Alpert declaration, page 3, paragraph 9, lines 7 through 10: "Since at least 2003, I have not had a choice of cable providers. In fact, as best I can recall, TWC has been the exclusive cable provider to SeaPoint since the mid 1990s. I believe TWC remains the exclusive provider of cable to SeaPoint even though I have learned that the FCC has recently ruled such exclusive relationships are unlawful and unfair."

**Grounds for Objection 7:** No Foundation; Improper Opinion; No Personal Knowledge; Speculative; Best Evidence Rule.

Plaintiff's statements are inadmissible factual and legal conclusions which lack foundation and are improper opinion testimony. Plaintiff's statements lack personal knowledge and are speculative.

1    Plaintiff attempts to put forth evidence which violates the Best Evidence Rule.  Plaintiff's

2    statement provides a description of a provision in the FCC ruling.  Plaintiff's description of the

3    FCC ruling is inadmissible to prove the content of the writing.

4                                    **Objection No. 8**

5    **Material Objected to:**

6    Alpert declaration, page 3, paragraph 10, lines 13 through 14:  "Although I have ordered

7    Additional Services in addition to basic cable, I do not recall ever being provided a 'Subscriber

8    Agreement.'"

9    **Grounds for Objection 8:**  Contradicts Sworn Deposition Testimony; Misstates

10   Testimony and Documents Cited.

11   Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition

12   testimony.  Plaintiff had an opportunity to review his deposition and make any necessary

13   corrections, but changes were not submitted.  Accordingly, Plaintiff waived his opportunity to

14   change his deposition testimony.

15   Plaintiff's self-serving statement must be disregarded because it is contradicted by his

16   sworn deposition testimony wherein he testified that he signed the Subscriber Agreement.

17   Specifically, Plaintiff testified:

18       Q:  Did you review at any time the customer service agreement with Time Warner

19           that is the -- at least from Time Warner Cable's point of view, the statement of the

20           agreement between Time Warner and its subscribers?

21       A:  The statement?

22       MR. RAMOS:  Yeah, let me just object.  It's vague.

23       A:  Where is it?

24       Q:  I'm asking if you've ever seen it before.  I think, Mr. Alpert, you get it when

25           you join as a new subscriber, and then it's identified -- if there are changes, they're

26           notified to you, and that it's available online or something like that.  I'm not sure.

27       A:  I'm pretty sure I signed it -- something when I first started the service, you

28           know, that I -- requesting the service and accepting the service.

1    Q:  Okay.  And at that time do you recall reading the documents that you were

2    given regarding the terms and conditions of service by Time Warner Cable?

3    A:  I have no recollection because I believe I signed that original document in like

4    1994 when I first moved in.

5    Alpert Deposition, p. 167, line 9 – p. 169 line 6; Deposition Transcript, NOL ISO

6    Objections to Evidence, Ex. A.

7    **Objection No. 9**

8    **Material Objected to:**

9    Alpert declaration, page 3, paragraph 12, lines 18 through 21:  "As a result of receiving

10   that notice, I called TWC and demanded that my bill be immediately corrected and that I receive

11   a credit for the overcharges I had suffered.  TWC admitted its error and corrected by bill.  I did

12   not order any new services nor did I request any sort of "bundle."  I just asked to have my bill

13   corrected, and it was."

14   **Grounds for Objection 9:** Contradicts Sworn Deposition Testimony; Misstates

15   Testimony and Documents Cited; Hearsay.

16   Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition

17   testimony.  Plaintiff had an opportunity to review his deposition and make any necessary

18   corrections, but changes were not submitted.  Accordingly, Plaintiff waived his opportunity to

19   change his deposition testimony.

20   Plaintiff's self-serving statement must be disregarded because it is contradicted by his

21   sworn deposition testimony wherein he testified as to his recollection of his conversation with

22   TWC's customer service representative ("CSR"), wherein Plaintiff *deduced* that because his

23   billing statements decreased in amount after his call, the CSR *essentially* admitted that he was

24   being overcharged.  Plaintiff did not testify that "TWC admitted its error." Specifically, Plaintiff

25   testified:

26   A:  And I contacted Time Warner, and the customer service person *essentially*

27   *admitted* that I was being overcharged because my bills went down after that.

28   /////

1    Alpert Deposition, p. 72, lines 16-18; Deposition Transcript, NOL ISO Objections to

2    Evidence, Ex. A.

3    Plaintiff's self-serving statement must be disregarded because it is contradicted by his

4    deposition testimony wherein he testified that in September 2006 he ordered a bundled package in

5    order to get a better price.  Specifically, Plaintiff testified:

6    Q:  Is the concept that you can buy a bundle or package of services and commit to

7    that bundle and get a cheaper price than you would get if you ordered each of the

8    components separately, is that a concept with which you were familiar in

9    September 2006?

10   A:  Yes, I believe so.  I -- I ordered a certain package to get a better rate.  So I

11   guess if that's what you're saying, yes, that's what I did.

12   Alpert Deposition, p. 99, lines 8-15; Deposition Transcript, NOL ISO MSJ, Ex. A.

13   Furthermore, Plaintiff's statement relies on hearsay and is inadmissible.

14   **Objection No. 10**

15   **Material Objected to:**

16   Alpert declaration, page 3, paragraph 13, lines 22 through 25:  "Although TWC admitted

17   its error and corrected my bill, TWC refused to give me a credit for all of the months, if not years,

18   of overcharges.  Instead, TWC gave me one month's credit for phone service, or something

19   similar.  TWC refused to properly credit my account for its hundreds of dollars of overcharges."

20   **Grounds for Objection 10:**  No Foundation; Improper Opinion; Contradicts Sworn

21   Deposition Testimony; Misstates Testimony and Documents Cited; Hearsay.

22   Plaintiff's statements are inadmissible factual conclusions which lack foundation and are

23   improper opinion testimony.

24   Plaintiff's statement is inadmissible because it contradicts Plaintiff's sworn deposition

25   testimony.  Plaintiff had an opportunity to review his deposition and make any necessary

26   corrections, but changes were not submitted.  Accordingly, Plaintiff waived his opportunity to

27   change his deposition testimony.

28   /////

1    Plaintiff's self-serving statement must be disregarded because it is contradicted by his

2    sworn deposition testimony wherein he testified as to his recollection of his conversation with

3    TWC's customer service representative ("CSR"), wherein Plaintiff *deduced* that because his

4    billing statements decreased in amount after his call, the CSR *essentially* admitted that he was

5    being overcharged.  Plaintiff did not testify that "TWC admitted its error."  Specifically, Plaintiff

6    testified:

7        A:  And I contacted Time Warner, and the customer service person *essentially*

8        *admitted* that I was being overcharged because my bills went down after that.

9    Alpert Deposition, p. 72, lines 16-18; Deposition Transcript, NOL ISO Objections to

10    Evidence, Ex. A.

11    Furthermore, Plaintiff's statement relies on hearsay and is inadmissible.

## Objection No. 11

13    **Material Objected to:**

14    Alpert declaration, page 3, paragraph 14, lines 26 through page 4, line 1:  "The next

15    month after I called TWC and complained, my bill went down by about $30 and finally reflected

16    correct HOA pricing.  However, to this day, TWC has not properly credited my account for the

17    overcharges."

18    **Grounds for Objection 11:**  No Foundation; Improper Opinion; Speculative; Best

19    Evidence Rule.

20    Plaintiff's statements are inadmissible factual and legal conclusions which lack

21    foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

22    Plaintiff also attempts to put forth evidence which violates the Best Evidence Rule.

23    Plaintiff's statement provides a description of change in the amount of his billing statement.

24    Plaintiff's description of his billing statement is inadmissible to prove the content of the writing

## Objection No. 12

26    **Material Objected to:**

27    Alpert declaration, page 3, paragraph 15, lines 2 through 5:  "I am familiar with TWC's

28    television ads and its Internet website.  To this day, I have never seen any HOA pricing advertised

1    by TWC such that I, or any other potential class member, would ever have known that HOA

2    pricing was available.  Had I not received the HOA newsletter in late 2006, I too would never

3    have known such pricing existed."

4        **Grounds for Objection 12:**  No Foundation; Improper Opinion; Speculative.

5        Plaintiff's statements are inadmissible factual and legal conclusions which lack

6    foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

7                                    **Objection No. 13**

8        **Material Objected to:**

9        Alpert declaration, page 3, paragraph 16, lines 6 through 15:  "I understand that TWC is

10   taking the position that I had only 30 days to inform TWC of errors on my billing statements.

11   Since TWC has concealed its HOA pricing from me and the other class members, I am not sure

12   exactly how I or any class member would have been able to detect the error within 30 days, if at

13   all.  While I do not think it unreasonable to require consumers to complain within 30 days about

14   obvious errors in their bills, I am not a lawyer and do not know if such a provision is legal or

15   enforceable.  Moreover, I do not think it is reasonable to have such a 30 day rule when the

16   vendor, in this case TWC, is concealing information necessary for a consumer to determine if the

17   bill has an error.  For example, the itemization of charges in TWC's bills was deceptive in that the

18   bills did not disclose the existence of HOA pricing available to me.  I never agreed that TWC

19   could deceive me and then limit me to 30 days to catch the deception."

20       **Grounds for Objection 13:**  No Foundation; Improper Opinion; Speculative; Contradicts

21   Sworn Deposition Testimony; Misstates Testimony and Documents Cited.

22       Plaintiff's statements are inadmissible factual and legal conclusions which lack

23   foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

24       Plaintiff's statements are inadmissible because they contradicts Plaintiff's sworn

25   deposition testimony.  Plaintiff had an opportunity to review his deposition and make any

26   necessary corrections, but changes were not submitted.  Accordingly, Plaintiff waived his

27   opportunity to change his deposition testimony.

28   /////

1   Plaintiff's self-serving statement must be disregarded because it is contradicted by his

2   sworn deposition testimony wherein he testified as to his opinion regarding the reasonableness of

3   the 30 day provision.  Specifically, Plaintiff testified:

4   Q:  Do you think there's anything unreasonable in asking the customer to identify

5   promptly to the service provider discrepancies in their bill?

6   MR. RAMOS:  I'll -- I'll just object to the extent that has been already articulated

7   in the complaint.

8   Q:  Well, I'm asking him if you think that's an unreasonable thing to do.

9   A:  Soon as I found out I was being overcharged, I did complain.  And I don't

10   think it's unreasonable to make the complaint within 30 days.  But if she's, you

11   know -- that seems to be reasonable, and I did complain within 30 days.

12   Alpert Deposition, p. 165, lines 4-17; Deposition Transcript, NOL ISO Objections to

13   Evidence, Ex. A.

## Objection No. 14

15   **Material Objected to:**

16   Alpert declaration, page 3, paragraph 17, lines 16 through 22:  "Contrary to TWC's

17   statements, I never ordered any of my services "a la carte."  I simply ordered cable services.  In

18   fact, some of the services I ordered were put by TWC into what appear on my billing statements

19   to be mini-bundles.  My billing statements, even before TWC put me into an HOA bundle in late

20   2006, clearly indicate that I was not "a la carte."  I was, apparently, in various mini-bundles,

21   though I had never specifically requested any particular type of package or pricing – I had just

22   ordered cable and cable related services and was billed by TWC accordingly.  Until I called and

23   complained in September of 2006, TWC had never put me into an HOA bundle."

24   **Grounds for Objection 14:**  No Foundation; Improper Opinion; Speculative; Best

25   Evidence Rule; Contradicts Sworn Deposition Testimony.

26   Plaintiff's statements are inadmissible factual and legal conclusions which lack

27   foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

28   /////

1    Plaintiff also attempts to put forth evidence which violates the Best Evidence Rule.

2  Plaintiff's statement provides a description of his billing statements.  Plaintiff's description of his

3  billing statements are inadmissible to prove the content of the writing.

4    Plaintiff's statements regarding not ordering or being aware of various bundles in addition

5  to his a la carte services also contracts his deposition testimony.

6    Q:  You had several of your movie channels – I mean, there was a package . . . there was a

7      package of movie channels where you bought four that were individually priced at maybe

8      $6.95 or whatever they were, and you got them as a package for $11.  Correct?

9    [objections and discussion regarding objections omitted]

10   A:  I understand that I purchased what I purchased to get a better rate collectively than

11     individually.

12   Q:  Is the concept that you can buy a bundle or package of services and commit to that

13     bundle and get a cheaper price than you would get if you ordered each of the components

14     separately, is that a concept with which you were familiar in September 2006?

15   A:  Yes, I believe so.  I – I ordered a certain package to get a better rate.  So I guess if that

16     is what you're saying, yes, that's what I did.

17   Alpert Deposition, p. 97, lines 8-13; p. 98, lines 6-7; p. 99, lines 8-15; Deposition

18  Transcript, NOL ISO MSJ, Ex. A.

19                          **Objection No. 15**

20  **Material Objected to:**

21    Alpert declaration, page 3, paragraph 18, lines 23 through page 4, lines 6:  "Given TWC's

22  ongoing television advertising campaign over the last several years encouraging consumers to

23  order more services and thereby get bigger discounts, I assumed TWC would likewise provide me

24  such discounts when I ordered additional services.  TWC's television advertising stated plainly

25  during the class period, as it does to this day, that if I ordered other additional services (in

26  addition to basic cable) such as premium movie channels, telephone and/or  Internet service, I

27  would pay less since those services are discounted when many services are ordered together.

28  However, unbeknownst to me until the fall of 2006, I had not been given a discount for ordering

1   more services and was never informed by TWC that HOA pricing was available for the exact

2   same set of services that I had purchased.  Since TWC did not advertise HOA pricing, I had no

3   way of knowing what the correct charges were for the services I was receiving."

4          **Grounds for Objection 15:**  No Foundation; Improper Opinion; Speculative.

5          Plaintiff's statements are inadmissible factual and legal conclusions which lack

6   foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

7                              **Objection No. 16**

8          **Material Objected to:**

9          Alpert declaration, page 3, paragraph 19, lines 7 through 12:  "I am not aware of any other

10  cable company that offers movies on demand and other cable television related services at

11  SeaPoint without the consumer purchasing basic cable service from that provider.  TWC was my

12  basic cable provider.  Thus, I ordered additional cable services from TWC, not another cable

13  company.  Moreover, since residents like [sic] pay for basic cable to TWC through our HOA,

14  there is no other meaningful economic choice in selecting a provider for additional services."

15         **Grounds for Objection 16:**  No Foundation; Improper Opinion; Speculative; No

16  Personal Knowledge.

17         Plaintiff's statements are inadmissible factual and legal conclusions which lack

18  foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

19                              **Objection No. 17**

20         **Material Objected to:**

21         Alpert declaration, page 3, paragraph 20, lines 14 through 21:  "TWC argues that instead

22  of ordering additional services from TWC I could have chosen other alternatives.  For example,

23  TWC argues that I could have simply rented movies, read books, used a satellite service, used

24  another phone provider, and used another Internet provider.  But since I was already paying TWC

25  each month for basic cable service through my HOA, it would make little sense to pay another

26  cable or satellite provider for the same service just to get additional services.  There was never a

27  meaningful choice to select another provider for additional services while simultaneously paying

28  TWC each and every month."

1   **Grounds for Objection 17:**  No Foundation; Improper Opinion; Speculative.

2   Plaintiff's statements are inadmissible factual and legal conclusions which lack

3   foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

4   **Objection No. 18**

5   **Material Objected to:**

6   Alpert declaration, page 3, paragraph 21, lines 22 through 26:  "As for reading books, yes,

7   I do read books.  But I have yet to find a book that broadcasts live Padres games or otherwise

8   provides real time news and information.  Nor have I found a book that provides recently released

9   movies on demand.  TWC provided such content in addition to the basic cable service already in

10   my home."

11   **Grounds for Objection 18:**  No Foundation; Improper Opinion; Speculative; Irrelevant.

12   Plaintiff's statements are inadmissible factual and legal conclusions which lack

13   foundation.  Plaintiff's statements are also inadmissible opinion based purely on speculation.

14   Plaintiff's statements are also irrelevant.

15   **Objection No. 19**

16   **Material Objected to:**

17   Alpert declaration, page 3, paragraph 22, lines 27 through page 4, line 5:  "In its Motion

18   and Separate Statement, TWC speculates that "HOA Pricing" as referred to in my complaint "is

19   merely the pricing of one bundle of Additional Services that, until recently, was available to HOA

20   residents who were willing to purchase all of the bundled services."  HOA Pricing refers to both

21   TWCs concealed HOA pricing which, apparently, became effective in 2005 and to TWC's

22   pricing prior to that which should have reflected the fact that I was already paying for basic

23   cable."

24   **Grounds for Objection 19:**  No Foundation.

25   Plaintiff's statement is comprised entirely of inadmissible factual and legal conclusions

26   which lack foundation.

27   /////

28   /////

DLA PIPER US LLP
SAN DIEGO

WEST\21450277.3
325566-000011

-17-

08CV00582 W WMC

**B.      Objections to Wesley L. Nutten's Declaration.**

**Objection No. 20**

**Material Objected to:**

Nutten declaration, page 1, paragraph 3, lines 15 through 21:  "In the current instance, I was retained by attorney David Markham to analyze and report on charges incurred by Mr. Leon Alpert for cable television, wireless Internet and digital telephone services provided by Time Warner Cable ("Time Warner") at Mr. Alpert's residence at 12968 Caminito Del Canto, Del Mar, California.  As part of my assignment, I was asked to compare the charges incurred by Mr. Alpert to the prices available to the general public (i.e., a Time Warner customer that is not a member of a homeowners association) as advertised by Time Warner."

**Grounds for Objection 20**:  Irrelevant.

Mr. Nutten improperly attempts to admit " evidence " that is totally irrelevant to any cause of action or issue raised in the operative complaint.  Mr. Nutten's statements relate solely to matters outside the scope of the lawsuit and motion for summary judgment, which is impermissible as set forth in TWC's reply memorandum of points and authorities in support of TWC's motion for summary judgment.  It is rudimentary that only relevant evidence is admissible.  The Federal Rules of Evidence expressly state that "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Mr. Nutten's comparison of charges incurred by Mr. Alpert to the prices available to the general public is irrelevant – it does not pertain to this action.

**Objection No. 21**

**Material Objected to:**

Nutten declaration, page 1, paragraph 4, lines 22 through page 2, line 2:  "In 2005, Sea Point Community Association, the homeowners association (HOA) of Sea Point Townhomes ("Sea Point"), the facility where Mr. Alpert lived, signed a System Installation and Service Agreement (the "Agreement") with Time Warner.  Under the terms of the Agreement, the HOA would pay $28.77 per month per unit as a Bulk Multi-Channel Video Services fee and Time Warner would provide basic Expanded Cable Television Service ("Advantage Service") to all units within Sea Point.  Approximately 75 to 77 cable channels were included with Advantage

1  Service.  The HOA passed the $28.77 fee through to the residents of Sea Point as part of their

2  monthly homeowner assessment; however, to the extent residents added additional services, they

3  were billed directly by Time Warner."

4        **Grounds for Objection 21:**  No Foundation ; Speculative; Best Evidence Rule; Misstates

5  Testimony and Documents cited.

6        Mr. Nutten lacks foundation to assert these statements, which are based purely on

7  speculation.  Mr. Nutten's statements are also inadmissible because they misstate the documents

8  cited.  Nowhere in the "Agreement" does it state "The HOA passed the $28.77 fee through to the

9  residents of Sea Point as part of their monthly homeowner assessment."

10       Mr. Nutten attempts to put forth evidence which violates the Best Evidence Rule.  Mr.

11  Nutten's statement provides a description of the "Agreement."  Mr. Nutten's description of the

12  "Agreement" is inadmissible to prove the content of the writing.

### Objection No. 22

14       **Material Objected to:**

15       Nutten declaration, page 2, paragraph 5, lines 3 through 9:  "At the time the Agreement

16  was executed, the cost of Advantage Service to non-HOA members of the general public, based

17  on Time Warner Cable's advertised rates, was $50.97.  Accordingly, Mr. Alpert and the other

18  residents Sea Point were expected to enjoy a savings of approximately $22.20 per month ($50.97

19  less $28.77) directly attributable to the Agreement.  This figure represents the difference between

20  what a non-HOA member of general public and a member of the HOA would pay for the same

21  Advantage Service consisting of 75 to 77 channels (see sample document TW0212.)"

22       **Grounds for Objection 22:**  No Foundation; No Authentication; Misstates Testimony

23  and Documents cited; Not Reliable.

24       Mr. Nutten's statements are inadmissible because they misstate documents.  Referenced

25  sample document TW0212 indicates that the cost of Advantage Service, including taxes and fees

26  was $50.97.  The Agreement indicates that the cost of Advantage Service to HOA residents,

27  exclusive of taxes and fees, was $28.77.  Mr. Nutten is making purported comparisons of

28  incomparable figures.  Mr. Nutten's calculation of the purported difference between what a non-

1    HOA member of the general public and a member of the HOA would pay for the same services,

2    $22.20, is used as a basis for further calculations, which renders all calculations using this figure

3    faulty.

4        Mr. Nutten's statements are inadmissible because the referenced sample document

5    TW0212 has not been authenticated by TWC.  Cal. Evid. Code §§ 1400-1401.  Accordingly these

6    statements are not reliable, lack foundation and are inadmissible.

7                                    **Objection No. 23**

8        **Material Objected to:**

9        Nutten declaration, page 2, paragraph 6, lines 10 through 13:  "A review of Mr. Alpert's

10   Time Warner bills, and a comparison of these bills to Time Warner's advertised rates to non-

11   HOA members of the general public, revealed that Time Warner charged HOA members more for

12   added services than that which was charged to non-HOA members of the general public for the

13   same added services.

14       **Grounds for Objection 23:**  Irrelevant; Not Reliable; Misleading.

15       Mr. Nutten's calculations are irrelevant, unreliable and misleading.  Mr. Nutten compares

16   Plaintiff's *a la carte pricing* for Additional Services with *discounted bundled pricing* for non-bulk

17   customers.  Mr. Nutten is presumably using some subset of services and prices from Mr. Alpert's

18   itemized charges from his July statement (although this is unclear because as referenced above his

19   bases and foundation for his conclusions are not provided) and comparing it to a discounted

20   bundled pricing offered to non-bulk customers who order a certain set of services.  Mr. Nutten is

21   comparing apples to oranges.

22       Furthermore, when an accurate comparison of Plaintiff's a la carte pricing v. general a la

23   carte pricing, or Plaintiff's discounted bundled pricing v. general discounted bundled pricing, it is

24   undisputed that Plaintiff was never charged more than the general public for the same services.

25   For example, a side by side comparison of the DIGIPic On Demand 4000 discounted bundle

26   package pricing for non-HOA members to the DIGIPic On Demand 4000 discounted bundle

27   package pricing for HOA members, shows that Plaintiff was never charged more than the general

28   public for the same services.

**Objection No. 24**

**Material Objected to:**

Nutten declaration, page 2, paragraph 6, lines 13 through 15:  "As a direct result of this billing practice, the economic benefit of $22.20 enjoyed by Mr. Alpert declined and ultimately disappeared as Mr. Alpert added services to his Time Warner plan.

**Grounds for Objection 24:**  No Foundation; Improper Opinion; Irrelevant; Misleading; Not Reliable.

Mr. Nutten's statements are inadmissible factual conclusions which lack foundation. Mr. Nutten's calculations are also not reliable, irrelevant, and misleading.  Mr. Nutten compares Plaintiff's *a la carte pricing* for Additional Services with *discounted bundled pricing* for non-bulk customers.  Mr. Nutten is presumably using some subset of services and prices from Mr. Alpert's itemized charges from his July statement (although this is unclear because as referenced above his bases and foundation for his conclusions are not provided) and comparing it to a discounted bundled pricing offered to non-bulk customers who order a certain set of services.  Mr. Nutten is comparing apples to oranges.

Assuming however that Mr. Nutten was attempting to reference figure $126.95 on referenced document TW0213 and assuming that it is proper to compare a la carte pricing with discounted bundled pricing, Mr. Nutten does not even provide an accurate comparison to the very services received by Mr. Alpert in July 2005.  Mr. Nutten used the least expensive, entry level bundle available to the general public for his comparison (the DIGIPIC On Demand bundle priced at $126.95) instead of the bundle that is equivalent to the one ordered by Plaintiff (the DIGIPIC On Demand 4000 bundle priced at $161.95).  The DIGIPic On Demand 4000 bundle priced at $161.95 package contains four premium channels and three digital paks, services which Mr. Alpert also received during this same time period.

Furthermore, when an accurate comparison of Plaintiff's a la carte pricing v. general a la carte pricing, or Plaintiff's discounted bundled pricing v. general discounted bundled pricing, it is undisputed that Plaintiff was never charged more than the general public for the same services. For example, a side by side comparison of the DIGIPic On Demand 4000 discounted bundle

1    package pricing for non-HOA members to the DIGIPic On Demand 4000 discounted bundle

2    package pricing for HOA members, shows that Plaintiff was never charged more than the general

3    public for the same services.

**Objection No. 25**

5    **Material Objected to:**

6        Nutten declaration, page 2, paragraph 6, lines 15 through 18:  "For example, in July 2005,

7    Mr. Alpert's services included the basic 75 to 77 cable channels, digital cable service, premium

8    cable channels, wireless Internet service, and digital phone service.  The incremental monthly

9    charge for these additional services was $151.75."

10       **Grounds for Objection 25:**  No Foundation; No Authentication; Not Reliable.

11       Mr. Nutten's statements lack foundation because the referenced sample documents

12   TW0212, TW0213, TW0214, and TW071 have not been authenticated by TWC.

13       Mr. Nutten's statements are also inadmissible because they fails to provide the foundation

14   or bases for his conclusions.  Mr. Nutten does not reference to which document he is referring,

15   nor to which figures he is using to come to this calculation of $151.75.  Plaintiff can not submit

16   evidence which forces TWC (and the court) to speculate which figures are being used for these

17   calculations.  Accordingly these statements are not reliable, lack foundation and are inadmissible.

**Objection No. 26**

19       **Material Objected to:**

20       Nutten declaration, page 2, paragraph 6, lines 18 through 20:  "This amount was paid by

21   Mr. Alpert in addition to the $28.77 he was assessed each month by his HOA for the basic 75 to

22   77 cable channels that was billed to the HOA by Time Warner."

23       **Grounds for Objection 26:** No Foundation; Misstates Testimony and Documents cited;

24   Best Evidence Rule.

25       Mr. Nutten's statements are inadmissible because they misstate the documents cited.

26   Nowhere in the "Agreement" does it state "The HOA passed the $28.77 fee through to the

27   residents of Sea Point as part of their monthly homeowner assessment."

28   /////

1    Mr. Nutten attempts to put forth evidence which violates the Best Evidence Rule.  Mr.

2    Nutten's statement provides a description of the "Agreement."  Mr. Nutten's description of the

3    "Agreement" is inadmissible to prove the content of the writing.

4    Mr. Nutten's statements also lack foundation as to the HOA's "assessments" to Mr. Alpert

5    and how the HOA used such "assessments."

6    **Objection No. 27**

7    **Material Objected to:**

8    Nutten declaration, page 2, paragraph 6, lines 20 through page 3, line 6:  "In contrast,

9    following the introduction of "TRIO" packages available to non-HOA members of the general

10    public wherein digital and premium cable television, wireless Internet, and digital phone service

11    were available in a package, the advertised price to non-HOA members of the general public for

12    these same added services was approximately $125.95 or $25.80 less than what was being paid by

13    Mr. Alpert.  Hence, from July 2005 through September 2006, the net economic benefit enjoyed

14    by Mr. Alpert stemming from the Agreement had disappeared and Mr. Alpert appears to have

15    been paying approximately $3.60 per month more than the non-HOA general public for

16    comparable services.  This calculation was performed by comparing the amount Mr. Alpert paid

17    to Time Warner in addition to the $28.77 he was assessed by his HOA to the amount charged by

18    Time Warner to non-HOA members of the general public.  Consequently, by virtue of the

19    difference in the amounts paid by Mr. Alpert for added services beyond the basic 75 to 77

20    channels relative to what was paid by a non-HOA member of the general public for the same

21    services, Mr. Alpert suffered damages of approximately $25.80 per month during the July 2005

22    through September 2006 time period (see sample documents TW0212, TW0213, TW214, and

23    TW0071.)"

24    **Grounds for Objection 27:**  No Foundation; Speculative; No Authentication; Not

25    Reliable; Irrelevant; Misleading.

26    Mr. Nutten's statements lack foundation because the referenced sample documents

27    TW0212, TW0213, TW0214, and TW071 have not been authenticated by TWC.

28    /////

1    Mr. Nutten's statements are also inadmissible because they fail to provide the foundation

2    or bases for his conclusions.  Mr. Nutten states, but does not provide the source or calculation for,

3    the amounts $125.95 or $25.80.  In fact, neither of these two figures are anywhere on the

4    referenced documents.  Plaintiff can not submit evidence which forces TWC (and the court) to

5    speculate which figures or what calculations are being used to arrive at these amounts.

6    Accordingly these statements are not reliable, lack foundation and are inadmissible.

7    Mr. Nutten's calculations are also irrelevant and misleading.  Mr. Nutten compares

8    Plaintiff's *a la carte pricing* for Additional Services with *discounted bundled pricing* for non-bulk

9    customers.  Mr. Nutten is presumably using some subset of services and prices from Mr. Alpert's

10   itemized charges from his July statement (although this is unclear because as referenced above his

11   bases and foundation for his conclusions are not provided) and comparing it to a discounted

12   bundled pricing offered to non-bulk customers who order a certain set of services.  Mr. Nutten is

13   comparing apples to oranges.

14   Assuming however that Mr. Nutten was attempting to reference figure $126.95 on

15   referenced document TW0213 and assuming that it is proper to compare a la carte pricing with

16   discounted bundled pricing, Mr. Nutten does not even provide an accurate comparison to the very

17   services received by Mr. Alpert in July 2005.  Mr. Nutten used the least expensive, entry level

18   bundle available to the general public for his comparison (the DIGIPIC On Demand bundle

19   priced at $126.95) instead of the bundle that is equivalent to the one ordered by Plaintiff (the

20   DIGIPIC On Demand 4000 bundle priced at $161.95).  The DIGIPic On Demand 4000 bundle

21   priced at $161.95 package contains four premium channels and three digital paks, services which

22   Mr. Alpert also received during this same time period.

23   Furthermore, when an accurate comparison of Plaintiff's a la carte pricing v. general a la

24   carte pricing, or Plaintiff's discounted bundled pricing v. general discounted bundled pricing, it is

25   undisputed that Plaintiff was never charged more than the general public for the same services.

26   For example, a side by side comparison of the DIGIPic On Demand 4000 discounted bundle

27   package pricing for non-HOA members to the DIGIPic On Demand 4000 discounted bundle

28   /////

package pricing for HOA members, shows that Plaintiff was never charged more than the general

public for the same services.



Furthermore, Mr. Nutten's conclusion is apparently based on an assumption that all

discounts associated with a bundle for non-HOA members are deducted from the cost of

additional services while the cost of basic cable in the bundle remains the same.  There is no basis

for this conclusion, which is grounded purely on speculation.

Accordingly, for all of these reasons, Mr. Nutten's statement is not reliable, lacks

foundation, and is inadmissible.

### Objection No. 28

**Material Objected to:**

Nutten declaration, page 3, paragraph 7, lines 7 through 17:  "In March 2005, Time

Warner introduced "HOA Packages" presumably available to subscribers that were provided

1    Advantage Service via HOAs such as Sea Point Community Association.  From this time through

2    September 2006, Mr. Alpert continued to be charged for services on an "ala carte" basis.  A

3    comparison of total monthly charges incurred by Mr. Alpert relative to charges he would have

4    incurred had he been a subscriber of the HOA package reveals that Mr. Alpert was actually

5    paying a total of approximately $15.85 more per month than he would have been paying for

6    comparable services under an HOA package.  Mr. Alpert testified that he was unaware of the

7    availability of the HOA Package from March 2005 through September 2006.  In October 2006,

8    Mr. Alpert was switched into an HOA Package that resulted in a reduction in his monthly charges

9    of approximately $23.85 (see sample documents TW0566, TW0184, TW0113, and TW0116.)"

10    **Grounds for Objection 28:**  No Foundation; No Authentication; Not Reliable; Irrelevant;

11    Misleading.

12    Mr. Nutten's statements lack foundation because the referenced sample documents

13    TW0566, TW0184, TW0113, and TW0116 have not been authenticated by TWC.

14    Mr. Nutten's statements are also inadmissible because they fail to provide the foundation

15    or bases for his conclusions.  Mr. Nutten does not reference to which document he is referring,

16    nor to which figures he is using to come to this calculation of $15.85.  Plaintiff can not submit

17    evidence which forces TWC (and the court) to speculate which figures are being used for these

18    calculations.  Accordingly these statements are not reliable, lack foundation and are inadmissible.

19    Furthermore, Mr. Nutten's calculations are also irrelevant and misleading.  Mr. Nutten

20    compares Plaintiff's *a la carte pricing* for Additional Services with *discounted bundled pricing*

21    for bulk customers.  Mr. Nutten is presumably using some subset of services and prices from Mr.

22    Alpert's itemized charges from his July statement (although this is unclear because as referenced

23    above his bases and foundation for his conclusions are not provided) and comparing it to a

24    discounted bundled pricing offered to bulk customers who order a certain set of services.  Mr.

25    Nutten is comparing apples to oranges.

26    Accordingly, for all of these reasons, Mr. Nutten's statements are not reliable, lack

27    foundation, and are inadmissible.

28    /////

1

**Objection No. 29**

2      **Material Objected to:**

3          Nutten declaration, page 3, paragraph 8, lines 18 through page 4, line 1: "In conclusion,

4   my findings are that a) the Agreement between Time Warner and the HOA provided a savings to

5   HOA members of approximately $22.20 relative to what non- HOA members of the general

6   public were being charged for the basic 75 to 77 channels, b) as HOA members added additional

7   services, the incremental amount Time Warner billed for these services was higher than the

8   incremental amount billed to non-HOA members of the general public for comparable services, c)

9   the economic benefit of the Agreement to HOA members was not preserved and by mid 2005,

10  Mr. Alpert was paying more than the non-HOA general public for comparable services, d) in

11  2005 and 2006, Time Warner instituted HOA Package rates which would have restored the

12  economic benefit of the Agreement and reduced the amount paid by Mr. Alpert by approximately

13  $23.85 per month; however, the benefit of the HOA Package rates was not made available to Mr.

14  Alpert until October 2006, and e) Mr. Alpert suffered damages of approximately $25.80 per

15  month during the July 2005 through September 2006 time period.."

16          **Grounds for Objection 29:**  No Foundation; No Authentication; Not Reliable; Irrelevant;

17  Misleading.

18          Mr. Nutten's statements lack foundation because the referenced sample documents

19  TW0212, TW0213, TW0214, and TW071 have not been authenticated by TWC.

20          Mr. Nutten's statements are also inadmissible because they fail to provide the foundation

21  or bases for his conclusions.  Mr. Nutten states, but does not provide the source or calculation for,

22  the amounts $125.95 or $25.80.  In fact, neither of these two figures are anywhere on the

23  referenced documents.  Plaintiff can not submit evidence which forces TWC (and the court) to

24  speculate which figures or what calculations are being used to arrive at these amounts.

25  Accordingly these statements are not reliable, lack foundation and are inadmissible.

26          Accordingly these statements are not reliable, lack foundation and are inadmissible.

27  Mr. Nutten's calculations are also irrelevant and misleading.  Mr. Nutten first compares

28  Plaintiff's *a la carte pricing* for Additional Services with *discounted bundled pricing* for non-bulk

1  customers and then he compare's Plaintiff's *a la carte pricing* for Additional Services with

2  *discounted bundled pricing* for bulk customers.  Mr. Nutten is comparing apples to oranges.

3         Furthermore, when an accurate comparison of Plaintiff's a la carte pricing v. general a la

4  carte pricing, or Plaintiff's discounted bundled pricing v. general discounted bundled pricing, it is

5  undisputed that Plaintiff was never charged more than the general public for the same services.

6  For example, a side by side comparison of the DIGIPic On Demand 4000 discounted bundle

7  package pricing for non-HOA members to the DIGIPic On Demand 4000 discounted bundle

8  package pricing for HOA members, shows that Plaintiff was never charged more than the general

9  public for the same services.



27        Accordingly, for all of these reasons, Mr. Nutten's statement is not reliable, lacks

28  foundation, and is inadmissible.

C.    **Exhibits to the Declaration of Wesley L. Nutten.**

**Objection No. 30**

**Material Objected to:**

Exhibit TW0212 of Nutten Decl.

**Grounds for Objection 30:**  Not Authenticated; No Foundation.

Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In addition, he fails to lay any foundation for admission of this Exhibit.

**Objection No. 31**

**Material Objected to:**

Exhibit TW0213 of Nutten Decl.

**Grounds for Objection 31:**  Not Authenticated; No Foundation.

Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In addition, he fails to lay any foundation for admission of this Exhibit.

**Objection No. 32**

**Material Objected to:**

Exhibit TW0214 of Nutten Decl.

**Grounds for Objection 32:**  Not Authenticated; No Foundation.

Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In addition, he fails to lay any foundation for admission of this Exhibit.

**Objection No. 33**

**Material Objected to:**

Exhibit TW0071 of Nutten Decl.

**Grounds for Objection 33:**  Not Authenticated; No Foundation.

Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In addition, he fails to lay any foundation for admission of this Exhibit.

**Objection No. 34**

**Material Objected to:**

Exhibit TW0566 of Nutten Decl.

1    **Grounds for Objection 34:**  Not Authenticated; No Foundation.

2    Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In

3    addition, he fails to lay any foundation for admission of this Exhibit.

4                                **Objection No. 35**

5    **Material Objected to:**

6    Exhibit TW0184 of Nutten Decl.

7    **Grounds for Objection 35:**  Not Authenticated; No Foundation.

8    Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In

9    addition, he fails to lay any foundation for admission of this Exhibit.

10                                **Objection No. 36**

11    **Material Objected to:**

12    Exhibit TW0113 of Nutten Decl.

13    **Grounds for Objection 36:**  Not Authenticated; No Foundation.

14    Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In

15    addition, he fails to lay any foundation for admission of this Exhibit.

16                                **Objection No. 37**

17    **Material Objected to:**

18    Exhibit TW0116 of Nutten Decl.

19    **Grounds for Objection 37:**  Not Authenticated; No Foundation.

20    Mr. Nutten fails to authenticate any of the exhibits attached to his Declaration.  In

21    addition, he fails to lay any foundation for admission of this Exhibit.

22    **D.    Objections to Characterization of Ms. Terri Rhodes' Deposition Testimony in Plaintiff's Memorandum of Points and Authorities in Opposition to TWC's Motion for Summary Judgment ("Plaintiff's Opposition").**

23

24                                **Objection No. 38**

25    **Material Objected to:**

26    Plaintiff's Opposition, page 10, lines 7 through 9:  "In fact, when determining pricing for

27    HOA customers, TWC admits that it did not consider that Alpert and the other HOA members are

28    already paying for basic cable at all.  Decl. of Ramos, Exhibit A, Rhodes Depo. at p. 150:12."

1    **Grounds for Objection 38:**  Irrelevant; Misstates Evidence; Assumes Facts Not in

2    Evidence; Contradicts Sworn Deposition Testimony.

3       Plaintiff's statement misstates Ms. Rhodes' testimony.  Ms. Rhodes did not testify that

4    TWC does not consider that HOA members are already paying for basic cable when setting

5    pricing for HOA customers.  Rather, Ms. Rhodes testified as follows:

6       Q:  Okay.  Then why do you say that Time Warner is charging less to its customers who

7    are HOA people than to its customers who are not HOA people?

8       A:  We don't consider that that resident is necessarily paying what's in the contract with

9    us, with an HOA or a multi-housing unit.

10      Q:  Okay.  Well, then who do you consider is paying that negotiated price?

11      A:  Whoever the agreement is with.

12   Dep Rhodes at p. 150:9-17.

13      The agreement is with Plaintiff's HOA.  And plaintiff has testified at deposition that his

14   HOA pays TWC for his basic cable.

15      Q:  Were – you were aware, though, before that date that your HOA was paying Time

16      Warner for basic cable service for your service.  Correct?

17      A:  Yes."

18      Alpert Deposition, p. 32, line 17-20; Deposition Transcript, NOL ISO MSJ, Ex. A.

19      Plaintiff's statement is also based on an assumption of fact for which there is no evidence,

20   namely "that Alpert and other HOA members are already paying for basic cable."  Plaintiff has

21   repeatedly admitted in pleadings and at deposition that it is undisputed that the HOA paid TWC

22   for his basic cable.  Plaintiff has presented no admissible evidence that he pays TWC for the basic

23   cable he receives.  Accordingly, Plaintiff's statement is inadmissible.

24      E.    **Objections to Plaintiff's Request for Judicial Notice.**

25                    **Objection No. 39**

26   **Material Objected to:**

27      Plaintiff's Request for Judicial Notice of "FCC 07-189, FCC REPORT AND ORDER

28   AND FURTHER NOTICE OF PROPOSED RULEMAKING Exclusive Service Contracts for

1  Provision of Video Services in Multiple Dwelling Units and Other Real Estate Developments,

2  October 31, 2007."

3       **Grounds for Objection 39**:  **Irrelevant.**

4       Plaintiff improperly attempts to admit " evidence " that is totally irrelevant to any cause of

5  action or issue raised in the operative complaint.  Plaintiff's request for judicial notice of FCC 07-

6  189 relates solely to matters outside the scope of the lawsuit and motion for summary judgment,

7  which is impermissible as set forth in TWC's reply memorandum of points and authorities in

8  support of TWC's motion for summary judgment.  It is rudimentary that only relevant evidence is

9  admissible.  The Federal Rules of Evidence expressly state that "Evidence which is not relevant is

10  not admissible."  Fed. R. Evid. 402.  FCC 07-189 does not pertain to this action, and therefore is

11  irrelevant.  Accordingly, the subject matter of Paintiff's request for judicial notice is irrelevant

12  and should be denied.

13  **III.  CONCLUSION.**

14       For the reasons stated herein, TWC respectfully requests the Court not consider the

15  inadmissible evidence submitted by Plaintiff in support of his Opposition.

16  Dated:  June 23, 2008

17                              DLA PIPER US LLP

18

19                      By:  s/Jeffrey M. Shohet

20                        JEFFREY M. SHOHET
                      Attorney for Defendant Time Warner

21                        Entertainment-Advance/Newhouse Partnership,
                      a New York General Partnership

22                        E-mail:  Jeffrey.shohet@dlapiper.com

23

24

25

26

27

28

DLA PIPER US LLP
SAN DIEGO