1  JEFFREY M. SHOHET (Bar No. 067529)
   JULIE L. HUSSEY (Bar No. 237711)
2  CARRIE S. DOLTON (Bar No. 234298)
   RYAN T. HANSEN (Bar No. 234329)
3  **DLA PIPER US LLP**
   401 B Street, Suite 1700
4  San Diego, CA 92101-4297
   Tel: 619.699.2700
5  Fax: 619.699.2701

6

7  Attorneys for Defendant
   TIME WARNER ENTERTAINMENT-ADVANCE/
8  NEWHOUSE PARTNERSHIP, A NEW YORK GENERAL
   PARTNERSHIP, THROUGH ITS SAN DIEGO DIVISION,
9  DBA TIME WARNER CABLE

              UNITED STATES DISTRICT COURT
10
            SOUTHERN DISTRICT OF CALIFORNIA
11

12

13  LEON ALPERT, an individual, on behalf of      CV No. 08CV00582 W WMc
    himself, on behalf of all those similarly
    situated, and on behalf of the general public,   **NOTICE OF LODGMENT OF EXHIBITS
14                                                    IN SUPPORT OF DEFENDANT TIME
                  Plaintiffs,                         WARNER CABLE'S OBJECTIONS TO
15                                                    EVIDENCE PROFFERED AND
            v.                                        REQUEST FOR JUDICIAL NOTICE IN
16                                                    SUPPORT OF PLAINTIFF'S
    TIME WARNER CABLE, INC., a Delaware              OPPOSITION TO TIME WARNER
17  corporation, and DOES 1 to 100,                   CABLE, INC.'S MOTION FOR
                                                      SUMMARY JUDGMENT**
18                Defendants.
                                                      Date       June 30, 2008
19                                                    Time       10:00 a.m.
                                                      Dept:      7
20                                                    Judge:     Hon. Thomas J. Whelan

21                                                    **[No Oral Argument Pursuant to
                                                      CivLR 7.1(d)(1)]**
22
                                                      Complaint:  March 13, 2007
23                                                    FAC:        May 16, 2007
                                                      Removal:    March 27, 2007
24

25

26

27

28

DLA PIPER US LLP    WEST\21452696.1
   SAN DIEGO        325566-000011

                                                                08CV00582 W WMC

1         Defendant Time Warner Entertainment-Advance/Newhouse Partnership, a New York

2    General Partnership ("TWC") respectfully submits this Notice of Lodgment of true and correct

3    copies of the following exhibits in support of its Objections to Evidence Proffered and Request

4    for Judicial Notice in Support of Plaintiff's Opposition to Time Warner Cable, Inc.'s Motion for

5    Summary Judgment:

6         **Exhibit A:** Excerpts from the Deposition of Plaintiff Leon Alpert ("Plaintiff"),
     November 6, 2007......................................................................................................2

7

8    Dated:  June 23, 2008

9                     DLA PIPER US LLP

10

11              By:  s/Jeffrey M. Shohet
                         JEFFREY M. SHOHET
12                       Attorney for Defendant Time Warner
                         Entertainment-Advance/Newhouse Partnership,
13                       a New York General Partnership
                         E-mail:  Jeffrey.shohet@dlapiper.com
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CENTRAL DIVISION

LEON ALPERT, an individual, on
behalf of himself, on behalf of
all those similarly situated,
and on behalf of the general
public,

             Plaintiff,

   vs.                    Case No. GIC881621

TIME WARNER CABLE, INC., a
Delaware corporation, and DOES
1 TO 100,

             Defendants.

**CERTIFIED**

**COPY**

VIDEOTAPED DEPOSITION OF LEON SETH ALPERT

VOLUME 1

SAN DIEGO, CALIFORNIA

TUESDAY, NOVEMBER 6, 2007

Reported by:
R. Denise Marlow
CSR No. 11631

Job No. 75324

EXHIBIT A, PAGE 2

| | |
|---|---|
| 11:10:49 1 | Ramos that you were going to take some legal action |
| 11:10:52 2 | against Time Warner? |
| 11:10:53 3 | A    I was pretty certain I was going to go to small |
| 11:10:56 4 | claims court. |
| 11:11:00 5 | Q    Okay.  And at the time you made the decision |
| 11:11:05 6 | to -- to do something, either go to small claims court |
| 11:11:11 7 | or do something else, but you'd made a decision that |
| 11:11:14 8 | your rights had been violated and that you were going to |
| 11:11:17 9 | seek redress of those rights, you had done some of your |
| 11:11:20 10 | own research and investigation about this.  Is that |
| 11:11:23 11 | right? |
| 11:11:23 12 | A    Well, the investigation occurred when I |
| 11:11:28 13 | received the notice from my association saying what I |
| 11:11:33 14 | should have been paying.  And I looked at my bills to |
| 11:11:35 15 | see what I was paying for the same services, and they |
| 11:11:39 16 | weren't the same.  And I contacted Time Warner, and the |
| 11:11:42 17 | customer service person essentially admitted that I was |
| 11:11:46 18 | being overcharged because my bills went down after that. |
| 11:11:50 19 | And they gave me a small credit, threw me a little bone |
| 11:11:55 20 | that day that I had the conversation with them. |
| 11:11:57 21 | Q    Okay.  I'm trying to get the sequence in |
| 11:12:00 22 | events. |
| 11:12:00 23 | You had the conversation with -- in September, |
| 11:12:02 24 | and it was sometime after that that you decided to -- to |
| 11:12:05 25 | pursue your claims.  Correct? |

LEON SETH ALPERT                                    11/06/07

| | |
|---|---|
| 12:14:29 | 1 |
| 12:14:33 | 2 |
| 12:14:37 | 3 |
| 12:14:40 | 4 |
| 12:14:43 | 5 |
| 12:14:48 | 6 |
| 12:14:53 | 7 |
| 12:14:59 | 8 |
| 12:15:04 | 9 |
| 12:15:08 | 10 |
| 12:15:12 | 11 |
| 12:15:16 | 12 |
| 12:15:21 | 13 |
| 12:15:24 | 14 |
| 12:15:29 | 15 |
| 12:15:29 | 16 |
| 12:15:31 | 17 |
| 12:15:34 | 18 |
| 12:15:37 | 19 |
| 12:15:40 | 20 |
| 12:15:40 | 21 |
| 12:15:44 | 22 |
| 12:15:47 | 23 |
| 12:15:50 | 24 |
| 12:15:53 | 25 |

that the reason the pricing would be lower was because
you were entitled to lower pricing as a result of the
HOA paying your basic cable rate?

A    Well, I don't know the reason why I was
overcharged, first of all.  I just knew I was being
overcharged.  Second of all, she -- I said what I wanted
was a credit on my bill on the amount of however many
months I was being overcharged times the amount of the
overcharge per month.  I thought perhaps I was being
overcharged for since 2005 and most -- and up to that
point in 2006.  She said she wasn't authorized to do
that.  The best she could do was lower my rate for what
it should be and should have been at that point in time,
and she was willing to throw in a free month of the
phone.

Q    Now, is it your sworn testimony that there was
no discussion with the CSR about the fact that Time
Warner had developed a bundled rate or a bundled package
of services which your services just happened to fit
into?

A    It's my sworn testimony that I have no
recollection about speaking about bundles with the Time
Warner rep, only about my bill and what I thought I
should be paying from the homeowners association.
That's -- that was the conversation.

EXHIBIT A, PAGE 4    106

| | | |
|---|---|---|
| 13:28:27 | 1 | BY MR. SHOHET: |
| 13:28:27 | 2 | Q    If you know. |
| 13:28:28 | 3 | A    Probably not. |
| 13:28:30 | 4 | Q    Do you think there's anything unreasonable in |
| 13:28:33 | 5 | asking the customer to identify promptly to the service |
| 13:28:37 | 6 | provider discrepancies in their bill? |
| 13:28:39 | 7 | MR. RAMOS:  I'll -- I'll just object to the |
| 13:28:41 | 8 | extent that has been already articulated in the |
| 13:28:46 | 9 | complaint. |
| 13:28:46 | 10 | BY MR. SHOHET: |
| 13:28:46 | 11 | Q    Well, I'm asking him if you think that's an |
| 13:28:50 | 12 | unreasonable thing to do. |
| 13:28:51 | 13 | A    Soon as I found out I was being overcharged, I |
| 13:28:54 | 14 | did complain.  And I don't think it's unreasonable to |
| 13:28:57 | 15 | make the complaint within 30 days.  But if she's, you |
| 13:29:01 | 16 | know -- that seems to be reasonable, and I did complain |
| 13:29:05 | 17 | within 30 days. |
| 13:29:06 | 18 | Q    Okay.  So your point is when you -- when you |
| 13:29:08 | 19 | first had knowledge or information about your problem, |
| 13:29:13 | 20 | you complained within a prompt period of time, and you |
| 13:29:15 | 21 | don't think there's anything unreasonable about |
| 13:29:18 | 22 | requiring customers to behave as you did. |
| 13:29:22 | 23 | A    Asking to -- to voice your complaint in the |
| 13:29:27 | 24 | same time frame as when you have the complaint |
| 13:29:30 | 25 | generated, yeah, I suppose that's reasonable. |

| | |
|---|---|
| 13:30:33 1 | think if it should be exactly within that complaint |
| 13:30:36 2 | time, then I should sign something that I agree to make |
| 13:30:39 3 | all complaints in a certain scope of time or I waive my |
| 13:30:42 4 | rights to have that complaint.  But if their policy is |
| 13:30:46 5 | just to please tell us you have a complaint in the same |
| 13:30:49 6 | 30-day period that you found out that you have a |
| 13:30:51 7 | complaint, that's reasonable. |
| 13:30:53 8 | BY MR. SHOHET: |
| 13:30:53 9 | Q    Did you review at any time the customer service |
| 13:31:01 10 | agreement with Time Warner that is the -- at least from |
| 13:31:08 11 | Time Warner Cable's point of view, the statement of the |
| 13:31:10 12 | agreement between Time Warner and its subscribers? |
| 13:31:14 13 | A    The statement? |
| 13:31:15 14 | MR. RAMOS:  Yeah, let me just object.  It's |
| 13:31:18 15 | vague. |
| 13:31:18 16 | THE WITNESS:  Where is it? |
| 13:31:18 17 | BY MR. SHOHET: |
| 13:31:18 18 | Q    I'm asking if you've ever seen it before.  I |
| 13:31:22 19 | think, Mr. Alpert, you get it when you join as a new |
| 13:31:24 20 | subscriber, and then it's identified -- if there are |
| 13:31:27 21 | changes, they're notified to you, and that it's |
| 13:31:29 22 | available online or something like that.  I'm not sure. |
| 13:31:32 23 | A    I'm pretty sure I signed it -- something when I |
| 13:31:34 24 | first started the service, you know, that I -- |
| 13:31:37 25 | requesting the service and accepting the service. |

LEON SETH ALPERT                    11/06/07

13:31:39  1        Q    Okay.  And at that time do you recall reading

13:31:41  2    the documents that you were given regarding the terms

13:31:44  3    and conditions of service by Time Warner Cable?

13:31:45  4        A    I have no recollection because I believe I

13:31:49  5    signed that original document in like 1994 when I first

13:31:53  6    moved in.

13:31:54  7        Q    Okay.

13:31:55  8        A    So that's really too long ago for me to recall.

13:32:04  9        Q    Now, looking just for a moment again on --

13:32:15 10        A    We're quickly running out of time.  I'm sorry.

13:32:18 11    It's 1:30.

13:32:18 12             MR. RAMOS:  Yeah.

13:32:19 13             THE WITNESS:  I have to get my daughter.  I'm

13:32:22 14    sorry.

13:32:22 15             MR. SHOHET:  Okay.  Fair enough.  Let's go off

13:32:25 16    the record.  We'll put a stipulation on the record.  You

13:32:27 17    can go ahead, Mr. Alpert.  We'll put the stipulations on

13:32:28 18    the record.

13:32:28 19             MR. RAMOS:  Well, I'm going to walk out with

13:32:31 20    him.

13:32:31 21             MR. SHOHET:  Okay.  But we can't leave the

13:32:34 22    record.  You've got to come back.

13:32:35 23             MR. RAMOS:  Sure.

13:32:35 24             THE VIDEOGRAPHER:  Off the record?  Going off

13:32:40 25    the record, time is 1:32 p.m.

| | | |
|---|---|---|

13:32:42  1      (Off record)

13:32:43  2      THE VIDEOGRAPHER:  We're back on the record.

13:37:23  3  Time is 1:37 p.m.

13:37:23  4      MR. SHOHET:  What I'd like to do is put a

13:37:29  5  stipulation on the record that is mindful of the fact

13:37:31  6  that I did represent to the court that we would have a

13:37:34  7  motion on file as of the next date, which is, I believe,

13:37:37  8  December 21st, which is less than -- is close to within

13:37:42  9  30 days.

13:37:43 10      How about this?  Let's have the

13:37:46 11  transcription -- let's have -- let's put a stipulation

13:37:50 12  as follows.  The court reporter will be relieved of her

13:37:52 13  responsibilities under the code.  A transcript of this

13:37:56 14  portion of the deposition, which has not been completed,

13:37:59 15  will be prepared.  The transcript will be submitted to

13:38:04 16  Mr. Ramos as counsel for the witness.  Mr. Ramos will

13:38:08 17  get -- will have the transcript reviewed within -- how

13:38:25 18  long do you think it will be before you can have an

13:38:25 19  original transcript?  What's your normal turnaround?

13:38:25 20      THE REPORTER:  Normal's two weeks, but you can

13:38:25 21  specify any date, and you can have it.

13:38:25 22      MR. SHOHET:  How about a week?

13:38:26 23      THE REPORTER:  That's fine.

13:38:26 24      MR. SHOHET:  Will that work?

13:38:28 25      Okay.  So let's do, you'll get the transcript

1          I, the undersigned, a Certified Shorthand

2    Reporter of the State of California, do hereby certify:

3          That the foregoing proceedings were taken

4    before me at the time and place herein set forth; that

5    any witnesses in the foregoing proceedings, prior to

6    testifying, were duly sworn; that a record of the

7    proceedings was made by me using machine shorthand

8    which was thereafter transcribed under my direction;

9    that the foregoing transcript is a true record of the

10   testimony given.

11         Further, that if the foregoing pertains to

12   the original transcript of a deposition in a Federal

13   Case, before completion of the proceedings, review of

14   the transcript [  ] was [  ] was not requested.

15         I further certify I am neither financially

16   interested in the action nor a relative or employee

17   of any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date

19   subscribed my name.

20

21   Dated: _____NOV 1 2 2007._____

22

23   _____R. Denise Marlow_____

24   R. DENISE MARLOW
     CSR No. 11631

25

EXHIBIT A, PAGE 9