

FILED

2008 JUL -1  PM 3: 47

CLERK US DI...
SOUTHERN DISTRICT OF CALIFORNIA

BY _____DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEON ALPERT, an individual, on behalf of himself, on behalf of all those similarly situated, and on behalf of the general public,<br><br>                                    Plaintiff,<br><br>  vs.<br><br>TIME WARNER CABLE, INC., a Delaware corporation,<br><br>                                    Defendant. | CASE NO. 08-CV-0582 W (WMC)<br><br>**ORDER (1) GRANTING PLAINTIFF'S MOTION FOR REMAND (Doc. No. 17); (2) DENYING AS MOOT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. Nos. 4, 13)** |

On March 27, 2008 Defendant Time Warner Cable, Inc. ("Defendant" or "Time Warner") removed this action from San Diego Superior Court to the Southern District of California. (Doc. No. 1.)  In this suit, Plaintiff Leon Alpert ("Plaintiff" or "Alpert") alleges a single violation of California Business & Professions Code section 17200 against Time Warner. (*Notice of Removal*, Ex. A [hereinafter *Compl.*].)  Pending before the Court is Alpert's motion to remand this case back to San Diego Superior Court. (Doc. No. 17.)   The Court takes the matter under submission and without oral argument.  See S.D. Cal. Civ. R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** Alpert's motion for remand, **REMANDS** this case back to San Diego Superior Court, and **DENIES AS MOOT** Time Warner's motion for summary judgment.  (Doc. Nos. 4, 13, 17.)

1    I.    BACKGROUND

2        The following allegations are taken from Plaintiff's Complaint, and should not

3    be taken as independent findings of fact by the Court.  The Court will only review the

4    allegations necessary to render a decision in the instant motion to remand.

5        Plaintiff Leon Alpert, a San Diego, California resident, belongs to a homeowners

6    association ("HOA"), to which he pays monthly dues.  (*Compl.* ¶¶ 1, 4.) Defendant

7    Time Warner, a Delaware corporation, provides cable television and other cable related

8    services (e.g., high speed internet, digital phone) to consumers throughout San Diego

9    County and the State of California.  (*Id.* ¶ 2.)

10       Alpert alleges that his HOA contracted with Time Warner for basic cable

11   services.  (*Id.* ¶ 7.)  Under the agreement, a portion of each HOA member's dues pays

12   for that member's basic cable, whether he or she watches television or not.  (*Id.* ¶ 8.)

13   Alpert estimates that about $28.77 of his monthly HOA dues entitles him to Time

14   Warner's basic cable services.  (*Id.* ¶ 7.)

15       Like many other consumers, though, Alpert's entertainment needs carry beyond

16   basic cable.  Alpert alleges that he also pays a monthly charge directly to Time Warner

17   for "Road Runner" high speed internet access, a digital phone package, four "premium"

18   cable movie channels, and other services (collectively, "premium services").  (*Id.* ¶ 10.)

19       In Fall 2006, Alpert thought his cable bill seemed unusually high.  (*Id.* ¶ 9.)

20   After calling Time Warner to complain, Alpert alleges that Time Warner admitted

21   overcharging him for the premium services by not taking into account Alpert's existing

22   HOA membership.  (*Id.*)  Alpert alleges that once Time Warner corrected his bill,

23   Alpert's cable bill for the exact same services dropped by $21.00.  (*Id.* ¶¶ 9–10.)

24   Despite Time Warner's admission of error, Alpert claims that the cable company

25   refused to credit him for prior periods of overbilling—some four years worth.  (*Id.* ¶ 9.)

26       On May 16, 2007 Alpert filed the operative pleading in San Diego Superior

27

28

08cv582W

1  Court. (*Notice of Removal* ¶¶ 3–4.)[1]  The gist of Alpert's complaint is that Time Warner

2  has historically overcharged him—and other similarly situated HOA members—for

3  additional premium services by failing to take into account existing HOA membership

4  and entitlement to basic cable.  (*Compl.* ¶¶ 9–16.)  Alpert also claims that Time

5  Warner deceptively conceals the true (lower) pricing to which HOA members are

6  entitled and unlawfully limits the time period and amount for which injured customers

7  who discover billing errors can recover.  (*Id.* ¶¶ 13–14.)  Alpert brings a single, class

8  action claim under California Business & Professions Code section 17200[2] for unfair

9  business practices on behalf of himself and all others similarly situated ("UCL claim").[3]

10  (*Id.* ¶¶ 26–30.)

11  Presumably sometime in early 2008, Time Warner moved for summary judgment

12  against Plaintiff's state court complaint.  On March 24, 2008 Alpert opposed Time

13  Warner's motion and argued, *inter alia*, that Time Warner violated both a Federal

14  Communications Commission ("FCC") Order[4] and a federal cable services pricing law.[5]

15  (*Notice of Removal* ¶¶ 11–12, 20.)  Alpert's complaint had not previously raised these

16  federal law issues.  (*Id.* ¶ 13.)

17

---

18  [1]The operative pleading is Alpert's first amended complaint.  Alpert filed his original

19  complaint in San Diego Superior Court on March 13, 2007.  (*Notice of Removal* ¶ 3.)

20  [2]Unless otherwise noted, all references to "section" shall refer to the California Business & Professions Code.

21  [3]Alpert's class only includes HOA members who subscribed to additional premium services, and not HOA members who were content with basic cable:

22  The class in this case is comprised of all TIME WARNER subscribers in the

23  State of California during the four (4) years prior to the filing of this complaint who were members of [HOAs] and/or tenants of such members, where the

24  subscriber's HOA had contracted with TIME WARNER for basic cable services (also sometimes called "bulk multi-channel video services") *and where the*

25  *subscriber purchased additional cable and cable related services directly from TIME WARNER but was not provided a credit for already paying the for* [sic] *basic cable*

26  *services ("HOA Standard Service") through the subscriber's HOA.*

27  (*Compl.* ¶ 4) (emphasis added).

28  [4]FCC 07-189

[5]47 U.S.C. § 543(b)(8)(a)

1    On March 27, 2008 Time Warner removed Alpert's complaint from San Diego
2 Superior Court to the Southern District of California, alleging that removal was now
3 proper on the basis of 28 U.S.C. § 1331 federal question jurisdiction as well as 28 U.S.C.
4 § 1332 (d) Class Action Fairness Act ("CAFA") diversity jurisdiction (*Notice of Removal*
5 ¶¶ 16–19; 20–25.)  On April 2, 2008 Time Warner (re)filed its summary judgment
6 motion in federal court.  (Doc. No. 4.)  On April 25, 2008 Alpert moved to remand this
7 case to San Diego Superior Court for lack of federal subject matter jurisdiction.  (Doc.
8 No. 17.)  On April 29, 2008, in the interest of judicial economy, the Court continued
9 the hearing date for Time Warner's summary judgment motion to be heard after
10 Alpert's motion for remand.  (Doc. No. 19.)  On June 2, 2008 Time Warner opposed
11 Alpert's motion for remand.  (Doc. No. 20.)  On June 8, 2008 Alpert submitted his
12 Reply brief.  (Doc. No. 21.)

13

14 II.    LEGAL STANDARD

15    In a removal action, a district court must remand a case to state court if, at any
16 time before final judgment, the court determines that it lacks subject matter jurisdiction
17 or when the notice of removal contains plain jurisdictional defects.  See 28 U.S.C.
18 § 1447 *et seq.* The party seeking to invoke removal jurisdiction bears the burden of
19 supporting its jurisdictional allegations with competent proof.  Gaus v. Miles, Inc., 980
20 F.2d 564, 566 (9th Cir. 1992) (per curiam); Emrich v. Touche Ross & Co., 846 F.2d
21 1190, 1195 (9th Cir. 1988).  "The propriety of removal thus depends on whether the
22 case originally could have been filed in federal court." Chicago v. International College
23 of Surgeons, 522 U.S. 156, 163 (1997).

24    The Court's removal jurisdiction must be analyzed on the basis of the pleadings
25 at the time of removal.  See Sparta Surgical Corp. v. National Ass'n of Sec. Dealers,
26 159 F.3d 1209, 1213 (9th Cir. 1998).  "As a general rule, absent diversity jurisdiction,
27 a case will not be removable if the complaint does not affirmatively allege a federal
28 claim." Beneficial National Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 2062

1 | (2003). District courts must construe the removal statutes strictly *against* removal and
2 | resolve any uncertainty as to removability in favor of remanding the case to state court.
3 | Gaus, 982 F.2d at 566.

4 |       Where the complaint does not allege a specific damage amount, defendant must
5 | prove by a preponderance of the evidence that the amount in controversy exceeds the
6 | jurisdictional minimum. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th
7 | Cir. 1996).

8 |

9 | III.    DISCUSSION

10 |     A.    **Time Warner Has Not Shown That This Case Meets the CAFA**
11 |           **Jurisdictional "Amount in Controversy" Requirement**

12 |       Rather than offering its own affidavits and declarations in support of removal
13 | jurisdiction, Time Warner seizes upon a number in Alpert's expert witness's declaration
14 | opposing Time Warner's state court summary judgment motion.  In its Notice of
15 | Removal, Time Warner argues that because Alpert's expert declares that Alpert
16 | suffered a $25.80/month monetary loss, multiplying $25.80 by 56,000 class members
17 | (the number of San Diego/Desert Cities homeowners whose HOA's contracted with
18 | Time Warner) by 15 months (the time period Alpert allegedly suffered the
19 | $25.80/month loss) equals $21,672,000 in class damages—easily enough to meet
20 | CAFA's jurisdictional threshold.  (*Notice of Removal* ¶ 18, citing *Wesley Nutten Decl.*
21 | 3–4.)[6]

22 |       Alpert argues that Time Warner cannot meets its burden of demonstrating that
23 | the class's claims meet the $5 million ($5,000,000) dollar jurisdictional dollar amount
24 | required for CAFA removal jurisdiction.  (*Pl.'s Mot.* 4–5.)  Specifically, Alpert
25 | contends, Time Warner plucks Alpert's individual damages from an expert declaration
26 |

27 |      [6]The Court notes that the Declaration of Wesley Nutten that Time Warner's Notice
28 | of Removal cites appears to be the same Declaration of Wesley Nutten filed in opposition  to Time Warner's *federal* summary judgment motion.  (See *Def.'s Summ. J. Mot.*, Ex. 1. [hereinafter *Wesley Nutten Decl.*].)

08cv582W

1   and then speculatively and improperly multiplies that amount across an over-large class
2   to reach the $5 million mark.  (*Pl.'s Mot.* 5–6.)
3           Time Warner contends, in response, that it is not required to prove Alpert's
4   recovery at this stage of the litigation. (*Def.'s Opp'n* 6–8.)  Rather, because Alpert put
5   his measure of damages "in controversy," given the class size it is "more likely than not"
6   that total class recovery will exceed $5 million dollars.  (*Id.* 3, 6–7.)
7           CAFA does not alter the long-standing rule that the party seeking federal
8   jurisdiction on removal bears the burden of establishing that jurisdiction. <u>Abrego v.</u>
9   <u>Dow Chem. Co.</u>, 443 F.3d 676, 685–86 (9th Cir. 2006).  In measuring the amount in
10  controversy, a court must assume that the complaint's allegations are true and that a
11  jury will return a verdict for the plaintiff on all claims made in the complaint. <u>Kenneth</u>
12  <u>Rothschild Trust v. Morgan Stanley Dean Witter</u>, 199 F. Supp. 2d 993, 1001 (C.D. Cal.
13  2002).  The ultimate inquiry is what amount is put "in controversy" by the plaintiff's
14  complaint, not what a defendant will actually owe. <u>Rippee v. Boston Market Corp.</u>, 408
15  F. Supp. 2d 982, 986 (S.D. Cal. 2005).
16          Where a plaintiff fails to plead specific damages in his complaint, however, a
17  defendant seeking removal "must prove by a preponderance of the evidence that the
18  amount in controversy requirement has been met." <u>Lowdermilk v. United States Bank</u>
19  <u>Nat'l Assoc.</u>, 479 F.3d 994, 998 (9th Cir. 2007).  The preponderance of the evidence
20  standard means the defendant must provide evidence establishing that it is "more likely
21  than not" that the amount in controversy exceeds that amount.  <u>Sanchez v.</u>
22  <u>Monumental Life Ins. Co.</u>, 102 F.3d 398, 404 (9th Cir. 1996).  A defendant can
23  accomplish this by proffering additional evidence, like affidavits or declarations, in the
24  removal petition or in opposition to a motion to remand. <u>Valdez v. Allstate Ins. Co.</u>,
25  372 F.3d 1115, 1117 (9th Cir. 2004); <u>Cohn v. Petsmart</u>, 281 F.3d 837, 840 n.1 (9th Cir.
26  2002).
27          Here, Alpert's complaint does not plead specific damages; it generally requests
28  "restitution of... overcharges," plus interest, costs and attorneys fees and injunctive

1  relief. (*Compl.* Prayer.) Thus, Time Warner carries the burden of establishing that it
2  is more likely than not that Alpert's single UCL claim puts at least $5 million dollars
3  in controversy.

4

5            **i.      *Time Warner Concedes That the Class Size May Not Be as Large***
6                      ***as Indicated in Its Notice of Removal.***

7        When pressed to defend the assumptions in its Notice of Removal, Time
8  Warner's numbers start to shift. For instance, Time Warner concedes that the class size
9  may not really be 56,000 members; it may be as low as 30,800 members. (*Def.'s Opp'n*
10 7.) Although 56,000 homeowners belong to HOAs that contracted with Time Warner
11 for basic cable, about 45% of them do not subscribe to any additional premium services.
12 Thus, consistent with Alpert's class definition,[7] about 25,200 HOA members/Time
13 Warner customers must be culled from 56,000 figure Time Warner relies on in its
14 Notice of Removal.

15

16           **ii.     *Time Warner Does Not Provide Sufficient Evidence That Alpert's***
17                      ***Damages Can Be Used as a Proxy For The Entire Class***

18       Alpert contends that by ordering high speed internet, phone service, *and* four
19 premium movie channels, he is an unusually heavy subscriber of Time Warner's
20 premium services. (*Pl.'s Mot.* 6–7.) Thus, his $25.80/month over 15 months damage
21 figure cannot be attributed to other HOA members who only subscribed to one movie
22 channel, or only ordered high speed internet, or subscribed to some lesser combination
23 of total services over a greater or lesser period of time. (*Id.*)

24       Time Warner insists that the Court take Alpert's $25.80/month damages as a
25 proxy for the entire class over the entire 4 year class period. (*Def.'s Opp'n* 6–7.) Doing
26 otherwise, Time Warner argues, would undermine Alpert's suitability as a class
27 representative.  (*Id.*)  Time Warner then runs through a series of mathematical
28
___
    [7] See *Compl.* ¶ 4, *supra* note 3.

08cv582W

1  hypotheticals and concludes that, given Alpert's class definition, the average amount
2  of damages suffered per member per month need only be $3.39 to satisfy CAFA's $5
3  million dollar jurisdictional prerequisite. (*Def.'s Opp'n* 6–7.)

4      The commonality, typicality and adequacy of Alpert's claim are not at this
5  moment under review. What is under review, however, is whether Time Warner has
6  met its burden of showing that it is more likely than not Alpert's UCL claim has put
7  more than $5,000,000 in controversy. Because Time Warner only relies on a bare
8  figure from Alpert's expert, the Court concludes that Time Warner has not met its
9  burden.

10      Although Time Warner should have easy access to such information, it fails to
11  produce any evidence of how many class members ordered the same or similar range of
12  services as Alpert, and were thus similarly injured. Time Warner also fails to produce
13  any evidence that allows the Court to credibly extrapolate Alpert's injury over 15
14  months to the entire class over 4 years, especially when it appears that Time Warner's
15  billing practices may have changed over that time.

16      Though courts recognize that a removing defendant is not obligated to "research,
17  state, and prove the plaintiff's claims for damages," <u>Korn v. Polo Ralph Lauren Corp.</u>,
18  536 F. Supp. 2d 1199 (E.D. Cal. 2008), Time Warner would not be rolling over by
19  providing the Court with some sense of how much overcharge was associated with each
20  premium service, and how many class members subscribed to a particular service or
21  combination of services. This is because Time Warner already relies on Alpert's
22  $25.80/month figure, which was in part calculated with Time Warner's alleged
23  admission that Alpert failed to receive the HOA discount(s) to which he was already
24  entitled. (See *Wesley Nutten Decl.* ¶¶ 7, 8.) The Court does not expect Time Warner
25  at this stage to provide precise data on all its customers; it is, however, telling that Time
26  Warner does not provide a single declaration or affidavit in its Notice of Removal or
27  Opposition to Alpert's motion to remand.

28      Time Warner's mathematical arguments are not evidence; they are speculation.

1   Although Time Warner reasonably asserts that a 30,800 member class would only need

2   suffer $3.39/month damages over 48 months to meet CAFA's $5 million dollar

3   jurisdictional threshold, this calculation necessarily holds true for *any* 30,800 member

4   class over *any* 48 month time period, whether the dispute concerns cable television

5   services or vacuum cleaners or lost wages. The reality is that Time Warner provides no

6   evidence suggesting that Alpert's UCL class claim puts in controversy at least $3.39 in

7   damages, per month, for 48 months, for each of the 30,800 HOA members who

8   subscribed to some offering of Time Warner's premium services. Time Warner merely

9   highlights Alpert's damages, does not provide evidence of whether Alpert's

10  subscriptions or damages are representative, does not provide evidence of the extent

11  to which other class members may have been injured, and uses its one-size-fits-all

12  calculation to fill in the blanks. Given the dearth of actual evidence, the Court cannot

13  find that Time Warner has shown it is more likely than not that Alpert's claim puts at

14  least $5,000,000 in controversy.[8]

15      Because Time Warner provides insufficient evidence suggesting that the class in

16  Alpert's suit meets CAFA jurisdictional requirements, the Court finds that Time

17  Warner has not carried its burden to invoke federal diversity jurisdiction under CAFA.[9]

18

19

20  _____

21  [8]Alpert also argues that the basic cable rates negotiated by each HOA somehow add or subtract to the overall quantum of damages suffered when a HOA member orders additional

22  premium services. (*Pl.'s Mot.* 5–6.) Time Warner responds that the individual HOA basis cable rates are irrelevant at present, because the Court is entitled to treat Alpert's claims as a proxy for the claims of all class members. (*Def.'s Opp'n* 7 n. 4.) Because the Court finds that

23  Time Warner has failed to produce sufficient evidence indicating Alpert's damages are representative of the class, the Court considers the impact of individually negotiated HOA

24  rates as another unanswered question lending to the uncertainty of whether this suit reaches CAFA's jurisdictional threshold.

25

26  [9]Because Time Warner has not presented sufficient evidence suggesting that Alpert meets the amount in controversy requirement, Alpert does not have the burden to show, as

27  a matter of law, that it is certain that he will not recover the jurisdictional amount. (*Def.'s Opp'n* 8–9, citing Kenneth Rothschild Trust, 199 F. Supp. 2d at 1001 (C.D. Cal. 2002).) Nor

28  does Richmond v. Allstate Ins. Co, 897 F. Supp. 447 (S.D. Cal. 1995) place upon Alpert any affirmative duty to limit his damages to avoid removal.

08cv582W

1    Accordingly, the Court **GRANTS** Alpert's motion to remand on this basis.[10]

2

3         **B.    This Case Does Not Involve A Substantial Question of Federal Law**

4         In its Notice of Removal, Time Warner contends that Alpert's case presents a

5    federal question because Alpert's Opposition to Time Warner's state court summary

6    judgment motion asserted that Time Warner's pricing scheme violated 47 U.S.C.

7    § 543(b)(8)(a) and an FCC Order. (*Notice of Removal* ¶ 20.)

8         Alpert argues that his Complaint asserts a single California UCL cause of action

9    predicated on other California laws and only includes a potential violation of federal

10   law. (*Pl.'s Mot.* 8–9.) Time Warner, in response, argues that federal question

11   jurisdiction exists because Alpert's claim necessarily depends on the resolution of a

12   substantial and disputed question of federal law. (*Def.'s Opp'n* 4–6.)

13        The California Supreme Court has made it quite clear that a section 17200

14   action "to redress an unlawful business practice 'borrows' violations of other laws and

15   treats those violations, when committed pursuant to business activity, as unlawful

16   practices independently actionable under section 17200 and subject to the distinct

17   remedies provided thereunder." Farmers Ins. Exchange v. Superior Court, 826 P.2d 730

18   (Cal. 1992). Federal as well as state law may be "borrowed" by section 17200. Mangini

19   v. Reynolds Tobacco Co., 793 F. Supp. 925, 927 (N.D. Cal. 1992).

20        Any civil action of which the district courts have original jurisdiction founded on

21   a claim or right arising under the Constitution, treaties, or laws of the United States

22   shall be removable without regard to the citizenship of the parties. 28 U.S.C.

23   § 1441(b). This "federal question" jurisdiction arises most obviously for rights of action

24   conferred by a federal statute or constitutional provision. County of Santa Clara v.

25   Astra USA, Inc., 401 F. Supp. 2d 1022, 1025 (N.D. Cal. 2005). A claim may also be

26

27        [10]Time Warner also briefly mentions that the potential value of attorney's fees and
     injunctive relief should be included in the "amount in controversy" analysis. (*Def.'s Opp'n* 8,
28   8 n.6.) Time Warner, however, does not support its argument with any evidence on the
     amount of attorney's fees or value of any injunction in this case.

1  removed, however, when an issue of federal law undergirds a claim otherwise based in
2  state law. <u>Santa Clara</u>, 401 F. Supp. 2d at 1025. This second jurisdictional basis arises
3  when a federal court determines that a (1) state-law claim necessarily raises a stated
4  federal issue, (2) that is actually disputed and substantial, and (3) which a federal forum
5  may entertain without disturbing any congressionally approved balance of federal and
6  state judicial responsibilities. <u>Williston Basin Interstate Pipeline Co. v. An Exclusive</u>
7  <u>Gas Storage Leasehold and Easement</u>, 524 F.3d 1090, 1100 (9th Cir. 2008) (citing
8  <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 208, 312 (2005)).

9      Here, Alpert's Complaint and supporting papers do not support original federal
10  jurisdiction because Alpert's state law claim does not necessarily depend on the
11  resolution of a substantial question of federal law. Alpert's Complaint is devoid of any
12  federal law claims or even references, and his section 17200 claim can be predicated on
13  any number of California unfair business practice or breach of contract laws. <u>See</u> <u>also</u>
14  <u>Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.</u>, 973 P.2d 527 (Cal. 1999) (holding
15  that liability under the "unfair" and "fraudulent" prongs of section 17200 does not
16  always require violation of a separate law).  Simply, Alpert states no independent
17  federal claim or issue which confers original jurisdiction upon this Court.

18      Although Time Warner makes much of Alpert's raising 47 U.S.C. § 543(b)(8)(a)
19  and the FCC Order in opposing Time Warner's state court summary judgment motion,
20  neither federal law provides an independent private right of action. <u>See</u> <u>Grable</u>, 545
21  U.S. at 316–18 (analyzing <u>Merrell Dow Pharm. v. Thompson</u>, 478 U.S. 804, 817 (1986)
22  and holding absence of federal cause of action relevant in determining availability of
23  federal jurisdiction). Rather, Alpert's references to federal law serve the single purpose
24  of exhibiting that the breach of federally mandated duties constitutes unlawful business
25  practices under section 17200; these federal matters are not substantial or central to
26  Alpert's case. <u>See</u> <u>Schwarz v. Visa Int'l Corp.</u>, No. C 00-3955 TEH, 2001 U.S. Dist.
27  LEXIS 105 at *6 (N.D. Cal. Jan. 9, 2001) (holding that an unbiased reading of plaintiff's
28  brief, as a whole and in the context of plaintiff's complaint, could not reasonably lead

1  the court to conclude that federal question jurisdiction existed).

2      Although perhaps not directly relevant to the Grable test's third prong, the Court

3  also recognizes that federal cable television law explicitly operates in conjunction with

4  state consumer protection laws. See 47 U.S.C. § 552(d)(1).  This suggests that

5  Congress is comfortable with state courts entertaining jurisdiction over unfair business

6  practice lawsuits which implicate federally regulated cable television services.  On the

7  other hand, granting automatic federal jurisdiction to any section 17200 claim involving

8  the possible violation of any federal law runs the risk of overburdening the federal

9  judiciary. See Grable, 545 U.S. at 318 (reaffirming Merrell Dow and stating "[I]f a

10  federal labeling standard without a federal cause of action could get a state claim into

11  federal court, so could any other federal standard without a federal cause of action.

12  And that would [mean] a tremendous number of cases.").

13      The section 17200 cases Time Warner cites in opposition do not lead the Court

14  to a different conclusion.  In each case, whether the plaintiff's UCL claim was successful

15  necessarily boiled down to a central, substantial, *unavoidable* issue of federal law. See

16  California ex. rel. Lockyer v. Dynegy, Inc., 375 F.3d 831, 839 (9th Cir. 2004) (finding

17  that complaint presented no independent state law claims and was simply an attempt

18  to enforce federal tariffs, which triggered exclusive federal jurisdiction); Brennan v.

19  Southwest Airlines Co., 134 F.3d 1405, 1409 (9th Cir. 1998) (finding exclusive federal

20  jurisdiction statute triggered where plaintiffs tried to artfully plead a federal tax refund

21  claim as a section 17200 claim); Santa Clara, 401 F. Supp. 2d at 1024–31 (finding

22  federal jurisdiction where complaint contained a "rash of allegations" that defendants

23  trampled federal drug pricing laws and where each claim necessarily depended on the

24  resolution or interpretation of federal statutes).  Here, Time Warner has not shown that

25  disputes involving cable television billing (unlike federal taxes or tariffs) are within the

26  peculiar expertise of federal courts or automatically trigger exclusive federal jurisdiction.

27  Likewise, whether Alpert recovers does not involve whittling down the case to an

28  unavoidable issue of federal law; he could potentially prevail under California law even

1  if all federal references were stricken from his state court summary judgment opposition.

2  C.f. Santa Clara, 401 F. Supp. 2d at 1025 ("For this case to be resolved on its merits,

3  at least one of the federal issues embedded in the complaint must be addressed. There

4  is simply no other way.").    Accordingly, the Court finds that federal question

5  jurisdiction does not exist in this case, **GRANTS** Alpert's motion to remand, and

6  **REMANDS** this case back to San Diego Superior Court.

7

8  **IV.    CONCLUSION**

9       For the above reasons, the Court finds that Time Warner has not shown that this

10  case meets CAFA's $5 million amount in controversy requirement and that this dispute

11  necessarily raises substantial and disputed federal issues which the Court could

12  entertain without disturbing any congressionally approved balance of federal and state

13  judicial responsibilities. Accordingly, the Court **GRANTS** Alpert's motion to remand

14  and **REMANDS** this case back to San Diego Superior Court. (Doc. No. 17.)  The

15  Court also **DENIES AS MOOT** Time Warner's pending summary judgment motion.

16  (Doc. No. 4, 13.)

17

18       **IT IS SO ORDERED.**

19

20  Dated: June 30, 2008

21                                                   Hon. THOMAS J. WHELAN
                                                     United States District Court
22                                                   Southern District of California

23

24

25

26

27

28

- 13 -